KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
MATTHEW WERDEGAR - # 200470
mwerdegar@kvn.com
EUGENE M. PAIGE - # 202849
epaige@kvn.com
MATTHIAS A. KAMBER - # 232147
mkamber@kvn.com
THOMAS E. GORMAN - # 279409
tgorman@kvn.com
LEAH PRANSKY - # 302246
lpransky@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendants
ALPHABET INC. and GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SPACE DATA CORPORATION,<br><br>          Plaintiff,<br><br>     v.<br><br>ALPHABET INC., and GOOGLE INC.,<br><br>          Defendants. | Case No. 5:16-cv-03260-BLF<br><br>**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date:      February 16, 2017<br>Time:      9:00 a.m.<br>Dept.:     Courtroom 3, 5th Floor<br>Judge:     Hon. Beth Labson Freeman<br><br>Date Filed: June 13, 2016<br><br>Trial Date: June 3, 2019 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. STATEMENT OF ISSUES TO BE DECIDED ..................................................................2

III. RELEVANT FACTUAL BACKGROUND.........................................................................3

IV. ARGUMENT .........................................................................................................................5

    A. Space Data must plead sufficient facts to state a plausible claim for relief.............5

    B. Space Data fails to allege sufficient facts to establish the necessary elements of its trade secret misappropriation claims. ..............................................6

        1. Space Data does not identify its trade secrets with sufficient particularity. ....................................................................................................6

        2. Space Data fails to adequately allege misappropriation of its purported trade secrets. .................................................................................9

    C. The DTSA does not apply to the conduct at issue. ................................................11

    D. Space Data fails to state a claim for breach of contract ........................................13

V. CONCLUSION....................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AccuImage Diagnostics Corp. v. Terarecon, Inc.*
    260 F. Supp. 2d 941 (N.D. Cal. 2003) ................................................................................. 6

*Adams Arms, LLC v. Unified Weapon Sys., Inc.*
    No. 8:16-cv-1503-T-33AEP, 2016 WL 5391394 (M.D. Fl. Sep. 27, 2016) ..................... 6, 12

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ............................................................................................ 5, 6, 10, 13

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ......................................................................................................... 5, 10

*Bladeroom Grp. Ltd. v. Facebook, Inc.*
    No. 5:15-cv-01370-EJD, 2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) ............................. 7, 8

*Dazzle Software II, LLC v. Kinney*
    No. 16-cv-12191, 2016 WL 6248906 (E.D. Mich. Sept. 22, 2016) ..................................... 12

*Farhang v. Indian Inst. of Tech., Kharagpur*
    No. C-08-02658 RMW, 2010 WL 2228936 (N.D. Cal. June 1, 2010) ................... 7, 9, 11, 14

*Godlewski v. Affiliated Comput. Servs., Inc.*
    210 F.R.D. 571 (E.D. Va. 2002) ........................................................................................... 2

*Ideal Instruments, Inc. v. Rivard Instruments, Inc.*
    434 F. Supp. 2d 598 (N.D. Iowa 2006) ................................................................................. 2

*Imax Corp. v. Cinema Techs., Inc.*
    152 F.3d 1161 (9th Cir. 1998) .............................................................................................. 6

*Knievel v. ESPN*
    393 F.3d 1068 (9th Cir. 2005) .............................................................................................. 3

*Landgraf v. USI Film Prods.*
    511 U.S. 244 (1994) ............................................................................................................ 11

*Loop AI Labs Inc. v. Gatti*
    No. 15-cv-00798-HSG (DMR), -- F. Supp. 3d --, 2016 WL 3654378 (N.D. Cal. July 6, 2016) .................................................................................................................................. 8

*Parrino v. FHP, Inc.*
    146 F.3d 699 (9th Cir. 1998) ................................................................................................ 3

*Pellerin v. Honeywell Int'l, Inc.*
    877 F. Supp. 2d 983 (S.D. Cal. 2012) ..................................................................... 6, 9, 13, 14

*Reddy v. Nuance Commc'n, Inc.*
    No. 11-CV-05632-PSG, 2012 WL 12818726 (N.D. Cal. March 26, 2012) .......................... 2

*Rita Med. Sys., Inc. v. Resect Med.*, Inc., No. C 05-03291 WHA, 2007 WL 161049 (N.D. Cal. Jan. 17, 2007) .................................................................................................................. 10

