PILLSBURY WINTHROP SHAW PITTMAN LLP
KIRKE M. HASSON (CA State Bar No. 061446)
COLIN T. KEMP (CA State Bar No. 215408)
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone: +1 (415) 983-1000
Facsimile: +1 (415) 983-1200
E-mail: kirke.hasson@pillsburylaw.com
E-mail: colin.kemp@pillsburylaw.com

H. KEETO SABHARWAL (*pro hac vice*)
DAVID N. PATARIU (CA State Bar No. 270708)
1200 Seventeenth Street NW
Washington, DC 20036-3006
Telephone: +1 (202) 663-8000
Facsimile: +1 (202) 663-8007
E-mail: keeto.sabharwal@pillsburylaw.com
E-mail: david.patariu@pillsburylaw.com

Attorneys for Plaintiff, Space Data Corporation

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| SPACE DATA CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>X, ALPHABET INC., and GOOGLE INC.,<br><br>    Defendants. | Case No. 5:16-cv-03260-BLF<br><br>SPACE DATA'S OPPOSITION TO GOOGLE'S MOTION TO DISMISS<br><br>Date:       February 16, 2017<br>Time:      9:00 a.m.<br>Dept.:      Courtroom 3, 5th Floor<br><br>Trial Date:  June 3, 2019<br><br>Hon. Beth Labson Freeman |

**Table of Contents**

Page

I. INTRODUCTION AND BACKGROUND. .................................................................... 1
II. RESPONSE TO ISSUES PRESENTED. ..................................................................... 4
III. LEGAL STANDARDS. ................................................................................................ 4
IV. ARGUMENT. ............................................................................................................... 5
    A. Space Data Adequately Alleged its CUSTA Claim. ........................................... 5
        1. The Complaint identifies Space Data's trade secrets with sufficient particularity. ................................................................................................ 6
        2. And the Complaint adequately alleged Google's acts of misappropriation. ........................................................................................ 8
    B. Space Data Adequately Alleged its DTSA Claim. .............................................. 9
    C. Space Data's Breach of Contract Claim is also Sufficient ................................ 10
    D. Google's Duty of Confidentiality Under the NDA has Not Expired................. 11
    E. Google's "Residuals" Clause Argument sets an Impossible Pleading Bar ....... 13
    F. In the Alternative, the Court should Grant Leave to Amend............................. 15
V. CONCLUSION. .......................................................................................................... 15

**Table of Authorities**

Page(s)

Cases

*Advanced Modular Sputtering*,
    132 Cal. App. 4th 826 (2005) .................................................................................................. 7

*Allarcom Pay Television. Ltd. v. Gen. Instrument Corp.*,
    69 F.3d 381 (9th Cir. 1995) ................................................................................................. 4, 5

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .................................. 3, 4, 8-9, 13

*Autodesk, Inc. v. ZWCAD Software Co., Ltd.*,
    No. 5:14–cv–01409–EJD, 2015 WL 2265479 (N.D. Cal. May 13, 2015) .......... 5, 6, 8, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................................. 4

*Buschman v. Anesthesia Bus. Consultants LLC*,
    42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014) ...................................................................... 10

*Cadence Design Sys., Inc. v. Avant! Corp.*,
    29 Cal. App. 4th 215 (2002) .................................................................................................. 10

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010) ................................................................................................ 5

*DeVaul et. al. v Knoblach*, USPTO Patent Interference No. 106,058 (JTM),
    order (filed Sept. 19, 2016) .................................................................................................... 8

*Diodes, Inc. v. Franzen*,
    260 Cal. App. 2d 244 (1968) .................................................................................................. 5

*DJO Global, Inc. v. Glader*,
    No. 3:16-cv-02208-CAB (NLS), order (S.D. Cal. filed Dec. 22, 2016) ........................... 9

*DVD Copy Control Ass'n Inc. v. Bunner*,
    31 Cal. App. 4th 864 (2003) .................................................................................................. 14

*Hal Roach Studios. Inc. v. Richard Feiner & Co., Inc.*,
    896 F.2d 1542 (9th Cir. 1989) ................................................................................................ 4

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ................................................................................................ 5

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ................................................................................................ 4

