1  SPENCER HOSIE (CA Bar No. 101777)
   shosie@hosielaw.com
2  DIANE S. RICE (CA Bar No. 118303)
   drice@hosielaw.com
3  LYNDSEY C. HEATON (CA Bar No. 262883)
   lheaton@hosielaw.com
4  DARRELL R. ATKINSON (CA Bar No. 280564)
   datkinson@hosielaw.com
5  HOSIE RICE LLP
   600 Montgomery Street, 34th Floor
6  San Francisco, CA 94111
7  (415) 247-6000 Tel.
   (415) 247-6001 Fax
8
9  *Attorneys for Plaintiff*
   *SPACE DATA CORPORATION*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| SPACE DATA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ALPHABET INC., and GOOGLE INC.,<br><br>Defendants. | Case No. 5:16-cv-03260-BLF<br><br>**PLAINTIFF SPACE DATA CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Judge:    Hon. Beth Labson Freeman<br>Date:     July 6, 2017<br>Time:     9:00 a.m.<br>Dept.:    3, Fifth Floor<br><br>Date Filed: June 13, 2016<br>Trial Date: June 3, 2019 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY ....................................................................................1

II. STATEMENT OF THE FACTS ...........................................................................................2

III. THE LAW ..............................................................................................................................2

IV. ARGUMENT .........................................................................................................................5

    A. The Complaint Sets Forth Space Data's Trade Secrets With Robust Specificity ...................................................................................................................5

        1. Structured Wind Data ..................................................................................5

        2. The Hover Trade Secret ...............................................................................7

        3. Financial Documents ...................................................................................7

        4. Thermal Management ..................................................................................8

    B. Distinguishing the Private From the Public ........................................................9

    C. Space Data Pled Misappropriation With Requisite Specificity .......................12

    D. Space Data Has Alleged a Continuing Violation Under DTSA .......................13

    E. Space Data Has Alleged a Breach of the NDA ..................................................14

V. CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**            **Page**

*AllCells, LLC v. Zhai*,
    No. 16-cv-07323-EMC, Dkt. No. 47 (N.D. Cal. Mar. 27, 2017)..................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................................2

*Autodesk, Inc. v. ZWCAD Software Co., Ltd.*,
    5:14-cv-01409-EJD, 2015 WL 2265479, at * 5 (N.D. Cal. May 13, 2015) ..............2, 4

*Avago Techs U.S. Inc. v. Nanoprecision Prods, Inc.*,
    16-cv-03737-JCS, 2017 WL 412524 (N.D. Cal. Jan. 31, 2017)..................................13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 545 (2007)...........................................................................................................2

*Biosuccess Co. Ltd. v. Pharmaceuticals*,
    No. 14-cv-00310 JAK (ANx), 2014 WL 12629696, at * 6-7
    (C.D. Cal. May 16, 2014) ................................................................................................3

*BladeRoom Grp Ltd. v. Facebook, Inc.*,
    --- F.Supp.3d ---, 2017 WL 1233555 at * 5 (N.D. Cal. Feb. 10, 2017) .........................4

*Brescia v. Angelin*,
    172 Cal. App. 4th 133 (2009) ............................................................................3, 6, 10

*Brocade Comm. Sys., Inc. v. A10 Networks, Inc.*,
    No. 10-cv-03428-LHK, 2011 WL 1044899 at * 5 (N.D. Cal. Mar. 23, 2011)..........2, 4

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
    No. 15-cv-02177-SI, 2017 WL 1436044, at * 4 .........................................................13

*DocMagic, Inc. v. Ellie Mae, Inc.*,
    745 F. Supp. 2d 1119, 1144-45 (N.D. Cal. 2010).......................................................15

*Edirect Publ'g, Inc. v. Livecareer, Ltd.*,
    No. 12-cv-1123 JLS (JMA), 2014 WL 11974992, at * 2
    (S.D. Cal. Mar. 18, 2014)............................................................................................. 2-4

*Gatan, Inc. v. Nion Co.*,
    No. 15-cv-01862-PJH, 2017 WL 1196819, at * 6 (N.D. Cal. Mar. 31, 2017) ..............3

*Lepton Labs, LLC v. Walker*,
    55 F.Supp.3d 1230 (C.D. Cal. 2014) ..............................................................................3

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

*Prolifiq Software Inc. v. Veeva Sys., Inc.*,
　　No. 13-cv-03644 SI, 2014 WL 2527148, at * 3 (N.D. Cal. Jun. 4, 2014) ...............6, 10

