UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

SPACE DATA CORPORATION,
Plaintiff,
v.
ALPHABET INC. and GOOGLE LLC,
Defendants.

Case No. 16-cv-03260-BLF

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**

[Re: 159]

Space Data Corporation ("Space Data") brings this action against Defendants Alphabet Inc. and Google LLC (collectively, "Google"), alleging that Google's "Project Loon"—a research and development project with the mission of providing wireless services using high-altitude balloons placed in the stratosphere—improperly and unlawfully utilizes Space Data's confidential information and trade secrets and infringes Space Data's patents. Third Am. Compl. ("TAC") ¶¶ 11–16, ECF 144. Space Data asserts four causes of action: (1) patent infringement, under 35 U.S.C. § 1 *et seq.*; (2) misappropriation of trade secrets, under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836; (3) misappropriation of trade secrets, under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq.*; and (4) breach of contract. *See generally id.*

According to the TAC, Space Data develops technology that enables stratospheric communications using floating balloons. *Id.* ¶¶ 5–6. Space Data's balloons carry radio transceivers, which operate collectively as a high-altitude communications platform. *Id.* ¶¶ 42–47. In late 2007, Google and Space Data discussed Google investing in or acquiring shares or assets of Space Data. *Id.* ¶¶ 74–85, 110. The parties entered into a Mutual Confidentiality and Non-Disclosure Agreement ("NDA") to facilitate their discussions. *Id.* ¶¶ 16, 83, 151–160. As part of

United States District Court
Northern District of California

the discussions, Google toured Space Data's facilities on February 15, 2008. *Id.* ¶ 97. However, the companies did not ultimately form a partnership. *Id.* ¶ 9.

The Court previously granted Google's motion to dismiss Space Data's second amended complaint as to the trade secret claims and the breach of contract claim with leave to amend. *See* Order 2–4, ECF 142. Although the second amended complaint contained more factual details relative to the first amended complaint, the Court found that the second amended complaint remained deficient in pleading how Google's alleged conduct of trade secret misappropriation is proscribed by the NDA. *Id.* at 2–3. Space Data has since filed a third amended complaint in an attempt to remedy the deficiencies identified by the Court. Google again moves to dismiss the trade secret claims and the breach of contract claim in the third amended complaint. Mot., ECF 159. For the reasons stated on the record and below, the Court DENIES Google's motion to dismiss.

## I. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## II. DISCUSSION

### A. Misappropriation of Trade Secrets

"To state a claim for misappropriation of trade secrets under the [CUTSA], a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Autodesk, Inc. v. ZWCAD Software Co., Ltd.*, No. 14-1409, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015) (citation omitted). The elements of misappropriation under the DTSA are similar to those under the CUTSA. *Compare* 18 U.S.C. § 1839(5), *with* Cal. Civ. Code § 3426.1(b).

When previously addressing the second amended complaint, the Court concluded that

Space Data sufficiently identified the alleged trade secrets in the complaint. Order 3–4. As mentioned, however, the Court found that the second amended complaint was deficient in pleading how Google's alleged conduct went beyond the provisions in the NDA. *Id.* at 2–3. The NDA limits Google's use of Space Data's confidential information, which is defined in paragraph 3 of the NDA:

> 3. Information shall only be considered Confidential Information for the purposes of this Agreement (a) if it is clearly and conspicuously marked as "confidential" or with a similar designation; or (b) if it is identified as confidential and/or proprietary before, during, or promptly after presentation or communication by Discloser. Information communicated orally shall only be considered Confidential Information if such information is designated as being confidential at the time of disclosure (or promptly thereafter) and is reduced in writing and confirmed to the Recipient as being Confidential Information within fifteen (15) days after the initial disclosure.

Ex. A to the TAC ¶ 3, ECF 144-1 ("NDA"). The NDA also provides that "Google may use Residuals for any purpose . . ." and defines "Residuals" to mean "information that is retained in the unaided memories of Google's employees or Representatives who have had access to Confidential Information pursuant to the terms of [the NDA]." *Id.* ¶ 8. Space Data represents that its TAC sufficiently pleads that the alleged trade secrets were properly preserved as confidential under the NDA. Opp'n 4–5, ECF 161.

