SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
DIANE S. RICE (CA Bar No. 118303)
drice@hosielaw.com
LYNDSEY C. HEATON (CA Bar No. 262883)
lheaton@hosielaw.com
BRANDON C. MARTIN (CA Bar No. 269624)
bmartin@hosielaw.com
DARRELL R. ATKINSON (CA Bar No. 280564)
datkinson@hosielaw.com
HOSIE RICE LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111
(415) 247-6000 Tel.
(415) 247-6001 Fax

*Attorneys for Plaintiff*
*SPACE DATA CORPORATION*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| SPACE DATA CORPORATION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ALPHABET INC., and GOOGLE LLC,<br><br>　　　　Defendants. | Case No. 5:16-cv-03260-BLF<br><br>**PLAINTIFF SPACE DATA CORPORATION'S REPLY TO DEFENDANTS ALPHABET INC. AND GOOGLE LLC'S OPPOSITION TO PLAINTIFF SPACE DATA'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**<br><br>Date:　　　　May 17, 2018<br>Time:　　　　9:00 a.m.<br>Courtroom:　3, Fifth Floor<br>Judge:　　　Hon. Beth Labson Freeman<br><br>Date Filed:　June 13, 2016<br><br>Trial Date:　August 5, 2019 |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY ....................................................... 1

II.   THE LAW: THERE IS NO CATEGORICAL ESTOPPEL BAR ............................. 2

    A.    Google's Ancient Case ........................................................ 2

    B.    Modern Estoppel Law: *New Hampshire* .......................................... 5

    C.    Courts Routinely Consider and Apply Judicial Estoppel in Validity
        Contests ........................................................................ 6

III.  CONSISTENCY IS THE HOBGOBLIN…: GOOGLE'S ROBUST AND
     CONTINUING PROSECUTION OF SPACE DATA'S '193 CLAIMS ................... 8

    A.    U.S. Prosecution and Interference ................................................ 8

    B.    Google's Issued '678 Foreign Analogues ........................................ 9

    C.    Google's Pending '678 Foreign Prosecutions................................. 13

IV.   GOOGLE'S BENEFIT WAS REAL AND REALIZED........................................ 14

V.    AS APPLIED: UNDER *NEW HAMPSHIRE*, GOOGLE SHOULD BE ESTOPPED
     TO CHALLENGE AS INVALID THE VERY CLAIMS IT REPEATEDLY
     PATENTED AS VALID ........................................................... 15

VI.   CONCLUSION................................................................... 15

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>                                                                                                                           <u>Page</u>

3    *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*,
         No. CIV 03-0597-PHX-MHM,
4        2004 WL 7314039, at *9 (D. Ariz. Sep. 30, 2004)....................................................6

5    *Biomedical Patent Mgmt. Corp. v. Cal. Dept. of Health & Servs.*,
6        505 F.3d 1328 (2007).............................................................................................5, 8

7    *Diamond Scientific Co. v. Ambico, Inc.*,
         848 F.2d 1220 (Fed. Cir. 1988)................................................................................3
8

9    *eBay, Inc. v. MercExchange LLC*,
         547 U.S. 388 (2006).................................................................................................5

10

11   *Evanik Degussa GmbH v. Materia Inc.*,
         53 F.Supp.3d 778 (D. Del. 2014).............................................................................4

12

13   *Finjan, Inc. v. Blue Coat Sys. LLC*,
         --- F. Supp. 3d ---, No. 15-cv-03295-BLF, 2017 WL 7050646 at *12
         (N.D. Cal. July 28, 2017).........................................................................................4

14

15   *Haughey v. Lee*,
         151 U.S. 282 (1894).............................................................................................2-4

16

17   *Homeland Housewares, LLC v. Sorensen Research and Dev. Trust*,
         No. CV 11-3720-GW(JEMx),
         2013 WL 12134266, at * 7-8 (C.D. Cal. Feb. 28, 2013) ..........................................7

18

19   *Hynix Semiconductor Inc. v. Rambus Inc.*,
         No. C-00-20905 RMW, 2009 WL 230039, at * 9 (N.D. Cal. Jan. 27, 2009)...........7-8

20

21   *Lear, Inc. v. Adkins*,
         395 U.S. 653 (1969).................................................................................................3

22

23   *McCarty v. Lehigh Val. R. Co.*,
         160 U.S. 110 (1985).................................................................................................3

24   *New Hampshire v. Maine*,
         532 U.S. 742 (2001)..........................................................................................5-7, 15

25

26

27

28

*Novo Nordisk A/S v. Bio-Technology Gen. Corp., Ltd.*,
　　No. 02-332-SLR, 2003 WL 21383717, at *2-5 (D. Del. Jun. 9, 2003) ...................... 6

*Ocean Tomo, LLC v. PatentRatings, LLC*,
　　262 F. Supp. 3d 553 (N.D. Ill. 2017) ................................................................. 6

*Paramount Publix Corp. v. Am. Tri-Ergon Corp.*,
　　294 U.S. 464 (1935) ...................................................................................... 3-4

