

Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
keker.com

Eugene M. Paige
(415) 391-5400
epaige@keker.com

HOSIE | RICE LLP

Transamerica Pyramid, 34th Floor
600 Montgomery Street
San Francisco, California 94111
T: 415.247.6000
F: 415.247.6001

Spencer Hosie
(415) 247-6000
shosie@hosielaw.com

**VIA ELECTRONIC FILING**
**REDACTED VERSION SOUGHT TO BE SEALED**

May 23, 2018

The Honorable Nathanael M. Cousins
United States District Court for the Northern District of California, San Jose Division
Courtroom 7, 4th Floor
280 South 1st Street
San Jose, CA 95113

Re: *Space Data Corp. v. Google, et al.*, Case No. 16-cv-03260-BLF (NMC)

Dear Judge Cousins:

Defendants Alphabet Inc. and Google LLC (collectively, "Google") and Plaintiff Space Data Corporation ("Space Data") submit this joint letter brief regarding Space Data's assertion of attorney-client privilege and work-product protection over certain dealings between Space Data and potential litigation funding entities. Google contends that these interactions are not privileged and hereby moves to compel (1) Space Data to produce copies of the Board minutes that it has produced without redactions to the discussions of the existence of these dealings; and (2) Space Data Board of Directors member David Wu to complete his deposition and answer questions related to this subject matter, which he previously refused to answer. Space Data requests that the Court: (1) deny Google's motion to compel production of the clawed-back information; (2) sustain Space Data's privilege objections made during Mr. Wu's deposition and confirm that Mr. Wu's deposition is closed; and, (3) find Space Data may properly withhold information related to litigation financing. The parties have met and conferred orally and in writing, but have been unable to resolve the dispute.

**GOOGLE'S STATEMENT**

On May 2, 2018, in response to repeated inquiries by counsel for Google, Space Data produced a set of minutes of the meetings of its Board of Directors for recent years. Those minutes bore a number of redactions of what Space Data has asserted is attorney-client privileged material. Some of the material that was not redacted under claim of privilege appeared to relate to communications with third parties that are likely to bear upon Space Data's financial condition. ███████████████████████████
████████████████████████, and has produced documents reflecting that it has ████████
████████████████████████████████████████████████████████████████████████████
████████████████████████. Documents reflecting the back and forth between Space Data and its lender/shareholders dating from after 2015 do not appear to have been produced by Space Data, despite the fact that such letters from earlier years have been produced and Space Data claims to have substantially completed its production of documents.

On May 8, 2018, Google took the deposition of David Wu, who has been a member of Space Data's Board of Directors since 2001. When Google began to question Mr. Wu regarding the business dealings that Space Data had with the third parties reflected in the minutes of the meetings of the Board of Directors, Space Data's counsel instructed him not to answer any of the questions asked. These included questions regarding the mere identities of the third parties and whether the third parties had provided certain documents to Space Data. In each case, the witness indicated that he would not answer the question. Counsel for Google pointed out that such discussions with a counterparty could not be privileged and asked that Space Data reconsider its position. Space Data's counsel refused to allow the witness to answer, stating "Well, we can discuss this, you know, before the judge when you make your motion, but we've stated our privilege."

Late on the evening of May 9, 2018, Space Data sent Google an email seeking to claw back the Board minutes in question and replace them with further redacted copies of the minutes. The email requesting the clawback did not provide any information regarding the purported basis for the clawback, and Google requested on May 10, 2018 that the explanation for Space Data's claim that the information be returned or destroyed that is required by section 13 of the Protective Order entered in this case be provided. On May 14, 2018, Space Data provided Google with a privilege log claiming that the redacted material was "information reflecting attorney-client privileged communication." On the evening of May 18, 2018, Space Data provided an amended privilege log claiming that the redacted material was "information reflecting attorney-client privilege and/or work product protected information."