*S. Cal. Inst. of Law v. TCS Educ. Sys.*
  No. CV 10-8026 PSG, 2011 WL 1296602 (C.D. Cal. Apr. 5, 2011) .................................. 9, 11

*Sensible Foods, LLC v. World Gourmet, Inc.*
  No. 11-2819 SC, 2011 WL 5244716 (N.D. Cal. Nov. 3, 2011) ........................................ 13, 14

*Sweaney v. Ada Cnty., Idaho*
  119 F.3d 1385 (9th Cir. 1997) ................................................................................................ 12

*Synopsys, Inc. v. ATopTech, Inc.*
  No. C 13-CV-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ............................ 1, 7, 8

*Top Agent Network, Inc. v. Zillow, Inc.*
  No. 14-cv-04769-RS, 2015 WL 7709655 (N.D. Cal. Apr. 13, 2015)........................................ 8

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*
  587 F.3d 1339 (Fed. Cir. 2009).................................................................................................. 7

**State Cases**

*Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*
  226 Cal. App. 4th 26 (2014) ..................................................................................................... 8

*CDF Firefighters v. Maldonado*
  158 Cal. App. 4th 1226 (2008) ............................................................................................... 13

**Federal Statutes**

18 U.S.C. § 1836(b) ...................................................................................................................... 1, 2

18 U.S.C. § 1839................................................................................................................... 6, 9, 10

Pub. L. No. 114-153, 130 Stat 376 .................................................................................................. 11

**State Statutes**

Cal. Civ. Code § 3426............................................................................................................ 1, 2, 3

Cal. Civ. Code § 3426.1.......................................................................................................... 9, 10

Cal. Code Civ. Pro. § 2019.210 ...................................................................................................... 8

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on February 16, 2017, at 9:00 a.m., defendants Alphabet Inc. and Google Inc. (collectively "Google") will, and hereby do, move the Court, located at 280 South 1st Street, San Jose, California, for an order dismissing plaintiff Space Data Corporation's ("Space Data") claims for misappropriation of trade secrets pursuant to 18 U.S.C. § 1836(b) (Count II), misappropriation of trade secrets pursuant to California Civil Code § 3426, *et seq.* (Count III), and breach of written contract (Count IV).

Google brings this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on grounds that Space Data's First Amended Complaint fails to state a claim upon which relief can be granted as to misappropriation of trade secrets and breach of contract. This motion is based on the following Memorandum of Points and Authorities, on all pleadings and papers on file or to be filed in the above-entitled action, the arguments of counsel, and any other matters that may properly come before the Court for its consideration.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

A plaintiff alleging trade secret misappropriation must (1) identify its trade secrets with "sufficient particularity" and provide a "plausible factual explanation for why trade secret protection applies" and (2) plead facts from which the court can infer that the defendant is liable for misappropriation. *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-CV-02965 SC, 2013 WL 5770542, at *5-6 (N.D. Cal. Oct. 24, 2013). Space Data's First Amended Complaint does neither. Space Data simply lists vague categories of information that it claims are its "confidential information and trade secrets" and asserts that it is "informed and believes" that Google improperly used that information to develop "Project Loon," Google's research and development effort to use high-altitude balloons to deliver internet access to underserved areas around the world. FAC[1] ¶¶ 19, 26, 33, 38. These conclusory allegations fall far short of the pleading requirements for a trade secret misappropriation claim under both California state and federal

---

[1] "FAC" refers to Space Data's First Amended Complaint, Dkt. No. 28, filed September 30, 2016.

law.

Space Data's federal trade secret claim also fails for an additional, independent reason—the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b), does not apply to acts that occurred before May 11, 2016, its enactment date, which is all that Space Data alleges in its First Amended Complaint. And by the time the DTSA took effect, Google's duty under the parties' non-disclosure agreement to protect Space Data's allegedly confidential information had long been expired.

Finally, Space Data's First Amended Complaint fails to state a claim for breach of contract because it does not offer any facts that would allow the Court plausibly to infer that Google breached the limited confidentiality obligations imposed by the parties' Mutual Confidentiality and Non-Disclosure Agreement ("NDA"). Indeed, Space Data alleges no facts establishing that Google used any Space Data information to develop Project Loon, much less that any such alleged use was not authorized under the terms of the NDA.