*Mission Measurement Corp. v. Blackbaud, Inc.*,
    No. 16 C 6003, 2016 WL 6277496 (N.D. Ill. Oct. 27, 2016) ........................................ 8-9

*Soc. Apps, LLC v. Zynga, Inc.*,
  No. 4:11-CV-04910 YGR, 2012 WL 2203063 (N.D. Cal. June 14, 2012) ..................... 15

*Van Buskirk v. Cable News Network, Inc.*,
  284 F.3d 977 (9th Cir. 2002) ..................................................................................... 5

*VIA Techs., Inc. v. Asus Computer Int'l*,
  No. 14CV03586BLFHRL, 2016 WL 5930280 (N.D. Cal. Oct. 12, 2016) ........................ 7

*Vinyl Interactive, LLC v. Guarino*,
  No. C 09-0987 CW, 2009 WL 1228695 (N.D. Cal. May 1, 2009) .................................... 8

<u>Statutes and Codes</u>

California Code of Civil Procedure
  Section 2019.210 ...................................................................................................... 4
  Section 3426 .................................................................................................... *passim*

Defend Trade Secrets Act of 2016
  Pub. L. No. 114-153, § 2(e) ....................................................................................... 9

Uniform Trade Secrets Act ............................................................................... 10, 14, 15

United States Code
  Title 18, Section 1839 ........................................................................................ *passim*

<u>Rules and Regulations</u>

Federal Rules of Civil Procedure
  Rule 12(b)(6) ............................................................................................................ 4

<u>Other Authorities</u>

Wall Street Journal ............................................................................................................ 3

I. **INTRODUCTION AND BACKGROUND**.

Space Data's pleading should survive this motion because Space Data has pled "factual content that allows the court to draw the reasonable inference that [Google] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In particular, Space Data's operative pleading—the First Amended Complaint (Dkt. 28, "Complaint")—explains the following:

Google expressed interest in investing in Space Data in the fall of 2007. Compl., ¶ 25. So the parties executed a Mutual Confidentiality and Non-Disclosure Agreement ("NDA") in December 2007 to protect Space Data's Confidential Information, which the parties knew Space Data would be disclosing to Google in connection with their business discussions. Compl., Ex. A; *see also id.*, ¶¶ 25-26. Shortly thereafter, Space Data began providing Google with access to Space Data's Confidential Information for the limited purpose of Google's potential investment. Google also made plans to visit Space Data's Arizona headquarters on February 15, 2008. *Id.*, ¶¶ 26, 27.

  

**Figure 1.** Larry Page, and Serge Brin, the co-founders of Google, and Phil Gossett (Google's technical lead for major wireless projects) at Space Data, in photos taken at Space Data's Arizona headquarters on Feb. 15, 2008. *See* Compl., Ex. C.

It was planned as a visit by a handful of business development Google personnel.  But in the days before the visit, things changed.  The few business development personnel swelled to 11-13 Google representatives, including both of Google's founders and some of its top engineers.  Compl., ¶ 27, Ex. C.

Google's motion to dismiss understates its high-powered team, calling it "a group from Google."  Dkt. 46 ("Motion"), 4:11-12.  That is like calling the D-Day invasion armada a "landing party."  This was suddenly serious due diligence by Google.  Moreover, to ensure they would not have to rely on their unaided memory of what they witnessed at Space Data, the Google team brought cameras.  *See* Compl., ¶¶ 27-29, Ex. C.  They blanketed the Space Data facility, photographed Space Data's technology and systems, and quizzed Space Data's engineers and management about their operations and insights.  *See id.*



**Figure 2** Google employee taking photos while inspecting Space Data's offices and manufacturing facilities.  *See* Compl. Ex. C, page 9 (red box added).

In so doing, Google gathered a variety of Space Data's trade secrets and confidential information, including information relating to the operation of its network operations center, its methodologies for collecting and using wind data for balloon control, and its business.  Compl. ,

¶¶ 26-29.[1]  And Space Data confirmed as much when, in a February 19, 2008, follow up email to Google, Space Data catalogued nineteen categories of confidential information that it disclosed to Google under the NDA, concluding "[i]t seems that we discussed quite a bit of information with you as to our technologies and plans for the future and we would like to keep them confidential."  *Id.*, Ex. E.; *see also id.*, ¶¶ 2, 6-30.