*Sleekez, LLC v. Horton*,
　　No. CV 16-09-BLG-SPW-TJC, 2017 WL 1906957, at * 5-6
　　(D. Mont. Apr. 21, 2017) ....................................................................................... 14

*Sokol Crystal Prod., Inc. v. DSC Commc'ns Corp.*,
　　15 F.3d 1427 (7th Cir. 1994) ............................................................................12, 15

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*,
　　No. 15-cv-211 (LGS) (RLE), 2016 WL 5338550, at * 6 (S.D.N.Y. Sep. 23, 2016) ...14

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

# I.   INTRODUCTION AND SUMMARY.

Google may disagree that Space Data has trade secrets. It may well disagree that Google Loon is a Space Data derivative. And it will undoubtedly deny that Google used confidential Space Data technology in launching Loon and then so robustly patenting Loon as Google's own invention.

So be it. But these are all issues for a different day. The question, now, is whether Space Data has alleged its claims with requisite specificity. Put simply, can Google understand the charges leveled against it to defend itself as it will?

To ask this question is to answer it. Space Data's Second Amended Complaint ("SAC") (ECF 75) is rife, ripe, even rich with detail. It alleges what Google saw, took, and used in gritty, painstaking detail. It would take an act of willful blindness not to understand the charges leveled.

For that matter, Google's own brief makes plain that Google understands the details of the claims because it quarrels with those very details. For example, Google says that Space Data's technology was not as secret as alleged given a Wall Street Journal article. *See* Google Br. at 16-17. In this paragraph, Google is of course arguing the evidence, but the larger point is that Google can take issue *with the details* of Space Data's trade secrets only because Space Data has alleged those secrets *in detail*.

Finally, Google misapprehends the correct legal issue. Time and again, Google relies on cases dealing with the plaintiff carrying its burden of proof at trial or in opposing summary judgment. For example, on page 8, Google cites the *Rita Med.* case as standing for the proposition that "Plaintiff has the burden of establishing that defendants did not independently derive trade-secret information." Google Br. at 8:8-9. Of course it does, **at trial**. But this is a 12(b)(6) motion, not a Rule 50 motion, nor even a Motion for Summary Judgment. One does not prove a case on the pleadings.

On this record, it is quite clear that Space Data's porridge was never going to be the perfect temperature for Google. If Google has a defense on the merits, let it advance the merits. There has been enough jousting on the papers.

## II. STATEMENT OF THE FACTS.

We cannot summarize the facts any better than did the SAC. That document was 82 pages long for a reason: it specifically set forth Space Data's trade secrets. It described how Google had access to the trade secrets, what the secrets were, and how Google Loon does the same things in the same way. *See, e.g.,* SAC, ¶¶ 85, 89, 90, 92, 95, 97-133, 136, 175-177, 180, 186-189 & 220-224.

Space Data might, perhaps, be criticized for being prolix in the SAC. But it can hardly be faulted for pleading too sparsely.

## III. THE LAW.

Pleadings serve a purpose. They are designed to "give the defendant fair notice of what the… claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 545, 555 (2007). A complaint must set forth sufficient facts to set out the metes and bounds of the dispute, so that the parties may conduct discovery intelligently and the court police the process appropriately. *See Autodesk, Inc. v. ZWCAD Software Co., Ltd.*, No. 5:14-cv-01409-EJD, 2015 WL 2265479, at * 5 (N.D. Cal. May 13, 2015) (J. Davila) ("A plaintiff need not 'spell out the details of the trade secret,' but must minimally provide 'reasonable notice of the issues which must be at the time of trial and [...] provide reasonable guidance in ascertaining the scope of appropriate discovery'").

A complaint must set forth "sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Brocade Comm. Sys., Inc. v. A10 Networks, Inc.*, No. 10-cv-03428-LHK, 2011 WL 1044899 at * 5 (N.D. Cal. Mar. 23, 2011) (J. Koh) ("A10's argument that it is 'equally plausible that A10 brought its accused AX Series to market through completely proper means' misapprehends the relative burdens at this point in the litigation"). The complaint need not **prove** the case, but there must be more than a "sheer possibility that a defendant has acted unlawfully." *See Edirect Publ'g, Inc. v. Livecareer, Ltd.*, No. 12-cv-1123 JLS (JMA), 2014 WL 11974992, at * 2 (S.D. Cal. Mar. 18, 2014), *citing Iqbal*, 550 U.S. at 556.