Google contends three of the five categories that Space Data asserts as trade secrets—"hover algorithm," "thermal management techniques," and an "altitude control and monitoring system"—have not been sufficiently alleged so as to make it plausible that those trade secrets were properly designated as confidential. *See* Mot. 4 n.3. Space Data asserts that Section II.H of the TAC pleads that the alleged trade secrets were preserved as confidential under the NDA. Opp'n 4–5 (citing TAC ¶¶ 164–177).

The Court disagrees with Google. The TAC alleges that Google took photographs of information relating to "hover algorithm," "thermal management techniques," and the "altitude control and monitoring system." TAC ¶¶ 171, 173, 175. The TAC also alleges that Space Data sent an email dated February 19, 2008 designating as confidential "the *photographs* your team took inside our facilities" and stating "[i]t seems that we discussed quite a bit of information with

you as to our technologies and plans for the future and we would like to keep them confidential" pursuant to paragraph 3 of the NDA. *Id.* ¶¶ 172, 174, 176 (emphasis added). Based on these assertions, the Court finds that the TAC provides sufficient allegations that make it plausible that Space Data's purported trade secrets—"hover algorithm," "thermal management techniques," and the "altitude control and monitoring system"—were preserved as confidential under the NDA.[1]

Google further argues that Space Data has not alleged sufficient facts to establish that Google misused the trade secrets. Mot. 7–11. Specifically, Google asserts that paragraphs 181–184 in Section II.I (captioned "Google Uses Space Data's Trade Secrets") of the TAC are mostly identical to portions in the second amended complaint and that allegations in two new paragraphs 187–188 are conclusory. Mot. 8–9; Reply 5 n.4, ECF 164. According to Google, Space Data must allege facts demonstrating similarity between the trade secrets and Google's balloons but fails to do so. Reply 7.

Space Data counters that numerous allegations, including those in paragraphs 179–188 of the TAC, show that Google misused Space Data's trade secrets. Opp'n 5–6. In particular, Space Data points out that the TAC alleges Project Loon is similar to its trade secrets technology and that Google engineers took photographs of trade secrets data, where use of such data would not be covered by the NDA's Residual clause. *See id.*

The Court finds that Space Data pleads a plausible claim that Google has misused Space Data's trade secrets. First of all, the TAC alleges that Space Data disclosed its trade secrets to Google and that the disclosed information was properly preserved as confidential. TAC ¶¶ 164–177, 180–184. The TAC also alleges that Google took extensive photographs on information relating to Space Data's trade secrets. *See, e.g., id.* ¶¶ 105, 107, 116, 126, 132, 164, 172, 174, 187. According to the TAC, Google's Project Loon "mirrors" Space Data's trade secrets technology and the resemblances could not have occurred without relying on the photographs, which are not

[1] Google does not seriously challenge that the other two categories of alleged trade secrets—"wind data" and "vision slide information"—were not properly preserved as confidential information. In any case, paragraphs 164, 168, and 177 of the TAC sufficiently alleges that "wind data" and "vision slide information" were preserved as confidential information under the NDA. The Court notes that during oral argument Google represented that Space Data withdrew from asserting "vision slide information" as a trade secret. *See* Oral. Arg. Tr. 15:9–11, ECF 175.

"unaided memory" covered by the NDA's Residual clause. *Id.* ¶¶ 187–88. Here, the TAC's allegations that that Project Loon mirrors Space Data's trade secrets are more than bare assertions. For example, the TAC alleges that Google claimed that it "discovered" information relating to Space Data's stratified wind data and the method for sailing balloons in the stratosphere where in fact the information was learned from Space Data. *Id.* ¶¶ 243–46. Google X's Astro Teller allegedly confirmed that Project Loon's balloons "hover" and work like Space Data's balloons. *Id.* ¶ 247. Also, the TAC alleges that Google's Loon Mission Control "bears a striking similarity" to Space Data's Network Operations Control Center ("NOC"). *Id.* ¶ 138. The TAC further asserts that many aspects of Project Loon and Space Data's technology are similar, albeit those aspects may not be directly related to the alleged trade secrets. *See, e.g., id.* ¶¶ 218, 233–42. Accordingly, the TAC contains factual allegations that Google took extensive photographs of Space Data's trade secrets and that there are numerous similarities—some of which are closely related to the purported trade secrets—between the two companies' balloon technology. Unlike Google's contention, these allegations allow a reasonable inference to be drawn that Google has incorporated trade secrets obtained from Space Data into Project Loon. Hence, the TAC sufficiently pleads a plausible claim that Google has misappropriated Space Data's trade secrets in a manner not permitted under the NDA. *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