*Source Search Techs., LLC v. LendingTree, LLC*,
　　588 F. 3d 1063 (Fed. Cir. 2009) ..................................................................... 5-6

*SSL Services v. Citrix*,
　　940 F. Supp. 2d 480 (E.D. Tex. 2013) ............................................................... 7

*Synopsys, Inc. v. Magma Design Automation, Inc.*,
　　No. C-04-3923 MMC, 2007 WL 322353 at *25 (N.D. Cal. Jan. 31, 2007) ............... 5

*Veaux v. S. Oregon Sales*,
　　123 F.2d 455 (1941) .................................................................................. 3, 5

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
　　No. 12-cv-05501-SI, 2017 Wl 235048, at *6-7 (N.D. Cal. Jan. 19, 2017) ................ 6

*Wyers v. Master Lock Co.*,
　　616 F.3d at 1242 (Fed. Cir. 2010) .................................................................... 4

## **Statutes**

37 C.F.R. 1.63(b)(3) .......................................................................................... 8-9

## **Miscellaneous**

*Apotex Pty. Ltd. v. Les Laboratories Services* (No. 2)
　　(2009) 83 IPR 42, para. 124 (Austl.) ............................................................... 11

Patents Act 1990 (Cth.) s 3 sch 1 (Austl.) .......................................................... 11

1   **I.      INTRODUCTION AND SUMMARY.**

2           Google's Opposition pivots on three points, specifically: (1) that the law permits

3   Google to take inconsistent positions on patent validity, judicial estoppel notwithstanding; (2)

4   even were the law otherwise, Google has not taken inconsistent positions on the validity of

5   Space Data's '193 claims; and (3) alternatively again, even if the law permits estoppel, and

6   Google has been inconsistent, it has neither been advantaged nor Space Data disadvantaged

7   by Google's inconsistency.

8           Serially:

9   ***The Law: Judicial Estoppel is Entirely Proper in a Validity Contest***

10          Google says that the law categorically prohibits Space Data from raising judicial

11  estoppel on a validity issue.  Google argues that, "because Google sought the same claims in

12  its prosecution of U.S. Patent No. 8,820,678 (the '678 Patent)," Space Data's judicial

13  estoppel argument "fails as a matter of law."  Google Br. at 1:11-12.

14          This legal conclusion seems peculiar.  There are more than a dozen recent, federal

15  cases where courts have considered and applied the judicial estoppel factors in patent validity

16  cases.  *See* below § II.B-C.  Did all of these Courts simply miss a dispositive Supreme Court

17  ruling barring judicial estoppel in patent validity cases?

18          They did not.  Google's cases state a far narrower proposition than Google suggests,

19  specifically that: a defendant may not be estopped from challenging patent validity in a

20  substantive infringement case simply because that defendant once **sought** to patent the same

21  claims.  An earlier application is not enough to work an estoppel.  But, under the modern

22  *New Hampshire* test, estoppel will be found where the now-defendant secured an earlier

23  benefit, and now flip-flops for pure expediency.  This is exactly what has happened here.

24  ***Google's Inconsistency***

25          Google told the United States Patent & Trademark Office ("PTO") that its '678

26  claims were perfectly valid over prior art, at least when it owned those claims.  Google raised

27  no validity challenges when it conceded Space Data was the prior and superior rightsholder

28

1    to the core '678 claims.  From 2014 forward, it told numerous foreign jurisdictions that its

2    '678 claims were patentable over prior art, as Google owned those claims.  Google now has

3    and maintains **three** issued separate '678 foreign analogues with claims identical to Space

4    Data's '193 claims.  *See* below § III.B.

5         As Google would have it, Google's '678 claims are **valid** a foot inside Canada, where

6    Google owns these claims, but identical claims are **invalid** six inches inside the United

7    States, where Space Data owns these claims.

8         This is not inconsistent?

9    ***Benefit or Detriment***

10        Google properly recognizes that one aspect of judicial estoppel requires that it

11   secured a benefit, or Space Data suffered a disadvantage, given Google's inconsistency.

12   Google then argues that Space Data has not been disadvantaged, but completely ignores the

13   first part of the test, that Google has been **advantaged** by securing patent coverage for the

14   very claims it conceded Space Data owns in this country.  Google manifestly has secured an

15   advantage.  It holds the original '678 January 2012 priority date.  It is, even now, pretending

16   that it owns '678 claim 1 offshore, to push through unpatentable new claims in multiple

17   foreign '678 analogue prosecutions.  *See* below §IV.  These patents and claims have real

18   value; indeed, that is **why** Google prosecuted them so assiduously.

19   **II.    THE LAW: THERE IS NO CATEGORICAL ESTOPPEL BAR.**

20        The law is not as Google would have it.  There is no categorical bar to applying

21   judicial estoppel factors in a patent validity case.  Indeed, more than a dozen federal courts

22   have done just that in recent years.  Google's desiccated case (1894!), does not mean what

23   Google says it means, and a party may not tell one court "white" on Monday and a different

24   court "black" on Tuesday, validity contest or otherwise.