**Space Data cannot claim privilege over the facts of its communications with third parties.** Space Data improperly instructed Mr. Wu not to answer questions at his deposition related to communications with and from third parties. The questions were not directed to any legal advice that counsel for Space Data may have given to Space Data. Rather, the questions that Mr. Wu was instructed not to answer were simply who, what, and whether questions about the discussions that Space Data management had engaged in with third parties. Such information is not privileged even if attorneys were present at the Board meeting. *See New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 444 (D. Kan. 2009) ("There is a distinction between a conference with counsel and a conference at which counsel is present; the mere presence of counsel at a meeting does not make all communications during the meeting privileged."); *see also Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-04394 (AJN) (BCM), 2016 U.S. Dist. LEXIS 66741, at *17 (S.D.N.Y. May 20, 2016) ("Even if these statements (and the underlying communications with third parties) were prompted by prior discussions with counsel, they are not themselves privileged."). They relate to discussions with third parties that potentially bear on Space Data's financial condition. Yet Space Data's counsel refused even to allow the witness to testify as to the nature of the parties named in the Board minutes. Such information regarding the counterparty to a potential transaction is not privileged, *see Berger v. Seyfarth Shaw LLP*, No. C 07-05279 JSW (MEJ), 2008 U.S. Dist. LEXIS 88811, at *8-9 (N.D. Cal. Oct. 21, 2008) (finding that the relationship between the plaintiff and a third party "is afforded no privilege" and any documents pertaining to their agreement that do not contain legal advice or opinions formed by plaintiff's counsel are not privileged); *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010), and Space Data should be ordered not to interpose such objections in the future. Google should also be permitted to conclude the questioning of Mr. Wu that was blocked by these improper assertions of privilege.

**Space Data may not redact information from its Board minutes about these communications with third parties.** Space Data appears to have reproduced further redacted versions of the minutes of meetings of its Board of Directors that redact any mention of the discussions at Board meetings of these third parties. There is no dispute that the minutes of the meetings of Space Data's Board of Directors are relevant and responsive. And there is no basis for redacting material that does no more than naming

third parties with whom Space Data had communications. Such facts memorialized in Board minutes are not attorney-client communications, and they are not privileged. *See Berger*, 2008 U.S. Dist. LEXIS 88811, at *8-9. Space Data should be ordered to produce these documents without these improper redactions, as well as removing any other redactions that do not reveal the substance of attorney-client communications or otherwise privileged information.[1]

**SPACE DATA'S STATEMENT**

This dispute is not about Mr. Wu's deposition, or even the clawed-back documents (all of which post-date the complaint). For months, Google has sought a broad array of documents reflecting Space Data's consideration of potential litigation financing. Months ago, Google demanded such documents in its RFP No. 174. The parties exchanged letters and emails on the topic, including on April 18, when Space Data counsel wrote to Google counsel to "close the loop on our meet and confer process on Google's request for litigation financing or related documents."

Just last week, Google served its Fifth Requests for Production (which Google has offered to withdraw pending resolution of this brief), which seek any and all such documents. The deceptively narrow Wu deposition issue merely foreshadows this much larger work-product issue; this is a fight about whether Google can force Space Data to produce all information reflecting its consideration of potential third-party litigation financing.

Google wants to know how Space Data and its lawyers actually value the case. Certainly, that information would be useful to Google; what party would not want an inside look at its counterparty's internal case valuations? To illustrate, consider the counter case: Space Data would certainly be interested in knowing what Keker Van Nest's annual litigation budget for this case is, as that information, too, would say something about Google's real risk evaluation of the case. This kind of inquiry into information protected by the work product doctrine is improper, as many courts have found. *See* below. In any event, none of the documents Google seeks reflect the information that it wants: Space Data's internal valuation of its case and patents, and as such, these documents (and this line of questioning) are wholly irrelevant to any claim or defense in this action.

Here is what Google has not told the Court:

1. Space Data told Google in writing—many times—that it does not have any third-party litigation financing. This case has been funded by Space Data and its investors (as is also true for Google). Google wants to delve into documents where Space Data may have ***considered*** litigation financing. Such documents are even further afield than documents reflecting a closed litigation financing, and courts have repeatedly found that completed litigation financing documents were prepared in anticipation of litigation, and thus protected from disclosure.

---

[1] Space Data claims that this dispute "is not about" the relief that Google expressly seeks. But Space Data is mistaken. Google is not seeking to compel the production of "all information reflecting its consideration of potential third-party litigation financing." Google is instead asking the Court to set the boundaries on what Space Data may affirmatively withhold from discovery as privileged. The Court should make clear that Space Data may not instruct its witnesses not to answer questions relating to non-privileged facts, such as the parties with whom it has had business discussions and the nature of those discussions, and that it may not redact ordinary business documents that only memorialize the fact that Space Data has engaged in such discussions.

2. None of the preliminary documents reflect a value for the patents or for the Space Data technology. Space Data has so represented to Google, in writing and of-record. As discussed below, under perhaps even the best case for Google, *Odyssey Wireless, Inc. v. Samsung Electronics Co., Ltd.*, 2016 WL 7665898, at * 7 (S.D. Cal. Sep. 19, 2016), the documents sought here would not be relevant.

3. Google has been seeking this information for months. The parties have exchanged numerous letters or emails in which Google made its object clear: it wants to delve deeply into any and all Space Data consideration of potential litigation financing. This is what the dispute is about.