For these reasons, as explained in detail below, the Court should grant Google's motion to dismiss Counts II, III and IV of Space Data's First Amended Complaint.[2] Furthermore, because there are no circumstances under which Space Data could adequately allege a trade secret misappropriation claim under the DTSA, this Court should dismiss that count (II) with prejudice.

## II.   STATEMENT OF ISSUES TO BE DECIDED

Whether Space Data's trade secret misappropriation claim pursuant to 18 U.S.C. § 1836(b) (Count II), trade secret misappropriation claim pursuant to California Civil Code § 3426, *et seq.* (California Uniform Trade Secrets Act, hereinafter "CUTSA") (Count III), and breach of written contract claim (Count IV) should be dismissed for failure to state a claim upon

---

[2] Google's motion to dismiss Counts II-IV of the First Amended Complaint extends the time for Google to answer or otherwise respond to Count I, Space Data's patent infringement claim. *See Reddy v. Nuance Commc'n, Inc*., No. 11-CV-05632-PSG, 2012 WL 12818726, at *1 (N.D. Cal. March 26, 2012) ("[I]t is well-settled that filing a Rule 12(b) motion, even a partial one, extends the time for it to respond to the complaint."); *Ideal Instruments, Inc. v. Rivard Instruments, Inc*., 434 F. Supp. 2d 598, 639 (N.D. Iowa 2006) ("[A] motion pursuant to Rule 12(b), even one that challenges less than all of the claims asserted in the complaint or other pleading, extends the time to answer as to all claims in the pleading."); *Godlewski v. Affiliated Comput. Servs., Inc*., 210 F.R.D. 571, 572 (E.D. Va. 2002) ("A majority of courts . . . hold that the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion.").

which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## III.     RELEVANT FACTUAL BACKGROUND

Space Data claims to have developed a balloon-based communications system to provide messaging and other wireless communications services across the United States. FAC ¶ 1. The Space Data system allegedly provides wireless services through the use of inexpensive weather balloons that carry radio transceivers up to altitudes between 60,000 and 100,000 feet. *Id.* ¶ 2. According to Space Data, its system is "one type of stratospheric high altitude communications platform." *Id*. Space Data further claims to be the owner by assignment of U.S. Patent No. 6,628,941 ("the '941 patent"), which it has asserted in this case. According to Space Data, the '941 patent discloses a constellation of lighter-than-air platforms (balloons and associated payload equipment) spaced apart above a geographic area, where each platform includes a signal transmitting device. FAC ¶ 15.

In late 2007, Google and Space Data began a short-lived discussion about Google's potential investment in, or acquisition of, shares or assets of Space Data. FAC ¶ 25. During the course of that discussion, the parties entered into an NDA, which governed, among other things, the parties' obligations concerning each other's confidential information. *Id*. ¶ 25, Ex. A (redacted copy of NDA); Werdegar Decl.[3] Ex. A (unredacted copy of NDA).[4] That NDA includes several provisions that explicitly limited Google's obligations, although Space Data neglects to acknowledge those terms in its First Amended Complaint. For example, the NDA expressly excludes from coverage information that is or becomes public through no fault of the recipient or that "is independently developed" by the recipient. Werdegar Decl. Ex. A ¶ 5. The

---

[3] "Werdegar Decl." refers to the Declaration of Matthew M. Werdegar In Support of Defendants' Motion to Dismiss.

[4] On a Rule 12(b)(6) motion to dismiss, the court may consider documents attached to the complaint, as well as documents whose contents "are alleged in a complaint and whose authenticity no party questions[.]" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal citation omitted). This "incorporation by reference" doctrine also extends to documents where the plaintiff's claim depends on the contents of those documents, even if the plaintiff does not explicitly allege the contents of the document in its complaint. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). Thus, despite Space Data's redaction of the NDA, this Court may consider all of the terms of the NDA because Space Data attaches the agreement to its First Amended Complaint, alleges its existence, acknowledges its authenticity, and relies on it as the basis for both its trade secret misappropriation and breach of contract claims. *See* FAC ¶¶ 5, 25, 32-34, 38, 74-75, Ex. A.