On February 24, 2008—a little more than a week after it descended on Space Data—Google abruptly shut down the parties' discussions:  Minnie Ingersoll (a member of the Google due diligence team) told Space Data that Google would not engage in further discussions with Space Data "in the near term."  Compl. ¶ 31.  Google was breaking off the discussions because—ostensibly—Space Data had disclosed the parties' confidential negotiations to the Wall Street Journal (something Space Data denies).  *Id*.

Google was done with Space Data.  But Google wasn't done with Space Data's intellectual property.  In June 2013, Google would announce its launch of "Project Loon."  The similarities between Project Loon and Space Data's technology were and are uncanny.  And they were not by chance, as Google would tacitly suggest in a 2014 "TED" interview.  Compl. ¶ 35.

Specifically, in his March 21, 2014 TED interview about Project Loon with journalist Charlie Rose, Larry Page proclaimed that Google had been thinking of the idea of launching balloons for "<u>five years or more</u>."  Compl., ¶ 35 (emphasis added).  Of course, that "five years or more" point in time put Google's "thinking of the idea of launching balloons" right around and after its visit to Space Data.

Space Data filed this action for damages and injunctive relief because Project Loon is not the product of Google's creative generous.  Rather, it is the product of Google's intellectual property violations asserted in the Complaint, which includes the trade secret misappropriation and NDA breach counts subject to this Motion, as well as a patent infringement count.  Compl., ¶¶ 4, 5, 33-38.  That the Complaint does not have endless, exhaustive detail should be expected—Google overwhelmed Space Data in February 2008, Google has never shared the

---

[1] Google had already received access to Space Data's proprietary financial information.  Compl. ¶ 26.

- 3 -

photo-journal of Space Data's facilities that it surely created, and Google kept Project Loon as secret as its "code name" would suggest (until its public unveiling in June 2013). And *Iqbal* and *Twombly* do not require the Complaint to have the detail Google demands. Google knows what it did; and it knows what this case is about. The Motion should be denied.

II.     RESPONSE TO ISSUES PRESENTED.

As explained below, where, as here, Space Data has provided reasonable identification of its misappropriated trade secrets, and information about Google's misappropriation thereof, the Complaint is sufficient to survive a Rule 12(b)(6) challenge. In addition, Google's interpretation of the NDA—an agreement intended to defend against misuse of proprietary information—effectively turns the NDA into a weapon to justify such misuse. Finally, concurrently with the filing of this Opposition, Space Data is serving its California Code of Civil Procedure section 2019.210 trade secret disclosure on Google, which provides further information concerning Space Data's trade secrets.

III.    LEGAL STANDARDS.

In evaluating a Rule 12(b)(6) motion to dismiss, the Ninth Circuit requires courts to "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031 (9th Cir. 2008) (reversing order granting Rule 12(b)(6) motion). The Supreme Court has held that while a complaint "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

When resolving a motion to dismiss for failure to state a claim, review is generally limited to the four corners of the complaint. *Allarcom Pay Television. Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995). The court may, and in this instance should, look to exhibits attached to the complaint (*see Hal Roach Studios. Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989)), and documents incorporated by reference into the complaint. *See Van Buskirk v.Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Documents upon whose contents the complaint necessarily relies—even if the complaint does not explicitly allege their contents—and whose authenticity and relevance are uncontested, are considered incorporated by reference. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005).

IV. <u>ARGUMENT</u>.

Google's Motion should be denied because Space Data has pled plausible claims for relief under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.* ("CUTSA") and the Defend Trade Secrets Act, 18 U.S.C. § 1836(b) ("DTSA").  Google's Motion raises five main issues:  (1) whether the Complaint adequately pled trade secret misappropriation under CUSTA; (2) whether the Complaint adequately pled trade secret misappropriation under the DTSA; (3) whether the Complaint adequately pled a breach of the parties' NDA; (4) whether the expiration of the three-year "duty to protect" (NDA, ¶ 7) also somehow terminated Google's separate obligations not to use or disclose confidential information (NDA, ¶ 4); and (5) whether the NDA's "residuals" clause (NDA, ¶ 8) excuses Google's misconduct.  Although the fourth and fifth issues are raised within Google's arguments directed to the first three, Space Data addresses the latter two issues separately to avoid repetition—since they are common to the three pled causes of action.