That a complaint alleges misappropriation under CUTSA does not change this

analytical structure.  Under California law, a plaintiff satisfies California's "reasonable particularity requirement" where the plaintiff makes "some showing that is reasonable, i.e., fair, proper, just and rational, under all of the circumstances to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits." *Brescia v. Angelin*, 172 Cal. App. 4th 133, 148-49 (2009).  Under California law, the trade secret designation "should be liberally construed, and reasonable doubts about its sufficiency resolved in favor of allowing discovery to go forward." *Id.* at 149.  If minute detail is not required for a 2019.210 statement, it certainly is not required in a complaint. *See id.* at 145, *citing Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835–36 (2005) ("'Reasonable particularity' mandated by section 2010.210 does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation'").

It follows that reasonable notice of the trade secrets is all that is required at the CUTSA pleading stage; these are pleadings, after all, not proof. *See, e.g., Gatan, Inc. v. Nion Co.*, No. 15-cv-01862-PJH, 2017 WL 1196819, at * 6 (N.D. Cal. Mar. 31, 2017) (J. Hamilton) ("The court thus finds the TAC contains 'reasonable' detail—enough to permit Nion to prepare a defense and for the court to craft limits on discovery. [Citation omitted] At the pleading stage, that is all that California law requires"); *Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1238 (C.D. Cal. 2014) (generally describing what plaintiff's alleged and holding that "[t]hese allegations readily put Defendants on notice of [plaintiff's] 'trade secrets' within the meaning of section 3426.1"); *Biosuccess Biotech Co. Ltd. v. Rich Pharmaceuticals*, No. LA CV14-00310 JAK (ANx), 2014 WL 12629696, at * 7 (C.D. Cal. May 16, 2014) (generally describing what plaintiffs alleged and holding that "Plaintiff adequately describes . . . the alleged trade secrets . . ."); *Edirect*, 2014 WL 11974992, at * 3-4 (Rejecting defendant's argument that "the broad categories of information identified—using the language 'includes, but not limited to'—renders the purported trade secrets 'effectively

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

boundless'" and finding that the defendant "has sufficient notice of the kinds of information that allegedly constitute trade secrets").

One distinct species of misappropriation lies in using confidential information to launch a competitive product, as the SAC clearly alleges here. *See id*., at * 4 ("A number of district courts within the Ninth Circuit have held that alleging the use of trade secret information to launch a competing product or service is sufficient to plead misappropriation . . . The FAC alleges that LiveCareer . . . entered into a contract with eDirect that . . . obligated LiveCareer to keep that information confidential and to limit its use . . . that LiveCareer improperly used that information . . . in generally building and operating a competing resume posting service . . . These allegations adequately plead misappropriation").

Contrary to Google's briefing, there is nothing improper in alleging the defendants' exact misappropriation on information and belief, as this precise usage information is uniquely in the defendant's possession. *See Brocade* 2011 WL 1044899, at * 6 (information and belief allegations proper for material not "presumptively in the knowledge of the pleading party"); *see also Autodesk*, 2015 WL 2265479, at * 6 ("there is no requirement that Autodesk plead exactly how Defendants 'improperly obtained [or used] the alleged trade secret.' Again, as 'discovery has not yet commenced,' 'it would be unreasonable to require' a plaintiff to demonstrate 'the precise ways in which Defendants may have used [their] trade secrets, given that Defendants are the only ones who possess such information'") (brackets in original; footnotes omitted).

As is true generally, misappropriation may be shown by circumstantial evidence. *See Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1215-16 (N.D. Cal. 2012) (J. Koh), *on reconsideration in part*, No. C 10-3428 PSG, 2012 WL 12925716 (N.D. Cal. July 8, 2012) ("Brocade may prove such misappropriation by circumstantial as well as direct evidence").

Finally, and sensibly enough, "evaluating a complaint's plausibility is a 'context-specific' endeavor that requires courts to draw on… judicial experience and common sense." *BladeRoom Grp Ltd. v. Facebook, Inc.*, --- F.Supp.3d ---, 2017 WL 1233555 at * 5 (N.D.

PLAINTIFF OPP. TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT         4                Case No. 5:16-cv 03260-BLF

Cal. Feb. 10, 2017) (J. Davila).