**B. Continuous Use Liability Under DTSA**

DTSA was enacted on May 11, 2016 and covers acts occurring "on or after the date of the enactment of this Act." Defend Trade Secrets Act of 2016, PL 114-153, May 11, 2016, 130 Stat 376. Google argues that Space Data fails to allege an action of misappropriation under DTSA on the grounds that the TAC fails to allege a "new or different" act of misappropriation that post-dates May 11, 2016. Mot. 11–13 (citing *Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc.*, No. 15-cv-02177, 2017 WL 1436044, at *4 (N.D. Cal. Apr. 24, 2017)). Space Data responds that it need not plead a "new or different" act of misappropriation because its DTSA claim is based on a "use" theory. Opp'n 11–12.

When bringing a misappropriation claim under DTSA, a plaintiff may rely on one of three theories of liability: "(1) acquisition, (2) disclosure, or (3) use." *Cave Consulting*, 2017 WL 1436044, at *4. In *Cave Consulting*, the court held that the plaintiff failed to state a claim under the "disclosure" theory because the complaint failed to allege facts about "whether the information disclosed was new or somehow different from the prior misappropriation" after DTSA's May 11, 2016 enactment. *See id.*, at *5. On the other hand, the court recognized that "[n]othing suggests that the DTSA forecloses a *use-based* theory simply because the trade secret being used was misappropriated before the DTSA's enactment." *Id.*, at *4 (emphasis added). Thus, *Cave Consulting* explained that a DTSA claim based on continuous use after May 11, 2016 does not require allegations of "new or different" misappropriation, unlike a claim based on disclosure of trade secrets. Indeed, courts have held that continuous use of misappropriated trade secrets that began prior to DTSA's enactment date can give rise to DTSA liability. *See, e.g.*, *Veronica Foods Co. v. Ecklin*, No. 16-CV-07223, 2017 WL 2806706, at *13 (N.D. Cal. June 29, 2017); *Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, No. CV 16-2499, 2017 WL 1105648, at *4 (E.D. Pa. Mar. 24, 2017).

Here, Space Data relies on the "use" theory in asserting its DTSA claim. Thus, Google's argument that Space Data must allege a "new or different" act of misappropriation based on *Cave Consulting*'s application of the "disclosure" theory is incorrect. The Court rejects Google's argument and concludes that Space Data can assert a DTSA claim so long as the TAC sufficiently alleges Google continued to use Space Data's trade secrets after May 11, 2016.

Perhaps recognizing the above weakness in its argument, Google further asserts that Space Data fails to state a claim even under the "use" theory for lack of specific allegations that Google has committed misappropriation after the DTSA's May 11, 2016 enactment date. Reply 8–9. While disputing the specificity required to allege misuse, Google acknowledged during oral argument that Space Data's DTSA claim in one sense "rise[s] and fall[s]" with the CUTSA claim. Oral Arg. Tr. 19:16–21. Here, the TAC alleges that Google has continued to use Space Data's trade secrets when deploying balloons in Australia, Columbia, St. Lucia, Peru, and the United States after May 11, 2016. TAC ¶¶ 189–204. These allegations and those related to Google's pre-

United States District Court
Northern District of California

May 11, 2016 conduct support the reasonable inference that Google continued to misuse the purported trade secrets after May 11, 2016 upon operating Project Loon. The Court therefore concludes that the TAC sufficiently alleges a plausible DTSA claim.

**C. Breach of Contract Claim**

Space Data's breach of contract claim is based on allegations that Google violated the NDA. *Id.* ¶¶ 312–320. Google does not dispute that the breach of contract claim depends on Space Data's purported trade secrets misappropriation claims. *See* Reply 10. In other words, if Google misappropriated Space Data's trade secrets beyond the scope of the NDA, Google would be in breach of the NDA. As discussed above, the TAC sufficiently pleads that Google has misappropriated Space Data's trade secrets by alleging Google's conduct that was not permitted under the NDA. Therefore, the Court concludes that the TAC sufficiently pleads a plausible breach of contract claim.

**III. ORDER**

For the foregoing reasons, the Court DENIES Google's motion to dismiss the third amended complaint as to the trade secrets claims and breach of contract claim.

**IT IS SO ORDERED.**

Dated: December 18, 2017

BETH LABSON FREEMAN
United States District Judge