25        **A.    Google's Ancient Case.**

26        Google's foundational case, *Haughey v. Lee*, dates back to 1894.  Google's argument

27   posits that through one cryptic paragraph the Supreme Court held that estoppel will not lie in

28

patent validity cases.  *See* 151 U.S. 282, 285 (1894).  But, it is not remotely clear what form of "estoppel" was at issue, judicial, equitable or something different.  Similarly, it is not clear what "estoppel" was at issue in the other Supreme Court case cited by Google, *Paramount Publix Corp. v. Am. Tri-Ergon Corp*., which itself relies on *Haughey*.

But, even through the shroud of time, one thing is clear: *Haughey* did **not** establish a categorical bar on judicial or other form of estoppel in a patent validity case.  This is clear given the litany of cases that follow, including a Supreme Court case reported the very next year, 1895.  *See McCarty v. Lehigh Val. R. Co.*, 160 U.S. 110, 120 (1895).  In *McCarty*, the Supreme Court debated **whether** an unspecified estoppel should apply on the particular facts, and ultimately held no.  The court did not say there was a categorical estoppel bar; to the contrary, it considered the issue on the merits.  Were Google's reading of the *Haughey* line correct, this immediately following opinion would be nonsensical.

Nearly 50 years after *Haughey*, the Ninth Circuit addressed estoppel in the patent invalidity context.  *See Veaux v. S. Oregon Sales*, 123 F.2d 455, 457 (1941).  In *Veaux*, the Ninth Circuit explicitly recognized that whether estoppel in pais (**equitable** estoppel) could be asserted in the patent context remained unsettled.  *Id.* ("If estoppel in pais could be applicable in such a case as this, **a point we do not decide**, the elements of such an estoppel must be present before it can be applied") (emphasis added).  This recognition by the Ninth Circuit came despite it having expressly discussed *Paramount* immediately prior.

Nearly 75 years after *Haughey*, the Supreme Court addressed the issue of **licensee** estoppel.  *See generally Lear, Inc. v. Adkins*, 395 U.S. 653 (1969).  The Supreme Court did not cite *Haughey* or *Paramount*, nor did it conclude it was long settled that no estoppel applied in the validity context.  Instead, the Supreme Court analyzed the particular issue of whether licensee estoppel could be asserted given the "policy favoring free competition in ideas which do not merit patent protection," and decided not.  *See id.* at 656.

Nearly a hundred years post-*Haughey*, the Federal Circuit upheld **assignor** estoppel in the validity context.  *See Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1226

(Fed. Cir. 1988) ("When the inventor-assignor has signed the Oath, Power of Attorney and Petition, which attests to his belief in the validity of the patents, and has assigned the patent rights to another for valuable consideration, he should be estopped . . ."). The equities of the assignor/assignee contractual relationship outweighed the public policy interest in encouraging patent validity challenges. *Id.* at 1125.

It is also plain that **collateral** estoppel can be asserted against an accused infringer in the invalidity context. *See Finjan, Inc. v. Blue Coat Sys. LLC*, --- F. Supp. 3d ---, No. 15-cv-03295-BLF, 2017 WL 7050646 at *12 (N.D. Cal. July 28, 2017); *Evonik Degussa GmbH v. Materia Inc.*, 53 F.Supp.3d 778, 794, (D. Del. 2014) (defendant collaterally estopped from disputing patentability over prior art where it strategically avoided the issue during Interference).

These cases make plain that there is no "estoppel" categorical bar in validity challenges, contrary to Google's central but strategically fuzzy premise. Read carefully, *Haughey* (and its progeny) stand for one narrow proposition: that an inconsistency caused by an infringer's prior prosecution of similar claims, standing alone, does not work an estoppel. The relevant language in *Haughey*: "it [as in the inconsistency] certainly cannot be said to constitute an estoppel," goes no further. *See* 151 U.S. at 285. The same is true of *Paramount*. *See* 294 U.S. 464, 455 (1935) ("**such inconsistency** affords no basis for an estoppel") (emphasis ours). And, the same is true of the Federal Circuit case in the *Haughey* line on which Google relies. *See Wyers v. Master Lock Co.*, 616 F.3d at 1242 (Fed. Cir. 2010) (mere inconsistency with prosecution insufficient to work an estoppel: "one is not estopped . . . **by the fact** that one has previously made an attempt to procure a patent for substantially the same invention").[1] The Ninth Circuit case cited by Google could not be clearer: "The fact that appellee may be now taking a position inconsistent with a former

---

[1] *Wyers* is also distinguishable on its facts. *Wyers* did not involve claims that were defendant's claims exactly. Google's '678 claim 1 is Space Data's '193 claim 1.

position, is not by reason of the inconsistency, a **sufficient** reason for applying an estoppel." *Veaux*, 123 F. 2d at 457 (emphasis added).  These cases say nothing about the applicability to invalidity challenges of judicial, equitable, collateral, assignor, or licensee estoppel, each of which have their own standards and rationales beyond mere inconsistency.