**THE LAW**

The discovery of litigation financing information is not a new issue in this District. To start, in June 2016, the District proposed a change to Civil Local Rule 3-15 that would have explicitly identified "litigation funders" as those whose identities must be disclosed. Ultimately, the District decided not to include the "litigation funders" disclosure addition in Rule 3-15, instead updating the standing order on CMC statements to require third-party litigation funding disclosure only in class actions (opposed to general civil proceedings). Space Data explained this to Google in Space Data's April 18 letter.

Many courts have ruled that third-party litigation financing information is protected from disclosure. In *Odyssey*, the Southern District of California held that work-product protection applied to litigation funding documents, because the documents were prepared in anticipation of litigation. Even though the documents were protected, the court ultimately ordered production of the portions pertaining to patent valuations, while permitting redaction of everything else. *See generally* 2016 WL 7665898. Here, as noted above, the litigation financing related documents do not reflect patent valuations. Accordingly, information relating to litigation financing is properly withheld in toto. *See Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*, 2018 WL 466045, at *5–6 (W.D. Pa. Jan. 18, 2018) (holding that communications and agreements with litigation-funding organizations were in anticipation of litigation: (1) to enforce the patent; and/or (2) to reacquire the patent, and were thus "shielded under work product protection");[2] *Viamedia, Inc. v. Comcast Corp.*, 2017 WL 2834535, at *1-3 (N.D. Ill. Jun. 30, 2017); *see also In re Int'l Oil Trading Company, LLC*, 548 B.R. 825, 832-835 (Bankr. S.D. Fla. 2016) (holding that litigation funding documents were privileged under both the common interests and agency exceptions).

*Berger v. Shaw* (cited by Google) is not to the contrary. In that malpractice case, the legality of a third-party funding agreement itself was a substantive issue necessary to resolution of the claims and defenses.

*Why It Matters*

Litigation financing is becoming increasingly common in this country. The Federal Rules Advisory Panel is considering the issue, Congress has recently shown interest in it, and even the non-legal press, such as the New York Times, has published articles about it. As discussed above, this District has considered it as well, and prudently chose not to require disclosure except in class action lawsuits. If a defendant can routinely seek discovery of all litigation financing information, or the details of closed litigation financing, then every case will devolve into an irrelevant morass. This will spark inevitable privilege and work product fights, and divert from the merits issues. There are, accordingly, important

---

[2] This opinion takes care to redact the names of the funders.

policy considerations militating against Google's effort to peek into Space Data's internal case evaluation, which—paradoxically enough—the documents and testimony it seeks do not even reflect.

### *Recommendation and Suggested Compromise*

Space Data respectfully requests that this Court conduct an *in-camera* inspection of the relatively few documents germane, including the clawed-back documents. This review will reflect that these documents contain no patent evaluation, nor valuation of Space Data's IP at all. Even under Google's best cases, these documents are not relevant and should not be produced.

Finally, on the Wu deposition, these objections were properly tailored to protected Space Data's privileges and prevent waiver. The objectionable questions were asked in the context of the very paper that Space Data clawed-back. Google attempted to show the deponent the now clawed-back material, which Google knew related to litigation financing and Space Data's claims of privilege. Google's real object was to use the Wu deposition as a lever to argue that Space Data waived and thus had to produce all of the paper Google in fact really wants and has long sought.[3] On this score, Google's footnote 1 above is perhaps a little misleading. Google says it is **not** seeking the production of the litigation financing documents. It is, but just proposes to approach this issue and this Court in piecemeal fashion.


Respectfully submitted,                                Respectfully submitted,


*/s/ Spencer Hosie*                                    */s/ Eugene M. Paige*
Spencer Hosie                                          Eugene M. Paige
*Counsel for Plaintiff Space Data Corp.*               *Counsel for Defendants Alphabet Inc. and Google LLC.*


I hereby attest pursuant to Civil Local Rule 5-1(i)(3) that concurrence in the electronic filing of this document has been obtain from the other signatories.

      Dated: May 22, 2018                       */s/ Eugene M. Paige*
                                                                          Eugene M. Paige

---

[3] If the Court agrees that litigation funding related information is protected from disclosure, but believes that the line drawn at the deposition to protect this information was too restrictive, Google's request that Mr. Wu be brought back to answer any high-level questions it could ask is unduly burdensome in light of the fact that: litigation financing questions are irrelevant; this issue comprised a small portion of the day long deposition; Mr. Wu lives in Massachusetts; and other Space Data board members and executives, including the C.E.O. and C.F.O., have yet to be deposed and could testify as to any high level information.