NDA also specifies that when a party discloses confidential information under the NDA, the other party is obliged to protect the confidentiality of that information for *only three years*. *Id.* ¶ 7. Furthermore, Space Data expressly "recognize[d]" in the NDA that Google may in the future "develop products or services related to or similar to the subject matter of the Confidential Information disclosed under th[e] Agreement." *Id*. ¶ 8. To that end, Google is expressly permitted under the NDA to use *any confidential information "retained in the unaided memories of Google employees or Representatives* who had access to Confidential Information" under the NDA *"for any purpose,* including without limitation, use in the acquisition, development, manufacture, promotion, sale, or maintenance of products and services[.]" *Id.* (emphasis added).

In February 2008, in connection with the parties' business discussions, a group from Google visited Space Data's facilities in Arizona. FAC ¶ 27. Space Data alleges that during the group's visit, Space Data demonstrated a balloon launch and provided a tour of its production line and network operation center. *Id.* ¶¶ 27-28. Space Data further alleges that before and during the visit, it provided Google with access to "Space Data's proprietary financial information," "business concepts addressing the use of balloons for transmission of wireless service," and "use and of [sic] implementation of the balloon constellation in a narrowband network." *Id.* ¶ 26; *see also id.* ¶ 27-29. Shortly after the visit, on February 24, 2008, Google informed Space Data that it was not interested in engaging in further discussions, primarily because of its discovery that Space Data had leaked Google's interest in the company to the Wall Street Journal in violation of the NDA. *Id.* ¶ 31; *see* Werdegar Decl. Ex. A ¶ 4 (requiring parties to keep confidential "the fact that discussions or negotiations between the Parties to this Agreement are taking or have taken place").

In 2011, years after the termination of Google's discussions with Space Data, Google's "X" research and development group began exploring the idea of using balloons to provide wireless internet service to remote, underserved areas of the world. *See* FAC Ex. F (Mar. 2, 2015 "The Verge" article) at 3-4. The idea eventually became "Project Loon." Over the past five years, Project Loon engineers have developed a variety of innovative high-altitude balloon and

4
DEFENDANTS' MOTION TO DISMISS
Case No. 5:16-cv-03260-BLF

1125747

communication technologies.  *See, e.g., id.*  For example, Project Loon has developed balloons that can stay in the stratosphere for six months, circumnavigating the Earth multiple times.  *See id*. at 4.

On June 13, 2016, years after the public announcement of Project Loon, Space Data commenced this action, asserting that "the creation of Project Loon breaches the terms of the NDA" and that "Space Data is informed and believes that Defendants have unlawfully utilized Space Data's confidential information and trade secrets in violation of the NDA."  FAC ¶¶ 34, 38; *see also* Dkt. No. 1 (original complaint) ¶¶ 33, 37.  Space Data does not offer any factual support for these assertions.  Nevertheless, based on these conclusory assertions, Space Data accuses Google of trade secret misappropriation under California state and federal law, as well as breach of written contract.

## IV. ARGUMENT

### A. Space Data must plead sufficient facts to state a plausible claim for relief.

To satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, Space Data must "give [Google] fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Satisfying this obligation "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Id*. at 555 n.3.  Space Data must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  Consequently, to survive a motion to dismiss under Rule 12(b)(6), Space Data's complaint must plead enough factual matter that, when taken as true, "state[s] a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "The plausibility standard . . . asks for more than a sheer possibility that a defendant acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint that merely pleads facts that are "consistent with" a defendant's liability "stops short of the line between possibility and plausibility."  *Twombly*, 550 U.S. at 546.  Furthermore, although non-speculative factual allegations are to be accepted as true, the Court is not required to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678; *see also id*. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual

allegations."). Thus, the Court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The Court must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." *Id*.

### B. Space Data fails to allege sufficient facts to establish the necessary elements of its trade secret misappropriation claims.

A plaintiff bringing a misappropriation claim under either CUTSA or the DTSA must plead facts from which a court can plausibly infer, *inter alia*, (1) "the existence of a trade secret" and (2) the "misappropriation of the trade secret." *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003) (citing Cal. Civ. Code § 3426.1(b)); *see also Adams Arms, LLC v. Unified Weapon Sys., Inc*., No. 8:16-cv-1503-T-33AEP, 2016 WL 5391394, at *6 (M.D. Fl. Sep. 27, 2016); 18 U.S.C. § 1839(3) & (5) (defining "trade secret" and "misappropriation" in the same way as CUTSA). Space Data fails to adequately allege either of these essential elements of its misappropriation claims.