    A.   <u>Space Data Adequately Alleged its CUSTA Claim</u>.

To plead a CUTSA claim, a plaintiff must allege (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff. *Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-CV-01409-EJD, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015). At the pleading stage, a "plaintiff need not 'spell out the detail

Case No. 5:16-cv-03260-BLF     OPPOSITION TO GOOGLE'S MOTION TO DISMISS

of the trade secret,' but must minimally provide 'reasonable notice of the issues which must be [met] at the time of trial and [. . .] provide reasonable guidance in ascertaining the scope of appropriate discovery.'" *Id.* at *5 (citing *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 251-52 (1968) (ellipses in original)). "Moreover, courts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." *Id.* (internal quotation and citation omitted).

### 1. The Complaint identifies Space Data's trade secrets with sufficient particularity.

Space Data need not "define every minute detail of its claimed trade secret at the outset of the litigation," although it "must make some showing that is reasonable, i.e., fair, proper, just and rational . . . to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits." *Advanced Modular*, 132 Cal. App. 4th at 835–36. "What is required is not absolute precision, but 'reasonable particularity,'" the degree of which "will differ, depending on the alleged trade secrets at issue in each case." *Advanced Modular*, 132 Cal. App. 4th at 836.

The Complaint describes with reasonable particularity the subject matter of its proprietary intellectual property, including its trade secrets, and that information was also identified in the list of Confidential Information sent to Google on February 24, 2008. *See* Compl., ¶¶ 20, 28, 29, 30; Ex. D (Redacted Slide 11 from February 15, 2008 Space Data Presentation to Google); Ex. E (*e.g.*, item 7 (cost structure detail), item 9 (wind knowledge), item 12 (photographs taken by Google inside Space Data's facilities)). The Complaint's allegations and exhibits distinguish—expressly and through permissible inferences—Space Data's intellectual property, including its trade secrets, from information generally known in the trade or of special knowledge of those persons who are skilled in the trade.

Specifically, Space Data invested millions of dollars and countless engineering hours to develop information and data about wind currents and patterns and balloon altitude control

- 6 -

techniques (the controls including the identification and monitoring of key parameters (*e.g.*, time in flight, radio link range, altitudes, horizontal and vertical speeds, power levels, heat generated, temperatures of key components, vent and ballast control parameters, resource conservation, time of day, sun exposure, detection of problems in the field, radio link budget parameters, relationship to ground weather and a myriad of other parameters Space Data discovered were critical as it deployed and operated the world's first balloon network providing wireless services), and include autohover control mechanisms, and graphics/human interfaces to monitor and control same), allowing Space Data to float and control and balloon platforms continually over a specific geographic area. *See* Compl., ¶¶ 2, 3, 17-24. This sophisticated scientific data about wind current gradients—which is not publicly available—is very important to the success of commercially-viable balloon communication technology. *See id.* Furthermore, Space Data's command center, which Google visited and photographed, shows the detailed processes and systems for detecting wind patterns and implementing altitude control technology through engineering protocols. *See id.* And, with respect to its cost structure and business strategies, Space Data developed over many years extensive technology to make both the engineering and business portions of its business efficient, the result of which were disclosed under the NDA to Google. *See id.*, ¶ 26. And those allegations also detail Space Data's efforts to maintain the secrecy of its trade secrets (*see id.*, ¶¶ 18 (information protection), ¶ 20 (employee agreements), ¶ 21 (Department of Defense Facility Clearance and audits)), as well as the value of the trade secrets. *See id.*, ¶¶ 22-24.[2]

The Complaint therefore alleged the existence of trade secrets, and describes them in sufficient detail to "allow the trial court to control the scope of subsequent discovery . . . and allow [the parties] a fair opportunity to prepare and present their best case of defense." *Advanced Modular Sputtering*, 132 Cal. App. 4th 826, 835-36 (2005); *VIA Techs., Inc. v. Asus Computer Int'l*, No. 14CV03586BLFHRL, 2016 WL 5930280, at *3–4 (N.D. Cal. Oct. 12, 2016).

---

[2] These efforts also, of course, include the NDA between the parties here, which still has confidentiality obligations in effect to this day. *See* Section III.D and E, below.