IV. **ARGUMENT.**

Google's opposition reduces to five points, once ordered logically:

1. Space Data did not allege its trade secrets with requisite specificity;

2. Space Data did not distinguish public from private information;

3. Space Data did not allege the details of Google's exact misappropriation (and "information and belief" allegations do not count);

4. Space Data did not allege a continuing misappropriation so as to support a DTSA claim; and,

5. Space Data did not plead facts sufficient to establish a breach of contract claim (NDA).

Google perforce argues that it can read this complaint and remain puzzled about the nature of the charges brought. It necessarily argues that the complaint is so devoid of detail that discovery will be untrammeled and the process unconstrained. It finally, and again perforce, argues that this 82 page complaint – even taking the allegations as true – does not set forth a plausible claim for relief, but rather only admits the "sheer possibility" of wrongdoing.

Harrumph. To take each in turn:

A. **The Complaint Sets Forth Space Data's Trade Secrets With Robust Specificity.**

Google says that it is "confused" by Space Data's trade secret allegations. Google Br. at 12:21. This is, we fear, mock befuddlement.

1. **Structured Wind Data.**

The SAC sets forth Space Data's "peaceful band" structured wind data allegations exactly. Briefly (at least relative to the complaint):

- Public data and conventional wisdom held that there were Wild Things winds in the stratosphere;

- ■ [redacted]

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

- ███████████████████████████████████████████████

During the February 15, 2008 visit, Space Data disclosed to Google these wind-related trade secrets:

- Space Data showed Google the proprietary wind data for an actual flying balloon array, screen-by-screen, ████████████████████████████████████████
████████████████████████████████████████████████████

- Space Data showed Google that ██████████████████████████████████
████████████████████████████████████████████████ This is also a Space Data trade secret.

See SAC, ¶¶114-117 (far more detail).

There is nothing opaque about the wind data allegations. There is nothing conclusory here. There is nothing implausible in this pleading. Space Data specifically describes its proprietary wind data and the array-based conclusions as trade secrets disclosed to Google. The SAC even includes multiple images of the wind data disclosed to Google (for an array in flight). *See* SAC, ¶ 112 & Ex. C to SAC.

Google, of course, understands the allegations far better than it is prepared to admit. This is plain on the face of Google's motion itself, as Google both claims not to understand Space Data's trade secrets, but then quarrels with the details of the trade secrets it says it does not understand. Which is it? **Compare** Google Br. at 12:8 ("[I]t is unclear what Space Data is claiming as its 'structured wind data in the peaceful band' trade secrets") *with* Google Br. at 12:21 ("Space Data's SAC publicly discloses many of the alleged wind data 'epiphanies' described in the trade secret section of the complaint.").

On these allegations, Google cannot credibly claim that it lacks the ability to mount a defense, as it does exactly that in its brief. *See Prolifiq Software Inc. v. Veeva Sys., Inc.*, No. 13-cv-03644 SI, 2014 WL 2527148, at * 3 (N.D. Cal. Jun. 4, 2014) (J. Illston) ("Indeed, the fact that Veeva is able to craft detailed arguments for why Prolifiq's information does not constitute trade secrets means that Prolifiq has sufficiently identified that information to Veeva so that it may investigate the merits of Prolifiq's claim"); *Brescia*, 172 Cal. App. 4th at 152 ("[B]y producing the documents, respondents demonstrated not that they were unable

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

to discern the boundaries of Brescia's alleged trade secret formula, but rather that they understood and were quite capable of investigating possible defenses"). Google's motion is, in reality, an under-ripe Summary Judgment Motion, and one devoid of evidence or proof. This SAC gives more than mere notice; it gives Google a concrete roadmap to choreograph its defense, point-by-point. A complaint need not do more.

### 2. The Hover Trade Secret.

Google says that it is likewise adrift[1] about Space Data's allegations on the hover function and algorithm. Contrary to conventional wisdom, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Space Data developed a hover algorithm. At the February 2008 meeting:

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and algorithm are trade secrets and the Google visitors had access to screens displaying ▮▮▮▮▮ and cameras to capture the data displayed on the screen.

- Space Data let one of Google's founders (Brin) launch two balloons, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and discussed the details of Space Data's hover algorithm and technology.

See SAC, ¶¶ 108 & 120-122. As to the hover algorithm, the SAC includes an image of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as trade secrets. See SAC, ¶ 121. What is conclusory or opaque here? If Google has questions (and when will a defendant not have questions?), let it ask them in discovery.