### B.    Modern Estoppel Law: *New Hampshire*.

In 2001, the Supreme Court set forth the modern analysis underlying the application of judicial estoppel.  *See generally New Hampshire v. Maine*, 532 U.S. 742.  The Supreme Court noted that it had "not had occasion to discuss the doctrine elaborately" prior, *id*. at 749; held that "judicial estoppel is an equitable doctrine invoked by a court at its discretion," *id*. at 750; and set out a flexible and non-exhaustive framework for evaluating judicial estoppel applicability to a given set of facts.  *Id*. at 750-51.

Judicial estoppel is applied based on the *New Hampshire* framework.  There is no unique body of federal patent law on judicial estoppel, nor could there be.  *Cf. eBay, Inc. v. MercExchange LLC*, 547 U.S. 388, 394 (2006) ("[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, . . . such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases . . ."); *cf. id* at 392.

Further, the Federal Circuit does not treat judicial estoppel as a matter of substantive patent law turning on the application of unique patent rules, but rather looks to the general law of the applicable regional circuit.  *See*, *e.g.*, *Biomedical Patent Mgmt. Corp. v. Cal. Dept. of Health & Servs.*, 505 F.3d 1328, 1341-43 (2007) (analyzing whether accused infringer was judicially estopped on sovereign immunity under Ninth Circuit law, "[b]ecause judicial estoppel is not a matter unique to [Federal Circuit] jurisdiction")*; see also Synopsys, Inc. v. Magma Design Automation, Inc.*, No. C-04-3923 MMC, 2007 WL 322353 at *25 (N.D. Cal. Jan. 31, 2007)  ("Ninth Circuit, rather than Federal Circuit, law governs . . .").

The Federal Circuit's view that judicial estoppel is not a question of substantive patent law does not change when the issue is invalidity.  In S*ource Search Techs., LLC v.*

*LendingTree, LLC*, 588 F. 3d 1063 (Fed. Cir. 2009), the Federal Circuit addressed whether the accused infringer was judicially estopped from relying on late disclosed prior art with respect to obviousness. *See id*. at 1069 & 1071. In this invalidity specific context, the Federal Circuit reiterated that "[w]hether judicial estoppel applies is a matter of regional circuit law," and evaluated the issue under the Third Circuit's judicial estoppel test, with no mention of a policy driven bar. *See id*. at 1071.[2]

### C.   Courts Routinely Consider and Apply Judicial Estoppel in Validity Contests.

Google is not the first defendant to argue that an invalidity challenge can never be judicial estopped. In *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc*., based in-part on *Paramount*, the defendant argued that public policy rendered judicial estoppel inapplicable to invalidity arguments. *See* No. CIV 03-0597-PHX-MHM, 2004 WL 7314039, at *9 (D. Ariz. Sep. 30, 2004). The court was "not convinced that judicial estoppel [did] not apply," but declined to go further given factual disputes and inadequate briefing. *Id.* However, in a subsequent decision, the Court analyzed the issue under the Ninth Circuit's judicial estoppel framework. *See* Dec. of Spencer Hosie ISO Reply ("Hosie Dec."), Ex. 38 (Sep. 30, 2005 Order, No. 03-0597-PHX-MHM, ECF No. 311 at 11) ("Appling regional circuit law . . ."). The court made no mention of *Paramount* or an absolute bar, and instead considered the policy interest as one aspect within its larger standard judicial estoppel analysis. *Id*. at 12. On the facts there, the court ultimately rejected estoppel, finding that the defendant's positions were not "irreconcilably inconsistent" and that the plaintiff had not shown that defendant acted in "bad faith." *Id. See also Novo Nordisk A/S v. Bio-Technology Gen. Corp., Ltd*, No. 02-332-SLR, 2003 WL 21383717, at *2-5 (D. Del. Jun. 9, 2003)

---

[2] *See also Verinata Health, Inc. v. Ariosa Diagnostics, Inc*., No. 12-cv-05501-SI, 2017 WL 235048, at *6-7 (N.D. Cal. Jan. 19, 2017) (J. Illston) (**Applying** the *New Hampshire* factors in the invalidity context); *Ocean Tomo, LLC v. PatentRatings, LLC*, 262 F. Supp. 3d 553, 567 (N.D. Ill. 2017) (**Applying** the Seventh Circuit's ordinary framework to invalidity). It was only after applying the standard test that the *LendingTree*, *Verinata* and *Ocean* courts declined to estop.

1  (applying regional circuit law, the court considered the policy interest as just one aspect

2  within the regional circuit's analysis, and only declined to estop "upon balancing the

3  factors," which included balancing a finding that defendants' positions were "not

4  irreconcilably inconsistent").