#### 1. Space Data does not identify its trade secrets with sufficient particularity.

To sufficiently allege the first element of its misappropriation claims, the existence of a trade secret, Space Data must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Pellerin v. Honeywell Int'l, Inc.* 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)); *accord Imax Corp. v. Cinema Techs., Inc.,* 152 F.3d 1161, 1164–65 (9th Cir. 1998). In its First Amended Complaint, however, Space Data does little more than list broad, generic categories of information that it claims constitute its trade secrets, such as "accumulation of weather data, launch methods, launch timing, balloon types, altitude regulation, business models, cost structure and other financial information, technology solutions, and unique knowledge and interpretation of weather data." FAC ¶ 19; *see also id.* ¶ 26. That is not enough. As the court explained in

dismissing analogous allegations in *Synopsys*: "Plaintiff's complaint is too sweeping and vague for Defendant to be on notice of what trade secrets are at issue and where the boundary between those secrets and general knowledge might lie."[5] 2013 WL 5770542, at *6-7; *accord Bladeroom Grp. Ltd. v. Facebook, Inc.*, No. 5:15-cv-01370-EJD, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015) (granting motion to dismiss where "[t]he allegations identifying the purported trade secret are vague and conclusory, and consist of a generic list of categories of various types of information").

Space Data's failure to identify and describe its alleged trade secrets with particularity is especially problematic in this case, as the broad categories of information that it claims as its trade secrets overlap with the public subject matter of the asserted '941 patent. *See Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009) ("[I]t is well established that disclosure of a trade secret in a patent places the information comprising the secret into the public domain. Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished . . . ."). For example, Space Data claims that its trade secrets include "business concepts addressing the use of balloons for transmission of wireless service" and "use and of [sic] implementation of the balloon constellation in a narrowband network." FAC ¶ 26. Both of these subjects are discussed extensively in the specification of the '941 patent. *See, e.g., id.* Ex. G at 3:41-10:21 ("Objects and Advantages of the Invention" and "Summary of the Invention"). Space Data therefore must provide factual allegations sufficient to put Google and this Court on notice of "where the boundary between [its trade] secrets" and the information set forth in its patents and other public information lies. *Farhang v. Indian Inst. of Tech., Kharagpur*, No. C-08-02658 RMW, 2010 WL 2228936, at *14 (N.D. Cal. June 1, 2010) (dismissing claim where complaint was too "vague" to put defendant on

---

[5] The only alleged trade secrets that Space Data even begins to identify in its First Amended Complaint are "data on the environment in the stratosphere" and "[t]he unique knowledge and conclusions drawn from the data," and "data on the propagation of radio signals from stratospheric balloon-based transceivers." FAC ¶ 20. But even as to these categories of information, Space Data fails to describe their subject matter with sufficient particularity to distinguish the asserted secrets from matters of general knowledge in the trade or matters that Space Data itself has made public through its patents and other publications. And in any event, Space Data does not limit its misappropriation claims to these vague categories of information.

1125747

notice as to what was a trade secret and what was covered by plaintiff's copyright or other public documents); *see Bladeroom*, 2015 WL 8028294, at *4 (dismissing claim where complaint failed to make clear which aspects of plaintiff's technology were "part of patents and pending patent applications" and which were secret).

Google recognizes that Space Data has agreed to provide—at some point in time—a list identifying its trade secrets in compliance with California Code of Civil Procedure § 2019.210. *See* Dkt. No. 35 (Joint CMC Statement) at 10. But Space Data's agreement to do so cannot insulate its defective pleadings from dismissal under Rule 12(b)(6). Federal courts in California require a plaintiff to identify its trade secrets with sufficient particularity to define their boundaries and distinguish them from public information as a *pleading* requirement under Rule 8, and not simply as a prerequisite to commencing discovery. *See, e.g., Top Agent Network, Inc. v. Zillow, Inc.*, No. 14-cv-04769-RS, 2015 WL 7709655, at *4 (N.D. Cal. Apr. 13, 2015) ("*To pass muster under Rule 8*, plaintiffs raising claims under CUTSA must itemize the information claimed as a trade secret with reasonable particularity." (emphasis added)); *Synopsys*, 2013 WL 5770542, at *5 n.1 (rejecting argument that "sufficient particularity" pleading standard should not apply in light of separate identification requirements of Cal. Code Civ. Pro. § 2019.210). There is no reason to deviate from that approach in this case, particularly given the impossibility of assessing the overall sufficiency of Space Data's allegations without knowing what specific information Space Data is claiming as its trade secrets.[6] *See, e.g., Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 43 (2014) ("[U]ntil the content and nature of the claimed secret is ascertained, it will likely be impossible to intelligibly analyze the remaining elements that constitute the cause of action." (internal quotations omitted)). Accordingly, until and unless Space Data identifies its alleged trade secrets with particularity, as required, the Court should not permit Space Data's misappropriation claims to advance beyond the pleading stage.