2. <u>And the Complaint adequately alleged Google's acts of misappropriation</u>.

Misappropriation under CUSTA can occur in one or both of two modes: wrongful (1) acquisition and/or (2) use without consent. Cal. Civ. Code § 3426.1(b). The Complaint plainly alleges Google's improper use of Space Data's trade secrets to develop and advance the development timeline for Project Loon. *See* Compl., ¶¶ 29, 33, 34, and 38. Google's use of Space Data's Confidential Information and misappropriation of Space Data's intellectual property went far beyond what was permitted in the NDA, as discussed in Sections III.D and E, below.

Contrary to Google's claims (Motion, 9), there is no requirement that Space Data plead exactly how Google misappropriated the alleged trade secret. *Autodesk, Inc.,* 2015 WL 2265479, at *6. Judge Wilken reached a similar conclusion when granting a trade secret owner's motion for a preliminary injunction in *Vinyl Interactive, LLC v. Guarino*, No. C 09-0987 CW, 2009 WL 1228695, at *8 (N.D. Cal. May 1, 2009). There, the court rejected defendant's argument that the plaintiff's failure to present evidence of defendant's use of the trade secrets was fatal to plaintiff's motion: "[D]iscovery has not yet commenced, and it would be unreasonable to require Vinyl to demonstrate in connection with the present motion the precise ways in which Defendants may have used Vinyl's trade secrets, <u>given that Defendants are the only ones who possess such information</u>. At this point, it is sufficient for Vinyl to demonstrate a fair likelihood that, through [one Defendant], [the other Defendant] acquired proprietary information of Vinyl's that could be used to Vinyl's disadvantage."

That principle has even greater meaning here, at the pleading stage: Google was eager to explore new technologies in 2008; it found one it liked (Space Data), and proceeded to obtain core confidential information from it under and NDA. Then, Google went dark on Space Data, only to emerge several years later with a knock off technology (so much so that the USPTO has ordered that priority for claims in a Google patent on the technology be awarded to Space Data as the first inventor*; see DeVaul et. al. v Knoblach*, USPTO Patent Interference No. 106,058 (JTM), order (filed Sept. 19, 2016) (attached as Ex. A)). Space Data does not have absolute certain about how Google used Space Data's trade secrets, but Space Data's Complaint "allows

- 8 -

for the reasonable inference that [Google] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Mission Measurement Corp. v. Blackbaud, Inc.*, No. 16 C 6003, 2016 WL 6277496, at *6 (N.D. Ill. Oct. 27, 2016) (denying defendants' motion to dismiss trade secret claim, finding plaintiff adequately alleged specific information supporting its trade secret misappropriation claims, including the dates and ways plaintiff shared information with defendants after signing a confidentiality and non-disclosure agreement).

      B.     <u>Space Data Adequately Alleged its DTSA Claim</u>.

The elements of misappropriation under DTSA are similar to those under CUSTA. *Compare* 18 U.S.C. § 1839(5), *with* Cal. Civ. Code § 3426.1(b).  DTSA's definition of a trade secret is broad, and includes information of any form, regardless of "how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing," and of any type, "financial, business, scientific, technical, economic, or engineering information," so long as: (1) the information is actually secret, because it is neither known to, nor readily ascertainable by, another person who can obtain economic value from the disclosure or use of the information; (2) the owner has taken "reasonable measures" to maintain the secrecy; and (3) independent economic value is derived from that secrecy. 18 U.S.C. § 1839(3).  DTSA also defines "misappropriation" as: "(A) acquisition of a trade secret of another person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent. . . ." 18 U.S.C. § 1839(5)(A)-(B). Thus, for the reasons stated in Section IV.A., above, the Complaint satisfies DTSA's pleading requirements.

The real argument between the parties does not pertain to differences in substantive scope between CUSTA and the DTSA.  Instead, the argument is over Google's contention that Space Data's Complaint does not make out a DTSA violation because "the DTSA only applies to acts of misappropriation that occurred on or after May 11, 2016, the date of the DTSA's enactment[.]" (Google Br. at 11 (citing Pub. L. No. 114-153, § 2(e))).  Admittedly, Space Data's Complaint includes allegations of pre-DTSA conduct.  However, inclusion of pre-enactment conduct in a DTSA claim does not prohibit a DTSA claim outright.  Instead, such a claim can

stand if there is <u>continued use</u> of a trade secret after DTSA's enactment date. *See* Order on Defendants' Motion to Dismiss in *DJO Global, Inc. v. Glader*, No. 3:16-cv-02208-CAB (NLS) (S.D. Cal. filed Dec. 22, 2016) (attached as Ex. B hereto).