### 3. Financial Documents.

Google next complains that Space Data provided more than 2,000 pages of confidential Space Data financial data to Google, but did not define "what portions of those documents it is claiming are valuable and secret, thereby thwarting Google's ability to investigate Space Data's claims and develop its defenses." See Google Br. at 14:22-15:1.[2]

---

[1] The parties need a cease fire on balloon puns.

[2] Google both complains that Space Data provided too much and too little. Goldilocks, again.

PLAINTIFF OPP. TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT          7          Case No. 5:16-cv 03260-BLF

The complaint answers this question exactly: **all of the Space Data internal financial data was and remains confidential**. *See* SAC, ¶ 85 ("these financial reports set for[th] the exact economic picture of the company over time, including capital expense, operating expense, reserves, debt, investment…The cover email explicitly stated that all of the financial information, past, present and future, was proprietary, confidential **and fully subject to the NDA**." (Emphasis added).

Further, the SAC lays out in detail why the historical financial data and models are valuable trade secrets:

> Space Data's economic data was also valuable in that it showed detail on the main cost drivers in the logistics cycle of providing service from balloons including: [list of cost drivers detailed in the model]. Not only were the actual costs for each step of this process shared with Google, the models contain the mathematical relationships to vary assumptions for each step of the process to run sensitivity analysis to understand the operational costs and how they can be modified. These basic mathematical relationships, costs and improvements with experience are very useful for modeling all types of balloon-based wireless services businesses.

*See* SAC, ¶ 133.

That Space Data's internal financials are confidential should hardly be a surprise; what private company does not keep its internal finances confidential? And even were it otherwise, Google cites no case standing for the proposition that Space Data must—in its complaint—go through 2,000 pages of Space Data financial records and tell Google, paragraph-by-paragraph and number-by-number, what was confidential and what not. Discovery, again.[3]

### 4. Thermal Management.

Google then argues that it is confused by Space Data's allegations concerning thermal management. But the complaint is clear:

> Space Data learned how to manage thermal heat regulation in the stratosphere. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

---

[3] Also, as with the wind data, Space Data attached an exhibit to the SAC to identify further the financial trade secrets claimed.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

[REDACTED]

SAC, ¶ 125. This is an explicit allegation for Google to attack, which is what a charging document is charged with doing.

Finally, one point runs throughout Google's challenge to Space Data's trade secrets pleading: Google says that the SAC does not differ in substantive respect relative to its predecessor, the First Amended Complaint. *See, e.g.*, Google Br. at 1:18-19 (the SAC "still suffers from the same fundamental failings as Space Data's prior complaint.") & 1:22-23 (new allegations no better than those found deficient).

This is not quite fair. Here is what the prior complaint said on trade secrets:

> Examples of Space Data confidential information and trade secrets include, but are not limited to, accumulation of weather data, launch methods, launch timing, balloon types, altitude regulation, business methods, business models, cost structure and other financial information, technology solutions, and unique knowledge and interpretation of weather data, wherein this knowledge and interpretation is not available in public, which for example includes knowledge of the winds between 60,000 and 100,000 foot altitudes.

*See* FAC, ¶ 19 (ECF 28). In contrast, the new complaint describes the trade secrets in detail over dozens of paragraphs. *See* SAC, § II, F.

### B. Distinguishing the Private From the Public.

Google's next categorical complaint turns on its assertion that the SAC "fails to adequately distinguish Space Data's asserted trade secrets from public information." Google Br. at 15:10-11. Google levels three specific criticisms: (1) that the SAC does not adequately distinguish Space Data trade secrets from the public disclosures in the Space Data patents, particularly the '941 specification; (2) that the SAC does not distinguish the confidential information provided **post**-NDA from the public information provided **pre**-NDA; and, (3) that the SAC does not distinguish the trade secrets from information publicly disclosed by Space Data through other means (the Wall Street Journal).

### *On the Patents*

The '941 specification does not disclose the trade secrets set forth in the SAC. If it did, Google would have tattooed this to Space Data's forehead throughout Google's brief. It

does not because it cannot.