5       Google's opposition emphasizes *MasterObjects v. Google*, without explaining this

6  emphasis to this Court.  Here is why: the undersigned counsel represented MasterObjects in

7  that case and brought the motion on judicial estoppel.  Judge Hamilton **agreed** with

8  MasterObjects that judicial estoppel applied fully in a patent validity context, **agreed** that the

9  PTO proceeding is a "quasi-regulatory" proceeding, and said that Google was **not free** to

10  come into her Court and make arguments inconsistent with the positions it had taken on the

11  same prior art in its own prosecutions.  The Court, however, found that Google had **not yet**

12  taken an inconsistent position, and so denied the motion as premature.[3]

13       Finally, courts have exercised their discretion to estop accused infringers on an

14  invalidity attack.  In *Homeland Housewares, LLC v. Sorensen Research and Dev. Trust*, the

15  court considered whether the accused infringer was judicially estopped from arguing

16  invalidity for indefiniteness, given contrary claim construction arguments.  *See* No. CV 11-

17  3720-GW(JEMx), 2013 WL 12134266, at * 7-8 (C.D. Cal. Feb. 28, 2013) (tentative

18  decision) (adopted as final ruling on Mar. 1, 2013 by No. CV 11-3720-GW(JEMx), ECF. No.

19  191 (Hosie Dec., Ex. 39)).  With no mention of any judicial estoppel prohibition or policy

20  concerns, the court applied the *New Hampshire* factors and found the accused infringer

21  judicially estopped.  *See id.*[4]

22

23  [3] In *MasterObjects*, Google argued that one particular piece of prior art meant one thing
when Google was prosecuting its own patents, but something quite different when attacking

24  MasterObjects' patent.  Since Google had not filed an argument yet, the judge in
MasterObjects found the motion premature.  In contrast, Space Data seeks to estop Google

25  from arguing '193 invalidity in full.  Google joined that fight with its invalidity counterclaim.

26  [4] *See also SSL Services v. Citrix*, 940 F. Supp. 2d 480, 498 n.2 (E.D. Tex. 2013) ("arguments
regarding the lack of written description argument should be barred by the doctrine of

27  judicial estoppel.  *See New Hampshire* . . . ."); *cf. Hynix Semiconductor Inc. v. Rambus Inc.*,

… (Footnote continued on next page) …

28

**III.    CONSISTENCY IS THE HOBGOBLIN…: GOOGLE'S ROBUST AND CONTINUING PROSECUTION OF SPACE DATA'S '193 CLAIMS.**

Google next argues that "[n]one of Google's statements to the [PTO] during the prosecution of the '678 patent are inconsistent with its positions regarding the validity of the asserted claims in this litigation."  Google Br. at 1:14-16.  It then argues, oddly—given its many '678 analogue patents—that it did not "succeed in obtaining patent claims as a result of any allegedly inconsistent arguments."  *Id.* at 1:17-18.  Finally, Google says that it has not secured any '678 analogue patents in **foreign** jurisdictions.  *See* Google Opp. at 12, n.7 ("Google's prosecution of certain applications is 'ongoing' **and Google therefore has not 'succeeded' in persuading these foreign patent offices to accept any allegedly contradictory position, such that judicial estoppel could apply."**), misquoting (before the bold) Space Data's brief.

These assertions depart from the factual (and empirical) record.

**A.    U.S. Prosecution and Interference.**

Google secured its '678 claims here, and owned those claims until Space Data provoked the Interference.  *Compare* Pransky Dec. (ECF 225), Ex. A ('678 patent) *with* Hosie Dec., Ex. 40 (Interference Judgment).  To get these claims, Google filed inventor's declarations saying that the invention was Google's alone and fully novel and non-obvious.  *See* Dec. of Spencer Hosie ISO Opening Br. ("Prior Hosie Dec."), Ex. 36.  In prosecuting its '678 U.S. application, Google told the PTO that the prior art listed did **not** anticipate nor render obvious; if it thought otherwise, Google could not have gone forward with its prosecution. *See* Prior Hosie Dec., Exs. 32 & 34 ('678 Information Disclosure Statements).[5]

---

No. C-00-20905 RMW, 2009 WL 230039, at *9 (N.D. Cal. Jan. 27, 2009) (J. Whyte) (citing Ninth Circuit law and the Federal Circuit's *Biomedical* decision, the court reasoned that judicial estoppel appeared to bar accused infringer from objecting to testimony on invalidity issues, but ultimately decided the issue on other grounds).

[5] The IDSs are admissions that Google was both aware of the prior art listed and that it did not consider any of it to be disabling.  If Google had concerns about the prior art then, it could not have proceeded to tell the PTO the '678 claims were patentable.  *See* 37 C.F.R.

… (Footnote continued on next page) …

1   Yet, it persisted.

2      Google's '678 prosecution was explicitly based on Google's overt representations

3   that its '678 claims were valid and fully patentable, from the first filing forward (or will

4   Google concede it filed an application it **knew** lacked merit?).

5      In the Interference Proceeding, Google conceded priority of the core '678 claims to

6   Space Data and did not contest validity.  Its failure to raise the issue at the Interference,

7   standing alone, permanently bars Google from seeking to undermine the '193 patent before

8   the PTO.  *See* 37 C.F.R. 41.127.