---

[6] Courts have not yet specifically addressed whether the same "sufficient particularity" pleading standard applies to a misappropriation claim brought under the DTSA. But there is no legal or practical reason that a more relaxed pleading standard ought to apply to a DTSA claim under Rule 8. The elements of the claim are the same. And whether brought under CUTSA or the DTSA, "[d]efendants cannot fairly be expected to rebut Plaintiff's trade secrets claim without a reasonably concrete definition of the purported secrets." *Loop AI Labs Inc. v. Gatti*, No. 15-cv-00798-HSG (DMR), -- F. Supp. 3d --, 2016 WL 3654378, at *5 (N.D. Cal. July 6, 2016).

1125747

### 2. Space Data fails to adequately allege misappropriation of its purported trade secrets.

To maintain a claim for misappropriation, a plaintiff may not allege "[m]ere possession of trade secrets." *S. Cal. Inst. of Law v. TCS Educ. Sys.*, No. CV 10-8026 PSG (AJWx), 2011 WL 1296602, at *7 (C.D. Cal. Apr. 5, 2011) (quoting *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1279 (2009)). Rather, a plaintiff must plead facts from which the court can plausibly infer that the defendant ***misused*** that information. *Id.*; *see also Pellerin*, 877 F. Supp. 2d at 989 (plaintiff must allege facts to support legal conclusion that defendant misused plaintiff's trade secrets); Cal. Civ. Code § 3426.1(b)(2)(B)(ii) (defining use-based "misappropriation" as use that occurred "without express or implied consent by a person who . . . knew or had reason to know that his or her knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to . . . limit its use"); 18 U.S.C. § 1839(5)(B) (same). Consequently, in cases where a defendant received the alleged trade secrets under an agreement with the plaintiff, the plaintiff must plead facts showing that defendant had a duty ***not*** to use the information in the way alleged. In *Southern California Institute of Law*, for example, the Court dismissed the plaintiff's trade secret claim because the parties' "Non-Disclosure Agreement provides the approved uses of [plaintiff's] information and the Complaint alleges no facts that suggest anything other than Agreement-complaint use." 2011 WL 1296602, at *8. Likewise, in *Farhang*, the Court dismissed plaintiff Farhang's trade secret claim because the complaint failed to allege facts suggesting that defendant's use of the alleged trade secrets was "outside the scope of what it was permitted to do under" the parties' agreements. 2010 WL 2228936, at *6-7, 14-15.

Here, even if Space Data had adequately identified its alleged trade secrets (or manages to do so in the future), Space Data fails to allege any facts to support the conclusion that Google misappropriated those trade secrets. Indeed, Space Data does not even allege any facts from which this Court could plausibly infer that Google used—let alone misused—Space Data's purported trade secret information in connection with developing Project Loon.

Space Data claims that "Project Loon is employing the same 'Ubiquity' business model originally developed by Space Data" and that "Space Data is informed and believes that

Defendants have engaged in other business activity based on Space Data's confidential trade secret information, which conflict with their legal obligations to Space Data. Such activities have been to advance, among other things, the development of Defendants' Project Loon." FAC ¶¶ 29, 33; *see also id.* ¶¶ 5, 38. But Space Data's complaint is devoid of factual allegations from which the Court can determine whether these conclusory claims regarding Google's use of Space Data's information cross the line from possible to plausible. *See Twombly*, 550 U.S. at 546; *see also Iqbal*, 556 U.S. at 679 (conclusions "must be supported by factual allegations"). For example, Space Data offers no facts from which the Court could plausibly conclude that Google did not independently develop Project Loon's business model or derive it from public sources.[7] *See Rita Med. Sys., Inc. v. Resect Med.*, Inc., No. C 05-03291 WHA, 2007 WL 161049, at *8 (N.D. Cal. Jan. 17, 2007) ("Plaintiff has the burden of establishing that defendants did not independently derive trade-secret information." (citing *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1669 (2003)); *see also* Werdegar Decl. Ex. A ¶ 5 (NDA does not restrict use of independently developed or public information).