The Complaint alleges that Google used Space Data's trade secrets to advance Project Loon, including after the DTSA effective date of May 11, 2016, and that Google continues to benefit from this use. *See* Compl., ¶ 33. In addition, the Complaint alleges Google misappropriated such confidential and trade secret information of Space Data in connection with the Project Loon business. And in its Prayer for Relief, Space Data asks that the Court enjoin Google's continuing and ongoing misconduct, *i.e.*, that the Court enjoin "the Defendants from <u>misappropriating</u> and/or <u>using</u> Space Data's confidential and trade secret information and trade secret to develop Project Loon or any other related business." Compl., at Prayer For Relief B.2; c*f. Cadence Design Sys., Inc. v. Avant! Corp.*, 29 Cal. App. 4th 215, 222 (2002) ("A misappropriation within the meaning of the UTSA occurs not only at the time of the initial acquisition of the trade secret by wrongful means, but also with each misuse or wrongful disclosure of the secret."). The Complaint is therefore adequate at this stage of the case.

   C. <u>Space Data's Breach of Contract Claim is also Sufficient</u>.

Space Data has also pled sufficient facts that would allow the Court to infer that Google breached its obligations under the NDA. To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) plaintiff's performance of the contract or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to the plaintiff. *Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014). Of those elements, Google only challenges the Complaint's allegation of breach.

The NDA states that the intent of the agreement is to "assure the confidentiality of such trade secrets and confidential or proprietary information." The NDA also establishes the parties' duty of confidentiality as to information designated as "Confidential Information" (NDA ¶ 4), and establishes that "No Party acquires any intellectual property rights under this Agreement" (NDA ¶ 8). Space Data's Complaint alleges that Google breached its NDA obligations through its unauthorized use of Space Data's trade secrets. Compl., ¶¶ 33, 38. Misappropriation of

Space Data's trade secrets and other confidential information, including those detailed in Exhibits D and E to the Complaint, is a material breach under the stated purpose of the NDA, and continues to advance Project Loon's development time.  *See* Compl., ¶ 33 ("Such activities have been to advance, among other things, the development of Defendants' Project Loon.").

Space Data has also alleged that it has been harmed by Google's breaches because, for example, Google is wrongfully competing directly or indirectly with Space Data's present and anticipated business.  *See* Compl., ¶ 39.

### D. Google's Duty of Confidentiality Under the NDA has Not Expired.

Google claims that its duty of confidentiality to Space Data under the NDA expired after three years, thus eviscerating all causes of action (save for patent infringement).  Google's interpretation of its corporate form NDA as freeing it from virtually all liability is incorrect. Google's reading of the NDA takes Paragraph 7 out of context—the full context of the NDA shows that the three year "duty to protect" in paragraph 7 is separate and distinct from Google's obligations to not use or disclose Confidential Information, which survive without expiration.

The NDA was entered into for the sole and exclusive purpose of engaging in "discussions and negotiations concerning a proposed acquisition of shares or assets of Space Data."  Compl. ¶ 25; *see also* Werdegar Decl., filed 12/2/16, Ex. A.  The NDA imposes several distinct obligations on Google. It distinguishes between obligations of confidence and restricted use, on the one hand, and obligations to "protect" the information, *e.g.*, from third party theft, on the other hand. There is a: duty to hold information in confidence (NDA ¶ 4, first sentence); duty to use the information only to evaluate a proposed transaction (NDA ¶ 4, second sentence); duty to "protect" confidentiality of the information (NDA ¶ 4, second "(i)"); and, duty to ensure secure storage to "protect" against theft or unauthorized access (NDA ¶ 4, second "(ii)").  Indeed, in its entirety, NDA ¶ 4 states:

> 4.   The Recipient shall hold in confidence, and shall not disclose to any person outside its organization (other than its affiliates and its and their respective agents, contractors, representatives or advisors (collectively, "Representatives") who have a need to know such information for the purposes of evaluating the Transaction): (i) any Confidential Information; (ii) the fact that discussions or negotiations between the Parties to this Agreement are taking or have taken place; (iii) any of the terms, conditions or other facts with respect to the subject matter of

>   this Agreement; or (iv) the fact that this Agreement exists or information has been requested or made available to the Recipient or its Representatives (except that either Party may make any disclosure otherwise prohibited under clauses (i), (ii), (iii) or (iv) above if, in the opinion of its legal counsel, such disclosure is required by applicable law or stock exchange regulation). The Recipient and its personnel shall use such Confidential Information only for the purposes set forth above. The Recipient will use the same degree of care, but no less than a reasonable degree of care, as the Recipient uses with respect to its own confidential information to: (i) protect the confidentiality of Confidential Information; and (ii) ensure that proper and secure storage is provided for all Confidential Information to protect against theft or unauthorized access.  [Emphasis added.]

Paragraph 6 does contemplate the potential for termination of the NDA upon notice, but even then the NDA survives with respect to Confidential Information previously disclosed:

>   6.      This Agreement shall remain in effect until it is terminated by either Party with thirty (30) days prior written notice.  Notwithstanding the foregoing, this Agreement shall survive with respect to Confidential Information that is disclosed before the effective date of termination.

Then, in Paragraph 7, the NDA provides a three year term, but only for a specific "duty"—the duty to "protect" (a reference to one or, perhaps, both of duties to "protect" in Paragraph 4, second (i) and (ii)).  Thus it is only the duty to "<u>protect</u>" that  expires three years after disclosure.  So, for example, Google might not be liable if it took insufficient security measures to prevent a third party's theft.  But any expiration of the "duty to protect" does not relieve Google of its separate and distinct (1) duty to "hold in confidence" Confidential Information or (2) duty to use information only to evaluate a proposed transaction.  NDA, ¶ 4.  Those obligations never terminated, and would in any event survive any termination of the NDA (¶ 6) for the Confidential Information at issue. This point is punctuated by Paragraph 8, which says Google does not acquire any intellectual property rights under the agreement, *i.e.*, no license or right to use:

>   8.      No Party acquires any intellectual property rights under this Agreement (including, but not limited to, patent, copyright, and trademark rights) except the limited rights necessary to carry out the purposes set forth in this Agreement. Notwithstanding anything herein to the contrary, Company recognizes that Google may in the future develop products or services related to or similar to the subject matter of Confidential Information disclosed under this Agreement. Accordingly, Google may use Residuals for any purpose, including without limitation, use in the acquisition, development, manufacture, promotion, sale, or maintenance of products and services; provided that this right to Residuals does not represent a license under any intellectual property and/or proprietary rights of the Company. The term "Residuals" means information that is retained in the

unaided memories of Google's employees or Representatives who have had access to Confidential Information pursuant to the terms of this Agreement. A person's memory is unaided if such person has not intentionally memorized the Confidential Information for the purpose of retaining and subsequently using or disclosing it.

Nothing in Paragraph 8 undercuts the ongoing duty to "hold in confidence" and not to use for any purpose (other than the proposed transaction) the trade secrets or other Confidential Information. Space Data disclosed.[3] Thus, Google's argument based on Paragraph 7 is premised on a misreading of the NDA. After all, if Google's reading were correct, there would be no reason for the survival provisions of Paragraph 6.

Because the NDA should be interpreted so that each Paragraph has meaning and is valid (*see* NDA, ¶ 15), the expiration of the "duty to protect" under Paragraph 7 should not be read so broadly that it effectively eliminates the confidentiality obligations that Paragraph 6 was intended to preserve. And certainly that should not be the case at the Rule 12 stage, where all inferences should favor Space Data and there has been no evidence about the parties' understandings.