The SAC also carefully alleges how the trade secrets claimed differ from the information set out in the '941 patent, and cites to specific examples. *See, e.g.*, SAC, ¶ 48 ▮▮▮ ¶ 115 (Space Data wind information "contradicted the information then in the public record and was not disclosed in the '941 Patent."); ¶ 244 ("Space Data's asserted trade secrets are not disclosed by Space Data's asserted patent. For example, and as further detailed in paragraphs 43, 112-117, and 220 above, Space Data's proprietary confidential analysis of the micro-wind structure of the 60,000 to 140,000 foot range that shows a 'peaceful band' at approximately 60,000 to 80,000 feet, ▮▮▮ ▮▮▮ ▮▮▮ was not disclosed in the '941 Patent. As a further example, the '941 Patent clearly makes no detailed financial disclosures with respect to the cost and logistical process of operating a balloon constellation. Proprietary confidential financial information disclosed by Space Data to Defendants under the NDA makes such detailed cost and logistical process disclosures."). In fact, the SAC devotes an entire section to describing why claimed trade secrets differ from the information disclosed in the '941 Patent. *See* SAC, § II, K, "Google Uses Space Data's Trade Secrets as Well as its Patented Inventions."

If Google wants to test the point that the trade secrets set forth in the SAC are disclosed in patent specifications, it knows exactly what to do and how to do it. *Cf. Prolifiq*, 2014 WL 2527148, at * 3; *Brescia*, 172 Cal. App. 4th at 152. Discovery, again.

**<u>Pre-NDA Disclosures</u>**

In arguing that the SAC does not distinguish the information provided pre and post-NDA, Google quotes the complaint on pre-NDA information as follows, "Space Data 'provided… information on the Space Data platform….'" *See* Google Br. at 15:28, quoting SAC, ¶76 (middle ellipsis Google's).

This is a most convenient ellipsis. Here is what in fact that paragraph says about information provided pre-NDA: "Space Data provided **basic and public information** on the

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

Space Data platform." SAC, ¶ 76 (Google omissions in bold). The complaint alleges that the materials provided pre-NDA were **not** confidential, and Google knows this as it carefully deleted exactly that point in quoting the SAC in its brief.

So, too, on paragraph 80. Here is what Google quotes in its brief regarding pre-NDA discussions: "the group discussed Space Data's technology**…** and likewise discussed how Google might work with Space Data to build out any 700 MHz spectrum required." Google Br. at 15:28-16:2 (ellipsis Google's, again).

Another convenient ellipsis. Here is what the allegation actually says: "The group discussed Space Data's technology **at a fairly general and high level**, and likewise discussed how Google might work with Space Data to build out the 700 MHz spectrum acquired." SAC, ¶ 80 (Google omissions in bold).

In this fashion, Google attacks the complaint as failing to distinguish public from the private information by strategically editing out the allegations that do exactly that. Harrumph, again.[4]

## *On Other Public Information*

Google makes much of the fact that there was a Wall Street Journal article and video that showed certain images taken from within Space Data's facilities. However, as described in the SAC, the images shared with the Wall Street Journal are zoomed out such that no proprietary data are visible in the image, or show a small snapshot of a window that similarly discloses no proprietary information. No one could look at the WSJ video and learn anything about Space Data's wind data, hover algorithm, NOC control, or thermal management trade secrets.[5] The same cannot be said of the access Google had to this same information, particularly given the high-resolution photos Google took of the screens in Space Data's

---

[4] More, Google has the documents provided both pre and post-NDA. How hard is it to compare them and see what was different and what not? Certainly, Space Data has no obligation to put this kind of close textual analysis in a complaint.

[5] A full transcript of the WSJ video is attached to the Declaration of Spencer Hosie as Exhibit 1. No secrets are revealed here, and the monitors tracking actual flight date are utterly opaque.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

NOC.

### C. Space Data Pled Misappropriation With Requisite Specificity.

Google's third categorical complaint is that Space Data has not alleged the details of Google's exact misappropriation and use to support either Space Data's trade secret misappropriation or breach of contract claims.  Google says "Space Data's SAC lacks **any factual allegations** establishing any use of Space Data's information in connection with Project Loon, much less any use that was not in compliance with the parties' NDA."  Google Br. at 9:11-12 (emphasis ours).  It suggests that there is something scandalous in pleading use allegations on "information and belief."  *See* Google Br. at 1:21-22 ("Space Data's allegations of improper use – made on information and belief – are purely conclusory").

This is not entirely fair, again.

First, the details of how Google used the information are properly set forth on information and belief.  Space Data did not bug the Google X facility; it did not secretly videotape Google Loon people purporting to develop Loon independently.  Google's evident use of Space Data information is uniquely in Google's possession, and the law is very clear that Space Data may allege such use on information and belief.  *See* § III, above.