9      **B.    Google's Issued '678 Foreign Analogues.**

10      Google has issued '678/'193 patents in three foreign jurisdictions: Canada, Australia,

11   and China.  In each of these prosecutions, Google made statements flatly inconsistent with its

12   '193 invalidity challenge in this Court, and indeed took steps to either secure or maintain its

13   '678 analogue claims offshore **after** it conceded in the August 2016 Interference that Space

14   Data owned the invention.

15   *__Australia__*

16      Google's Australian '678 application went into examination in 2014.  It claimed

17   priority to Google's January 9, 2012 U.S. '678 filing.  **That is, Google's U.S. '678 is the**

18   **Australian patent's parent.**  Hosie Dec., Ex. 41.  Google's '678 Australian application is

19   verbatim with Google's U.S. '678 application, both in specification and claims.  *See* Hosie

20   Dec., ¶3.  Google filed an inventor's declaration, claiming that it was entitled to claim

21   priority to the '678 claims, and that the invention was Google's alone.  *See id.*, Ex. 42.

22      As was true in Google's domestic '678 prosecution, the Australian Patent Office

23   (APO) rejected the claims over the Campbell '263 reference.  In response, Google amended

24   its Australian claims precisely as it had amended its domestic '678 claims.  Google then told

25

26   ──────────────────────────────

27   1.63(b)(3) ("the person making the oath . . . believes the named inventor . . . to be the original
and first inventor . . . of the subject matter which is claimed . . .").

28

1  the APO that the claims must be allowed, **as the identical claims had been allowed in**

2  **Google's '678 prosecution in the United States "as conceded by the U.S. examiner"**:

> The amendment proposes to substantially conform the claims to
> those issued in the corresponding US Patent (US 8,820,678).
> Additional amendments have been made to reduce the claim
> count.  No new matter has been introduced.
> **In view of the present amendments, we respectfully submit**
> **that the examiner's clarity and prior art concerns have been**
> **overcome, <u>as conceded by the US examiner</u>.**

7  *See* Hosie Dec., Ex. 43.

8        The APO accepted Google's representation, and said that, as amended, the patent

9  would issue.  *See* Hosie Dec., Ex. 44 (APO to Google, March 25, 2015).  Thereafter, Google

10  paid the issuance fee, and the patent issued as of July 23, 2015.  *See* Hosie Dec., Exs. 45-46.

11        In December 2016, post-U.S. Interference, Google Australian patent counsel asked

12  that a series of Google Australian patents be assigned from Alphabet to "X-Development

13  LLC," including the Australian '678 analogue.  Hosie Dec., Ex. 47.  (Google controls X-

14  Development.  *See id*., Ex. 48.)  This request and assignment came **after** Google's claims

15  were cancelled in this country.

16        Google paid a maintenance fee to the APO in late 2016 and again in December 2017.

17  *See* Hosie Dec., Exs. 49 & 50.  It owns this patent today.

18        Finally, and just days ago, Google filed for leave to amend the claims of its issued

19  Australian '678 analogue patent.  *See id*., Ex. 51.  Without telling the APO **why** it wanted to

20  amend, Google proposed an amendment that would add a limitation to '678 claim 1, thereby

21  arguably distinguishing it over Space Data's '193 claim, and drop the other copied claims.

22  Specifically, Google's amendment adds what was once dependent claim 13 (this dependent

23  claim just adds the element of using an energy gradient to decide movement) to independent

24  claim 1, and then drops the prior independent claims all owned by Space Data.  *See id*.

25        Because Australian law generally forbids amendment of patents while relevant

26  proceedings in **relation** to the patent are pending, the APO asked Google to affirm that there

27  were no "relevant proceedings."  Hosie Dec., Ex. 52 (emphasis added).   "Relevant

28

1  proceedings" include "court proceedings: . . . for infringement of the patent; or . . . in which

2  the validity of the patent, or of a claim is in dispute."  Patents Act 1990 (Cth.) s 3 sch 1

3  (Austl.) (Hosie Dec., Ex. 53).  Google responded, in writing, that there were not.  Hosie Dec.,

4  Ex. 54.  There are. [6]

5         Google did **not** tell the APO that its core '678 claims had been cancelled years ago.  It

6  did **not** tell the APO that Google conceded that Space Data owned the invention claimed in

7  Google's '678 Australian analogue.  It did **not** tell the APO that even now—right now—

8  Google was asserting in this U.S. case that the core '193 claims were **invalid**.  It did **not** tell

9  the APO that it was challenging the independent claim that now formed the bulk of its new

10  amended claim.  It did **not** tell the APO that it made the amendment precisely because of a

11  pending motion in pending litigation; this is about as "related" as "related" gets.  And it did

12  **not** tell the APO that Google did not own claim 1, but rather Space Data did and does, (by

13  which deception Google presumably hopes to escape an examination of whether dependent

14  claim 13 standing alone is novel and non-obvious, as against deriving patentability from

15  independent claim 1).

16         Now, why does this activity in Australia matter in this litigation in California?

17  Because, as set forth below, this is **proof** of Google seeking an improper benefit through

18  inconsistent of-record positions, the bedrock point of judicial estoppel.