Furthermore, even assuming for the sake of argument that Space Data properly alleged that Google used Space Data's confidential information in connection with Project Loon, Space Data does not allege any facts that support an inference that the NDA prohibited that use. This is a crucial omission because the NDA explicitly limits Google's obligations and gives Google permission to use Space Data's information in a variety of circumstances. If Google used information that was disclosed under the NDA in a manner that is authorized by the NDA, then Space Data cannot possibly claim that Google's use constitutes misappropriation of trade secrets (or breach of contract, as discussed below). Misappropriation, by definition, requires use *without* consent. *See* Cal. Civ. Code § 3426.1(b)(2)(B)(ii); 18 U.S.C. § 1839(5)(B).

---

[7] As noted, Space Data's asserted '941 patent appears to disclose Space Data's business model, among other information that Space Data now suggests is secret: "*The present invention is designed to provide substantially 100% coverage* and can be compatibly combined with existing wireless carrier systems and networks such that the high density build-out by prior paging system carriers handles the high population density geographic areas and the low population density or remote areas, wherever they might be located within the contiguous geographic area, are handled by the inventive SNS [balloon-based] system." FAC Ex. G ('941 patent) at 7:44-51 (emphasis added); *see also id.* at 6:58-7:43.

10
DEFENDANTS' MOTION TO DISMISS
Case No. 5:16-cv-03260-BLF

1125747

Under the parties' NDA, Google is permitted to "develop products or services related to or similar to the subject matter of [Space Data's] Confidential Information." Werdegar Decl. Ex. A ¶ 8. Thus, the mere fact that Google decided to develop its own balloon-based communications platform does not support any inference of wrongdoing. Furthermore, the NDA expressly allows Google to use any "information that is retained in the unaided memories of Google employees" at any time. *Id*. Space Data's complaint, however, is devoid of factual allegations establishing that Google used Space Data's "Confidential Information" instead of information retained in its employees' unaided memory, as expressly permitted. Additionally, Google's confidentiality obligations under the NDA expired three years after receipt of Space Data's allegedly confidential information—that is, by February 2011 at the latest, since that is three years after the parties' discussions definitively concluded. *Id.* ¶ 7; FAC ¶ 31. Yet Space Data does not allege any facts establishing that Google misused any Space Data information within the NDA's limited, three-year confidentiality period.

In sum, Space Data's First Amended Complaint lacks any factual allegations establishing the use of Space Data's information in connection with Project Loon, much less any use that was not in compliance with the parties' NDA. Space Data therefore fails to sufficiently allege trade secret misappropriation under either CUTSA or the DTSA. *See S. Cal. Inst. of Law*, 2011 WL 1296602, at *8; *Farhang*, 2010 WL 2228936, at *14-15.

**C.     The DTSA does not apply to the conduct at issue.**

Space Data's claim for misappropriation under the DTSA is deficient and must be dismissed for the additional, independent reason that the DTSA does not apply to Google's alleged conduct. By its express terms, the DTSA only applies to acts of misappropriation that occurred on or after May 11, 2016, the date of the DTSA's enactment: "The amendments made by this section shall apply with respect to any misappropriation of a trade secret for which any act occurs on or after the date of the enactment of this Act." Pub. L. No. 114-153, 130 Stat 376, 382; *see also id.* at 385 (stating that the date of enactment is May 11, 2016); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) ("[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.").

1125747

Therefore, to state a valid claim under DTSA, Space Data must allege "a prohibited 'act' occurring ***after May 11, 2016***." *Adams Arms,* 2016 WL 5391394 at \*6 (emphasis added); *accord Dazzle Software II, LLC v. Kinney*, No. 16-cv-12191, 2016 WL 6248906, at \*1 (E.D. Mich. Sept. 22, 2016).

Space Data has not satisfied—and cannot satisfy—this requirement. In its First Amended Complaint, Space Data does not allege any specific acts by Google post-dating May 11, 2016. Rather, Space Data alleges that it disclosed its trade secret information to Google between December 2007 and February 24, 2008, and generally asserts that Google used that information to "advance … the development of Defendants' Project Loon" long before the May 11, 2016 enactment of the DTSA. *See* FAC ¶¶ 25-31, 33, 35, 37. These allegations of pre-enactment conduct, even they were if otherwise sufficient, do not state a valid claim under the DTSA. *See Dazzle Software II*, 2016 WL 6248906, at \*1 (dismissing DTSA claim based on pre-enactment conduct); *see also Adams Arms*, 2016 WL 5391394 at \*7 (concluding that plaintiff could not state a misappropriation by acquisition claim under the DTSA because "the facts indicate that Defendants acquired all information well prior to May of 2016").