E. Google's "Residuals" Clause Argument sets an Impossible Pleading Bar.

Paragraph 8 of the NDA defines "Residuals" as "information that is retained in the unaided memories of Google's employees or Representatives who have had access to Confidential Information pursuant to the terms of this Agreement. A person's memory is unaided if such person has not intentionally memorized the Confidential Information for the purpose of retaining and subsequently using or disclosing it." Werdegar Decl., Ex. A. Google cites the "Residuals" clause and argues the Complaint does not allege sufficient facts to overcome the possibility that Google developed Project Loon—a permitted similar subject matter to Space Data's Confidential Information—merely on unaided memory. Motion, 11, 13. But here, again, Google's interpretation of the NDA goes too far. Space Data acknowledges the "unaided memory" language, but Space Data does not have to establish at the pleading stage what is and is not in the brains of Google employees. *Iqbal* does not require Space Data to be clairvoyant. *See Iqbal*, 129 S. Ct. at 1949. The factual allegations and reasonable inferences are to be construed in

---
[3] Paragraph 8's "Residuals" clause is addressed in Section IV.F., below.

- 13 -

Space Data's favor. And Google cannot deny the fact: It visited Space Data under an NDA to obtain Confidential Information and took loads of photographs. It is reasonable to conclude Google did not simply delete the photos or the other confidential information Google obtained— and that conclusion is supported by Google's 2014 TED interview when it described Project Loon in terms hauntingly similar to everything Google learned at Space Data under lock and key in 2008. Indeed, other portions of the interview were just as revealing as Page's "five years or more" quote (*see* Section I, above). At one point interviewer Charlie Rose asked, "But are you at the mercy of the wind?" Mr. Page responded: "Yeah, but it turns out, that we did some weather simulations which probably hadn't really been done before, and if you control the altitude of the balloons, which you can do by pumping air into them or other ways, you can actually control roughly where they go, and so we think we can build a worldwide mesh of these balloons over the whole planet." *Id.* (emphasis added). Those concepts are precisely what Google had been learning from Space Data.

Indeed, whether something was or was not in the unaided memory is not suitable for resolution at the pleading stage. How much of what Google used in Project Loon was just from "unaided memory" and not confidential, or from the photographs taken by Google, the business plans, and other information shared by Space Data (all of which are clearly not "unaided memory," and are protected trade secrets or confidential information), is a subject for discovery and trial. *See Autodesk, Inc.*, 2015 WL 2265479, at *6 (motion to dismiss the complaint denied). Google may find itself well-positioned after discovery for a motion for summary judgment on this and other points. But that is for another day.

Finally, the residuals clause in NDA ¶ 8 is further limited because it does not grant any license to the recipient. *See, e.g.*, NDA ¶ 8 ("No Party acquires any intellectual property rights under this Agreement" and "this right to Residuals does not represent a license under any intellectual property and/or proprietary rights of the Company"). Thus, if discovery shows that Google used information disclosed under that NDA that it had only in "unaided memory," that might absolve Google of the NDA breach claim, but not of the trade secret claims. That is because trade secrets are "intellectual property" that were excluded. *See, generally, DVD Copy*

*Control Ass'n Inc. v. Bunner*, 31 Cal. App. 4th 864, 879-80 (2003) (trade secrets are intellectual property); *see also* USPTO Trade Secret Policy ("A fourth type of intellectual property, in addition to patents, trademarks, and copyrights, is trade secrets .").[4]  Thus, even if Google were right about what this "residuals" clause includes, that would not defeat the trade secret claim.

### F. In the Alternative, the Court should Grant Leave to Amend.

"The nature of a trade secrets claim is such that pleading is necessarily general. To require more detail would be to force a plaintiff to disclose, in a publicly filed pleading, the very secrets it seeks to protect . . . . The section 2019.210 disclosure defines the trade secrets at issue in the litigation with sufficient specificity that the defendant, as well as the court, is notified of the scope of the matters relevant to the claims." *Soc. Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *2 (N.D. Cal. June 14, 2012).  Consistent with these teachings, Space Data is serving its section 2019.210 disclosure to Google concurrently with the filing of this Opposition.  While Space Data believes its Complaint is sufficient, were the Court to conclude the pleading had shortcomings, Space Data would respectfully request leave to address them through further amendments.

## V. CONCLUSION.

For all of the foregoing reasons, Google's Motion to Dismiss should be denied.

Dated: January 12, 2017        PILLSBURY WINTHROP SHAW PITTMAN LLP

    */s/* Colin T. Kemp
    Colin T. Kemp
    Attorneys for Plaintiff,
    SPACE DATA CORPORATION

---

[4] Available at https://www.uspto.gov/patents-getting-started/international-protection/trade-secret-policy.