Second, the SAC sets out the exact details of Space Data's trade secrets, and then shows that Google Loon does the same things in exactly the same way.  *See, e.g.,* SAC, ¶¶ 112-129, 131-133, 136, 175-177, 180, 186-189 & 220-224.  This "eerie," SAC, ¶ 175, similarity supports an inference of copying.  *Cf. Sokol Crystal Prod., Inc. v. DSC Commc'ns Corp.*, 15 F.3d 1427, 1432 (7th Cir. 1994) ("DSC also points to the absence of direct evidence that it *used* Sokol's trade secret, even if it did have access to it.  But here again, once the jury concluded that (1) DSC had access to Sokol's trade secrets, and (2) DSC's product was similar to Sokol's, it was entirely reasonable for it to infer that DSC used Sokol's trade secret.  *See Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790 (9th Cir. 1976) (suggesting that where a trade secret is disclosed to the defendant, and it then manufactures a closely similar device, the burden shifts to the defendant to prove that it did

not use the trade secret)…") (applying Wisconsin's version of UTSA).[6]

### D. Space Data Has Alleged a Continuing Violation Under DTSA.

Google next argues that the SAC does not properly allege a DTSA violation for two reasons, one legal and one factual.

On the law, Google says that a post-enactment "continuing use" does not support a DTSA claim, citing one case, *Avago Techs U.S. Inc. v. Nanoprecision Prods, Inc.*, 16-cv-03737-JCS, 2017 WL 412524 (N.D. Cal. Jan. 31, 2017) (J. Spero). Google Br. at 10-11. This is not right, as Judge Illston recently explained:

> The Act's text contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use. *Id.* at § 1839(5) (defining "misappropriation" as involving acquisition, disclosure, or use of a trade secret). **Nothing suggests that the DTSA forecloses a use-based theory simply because the trade secret being used was misappropriated before the DTSA's enactment.** As the *Adams Arms* court noted, "Congress omitted from DTSA the following language from Section 11 of the [Uniform Trade Secret Act]: 'With respect to a continuing misappropriation that began prior to the effective date, the [Act] also does not apply to the continuing misappropriation that occurs after the effective date.'" *Adams Arms, LLC v. Unified Weapon Sys., Inc.*, 16-1503, 2016 WL 5391394, at * 6 (M.D. Fla. Sept. 27, 2016) (quoting Unif. Trade Secrets Act, § 11).

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-cv-02177-SI, 2017 WL 1436044, at * 4 (J. Illston) (emphasis added). Had DTSA intended to preclude a post-enactment continuing use theory, the earlier limiting language would have persisted. It did not.

It is hard to argue with this logic, and numerous other courts have recently ruled similarly. For example:

> **The question of whether pre-enactment conduct is actionable under the DTSA depends on Plaintiff's theory of liability.** *High 5 Games, LLC v. Marks*, 2017 WL 349375, * 6 (D.N.J. Jan. 24, 2017). Under the DTSA, prohibited misappropriation includes both the acquisition of a trade secret and its disclosure or use. 18 U.S.C. § 1839(5). Under an "acquisition" theory of liability, a DTSA claim is only actionable if the trade secret was acquired after the effective date of the Act. *Adams Arms,*

---

[6] Google argues that Space Data's amended 2019 Statement does not fix the complaint. Two comments: (1) Space Data does not so argue; its SAC is sufficient on its face; and, (2) Google demanded that Space Data amend the 2019 disclosure and Space Data did; a good act now punished.

*LLC*, 2016 WL 5391394 at * 6-7.  **However, under a "disclosure/use" theory of liability, a DTSA claim is actionable when the disclosure or use continued to occur after the effective date.**  *Id.* *Sleekez, LLC v. Horton*, No. CV 16-09-BLG-SPW-TJC, 2017 WL 1906957, at * 5-6 (D. Mont. Apr. 21, 2017), *R&R adopted sub nom. Sleekez, LLC v. Horton*, No. CV 16-09-BLG-SPW, 2017 WL 1929473 (D. Mont. May 9, 2017) (emphasis added); *see also Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 15-cv-211 (LGS) (RLE), 2016 WL 5338550, at * 6 (S.D.N.Y. Sep. 23, 2016) ("The plain language of the Act defines misappropriation to include 'disclosure *or use* of a trade secret…' as Defendants allege that Syntel continues to use its Intellectual Property to directly compete with Trizetto, the wrongful act continues to occur after the date of the enactment of DTSA.") (emphasis in original); *AllCells, LLC v. Zhai*, No. 16-cv-07323-EMC, Dkt. No. 47 (N.D. Cal. Mar. 27, 2017 (J. Chen) (attached hereto as Ex. A) ("Here, even if Mr. Zhai and Mr. Lee copied and thus *acquired* the alleged trade secrets before May 11, 2016, AllCells has sufficiently alleged that there was at least *use* of the trade secrets after that date.  Hence, the Act applies.").