19  ***Canada***

20         Google's Canadian '678 analogue entered the National Phase on June 13, 2014.

21  Hosie Dec., Ex. 56.  As is true for every other '678 foreign analogue, Google filed the

22  foreign equivalent of an "inventor's declaration," that is, a document stating that Google's

23  named inventors were the first and original inventors of the claimed invention.  *See id.*, Ex.

24  _____

25  [6] The APO cares about parent patents in litigation in **other** jurisdictions; disclosure is
   required by a duty of candor.  *See Apotex Pty. Ltd. v. Les Laboratories Services* (No. 2)
26  (2009) 83 IPR 42, para. 124 (Austl.) ("invalidity concerns raised in UK") (relevant portions
   attached as Ex. 55 to Hosie Dec.).
27

28

1   57.  After various amendments, the Canadian Patent Office ("CPO") issued a Notice of

2   Allowance in late May 2016.  *See id.*, Ex. 58.

3          On November 23, 2016, after ceding the '678 claims to Space Data in the domestic

4   Interference, Google assigned the Canadian application to "X Development LLC."  *See id.*,

5   Ex. 59.  Google then paid an application maintenance fee on December 20, 2016.  *See id.*,

6   Ex. 60.  The Canadian '678 patent issued on January 31, 2017, *see id.*, Ex. 61, long after

7   Google had ceded its core '678 claims to Space Data.

8          Just nine days before the date of this Reply Google informed the CPO that it had

9   claimed material "to which [it] had no lawful right" and disclaimed the claims that belong to

10  Space Data (though it retained claims depending from them).  *See id.*, Exs. 61-62 (for

11  example, Google disclaimed Canadian claim 1, which is '193 claim 1, but retained Canadian

12  claim 8, which is '678 claim 13, a dependent claim Google retained post-Interference, *see*

13  below §IV.)  Even in this putative act of contrition Google committed sins of omission by

14  failing to mention Space Data, the Interference, Google's concession of priority, that its

15  retained claims depend on Space Data's claims for their validity, or the reason for its sudden

16  retraction.  Instead it passed off its monopolization of claims it knew it did not own as no

17  more than a "mistake" or "accident."  *Id.*  But a systematic patent campaign spanning at least

18  six jurisdictions scattered across five continents, all coordinated by sophisticated IP counsel

19  employed by the second largest company in the U.S., does not just happen by "mistake" or

20  "accident."

21  ***China***

22          Google's Chinese application entered the National Phase in late 2014.  Hosie Dec.,

23  Ex. 63.  Google submitted amended claims on April 5, 2016 and again on August 25, 2016

24  (after ceding the core '678 claims to Space Data in the U.S. Interference).  *See id.*, Exs. 64 &

25  65.  Google made two other changes to the application in late 2016, and received a notice of

26  "passing examination" on December 16, 2016.  The patent issued on March 15, 2017, *see id.*,

27  Ex. 66, almost a year after Google lost its core claims to Space Data.

28

1    As of the time of this filing, Google has not yet sought to amend its China '678

2    claims as it has in Australia and in the EU.  Presumably, this filing too is imminent.

3                    **C.     Google's Pending '678 Foreign Prosecutions.**

4    In addition to the three issued '678 foreign analogues, Google continues to prosecute

5    '678 in at least two other jurisdictions, the EU and Brazil.

6    ***European Union***

7    As set forth in greater detail in Space Data's Opening Brief, Google made substantial

8    amendments to its '678 EU analogue long after Google lost its core '678 claims in the U.S.

9    Interference, and continued to try to patent those claims as valid Google claims.  Google filed

10   an amendment on December 5, 2016.  *See* Prior Hosie Dec., Ex. 6-7.  Google continues to

11   pay renewal fees for the EU application, including as recently as January 29, 2018.  *See id.*,

12   Ex. 67.

13   Further, just weeks ago on January 30, 2018, Google made a "voluntary" amendment

14   in its pending EU '678 application, similar to what it is trying to make in the issued

15   Australian patent, i.e., rewriting once '678 dependent claim 13 to be new independent claim

16   1.  *See id.*, Ex. 68.  As is true in Australia, Google did not tell the EU Patent Office (EPO)

17   why it was making the amendment, or disclose the litigation relating to the patent from which

18   the EU '678 claimed priority, or the presence of this judicial estoppel summary judgment

19   motion.  Nor did it tell the EPO that it had lost is core '678 claims nearly two years ago, that

20   it long ago conceded that Space Data was the real inventor and owner, or that Google was

21   even now arguing that the claims it had long championed as valid are now invalid.