Moreover, Space Data cannot possibly allege "a prohibited 'act' occurring after May 11, 2016," *Adam Arms*, 2016 WL 5391394 at \*6, because in 2016 Google had no duty to treat Space Data's information as confidential. Google's confidentiality obligations under the NDA expired by or before February 2011—three years after the conclusion of the parties' discussions under the NDA and years ***before*** the effective date of the DTSA. Werdegar Decl. Ex. A ¶ 7; FAC ¶ 31. In other words, at all times since the enactment of the DTSA, Google has been free to use or disclose any information it may have received from Space Data. For this reason, any attempt by Space Data to amend its DTSA claim would be futile as "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim[.]" *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997) (internal quotations omitted). The Court therefore should dismiss Space Data's DTSA claim with prejudice. *See id.* (dismissal without leave to amend is appropriate when amendment would be futile).

### D. Space Data fails to state a claim for breach of contract

To state a claim for breach of written contract, a plaintiff must plead facts that establish "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). "[B]oilerplate allegations of breach are insufficient." *Pellerin*, 877 F. Supp. 2d at 990; *accord Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819 SC, 2011 WL 5244716, at *5 (N.D. Cal. Nov. 3, 2011). Rather, to adequately plead a breach of contract claim, the complaint must set forth *facts* showing that the defendant's conduct was inconsistent with the contract's terms. In *Sensible Foods*, for example, the plaintiff alleged that the defendant had breached a confidentiality agreement by "disclosing all or a portion of Plaintiff's Confidential Information without the express or implied consent of Plaintiff," but the Court held that this allegation was inadequate because the plaintiff did not plead any facts regarding "what information was allegedly disclosed or how it was disclosed." *Id*.

Despite these pleading requirements, Space Data alleges breach of the parties' NDA based on nothing more than blanket assertions that it is entitled to relief. The whole of Space Data's allegations related to Google's alleged breach are as follows: "[T]he creation of Project Loon breaches the terms of the NDA," "Space Data is informed and believes that Defendants have unlawfully utilized Space Data's confidential information and trade secrets in violation of the NDA," and "Defendants have breached their contractual obligations to Space Data under the NDA by, *inter alia*, failing to adhere to the express confidentiality provisions it contained." FAC ¶¶ 34, 38 & 75.

Just as Space Data does not adequately plead misappropriation, Space Data does not offer any factual allegations about what information Google used, how Google used that information, or how that purported use violated the NDA's confidentiality provisions. In particular, Space Data's complaint contains no facts indicating whether Google used any confidential information within three years of its disclosure or used any information that was not retained in its employees' unaided memory. Absent any such facts, Space Data's allegations "do not permit the court to infer more than the mere possibility" of Google's misconduct. *Iqbal*, 556 U.S. at 679. The Court

therefore should dismiss Space Data's claim for breach of contract.  *See Pellerin*, 877 F. Supp. 2d at 990-91 (explaining that "Honeywell has not pled facts to establish a breach of the Employment Agreement or NDA, because it has not pled facts to establish misappropriation"); *Sensible Foods*, 2011 WL 524476 at *4-5; *Farhang*, 2010 WL 2228936, at *6-7 (dismissing claim for breach of NDA because complaint "does not contain facts suggesting that [defendant's] development of applications was outside the scope of what it was permitted to do under the joint venture agreement.").

## V. CONCLUSION

For the foregoing reasons, the Court should grant Google's motion to dismiss Counts II, III, and IV of Space Data's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated:  December 2, 2016

Respectfully submitted,
KEKER & VAN NEST LLP

By:  /s/ Matthew M. Werdegar
ROBERT A. VAN NEST
CHRISTA M. ANDERSON
MATTHEW WERDEGAR
EUGENE M. PAIGE
MATTHIAS A. KAMBER
THOMAS E. GORMAN
LEAH M. PRANSKY

Attorneys for Defendants
ALPHABET INC. and GOOGLE INC.