Second, and as a factual matter, Google argues that the SAC fails to allege a continuing use.  It does indeed, both generally and specifically.  *See* SAC, ¶ 249 ("Defendants' use of Space Data trade secrets, without express or implied consent, in connection with Defendants' Project Loon business **is ongoing**.  **Defendants' continuing misuse**…" (emphasis ours); ¶ 172 ("Google **currently** launches…"); ¶ 174 ("Google **is spending**…"); ¶ 183 (Google's "**current**" balloon); ¶ 256 (reprises ¶ 249 "continuing use" allegation); ¶ 188 ("Astro Teller has recently confirmed in his personal online blog that Google Loon 'hovers' and works just like Space Data…. '**In mid 2016**, we started sending balloons from our launch site in Puerto Rico to hang out in Peruvian airspace – and they did, some for as long as three months.  We repeated the experiments, and saw the same results: we had figured out how to cluster balloons in teams, dancing in small loops on the stratospheric winds, over a particular region.'") (mid-2016 post-dates DTSA's May 2016 enactment).

### E. <u>Space Data Has Alleged a Breach of the NDA</u>.

Google's breach of contract attack reprises its trade secret advocacy: that Space Data has not alleged facts sufficient to show that Google had and misappropriated confidential information under the NDA. As Google puts it:

> Space Data does not offer **any factual allegations** about what information Google used, how Google used that information, or how that purported use violated the NDA's confidentiality provisions. Absent any such facts, Space Data's allegations "do not permit the court to infer more than the mere possibility" of Google's misconduct.

Google Br. at 19:15-17 (emphasis ours on "any factual allegations").

Not quite. The complaint alleges that the NDA restricted the use of confidential information acquired under the NDA to evaluating a Space Data acquisition, *see* SAC, ¶¶ 137 & 262, and prohibited any other use. *See id.*, ¶ 140. The SAC refers back to the trade secret section, *id.*, ¶¶ 110-136, and it describes these trade secrets as confidential information provided under the NDA. *See id.*, ¶ 139. Space Data then alleges that Google breached the NDA by using:

> Space Data's proprietary financial modeling confidential business plan for a worldwide balloon constellation network, and information derived from access to Space Data's proprietary wind data, hover algorithm, thermal management system, altitude control system, and network operations center to develop Project Loon….

*Id.*, ¶ 143; *see also id.*, ¶ 261.

The SAC further alleges that Google breached the NDA by filing its own patents and so asserted "ownership" over Space Data's IP, contrary to § 8 of the NDA. *See id.*, ¶¶ 144 & 263. And the SAC sets forth these Google Loon patent filings in great detail—it is hardly a stretch to imagine that Google would have preferred that this section be far more conclusory.

Finally, the complaint fully alleges how Loon is a direct Space Data look-alike. *See, e.g.,* SAC, ¶¶ 175-177, 180, 186-189 & 220-224. This "eerie similarity" supports an inference of improper use and breach. *Cf. Sokol*, 15 F.3d at 1432. *See also DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1144-45 (N.D. Cal. 2010) (breach pled properly even absent explicit detail [which we have here in any event]).

### V.   CONCLUSION.

Google's core premise—unarticulated but real—is that a complaint is deficient unless

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

it answers every single question a defendant might conceivably have. But a defendant will always have questions, and a complaint that leaves no questions, no room for discovery, has yet to be written. A complaint is not designed to eliminate discovery; it is designed to focus discovery and give the defendant the ability to defend itself ably.

In fairness, this SAC does that and more.

Dated: May 19, 2017                    Respectfully submitted,

*/s/ Spencer Hosie*_____ _____
SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
DIANE S. RICE (CA Bar No. 118303)
drice@hosielaw.com
LYNDSEY C. HEATON (CA Bar No. 262883)
lheaton@hosielaw.com
DARRELL R. ATKINSON (CA Bar No. 280564)
datkinson@hosielaw.com
HOSIE RICE LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111
(415) 247-6000 Tel.
(415) 247-6001 Fax

*Attorneys for Plaintiff*
SPACE DATA CORPORATION