22   ***Brazil***

23   South America matters to Google Loon.  *See* Hosie Dec., Exs. 69-71.  Google's

24   Brazilian '678 analogue entered national examination on September 7, 2014.  *See id.*, Ex. 72.

25   The examination remains open, and on March 3, 2018, just a week prior to this filing, Google

26   sought to amend its Brazilian claims as it had in Australia and in the EU.  *See id.*, Ex. 73.  As

27   is true in all the other jurisdictions, Google did not tell the Brazilian Patent Office **why** it was

28

1    seeking to amend its pending claims, or disclose that it had lost its core '678 claims a year

2    and a half earlier, or that it was even now arguing that the core '678 claims (as owned by

3    Space Data), are invalid.

4    **IV.    GOOGLE'S BENEFIT WAS REAL AND REALIZED.**

5         The cases Google relies on involve situations where a subsequent defendant had

6    previously applied for a patent.  The courts find, not surprisingly, that merely applying for a

7    patent does not, standing alone, work a judicial estoppel.

8         This is not our case.  Here, Google did far more than **apply** for a similar '193 patent.

9    Google, systematically and over many years and jurisdictions, filed and **secured** patent

10   claims identical to the very '193 claims it now argues are invalid.  It prosecuted applications

11   after it had ceded its '678 claims in the Space Data Interference, and then happily paid

12   maintenance and renewal fees to keep its foreign '678 patents alive.  Google has only

13   changed course in the last two weeks given this pending summary judgment matter.  Would

14   Google have coordinated a multi-national flurry of patent activity in just days but-for Space

15   Data's motion?

16        Google has benefitted from its inconsistency in concrete and material ways.  It owned

17   for years the '193 Space Data claims in Google patents offshore.  It yet benefits from the

18   earlier priority date (January 2012).  And Google has **not** disclosed that Space Data **owns**

19   claim 1, not Google.  The various Offices considering Google's still dewy proposed

20   amendments will not, accordingly, consider Space Data's claim 1 as prior art to a new claim

21   with dependent claim 13 just grafted on claim 1.  This point is important: Google got its

22   dependent claim 13 in the U.S. only because 13 depends from claim 1.  *See* Hosie Dec., Exs.

23   74-76. But this dependency no longer works for claim 13, as Space Data now owns claim 1.

24   Google is trying to avoid an examination of dependent claim 13 by hiding that it can no

25   longer depend from claim 1.  There is a reason why Google has concealed the true statement

26   of affairs in its many ongoing prosecutions and efforts to amend: Google is still very directly

27   leveraging Space Data's invention as Google's own.

28

1
2

**V.   AS APPLIED: UNDER *NEW HAMPSHIRE*, GOOGLE SHOULD BE ESTOPPED TO CHALLENGE AS INVALID THE VERY CLAIMS IT REPEATEDLY PATENTED AS VALID.**

3   Google's actions clearly meet all of the *New Hampshire* factors.  First, Google's '193

4   invalidity claim is directly inconsistent with the position it twice took before the PTO (during

5   the '678 prosecution and the Interference).  Google's statements to the foreign agencies are,

6   likewise, at odds with its position here.  Second, Google obviously "succeeded in

7   persuading" the PTO and foreign agencies that the '678 claims were valid.  The '678 patent

8   issued (with a presumption of validity) in this country.  Google then exploited the PTO's

9   imprimatur to obtain analogues abroad.  Third, Google's unfair advantage continues.  It

10   prosecutes identical '678 claims abroad while simultaneously demanding this court invalidate

11   them.  Google also enjoys U.S. and foreign protection of certain '678 dependent claims it

12   obtained **only** by advocating the patentability of a claim it now seeks to invalidate.  *See*

13   Hosie Dec., ¶¶ 11-13 & Exs. 74-76.  Further, untethered to Space Data's early priority date,

14   Google will enjoy patent monopoly of '678 claims in foreign countries and in the U.S. long

15   after Space Data's claims expire.  Space Data has suffered an unfair detriment by Google's

16   clouding of the title to these patent claims worldwide.

17   **VI.   CONCLUSION.**

18   Google is the seventh most prolific filer of patents in the world.  *Cf.* Hosie Dec., Ex.

19   77.  Its conduct on this foundational Loon application, however, both here and abroad, makes

20   a mockery of the patent systems in many countries.  By advancing its now expedient

21   invalidity argument in this Court, Google is using this Court as the instrumentality to pervert

22   and thwart the patent system of this country and other countries.

23   To whom much is given, much is expected.  Better should be expected of Google

24   here.

25   Dated:  March 15, 2018                    Respectfully submitted,

26

27                                            */s/ Spencer Hosie*_____
                                             SPENCER HOSIE (CA Bar No. 101777)
                                             shosie@hosielaw.com

28

1  DIANE S. RICE (CA Bar No. 118303)
   drice@hosielaw.com
2  LYNDSEY C. HEATON (CA Bar No. 262883)
   lheaton@hosielaw.com
3  BRANDON C. MARTIN (CA Bar No. 269624)
   bmartin@hosielaw.com
4  DARRELL R. ATKINSON (CA Bar No. 280564)
   datkinson@hosielaw.com
5  HOSIE RICE LLP
   600 Montgomery Street, 34th Floor
6  San Francisco, CA 94111
   (415) 247-6000 Tel.
7  (415) 247-6001 Fax
8
   *Attorneys for Plaintiff*
9  *SPACE DATA CORPORATION*
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28