08:57:42

1           IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                    SAN JOSE DIVISION

4

    SPACE DATA CORPORATION,          )   CV-16-3260-BLF
5                                     )
                     PLAINTIFF,       )   SAN JOSE, CALIFORNIA
6                                     )
             VS.                      )   JULY 27, 2018
7                                     )
    ALPHABET, INC. AND GOOGLE, LLC,   )   PAGES 1-111
8                                     )
                     DEFENDANT.       )
9                                     )
    _____  )
10                TRANSCRIPT OF PROCEEDINGS
11      BEFORE THE HONORABLE BETH LABSON FREEMAN
               UNITED STATES DISTRICT JUDGE
12
                A P P E A R A N C E S
13

14      FOR THE PLAINTIFF:    **BY:  SPENCER HOSIE**
                              **DIANE RICE**
15                            **BRANDON MARTIN**
                              **DARRELL ATKINSON**
16                            HOSIE RICE, LLP
                              600 MONTGOMERY STREET, 34TH FLOOR
17                            SAN FRANCISCO, CA 94111

18

19      FOR THE DEFENDANT:    **BY:  ROBERT ADDY VAN NEST**
                              **MATTHIAS KAMBER**
20                            **SHAYNE HENRY**
                              **ANDREW BRUNS**
21                            KEKER, VAN NEST & PETERS LLP
                              633 BATTERY STREET
22                            SAN FRANCISCO, CA 94111

23      OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                                    CERTIFICATE NUMBER 13185
24

25         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER

```
 1          SAN JOSE, CALIFORNIA              JULY 27, 2018

 2                    P R O C E E D I N G S

 3          (COURT CONVENED AT 9:00 A.M.)

 4          THE COURT:  ALL RIGHT.  WE ARE PLAYING MUSICAL

 5   COURTROOMS.  AS YOU KNOW, WE ARE HERE LAST WEEK, AND I THINK

 6   THIS IS A LOT MORE COMFORTABLE THAN MY SMALL COURTROOM, SO WE

 7   SHOULD BE IN GOOD SHAPE.

 8          OKAY.  THIS MORNING WE HAVE OUR CLAIMS CONSTRUCTION.  AND

 9   IT LOOKS LIKE ALL THE EQUIPMENT IS WORKING.

10          MR. HOSIE, WE HAD AGREED THAT WE WERE GOING TO DO ONE

11   PATENT AT A TIME AND KEEP AN EYE ON THE TIME; IS THAT RIGHT?

12          MR. HOSIE:  INDEED, WE DID, YOUR HONOR.

13          GOOD MORNING.  I'M SORRY I WAS 30 SECONDS LATE, I WAS

14   LOITERING IN THE HALL.

15          THE COURT:  NOTHING IMPORTANT HAPPENED IN YOUR

16   ABSENCE.

17          MR. HOSIE:  I HEAR THAT OFTEN.

18          THE COURT:  ALL RIGHT.

19          THE CLERK:  YOUR HONOR, CALLING CASE 16-CV-03260.

20   SPACE DATA CORPORATION VERSUS ALPHABET, INC. AND GOOGLE,

21   LLC.

22          COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

23          MR. HOSIE:  GOOD MORNING, YOUR HONOR.

24   SPENCER HOSIE APPEARING FOR THE PLAINTIFF, SPACE DATA

25   CORPORATION.  WITH ME --
```

| | |
|---|---|
| 09:00:58 | 1 |

          MR. MARTIN:  GOOD MORNING, YOUR HONOR.

       BRANDON MARTIN OF HOSIE RICE, APPEARING FOR SPACE DATA

CORPORATION.

          MS. RICE:  GOOD MORNING, YOUR HONOR.

       DIANE RICE FROM HOSIE RICE.

          MR. ATKINSON:  DARRELL ATKINSON, YOUR HONOR.

          MR. HOSIE:  ALSO FROM HOSIE RICE.

          THE COURT:  ALL RIGHT.  THANK YOU.

          MR. VAN NEST:  GOOD MORNING, YOUR HONOR.

       BOB VAN NEST NEST OF KEKER & VAN NEST PETERS, FOR ALPHABET

AND GOOGLE, LLC.

       AND I'M HERE WITH MATTHIAS KAMBER, SHAYNE HENRY, AND

ANDY BRUNS.

       GOOD MORNING.

          THE COURT:  ALL RIGHT.

       WHEN WE DID THE TUTORIAL LAST WEEK, IT LOOKED AS THOUGH

THE THREE HOURS ALLOTTED MIGHT BE A LITTLE BIT OF A PUSH.  WITH

TWO CLAIMS AGREED TO, AND THANK YOU FOR LETTING ME KNOW EARLY

IN THE WEEK, IT WAS REALLY VERY COURTEOUS OF YOU AND IT

ASSISTED ME, WE CAN SPEND A LITTLE MORE TIME, OBVIOUSLY, ON THE

ONES STILL IN DISPUTE.

       AND, YOU KNOW, I ALWAYS PREFER TO GO BACK AND FORTH

TERM-BY-TERM.  WE TALKED ABOUT PATENT-BY-PATENT BECAUSE OF TIME

CONSTRAINTS, BUT WHY DON'T WE SEE HOW WE DO ON TIME BY DOING IT

TERM-BY-TERM.  I THINK THAT SHOULD WORK.

09:02:14  1          MR. VAN NEST:  I THINK IT WILL, YOUR HONOR.

09:02:15  2          THE COURT:  THAT'S GREAT.  THAT HAD BEEN HELPFUL TO

09:02:18  3     ME.

09:02:18  4       I'VE GOT NOTES EVERYWHERE, BUT I KNOW YOU'RE GOING TO WALK

09:02:22  5     ME THROUGH IT.  WE WILL JUST DO THEM IN THE ORDER THEY WERE

09:02:25  6     BRIEFED.

09:02:25  7          MR. HOSIE, YOU WANT TO GET STARTED?

09:02:28  8          MR. HOSIE:  BY MY RECKONING, YOUR HONOR, GIVEN THAT

09:02:32  9     WE'VE SETTLED ON TWO, WE SHOULD BE STARTING WITH THE

09:02:34 10     "SUBSTANTIALLY A RELATIVE DISTANCE" TERM, WHICH HAS BEEN

09:02:38 11     CHALLENGED FOR INDEFINITENESS ON TWO --

09:02:43 12          THE COURT:  NOT ON "ARE LAUNCHED IN A MANNER"?

09:02:45 13          MR. HOSIE:  IT'S OUR "LAUNCHED IN A MANNER."

09:02:47 14          THE COURT:  OKAY.

09:02:48 15          MR. HOSIE:  THAT SEGUES INTO --

09:02:49 16          THE COURT:  I'M SORRY, AND THEN IT GOES ON, "AND

09:02:51 17     SUBSTANTIALLY."

09:02:52 18       GO AHEAD.

09:02:52 19          MR. HOSIE:  SO IT'S REALLY PACKED INTO ONE MODULE, IF

09:02:55 20     YOU WILL, IN THIS PRESENTATION.

09:03:06 21       YOUR HONOR, I HAVE PROVIDED THE COURT WITH A HARD COPY.  I

09:03:09 22     PROVIDED AN EXTRA COPY FOR THE REPORTER AND AN EXTRA COPY FOR

09:03:13 23     THE CLERK, AND DEFENSE HAS COPIES AS WELL.

09:03:17 24          THE COURT:  AND YOU ARE REFERRING TO THE BINDER OR --

09:03:19 25          MR. HOSIE:  THE BINDER.

09:03:20  1          THE COURT:  THE BINDER.  OKAY.

09:03:22  2          MR. HOSIE:  OURS ARE BOUND.  AND IT WILL START WITH

09:03:25  3   "SPENCER HOSIE PRESENTATION," THE FRONT PAGE.  AND WE WILL

09:03:25  4   START ORIGINALLY ENOUGH, WITH THE NEXT PAGE, GRAPHIC 1.

09:03:36  5          SO "SUBSTANTIALLY A RELATIVE DISTANCE", AND THIS INCLUDES

09:03:40  6   THE "ARE LAUNCHED" ISSUES.  HERE'S THE KEY LANGUAGE FROM THE

09:03:43  7   KEY CLAIMS THAT "BALLOONS ARE LAUNCHED IN A MANNER SUCH THAT

09:03:48  8   WHEN IN AN OPERATING RANGE OF 60,000 TO 140,000 FEET, THERE IS

09:03:54  9   SUBSTANTIALLY A RELATIVE DISTANCE BETWEEN SAID PLURALITY OF

09:03:57 10   LIGHTER-THAN-AIR BALLOONS."

09:04:00 11          GOOGLE SAYS THAT "SUBSTANTIALLY A RELATIVE DISTANCE" IS

09:04:03 12   MEANINGLESS, THE WORDS ARE REDUNDANT, THERE ARE NO METES AND

09:04:08 13   BOUNDS.  THERE'S NO NOTICE, SAYS GOOGLE TO THE PRACTITIONER, IN

09:04:13 14   THIS CLAIM, AS TO WHAT WOULD INFRINGE AND WHAT WOULD NOT.

09:04:16 15          SO THIS IS A CLASSIC TRADITIONAL INDEFINITENESS ATTACK.

09:04:20 16          TO INDEFINITENESS.  "SUBSTANTIALLY A RELATIVE DISTANCE.

09:04:24 17   TERMS THAT ARE INHERENTLY SUBJECTIVE, YOUR HONOR, SUCH AS

09:04:28 18   "AESTHETICALLY PLEASING" ARE INDEFINITE.  BECAUSE THAT'S IN THE

09:04:31 19   EYE OF THE BEHOLDER.  ONE MAN'S ROTHKO IS ANOTHER MAN'S UGLY

09:04:36 20   WALLPAPER.  SO "AESTHETICALLY PLEASING" IS AN EXAMPLE OF AN

09:04:41 21   INDEFINITE TERM.

09:04:41 22          ANOTHER WOULD BE UNOBTRUSIVE.  WHAT'S UNOBTRUSIVE TO ONE

09:04:45 23   PERSON MIGHT BE THOROUGHLY OBTRUSIVE TO THE NEXT PERSON.

09:04:49 24          SO THERE ARE NO CONTOURS, NO METES AND BOUNDS IN THIS KIND

09:04:54 25   OF AESTHETICALLY PLEASING OR UNOBTRUSIVE MANNER, AESTHETIC

| | | |
|---|---|---|
| 09:04:57 | 1 | SUBJECTIVE TERMS. |
| 09:04:59 | 2 | TO CONTRAST, THE COURTS HAVE CONSISTENTLY FOUND TERMS |
| 09:05:04 | 3 | WHERE IT'S A MATTER OF DEGREE, AND WHERE THE DEGREE IS DEFINED |
| 09:05:08 | 4 | BY THE OBJECTIVE OF THE INVENTION AS SERVED.  FORM DRIVES |
| 09:05:17 | 5 | FUNCTION. |
| 09:05:17 | 6 | SO, FOR EXAMPLE, "SUBSTANTIALLY ARRESTED" IN ADVANCED |
| 09:05:21 | 7 | AEROSPACE, THAT WAS FOUND DEFINITE BECAUSE THE CONTEXT OF THE |
| 09:05:24 | 8 | INVENTION.  WHAT THE INVENTORS WERE TRYING TO ACCOMPLISH, THE |
| 09:05:27 | 9 | PURPOSE AND FUNCTION, A PERSON OF ORDINARY SKILL IN THE ART |
| 09:05:30 | 10 | COULD LOOK AT THAT AND SAY, OKAY, I KNOW WHAT THAT MEANS AND I |
| 09:05:33 | 11 | KNOW HOW TO MAKE IT WORK, GIVEN THE OVERARCHING OBJECTIVE OF |
| 09:05:37 | 12 | THIS INVENTION.  FORM FOLLOWS FUNCTION. |
| 09:05:43 | 13 | NAUTILUS, SPACED RELATIONSHIP.  IN NAUTILUS, AS THE COURT |
| 09:05:47 | 14 | WILL RECALL, THERE WAS A STAIRMASTER AND THE HEARTBEATS AND THE |
| 09:05:50 | 15 | LIKE, AND THE FINGERS HAD TO BE "SPACED RELATIONSHIP." |
| 09:05:53 | 16 | THE DEFENDANTS SAID, WELL, WHO KNOWS WHAT THAT MEANS, IS |
| 09:05:56 | 17 | IT A FOOT, IS IT A MILLIMETER, IS IT A YARD?  AND THE COURT |
| 09:06:00 | 18 | SAID NO, BECAUSE THE OBJECTIVE WAS TO HAVE SOMEBODY STANDING ON |
| 09:06:02 | 19 | TOP OF A STAIR MACHINE HOLDING ON TO THESE THINGS. |
| 09:06:05 | 20 | AND SO YOU KNOW PEOPLE'S HANDS ARE ABOUT THIS BIG, AND YOU |
| 09:06:08 | 21 | KNOW THE FINGERS ARE ABOUT THIS FAR APART, AND SO YOU CAN |
| 09:06:11 | 22 | UNDERSTAND WHAT THAT MEANS AND THE PURPOSE OF THE INVENTION. |
| 09:06:15 | 23 | ANOTHER EXAMPLE, "SUBSTANTIALLY OMNIDIRECTIONAL."  THAT |
| 09:06:18 | 24 | WAS THE ANTENNA CASE.  THEY SAID LOOK, THE ANTENNA IS DESIGNED |
| 09:06:25 | 25 | TO PROVIDE NETWORK COVERAGE, IT WILL DO WHAT IT CAN, AND THAT'S |

09:06:28   1    WHAT OMNIDIRECTIONAL MEANS IN THE CONTEXT OF THE FUNCTION OF

09:06:32   2    THE INVENTION.  SO TO, VISUALLY NEGLIGIBLE.

09:06:35   3        THESE ARE FAIRLY RECENT EXAMPLES OF TERM THAT IS SOUND

09:06:39   4    INDEFINITE BECAUSE THEY USE WORDS LIKE "SUBSTANTIALLY" AND

09:06:41   5    "SPACING" OR "SUBSTANTIALLY ARRESTED."  BUT IN THE CONTEXT OF

09:06:46   6    THE PATENT, IN THE LARGER SCOPE OF WHAT THE OBJECTIVE WAS, THE

09:06:51   7    COURT SAID THE PERSON SKILLED IN THE ART COULD KNOW WHAT THIS

09:06:55   8    MEANS.

09:06:58   9        PURPOSE DEFINES SCOPE.

09:07:00   10       HERE IS A SHORT GRAPHIC WITH SOME OF THE LANGUAGE FROM THE

09:07:05   11   '941 PATENT THAT DESCRIBES THE PURPOSE, THE STRUCTURE, THE

09:07:13   12   NATURE OF THIS INVENTION.

09:07:14   13       THE SCOPE OF "SUBSTANTIALLY A RELATIVE DISTANCE" IS

09:07:18   14   INFORMED BY THE OBJECTIVE OF THE INVENTION; MY POINT THUS FAR.

09:07:22   15       AND HERE'S LANGUAGE FROM '941, CLAIM ONE:  "WHEREIN SAID

09:07:26   16   FLEE FLOATING CONSTELLATION, COMMUNICATIONS SYSTEM PROVIDES A

09:07:30   17   LINE-OF-SIGHT COVERAGE OF WIRELESS DATA TO A POPULATION ON A

09:07:34   18   CONTIGUOUS LAND MASS."

09:07:36   19       THAT'S THE "WHY" OF IT.  WHAT DO YOU WANT TO DO?  YOU WANT

09:07:38   20   TO FLOAT A BALLOON ARRAY SO THAT IT PROVIDES THE WIRELESS

09:07:45   21   COVERAGE YOU WOULD WANT TO PROVIDE.

09:07:47   22       NOW, YOUR HONOR, THE ARRAY WILL DEPEND ON THE OBJECTIVE.

09:07:50   23   IF I WANTED TO PROVIDE WIRELESS COVERAGE FOR SAN JOSE, IT MIGHT

09:07:55   24   BE TWO BALLOONS.  IF I WANTED TO PROVIDE WIRELESS COVERAGE FOR

09:07:58   25   NORTHERN CALIFORNIA, IT MIGHT BE 200 BALLOONS.

09:08:01  1          SO YOU LOOK AT WHAT YOU WANT TO DO, AND THEN THE PERSON

09:08:05  2     SKILLED IN THE ART WOULD SAY, HERE IS THE ARRAY THAT WILL FILL

09:08:09  3     THAT FOOTPRINT THAT WILL MAKE THAT WORK.  SO THE OBJECTIVE IS

09:08:13  4     TO PROVIDE CONTIGUOUS WIRELESS COVERAGE.

09:08:21  5               THE COURT:  SO THAT'S GOING TO HELP ME WITH "RELATIVE

09:08:24  6      DISTANCE" BUT I'M NOT GETTING THE "SUBSTANTIALLY."

09:08:26  7               MR. HOSIE:  AND I AM ABSOLUTELY GETTING THERE.

09:08:28  8          SO TO JUMP AHEAD TO THAT, YOUR HONOR, "RELATIVE" MEANS,

09:08:30  9     OKAY, SO THE BALLOONS HAVE TO FIT IN AN ARRAY, AND THE

09:08:34 10     CONFIGURATION OF THE ARRAY IS A FUNCTION OF THE SERVICE YOU

09:08:36 11     WANT TO PROVIDE.

09:08:36 12          SO WHAT THEN DOES "SUBSTANTIALLY" ADD?  GOOGLE SAYS,

09:08:40 13     "SUBSTANTIALLY" SAYS "APPROXIMATELY OR APPROXIMATELY DISTANCE."

09:08:44 14     THEY SAY THE WORDS ARE REDUNDANT.  THEY ARE NOT.

09:08:47 15          "SUBSTANTIALLY" RECOGNIZES A DIFFERENT POINT.  THESE ARE

09:08:50 16     BALLOONS BOBBING AROUND IN THE WIND.  YOU CANNOT CONTROL THEM

09:08:53 17     WITH MATHEMATICAL PRECISION.  YOU CAN'T SUPER GLUE THEM TO A

09:08:59 18     POINT ON THE SIDE.  THEY ARE GOING TO MOVE.  AND THAT MEANS YOU

09:09:01 19     WILL NOT BE ABLE TO HAVE PERFECT COVERAGE.  YOU DO THE BEST YOU

09:09:06 20     CAN GIVEN THE PRACTICAL --

09:09:09 21               THE COURT:  WHERE'S THE SUPPORT FOR THAT IN THE SPEC,

09:09:11 22      THOUGH?

09:09:12 23               MR. HOSIE:  WELL, LOOK TO FIGURE 8.  THIS IS SLIDE 9.

09:09:24 24          THIS IS FIGURE 8 FROM '941, AND IT SHOWS AN ARRAY OF MANY,

09:09:31 25     MANY, BALLOONS.  I'M SORRY, THIS IS FIGURE 8, SLIDE 9.  AND YOU

09:09:36  1    CAN SEE THERE ARE COVERAGE GAPS HERE.

09:09:39  2        SO THIS IS- -- IT'S NOT PROVIDING PERFECT COVERAGE, IT'S

09:09:48  3    NOT PROVIDING 100 PERCENT COVERAGE, IT'S PROVIDING SUBSTANTIAL

09:09:53  4    COVERAGE AS THESE MOVE AROUND IN THE AIR, GIVEN THE WIND

09:09:57  5    PATTERNS.

09:10:01  6        AND I WILL GO BACK ONE GRAPHIC TO PAGE 8.  MORE SUPPORT IN

09:10:06  7    THE SPECIFICATION.  THESE ARE QUOTES WHERE THE DRAFTERS MADE

09:10:14  8    CLEAR THAT THE GOAL IS TO PROVIDE "CONTINUOUS SUBSTANTIALLY

09:10:18  9    COMPLETE COVERAGE OVER SAID CONTIGUOUS GEOGRAPHIC AREA."

09:10:25  10        THE COURT:  SO I WOULD BE MORE COMFORTABLE WITH

09:10:26  11    "SUBSTANTIALLY COMPLETE" THAN THIS LANGUAGE, "SUBSTANTIALLY A

09:10:30  12    RELATIVE DISTANCE."

09:10:31  13        SO I THINK THE WORD "SUBSTANTIALLY," THERE I GET IT, YOU

09:10:35  14    CAN'T GUARANTEE COVERAGE ALL THE TIME WITH THESE BALLOONS

09:10:40  15    BOBBING AROUND.  THERE MAY BE SOME FLOAT THAT CAUSES A GAP.

09:10:44  16    BUT I DON'T KNOW HOW THAT INFORMS ME ON THE USE OF

09:10:46  17    "SUBSTANTIALLY" IN OUR CLAIM TERM.

09:10:49  18        MR. HOSIE:  WELL, THE IDEA IS EXACTLY AS THE COURT

09:10:52  19    PUT IT, "SUBSTANTIALLY COMPLETE COVERAGE OF THE NETWORK ARRAY."

09:10:56  20        THE COURT:  BUT THAT'S NOT WHAT I'M TRYING TO

09:10:57  21    CONSTRUE.

09:10:58  22        MR. HOSIE:  WELL, CONSTRUING THE WORD

09:11:01  23    "SUBSTANTIALLY," AS USED IN THE OVERALL CLAIM.

09:11:04  24        THE COURT:  I THINK I'M ACTUALLY CONSTRUING THE WORD

09:11:08  25    "SUBSTANTIALLY" AS IT'S USED IN THIS -- IT'S NOT A CLAIM TERM,

09:11:12  1    BUT CLAIM PHRASE.

09:11:13  2         SO "SUBSTANTIALLY A RELATIVE DISTANCE," IS DIFFERENT THAN

09:11:17  3    "SUBSTANTIALLY COMPLETE," IN MY VIEW.  TELL ME WHY I'M WRONG.

09:11:22  4         MR. HOSIE:  BECAUSE GIVEN THE DRAFTING, GIVEN THE

09:11:24  5    CLAIMS, GIVEN THE FIGURES, THE WORD "SUBSTANTIALLY," AS YOU SEE

09:11:30  6    IN PAGE 8, IS ALWAYS USED TO TALK ABOUT TRYING TO GET THE

09:11:35  7    COVERAGE YOU WANT WITHOUT GUARANTEEING PERFECTION.

09:11:40  8         AND, IN FACT, IF THE COURT LOOKS AT EVERY TIME THE SPEC

09:11:45  9    USES THE WORD SUBSTANTIALLY, THE COURT WILL SEE IT IS USED IN

09:11:49  10   EXACTLY THAT FASHION.  AND I HAVE TWO EXAMPLES ON PAGE 8.

09:11:53  11        THE COURT:  OKAY.

09:11:53  12        MR. HOSIE:  SUBSTANTIALLY COMPLETE.

09:11:56  13        SO THE ONLY TIME THE SPECIFICATION USES THE WORD

09:11:59  14   "SUBSTANTIALLY," IS IN THIS PRECISE CONTEXT.

09:12:02  15        AND SO THE DRAFTER LOOKED AT THIS AND, YOU KNOW, WORDS ARE

09:12:07  16   IMPERFECT CREATURES, YOU KNOW, THEY ARE INHERENTLY WITHOUT

09:12:14  17   PERFECT FORM, FORMAT.

09:12:16  18        SO THE DRAFTER LOOKED AT THIS AND SAID "SUBSTANTIALLY A

09:12:20  19   RELATIVE DISTANCE."  "SUBSTANTIALLY," WE BELIEVE, GIVEN THE

09:12:23  20   SPECIFICATION, MEANS, YOU KNOW, GIVEN, YOU DO THE BEST YOU CAN

09:12:27  21   IN THE CIRCUMSTANCES.  AND "RELATIVE DISTANCE" IS, OF COURSE,

09:12:30  22   THE COVERAGE OBJECTIVE DRIVEN BY THE PURPOSE OF THE INVENTION.

09:12:39  23        I CAPTURE THIS GRAPHIC 11 PRECISELY BECAUSE I THOUGHT YOUR

09:12:43  24   COURT WOULD GO TO THIS POINT SQUARELY.  "SUBSTANTIALLY" DOES

09:12:47  25   NOT EQUAL A RELATIVE DISTANCE.  "SUBSTANTIALLY" EQUALS NEARLY

| | |
|---|---|
| 09:12:51 | 1 |
| 09:12:56 | 2 |
| 09:12:59 | 3 |
| 09:13:00 | 4 |
| 09:13:02 | 5 |
| 09:13:06 | 6 |
| 09:13:13 | 7 |
| 09:13:17 | 8 |
| 09:13:18 | 9 |
| 09:13:20 | 10 |
| 09:13:23 | 11 |
| 09:13:26 | 12 |
| 09:13:28 | 13 |
| 09:13:33 | 14 |
| 09:13:39 | 15 |
| 09:13:45 | 16 |
| 09:13:48 | 17 |
| 09:13:54 | 18 |
| 09:13:54 | 19 |
| 09:13:55 | 20 |
| 09:14:01 | 21 |
| 09:14:07 | 22 |
| 09:14:09 | 23 |
| 09:14:12 | 24 |
| 09:14:15 | 25 |

100 PERCENT, GIVEN THESE BALLOONS IN THE WIND.  RELATIVE

DISTANCE BALLOONS SPACED APART SUFFICIENTLY TO ACHIEVE THE

OBJECTIVE.

        THE COURT:  WELL, I GUESS WE RUN INTO THE PROBLEM OF

NEARLY A HUNDRED PERCENT IS FINE, BUT WHY CAN'T "SUBSTANTIALLY"

BE JUST A LITTLE BIT MORE THAN 50 PERCENT OR 75 PERCENT.

    I MEAN, IS THIS A TERM OF DEGREE, AND WHAT ARE WE HITTING

AT HERE WITH "SUBSTANTIAL?"

        MR. HOSIE:  YES, I THINK "SUBSTANTIAL," ABSOLUTELY,

IS A TERM OF DEGREE.  I DON'T THINK IT WOULD BE FAIR TO SAY

"SUBSTANTIALLY" IS 51 PERCENT.

        THE COURT:  BUT WHERE'S THE SUPPORT FOR THAT?

    I MEAN, YOU AND I CAN DEBATE HOW "SUBSTANTIALLY" IS USED

COMMONLY, BUT I DON'T THINK YOUR EXPERT GIVES ME ANY OPINION ON

HOW A SKILLED ARTISAN WOULD INTERPRET "SUBSTANTIALLY."

    I MEAN, IF COVERAGE IS 60 PERCENT, THAT'S SUBSTANTIAL.  IF

IT'S TWO-THIRDS, THAT'S SUBSTANTIAL.  BUT DO WE MEAN

97 PERCENT?

        MR. HOSIE:  THERE IS SUPPORT, YOUR HONOR.

    AND I FIND FIGURE 8 PERSUASIVE ON THAT POINT BECAUSE IT

SHOWS YOU WHAT SUBSTANTIALLY COVERAGE IS IN THAT INSTANCE.

        THE COURT:  WELL, BUT THEN YOU ARE GOING TO TELL ME

THAT THIS ISN'T REALLY A LIMITATION FOR THE WHOLE PATENT, THIS

IS JUST ONE EMBODIMENT.

        MR. HOSIE:  NO, THIS LANGUAGE APPEARS IN ALL THE

09:14:17  1   CLAIMS BEING CONSTRUED HERE.  "SUBSTANTIALLY A RELATIVE

09:14:21  2   DISTANCE."  AND THIS PHRASE WAS ADDED BY THE SUPERVISING PATENT

09:14:32  3   EXAMINER URBAN, IN AN INTERVIEW.  IT WAS THE OFFICE'S LANGUAGE,

09:14:34  4   NOT OUR LANGUAGE.  AND THEN IT WAS APPROVED AND CALLED OUT

09:14:37  5   SPECIFICALLY BY A SEPARATE EXAMINER, EXAMINER VO, IN THE NOTICE

09:14:43  6   FOR REASONS.

09:14:43  7       SO THESE ARE PEOPLE WHO DO THIS FOR A LIVING.

09:14:46  8        THE COURT:  SO, YOU KNOW, I HAVE GREAT RESPECT FOR

09:14:48  9   THEIR KNOWLEDGE AND EXPERIENCE.  THEY SEE MORE PATENT LANGUAGE

09:14:51  10  THAN I COULD EVER SEE IN A LIFETIME, THEY PROBABLY SEE IN A

09:14:55  11  YEAR.

09:14:56  12      HOWEVER, THE FEDERAL COURTS WOULD NOT HAVE ANY PATENT

09:14:58  13  LITIGATION IF THEY GOT IT RIGHT ALL THE TIME.

09:15:01  14        MR. HOSIE:  HUNDRED PERCENT, YOUR HONOR.

09:15:02  15        THE COURT:  SO, YOU KNOW, THAT'S FINE, EXCEPT THE

09:15:04  16  AMOUNT OF DEFERENCE I GIVE TO THE PATENT EXAMINER IS DEBATED IN

09:15:07  17  THE CASE LAW.  THERE ARE TIMES WHEN IT IS -- YOU KNOW, IT IS

09:15:10  18  REASSURING TO THE COURT THAT MY VIEW COINCIDES WITH THE PATENT

09:15:14  19  EXAMINER, BUT IT'S CERTAINLY NOT BINDING ON THE COURT, IT IS

09:15:20  20  POTENTIALLY INSTRUCTIVE, BUT --

09:15:22  21        MR. HOSIE:  IT'S EVIDENCE, YOUR HONOR.

09:15:23  22        THE COURT:  IT'S EVIDENCE.  YES, IT IS.

09:15:25  23        MR. HOSIE:  IT'S EVIDENCE.  IT'S NOT BINDING.

09:15:25  24        THE COURT:  OKAY.  THAT'S FAIR.

09:15:28  25        MR. HOSIE:  AND ON GRAPHIC 12 NOW UP ON THE SCREEN,

09:15:30  1    WE HAVE CASES TALKING ABOUT THIS SPECIFICALLY, THE SONIX TECH

09:15:36  2    CASE ON THE BOTTOM OF THIS GRAPHIC.

09:15:38  3         IT'S EVIDENCE.  AND IT'S NOT JUST, THE FACT THAT THE

09:15:42  4    OFFICE WROTE THE LANGUAGE, I THINK IS MATERIAL.  THE FACT THAT

09:15:47  5    IT WAS CALLED UP IN THE NOTICE OF ALLOWANCE, I THINK IS

09:15:49  6    MATERIAL.  THEY KNEW WHAT IT MEANT.

09:15:56  7         THE COURT:  WELL, YOU KNOW, WHEN YOU SAY SOMETHING IS

09:16:00  8    AESTHETICALLY PLEASING, YOU KNOW WHAT YOU MEAN AT THAT TIME

09:16:04  9    TOO.

09:16:04  10        MR. HOSIE:  WELL, BUT THE PROBLEM WITH SOMETHING LIKE

09:16:06  11   "AESTHETICALLY PLEASING," IT IS INHERENTLY CAPABLE OF BEING

09:16:10  12   REDUCED TO AN OBJECTIVE MEASURE.  IT'S IMPOSSIBLE TO KNOW WHAT

09:16:15  13   THAT MEANS.

09:16:16  14        BUT IN THE CONTEXT OF AN INVENTION WHERE THERE IS AN

09:16:22  15   OBJECTIVE, A PURPOSE AND A FUNCTION, THEN YOU CAN SAY, OKAY,

09:16:26  16   WHAT DOES THIS MEAN WHEN MAPPED AGAINST THAT PURPOSE, MEANS AND

09:16:32  17   FUNCTION.

09:16:32  18        AND THERE ARE MANY, MANY CASES THAT DO THAT AND SAY, LOOK,

09:16:35  19   YOU KNOW, IN THE CONTEXT OF THIS INVENTION, WE CAN FIGURE THIS

09:16:38  20   OUT.

09:16:38  21        THE LEADING CASE, OF COURSE, IS NAUTILUS, A "SPACED

09:16:42  22   RELATIONSHIP."  THAT SOUNDS UNBOUNDED, IT COULD BE ANYTHING,

09:16:46  23   BUT IN THE CONTEXT OF THE STAIR MACHINE, PEOPLE KNEW WHAT THAT

09:16:49  24   MEANT, AT LEAST TO THE DEGREE REQUIRED.

09:16:53  25        AND LET ME TALK ABOUT THAT AS WELL.  THIS IS NOT AN

09:16:56  1    IMMUTABLE AND INFLEXIBLE STANDARD, YOUR HONOR.

09:16:56  2            THE COURT:  NO.

09:17:00  3            MR. HOSIE:  THE PATENTEE HAS AN OBLIGATION TO GET IT

09:17:03  4    AS CORRECT AS POSSIBLE, SUBJECT TO THE PRACTICAL REALITIES OF

09:17:08  5    THE SPACE IN WHICH THE INVENTION RESIDES.

09:17:11  6            SO IF YOU'RE DEALING WITH BALLOONS THAT ARE INHERENTLY IN

09:17:15  7    AN IMPRECISE ARRAY, AND MOVING AND BOBBING AROUND, YOU NEED

09:17:18  8    WORDS THAT SAY, "SUBSTANTIALLY" OR "APPROXIMATELY" OR "AS CLOSE

09:17:22  9    AS YOU CAN," DO THE BEST THAT YOU CAN.  BECAUSE IF YOU DON'T

09:17:25  10   HAVE THOSE QUALIFIERS, IF YOU DON'T HAVE THOSE MODIFIERS,

09:17:31  11   GOOGLE WOULD BE SAYING, LOOK, IT'S NOT EXACTLY PERFECTLY

09:17:34  12   MATHEMATICALLY PRECISE, IT DOESN'T INFRINGE.

09:17:37  13           THESE PATENTS IN A SPACE LIKE THIS, INHERENTLY HAVE THESE

09:17:41  14   QUALIFIERS AND MODIFIERS SUCH AS "SUBSTANTIALLY."  AND THERE

09:17:44  15   ARE MANY CASES THAT DO THAT.

09:17:46  16           THE COURT:  OKAY.

09:17:49  17           OKAY.  YOU REFER TO THE ORIGINAL APPLICATION FOR THE '941.

09:17:57  18   IS IT OF ANY USE TO ME TO ACTUALLY SEE THAT INFORMATION FROM

09:18:02  19   THE FILE WRAPPER?  THE APPLICATION FOR, I GUESS IT WAS THE

09:18:05  20   APPLICATION FOR 440.  YOU QUOTE IT.  I DON'T THINK YOU GAVE IT

09:18:11  21   TO ME.  IS THAT GOING TO HELP ME TO SEE MORE OF IT?

09:18:14  22           MR. HOSIE:  WE DO QUOTE IT ON THE TOP OF PAGE 12.  IT

09:18:19  23   IS ON ECF.  AND I UNDERSTAND AN ECF CITE IS NOT HELPFUL TO THIS

09:18:23  24   COURT BECAUSE WE CAN'T EXPECT THE COURT TO GO THROUGH AND FISH

09:18:26  25   THIS OUT.

09:18:26  1          I THINK THE SHORT ANSWER IS YES, IT MIGHT BE HELPFUL.

09:18:29  2              THE COURT:  OKAY.  WELL, THEN MAYBE YOU COULD PROVIDE

09:18:32  3      THAT TO ME JUST SO THAT WE WOULD HAVE IT.  THAT WOULD BE GREAT.

09:18:36  4          OKAY.  ARE YOU GOING TO GO ON TO THE NEXT ISSUE OF THE

09:18:39  5      MIXED SYSTEM METHOD CLAIM?

09:18:40  6              MR. HOSIE:  I AM, INDEED, IF IT MAKES SENSE.

09:18:44  7              THE COURT:  IT DOES.

09:18:44  8              MR. HOSIE:  THIS IS ALL OF A PIECE, REALLY.

09:18:46  9          SO THE NEXT GOOGLE CHALLENGE IS THE POINT THAT GOOGLE

09:18:52 10      BELIEVES THE PHRASE, "ARE LAUNCHED IN A MANNER," INJECTS A

09:18:57 11      METHOD STEP, THAT YOU SHALL AND MUST DO X IN A SYSTEM CLAIM.

09:19:05 12      AND IF ONE MIXES A METHOD STEP WITH A SYSTEM CLAIM, OF COURSE

09:19:12 13      THE OVERALL CLAIM IS INDEFINITE.  THAT'S GOOGLE'S ARGUMENT.

09:19:16 14              THE COURT:  WELL, IT IS THE LAW.

09:19:17 15              MR. HOSIE:  IT IS, INDEED, THE LAW.  WE HAVE NO

09:19:19 16      QUARREL WITH THE LAW.

09:19:21 17          THE REAL QUESTION IS, AS IS ALWAYS TRUE IN THESE CASES,

09:19:24 18      WHAT DOES IT MEAN AS APPLIED HERE?  THAT'S THE ART IN THESE

09:19:27 19      PATENT DISPUTES IS, OKAY, WE UNDERSTAND THE RULES, AND THE

09:19:30 20      RULES ARE QUITE OFTEN EASILY PUT, BUT APPLYING THEM IS PUTTING

09:19:35 21      COTTAGE CHEESE THROUGH A CHEESE GRATER, IT IS A MESSY AND

09:19:38 22      DIFFICULT PROCESS, OFTEN ENOUGH.

09:19:40 23          SO "SYSTEM CAPABILITY" OR "USER ACTION" THIS IS CASE LAW,

09:19:49 24      YOUR HONOR, THAT SAYS IF THE LANGUAGE CAN BE READ TO DENOTE

09:19:52 25      SYSTEM CAPABILITY, IT SHOULD BE SO READ, AS OPPOSED TO A METHOD

09:20:01  1    STEP.

09:20:01  2         AND THE BEST CASE ON THIS IS THE BOSTON SCIENTIFIC CASE,

09:20:09  3    WHICH WE BRIEFED AT LENGTH.

09:20:11  4         THE COURT:  YES.

09:20:11  5         MR. HOSIE:  AND IT'S REALLY, REALLY CLOSE.

09:20:13  6         IN THAT CASE THE LANGUAGE IN THE CLAIM SAID, THE SENTENCE,

09:20:17  7    AND I QUOTE, "ARE SELECTED TO FACILITATE A PLACEMENT."

09:20:22  8         THE LANGUAGE IN OUR CASE IS, THE BALLOONS, AND I QUOTE,

09:20:27  9    "ARE LAUNCHED IN A MANNER SUCH THAT."

09:20:34  10        "ARE SELECTED," "ARE LAUNCHED."  THE BOSTON SCIENTIFIC

09:20:38  11   CASE LOOKED AT IT AND SAID LOOK, IN THE CONTEXT OF THIS

09:20:40  12   INVENTION, THIS SYSTEM CLAIM, THIS LANGUAGE SHOULD BE READ AS

09:20:44  13   SYSTEM CAPABILITY.

09:20:48  14        TO PUT IT IN THE LANGUAGE OF OUR CASE, THE BALLOON SYSTEM

09:20:53  15   HAS TO HAVE THE CAPABILITY OF LAUNCHING THE BALLOONS IN A

09:20:57  16   MANNER THAT DOES X, Y OR Z.  IT IS A CAPABILITY STEP.  IT'S NOT

09:21:03  17   ABOUT THE END USER GETTING NETWORK DATA ON A CELL PHONE.  THIS

09:21:11  18   IS ABOUT THE CREATION OF THE BALLOON NETWORK.  IT'S THE

09:21:17  19   MANUFACTURE OF THE BALLOON NETWORK.  JUST LIKE IT WAS THE

09:21:20  20   MANUFACTURE OF THE STINTS IN BOSTON SCIENTIFIC.  AND THIS

09:21:26  21   LANGUAGE CAN, AND PROPERLY, UNDER THE CASE LAW, SHOULD BE READ

09:21:30  22   AS DENOTING A SYSTEM CAPABILITY.

09:21:32  23        LOOK, THIS SYSTEM HAS THE CAPABILITY OF LAUNCHING BALLOONS

09:21:37  24   IN A MANNER THAT ACCOMPLISHES THIS OBJECTIVE.

09:21:45  25        AGAIN, WE'VE TALKED ABOUT THIS, THIS LANGUAGE CAME FROM

09:21:48  1    THE OFFICE.  I DON'T THINK IT'S FAIR TO SAY THAT THEY WOULD

09:21:53  2    CAVALIERLY INTRODUCE A METHOD STEP IN WHAT WAS CLEARLY

09:21:58  3    UNDERSTOOD BY ALL TO BE A SYSTEM CLAIM.  NOT BINDING,

09:22:01  4    YOUR HONOR, JUST EVIDENCE.  BUT THIS IS ALL ABOUT EVIDENCE.

09:22:05  5         AND SO IN TERMS OF THE CASES, AND WE CITE THEM IN OUR

09:22:09  6    BRIEF, IF THE LANGUAGE CAN BE READ TO COVER TO DENOTE SYSTEM

09:22:12  7    CAPABILITY, IT SHOULD BE SO READ.  THIS LANGUAGE CAN BE READ.

09:22:17  8         I THINK GOOGLE'S ARGUMENTS ABOUT THE END USER, OBFUSCATE

09:22:22  9    MORE THAN CLARIFY, BECAUSE THIS ISN'T ABOUT THE GUY ON THE

09:22:25 10    GROUND GETTING A CELL PHONE SIGNAL IN NAIROBI, IT'S ABOUT

09:22:31 11    SOMEBODY BUILDING A BALLOON ARRAY THAT PROVIDES NETWORK

09:22:34 12    COVERAGE.  AND AS PART OF THAT, THAT SYSTEM, PART OF THAT

09:22:38 13    MANUFACTURE OF THE BALLOON ARRAY, THE SYSTEM HAS TO HAVE THE

09:22:43 14    CAPABILITY OF BEING LAUNCHED IN A MANNER.

09:22:45 15         THIS IS NO DIFFERENT THAN THE EIGHT, TEN, DOZEN CASES WE

09:22:48 16    CITE IN OUR BRIEFS THAT READ VERY SIMILAR LANGUAGE, LIKE

09:22:53 17    BOSTON SCIENTIFIC, AND REACH THAT CONCLUSION EXACTLY.

09:22:56 18         SO THAT IS OUR REBUTTAL ON MIXED SYSTEM-METHODS CLAIM.

09:22:59 19              THE COURT:  ALL RIGHT.

09:23:00 20              MR. HOSIE:  WOULD YOU LIKE ME TO TENDER THE PODIUM

09:23:02 21    FOR THOSE?

09:23:02 22              THE COURT:  I THINK -- LET'S -- THIS ONE ESPECIALLY

09:23:05 23    ENGENDERED THE MOST INK BY THE PARTIES, SO I CERTAINLY WANT TO

09:23:08 24    STAY FOCUSED ON THIS.  IF WE RUN SHORT ON TIME, WE WILL START

09:23:12 25    COMBINING SOME OF THEM.

09:23:13  1          MR. HOSIE:  THANK YOU, YOUR HONOR.

09:23:14  2          THE COURT:  MR. VAN NEST.

09:23:15  3          MR. VAN NEST:  GOOD MORNING, YOUR HONOR.

09:23:17  4       THANK YOU FOR MAKING TIME FOR US TODAY IN THIS NICE BIG

09:23:21  5   COURTROOM.  I WANT TO STEP BACK AND JUST PROVIDE SOME CONTEXT.

09:23:26  6       IF I COULD HAVE OUR FIRST SLIDE WITH THE CLAIM ON IT,

09:23:29  7    PLEASE.

09:23:30  8       YOU HAD A GOOD TUTORIAL LAST WEEK.  YOU SAW THAT THIS IS A

09:23:34  9   FIELD THAT IS VERY CROWDED WITH PRIOR ART.  SPACE DATA DIDN'T

09:23:38 10   INVENT BALLOONS, THEY DIDN'T INVENT USING BALLOONS FOR

09:23:41 11   COMMUNICATION NETWORKS, THEY DIDN'T INVENT USING BALLOONS TO

09:23:44 12   HAND OFF COMMUNICATION.

09:23:48 13       WHAT '941, CLAIM ONE, IS DIRECTED TO IS A FREE FLOATING

09:23:53 14   CONSTELLATION OF BALLOONS WITH COMMUNICATION SYSTEMS ON BOARD,

09:24:00 15   SOME GROUND COMMUNICATION SYSTEMS, THAT CAN COMMUNICATE WITH

09:24:03 16   THE BALLOONS.  THE ABILITY TO HAND OFF FROM THE GROUND, THE

09:24:08 17   COMMUNICATION FROM ONE BALLOON TO ANOTHER, TO PROVIDE, AS

09:24:13 18   MR. HOSIE SAID, LINE OF SIGHT CELLULAR COMMUNICATION.

09:24:18 19       AND ACCORDING TO THE CLAIM, AS WE HAVE IT HERE, THESE ARE

09:24:26 20   LAUNCHED IN A MANNER, NOT JUST LAUNCHED, BUT LAUNCHED IN A

09:24:30 21   MANNER, IT'S A PARTICULAR MANNER, TO ACHIEVE THE CONSTELLATION.

09:24:37 22       SO I THINK IT'S VERY, VERY IMPORTANT TO HAVE IN MIND, TO

09:24:44 23   HAVE THAT LAST PHRASE.

09:24:48 24       LET'S GO IN THE NEXT SLIDE.

09:24:50 25       THERE ARE TWO ISSUES, THE FIRST ISSUE IS THE NAUTILUS

09:24:52   1        ISSUE YOU, AND MR. HOSIE DISCUSSED THIS INITIALLY.

09:24:54   2            THE PROBLEM IS BECAUSE THIS PHRASE WAS ADDED LATE, IT'S

09:24:57   3        NOT DISCUSSED IN THE SPEC, IT'S NOT DEFINED ANYWHERE, BOTH

09:25:01   4        EXPERTS AGREE IT'S NOT A TERM OF ART.  IT'S KIND OF NONSENSICAL

09:25:05   5        ON ITS FACE, AS YOU'VE ALREADY OBSERVED.

09:25:09   6            BUT THE MAIN PROBLEM WITH IT IS, IT DOESN'T DEFINE THE

09:25:12   7        BOUNDARIES OF THE DARN INVENTION.  WHAT IS SUBSTANTIALLY?  IS

09:25:17   8        IT 50 PERCENT, 60 PERCENT, 80 PERCENT?  AND WHAT IS A RELATIVE

09:25:21   9        DISTANCE?

09:25:22  10            BOTH OF THOSE QUESTIONS, DISTANCE AND COVERAGE, ARE LEFT

09:25:25  11        OPEN BOTH BY THE LANGUAGE OF THE CLAIM, AS WE HAVE IT, AND

09:25:31  12        THEIR PROPOSED CHANGE, "SUITABLE MIX OF INTER-PLATFORM

09:25:35  13        DISTANCES," THAT DOESN'T MAKE IT ANY BETTER, PROBABLY MAKE ITS

09:25:39  14        WORSE.  SLIDE 3.

09:25:42  15            SO I WANT TO START WITH THE NAUTILUS POINT, BECAUSE I

09:25:45  16        THINK THAT'S THE ONE THAT WE SHOULD SPEND THE MOST TIME ON.  IF

09:25:48  17        I COULD GO TO THE NEXT SLIDE.

09:25:49  18            THE COURT:  I THINK THAT'S YOUR STRONGEST POINT,

09:25:52  19        YEAH.

09:25:52  20            MR. VAN NEST:  I THINK IT IS TOO.

09:25:56  21        NAUTILUS MAKES CLEAR THAT THE GOAL OF THIS IS TO PROVIDE

09:26:00  22        SOME KIND OF OBJECTIVE BOUNDARY TO LIMIT THE CLAIM.

09:26:03  23            THAT'S PARTICULARLY IMPORTANT, YOUR HONOR, IN LIGHT OF ALL

09:26:05  24        THE PRIOR ART THAT WE'VE GOT.  BECAUSE THEY DON'T HAVE THE

09:26:08  25        RIGHT TO CLAIM THE WHOLE FIELD, AND I THINK INTERVAL LICENSING,

09:26:15 1    THAT'S THE ONE THAT TALKED ABOUT UNOBTRUSIVE, I THINK THE

09:26:19 2    CLAIMS, WHEN READ IN LIGHT OF THE SPEC, HAVE TO PROVIDE

09:26:22 3    OBJECTIVE BOUNDARIES FOR THOSE OF SKILL IN THE ART.

09:26:25 4         NOW, HERE, AS I SAID, WE DON'T HAVE ANY DISCUSSION IN THE

09:26:29 5    SPECIFICATION ABOUT WHAT "SUBSTANTIALLY A RELATIVE DISTANCE"

09:26:33 6    MEANS.  WE HAVE SOME DISCUSSION ABOUT BALLOONS AND RADIUSES,

09:26:37 7    BUT WE DON'T HAVE ANY DEFINITION ABOUT DISTANCE.  WE HAVE THE

09:26:41 8    DISCUSSION OF COVERAGE, BUT EVEN THE PATENT RECOGNIZES COVERAGE

09:26:44 9    WILL NEVER BE COMPLETE.

09:26:46 10        SO AGAIN, WHAT IS SUBSTANTIAL?  THERE'S A LOT OF WAYS TO

09:26:50 11   DESIGN THESE SYSTEMS TO PROVIDE MORE OR LESS COVERAGE WITH MORE

09:26:55 12   OR FEWER BALLOONS.

09:26:57 13        AS YOU SAW LAST WEEK, THERE ARE MANY DIFFERENT WAYS TO

09:27:00 14   DESIGN IT.  AND I'VE CREATED THIS GRAPHIC ON MY NEXT SLIDE

09:27:04 15   WHICH KIND OF ILLUSTRATES THE PROBLEMS.

09:27:06 16        IF WE COULD POP THE FIRST ONE UP.

09:27:08 17        WHAT DISTANCE IS BEING MEASURED?  ARE WE MEASURING SOME

09:27:12 18   DISTANCE BETWEEN ONE END OR THE OTHER OF THE CONSTELLATION, OR

09:27:15 19   ARE WE ONLY MEASURING THE DISTANCE BETWEEN THE BALLOONS?

09:27:18 20   BECAUSE THAT MAKES A BIG DIFFERENCE IN THE SIZE OF

09:27:21 21   CONSTELLATION THAT YOU WANT TO PROVIDE.  THAT'S ONE OF THE

09:27:24 22   ISSUES.

09:27:26 23        IF YOU'RE MEASURING THE DISTANCE BETWEEN BALLOONS OR

09:27:31 24   YOU'RE MEASURING THE OVERALL DISTANCE, IS THERE ANY DISTANCE

09:27:34 25   BETWEEN BALLOONS THAT FALLS OUTSIDE THE SCOPE OF THE CLAIM?

| | |
|---|---|
| 09:27:38 | 1 |
| 09:27:40 | 2 |
| 09:27:44 | 3 |
| 09:27:50 | 4 |
| 09:27:54 | 5 |
| 09:27:59 | 6 |
| 09:28:02 | 7 |
| 09:28:06 | 8 |
| 09:28:09 | 9 |
| 09:28:10 | 10 |
| 09:28:12 | 11 |
| 09:28:15 | 12 |
| 09:28:19 | 13 |
| 09:28:23 | 14 |
| 09:28:26 | 15 |
| 09:28:26 | 16 |
| 09:28:30 | 17 |
| 09:28:34 | 18 |
| 09:28:37 | 19 |
| 09:28:40 | 20 |
| 09:28:46 | 21 |
| 09:28:47 | 22 |
| 09:28:51 | 23 |
| 09:28:56 | 24 |
| 09:28:59 | 25 |

1   IN OTHER WORDS, COULD WE DESIGN AROUND, WHICH WE WOULD

2   HAVE THE RIGHT TO DO, EVEN IF WE WERE INFRINGING.  IS THERE A

3   DISTANCE BETWEEN BALLOONS THAT EITHER A DISTANCE AT WHICH THEY

4   ARE CLOSER THAN THEY WOULD NEED TO BE, AND THEREFORE OVERLAP,

5   OR FURTHER AWAY?  IS THERE A DISTANCE THAT FALLS OUTSIDE THE

6   CLAIMS?  YOU HAVE NO WAY OF KNOWING THAT WITH EITHER OF THE

7   PROPOSALS, EITHER THE LANGUAGE OF THE CLAIM OR THEIR PROPOSAL.

8   THE THIRD ONE YOU'VE ALREADY TOUCHED ON, WHAT DOES

9   "SUBSTANTIALLY" MEAN?

10   LET'S POP THE NEXT ONE UP.

11   CAN WE HAVE GAPS IN COVERAGE TO AVOID INFRINGEMENT?  IN

12   OTHER WORDS, YOU COULD THEORETICALLY PUT SO MANY BALLOONS UP

13   THAT EVERYBODY WOULD GET PERFECT SERVICE, EVEN IN A WINDY AREA.

14   THAT'S NOT USUALLY COST-EFFECTIVE.

15   THE COURT:  RIGHT.

16   MR. VAN NEST:  SO HOW MUCH COVERAGE IS NEEDED TO

17   INFRINGE IF THE RULE IS SUBSTANTIAL?  AND YOU CAN SAY

18   "SUBSTANTIALLY COMPLETE," BUT WHAT DOES THAT MEAN?  WE'VE ALL

19   BEEN THROUGH JURY TRIALS WHERE WE LEAVE THAT ISSUE TO THE END,

20   AND WHAT HAPPENS?  IT'S A MESS, BECAUSE THERE IS NO DEFINITION,

21   YOU START GETTING JURY QUESTIONS.

22   THE LAST ONE I GOT UP IS WHAT IF SOME BALLOONS ARE CLOSE

23   TOGETHER AND OTHERS FURTHER APART?  HOW UNIFORM DO THE

24   DISTANCES BETWEEN THE BALLOONS HAVE TO BE?

25   AGAIN, YOU COULD DESIGN A SYSTEM WHERE THEY ARE CLUSTERED

09:29:03   1   IN THE MIDDLE OF A GEOGRAPHIC AREA AND A LITTLE MORE FURTHER

09:29:06   2   APART FURTHER OUTSIDE.  WOULD THAT INFRINGE, OR NOT?  THERE'S

09:29:10   3   REALLY NO WAY OF KNOWING THAT.

09:29:12   4       AND REMARKABLY, WHEN WE ASKED THEIR EXPERT ABOUT THIS,

09:29:15   5   BECAUSE THERE ARE EXPERTS ON BOTH SIDES, THIS IS WHAT HE SAID

09:29:18   6   WITH RESPECT TO "SUBSTANTIALLY."

09:29:20   7       "I MEAN, THERE IS AT LEAST -- THERE IS A STARTING POINT, A

09:29:23   8   RELATIVE DISTANCE THAT'S KIND OF A VERY LOOSE OBJECTIVE, BUT

09:29:27   9   THAT OBJECTIVE -- IF THERE'S ONE DISTANCE OR MULTIPLE

09:29:32  10   DISTANCES, THAT OBJECTIVE DOES NOT NEED TO BE MET PRECISELY.

09:29:35  11   THERE'S WIGGLE ROOM."

09:29:38  12       I MEAN, THAT ADMISSION IS THE OPPOSITE OF NAUTILUS AND

09:29:40  13   INTERVAL LICENSING.  WIGGLE ROOM, LOOSE OBJECTIVE, YOU CAN'T

09:29:47  14   DEFINE YOUR PATENT BASED ON THE GOAL, YOU'VE GOT TO DEFINE YOUR

09:29:51  15   PATENT BASED ON HOW YOU GET THERE, AND TELL PEOPLE WHAT IS THE

09:29:55  16   MEANS BY WHICH YOU ARE DOING IT.

09:29:57  17       CAN I HAVE THE NEXT SLIDE.

09:29:59  18       BASED ON THIS ANALYSIS BY THEIR EXPERT, HE SAYS BOTH OF

09:30:04  19   THESE VERSIONS INFRINGE.  HE SAYS, LAUNCHING IN A MANNER FROM

09:30:10  20   CALIFORNIA, SAN JOSE, WHERE YOU'VE GROUPED THEM TOGETHER, THAT

09:30:14  21   INFRINGES.  BUT IF YOU LAUNCH ONE BALLOON IN FLORIDA AND ONE

09:30:20  22   HERE, THAT CAN INFRINGE TOO.

09:30:22  23       NOW, HOW IN THE WORLD THAT COULD PROVIDE NOTICE TO

09:30:26  24   SOMEBODY OF THE KIND OF CONSTELLATION THAT WOULD INFRINGE AND

09:30:31  25   WOULDN'T INFRINGE IS ABSOLUTE --

09:30:34  1          THE COURT:  YOU KNOW, I'M NOT REALLY GETTING WHY THE

09:30:36  2     LAUNCH SITE GETS DRAWN INTO THIS.  I THOUGHT IT WAS THE

09:30:41  3     ULTIMATE PLACEMENT OF THE BALLOON IN THE STRATOSPHERE THAT WE

09:30:45  4     ARE TALKING ABOUT.

09:30:46  5          MR. VAN NEST:  WE WILL TALK ABOUT THIS LATER, NOT

09:30:48  6     TODAY, BUT THEY MAKE A BIG DEAL OUT OF THE IMPORTANCE OF HOW

09:30:52  7     YOU LAUNCH.  LAUNCH IN A MANNER TO CREATE THIS.

09:30:57  8          THE COURT:  SO "LAUNCH IN A MANNER," I UNDERSTAND

09:31:00  9     THAT, BUT THE MECHANISM OF LAUNCHING IS DIFFERENT THAN THE

09:31:03  10    LOCATION OF LAUNCHING.

09:31:04  11       YOU ARE TRYING TO SAY IT'S ALL PART OF THE --

09:31:06  12         MR. VAN NEST:  WELL, NO, THE PART OF IT THAT THEY

09:31:09  13    THINK IS IMPORTANT IS THAT YOU LAUNCH THEM TOGETHER FROM ONE

09:31:11  14    PLACE, AND THAT'S HOW THEY STAY TOGETHER.

09:31:13  15         THE COURT:  I DIDN'T PICK THAT UP IN THIS DISCUSSION.

09:31:16  16         MR. VAN NEST:  THAT'S, IN FACT, HOW SPACE DATA

09:31:18  17    OPERATES, AS OPPOSED TO USING MORE STEERING AND STUFF TO DO IT.

09:31:24  18    THEY SPACE APART -- LET ME CORRECT MYSELF -- THEY SPACE APART

09:31:28  19    THE LAUNCHING TO TRY TO EMULATE WHAT THIS CONSTELLATION WILL

09:31:32  20    BE.

09:31:32  21         THE COURT:  RIGHT.

09:31:32  22         MR. VAN NEST:  RATHER THAN LAUNCH THEM ALL IN ONE

09:31:35  23    PLACE AND STEER THEM TO THE CONSTELLATION.

09:31:37  24         THE COURT:  I WASN'T AWARE, MAYBE I JUST WASN'T

09:31:40  25    FOCUSED ON IT, THAT THIS PATENT LIMITS TO ONE LAUNCH SITE, ONE

09:31:45 1    LAUNCH SITE FOR A GIVEN CONSTELLATION.

09:31:49 2        MR. VAN NEST:  THIS LIMITATION DOESN'T HAVE AN

09:31:51 3    EXPLICIT DISCUSSION OF THAT.

09:31:52 4        THE COURT:  THAT'S WHAT I THOUGHT.

09:31:53 5        MR. VAN NEST:  THIS CLAIM, IT DOESN'T.  BUT THAT'S

09:31:56 6    WHAT "LAUNCHED IN A MANNER" IS REFERRING TO IN THE CLAIM.  THEY

09:31:59 7    ARE SPACING APART THEIR LAUNCH SITES IN ORDER TO GET THE

09:32:03 8    CONSTELLATION, AS OPPOSED TO RELYING ON NAVIGATION TO DO IT.

09:32:08 9        BUT THAT'S NOT FOR TODAY.  MY POINT IS THAT IF YOU DON'T

09:32:12 10   HAVE A DEFINITION, AN OBJECTIVE DEFINITION OF WHAT -- HOW MUCH

09:32:18 11   COVERAGE YOU NEED, AND YOU DON'T HAVE AN OBJECTIVE DEFINITION

09:32:21 12   OF WHAT THE DISTANCES BETWEEN BALLOONS ARE, YOU DON'T HAVE ANY

09:32:25 13   WAY OF KNOWING WHAT DOES OR DOESN'T INFRINGE, AS THIS EXAMPLE

09:32:31 14   ILLUSTRATES.

09:32:31 15       THE COURT:  WHEN WE SAY -- WELL, WE ARE NOT TALKING

09:32:39 16   ABOUT SUBSTANTIAL COVERAGE HERE, WE ARE TALKING ABOUT

09:32:41 17   "SUBSTANTIALLY A RELATIVE DISTANCE."  AND I'M CONCERNED ABOUT

09:32:48 18   INTERCHANGING THE TWO.

09:32:49 19       ARE YOU SAYING THAT I SHOULD?  THAT "SUBSTANTIALLY A

09:32:52 20   RELATIVE DISTANCE" IS THE SAME AS "SUBSTANTIAL COVERAGE?"

09:32:56 21       MR. VAN NEST:  I THINK THAT'S WHAT SPACE DATA IS

09:32:57 22   SAYING "SUBSTANTIALLY" REFERS TO.

09:33:00 23       THE COURT:  ARE YOU SAYING THAT?

09:33:01 24       MR. VAN NEST:  I DON'T KNOW WHAT ELSE IT COULD REFER

09:33:02 25   TO.

09:33:02  1          THE COURT:  OKAY.

09:33:03  2          BECAUSE "SUBSTANTIAL COVERAGE," THAT'S EASIER TO

09:33:05  3     UNDERSTAND.  "SUBSTANTIAL COVERAGE" IS A TRICKY ISSUE TOO

09:33:09  4     BECAUSE I DON'T KNOW WHETHER IT MEANS THE NUMBER OF CUSTOMERS

09:33:13  5     IS THE MEASURE OR THE GEOGRAPHIC LOCALE.

09:33:20  6          IF YOU ARE IN WYOMING, YOU CAN HAVE THOUSANDS OF MILES AND

09:33:27  7     TENS OF PEOPLE.  AND IF YOU ARE IN NEW YORK CITY, YOU WILL HAVE

09:33:30  8     MILLIONS OF PEOPLE AND TENS OF FEET.  SO I DON'T EVEN KNOW WHAT

09:33:34  9     OUR MEASUREMENT IS IF WE ARE TALKING ABOUT "SUBSTANTIAL

09:33:37  10    COVERAGE."

09:33:37  11           MR. VAN NEST:  I DON'T EITHER.  AND THAT'S THE

09:33:39  12    PROBLEM.  IF DR. HANSMAN LOOKED AT THIS ISSUE, AND HERE'S WHAT

09:33:44  13    HE SAID, PULLEN HAS SAID, PULLEN IS THE SPACE DATA EXPERT, THAT

09:33:49  14    COVERAGE NEED NOT BE A HUNDRED PERCENT.

09:33:51  15         WELL, THERE'S NO OBJECTIVE WAY TO DETERMINE WHAT EXTENT OF

09:33:54  16    COVERAGE MEETS THE CLAIMS.

09:33:55  17         YOU ARE POINTING OUT A DIFFERENT PROBLEM, WHICH IS, WHAT

09:33:58  18    ARE WE MEASURING?  ARE WE MEASURING THE NUMBER OF CUSTOMERS

09:34:01  19    THAT GET COVERAGE, OR THE REGIONS ON THE GROUND FROM WHICH YOU

09:34:04  20    CAN GET COVERAGE, OR WHAT?

09:34:06  21         BUT DR. PULLEN IS SAYING, THERE'S NO WAY TO DETERMINE THAT

09:34:10  22    BY LOOKING AT THE SPECIFICATION.

09:34:13  23         SO IF "SUBSTANTIALLY" MEANS "SUBSTANTIALLY COVERED" OR

09:34:15  24    "NEARLY COMPLETE" OR "SUBSTANTIALLY COMPLETE," YOU DON'T KNOW

09:34:19  25    WHAT THAT MEANS, AND THERE'S NO WAY TO DETERMINE IT FROM THE

09:34:23  1      PATENTS THEMSELVES.

09:34:25  2           AND I THINK, AGAIN, THAT'S CRITICAL, BECAUSE OF ALL THE

09:34:28  3      PRIOR ART THAT'S OUT THERE.  YOU CAN'T SIMPLY SAY, IT'S GOOD

09:34:31  4      ENOUGH IF IT WORKS, RIGHT.  IT INFRINGES IF IT WORKS.

09:34:35  5           THAT'S ESSENTIALLY WHAT THEY WANT TO SAY WITH WORDS LIKE

09:34:38  6      "SUITABLE," AND THE CLAIM LANGUAGE ITSELF.  THAT'S THE CLASSIC

09:34:44  7      CASE OF INDEFINITENESS UNDER NAUTILUS.

09:34:48  8           YOU CAN'T COME IN AND SAY IF IT WORKS, THEREFORE IT

09:34:54  9      INFRINGES.  YOU HAVE TO HAVE SOME WAY OF ALLOWING PEOPLE TO

09:34:57  10     KNOW HOW TO DESIGN AROUND YOUR PATENT, AMONG OTHER THINGS.

09:35:01  11          LET'S GO BACK TO THE SLIDE.

09:35:03  12          THIS IS JUST THE POINT I WAS MAKING ABOUT THE TIMELINE YOU

09:35:06  13     SAW LAST WEEK.  BALLOONS PROVIDING COMMUNICATION HAVE BEEN

09:35:09  14     AROUND IN THE 60'S WITH STROM AND THE 70'S WITH CARTEN.  THERE

09:35:13  15     ARE LOTS AND LOTS OF EXAMPLES OF THIS.  THAT'S WHY THEY DIDN'T

09:35:17  16     INVENT THIS CONCEPT.  THEY INVENTED, IF ANYTHING, A WAY OF

09:35:20  17     PERFORMING IT.

09:35:22  18          LET'S GO FORWARD.

09:35:23  19          THERE'S ONE OTHER PROBLEM, I THINK -- THE NEXT SLIDE.

09:35:26  20     THERE'S ONE OTHER PROBLEM THAT DR. HANSMAN POINTS OUT, AND THAT

09:35:32  21     IS YOU ALSO DON'T KNOW, WITH RESPECT TO DISTANCE, HOW CLOSE

09:35:34  22     THESE COULD BE, RIGHT.  IF THEY ARE CLOSER TOGETHER, THAT'S

09:35:39  23     OVERLAP.  THAT'S THE OPPOSITE OF GAPS IN COVERAGE.  ONE COULD

09:35:42  24     DESIGN A SYSTEM, WHICH IS LESS EFFICIENT PROBABLY, BUT WHERE

09:35:44  25     THE BALLOONS ARE CLOSER TOGETHER.

09:35:47  1        BUT AGAIN, BECAUSE WE DON'T HAVE ANY GUIDANCE FROM THE

09:35:51  2    SPECIFICATION OR THE CLAIM AS TO HOW CLOSE THEY COULD BE,

09:35:54  3    THAT'S REALLY NOT PROVIDED FOR, AND ANOTHER REASON WHY THIS IS

09:36:00  4    INDEFINITE.

09:36:01  5        LET ME LOOK AT THE NEXT SLIDE.  THIS SLIDE IS INTENDED TO

09:36:04  6    POINT OUT THAT THEIR PROPOSED SUITABLE MIX OF INTER-PLATFORM

09:36:09  7    DISTANCES DOESN'T SOLVE THE PROBLEM.  THAT MAKES THE PROBLEM

09:36:12  8    WORSE.  THAT'S SIMPLY SAYING IF IT WORKS, IT INFRINGES.  IT'S

09:36:17  9    SUITABLE, IT INFRINGES.

09:36:19  10        AND IT'S TRUE THAT IN SOME PATENTS, YOU CAN PROVIDE

09:36:25  11    GUIDANCE FOR WORDS LIKE "SUBSTANTIAL."  IN NAUTILUS, I THINK

09:36:30  12    THE COURT ULTIMATELY FOUND THAT THE DISTANCE OF YOUR HAND ON A

09:36:37  13    MONITOR WAS SUFFICIENTLY SPELLED OUT IN THE SPEC.  WE REALLY

09:36:40  14    DON'T HAVE THAT HERE BECAUSE THEY ARE NOT DISCUSSING IT OR

09:36:42  15    MAKING ANY COMMENTS ABOUT IT.

09:36:45  16        AND WE ASKED DR. HANSMAN, WHETHER "SUITABLE" WOULD GIVE

09:36:51  17    ONE OF SKILL IN THE ART THE KIND OF GUIDANCE YOU WOULD NEED,

09:36:54  18    AND HE SAYS ABSOLUTELY NOT, SOMEONE WOULDN'T KNOW WHAT THE MIX

09:36:58  19    WAS TO BE SUITABLE, BECAUSE SUITABLE IS SORT OF IN THE EYE OF

09:37:01  20    THE DESIGNER.

09:37:05  21        IT KIND OF COMES BACK TO HOW FAR APART ARE YOU GOING TO

09:37:07  22    ALLOW YOUR BALLOONS TO BE OR HOW CLOSE WILL YOU TOLERATE AND

09:37:12  23    HOW MUCH OR LITTLE COVERAGE WILL YOU FIND -- ARE YOU TRYING TO

09:37:18  24    COVER -- CLAIM WITH YOUR PATENT.

09:37:20  25        AND SO IT'S NOT JUST DISTANCE, IT'S DISTANCE AND COVERAGE

09:37:24  1    THAT IS EXTREMELY VAGUE WITH THIS.

09:37:26  2        AND THAT'S WHAT I HAVE ON NAUTILUS.  I WOULD LIKE TO SPEND

09:37:30  3    JUST A MINUTE ON IPXL, YOUR HONOR, BECAUSE WHILE I THINK THE

09:37:33  4    CLAIM FAILS, AT NAUTILUS, EVEN IF IT DIDN'T, IT WOULD FAIL AT

09:37:38  5    IPXL.

09:37:44  6        LET'S GO TO THE NEXT SLIDE.

09:37:46  7        IT'S VERY CLEAR THAT THEY HAVE IMPROPERLY MIXED A SYSTEM

09:37:51  8    CLAIM AND A METHOD.  AND THE PROBLEM WITH THAT AS IPXL POINTS

09:37:56  9    OUT, IS WHO IS INFRINGING.  IS IT THE PERSON USING THE SYSTEM,

09:38:00 10    IS IT THE PERSON WHO DESIGNED IT OR MANUFACTURED IT, WHO IS IT?

09:38:03 11        AND HERE.  I DON'T THINK ANYBODY IS QUESTIONING THIS IS A

09:38:07 12    SYSTEM CLAIM.  IT'S A SYSTEM CLAIM AND IT HAS VARIOUS ELEMENTS.

09:38:10 13    IT HAS THE PLATFORMS OF COMMUNICATION, THE GROUND

09:38:13 14    COMMUNICATION, THE CAPABILITY TO HAND OFF FROM ONE BALLOON TO

09:38:18 15    ANOTHER.

09:38:19 16        BUT THEN YOU GET DOWN HERE TO THE END, AND THAT'S CLEARLY

09:38:21 17    AN ACTION THAT HAS TO BE TAKEN FOR EACH SYSTEM THAT'S CREATED,

09:38:24 18    RIGHT.  THEY ARE LAUNCHED IN A MANNER SUCH THAT WHEN THEY ARE

09:38:27 19    OPERATING AT A CERTAIN ELEVATION, THERE'S THIS SUBSTANTIALLY

09:38:31 20    RELATIVE DISTANCE.

09:38:32 21        SO EVEN IF -- EVEN IF THIS PASSES MUSTER UNDER NAUTILUS,

09:38:38 22    AND I WANT TO STRESS TO YOUR HONOR, I DON'T THINK IT DOES.

09:38:42 23    EVEN IF THAT WERE TRUE, THIS WOULD FALL UNDER IPXL FOR THE

09:38:49 24    SIMPLE REASON YOU CANNOT PUT A METHOD STEP LIKE THIS INTO A

09:38:52 25    SYSTEM OR APPARATUS CLAIM AND HAVE IT PASS MUSTER BECAUSE IT'S

09:38:55  1      NOT CLEAR ON WHO IT IS THAT'S INFRINGING, THE PERSON WHO IS

09:39:02  2      USING THE SYSTEM, THE MANUFACTURE, THE DESIGNER, WHO IS SELLING

09:39:05  3      IT?  AND THAT'S EXACTLY THE CASE WE HAVE HERE, YOUR HONOR.

09:39:07  4          SO THAT'S WHAT I HAVE ON CLAIM ONE AND OUR INDEFINITENESS

09:39:14  5      POINT.

09:39:15  6              THE COURT:  THANK YOU.  ALL RIGHT.

09:39:16  7              MR. HOSIE:  MAY I BRIEFLY RESPOND, YOUR HONOR?

09:39:17  8              THE COURT:  YES, THAT'S FINE.

09:39:19  9          I'M JUST LOOKING AT THE CLOCK, BECAUSE AT NOON WE ARE

09:39:22  10     DONE, AND I WANT TO GET THROUGH EVERYTHING.

09:39:23  11             MR. HOSIE:  SO THE GOOD NEWS IS I AM SUBSTANTIALLY

09:39:25  12     COMPLETE ON THE "SUBSTANTIAL" ARGUMENT.

09:39:29  13         THREE POINTS, ACTUALLY.

09:39:31  14         THE FIRST IS EVERY POINT THAT MR. VAN NEST MADE ABOUT

09:39:35  15     "SUBSTANTIALLY" IN THIS PATENT WOULD APPLY EQUALLY WELL TO

09:39:39  16     EVERY OTHER CASE THAT UPHELD CLAIMS WITH THAT EXACT WORD USED,

09:39:48  17     SUBSTANTIALLY OMNIDIRECTIONAL, SUBSTANTIALLY ATTACHED.

09:39:50  18         IF GOOGLE WERE RIGHT, EVERY ONE OF THESE CASES WOULD BE

09:39:55  19     WRONG.  AS A MATTER OF LOGIC AND LAW, HE CANNOT BE RIGHT AT

09:39:59  20     THAT LEVEL OF SIMPLICITY.  IT'S NOT INFIRM TO USE THE WORD

09:40:03  21     "SUBSTANTIALLY."

09:40:03  22             THE COURT:  WELL, IT MAY BE THAT I ACTUALLY -- THE

09:40:05  23     FIRST POINT MR. VAN NEST MADE MAY BE THE KEY POINT, TO

09:40:09  24     DISTINGUISH THOSE CASES TO DETERMINE WHETHER THOSE

09:40:14  25     SPECIFICATIONS DEALT WITH THE ISSUE OR NOT.

09:40:16  1      MR. VAN NEST SUGGESTS THAT DUE TO THE LATENESS OF THIS

09:40:18  2  LANGUAGE COMING IN, THAT THERE'S NOTHING IN THE SPECIFICATION.

09:40:21  3  I THINK THAT'S CORRECT, BASED ON MY READING.  BUT I NEED TO

09:40:27  4  LOOK AT THE OTHER CASES AND SEE IF THERE'S THE SAME

09:40:29  5  CIRCUMSTANCE.

09:40:30  6      MR. HOSIE:  IN FAIRNESS TO MR. VAN NEST, HE'S NOT

09:40:33  7  ENTIRELY CORRECT ON THAT BECAUSE THERE IS A TON OF DISCUSSION

09:40:36  8  ABOUT THE PURPOSE AND NATURE OF THE OBJECTIVE, PROVIDING AS

09:40:40  9  MUCH COVERAGE AS YOU CAN.

09:40:41 10      THE COURT:  WELL, ALL PATENTS HAVE A DISCUSSION ABOUT

09:40:43 11  THE PURPOSE AND OBJECTIVE OF THE PATENT.

09:40:45 12      MR. HOSIE:  BUT IN A CASE WHERE ONE IS QUARRELLING

09:40:47 13  ABOUT WHETHER "SUBSTANTIALLY" IS UNBRIDLED AND UNBOUND, THE

09:40:51 14  COURTS LOOK AT THE OBJECTIVE AND THEY SAY, CAN WE INFER OR

09:40:58 15  GATHER THE METES AND BOUNDS FROM THE FUNCTION, E.G., THE HAND.

09:41:03 16      THAT'S THE FIRST POINT.

09:41:04 17      THE SECOND POINT IS, IF I MAY ASK YOU TO GO BACK TO SLIDE

09:41:05 18  8, PLEASE.

09:41:05 19      THE COURT:  HANDS ARE A LITTLE MORE UNDERSTANDABLE

09:41:08 20  THAN BALLOONS IN THE STRATOSPHERE THOUGH.

09:41:10 21      MR. HOSIE:  BUT TO A PERSON SKILLED IN THE ART OF

09:41:13 22  NETWORK ARRAY AND NETWORKING, NOT SO, YOUR HONOR.

09:41:15 23      PEOPLE KNOW IN THIS ART, YOU KNOW, TO COVER THIS KIND OF

09:41:21 24  POPULATION, YOU NEED THESE BALLOONS WITH THESE COVERAGE CONES,

09:41:25 25  YOU WILL RECALL FROM THE TUTORIAL.

09:41:27  1     AND THAT'S A PERFECT SEGUE TO THEIR SLIDE 8.  THEIR SLIDE

09:41:31  2   8 WAS WHERE THEY HAD TWO BALLOONS HERE, AND ONE IN CALIFORNIA,

09:41:35  3   AND ONE IN TEXAS.  AND THEY SAID, THEY ALL INFRINGE.

09:41:38  4     WHAT THEY DIDN'T SHOW YOU, YOUR HONOR, IS THAT IN THE TWO

09:41:42  5   IN CALIFORNIA, THE ARRAY WAS PROVIDING COVERAGE AND COVERAGE

09:41:45  6   CONES RIGHT THERE; WHEREAS THE TWO SPANNING THE CONTINENT HAD

09:41:51  7   HUGE COVERAGE CONES, SO THE TWO BALLOONS COVERED THAT

09:41:55  8   CONTIGUOUS LAND MASS.

09:41:58  9     THAT'S IMPORTANT BECAUSE, AGAIN, IT'S ALL ABOUT WHAT

09:42:01  10  YOU'RE TRYING TO DO.  YOU ARE TRYING TO GET A BALLOON ARRAY

09:42:03  11  THAT PROVIDES THE NETWORK COVERAGE YOU WANT.  AND THEY IGNORE

09:42:07  12  THAT AGAIN AND AGAIN.

09:42:08  13     THE THIRD POINT, HE SAID WE DON'T KNOW WHAT THE YARDSTICK

09:42:12  14  IS, IS IT PEOPLE OR IS IT GEOGRAPHY?  BUT THE PATENT MAKES

09:42:20  15  CLEAR THE PURPOSE IS TO OFFER "A CONTIGUOUS LAND MASS."

09:42:26  16     THE YARDSTICK IS EXPLICIT, AND THAT IS THE YARDSTICK.

09:42:30  17     NOW I AM NO LONGER SUBSTANTIALLY DONE, I'M DONE.

09:42:33  18          THE COURT:  OKAY.  ALL RIGHT.

09:42:34  19     BUT I THINK YOU ARE COMING RIGHT BACK UP BECAUSE WE ARE

09:42:37  20  GOING TO MOVE ON TO THE "CONTROL SIGNAL PROCESSOR DEVICE" TERM.

09:42:42  21          MR. MARTIN:  YOUR HONOR, ACTUALLY, I'M GOING TO BE

09:42:44  22  DOING THAT ONE.

09:42:44  23          THE COURT:  GOOD.

09:42:45  24          MR. MARTIN:  LET ME CHANGE OUR SLIDES OUT HERE.

09:42:50  25          THE COURT:  OKAY.

09:43:18  1          MR. MARTIN:  YOUR HONOR, THE TERM "CONTROL SIGNAL

09:43:21  2     PROCESSOR DEVICE" APPEARS IN ONLY ONE CLAIM OF THE '941 PATENT.

09:43:25  3     IT APPEARS IN CLAIM 7.

09:43:27  4          AND CLAIM 7 IS NOT TOO LONG, IT DESCRIBES THE REGULATOR

09:43:37  5     CLAIMED IN CLAIM 2 AS "COMPRISING A CONTROLLABLE GAS VENT, A

09:43:43  6     CONTROLLABLE BALLAST RELEASE DEVICE, AN ALTITUDE DETERMINING

09:43:48  7     MECHANISM, AND A CONTROL SIGNAL PROCESSOR DEVICE."

09:43:52  8          AND IT ALSO DESCRIBES, IF YOU CONTINUE READING THE CLAIM,

09:43:56  9     WHAT THE CONTROL SIGNAL PROCESSOR DEVICE IS CONNECTED TO.

09:43:59 10          IT'S CONNECTED WITH THE TRANSCEIVER DESCRIBED IN CLAIM

09:44:03 11     ONE, IT'S CONNECTED TO THE ALTITUDE DETERMINING MECHANISM, IT'S

09:44:07 12     CONNECTED TO THE GAS VENT, AND IT'S CONNECTED TO THE BALLAST

09:44:11 13     RELEASE SO THAT THE ALTITUDE CAN BE ADJUSTED.

09:44:15 14          GOOGLE ARGUES THAT THIS CLAIM IS INDEFINITE AS A MEANS

09:44:18 15     PLUS FUNCTION TERM.  BUT AS THE FEDERAL CIRCUIT VERY RECENTLY

09:44:22 16     CLARIFIED, I THINK ON JUNE 1ST IN THE ZERO CLICK CASE, THE

09:44:27 17     QUESTION TO ASK, THE FIRST QUESTION TO ASK WHEN DETERMINING

09:44:30 18     WHETHER A CLAIM TERM FALLS UNDER 35 USC 112, PARAGRAPH 6, IS

09:44:38 19     DOES THE TERM USE THE WORD "MEANS?"

09:44:41 20          AND THERE CAN'T BE ANY DISPUTE THE TERM FOR CONSTRUCTION

09:44:46 21     HERE TODAY "CONTROL SIGNAL PROCESSOR DEVICE" DOES NOT USE THE

09:44:50 22     TERM "MEANS."  SO THERE IS A PRESUMPTION AGAINST MEANS PLUS

09:44:56 23     FUNCTION CLAIM.

09:45:00 24          GOOGLE MAKES A VERY BRIEF ARGUMENT IN ITS OPPOSITION BRIEF

09:45:05 25     SAYING, WELL, DEVICE IS A NONCE WORD, JUST LIKE MODULE WAS IN

09:45:13  1    WILLIAMSON V. CITRIX, IT'S A 2015 CASE OUT OF THE FEDERAL

09:45:18  2    CIRCUIT.

09:45:18  3          WELL, FIRST, WILLIAMSON WAS CLARIFIED BY ZERO CLICK.

09:45:23  4          SECOND, THE TERM UP FOR CONSTRUCTION IN WILLIAMSON WAS

09:45:31  5    "DISTRIBUTED LEARNING CONTROL MODULE."

09:45:35  6          NOW "DISTRIBUTED" ISN'T ANY SORT OF STRUCTURE, "LEARNING"

09:45:40  7    ISN'T ANY SORT OF STRUCTURE, AND "CONTROL" IS NOT ANY SORT OF

09:45:43  8    STRUCTURE, AND "MODULE" CERTAINLY IS NOT.

09:45:45  9          HERE, YOUR HONOR, THE WORD "PROCESSOR" HAS BEEN HELD BY

09:45:49  10   MANY COURTS TO BE AT LEAST A CLASS OF STRUCTURES.  THE PTAB

09:45:56  11   HAS, IN EX PARTE CUTLET, SAID THAT "PROCESSOR" IS A STRUCTURE.

09:46:01  12   AND THERE'S A WHOLE LINE OF CASES IN THE EASTERN DISTRICT OF

09:46:05  13   TEXAS HOLDING THAT "PROCESSOR," JUST THE WORD "PROCESSOR" IN

09:46:08  14   THE CLAIMS --

09:46:08  15          THE COURT:  JUST THE GENERIC PROCESSOR.

09:46:12  16          MR. MARTIN:  PROCESSOR CONNOTES STRUCTURE.

09:46:16  17          NOW TO OVERCOME EITHER PRESUMPTION, EITHER PARTY CAN

09:46:20  18   DEMONSTRATE WHETHER THE WORDS OF THE CLAIM, AS UNDERSTOOD BY A

09:46:23  19   PERSON OF ORDINARY SKILL IN THE ART, HAVE A SUFFICIENTLY

09:46:26  20   DEFINITE MEANING FOR THE NAME OF THE STRUCTURE.  AND THIS IS

09:46:29  21   USING ORDINARY CLAIM CONSTRUCTION PRINCIPLES.

09:46:32  22          SO THE COURT CAN REFER TO THE SPECIFICATION AND THE

09:46:37  23   FIGURES, THE EXTRINSIC EVIDENCE, ET CETERA, BUT IT'S

09:46:43  24   DETERMINING WHETHER THE WORDS OF THE CLAIM CONNOTE STRUCTURE.

09:46:52  25          AND THIS POINT, YOUR HONOR, COURTS IN THE NORTHERN

09:46:55  1    DISTRICT OF CALIFORNIA EVALUATING PROCESSOR TERMS, DIVE INTO

09:46:58  2    THE SPECIFICATION AND INTO THE CLAIMS AND SAY OKAY, WHAT IS THE

09:47:02  3    TERM CONNECTED TO?  WHAT IS THE PROCESSOR CONNECTED TO?  WHERE

09:47:07  4    IS IT?  DO THE CLAIMS IN THE SPECIFICATION MAKE THAT CLEAR?

09:47:11  5    WHAT'S ITS INPUT AND WHAT'S ITS OUTPUT?

09:47:17  6        AND IF THE SPECIFICATION CLAIMS DESCRIBE THAT, WELL THEN

09:47:19  7    THEY CONCLUDE THAT IT'S NOT A MEANS PLUS FUNCTION TERM.

09:47:22  8        AND THERE'S TWO CASES ON POINT FOR THAT.  THE FIRST IS

09:47:25  9    FINJAN V. PROOFPOINT, THAT'S A CASE BY JUDGE GILLIAM FROM 2015,

09:47:31  10   AND HE WAS DEALING WITH A CONTENT PROCESSOR IN THAT CASE.

09:47:34  11       HE LOOKED AT THE SPEC AND SAID, WELL, THE SPECIFICATION IN

09:47:38  12   THE CLAIMS DESCRIBE WHAT PROCESSOR IT'S CONNECTED TO, WHERE IT

09:47:43  13   IS, AND ITS INPUT AND ITS OUTPUT.

09:47:47  14       VERY SIMILAR CASE FROM 2017 ISSUED BY JUDGE DAVILA, I HOPE

09:47:53  15   I HAVEN'T HURT HIS NAME TOO BADLY.

09:47:56  16           THE COURT:  NO, THAT'S CORRECT.

09:47:58  17           MR. MARTIN:  OUT OF THIS COURTROOM IN 2017, DID

09:48:01  18    SOMETHING SIMILAR WITH A "PROCESSOR CONFIGURED TO."

09:48:04  19       HE DID THE SAME SORT OF ANALYSIS, LOOKING AT WHAT IS IT

09:48:07  20   CONNECTED TO.

09:48:08  21           THE COURT:  WHAT CASE WAS JUDGE DAVILA'S CASE?

09:48:11  22           MR. MARTIN:  THAT'S QUANERGY SYSTEMS, THE CITE IS

09:48:16  23    2017 WL4410174.  THAT'S FROM LAST FALL, LAST OCTOBER, I

09:48:23  24    BELIEVE.

09:48:25  25       SO IT'S ONLY AFTER DOING THIS SORT OF ANALYSIS THAT YOU

09:48:28  1    GET TO THE POINT THAT GOOGLE JUMPS RIGHT TO, WHICH IS, IS AN

09:48:36  2    ALGORITHM REQUIRED?

09:48:37  3        AND GOOGLE ASSUMES AN ALGORITHM IS REQUIRED.  BUT AN

09:48:39  4    ALGORITHM IS ONLY REQUIRED IF THE -- FIRST, THE TERM IS FOUND

09:48:45  5    TO BE A MEANS PLUS FUNCTION TERM.  AND SECOND, THE TERM IS A

09:48:49  6    COMPUTER-IMPLEMENTED CLAIM.  THAT'S THE ONLY TIME ARISTOCRAT

09:48:55  7    APPLIES.  AND THAT'S THE FEDERAL CIRCUIT OPINION REQUIRING

09:48:58  8    DISCLOSURE OF AN ALGORITHM IN THE SPECIFICATION.

09:49:05  9        AND IF ARISTOCRAT DOES NOT APPLY, THE QUESTION ASKED IS

09:49:08 10    DOES THE REMAINDER OF THE CLAIM LANGUAGE, THE SPECIFICATION,

09:49:11 11    THE PROSECUTION HISTORY, ET CETERA, DISCLOSE SUFFICIENTLY,

09:49:15 12    DEFINITE STRUCTURE TO OPPOSE IT.

09:49:18 13        SO GOING TO THE CLAIM HERE, YOUR HONOR, WE'VE ALREADY

09:49:20 14    WALKED THROUGH THE FACT THAT THE CLAIM LANGUAGE ITSELF

09:49:23 15    DESCRIBES EXACTLY WHAT THE CONTROL SIGNAL PROCESSOR DEVICE IS

09:49:28 16    CONNECTED TO.  IT'S CONNECTED TO A TRANSCEIVER, IT'S CONNECTED

09:49:32 17    TO AN ALTITUDE DETERMINING MECHANISM, IT'S CONNECTED TO A GAS

09:49:36 18    VENT, AND IT'S CONNECTED TO A BALLAST RELEASE.

09:49:39 19        SO THAT RIGHT THERE GETS US OUT OF STEP ONE, AND IT SHOULD

09:49:43 20    NOT BE CONSTRUED AS A MEANS PLUS FUNCTION TERM.

09:49:47 21        THE SPECIFICATION IS ALSO FAIRLY EXPLICIT.  THIS IS

09:49:50 22    FIGURE 14 FROM THE '941 PATENT SPECIFICATION.  IT IS A BLOCK

09:49:54 23    DIAGRAM OF THE LIGHTER-THAN-AIR PLATFORM'S HARDWARE.  AND IT

09:50:05 24    SHOWS THE PROCESSOR, IT SHOWS THE CONNECTED TO TRANSCEIVERS,

09:50:08 25    TWO IN THIS CASE, IT SHOWS CONNECTED TO AN ALTITUDE DETERMINING

09:50:11  1    MECHANISM, IN THIS EXAMPLE A GPS RECEIVER.  IT'S CONNECTED TO

09:50:16  2    THE GAS VENT, AND THE BALLAST DROP.  THE SPECIFICATION ALSO

09:50:21  3    DESCRIBES WHERE THE CONTROL SIGNAL PROCESSOR DEVICE IS LOCATED.

09:50:25  4        THIS IS A PASSAGE FROM THE '941 SPECIFICATION DESCRIBING

09:50:29  5    THE BLOCK DIAGRAM WE JUST SHOWED, AND IT SAYS THAT ALL THAT

09:50:35  6    HARDWARE IS PLACED ON OR INTERCONNECTED WITH THE CIRCUIT BOARD

09:50:40  7    306.

09:50:41  8        FIGURE 11 SHOWS RIGHT WHERE THAT CIRCUIT BOARD 306 IS AND

09:50:47  9    WHERE THE CONTROL SIGNAL PROCESSOR DEVICE WOULD BE LOCATED

09:50:51  10   INSIDE THE PAY LOAD BOX 300.

09:50:54  11       AND THIS PORTION IN THE SPECIFICATION DESCRIBES WHAT GOES

09:50:58  12   IN AND WHAT GOES OUT OF THE CONTROL SIGNAL PROCESSOR.  IT

09:51:02  13   RECEIVES ELECTRICAL SIGNAL INPUT AND PROVIDES ELECTRICAL SIGNAL

09:51:06  14   OUTPUT.  AND A DIFFERENT PART OF THE SPECIFICATION, DESCRIBES

09:51:09  15   WHAT THOSE INPUTS AND OUTPUTS DO.

09:51:12  16       HERE, YOUR HONOR, WE HAVE A DIFFERENT QUOTE FROM THE

09:51:18  17   SPECIFICATION, AND IT SAYS, REFERRING TO ITEM 370, WHICH IS A

09:51:28  18   VALVE ACTUATOR WIRE ATTACHED TO THE GAS VENT, AND THE

09:51:33  19   PROCESSOR.  AND YOU CAN SEE IN ASSOCIATED FIGURE 14, OVER BY

09:51:37  20   THE GREEN GAS VENT, WHICH IS LABELED 488, THERE'S ALSO AN

09:51:42  21   ACTUATOR WIRE, 370, WHICH IS WHAT CONNECTS THE CONTROL SIGNAL

09:51:47  22   PROCESSOR TO THE GAS VENT.

09:51:48  23       AND THIS PORTION IN THE SPECIFICATION DESCRIBES THAT WHEN

09:51:52  24   ELECTRICITY IS PASSED THROUGH THE ACTUATOR WIRE, WHICH IS MADE

09:51:57  25   OUT OF NICKEL TITANIUM, IT SHRINKS, SO THAT IT OPENS THE GAS

| | | |
|---|---|---|
| 09:52:02 | 1 | VALVE.  AND SOMETHING SIMILAR HAPPENS WITH THE BALLAST DROP. |
| 09:52:07 | 2 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 09:52:07 | 3 | A HARDSHIP TODAY. |
| 09:52:07 | 4 | MR. VAN NEST:  HE IS RECOVERING THOUGH. |
| 09:52:27 | 5 | THE COURT:  I HOPE IT WAS A GREAT SPORTING INJURY. |
| 09:52:31 | 6 | MR. HENRY:  VOLLEYBALL.  SO NOT QUITE WORTH THE |
| 09:52:33 | 7 | INJURY, I DON'T THINK. |
| 09:52:36 | 8 | THE COURT:  WHEN YOU TRIP OVER THE TRASH CAN IN YOUR |
| 09:52:38 | 9 | OFFICE, IT'S NOT A GOOD STORY. |
| 09:52:40 | 10 | MR. HENRY:  IT'S NOT.  SHAYNE HENRY ON BEHALF OF THE |
| 09:52:45 | 11 | DEFENDANTS. |
| 09:52:46 | 12 | TO REORIENT THE COURT, WE ARE LOOKING AT CLAIM 7 OF THE |
| 09:52:51 | 13 | '941 PATENT.  AND THE TERM THAT THE PARTIES ARE ASKING |
| 09:52:54 | 14 | YOUR HONOR TO CONSTRUE IS "CONTROL SIGNAL PROCESSOR DEVICE." |
| 09:52:59 | 15 | SO THERE ARE REALLY TWO QUESTIONS BEFORE YOUR HONOR.  THE |
| 09:53:02 | 16 | FIRST QUESTION IS WHETHER THIS CLAIM DESERVES A MEANS PLUS |
| 09:53:06 | 17 | FUNCTION TREATMENT, DESPITE THE ABSENCE OF THE WORD "MEANS" IN |
| 09:53:10 | 18 | THE CLAIM TERM. |
| 09:53:11 | 19 | AND THE SECOND IS IF MEANS PLUS FUNCTION TREATMENT IS |
| 09:53:14 | 20 | WARRANTED, WHETHER THE CLAIM CONNOTES SUFFICIENTLY DEFINITE |
| 09:53:19 | 21 | CORRESPONDING STRUCTURE. |
| 09:53:20 | 22 | AS TO THE FIRST QUESTION, YOUR HONOR, WHETHER A MEANS PLUS |
| 09:53:23 | 23 | FUNCTION TREATMENT IS WARRANTED, GRANTED THE WORD "MEANS" IS |
| 09:53:27 | 24 | NOT CONTAINED IN THE CLAIM TERM AND GOOGLE CERTAINLY DOESN'T |
| 09:53:31 | 25 | CONTEND THAT IT IS, HOWEVER, AS YOUR HONOR KNOWS, THAT'S NOT |

| | | |
|---|---|---|
| 09:53:34 | 1 | DISPOSITIVE.  AND SPACE DATA, IN ITS BRIEFING, AND A BIT UP |
| 09:53:38 | 2 | HERE TODAY, HAS TRIED TO ARGUE THAT THE PRESUMPTION AGAINST |
| 09:53:41 | 3 | MEANS PLUS FUNCTION TREATMENT AND THE ABSENCE OF THE WORD |
| 09:53:45 | 4 | "MEANS" IS A HIGH BAR. |
| 09:53:46 | 5 | AND, IN FACT, THE FEDERAL CIRCUIT IN WILLIAMSON, AND THEN |
| 09:53:49 | 6 | AGAIN AFFIRMED MORE RECENTLY IN ZERO CLICK, EXPLICITLY LESSONED |
| 09:53:53 | 7 | THE STRENGTH OF THE BURDEN AGAINST MEANS PLUS FUNCTION |
| 09:53:57 | 8 | TREATMENT WHEN THE WORD "MEANS" IS ABSENT FROM THE CLAIM |
| 09:54:00 | 9 | LANGUAGE. |
| 09:54:00 | 10 | AND INSTEAD, A PARTY CAN DEMONSTRATE SIMPLY BY A |
| 09:54:06 | 11 | PREPONDERANCE OF THE EVIDENCE, THAT MEANS PLUS FUNCTION |
| 09:54:08 | 12 | TREATMENT IS WARRANTED.  AND ONE CLASSIC WAY TO DO THIS IS BY |
| 09:54:12 | 13 | SHOWING THAT THE CLAIM LANGUAGE USES WHAT ARE CALLED NONCE |
| 09:54:17 | 14 | WORDS, A PLACEHOLDER FOR THE WORD "MEANS." |
| 09:54:20 | 15 | AND THE INSTRUCTIVE CASE HERE IS THE WILLIAMSON CASE FROM |
| 09:54:23 | 16 | THE FEDERAL CIRCUIT WHERE THE COURT EXPLAINED "GENERIC TERMS |
| 09:54:26 | 17 | SUCH AS 'DEVICE' AND OTHER NONCE WORDS THAT REFLECT NOTHING |
| 09:54:31 | 18 | MORE THAN VERBAL CONSTRUCTS, MAY BE USED IN A CLAIM IN A MANNER |
| 09:54:34 | 19 | THAT IS TANTAMOUNT TO USING THE WORD 'MEANS' BECAUSE THEY |
| 09:54:37 | 20 | TYPICALLY DO NOT CONNOTE 'SUFFICIENTLY DEFINITE STRUCTURE' AND |
| 09:54:40 | 21 | THEREFORE MAY INVOKE SECTION 112, PARAGRAPH 6." |
| 09:54:43 | 22 | AND THAT IS EXACTLY WHAT IS HAPPENING HERE.  THE CLAIM |
| 09:54:47 | 23 | USES THE WORD "PROCESSOR DEVICE."  AND AGAIN, WILLIAMSON SAID |
| 09:54:51 | 24 | THAT "DEVICE" IS JUST SUCH A GENERIC TERM, A NONCE WORD THAT IS |
| 09:54:56 | 25 | A PLACEHOLDER, AND TANTAMOUNT TO USING THE WORD "MEANS." |

09:54:59  1          AND SO THAT'S PRECISELY --

09:55:01  2                THE COURT:  BUT YOU REJECT THE WORD "PROCESSOR,"

09:55:05  3     WHICH IS WHAT MR. HOSIE FOCUSED ON, NOT THE WORD -- I'M SORRY,

09:55:10  4     IT WAS NOT MR. HOSIE -- AS OPPOSED TO "PROCESSOR."

09:55:12  5                MR. HENRY:  WELL, WE CAN'T RE-OUT THE WORD "DEVICE,"

09:55:16  6     "DEVICE" IS IN THERE FOR A REASON.

09:55:17  7                THE COURT:  IT'S A DEFINED DEVICE, IT'S A PROCESSOR

09:55:20  8     DEVICE AS OPPOSED TO JUST A DEVICE.  "DEVICE" IS NO MORE CLEAR

09:55:24  9     THAN "THING."  I WOULD AGREE WITH YOU.  IT TRULY IS A NONCE

09:55:27  10    WORD.

09:55:28  11         BUT THAT'S NOT WHAT THIS PATENT HAS.  THIS PATENT SHOWS A

09:55:31  12    PROCESSOR DEVICE.

09:55:32  13               MR. HENRY:  IT SHOWS A PROCESSOR DEVICE.

09:55:34  14               THE COURT:  AND SO, IN FACT, THE WORD "DEVICE"

09:55:36  15    DOESN'T EVEN NEED -- IT'S SUPERFLUOUS.

09:55:41  16               MR. HENRY:  SO IF WE FOCUS ON THE WORD "PROCESSOR,"

09:55:43  17    IF YOU WILL TURN ONE MORE SLIDE, THAT IS WHAT SPACE DATA AND

09:55:47  18    ITS EXPERT POINT TO, THE GENERAL PURPOSE PROCESSOR THAT IS

09:55:51  19    LOCATED IN FIGURE 14 OF THE PATENT, WHICH REALLY IS JUST A

09:55:55  20    BLACK BOX PROCESSOR.

09:55:57  21         AND COUNSEL, TODAY, SAID THAT THERE ARE NUMEROUS CASES

09:56:01  22    WHERE A GENERAL PURPOSE PROCESSOR WAS DEEMED SUFFICIENT, THAT

09:56:05  23    IT CONNECTED STRUCTURE, AND THEY CITE TO CASES.  BUT THE CASES

09:56:09  24    THEY CITE TO, FOR EXAMPLE, THE FINJAN CASE HERE IN THE NORTHERN

09:56:14  25    DISTRICT, WHAT WAS DISPOSITIVE IS THAT THE PATENT EXPLAINED THE

09:56:18   1    INTERACTION BETWEEN THE PROCESSOR AND THE INPUTS AND OUTPUTS.

09:56:23   2         OPPOSING COUNSEL MADE NO MENTION OF THE INTERACTION

09:56:26   3    BETWEEN THE INPUTS AND THE OUTPUTS AND THE PROCESSOR, THAT'S

09:56:29   4    BECAUSE THE SPECIFICATION DOESN'T PROVIDE THAT INTERACTION.

09:56:31   5         AND IN FACT, WILLIAMSON EXPLAINED THIS EXPLICITLY SAYING

09:56:37   6    THAT THE FACT THAT PORTIONS OF THE CLAIM DESCRIBE INPUTS AND

09:56:40   7    OUTPUTS AT A VERY HIGH LEVEL, DOES NOT DESCRIBE HOW THE TERM

09:56:44   8    INTERACTS WITH OTHER COMPONENTS IN A WAY THAT MIGHT INFORM THE

09:56:47   9    STRUCTURAL CHARACTER OF THE LIMITATION IN QUESTION OR OTHERWISE

09:56:49   10   IMPART STRUCTURE TO THE TERM AS RECITED IN THE CLAIM.

09:56:52   11        SO IT'S NOT ENOUGH SIMPLY TO POINT TO INPUTS AND OUTPUTS

09:56:56   12   THAT CONNECT TO AND FOLLOW FROM THE PROCESSOR.  IN FACT, TO THE

09:57:00   13   SPECIFICATION, OR MORE SPECIFICALLY IN FINJAN, THE CLAIM ITSELF

09:57:04   14   MUST EXPLAIN THE INTERACTION BETWEEN THE INPUTS, OUTPUTS, AND

09:57:07   15   THE PROCESSOR ITSELF; OTHERWISE, THE PROCESSOR IS SIMPLY A

09:57:10   16   BLACK BOX.  AND NUMEROUS CASES HAVE FOUND WHERE THAT'S THE

09:57:14   17   CASE, THE PROCESSOR IS --

09:57:15   18        THE COURT:  BUT HOW IS THIS DIFFERENT THAN THE

09:57:16   19   PROBLEM THAT JUDGE TIGERT RAN INTO, AT LEAST IN THE VIEW OF THE

09:57:21   20   FEDERAL CIRCUIT IN THE ZERO CLICK CASE?

09:57:23   21        I MEAN, IT WAS A PRETTY RESOUNDING REVERSAL, I'M SORRY TO

09:57:27   22   SAY, AND REALLY WAS INSISTENT THAT THERE HAS TO BE EVIDENCE OF

09:57:38   23   EVIDENTIARY FINDINGS MADE ON THESE POINTS.

09:57:40   24        AND I'M NOT REALLY SEEING IT IN YOUR RECITAL HERE.

09:57:45   25        MR. HENRY:  SO IN ZERO CLICK, THAT CASE IS QUITE

09:57:49  1        DISTINGUISHABLE.  SO THERE, THE TERMS THAT WERE UP FOR

09:57:52  2    CONSTRUCTION INCLUDED A "GRAPHIC USER INTERFACE" AND "CODE."

09:57:59  3        AND THERE, THE COURT LOOKED AT THE SPECIFICATION AND SAW

09:58:01  4    THAT THE CODE IN THE PROGRAMS THAT WERE AT ISSUE, WERE CLEARLY

09:58:06  5    DISCLOSED IN THE SPECIFICATION, AND IN FACT IN THE PRIOR ART.

09:58:10  6    IT WAS THE CODE AND THE PROGRAM THAT THE PATENT'S INVENTION

09:58:14  7    UPGRADED TO ALLOW FOR TOUCH CONTROL RATHER THAN MOUSE CLICK

09:58:17  8    CONTROL.

09:58:18  9        SO THERE'S REALLY NO QUESTION ABOUT WHAT THE PROGRAM AND

09:58:22  10   CODE WAS IN THAT CASE.

09:58:24  11       HERE, THE SPECIFICATION DOESN'T TELL US WHAT THE PROCESSOR

09:58:26  12   DOES, HOW IT INTERACTS WITH THE OUTPUTS AND THE INPUTS.  AND

09:58:30  13   THEN OF COURSE ANOTHER DISTINCTION BETWEEN ZERO CLICK AND THIS

09:58:33  14   CASE IS THAT ZERO CLICK DIDN'T ADDRESS THE USE OF NONCE WORDS

09:58:37  15   SUCH AS "PROCESSOR DEVICES" IN THIS CASE.

09:58:39  16       SO ONCE YOU'VE ADDRESSED WHETHER THE MEANS PLUS FUNCTION

09:58:46  17   TREATMENT APPLIES, WHICH WE WOULD ENCOURAGE YOUR HONOR TO FIND

09:58:50  18   IN THE AFFIRMATIVE.  THE SECOND QUESTION IS WHETHER THE CLAIM

09:58:54  19   LACKS A CORRESPONDING SUFFICIENT DEFINITE STRUCTURE IN THE

09:58:57  20   SPECIFICATION.

09:58:58  21       AND AGAIN, YOUR HONOR SHOULD ANSWER IN THE AFFIRMATIVE

09:59:02  22   BECAUSE A PERSON OF ORDINARY SKILL IN THE ART WOULD NOT BE ABLE

09:59:04  23   TO FIGURE OUT HOW THE STRUCTURE OF THE CONTROL SIGNAL PROCESSOR

09:59:08  24   DEVICE OPERATES BASED ON THE SPECIFICATION LANGUAGE IN THE '941

09:59:13  25   PATENT.

09:59:13    1       AGAIN, SPACE DATA POINTS TO THIS BLACK BOX PROCESSOR.  AND

09:59:20    2   THERE'S A CASE QUITE ON POINT HERE WHICH IS THE <u>NOAH SYSTEMS</u>

09:59:24    3   CASE WHERE THE FEDERAL CIRCUIT EXPLAINED IN CASES SUCH AS THIS

09:59:30    4   ONE INVOLVING A SPECIAL PURPOSE COMPUTER IMPLEMENTED MEANS PLUS

09:59:34    5   FUNCTION LIMITATION, THE FEDERAL CIRCUIT HAS CONSISTENTLY

09:59:36    6   REQUIRED THAT THE STRUCTURE DISCLOSED IN THE SPECIFICATION BE

09:59:39    7   MORE THAN SIMPLY A GENERAL PURPOSE COMPUTER OR MICROPROCESSOR.

09:59:44    8       AND THE REASON WHY WE KNOW MORE THAN JUST A GENERAL

09:59:49    9   PURPOSE MICROPROCESSOR IS NECESSARY HERE IS BECAUSE OF THE

09:59:51   10   TESTIMONY OF SPACE DATA'S OWN EXPERT, DR. PULLEN.

09:59:53   11       DR. PULLEN EXPLAINED, AND HERE'S THE RELEVANT TESTIMONY ON

09:59:56   12   THE SCREEN.  IF YOU WILL GO BACK ONE SLIDE.  DR. PULLEN IS

10:00:05   13   ASKED, "CAN YOU DESCRIBE FOR ME WHAT THE STRUCTURE OF A CONTROL

10:00:07   14   SIGNAL PROCESSOR DEVICE WOULD BE?"

10:00:09   15       "ANSWER:  ONE WAY TO ANSWER IS TO LOOK AT THE EXAMPLE

10:00:11   16    IN FIGURE 14 OF THE SPECIFICATION."

10:00:14   17       AND THE NEXT SLIDE.

10:00:16   18       "QUESTION:  HOW DOES THE CONTROL SIGNAL PROCESSOR

10:00:17   19   DEVICE DETERMINE HOW MUCH BALLAST TO RELEASE IN THIS PARTICULAR

10:00:21   20   SITUATION?

10:00:22   21       "ANSWER:  THERE ARE MANY DIFFERENT WAYS TO DO IT.  IT

10:00:24   22   USES A SIMPLE CALCULATION PROCEDURE.

10:00:26   23       "QUESTION:  WHAT IS THE SIMPLE CALCULATION PROCEDURE

10:00:29   24    IT USES?

10:00:30   25       "ANSWER:  WE CALL IT A CONTROL LAW."

10:00:34 1    "QUESTION:  IS THE CONTROL LAW, IS THAT AN ALGORITHM?

10:00:36 2    IS IT A PROCESS?  I -- I JUST DON'T -- I HAVEN'T HEARD OF IT.

10:00:40 3    "ANSWER:  IT'S A SMALL ELEMENT OF SOFTWARE.  IT

10:00:43 4    DEPENDS ON EXACTLY WHAT IT IS."

10:00:45 5    AND I THINK THIS DOES ILLUSTRATE THE POINT, IT DOES DEPEND

10:00:49 6    ON EXACTLY WHAT IT IS.  DR. PULLEN SAYS IT'S A CALCULATION, HE

10:00:51 7    CALLS IT A CONTROL LAW.  HE SAYS IT'S AN ELEMENT OF SOFTWARE.

10:00:54 8    NONE OF THAT IS DISCLOSED IN THE SPECIFICATION.  WE DON'T

10:00:57 9    SEE A CONTROL LAW, WE DON'T SEE A CALCULATION, WE DON'T SEE ANY

10:01:00 10   MENTION OF SOFTWARE ELEMENTS.  SO IT REALLY IS TRULY JUST A

10:01:04 11   BLACK BOX, GENERAL PURPOSE PROCESSOR.

10:01:06 12   AND AS I JUST EXPLAINED TO YOUR HONOR, IN THAT SITUATION,

10:01:08 13   THE COURTS HAVE SIMPLY FOUND THAT THAT'S JUST NOT ENOUGH.

10:01:11 14   THE COURT:  ALL RIGHT.

10:01:15 15   MR. MARTIN:  MAY I HAVE JUST A BRIEF REBUTTAL,

10:01:18 16   YOUR HONOR?

10:01:18 17   THE COURT:  SURE, OF COURSE.

10:01:30 18   MR. MARTIN:  I WILL LIMIT MYSELF TO JUST THREE

10:01:34 19   POINTS, MAYBE FOUR.

10:01:35 20   FIRST, YOUR HONOR, GREENBERG V. ETHICON, WHICH IS A MUCH

10:01:40 21   CITED FEDERAL CIRCUIT CASE IN THIS PARTICULAR AREA OF LAW, IN

10:01:46 22   ZERO CLICK AT LEAST TWICE, IS WELL KNOWN FOR THE PROPOSITION

10:01:51 23   THAT MANY DEVICES TAKE THEIR NAMES FROM WHAT THEY DO.

10:01:55 24   FOR EXAMPLE, SCREWDRIVER.  ANOTHER WELL-KNOWN FEDERAL

10:02:01 25   CIRCUIT CASE, THYSSENKRUPP ELEVATOR.  AND ACTUALLY, THE TERM

10:02:06   1    FOUND NOT INDEFINITE IN THAT CASE WAS "MODERNIZING DEVICE."

10:02:12   2         NOW YOUR HONOR, IF THE USER INTERFACE CODE AND THE PROGRAM

10:02:17   3    OF ZERO CLICK HAVE STRUCTURE, A PROCESSOR MOST CERTAINLY DOES.

10:02:21   4    YOU CAN BREAK OPEN YOUR PHONE AND PULL OUT A PHYSICAL THING

10:02:26   5    CALLED A PROCESSOR.  IT'S VERY SMALL, IT WILL FIT IN THE PALM

10:02:30   6    OF YOUR HAND, BUT YOU CAN CERTAINLY DO IT.

10:02:33   7         AS TO COUNSEL'S POINT THAT THIS IS ONLY A GENERAL PURPOSE

10:02:39   8    PROCESSOR, COUNSEL IS INCORRECT THERE.  MR. PULLEN'S TESTIMONY

10:02:44   9    WAS THAT YOU COULD DO THIS WITH A DIGITAL IMPLEMENTATION, OR IT

10:02:51  10    CAN BE DONE WITH AN ANALOG CONTROLLER COMPOSED OF ELECTRICAL

10:02:56  11    ELEMENTS SUCH AS TRANSISTORS, RESISTORS, CAPACITORS, DIODES,

10:02:59  12    AND SO FORTH.

10:03:00  13         YOUR HONOR, THOSE ARE STRUCTURES.  A RESISTOR, YOU BUY

10:03:03  14    SOME AT BEST BUY IF YOU WANT, THEY ARE LITTLE ELECTRONIC

10:03:07  15    ELEMENTS, AND THEY CAN BE STREWN TOGETHER TO IMPLEMENT CONTROL

10:03:12  16    SIGNALS TO OPEN THE GAS VALVE BY HAVING AN ELECTRICAL OUTPUT,

10:03:17  17    AS DESCRIBED IN THE SPECIFICATION.

10:03:26  18         AND ON THAT POINT, YOUR HONOR, THE FEDERAL CIRCUIT IN

10:03:30  19    LINEAR TECHNOLOGIES HAS HELD THAT THE WORD "CIRCUIT" IS MOST

10:03:38  20    CERTAINLY A WORD THAT CAN HAVE STRUCTURE.

10:03:43  21         AND THAT'S ALL, YOUR HONOR.

10:03:44  22           THE COURT:  OKAY.  THANK YOU.

10:03:45  23         ALL RIGHT.  AND JUST FOR CLARITY, MR. HENRY, IF I AGREE

10:03:52  24    WITH GOOGLE ON THE PREVIOUS CLAIM THAT IT'S INDEFINITE, THEN

10:04:01  25    THIS WOULD BECOME MOOT, WOULDN'T IT?

10:04:03  1        MR. HENRY:  THAT'S CORRECT, YOUR HONOR.

10:04:04  2        THE COURT:  OKAY.

10:04:07  3        MR. VAN NEST:  YOUR HONOR, THAT COMPLETES ALL OUR

10:04:10  4    DISCUSSION ON THE '941 PATENT.  SO WE ARE ABOUT TO MOVE ON TO

10:04:14  5    THE OTHER TWO.

10:04:15  6        THE COURT:  GREAT.  ALL RIGHT.

10:04:17  7        THEN WE ARE GOING TO MOVE ON TO THE NEXT TERM, WHICH IS IN

10:04:28  8    THE '193.  THAT'S "DETERMINING A DESIRED MOVEMENT OF A TARGET

10:04:34  9    BALLOON."

10:04:43  10       MR. HOSIE, CAN I JUST SHORT CIRCUIT THIS SO YOU CAN

10:04:51  11   ADDRESS IT IN YOUR DISCUSSION.  I'M NOT LEANING TOWARD THE

10:04:58  12   PROPOSAL BY GOOGLE, BUT YOUR SUGGESTION OF PLAIN AND ORDINARY,

10:05:04  13   I THINK OPENS A PANDORA'S BOX FOR US AT TRIAL.

10:05:12  14       AND YOU, IN YOUR REPLY BRIEF, BREAK DOWN THIS PHRASE TO

10:05:18  15   SHOW HOW BASIC IT IS AND HOW IT COULD BE UNDERSTOOD.  AND I'M

10:05:23  16   REALLY LOOKING FOR SOME CONSTRUCTION THAT BREAKS IT DOWN.  I'M

10:05:28  17   REALLY CONCERNED THAT WE ARE GOING TO GET TO TRIAL AND THE WORD

10:05:31  18   "MOVEMENT" IS GOING TO BECOME A BIG ISSUE, EVEN THOUGH IT

10:05:35  19   DOESN'T SEEM LIKE A TECHNICAL TERM, AND SOME OF THE OTHER

10:05:41  20   TERMINOLOGY.

10:05:42  21       SO EVEN IF I'M LEANING IN YOUR DIRECTION, I'M STILL

10:05:45  22   WANTING SOME CONSTRUCTION OF THE TERM.

10:05:51  23       MR. HOSIE:  FAIR POINT, YOUR HONOR.

10:05:52  24       AND WE DO ILLUSTRATE THAT IN OUR REPLY BRIEF.  WE BREAK IT

10:05:57  25   DOWN STEP-BY-STEP.

| | |
|---|---|
| 10:06:00 1 | I HAVE TO AGREE THAT THERE'S A LOT OF WORDS IN THIS CLAIM, |
| 10:06:03 2 | IRONICALLY ENOUGH, GOOGLE WROTE IT.  THIS WAS THE CLAIM THAT |
| 10:06:06 3 | WAS RECAPTURED VERBATIM.  AND THEY PROSECUTED IT HERE IN THIS |
| 10:06:12 4 | COUNTRY TO CONCLUSION -- |
| 10:06:14 5 | THE COURT:  AND THE MERE FACT THAT IT WAS THEIR CLAIM |
| 10:06:16 6 | TERM DOESN'T MEAN THEY CAN'T TEAR IT APART. |
| 10:06:19 7 | MR. HOSIE:  AGREED, BUT I THINK IT IS, NONETHELESS, |
| 10:06:22 8 | RELEVANT THAT GOOGLE FOUND THE WORDS COHERENT, BECAUSE IT USED |
| 10:06:28 9 | THEM NOT ONCE, BUT DOZENS OF TIMES TO SECURE THE PATENTS. |
| 10:06:32 10 | BUT, YOU KNOW, IT'S A LOT OF WORDS. |
| 10:06:34 11 | THE COURT:  IT'S A LOT OF WORDS. |
| 10:06:35 12 | MR. HOSIE:  IT'S A LOT OF WORDS, AND "DESIRING A |
| 10:06:38 13 | DETERMINED MOVEMENT OF THE TARGET BALLOON."  THE TARGET BALLOON |
| 10:06:40 14 | IS THE BALLOON YOU WANT TO MOVE, BASED ON WHERE YOU WANT TO |
| 10:06:44 15 | MOVE IT. |
| 10:06:45 16 | THE COURT:  I GUESS "MOVEMENT" IS REALLY, IT SEEMED |
| 10:06:48 17 | TO BE THE WORD THAT WAS IN MOST CONTENTION HERE IN COMING UP |
| 10:06:51 18 | WITH A CONSTRUCTION. |
| 10:06:52 19 | THAT'S REALLY MY -- THE OTHER TERMS DIDN'T -- WORDS.  YOU |
| 10:06:57 20 | KNOW, WHEN YOU BREAK IT DOWN WORD-BY-WORD, IT LOOKS PRETTY |
| 10:07:00 21 | SIMPLE.  WHEN YOU TRY TO PUT IT TOGETHER AND UNDERSTAND WHAT |
| 10:07:02 22 | THE CONCEPT IS, IT GETS COMPLICATED. |
| 10:07:05 23 | MR. HOSIE:  AGREED, YOUR HONOR. |
| 10:07:06 24 | THE COURT:  THAT'S MY POINT. |
| 10:07:08 25 | MR. HOSIE:  "MOVEMENT," IT'S HARD TO SEE HOW ONE |

10:07:11  1    WOULD PHRASE THIS WITHOUT THE WORD "MOVEMENT" BECAUSE THE WHOLE

10:07:14  2    POINT --

10:07:14  3              THE COURT:  IS "MOVEMENT" THE -- YOU TALK ABOUT, I

10:07:17  4    BELIEVE THIS IS THE TERM WHERE YOU TALK ABOUT OTHER TERMS --

10:07:24  5    LET'S GET MY NOTES OUT HERE -- THAT GOOGLE'S CONSTRUCTION WOULD

10:07:32  6    READ OUT CLAIMS 7, 8, 9 AND POSSIBLY 13, THAT DEFINE "MOVEMENT"

10:07:39  7    AS LIMITED TO DIRECTION OF MOVEMENT, VELOCITY, DISTANCE.

10:07:46  8         I DON'T KNOW WHETHER YOU ARE SAYING THAT MOVEMENT -- I

10:07:48  9    DON'T KNOW WHAT MOVEMENT IS WHEN IT'S NOT SPECIFICALLY DEFINED.

10:07:52 10    THAT'S REALLY ONE OF MY PROBLEMS HERE.

10:07:54 11              MR. HOSIE:  WELL, BECAUSE GOOGLE IS SAYING LOOK,

10:07:58 12    THERE'S ONLY ONE SPECIES OF MOVEMENT PERMITTED IN THIS CLAIM.

10:08:02 13    AND THAT'S CLEARLY NOT RIGHT, THEY ARE REPORTING A WHOLE SERIES

10:08:05 14    OF LIMITATIONS.

10:08:06 15              THE COURT:  SO YOU ARE SAYING IT INCORPORATES ALL

10:08:08 16    KINDS OF MOVEMENT.

10:08:09 17              MR. HOSIE:  ABSOLUTELY.

10:08:10 18         FOR EXAMPLE, THEY ARE SAYING YOU'VE GOT TO MOVE A BALLOON

10:08:13 19    FROM TOPEKA, KANSAS TO ST. LOUIS, MISSOURI, BUT THE DESIRED

10:08:18 20    MOVEMENT MIGHT BE TO MOVE IT INTO A WIND DIRECTION AND LET IT

10:08:21 21    HEAD NORTH FOR SOME UNSPECIFIC PERIOD, AND THEN YOU MAKE A

10:08:25 22    DECISION LATER.

10:08:25 23         THIS CLAIM LANGUAGE ACCOMMODATES THAT KIND OF MOVEMENT.

10:08:30 24    BUT PUT SIMPLY, THAT'S SIMPLY A LOT OF WORDS TO DESCRIBE THE

10:08:34 25    NOTION IF YOU FIGURE OUT WHICH BALLOON YOU WANT TO PUT

10:08:37  1    SOMEWHERE ELSE, AND THEN YOU START IT ON ITS PATH TO SOMEWHERE

10:08:42  2    ELSE.  AND THE "SOMEWHERE ELSE" DOESN'T HAVE TO BE A SPECIFIC

10:08:45  3    LOCATION, IT CAN BE A GRADIENT, IT CAN BE INTO A WIND PATTERN,

10:08:51  4    IT CAN BE A DIRECTION.

10:08:53  5         BUT SIMPLY PUT, THERE'S A BALLOON, THEY CALL IT THE TARGET

10:08:58  6    BALLOON, I THINK WE CAN USE BETTER LANGUAGE THAN "TARGET

10:09:01  7    BALLOON," ISOLATE THE BALLOON YOU WANT TO MOVE, AND THEN TELL

10:09:08  8    IT TO GO SOMEWHERE ELSE.

10:09:09  9         THE COURT:  SO I GUESS WHAT THREW ME OFF HERE WAS, IN

10:09:12  10   YOUR REPLY BRIEF AT PAGE 10, YOU TALK ABOUT ONE DETERMINES HOW

10:09:19  11   THE TARGET BALLOON SHOULD BE MOVED ACCORDINGLY; IN SHORT, WHERE

10:09:23  12   IS THE BALLOON TO BE MOVED, WHERE SHOULD IT BE MOVED TO, THEN

10:09:27  13   MOVE IT ACCORDINGLY.

10:09:31  14        SO I WAS A LITTLE CONFUSED AS TO WHETHER YOU WERE DEFINING

10:09:34  15   "MOVEMENT" AS TANTAMOUNT TO "LOCATION" WHICH I THINK IS NOT

10:09:38  16   WHAT YOU'RE -- SO I GOT CONFUSED THERE.

10:09:42  17        MR. HOSIE:  NO, YOUR HONOR, WE ARE NOT AGREEING THAT

10:09:46  18   MOVEMENT IS TANTAMOUNT TO LOCATION.  THAT'S GOOGLE'S WHOLE

10:09:50  19   POINT.  YOU'VE GOT TO GO FROM TOPEKA TO ST. LOUIS.  BUT NO, YOU

10:09:56  20   COULD MOVE IT IN A DIRECTION.  GO NORTH, GO WEST.

10:10:00  21        THE COURT:  SO MOVEMENT IS THE PROCESS OF MOVING.

10:10:02  22        MR. HOSIE:  YES.

10:10:02  23        THE COURT:  WITHOUT CONSIDERATION OF LOCATION.

10:10:05  24        MR. HOSIE:  WITHOUT BEING RESTRICTED TO GOING TO A

10:10:08  25   SPECIFIC LOCATION.

| | |
|---|---|
| 10:10:10 | 1 |

THE COURT:  OKAY.

MR. HOSIE:  IT'S THE PROCESS OF MOVING.  AND IT'S NOT MOVING TO A SPECIFIC LOCATION, IT'S NOT EVEN LIMITED TO A SPECIFIC REASON, E.G., THEIR LIMITATION TO MAINTAIN A DESIRED NETWORK TOPOLOGY.

YOU COULD MOVE A BALLOON BECAUSE IT WAS ABOUT TO GO INTO THE DMZ AND SPARK A NUCLEAR WAR WITH NORTH KOREA.  THAT HAS NOTHING TO DO WITH THE NETWORK TOPOLOGY, BUT YOU COULD MOVE THAT BALLOON FOR THAT REASON, AND THAT WOULD BE COVERED BY THIS CLAIM, ABSENT THE LIMITATIONS THAT GOOGLE ROBUSTLY IMPORTS INTO THIS CLAIM.

BUT IT REALLY IS -- AND WE WRESTLED WITH THIS, YOUR HONOR, IT'S ALWAYS A LITTLE RISKY TO GO WITH THE PLAIN LANGUAGE, ESPECIALLY WHEN THERE ARE THIS MANY WORDS IN THE PLAIN CLAIM.  BUT IT'S, LOOK AT WHICH BALLOON YOU WANT TO MOVE AND THEN SENDING IT ON ITS WAY.

THE COURT:  WELL, I AM GOING TO ASK YOU TO DO SOMETHING, BECAUSE YOU'VE BEEN IN TRIALS LIKE THIS, AND I'VE BEEN IN TRIALS LIKE THIS WHERE ALL OF THE SUDDEN THE JURY IS SITTING THERE, THERE'S A SIDEBAR BECAUSE THERE'S AN OBJECTION THAT THE EXPERT IS GIVING -- IS READING MEANING INTO A WORD LIKE "MOVEMENT," THAT IT IS A PLAIN AND ORDINARY MEANING, AND IT'S NEVER BEEN CONSTRUED.  AND ALL OF THE SUDDEN AT SIDEBAR, I'M DOING CLAIMS CONSTRUCTION.

I'M NOT GOOD AT DOING IT THAT WAY.  SO I WOULD LIKE IT

10:11:29  1    NAILED DOWN HERE.  AND I WOULD LIKE YOU TO -- I NEED A PROPOSAL

10:11:33  2    FROM YOU.  NOT NOW, ON THE FLY, OF COURSE.

10:11:36  3         MR. HOSIE:  OKAY.  WELL, WE WOULD BE HAPPY TO DO

10:11:39  4    THAT, AND PERHAPS WITH GUIDANCE FROM THE COURT, WE CAN GET

10:11:42  5    TOGETHER WITH GOOGLE AND STIPULATE TO SOMETHING THAT DOESN'T

10:11:44  6    IMPORT ALL OF THESE LIMITATIONS.

10:11:47  7         THE COURT:  STIPULATIONS ARE ALWAYS WELCOME.

10:11:50  8         MR. HOSIE:  I THINK I HAVE I ADDRESSED YOUR HONOR.

10:11:52  9         THE COURT:  YOU HAVE.

10:11:53  10   SO NOW I WILL LET YOU GO AHEAD WITH YOUR PRESENTATION.

10:11:57  11        MR. HOSIE:  I THINK YOU'VE PRETTY MUCH COVERED IT.

10:11:59  12   SHORT STORY, THEY ARE IMPORTING A BUNCH OF LIMITATIONS,

10:12:03  13   THE LIMITATIONS AREN'T SUPPORTED BY THE SPECIFICATION.  THEY

10:12:05  14   HAVE A PURPOSED LIMITATION TO A NETWORK TOPOLOGY.  THEY SAY

10:12:08  15   THERE'S ONLY ONE KIND OF MOVEMENT POSSIBLE AND PERMITTED, WHICH

10:12:11  16   IS TO GO FROM ONE SPECIFIC LOCATION TO ANOTHER SPECIFIC

10:12:14  17   LOCATION.  AND SO THEY ARE READING IN THREE OR FOUR LIMITATIONS

10:12:19  18   INTO THE CLAIM WHERE THAT'S NOT SUPPORTED IN THE PROSECUTION

10:12:23  19   HISTORY OR THE SPECIFICATION WHATSOEVER.  AND THAT'S, OF

10:12:26  20   COURSE, PER SE, IMPROPER.

10:12:28  21        THE COURT:  THANK YOU.

10:12:28  22        MR. HOSIE:  THANK YOU.

10:12:34  23        THE COURT:  MR. KAMBER.

10:12:39  24        MR. KAMBER:  GOOD MORNING, YOUR HONOR.

10:12:43  25   MATTHIAS KAMBER ON BEHALF OF DEFENDANTS.

10:12:45   1          THE COURT:  GOOD MORNING.

10:12:45   2          MR. KAMBER:  I THINK WE HAVE A DIFFERENT PROPOSAL.  I

10:12:48   3   WANT TO PUT IT UP ON THE SCREEN SO THAT HOPEFULLY WILL SIMPLIFY

10:12:51   4   IT IN JUST A MOMENT.  BUT I WANT TO JUST LOOK AT THE CLAIM

10:12:54   5   LANGUAGE TO PROVIDE THE CONTEXT IN WHAT WE ARE REALLY TALKING

10:12:58   6   ABOUT HERE.

10:13:00   7          THE ISSUE HERE, OF COURSE, IS THIS THIRD ELEMENT,

10:13:03   8   "DETERMINING A DESIRED MOVEMENT."  THE FIRST ELEMENT IS TO

10:13:07   9   DETERMINE A BALLOON'S LOCATION.  THE SECOND ONE IS YOU LOOK AT

10:13:10  10   THE NEIGHBORING BALLOONS AND FIGURE OUT WHERE THEY ARE RELATIVE

10:13:13  11   TO THAT BALLOON, AND THEN DETERMINE WHERE TO POSITION THE

10:13:18  12   BALLOON, YOUR TARGET BALLOON, WHICH IS A BIT OF A CONFUSING

10:13:22  13   TERM.

10:13:22  14          SO WE HAVE AN ILLUSTRATION OF THIS PRINCIPLE ON THE NEXT

10:13:29  15   SLIDE.  IMAGINE YOU HAVE THIS FORMATION OF BALLOONS, THEY ARE

10:13:32  16   ALL EQUALLY SPACED APART IN THIS PARTICULAR EXAMPLE.  AND THE

10:13:37  17   BALLOON IN THE CENTER, BALLOON A, IS WHAT YOU MIGHT CALL THE

10:13:41  18   TARGET BALLOON.  AND IT COULD GET BLOWN OFF POSITION, AS WE

10:13:47  19   SHOW HERE ON THE SCREEN.

10:13:50  20          AND THE TECHNIQUE THAT'S CLAIMED IN THIS PATENT CLAIM IS

10:13:53  21   TO DEAL WITH THAT SITUATION, HOW DO YOU MOVE THE BALLOON BACK

10:13:56  22   TO THE POSITION WHERE YOU WANT IT, RIGHT.

10:14:00  23          AND WE SEE THAT AGAIN, FIND THAT TARGET BALLOON, YOU LOOK

10:14:03  24   AT THE NEIGHBORING BALLOONS' LOCATIONS AND THEN YOU DETERMINE

10:14:07  25   THE DESIRED MOVEMENT BASED ON THE RELATIVE DETERMINED LOCATIONS

10:14:12   1        OF THOSE OTHER BALLOONS.

10:14:13   2             THE DESIRED MOVEMENT, ULTIMATELY, IS TO PUT THAT BALLOON

10:14:17   3        BACK IN THE SPOT WHERE IT SHOULD BE, WHERE YOU WANT IT TO BE.

10:14:22   4             SO TO GO TO THE CONSTRUCTIONS, WE HAD THIS CONSTRUCTION

10:14:28   5        ORIGINALLY, AND I WOULD LIKE TO MOVE TO THE NEXT SLIDE, TO SHOW

10:14:31   6        YOU, I THINK IN THE PROCESS OF PREPARING FOR THE ARGUMENT, WE,

10:14:36   7        I THINK HAVE REFINED THIS A LITTLE BIT.

10:14:39   8             THIS IS A RED LINE HERE OF OUR PROPOSED ORIGINAL PROPOSAL.

10:14:48   9        AND WE'VE CHANGED THE LANGUAGE.  I THINK IT'S, FRANKLY, EASIER

10:14:51  10        TO LOOK AT IT ON THE NEXT SLIDE YOUR HONOR, AND YOU WILL SEE

10:14:53  11        WHY.  THIS IS TRYING TO SIMPLIFY THIS SO THAT A JURY CAN

10:14:56  12        UNDERSTAND IT.

10:14:58  13             DETERMINING WHERE TO POSITION A PARTICULAR BALLOON AS A

10:15:01  14        FUNCTION OF ITS LOCATION, RELATIVE TO ONE OR MORE NEIGHBORING

10:15:04  15        BALLOONS TO MAINTAIN A DESIRED NETWORK TOPOLOGY.

10:15:10  16             THE COURT:  SO YOU STILL INCLUDE THE THREE

10:15:11  17         LIMITATIONS THAT MR. HOSIE TAKES ISSUE WITH, DON'T YOU?

10:15:16  18             MR. KAMBER:  WE DO, AND I'M GOING TO GO THROUGH EACH

10:15:19  19         AND EVERY ONE OF THOSE THAT THEY ADDRESSED IN THEIR REPLY BRIEF

10:15:22  20         AND TALK ABOUT WHAT THE BASIS IS FOR INCLUDING THINGS.

10:15:26  21             NOW, WHERE TO POSITION, THAT IS ONE OF THE ISSUES THAT

10:15:32  22        THEY HAVE.  AND AS YOU JUST POINTED OUT, THEIR OWN REPLY BRIEF

10:15:38  23        ON PAGE 10 TALKS ABOUT MOVEMENT, WHERE SHOULD IT BE MOVED TO,

10:15:42  24        WHERE IS THE BALLOON, WHERE SHOULD IT BE MOVED TO.

10:15:45  25             THAT'S A QUESTION ABOUT POSITION.  AND THIS IS IN THE '678

10:15:50  1    PATENT FROM WHICH THESE CLAIMS ORIGINALLY ISSUED THAT BOTH

10:15:55  2    PARTIES ARE LOOKING AT AS --

10:15:56  3            THE COURT:  SHOULD I BE LOOKING AT THE '678?

10:15:59  4            MR. KAMBER:  I THINK --

10:16:00  5            THE COURT:  IT'S NOT ACTUALLY INCORPORATED BY

10:16:03  6    REFERENCE, IS IT?

10:16:03  7            MR. KAMBER:  IT IS NOT INCORPORATED BY REFERENCE.  IT

10:16:06  8    IS PART OF THE PROSECUTION HISTORY BECAUSE OF THE INTERFERENCE.

10:16:10  9            THE COURT:  RIGHT.  IT WAS UNCLEAR TO ME ON HOW MUCH

10:16:13  10   I WOULD RELY ON IT.  WHEN IT'S INCORPORATED BY REFERENCE I KNOW

10:16:16  11   WHAT TO DO.  WHEN IT'S PART OF INTERFERENCE, NOT ALL OF THE

10:16:20  12   CLAIMS WERE TRANSFERRED TO SPACE DATA.

10:16:22  13           MR. KAMBER:  THAT'S CORRECT.

10:16:22  14           THE COURT:  SO IT BECOMES, I GUESS, ABOUT SLICING AND

10:16:26  15   DIEING THE SPECS TO BE SURE THAT THEY RELATE TO THE CLAIMS THAT

10:16:31  16   SPACE DATA NOW HAS IN THIS PATENT.

10:16:35  17           MR. KAMBER:  THAT'S RIGHT.  AND I THINK IT'S TRUE

10:16:36  18   THAT THERE ARE DIFFERENT SPECIFICATIONS THAT COULD SUPPORT

10:16:39  19   DIFFERENT CLAIM CONSTRUCTIONS.

10:16:40  20       FOR EXAMPLE, IF THE PARTIES, ACTED AS THEIR OWN

10:16:46  21   LEXICOGRAPHERS IN DIFFERENT WAY, THAT'S AN EXAMPLE.

10:16:49  22       HERE I THINK IT'S NOT DIRECTLY IN THE SPECIFICATION OF THE

10:16:51  23   '193 PATENT, BOTH PARTIES HAVE BEEN RELYING ON IT.

10:16:55  24           THE COURT:  OKAY.

10:16:56  25           MR. KAMBER:  AS INSTRUCTIVE.

10:16:57  1          THE COURT:  SO I SHOULD LOOK AT THE '678 AS

10:17:00  2     INSTRUCTIVE AS WELL.

10:17:01  3          MR. KAMBER:  I BELIEVE SO, YOUR HONOR.

10:17:01  4          THE COURT:  AND I HAVE THAT -- SORRY, I DON'T RECALL,

10:17:04  5     DID YOU GIVE ME --

10:17:05  6          MR. KAMBER:  I THINK THE '678 PATENT IS INDEED PART

10:17:07  7     OF THE RECORD AND PRESENTED AS PERHAPS ONE OF THE EXHIBITS.

10:17:13  8          THE COURT:  YOU KNOW, I DON'T RECALL.  OBVIOUSLY, I

10:17:15  9     CAN'T MANAGE ALL OF THIS RIGHT HERE.  BUT IF YOU COULD JUST

10:17:18  10    MAKE A NOTE, AND IF IT'S NOT, YOU COULD JUST SUBMIT IT.

10:17:21  11         MR. KAMBER:  ABSOLUTELY, YOUR HONOR.

10:17:22  12       THIS IS A QUOTE FROM THE ABSTRACT OF THAT '678 PATENT.

10:17:26  13    AND IT TALKS ABOUT THE POSITIONS OF BALLOONS.  THE IDEA IS,

10:17:30  14    IT'S THE POSITIONS OF BALLOONS IN A COMMUNICATION NETWORK OF

10:17:35  15    BALLOONS, AND ADJUSTING THOSE RELATIVE TO ONE ANOTHER IN ORDER

10:17:38  16    TO MAINTAIN A DESIRED NETWORK TOPOLOGY.

10:17:41  17       I BRING THIS UP BECAUSE IT IS ABOUT POSITION.  WHERE TO

10:17:44  18    POSITION A BALLOON.  THIS DOESN'T COME FROM NOWHERE, IT'S NOT

10:17:48  19    AN IMPORTED LIMITATION.  IT'S AN EFFORT TO DEFINE SOMETHING

10:17:54  20    THAT IS A LITTLE BIT VAGUE, AS YOU NOTE, DESIRED MOVEMENT.

10:17:57  21    WHAT DOES THAT MEAN?

10:17:59  22       WELL, REALLY FUNDAMENTALLY, WE ARE TALKING ABOUT WHERE TO

10:18:01  23    POSITION A BALLOON.  AS SPACE DATA PUTS IT, WHERE SHOULD IT BE

10:18:05  24    MOVED TO?  THAT IS WHERE TO POSITION A BALLOON.

10:18:09  25       WE SEE THIS ON THE NEXT SLIDE AS WELL, THIS IS AGAIN A

10:18:12  1    QUOTE FROM THE '678 PATENT, THAT EQUATES THE DESIRED MOVEMENT

10:18:17  2    WITH WHERE TO POSITION.  IT SAYS, THE ADJUSTMENT IN THE

10:18:21  3    POSITION INVOLVES DETERMINING A DESIRED MOVEMENT.

10:18:27  4         IT'S ESSENTIALLY EQUATING THOSE IDEA, THAT IS THE DESIRED

10:18:32  5    MOVEMENT IS TO ADJUST THE POSITION TO MOVE THE BALLOON BACK TO

10:18:34  6    WHERE IT BELONGS.  THIS SHOULD ACTUALLY BE RELATIVELY

10:18:39  7    NONCONTROVERSIAL IN TERMS OF THE WAY OF EXPLAINING TO THE LAY

10:18:42  8    JURY THE DESIRED MOVEMENT.

10:18:44  9              THE COURT:  I'M A LITTLE CONCERNED ABOUT SPACE DATA'S

10:18:49  10   ARGUMENT THAT YOUR CONSTRUCTION READS OUT DEPENDENT CLAIMS 7, 8

10:18:53  11   AND 9 WHERE "MOVEMENT" APPEARS TO BE DEFINED AS "DIRECTION OF

10:18:56  12   MOVEMENT, VELOCITY OR DISTANCE OF TRAVEL."

10:19:00  13              MR. KAMBER:  RIGHT.

10:19:00  14              THE COURT:  SO YOU DIDN'T GET TO RESPOND TO THAT

10:19:02  15   BECAUSE IT WAS IN HIS REPLY, BUT WHAT'S YOUR --

10:19:05  16              MR. KAMBER:  WITH RESPECT TO THAT, DESIRED MOVEMENT,

10:19:08  17   WHERE TO POSITION IS A DIFFERENT QUESTION THAN HOW TO POSITION,

10:19:12  18   I THINK.

10:19:13  19        AND ON THOSE THINGS, WE ARE NOT SAYING THAT YOU COULDN'T

10:19:15  20   HAVE A DESIRED MOVEMENT, BUT THOSE SUBSEQUENT DEPENDENT CLAIMS

10:19:20  21   WOULDN'T BE ENCOMPASSED OR CONFLICT SOMEHOW WITH THE CLAIM

10:19:25  22   CONSTRUCTION.

10:19:26  23        WE ARE ACTUALLY AGREEING WITH SPACE DATA ON THIS POINT.

10:19:29  24   THAT IS, WHERE TO POSITION CAN BE FURTHER INFLUENCED IN TERMS

10:19:32  25   OF HOW TO POSITION.

10:19:34  1        THAT IS, IF I KNOW I WANT TO GET MY BALLOON TO A

10:19:37  2    PARTICULAR SPOT, I'M GOING TO TRY TO USE WITHSTANDS OF A

10:19:43  3    PARTICULAR SPEED AND OF A PARTICULAR DIRECTION TO GET THERE.

10:19:48  4        AND FRANKLY, YOUR HONOR, I THINK IF WE COULD GO BACK TO

10:19:50  5    THE SLIDE.

10:19:52  6            THE COURT:  WELL I GUESS, BUT LET'S JUST NOT MOVE

10:19:54  7    QUITE YET, BECAUSE I'M LOOKING AT CLAIM ONE.

10:19:57  8            MR. KAMBER:  THIS IS WHAT I WANTED TO PUT UP ON THE

10:19:59  9    SCREEN, CLAIM ONE.

10:20:02 10            THE COURT:  OH, YOU ARE DOING THAT FOR ME BECAUSE THE

10:20:05 11    PRINT IS BIGGER.

10:20:06 12        CLAIM ONE IS DETERMINING THE DESIRED MOVEMENT OF THE

10:20:09 13    TARGET BALLOON.  AND CLAIM SEVEN IS THE METHOD OF CLAIM ONE,

10:20:13 14    WHEREIN THE DESIRED MOVEMENT OF THE TARGET BALLOON COMPRISES A

10:20:18 15    DESIRED DIRECTION.  SO THAT'S A LIMITATION OF ONLY DIRECTION

10:20:22 16    BEING THE DEFINITION OF DESIRED MOVEMENT.

10:20:26 17        SO IT'S THE FORM OF MOVEMENT, NOT THE LOCATION, IS THE

10:20:28 18    SUBJECT MATTER OF THE DEPENDENT CLAIM.

10:20:34 19            MR. KAMBER:  YES.

10:20:34 20        BUT YOUR HONOR, I WOULD SUBMIT THAT THAT CLAIM LANGUAGE

10:20:38 21    RELATES TO THE LAST ELEMENT OF CLAIM ONE.

10:20:40 22        IF YOU LOOK AT IT, THE QUESTION IS, RIGHT, WHERE IS THE

10:20:46 23    BALLOON?  WHERE ARE THE OTHER BALLOONS?  WHERE DO I WANT TO

10:20:49 24    MOVE THE BALLOON, AND THEN CONTROLLING THE BALLOON BASED ON THE

10:20:55 25    DESIRED MOVEMENT OF THE TARGET BALLOON.

10:20:58   1        WHAT WE ARE TRYING TO CONSTRUE IS WHAT IS THE DESIRED

10:21:00   2   MOVEMENT?   THAT IS, WHERE DO YOU WANT IT TO GO?   AND THIS LAST

10:21:04   3   PART IS, HOW DO YOU CONTROL THAT?

10:21:06   4        WELL, IN THAT SITUATION, YOU COULD CONTROL THE DIRECTION,

10:21:09   5   YOU COULD CONTROL THE SPEED.

10:21:12   6        I WOULD SUBMIT THOSE DEPENDENT CLAIMS ARE ACTUALLY

10:21:16   7   RELATING TO THE WAY IN WHICH YOU DECIDE TO MOVE THE BALLOON,

10:21:19   8   ONCE YOU DECIDE WHERE YOU WANT TO MOVE IT TO.

10:21:21   9        THE COURT:   WELL, YOU CERTAINLY NEED TO KNOW WHAT

10:21:22  10   YOUR END GAME IS BEFORE YOU CAN HAVE YOUR METHOD OF ACHIEVING

10:21:26  11   IT.

10:21:26  12        MR. KAMBER:   THAT'S EXACTLY RIGHT.

10:21:27  13        THE COURT:   OKAY.

10:21:28  14        MR. KAMBER:   AND I THINK THAT'S THE WAY THE CLAIM IS

10:21:30  15   WRITTEN.   AND, I MEAN, THAT'S THE LOGIC OF THE CLAIM, REALLY,

10:21:33  16   ULTIMATELY.

10:21:37  17        THERE IS ANOTHER ISSUE, I THINK, THAT THEY RAISE, AND THIS

10:21:39  18   ONE IS RELATIVELY QUICK.   THEY TALK ABOUT "BASED ON," THE CLAIM

10:21:45  19   LANGUAGE USES THE TERM "BASED ON," WE USE "FUNCTION OF."

10:21:50  20        AND MR. HOSIE, HIMSELF, DISCUSSING THIS MORNING THE

10:21:55  21   DIFFERENT PATENTS, SAID, WELL, THE CONFIGURATION OF THE ARRAY

10:21:58  22   IS A FUNCTION OF THE SERVICE YOU WANT TO PROVIDE.

10:22:01  23        THAT'S THE IDEA THAT WE ARE JUST TRYING TO CAPTURE.   AND

10:22:03  24   HERE, THE SPECIFICATION, AGAIN, OF THE '678 PATENT, IS EQUATING

10:22:08  25   THIS IDEA THAT THE DESIRED MOVEMENT IS BASED ON, THAT IS, IT IS

10:22:14   1    A FUNCTION OF THE DETERMINED LOCATIONS OF THE OTHER BALLOONS.

10:22:18   2         THIS IS COMING STRAIGHT FROM THE INTRINSIC RECORD OF THIS

10:22:26   3    CASE.

10:22:26   4         THE COURT:  FROM THE '678.  SO THEN THE QUESTION GETS

10:22:28   5    TO BE HOW MUCH IS THE '193 BOUND BY THE '678.  AND THAT'S A

10:22:35   6    LITTLE BIT DIFFICULT OF A QUESTION TO ANSWER.

10:22:37   7         MR. KAMBER:  THAT IS A -- IT IS A DIFFICULT QUESTION

10:22:40   8    TO ANSWER.  I THINK IF THE '193 PATENT SPEAK MORE TO THE ISSUE,

10:22:45   9    THERE WOULD BE MORE TO GO TO.

10:22:47  10         THE COURT:  SURE.

10:22:47  11         MR. KAMBER:  I THINK BOTH PARTIES HAVE RELIED ON THE

10:22:49  12    '678 BECAUSE THE WAY THIS HAS HAPPENED IS THERE IS A LOT OF

10:22:53  13    DETAIL IN THE '678 AS TO THESE CLAIMS, THEN THE INTERFERENCE

10:22:58  14    PROCEEDINGS STARTED.

10:23:00  15         THEY POINTED TO SOME DISCLOSURE IN AN EARLIER APPLICATION

10:23:04  16    THAT MIGHT SUPPORT THOSE CLAIMS IN ORDER TO ESSENTIALLY GET THE

10:23:08  17    CLAIMS WRITTEN FOR THEMSELVES.

10:23:10  18         BUT THERE'S NOT A LOT IN THE '193 PATENT THAT REALLY

10:23:16  19    RELATES TO THE PARTICULAR CLAIM LANGUAGE THAT WE HAVE GOING ON

10:23:18  20    HERE, YOUR HONOR.

10:23:22  21         I WANT TO ADDRESS AS MY LAST POINT WHAT YOU JUST FLAGGED,

10:23:26  22    WHICH IS YOU NEED TO KNOW THE GAME PLAN.  AND THAT IS WHERE WE

10:23:31  23    GET THAT TERMINOLOGY ABOUT MAINTAINING A NETWORK TOPOLOGY.

10:23:40  24         HERE WE HAVE IT FROM, AGAIN, THE '678 PATENT.  THE POINT

10:23:44  25    OF THESE CLAIMS WAS TO COMPARE THE CURRENT TOPOLOGY TO THE

10:23:47  1    DESIRED TOPOLOGY.  AND THEN DETERMINE HOW TO MOVE BALLOONS TO

10:23:51  2    GET TO THE DESIRED TOPOLOGY.

10:23:52  3            THE COURT:  SO DO YOU KNOW WHAT NETWORK TOPOLOGY

10:23:55  4    MEANS?  IT'S NOT A TERM I'VE EVER USED IN MY LIFE.  I ACTUALLY

10:23:58  5    DON'T KNOW EXACTLY WHAT YOU MEAN BY THAT.

10:24:00  6            MR. KAMBER:  I THINK IT'S A FAIR QUESTION.  I THINK

10:24:02  7    IT'S DESCRIBED ACTUALLY ON THIS NEXT SLIDE, YOUR HONOR.

10:24:05  8            THE COURT:  OKAY, BECAUSE MAYBE WE NEED TO BREAK THAT

10:24:07  9    DOWN A LITTLE BIT IF WE ARE TRYING TO DEFINE IT FOR THE JURY.

10:24:12 10            MR. KAMBER:  THAT IS A FAIR POINT, AND THIS IS AGAIN,

10:24:14 11    FROM THE '678 PATENT.  IT TALKS ABOUT APPROACHES FOR

10:24:18 12    MAINTAINING A DESIRED NETWORK TOPOLOGY.

10:24:20 13        AND AGAIN, WE HAVE HERE, "THE POSITIONS OF BALLOONS IN A

10:24:23 14    HIGH-ALTITUDE BALLOON NETWORK, MAY BE ADJUSTED IN ORDER TO

10:24:27 15    MAINTAIN A DESIRED NETWORK TOPOLOGY."

10:24:30 16        OKAY.  WE HAVE SOMETHING THAT WE ARE STRIVING FOR, SOME

10:24:34 17    POSITIONING WE WANT, BUT IT GOES TO ON TO EXPLAIN, THERE ARE

10:24:38 18    DIFFERENT THINGS THAT YOU MIGHT DESIRE.

10:24:39 19        FOR EXAMPLE, YOU MIGHT WANT A PARTICULAR DENSITY.  YOU

10:24:42 20    MIGHT WANT AN ARRANGEMENT OF PARTICULAR TYPES OF BALLOONS,

10:24:46 21    SUPER-NODES VERSUS SUB-NODES.  YOU MAY BE CONTROLLING FOR THE

10:24:51 22    NUMBER OF HOPS BEHIND BALLOONS.

10:24:53 23        WE ARE TRYING TO USE THE BROADEST IDEA NETWORK TOPOLOGY TO

10:24:59 24    CAPTURE ANY OF THESE --

10:25:00 25            THE COURT:  BUT I DON'T KNOW WHAT A NETWORK TOPOLOGY

10:25:03  1      IS.  I'M SORRY, I'M REALLY BASIC HERE.

10:25:07  2           MR. KAMBER:  I THINK THE BEST ILLUSTRATION I COULD

10:25:08  3      GIVE WAS THE FIGURE WITH THOSE SEVEN BALLOONS AT THE BEGINNING,

10:25:12  4      THAT THERE IS SOME KIND OF SHAPE TO THE BALLOONS, THERE IS SOME

10:25:17  5      KIND OF ARRANGEMENT, IT'S WHY PROBABLY THESE ARE CALLED THE

10:25:21  6      CONSTELLATION OF BALLOONS, THAT THERE'S SOME KIND OF FORMATION.

10:25:25  7           THE COURT:  SO "FORMATION" WAS WHAT I WAS THINKING

10:25:27  8      TOO.  I KNOW YOU'VE TAKEN THIS TERM RIGHT FROM THE '678, AND

10:25:33  9      THAT'S GREAT BECAUSE YOU ARE NOT TRYING TO READ SOMETHING MORE

10:25:36  10     INTO IT, YOU JUST TRANSPORT IT.

10:25:39  11          BUT IF I TELL A JURY TO MAINTAIN NETWORK TOPOLOGY, I AM

10:25:45  12     STILL SCRATCHING MY HEAD.  I'M GUESSING WHAT IT MEANS.  AND

10:25:49  13     THAT'S A BAD CONSTRUCTION BECAUSE I COULD HAVE EIGHT DIFFERENT

10:25:52  14     VIEWS OR ZERO VIEWS OF WHAT IT IS, AND THEY JUST COMPLETELY

10:25:57  15     IGNORE IT.

10:25:58  16          MR. KAMBER:  I THINK THAT'S A GOOD WORD, FRANKLY, IS

10:26:00  17     "FORMATION," TO SAY "A DESIRED FORMATION."

10:26:03  18          AND AGAIN, WE WERE TRYING TO KEEP THIS BROAD, BUT I DO

10:26:07  19     THINK THAT THE GOAL OF THE PATENT CLAIM ITSELF IS TALKING

10:26:12  20     ABOUT, I MEAN, THIS IS THE VERY HEART OF IT, IT'S NOT IMPORTING

10:26:16  21     A LIMITATION, IT'S THE WHOLE IDEA OF MOVING BALLOONS IN THIS

10:26:19  22     WAY, RELATIVE TO THEIR POSITIONS OF OTHER BALLOONS IS TO

10:26:23  23     MAINTAIN SOME FORMATION.

10:26:26  24          IN SPACE DATA'S INTERFERENCE PROCEEDING, AND THIS IS PART

10:26:29  25     OF THE INTRINSIC RECORD, IT'S PART OF THE PROSECUTION HISTORY

10:26:36  1    WE HAVE ON THE NEXT SLIDE HERE, THEIR IDEA AT THE TIME, WHAT

10:26:40  2    THEY POINTED TO IN THEIR SPEC WAS EVEN SPACING.  WE ARE NOT

10:26:44  3    TRYING TO LIMIT IT TO THAT.

10:26:46  4         THE COURT:  YEAH.

10:26:47  5         MR. KAMBER:  BUT MAINTAINING SOME DESIRED FORMATION,

10:26:50  6    I THINK IS A GOOD, THAT MAY BE A GOOD WAY TO FURTHER EDIT THE

10:26:55  7    LANGUAGE THAT WE HAVE HERE ON THE NEXT SLIDE, TO CLOSE WITH.

10:26:59  8         AGAIN, DETERMINING WHERE TO POSITION A PARTICULAR BALLOON,

10:27:03  9    YOU COULD EVEN JUST SAY A BALLOON, PROBABLY, AS A FUNCTION OF

10:27:07  10   ITS LOCATION, RELATIVE TO ONE OR MORE NEIGHBORING BALLOONS, TO

10:27:10  11   MAINTAIN A DESIRED FORMATION, OR NETWORK FORMATION.

10:27:16  12        THE COURT:  WELL, I MEAN, WE ARE STILL, WE STILL

10:27:19  13   HAVE -- I'M NOT ADOPTING THE LIMITATIONS, I'M JUST TRYING TO --

10:27:28  14   IF I AGREE WITH YOUR LANGUAGE, THAT NEEDED TO BE ADDRESSED.

10:27:31  15        I'M STILL -- YOU KNOW, I'M -- I GUESS I THINK THE MAIN

10:27:35  16   ISSUE HERE IS THIS NETWORK, THIS DESIRED MOVEMENT ISSUE, AS TO

10:27:44  17   WHETHER YOU'RE CONSTRICTING IT IN A WAY THAT IT SHOULDN'T BE ON

10:27:48  18   LOCATION.

10:27:50  19        BUT I DON'T KNOW HOW TO READ "LOCATION" OUT OF THIS CLAIM

10:27:55  20   AND HAVE ANY MEANING AT ALL.  BECAUSE THE WHOLE ISSUE, I MEAN,

10:27:59  21   IT SEEMS TO ME, MR. HOSIE WILL TELL ME DIFFERENTLY, THAT THE

10:28:03  22   WHOLE IDEA IS THIS, THERE ARE RELATIVE POSITIONS OF THESE

10:28:06  23   BALLOONS THAT ARE ESSENTIAL FOR NETWORK OR WHATEVER COVERAGE ON

10:28:12  24   THE GROUND.

10:28:14  25        MR. KAMBER:  RIGHT.

10:28:15  1        THIS IS AN ODD WAY TO PUT IT PERHAPS, YOUR HONOR, I THINK

10:28:18  2   THIS LIMITATION COMES FROM THE DESIRE THAT'S REFERENCED IN THE

10:28:23  3   CLAIM, RIGHT.  THE CLAIM IS TALKING ABOUT A DESIRED MOVEMENT.

10:28:28  4        THE COURT:  DESIRED, RIGHT.

10:28:29  5        MR. KAMBER:  AND IT'S TALKING ABOUT DESIRED

10:28:32  6   POSITIONS, AND IT'S LOOKING AT THE POSITIONS OF BALLOONS AND

10:28:35  7   THEN PICKING A DESIRED MOVEMENT.

10:28:36  8        THE COURT:  SO MOVEMENT.

10:28:38  9        MR. KAMBER:  WHAT DRIVES THAT DESIRE.

10:28:39 10        THE COURT:  IS IT BETTER TO THINK OF THE WORD

10:28:41 11   "MOVEMENT" AS REPOSITIONING, DETERMINING A REPOSITIONING OF THE

10:28:45 12   TARGET BALLOON?  AS A WAY OF MAYBE DEALING WITH ALL OF IT AND

10:28:50 13   NOT GOING STRICTLY TO "LOCATION," WHICH SEEMS TO BE A

10:28:54 14   ROADBLOCK?

10:28:57 15        MR. KAMBER:  I THINK THAT COULD WORK.

10:28:59 16        THE ONLY THING THAT COMES TO MIND, YOUR HONOR, IS THAT YOU

10:29:02 17   CAN IMAGINE A SITUATION WHERE THE BALLOONS ARE GOING THROUGH

10:29:06 18   THIS ALGORITHM, AND ACTUALLY MAKING A DETERMINATION THAT THEY

10:29:10 19   DON'T NEED TO MOVE, THAT BALLOON A IS RIGHT WHERE IT SHOULD BE.

10:29:16 20   AND ALTHOUGH, I GUESS PERHAPS THAT WOULDN'T --

10:29:18 21        THE COURT:  MOVEMENT IS NOT STATIC EITHER, IT'S THE

10:29:21 22   OPPOSITE OF STASIS.  SO I DON'T AGREE WITH THAT.

10:29:29 23        THESE BALLOONS ARE IN CONSTANT MOVEMENT THOUGH, THAT I

10:29:33 24   LEARNED LAST WEEK.  SO THERE'S NOTHING STATIC ABOUT THIS.  AND

10:29:36 25   THE GOAL IS THAT THEY MOVE ESSENTIALLY IN TANDEM, UP AND DOWN

10:29:40  1    IN THIS CIRCULAR MOTION.  BECAUSE OF THE NATURAL WIND FORCE,

10:29:46  2    THE PREVAILING WIND IS GOING TO MOVE THEM TOGETHER IN A

10:29:49  3    DIRECTION.  BUT THEIR RELATIVE HEIGHTS MAY MAKE THINGS GOING

10:29:57  4    ASKEW, AND THEY ARE GOING TO BE REPOSITIONING FOR THE WIND

10:30:00  5    CONDITION AND REPOSITIONING THEMSELVES VIS A VI EACH OTHER WITH

10:30:04  6    ALL OF THAT.

10:30:06  7        SO ANYWAY, I NEED -- MAYBE YOU ALL NEED TO SIT DOWN AND

10:30:09  8    THINK ABOUT WHETHER THAT'S A WAY OF GETTING OVER THE LOCATION

10:30:13  9    PROBLEM THAT SEEMS TO BE THE BIGGEST STUMBLING BLOCK HERE.

10:30:22  10       AND I MEAN, CLEARLY MAINTAINING A NETWORK FORMATION, I'M

10:30:27  11   NOT SURE THAT THAT ADDS ANYTHING, BECAUSE THAT DOES SEEM TO BE

10:30:34  12   THE WHOLE PURPOSE OF THE PATENT.

10:30:36  13       MR. KAMBER:  IT IS THE PURPOSE OF THE PATENT, OR THE

10:30:39  14   CLAIMS, I THINK.  BUT IT IS THE TERM, OR IT'S THE LIMITATION

10:30:43  15   THAT RELATES TO THE DESIRED MOVEMENT.  OTHERWISE, IT'S JUST

10:30:47  16   SAYING "MOVING BALLOONS."

10:30:48  17       THE COURT:  RIGHT.

10:30:49  18       MR. KAMBER:  ANYONE WOULD BE MOVING BALLOONS, BUT

10:30:51  19   POTENTIALLY, THE BALLOONS MOVE ON THEIR OWN.  BUT IF YOU'RE

10:30:56  20   MOVING THEM FOR A PARTICULAR PURPOSE, USING THIS ALMOST LIKE AN

10:31:00  21   ALGORITHM THAT'S SET FORTH IN METHOD CLAIM ONE, THEN THE

10:31:04  22   MOVEMENT NEEDS TO BE DEFINED BY SOMETHING, FOR SOMETHING, WITH

10:31:08  23   THE GOAL IN MIND.

10:31:10  24       AGAIN, THAT'S THE DESIRE THAT'S CAPTURED IN TERMS OF BOTH

10:31:14  25   DESIRED MOVEMENT, DETERMINING THE DESIRED MOVEMENT AND THEN

| | | |
|---|---|---|
| 10:31:21 | 1 | CONTROLLING THAT BALLOON FOR PURPOSES OF THE DESIRED MOVEMENT. |
| 10:31:24 | 2 | THE COURT:  OKAY. |
| 10:31:25 | 3 | WELL, I'M PROBABLY GOING TO SEND YOU BACK TO THE DRAWING |
| 10:31:28 | 4 | BOARD ON THIS ONE AND HOPE YOU CAN COME UP WITH AN AGREED |
| 10:31:33 | 5 | CONSTRUCTION.  I'M NOT -- I'M HOPING THAT MAYBE THERE'S A |
| 10:31:37 | 6 | MIDDLE GROUND HERE. |
| 10:31:41 | 7 | MR. HOSIE? |
| 10:31:42 | 8 | MR. HOSIE:  YOU KNOW, YOUR HONOR, HOPE ALWAYS SPRINGS |
| 10:31:45 | 9 | ETERNAL, AND YOU CAN'T GO WITHOUT BEING OPTIMISTIC IN LIFE AND |
| 10:31:50 | 10 | IN LAW, BUT I THINK THERE IS MIDDLE GROUND. |
| 10:31:53 | 11 | THEY HAVE MOVED CONSIDERABLY TO WHAT WE WOULD CONSIDER A |
| 10:31:56 | 12 | FAIR APPROACH.  I LIKE THE COURT'S SUGGESTION OF |
| 10:31:58 | 13 | "REPOSITIONING" BECAUSE THAT IS AN UMBRELLA TERM THAT CABINS |
| 10:32:03 | 14 | THE BASIC IDEA WITHOUT IMPORTING THE WHY'S AND THE WHEREFORE'S. |
| 10:32:09 | 15 | ON NETWORK TOPOLOGY, THAT WOULD HAVE TO BE CONSTRUED. |
| 10:32:12 | 16 | NO ONE WOULD KNOW IN THE JURY BOX WHAT A NETWORK -- |
| 10:32:15 | 17 | THE COURT:  SO MR. KAMBER SUGGESTS "FORMATION." |
| 10:32:18 | 18 | MR. HOSIE:  OR "ARRAY." |
| 10:32:19 | 19 | THE COURT:  YOU KNOW, WELL, "ARRAY" IS A PRETTY |
| 10:32:23 | 20 | COMMON WORD, BUT I HAD TO LEARN IT WHEN I FIRST STARTED OUT. |
| 10:32:27 | 21 | SO IT'S -- YOU KNOW, I THINK A FIRST-YEAR COLLEGE STUDENT |
| 10:32:30 | 22 | IN ENGINEERING WOULD UNDERSTAND IT, SO THE LEVEL OF SKILL ISN'T |
| 10:32:33 | 23 | VERY HIGH, BUT IF WE ARE ACTUALLY -- I DON'T KNOW WHY "ARRAY" |
| 10:32:37 | 24 | AND "FORMATION" ARE -- BECAUSE THIS REALLY, THIS REALLY IS A |
| 10:32:43 | 25 | FORMATION, AND IT SEEMS TO ME THAT'S A GOOD WORD. |

10:32:45  1          MR. HOSIE:  I TAKE THE COURT'S POINT, AND YOU KNOW,

10:32:47  2      IT'S NOT GIVING ME HEARTBURN AT ALL TO CALL IT FORMATION, WE

10:32:53  3      DISCUSS IN OUR OFFICE, AND I'M SURE THAT'S THE WORD WE WOULD

10:32:55  4      USE.

10:32:56  5          THE LAST POINT I WOULD MAKE BACK ON SLIDE 26, THESE

10:33:00  6      DEPENDENT CLAIMS SPECIFY SUB-PARTICULAR TYPES OF MOVEMENTS,

10:33:05  7      DIRECTION OF MOVEMENT, DESIRED VELOCITY, DESIRED DISTANCE OF

10:33:09  8      TRAVEL.  THESE HAVE TO BE ENCOMPASSED BY INDEPENDENT CLAIM ONE.

10:33:13  9      AND UNDER GOOGLE'S READING, THEY ARE READ OUT, AND THAT CAN'T

10:33:16  10     BE READ AS A MATTER OF LAW.

10:33:18  11         THE COURT:  SO WHAT PART, IF WE CHANGE TO

10:33:20  12     "REPOSITIONING," BECAUSE YOU DIDN'T GIVE ME ANYTHING, IF WE

10:33:24  13     CHANGE TO "REPOSITIONING," I MEAN, I THINK WITH SOME OF THIS,

10:33:27  14     AND CHANGE "TOPOLOGY" TO "FORMATION," I DON'T THINK YOU'RE SO

10:33:33  15     FAR APART ANYMORE.

10:33:34  16         MR. HOSIE:  AGREED.

10:33:35  17         THE COURT:  IF YOU BOTH -- NOW, I AM NOT FORCING

10:33:38  18     MR. KAMBER TO ACCEPT THESE THINGS NOW, I'M ASKING HIM TO THINK

10:33:41  19     ABOUT IT.

10:33:42  20         MR. KAMBER:  ABSOLUTELY.

10:33:42  21         THE COURT:  BECAUSE IT'S NOT FAIR TO ASK YOU TO AGREE

10:33:44  22     ON THE FLY.  YOU'VE GOT TO REALLY SIT DOWN WITH YOUR CLIENTS

10:33:48  23     AND MAKE SURE, AND YOUR EXPERTS.

10:33:50  24         MR. HOSIE:  IT SURE SOUNDS DOABLE TO ME, YOUR HONOR.

10:33:53  25         THE COURT:  SO I THINK THAT MAY BE DOABLE.

10:33:54  1        OKAY.  BEFORE WE GO TO THE NEXT TERM, I WANT TO TAKE A

10:33:57  2   BREAK.  THIS GETS TO BE A LONG SESSION FOR OUR COURT REPORTER.

10:34:00  3   SO LET'S COME BACK IN TEN MINUTES.

10:34:02  4        MR. HOSIE:  THANK YOU.

10:34:03  5        (RECESS FROM 10:34 A.M. UNTIL 10:42 A.M.)

10:42:28  6        THE COURT:  WE ARE BACK ON THE RECORD.

10:42:59  7        OKAY.  WE ARE GOING TO JUST KEEP MOVING BECAUSE EVERYBODY

10:43:02  8   WOULD LIKE TO BE DONE ON THIS FRIDAY.

10:43:14  9        ALL RIGHT.  "NETWORK OF BALLOONS," IS THAT THE NEXT TERM?

10:43:17 10        MR. MARTIN:  IT IS, YOUR HONOR.

10:43:19 11   BRANDON MARTIN AGAIN, ARGUING FOR SPACE DATA.

10:43:24 12        YOUR HONOR, "MESH NETWORK OF BALLOONS" APPEARS IN THE TWO

10:43:30 13   CLAIMS OF THE '193 PATENT, CLAIM 4 AND CLAIM 17.  THERE'S NOT

10:43:36 14   TOO MUCH TO DERIVE FROM THAT FACT.  BUT WHAT IS INTERESTING IS

10:43:40 15   THAT THE PARTIES HAVE A FAIR BIT, I THINK, OF COMMON GROUND.

10:43:43 16        THE COURT:  OH, GOOD.

10:43:44 17        MR. MARTIN:  ON THIS CLAIM.

10:43:48 18        I THINK THE PARTIES BOTH AGREE THAT A MESH NETWORK IS

10:43:52 19   SOMETHING THAT EMBODIES DYNAMISM, IT ALLOWS FOR CHANGING

10:43:58 20   CIRCUMSTANCES.  SO HERE WE HAVE A HIKER OUT IN LOS ALTOS HILLS

10:44:03 21   AND SHE NEEDS CELL SERVICE IN SAN JOSE.  SO WE PROVIDE SOME

10:44:07 22   BALLOONS AND WE CAN PASS HER SIGNAL FROM BALLOON, TO BALLOON,

10:44:10 23   TO BALLOON, BACK TO A GROUND STATION IN SAN JOSE.

10:44:13 24        NOW, I THINK GOOGLE EVEN WOULD AGREE THAT UNDER ITS

10:44:20 25   CONSTRUCTION, WHICH IT HAS PROPOSED TWO NOW --

10:44:23  1       THE COURT:  SO I'M GOING TO DEAL WITH THE

10:44:25  2  CONSTRUCTION IN THEIR RESPONSIVE BRIEF.  I ASSUME THAT'S THE

10:44:28  3  MOST RECENT ITERATION; IS THAT CORRECT?

10:44:33  4       MR. BRUNS:  MOSTLY, YOUR HONOR, WE HAVE SINCE

10:44:35  5  ATTEMPTED A COMPROMISE, WHICH I WILL TOUCH ON.

10:44:37  6       THE COURT:  SO THERE'S GOING TO BE YET A THIRD?

10:44:40  7       MR. BRUNS:  THERE WILL BE.

10:44:40  8       THE COURT:  YOU KNOW WHAT, CONTINUING TO WORK ON IT

10:44:43  9  MUST BRING YOU CLOSER TOGETHER.

10:44:44  10      MR. MARTIN:  AND THAT'S WHERE IT COMES FROM,

10:44:46  11 YOUR HONOR, BOTH PARTIES AGREE THAT THE MESH NETWORK OF

10:44:49  12 BALLOONS MUST BE DYNAMIC.

10:44:50  13      SO I THINK EVEN GOOGLE WOULD AGREE THAT THESE THREE

10:44:53  14 BALLOONS IN THE FOREGROUND ARE IN A MESH NETWORK, UNDER EITHER

10:44:58  15 PARTY'S CONSTRUCTION.

10:44:58  16      THE COURT:  SAY THAT AGAIN, I'M SORRY.

10:45:00  17      MR. MARTIN:  I THINK EVEN GOOGLE WOULD AGREE THAT

10:45:02  18 THESE THREE BALLOONS IN THE FOREGROUND ARE IN A MESH NETWORK OF

10:45:06  19 BALLOONS.

10:45:07  20      NOW, BALLOONS CAN GO OUT OF SERVICE FOR VARIOUS REASONS,

10:45:12  21 RIGHT.  THEY CAN BURST, THEY CAN HAVE MECHANICAL PROBLEMS.  THE

10:45:16  22 TRANSCEIVER COULD DIE.  THERE'S LOTS OF REASONS THAT BALLOONS

10:45:19  23 COULD GO OUT OF SERVICE.

10:45:20  24      SO THE DYNAMISM OF A MESH NETWORK ALLOWS THE BALLOONS

10:45:26  25 WHICH CAN COMMUNICATE WITH ONE ANOTHER, TO SIMPLY MOVE AROUND

10:45:30  1    AND REFORM THE LINKS.

10:45:32  2        NOW YOUR HONOR --

10:45:32  3            THE COURT:  WHICH IS, IN FACT, AN ELEMENT OF

10:45:36  4    REDUNDANCY.

10:45:39  5            MR. MARTIN:  BEING ABLE TO COMMUNICATE WITH ONE

10:45:42  6    ANOTHER ALLOWS FOR REDUNDANCY, YOUR HONOR.

10:45:46  7        BUT THERE'S NO REDUNDANT LINKS NOW ON THIS NETWORK.  THE

10:45:50  8    BALLOONS HAVE THE SAME CAPABILITY, BUT THEY ARE NO LONGER, THE

10:45:54  9    SAME CAPABILITY TO COMMUNICATE WITH EACH OTHER, BUT THERE ARE

10:45:58  10   NO OTHER ANY REDUNDANT LINKS.

10:46:00  11       AND ACCORDING TO GOOGLE, THIS NOW IS NO LONGER A MESH

10:46:04  12   NETWORK.  JUST BY VIRTUE OF LOSING ONE BALLOON FROM THE

10:46:08  13   NETWORK, THIS IS NO LONGER A MESH NETWORK.

10:46:10  14           THE COURT:  SO YOU ARE SAYING NOW IF YOU LOST A

10:46:12  15   SECOND BALLOON, YOU WOULD NOT HAVE COVERAGE.

10:46:16  16           MR. MARTIN:  THAT'S CORRECT, YOUR HONOR, BECAUSE THEY

10:46:17  17   WOULD BE TOO FAR APART, YOU WOULD LOSE YOUR COMMUNICATIONS.

10:46:25  18       DR. HANSMAN AGREES THAT BALLOONS WITHIN THE SYSTEM MUST BE

10:46:29  19   CAPABLE OF COMMUNICATING WITH MULTIPLE OTHER BALLOONS WITHIN

10:46:32  20   THE SYSTEM.

10:46:33  21       AND IN FACT, IN FOOTNOTE, I BELIEVE IT'S 16 OF ITS BRIEF

10:46:45  22   ON PAGE 20, GOOGLE SAYS THAT SPACE DATA'S CONSTRUCTION

10:46:52  23   ENCOMPASSES TRUE MESH NETWORKS.

10:46:59  24       GOOGLE'S PROBLEM WITH SPACE DATA'S CONSTRUCTION IS THAT IT

10:47:01  25   ALSO COVERS SITUATIONS IN WHICH THE BALLOONS CAN ONLY

10:47:08   1   COMMUNICATE WITH ONE OTHER BALLOON.

10:47:10   2        SO UNDER SPACE DATA'S CONSTRUCTION, THIS THREE BALLOON

10:47:13   3   LINE HERE IS A MESH NETWORK, IT HASN'T STOPPED BEING A MESH

10:47:18   4   NETWORK BECAUSE A BALLOON HAS DROPPED OUT OF IT.  THIS IS STILL

10:47:21   5   A MESH NETWORK.

10:47:21   6        AND YOUR HONOR, THE PATENTS AGREE, AND SO DOES THE PTAB.

10:47:28   7   THIS HERE IS A FIGURE, FIGURE 14 FROM THE '193 PATENT.  NOW,

10:47:32   8   THE PTAB, IN EXAMINING ONE OF GOOGLE'S PATENT APPLICATIONS,

10:47:36   9   REJECTED A GOOGLE CLAIM THAT CITED A HIGH-ALTITUDE BALLOON MESH

10:47:44  10   NETWORK.  AND WHEN IT DID SO, IT CITED THE SPACE DATA PATENT.

10:47:48  11   THAT'S THE '390 PATENT.  THE PORTION CITED BY THE PTO ALSO

10:47:53  12   APPEARS IN THE '193 PATENT.

10:47:54  13        AND IT TALKS ABOUT THIS PRECISE FIGURE HERE, SPECIFICALLY

10:48:01  14   THE CITATION HERE BY THE PTO SAYING KNOBLACH DISCLOSES A

10:48:04  15   HIGH-ALTITUDE BALLOON 12K IN A HIGH-ALTITUDE BALLOON MESH

10:48:08  16   NETWORK.  AND IT CITES COLUMN 30, LINES 48 THROUGH 49.  THAT

10:48:15  17   READS, "FIGURE 14," WHICH THIS IS, "IS A SCHEMATIC DEPICTION OF

10:48:19  18   INTER-PLATFORM COMMUNICATIONS WITH SUBSEQUENT TRANSMISSION TO A

10:48:22  19   GROUND TERMINAL."

10:48:23  20        NOW YOUR HONOR, BALLOON 12K HAS NO REDUNDANT COMMUNICATION

10:48:28  21   LINKS.  BALLOON 12K IS -- IT'S EXACTLY THE THREE-BALLOON

10:48:36  22   SITUATION WE JUST LOOKED AT.  AND THE PTO THINKS THIS DISCLOSES

10:48:41  23   A HIGH-ALTITUDE BALLOON MESH NETWORK.

10:48:43  24        AND FURTHER, IF THIS IS A HIGH-ALTITUDE BALLOON MESH

10:48:48  25   NETWORK, WHAT ABOUT BALLOON 12J?  BALLOON 12J IS ONLY

10:48:56  1    COMMUNICATING WITH BALLOON 12K, IT'S ONLY COMMUNICATING WITH

10:48:56  2    ONE OTHER BALLOON.

10:48:57  3         AND THE PTO HAS SAID THAT WELL, THIS DISCLOSES A

10:48:59  4    HIGH-ALTITUDE BALLOON MESH NETWORK, EVEN THOUGH THERE'S ONLY

10:49:02  5    COMMUNICATION WITH ONE OTHER BALLOON, AND THAT'S BECAUSE THE

10:49:06  6    BALLOONS CAN COMMUNICATE WITH ONE ANOTHER.

10:49:10  7         THE PART OF THE CITATION TO THE OFFICE ACTION BY THE PTO

10:49:16  8    THAT'S CUT OFF AT THE END SAYS, THE BALLOON 12K COMPRISES

10:49:20  9    TRANSCEIVERS FOR COMMUNICATING WITH A CORRESPONDENT.  AND AFTER

10:49:24  10   THAT, I BELIEVE IT SAYS "BALLOON."

10:49:26  11        THAT IS WHAT MAKES A BALLOON, A MESH NETWORK, A MESH

10:49:30  12   NETWORK IS THE ABILITY TO COMMUNICATE WITH OTHER NODES IN THE

10:49:35  13   NETWORK.

10:49:35  14             THE COURT:  SO LET ME JUST ASK YOU TO SEE IF THERE'S

10:49:39  15    REALLY A DIFFERENCE HERE.

10:49:40  16        UNDER YOUR CONSTRUCTION AND YOUR DIAGRAM, IF THAT MIDDLE,

10:49:43  17    IF THAT FOURTH BALLOON MALFUNCTIONS, AND IF THE MALFUNCTION

10:49:55  18    BALLOON WAS THE ONLY BALLOON THAT ONE OF THE OTHER THREE WAS

10:49:58  19    ABLE TO COMMUNICATE WITH, SO THEN WE WOULD NOT HAVE A MESH

10:50:03  20    NETWORK ANYMORE, UNDER YOUR DEFINITION, BECAUSE WE WOULD HAVE A

10:50:07  21    BALLOON IN THE FORMATION THAT IS NO LONGER CAPABLE OF

10:50:10  22    COMMUNICATING WITH ONE OR MORE OTHER BALLOONS OF THE NETWORK.

10:50:13  23        SO LET'S TAKE THE BALLOON IN THE VERY FRONT.  AND LET'S

10:50:19  24    SAY IT CAN ONLY COMMUNICATE WITH THE ONE THAT YOU'VE IDENTIFIED

10:50:22  25    IS MALFUNCTIONING.  AND THEN THE MALFUNCTIONING ONE FALLS TO

| | | |
|---|---|---|
| 10:50:30 | 1 | THE GROUND.  AND NOW OUR FRONT BALLOON CAN'T COMMUNICATE WITH |
| 10:50:32 | 2 | ANY OTHER BALLOON, SO THEN WE DON'T HAVE A MESH NETWORK |
| 10:50:36 | 3 | ANYMORE? |
| 10:50:36 | 4 | MR. MARTIN:  YOUR HONOR, YOU DON'T HAVE A NETWORK |
| 10:50:38 | 5 | ANYMORE.  IF THERE'S ONLY ONE NODE, THEN YOU DON'T HAVE A |
| 10:50:41 | 6 | NETWORK. |
| 10:50:41 | 7 | THE COURT:  WELL NO, BECAUSE I'VE JUST LOOKED AT YOUR |
| 10:50:44 | 8 | SAME THING -- I'M SAYING THAT IF THE FRONT BALLOON IS SHOWN TO |
| 10:50:48 | 9 | COMMUNICATE WITH THE ONE THAT YOU DREW YOUR LINE THROUGH, |
| 10:50:52 | 10 | RIGHT, AND IF THAT WAS THE ONLY OTHER BALLOON IN THE NETWORK |
| 10:50:58 | 11 | THAT THE FRONT BALLOON COULD COMMUNICATE WITH, BUT WE HAD THE |
| 10:51:02 | 12 | MALFUNCTION, THEN WE DON'T HAVE A NETWORK. |
| 10:51:07 | 13 | MR. MARTIN:  SO YOUR HONOR, YES, THAT'S RIGHT. |
| 10:51:08 | 14 | THE COURT:  YOU AGREE, OKAY. |
| 10:51:12 | 15 | MR. MARTIN:  AND I UNDERSTAND FROM THE HYPOTHETICAL |
| 10:51:13 | 16 | THAT THE BALLOON ON THE FAR RIGHT OF THE SCREEN DOESN'T EXIST |
| 10:51:16 | 17 | FOR THE PURPOSE OF THIS HYPOTHETICAL. |
| 10:51:18 | 18 | THE COURT:  YEAH, BECAUSE YOU HAD THE ONE ON THE FAR |
| 10:51:20 | 19 | RIGHT MOVING INTO POSITION.  SO YOU'VE GOT COVERAGE, BUT UNDER |
| 10:51:23 | 20 | YOUR DEFINITION, I'M NOT SURE YOU HAVE A NETWORK. |
| 10:51:25 | 21 | THAT WAS REALLY MY ISSUE.  NOW YOU SHOW IT SO THAT IT'S |
| 10:51:29 | 22 | COMMUNICATING WITH TWO BALLOONS, BUT YOUR CONSTRUCTION IS THAT |
| 10:51:33 | 23 | IT ONLY NEEDS TO BE CAPABLE OF COMMUNICATING WITH ONE OR MORE. |
| 10:51:39 | 24 | MR. MARTIN:  THAT'S CORRECT, YOUR HONOR. |
| 10:51:40 | 25 | THE COURT:  SO I'M TRYING TO LOOK AT THE ONE |

```
10:51:42   1    SITUATION.

10:51:42   2            MR. MARTIN:  AH.

10:51:43   3            THE COURT:  THAT'S MY POINT IS THAT IN YOUR

10:51:45   4    DEFINITION, WHEN THE BALLOON FELL TO THE GROUND, WE STILL HAD

10:51:52   5    INTERCONNECTION AMONG THE REMAINING THREE.  BUT THAT'S BECAUSE

10:51:57   6    YOUR FRONT BALLOON HAD TWO PATHWAYS OF COMMUNICATION, WHICH IS

10:52:02   7    FINE, BECAUSE YOU SAY ONE OR MORE, BUT I NEED TO LOOK AT WHAT

10:52:05   8    ABOUT IF IT'S THE ONE.

10:52:08   9            MR. MARTIN:  SO YOUR HONOR, IN THIS FIGURE THAT THE

10:52:14  10    PTO HAS SAID CONSTITUTES A MESH NETWORK, BALLOON 12J IS IN

10:52:19  11    COMMUNICATION WITH ONLY ONE OTHER BALLOON 12K.

10:52:22  12        AND THE PTO HAS SAID -- HAS REJECTED ONE OF GOOGLE'S

10:52:26  13    PATENT CLAIMS SAYING THIS FIGURE HERE DISCLOSES A HIGH-ALTITUDE

10:52:31  14    BALLOON MESH NETWORK.

10:52:32  15            THE COURT:  OKAY.  SO THERE'S NO REDUNDANCY THERE.

10:52:36  16        SO IF THE MIDDLE ONE FAILS, THEN YOU JUST HAVE TWO

10:52:40  17    FREE-FLOATING BALLOONS THAT ARE USELESS.

10:52:41  18            MR. MARTIN:  AND WE DON'T HAVE A NETWORK.  THEY ARE

10:52:43  19    TOO FAR TO COMMUNICATE WITH ONE ANOTHER.

10:52:46  20            THE COURT:  OKAY.

10:52:50  21            MR. MARTIN:  THIS IS FIGURE 1 FROM GOOGLE'S '678

10:52:53  22    PATENT FROM WHICH THIS CLAIM ORIGINALLY COMES FROM, THE GOOGLE

10:52:57  23    '678 PATENT.  IT WAS CAPTURED BY SPACE DATA IN THE INTERFERENCE

10:53:01  24    PROCEEDING.  AND ACCORDING TO THE SECTION OF THE '678 PATENT,

10:53:07  25    THAT IS TITLED "MESH NETWORK FUNCTIONALITY," IT SAYS, BALLOONS
```

10:53:12  1    102A, WHICH IS THE BALLOON IN THE TOP LEFT OF THIS FIGURE, TO

10:53:18  2    102F, WHICH IS THE BALLOON IN THE BOTTOM LEFT OF THE FIGURE,

10:53:21  3    MAY COLLECTIVELY FUNCTION AS A MESH NETWORK.

10:53:24  4          NOW YOUR HONOR, BALLOON 102F IS IN DIRECT COMMUNICATION

10:53:29  5    WITH ONLY ONE OTHER BALLOON, IT HAS NO REDUNDANT COMMUNICATION

10:53:35  6    LINKS WITH WHY OTHER BALLOONS.

10:53:36  7              THE COURT:  RIGHT.

10:53:37  8              MR. MARTIN:  AND MORE REVEALING, IS THE REMAINDER OF

10:53:39  9    THIS QUOTE.

10:53:41  10         IT SAYS, SINCE BALLOONS 102A TO 102F MAY COMMUNICATE WITH

10:53:47  11   ONE ANOTHER USING FREE-SPACE OPTICAL LINKS, THE BALLOONS MAY

10:53:51  12   COLLECTIVELY FUNCTION AS A FREE-SPACE OPTICAL MESH NETWORK.

10:53:55  13         THE IMPORTANT THING, YOUR HONOR, IS THE BALLOONS ARE ABLE

10:53:57  14   TO COMMUNICATE WITH ONE ANOTHER, AND THAT IS SPACE DATA'S

10:53:59  15   CONSTRUCTION.

10:54:00  16              THE COURT:  SO IT'S A MESH, AS LONG AS ALL THE

10:54:02  17   BALLOONS IN THE AIR IN THAT FORMATION ARE ABLE TO COMMUNICATE

10:54:05  18   WITH EACH OTHER.

10:54:06  19              MR. MARTIN:  ARE CAPABLE OF COMMUNICATING WITH EACH

10:54:08  20   OTHER, IF THEY COME WITHIN RANGE OF ONE ANOTHER.

10:54:11  21              THE COURT:  ONCE THERE'S A BREAK IN THE CHAIN, THEN

10:54:12  22   YOU DON'T HAVE --

10:54:13  23              MR. MARTIN:  ONCE THE BALLOONS ARE ISOLATED, YOU

10:54:15  24   CAN'T COMMUNICATE WITH ANY OTHER BALLOONS, IT'S NO LONGER A

10:54:22  25   NETWORK AT ALL.

10:54:22  1          THE COURT:  GOT IT.  OKAY.

10:54:27  2          MR. BRUNS:  GOOD MORNING, YOUR HONOR.  ANDREW BRUNS

10:54:34  3     FOR THE DEFENDANTS.

10:54:36  4       SO I DO THINK THERE'S QUITE A BIT OF COMMONALITY HERE,

10:54:39  5   THOUGH I DON'T KNOW THAT ALL OF IT CAME ACROSS IN THE

10:54:42  6   CONVERSATION WE'VE HAD SO FAR THIS MORNING.

10:54:44  7       I WOULD LIKE TO START WITH OUR TWO PROPOSED CONSTRUCTIONS.

10:54:48  8   GOOGLE BELIEVES THAT A MESH NETWORK IS A NETWORK --

10:54:51  9          THE COURT:  I'M NOT HEARING.  I'M SORRY, I'M HAVING

10:54:54  10    TROUBLE WITH THE MICROPHONE.

10:54:56  11         MR. BRUNS:  I'M SORRY.  I APOLOGIZE.

10:54:57  12         THE COURT:  IT SHOULD PICK UP YOUR VOICE A LITTLE BIT

10:54:59  13    EASIER.

10:55:03  14         MR. KAMBER:  SORRY ABOUT THAT.

10:55:04  15       SO GOOGLE'S PROPOSED CONSTRUCTION IS THAT A MESH NETWORK

10:55:07  16   IS A NETWORK OF BALLOONS WITH REDUNDANT PATHWAYS FOR ROUTING

10:55:10  17   DATA BETWEEN THE BALLOONS.

10:55:12  18       AND AS YOUR HONOR PICKED UP, THERE ARE KIND OF TWO THINGS

10:55:15  19   TO THIS REDUNDANCY, AND ONE IS THE ABILITY FOR THE BALLOONS TO

10:55:20  20   DYNAMICALLY REROUTE.  AND THAT'S ONLY POSSIBLE BECAUSE THERE

10:55:23  21   ARE MULTIPLE PATHS, REDUNDANT PATHS THAT ARE CAPABLE.

10:55:27  22       SPACE DATA SEEMS TO CONFLATE REDUNDANCY WITH SOME SORT OF

10:55:32  23   PERMANENCE.  THAT'S NOT THE CASE THAT THESE BALLOONS HAVE TO BE

10:55:35  24   CONNECTED TO ALL THE OTHER BALLOONS AT ALL TIMES, THAT THEY ARE

10:55:39  25   CAPABLE OF MAKING THAT SHIFT BECAUSE THERE ARE MULTIPLE PATHS.

|   |   |
|---|---|
| 10:55:42 | 1 |

SPACE DATA'S CONSTRUCTION, ON THE OTHER HAND, IS FAR TOO
BROAD.  THEY WOULD SIMPLY REQUIRE THAT EACH BALLOON IN THE
NETWORK IS CAPABLE OF COMMUNICATING WITH ONE ANOTHER BALLOON.

FIRST OF ALL, THIS ENCOMPASSES NO DYNAMISM, I WOULD ARGUE,
IT SIMPLY REQUIRES THAT ONE BALLOON CAN TALK TO ANOTHER
BALLOON.  AND THIS READS "MESH" OUT OF THE ENTIRE TERM.  IT
WOULD ENCOMPASS JUST ONE BALLOON TALKING TO ANOTHER BALLOON.
IT WOULD REALLY COVER ANY NETWORK.

AND I THINK, I HOPE TO MAKE CLEAR IN THE COMING SLIDES,
THAT GOOGLE'S DEFINITION, THIS NOTION OF MULTIPLE REDUNDANT
PATHS AND DYNAMISM, THOSE ARE THE TWO KEY FEATURES OF A PRETTY
WELL-RECOGNIZED TERM.

IF WE CAN GO TO THE NEXT SLIDE.  AND FOR WHAT IT'S WORTH,
SPACE DATA'S EXPERT AGREES.  HE TESTIFIED THAT "A MESH NETWORK
IS A NETWORK THAT CONNECTS MULTIPLE PARTICIPANTS, SUCH THAT ALL
PARTICIPANTS ARE REACHABLE AND MOST ARE REACHABLE VIA MULTIPLE
PATHS.  BUT IF NO BALLOON IS ABLE TO BE REACHED BY MULTIPLE
PATHS THEN THE NETWORK WOULD NOT BE A MESH NETWORK."

I THINK THIS IS -- DISTINGUISHES A POINT THAT COUNSEL WAS
TRYING TO MAKE ON THEIR SLIDES 17 AND 18, IT'S NOT THAT EVERY
BALLOON HAS TO HAVE MULTIPLE PATHS, IT'S THAT SOME OF THE
BALLOONS AT THE VERY LEAST HAVE TO HAVE MULTIPLE PATHS.

HE ALSO TOUCHED ON THE SECOND POINT, WHICH IS THE DYNAMISM
I MENTIONED EARLIER.  AND ON THAT SCORE, HE NOTED THAT, HE
REFERRED TO IT AS A SELF-HEALING CAPABILITY.  AND HE NOTED THAT

10:57:17   1    IS PROVIDED BY THE MULTIPLE PATHS BETWEEN SOURCES, WHICH IS

10:57:21   2    EXACTLY THE POINT YOUR HONOR MADE EARLIER.

10:57:24   3         AND SO I THINK BASED ON DR. PULLEN'S TESTIMONY, HIS

10:57:27   4    DECLARATION, AND SPACE DATA'S BRIEFING, WE ARE MUCH CLOSER TO A

10:57:30   5    COMMON DEFINITION THAN MAYBE IT APPEARED AT FIRST.

10:57:35   6         IF WE CAN GO TO THE NEXT SLIDE.

10:57:37   7              THE COURT:  SO I WANT TO MAKE SURE THAT WHEN YOU SAY

10:57:39   8    WE ARE CLOSER TO A COMMON DEFINITION, YOU ARE NOT REALLY

10:57:42   9    TELLING ME THAT SPACE DATA IS AGREEING WITH YOU.

10:57:46  10         I MEAN, ARE YOU FINDING A MIDDLE GROUND, OR ARE YOU JUST

10:57:49  11    THINKING THAT YOU'VE BEAT THEM INTO CAPITULATION HERE?

10:57:54  12              MR. BRUNS:  I DON'T THINK WE HAVE BEATEN THEM INTO

10:57:57  13    ANYTHING, YOUR HONOR.

10:57:58  14              THE COURT:  SO THERE'S STILL A MIDDLE GROUND YOU ARE

10:57:59  15    WORKING ON.

10:58:00  16              MR. BRUNS:  I HOPE SO, AND I WILL DISCUSS A COUPLE

10:58:02  17    OPTIONS.

10:58:03  18              THE COURT:  I JUST WANT TO BE SURE I'M HEARING YOU

10:58:05  19    RIGHT.

10:58:05  20              MR. BRUNS:  I THINK THEIR REFERENCES TO DYNAMISM ARE,

10:58:09  21    ASSIGNED TO US, THAT THERE'S BEEN SOME EVOLUTION ON THEIR

10:58:12  22    POSITION IN OUR DIRECTION, AND I'M HOPING TO FIND COMMON

10:58:15  23    GROUND.

10:58:15  24              THE COURT:  SO ARE YOU TELLING ME THAT YOU ARE GOING

10:58:17  25    TO TALK ABOUT THIS AND TRY TO GIVE ME -- AND LET ME KNOW

10:58:20  1      WHETHER YOU CAN WORK THIS OUT?

10:58:22  2                  MR. BRUNS:  WE HOPE TO, YOUR HONOR.

10:58:24  3                  THE COURT:  GOOD.  EXCELLENT.  I APPRECIATE THAT.

10:58:26  4                  MR. BRUNS:  NO PROBLEM.

10:58:27  5          AND IN A FEW MOMENTS, I WILL SHOW YOU A FEW COMPROMISES WE

10:58:31  6      HAD IN MIND AND HOPEFULLY WE COULD WORK TOGETHER TO FIGURE OUT

10:58:33  7      A FINAL ANSWER HERE.

10:58:33  8                  THE COURT:  I LOVED YOUR CITE TO WIKIPEDIA IN THE

10:58:35  9      BRIEF.  IT TELLS ME HOW COMMON IT IS.

10:58:38  10                 MR. BRUNS:  I'M GLAD THAT WAS COMFORTING.

10:58:41  11         AND IT WASN'T JUST US, IT WAS BOTH EXPERTS, TWO OUT OF TWO

10:58:45  12     EXPERTS AGREE THAT SPACE DATA AND GOOGLE'S EXPERTS BOTH CITE TO

10:58:49  13     THIS WIKIPEDIA DEFINITION.

10:58:51  14         AND IT SHARES THESE FACETS THAT I MENTIONED ALREADY,

10:58:55  15     DYNAMIC, NONHIERARCHICAL, DIRECT CONNECTION BETWEEN AS MANY

10:59:00  16     NODES AS POSSIBLE.

10:59:03  17         SO HOW DOES THAT LOOK IN PRACTICE?  AND WE'VE SEEN SOME

10:59:08  18     IMAGES IN SPACE DATA'S PRESENTATION, BUT I WOULD DRAW US BACK

10:59:11  19     TO THE PATENT.

10:59:12  20         AND FIGURE 17 IN THE '193 PATENT, WHICH THE SPEC DEFINES

10:59:16  21     AS A "DEPICTION OF A MESH NETWORK TOPOLOGY," DEPICTS WHAT I

10:59:22  22     HAVE BEEN DISCUSSING HERE, THERE ARE REDUNDANT PATHWAYS BETWEEN

10:59:27  23     EACH OF THE NODES.

10:59:28  24         NOW ONE IMPORTANT NOTE HERE IS THIS IS WHAT'S CALLED A

10:59:31  25     FULL MESH NETWORK.  SO THIS IS GETTING TO THE POINT I WAS

10:59:33   1   MAKING EARLIER THAT IN SOME VERSION OF A MESH NETWORK, EVERY

10:59:38   2   NODE CAN SPEAK TO EVERY OTHER NODE.  AND THAT'S WHAT YOU SEE

10:59:41   3   HERE.

10:59:42   4        THAT'S NOT NECESSARILY REQUIRED, THAT LEVEL OF REDUNDANCY,

10:59:46   5   BUT THIS IS CERTAINLY, WE OBVIOUSLY WILL AGREE, IS A MESH

10:59:50   6   NETWORK.  AND YOU CAN SEE FROM THESE CONNECTIONS WHERE THE

10:59:54   7   ADJECTIVE COMES FROM, IT LOOKS LIKE A MESH.  AND RELATED TO

10:59:58   8   THIS FIGURE IN THE SPECIFICATION, IS THE ONLY REAL DESCRIPTION

11:00:04   9   OF WHAT A MESH NETWORK IS, AND IT USES THE WORD "ROBUSTNESS" TO

11:00:08  10   CONTRAST BETWEEN OTHER TYPES OF NETWORKS.

11:00:10  11        AND OUR USE OF THE WORD "REDUNDANCY" WAS JUST AN ATTEMPT

11:00:13  12   TO KIND OF DEFINE THAT A LITTLE MORE CLEARLY.

11:00:15  13            THE COURT:  YEAH, I'M NOT TOO TROUBLED BY THE WORD

11:00:19  14   REDUNDANT, I THINK YOU CAN READ A LOT INTO IT THAT CAN BE

11:00:21  15   SCARY.  AND SO MAYBE YOU HAVE ANOTHER WORD THAT YOU CAN USE IF

11:00:26  16   MR. HOSIE IS CONCERNED THAT THERE'S SOMETHING ABOUT THE WORD

11:00:30  17   "REDUNDANT" THAT IS OF CONCERN.

11:00:32  18        BUT I THINK THESE ACTUALLY ARE AT A HIGH LEVEL, THAT'S A

11:00:35  19   REDUNDANCY COMMUNICATION, ALTERNATE FORMS OF PATHWAYS FOR

11:00:39  20   COMMUNICATION IS REALLY WHAT YOU GOT HERE, AND THAT, TO ME, IS

11:00:41  21   A REDUNDANCY.

11:00:43  22            MR. BRUNS:  WELL, WE CERTAINLY AGREE, YOUR HONOR.

11:00:44  23            THE COURT:  OKAY.

11:00:45  24            MR. BRUNS:  AND THE NEXT SLIDE HERE, AND SO WHAT

11:00:48  25   WE'VE DONE HERE IS JUST TAKEN THE IMAGE YOU SAW PREVIOUSLY AND

11:00:52  1    PUT IT ON THE LEFT-HAND SIDE OF THE SLIDE.  AND WE THINK IT'S

11:00:58  2    HELPFUL TO UNDERSTANDING WHAT A MESH NETWORK IS, TO CONTRAST IT

11:01:01  3    TO SOMETHING THAT IS NOT A MESH NETWORK.

11:01:03  4         AND THAT HERE IS A UNIDIRECTIONAL RING NETWORK.  AND AS

11:01:07  5    THE NAME PRETTY CLEARLY SUGGESTS, DATA MOVES THROUGH A NETWORK

11:01:10  6    LIKE THIS IN ONE PREDEFINED STATIC ROUTING.

11:01:14  7         SO FROM THE BOTTOM RIGHT, TO THE UPPER RIGHT, TO THE TOP,

11:01:16  8    ET CETERA.  AND, YOU KNOW, HERE, THE BALLOONS ARE PRETTY EVENLY

11:01:20  9    SPACED AND THIS SEEMS LOGICAL ENOUGH, BUT THIS ROUTING WOULD BE

11:01:24 10    MAINTAINED EVEN IF THE BALLOONS MOVED SUCH THAT IT WAS NOT

11:01:29 11    QUITE AS LOGICAL AND NEAT AS IT IS HERE, IT'S A STATIC ROUTE.

11:01:33 12         SO BY ANY DEFINITION THAT WIKIPEDIA OR MANY OTHER

11:01:40 13    REPUTABLE SOURCES, THIS IS NOT A MESH NETWORK.

11:01:43 14         HOWEVER, IF WE GO TO THE NEXT SLIDE, YOU CAN COMPARE AGAIN

11:01:47 15    BACK TO SPACE DATA'S CONSTRUCTION.  THEY SIMPLY REQUIRE THAT

11:01:50 16    EACH BALLOON IS CAPABLE OF COMMUNICATING WITH ONE OR MORE OTHER

11:01:54 17    BALLOONS.  AND I THINK PRETTY CLEARLY, A UNIDIRECTIONAL RING

11:01:59 18    NETWORK FITS THAT DEFINITION.

11:02:03 19         NOW LET'S LOOK AT THESE IN PRACTICE ON THE NEXT SLIDE.  SO

11:02:08 20    THIS, AGAIN, IS THE UNIDIRECTIONAL RING NETWORK.  AND WE'VE

11:02:12 21    LABELED THE BALLOONS A TO E, JUST TO MAKE THE CONVERSATION A

11:02:16 22    LITTLE BIT EASIER.

11:02:17 23         AND SO THE ONLY WAY THE DATA CAN MOVE THROUGH THIS NETWORK

11:02:21 24    IS TO TAKE THE DATA FROM BALLOON A TO BALLOON B, C, AND THEN D.

11:02:26 25    WE HAVE A LITTLE ANIMATION HERE THAT DEPICTS THAT.  I THINK

11:02:30    1        IT'S EASY ENOUGH TO FOLLOW.

11:02:32    2            I BELIEVE YOU ASKED EARLIER, YOUR HONOR, WHAT HAPPENS IN A

11:02:36    3    NETWORK WHEN A BALLOON IS NO LONGER OPERATIONAL.  IN A NETWORK

11:02:42    4    SUCH AS THIS, IF BALLOON C WERE TO DROP OFF, SO IF IT DRIFTS

11:02:47    5    AWAY OR BURSTS FOR SOME OTHER REASON IT'S NO LONGER

11:02:52    6    COMMUNICABLE.  IN A NETWORK LIKE THIS, THE DATA CANNOT TRAVEL

11:02:56    7    FROM A TO D IN ANY OTHER ROUTE, IT'S NOT CAPABLE OF DYNAMISM OR

11:03:01    8    REROUTING BECAUSE THERE'S NO REDUNDANCY.

11:03:06    9            SO QUITE SIMPLY, THE SYSTEM WOULD FAIL.  IT WOULDN'T BE A

11:03:09   10    NETWORK, YOU COULD SAY, BUT MORE IMPORTANTLY, THE DATA COULD

11:03:13   11    NOT GET FROM POINT A TO POINT D.

11:03:16   12            THE COURT:  RIGHT.

11:03:16   13            MR. BRUNS:  SO ON THE NEXT SLIDE WE WILL QUICKLY SHOW

11:03:19   14    YOU, IT'S SIMILAR TO WHAT COUNSEL SHOWED YOU EARLIER, BUT I

11:03:22   15    THINK ILLUSTRATES THE DISTINCTION BETWEEN REDUNDANCY AND

11:03:27   16    PERMANENCE A LITTLE MORE CLEARLY.

11:03:28   17            SO THE SAME CONFIGURATION OF BALLOONS, BUT HERE WE HAVE A

11:03:32   18    MESH DEPICTED WITH THE DOTTED LINES.  AND BECAUSE THE MESH IS

11:03:35   19    DYNAMIC AND CAN EFFICIENTLY ROUTE DATA DEPENDING ON CONDITIONS,

11:03:39   20    HERE WE CAN GET DATA FROM BALLOON A TO BALLOON D, IF BALLOON D

11:03:44   21    WERE TO MOVE, AND THE MOST EFFICIENT ROUTE WAS NO LONGER

11:03:48   22    SENDING DATA DIRECTLY BETWEEN THOSE BALLOONS, IT COULD BE

11:03:51   23    ROUTED VIA BALLOON E.

11:04:00   24            AND AGAIN, SPEAKING TO YOUR HONOR'S QUESTIONS EARLIER, IF

11:04:03   25    BALLOON E WERE TO DISAPPEAR, THIS SYSTEM IS CAPABLE BECAUSE OF

11:04:10  1   THE REDUNDANT PATHWAYS AND IT'S DYNAMIC CAPABILITY OF SENDING

11:04:16  2   THE DATA TO BALLOON D, FROM BALLOON A, THROUGH BALLOON C.

11:04:18  3        SO I THINK THAT'S ALL PRETTY CLEAR.  AND AS I MENTIONED,

11:04:22  4   WE HAVE ATTEMPTED TO ENCOMPASS WHAT I THINK OUR COMMON GROUNDS

11:04:27  5   HERE WITH SPACE DATA ON THE NEXT SLIDE.

11:04:33  6        AND YOU CAN GO AHEAD AND BRING UP THE NEXT THING AS WELL.

11:04:36  7        SO BASED ALMOST VERBATIM ON SPACE DATA'S REPLY BRIEF IN

11:04:40  8   WHICH THEY SAY THAT THE HALLMARK OF A MESH NETWORK IS THE

11:04:43  9   ABILITY OF THE NODES WITHIN IT TO CONNECT DIRECTLY, DYNAMICALLY

11:04:48 10   AND NON-HIERARCHICALLY TO AS MANY OTHER NODES AS POSSIBLE AND

11:04:53 11   TO COOPERATE WITH ONE ANOTHER TO EFFICIENTLY ROUTE DATA.

11:04:56 12        WE BASICALLY PUT THAT EXACT VERBIAGE IN OUR PROPOSAL TO

11:05:00 13   THEM.  AND THEIR RESPONSE WAS THAT THAT WAS TOO CONFUSING FOR A

11:05:04 14   JURY, PARTICULARLY NODES AND WITH HIERARCHICALLY.  AND WE ARE

11:05:10 15   UNDERSTANDING OF THAT.  THAT'S FAIR.

11:05:11 16        AND SO WE TRIED AGAIN, THIS TIME COMBINING, I BELIEVE THIS

11:05:17 17   PORTION OF THE REPLY BRIEF WITH SOME OF DR. PULLEN'S TESTIMONY.

11:05:21 18   AND SAID A DECENTRALIZED NETWORK OF BALLOONS, WHERE EACH

11:05:26 19   BALLOON CONNECTS TO AS MANY OTHER BALLOONS AS POSSIBLE AND CAN

11:05:30 20   CONNECT DYNAMICALLY -- PARDON ME -- CAN DYNAMICALLY REROUTE

11:05:33 21   DATA FOR EFFICIENCY, OR IN THE EVENT OF A BALLOON FAILURE.

11:05:36 22             THE COURT:  SO WHAT IS DECENTRALIZED NETWORK?

11:05:39 23             MR. BRUNS:  WELL, THAT'S A GOOD QUESTION, YOUR HONOR.

11:05:40 24    AND THAT WAS SPACE DATA'S ISSUE.

11:05:42 25        I THINK THAT WAS OUR EFFORT TO REIGN IN NON-HIERARCHICALLY

11:05:47  1    AS A SLIGHTLY LESS --

11:05:49  2            THE COURT:  I JUST DON'T -- I MEAN, I DON'T EVEN KNOW

11:05:51  3    WHAT THAT MEAN MEANS.  I MEAN, I'M JUST A LAYPERSON LIKE THE

11:05:55  4    JURY.

11:05:55  5            MR. BRUNS:  WELL, I DON'T THINK WE ARE WEDDED TO THAT

11:05:58  6    WORD IN PARTICULAR.  I THINK THE KEY HERE --

11:05:59  7            THE COURT:  BECAUSE I UNDERSTAND WHAT

11:06:01  8    NON-HIERARCHICAL MEANS, I DON'T UNDERSTAND WHAT DECENTRALIZED

11:06:05  9    IS.

11:06:05  10           MR. BRUNS:  FAIR ENOUGH.  WE WOULD BE HAPPY TO RETURN

11:06:07  11   TO NON-HIERARCHICAL.

11:06:08  12      I THINK OUR EFFORTS HERE WERE TO TRY TO FIND BOTH TERMS

11:06:12  13   THAT WERE SIMILAR TO WHAT BOTH PARTIES AGREE AND WHAT

11:06:17  14   EVERYBODY, AND WIKIPEDIA AGREES IS A MESH NETWORK.

11:06:21  15      WE ASKED SPACE DATA FOR --

11:06:23  16           THE COURT:  SO "AS MANY AS POSSIBLE," COULD BE ZERO.

11:06:26  17   YOU NEED TO FIX THIS.

11:06:29  18           MR. BRUNS:  FAIR ENOUGH.  THAT'S A GOOD POINT,

11:06:32  19   YOUR HONOR.

11:06:33  20      AND WE ARE HAPPY TO GO BACK TO THE DRAWING BOARD.  BUT I

11:06:38  21   THINK MAYBE THE GUIDANCE THAT WOULD BE HELPFUL IS JUST, WHICH I

11:06:42  22   THINK YOU'VE KIND OF OFFERED HERE, IS THAT REDUNDANCY IS A PART

11:06:45  23   OF THIS.  AND IT'S NOT JUST ABOUT THE DYNAMISM ALONE, IT'S

11:06:49  24   INHERENT IN DYNAMISM THAT THERE ARE REDUNDANT PATHS.

11:06:53  25           THE COURT:  WELL, THERE ARE MULTIPLE PATHS.

| | | |
|---|---|---|
| 11:06:57 | 1 | MR. BRUNS:  CORRECT. |
| 11:06:58 | 2 | THE COURT:  THAT CAN DYNAMICALLY REROUTE DATA. |
| 11:07:01 | 3 | AND SO, YOU KNOW, SOMETIMES AS YOU TRY TO SIMPLIFY, WE |
| 11:07:07 | 4 | HAVE TO JUST KEEP ALL THE CONCEPTS. |
| 11:07:09 | 5 | MR. BRUNS:  YEAH. |
| 11:07:10 | 6 | THE COURT:  SO SPACE DATA'S SUGGESTION WAS BALLOONS |
| 11:07:12 | 7 | IN WHICH EACH BALLOON IN THE NETWORK IS CAPABLE OF |
| 11:07:16 | 8 | COMMUNICATING WITH ONE OR MORE. |
| 11:07:18 | 9 | SO I THINK THAT'S RIGHT.  I DON'T THINK ANYONE DISAGREES. |
| 11:07:25 | 10 | IT PROBABLY HAS TO BE MORE -- I'M NOT SURE ONE EVEN WORKS, |
| 11:07:28 | 11 | BECAUSE ONE COULD BE THE RING, THAT'S WHAT YOU ARE SAYING. |
| 11:07:34 | 12 | SO IT NEEDS TO BE WITH, THE PATENTS WOULD SAY A PLURALITY, |
| 11:07:37 | 13 | BUT THE JURY DOESN'T KNOW WHAT THAT MEANS.  WITH MORE THAN ONE. |
| 11:07:43 | 14 | AND WITH AT LEAST MORE THAN ONE. |
| 11:07:46 | 15 | I MEAN, THAT'S REALLY -- I THINK I UNDERSTAND, THAT'S WHY |
| 11:07:50 | 16 | I DON'T HAVE TO WRITE THIS STUFF VERY OFTEN.  BUT AGAIN, IT HAS |
| 11:07:53 | 17 | TO BE -- THIS COULD BE ZERO, I DON'T THINK -- AND SPACE DATA'S |
| 11:07:58 | 18 | COULD BE ONE. |
| 11:07:59 | 19 | MR. BRUNS:  RIGHT. |
| 11:07:59 | 20 | THE COURT:  BOTH ARE INCORRECT. |
| 11:08:01 | 21 | MR. BRUNS:  WE ARE JUST ONE AWAY. |
| 11:08:02 | 22 | THE COURT:  SO WE ARE JUST ONE AWAY, AND I KNOW YOU |
| 11:08:04 | 23 | CAN GET THERE. |
| 11:08:05 | 24 | MR. BRUNS:  THANK YOU, YOUR HONOR. |
| 11:08:05 | 25 | THE COURT:  OKAY.  ALL RIGHT.  SO I'M GOING TO PUT |

11:08:08  1      THAT BACK ON YOUR DRAWING BOARD THEN, NOT MINE.

11:08:10  2            MR. BRUNS:  ALL RIGHT.  THANK YOU, YOUR HONOR.

11:08:26  3            THE COURT:  OKAY.  WE WILL MOVE TO THE NEXT TERM,

11:08:31  4      "WHEREIN AT LEAST ONE OF THE GEOGRAPHICAL COORDINATE TRACKING

11:08:35  5      SYSTEM COMPRISES GPS."  SO THIS IS THE POTENTIAL ERROR,

11:08:40  6      DRAFTING ERROR.  ALWAYS A DILEMMA FOR A COURT AS TO HOW FAR TO

11:08:47  7      GO AND WHETHER IT'S TOO MUCH.

11:08:52  8            MR. MARTIN:  YOUR HONOR, THAT'S CORRECT.

11:08:56  9         "WHEREIN AT LEAST ONE OF THE GEOGRAPHICAL COORDINATES

11:08:59  10     TRACKING SYSTEM COMPRISES A GPS."

11:09:08  11        YOUR HONOR, WE THINK THAT THE CLAIM LANGUAGE IS CLEAR TO

11:09:13  12     ONE OF ORDINARY SKILL IN THE ART.  DR. HANSMAN TESTIFIED AND

11:09:20  13     UNDERSTOOD WHAT GEOGRAPHICAL COORDINATES TRACKING SYSTEM WAS.

11:09:24  14     DR. HANSMAN TESTIFIED AT HIS DEPOSITION THAT HE KNEW WHAT A GPS

11:09:27  15     RECEIVER WAS.  HE TESTIFIED THAT A GPS RECEIVER IS A

11:09:31  16     GEOGRAPHICAL COORDINATES TRACKING SYSTEM.

11:09:35  17        DR. HANSMAN'S ONLY PROBLEM WITH THE CLAIM IS THAT HE

11:09:41  18     DIDN'T SEEM TO KNOW WHERE TO PUT THE GEOGRAPHICAL COORDINATES

11:09:49  19     TRACKING SYSTEM.  YOUR HONOR, WHERE BALLOONS ARE, WHERE

11:09:54  20     PLATFORMS ARE, ARE AT THE HEART OF BOTH THE '503 AND '706

11:09:59  21     PATENTS.  EVERY -- THE FIRST 1, 2, 3, 4, 5, 6, 7 QUESTIONS THAT

11:10:11  22     THE ALGORITHM THAT'S BUILT INTO PART OF THE PATENTS ASKS, IS

11:10:15  23     BASED ON WHERE IS THE BALLOON AND HOW FAST IS IT GOING.  THAT'S

11:10:19  24     WHAT THESE PATENTS ARE ABOUT.

11:10:23  25        THE SPECIFICATION IS CLEAR THAT THE PRESENT INVENTION

11:10:27   1    UTILIZES A GPS UNIT AND PROCESSOR TO DETERMINE THE CURRENT

11:10:31   2    PLATFORM'S GEOGRAPHIC COORDINATES AND VELOCITIES.

11:10:35   3        NOW "PLATFORM" HERE IS IMPORTANT.  THE INVENTION UTILIZES

11:10:40   4    A GPS UNIT TO DETERMINE THE CURRENT PLATFORM'S GEOGRAPHIC

11:10:48   5    COORDINATES AND VELOCITIES.  IF WE TURN TO THE CLAIM LANGUAGE,

11:10:52   6    FOR INSTANCE, CLAIM ONE OF THE '503 PATENT, EACH ONE OF THESE,

11:10:57   7    EXCEPT I BELIEVE '706, CLAIM 29, WHICH IS SLIGHTLY DIFFERENT,

11:11:02   8    BUT EACH ONE OF THESE CLAIMS IN THE '503 PATENT COMPRISES.

11:11:10   9        EACH ONE OF THESE CLAIMS DESCRIBES A SYSTEM COMPRISING A

11:11:13  10    PLURALITY OF AIRBORNE PLATFORMS, EACH AIRBORNE PLATFORM

11:11:17  11    COMPRISING AN UNMANNED BALLOON, A PAY LOAD, ET CETERA,

11:11:21  12    ET CETERA.

11:11:22  13        NOW, TO TRACK THE LOCATION OF A SPECIFIC AIRBORNE

11:11:27  14    PLATFORM, WHICH IS A BALLOON CONNECTED TO A BUNCH OF OTHER

11:11:30  15    THINGS, ONE HAS TO HAVE THE GPS RECEIVER WITH THE PLATFORM,

11:11:35  16    RIGHT.

11:11:35  17        YOU CAN'T TRACK -- IF YOU ARE ON A HIKE WITH A GPS

11:11:39  18    RECEIVER, IT KNOWS WHERE YOU ARE BECAUSE YOU ARE WITH IT.  IF

11:11:42  19    YOU LEAVE YOUR GPS RECEIVER AT HOME, THE GPS RECEIVER DOESN'T

11:11:46  20    KNOW WHERE YOU ARE.

11:11:47  21        SO EACH PLATFORM NEEDS ONE.  IT NEEDS TO BE INCLUDED IN

11:11:51  22    THE LIST OF THINGS THAT THE PLATFORM COMPRISES.  SO THAT'S

11:11:55  23    DR. HANSMAN'S ONLY PROBLEM WITH THE CLAIM, OR WITH THE TERM.

11:12:02  24        AND YOUR HONOR, HONESTLY, WE THINK READING THE

11:12:04  25    SPECIFICATION, A PERSON OF ORDINARY SKILL IN THE ART KNOWS

11:12:07   1      EXACTLY WHAT THIS MEANS.

11:12:09   2            THE COURT:  SO I GUESS I WAS A LITTLE UNCLEAR FROM

11:12:11   3      YOUR BRIEFING WHETHER YOU WERE ACTUALLY CONCEDING A DRAFTING

11:12:13   4      ERROR OR YOU ARE SAYING IT COULD BE CONSIDERED A DRAFTING

11:12:16   5      ERROR, BUT DOESN'T HAVE TO BE.

11:12:17   6            MR. MARTIN:  THE WAY I WILL PUT IT, YOUR HONOR, IS

11:12:23   7      THAT WE THINK THE MEANING IS CLEAR TO A PERSON OF ORDINARY

11:12:27   8      SKILL IN THE ART.

11:12:29   9            IF THE COURT DISAGREES, THE FIX HERE IS REASONABLE, AND

11:12:32  10      IT'S NONCONTROVERSIAL.

11:12:33  11            AND GOOGLE RAISES THREE ARGUMENTS TO SAY IT IS.  THE FIRST

11:12:37  12      ARGUMENT, I THINK IS, WELL, SPACE DATA HAS OTHER CLAIMS THAT

11:12:41  13      ARE SIMILAR THAT DON'T HAVE THIS PROBLEM, WHICH THERE'S NO

11:12:45  14      BASIS IN LAW, AND GOOGLE DOESN'T CITE ANY.

11:12:50  15            THE OTHER ARGUMENT GOOGLE RAISES IN ITS BRIEFING, I

11:12:56  16      BELIEVE, IS THAT THERE'S NOTHING -- THAT'S INCORRECT, PARDON

11:13:02  17      ME, YOUR HONOR.  I LOST MY PLACE IN MY BINDER.

11:13:18  18            ONE OF THE OTHER ARGUMENTS THAT GOOGLE MAKES IS THAT THE

11:13:22  19      CORRECTION IS SUBJECT TO REASONABLE DEBATE BECAUSE THE

11:13:25  20      SPECIFICATION MENTIONS A TRACKING SYSTEM AND A GEOGRAPHIC

11:13:31  21      LOCATOR.

11:13:34  22            WELL, YOUR HONOR, THE CLAIM ONLY MENTIONS GEOGRAPHICAL

11:13:38  23      COORDINATES TRACKING SYSTEM.  THERE'S NO REASON TO IMPORT A

11:13:41  24      LOCATOR INTO THE CLAIM, AND THAT'S THE FALSE DICHOTOMY GOOGLE

11:13:44  25      IS DRAWING THERE.

11:13:47  1    THE FINAL ARGUMENT THAT GOOGLE MAKES IS THAT THE GPS --

11:13:59  2    EXCUSE ME -- THE GEOGRAPHIC COORDINATES TRACKING SYSTEM COULD

11:14:01  3    SOMEHOW OPERATE OFF BALLOON.

11:14:03  4    WELL, YOUR HONOR, IF IT'S GOING TO COMPRISE A GPS, THEN IT

11:14:06  5    COULD NOT.

11:14:08  6    AND THAT'S MY ARGUMENT ON THAT POINT.  DO YOU HAVE ANY

11:14:10  7    QUESTIONS?

11:14:11  8         THE COURT:  ALL RIGHT.

11:14:12  9    SO JUST SO THAT I CAN BE SURE ON THIS, YOU ARE NOT

11:14:15  10   CONCEDING A DRAFTING ERROR, BUT IF I DETERMINE THAT IT'S

11:14:18  11   UNCLEAR, THEN YOU WOULD LIKE ME TO TREAT IT AS A DRAFTING ERROR

11:14:23  12   AND CORRECT THE PATENT.

11:14:26  13        MR. MARTIN:  YOUR HONOR, SO THAT'S CORRECT, AND I'LL

11:14:30  14   PHRASE MY ANSWER IN TERMS OF THE MPEP SECTION THAT'S ON POINT.

11:14:35  15   AND THE MPEP SAYS -- WELL, THE QUESTION TO ASK IS JUST THE SAME

11:14:39  16   OLD NORMAL QUESTION YOU ASK IN INDEFINITENESS, CAN ONE OF

11:14:45  17   ORDINARY SKILL IN THE ORDER UNDERSTAND WHAT THIS MEANS?

11:14:47  18   AND THAT IS WITH THE KNOWLEDGE THAT THERE'S A LACK OF

11:14:52  19   ANTECEDENT BASIS, RIGHT, YOUR HONOR.  THE MPEP SECTION THAT

11:14:59  20   APPLIES HERE SAYS IF THERE'S A LACK OF ANTECEDENT BASIS, THAT

11:15:02  21   DOESN'T MEAN THAT IT'S NECESSARILY INDEFINITE.  THE QUESTION TO

11:15:05  22   ASK IS CAN ONE OF ORDINARY SKILL IN THE ART UNDERSTAND WHAT IT

11:15:08  23   MEANS.

11:15:10  24        THE COURT:  OKAY.  THAT'S HELPFUL.

11:15:30  25        MR. HENRY:  YOUR HONOR, SHAYNE HENRY ON BEHALF OF THE

11:15:33  1    DEFENDANTS.

11:15:35  2        IT'S REALLY INDISPUTABLE THAT THERE'S A LACK OF AN

11:15:37  3    ANTECEDENT BASIS FOR THIS CLAIM TERM.  WHEN WE LOOK AT THE

11:15:40  4    CLAIM TERM -- IF YOU WILL GO BACK ONE SLIDE.  NO, TO THE END.

11:16:18  5    THE NEXT ONE.

11:16:18  6        MR. VAN NEST:  IT'S HARD TO GET A GOOD TECH THESE

11:16:21  7    DAYS.

11:16:21  8        MR. HOSIE:  ESPECIALLY AT GOOGLE.

11:16:22  9        MR. HENRY:  SO CLAIM ONE OF THE '503 PATENT DISPLAYS

11:16:26 10    THE SAME PROBLEM THAT EXISTS FOR ALL OF THE CLAIMS AT ISSUE

11:16:28 11    WITH THIS CLAIM TERM.  AND THAT IS WE HAVE THIS LANGUAGE AS A

11:16:31 12    RECITED ELEMENT OF THE CLAIM, WHEREIN AT LEAST ONE OF THE

11:16:34 13    GEOGRAPHICAL COORDINATES TRACKING SYSTEM COMPRISES A GPS.

11:16:37 14        THAT LANGUAGE DOESN'T APPEAR IN THE PREAMBLE, THAT

11:16:40 15    SPECIFIC LANGUAGE DOES NOT APPEAR IN THE SPECIFICATION.

11:16:41 16        SO THERE REALLY IS A LACK OF AN ANTECEDENT BASIS.  AND

11:16:45 17    WHAT SPACE DATA IS REALLY ASKING YOUR HONOR TO DO IS TO WRITE

11:16:47 18    IN THAT LANGUAGE INTO THE PREAMBLE OF THESE CLAIMS.  AND IT'S

11:16:53 19    GOOGLE'S POSITION THAT WHILE COURTS ARE PERMITTED TO CONSTRUE

11:16:56 20    TERMS TO CORRECT MINOR TYPOGRAPHICAL ERRORS, THIS IS WELL

11:17:01 21    OUTSIDE OF WHAT'S CONTEMPLATED BY THAT AUTHORITY.

11:17:03 22        THIS ISN'T THE CASE WHERE A SINGLE WORD NEEDS TO BE

11:17:06 23    ALTERED OR OMITTED TO RESOLVE SOME INADVERTENT AMBIGUITY.

11:17:09 24    INSTEAD, SPACE DATA ASKS YOUR HONOR TO CURE AN UNDISPUTED LACK

11:17:13 25    OF ANTECEDENT BASIS BY READING A 13-WORD CLAUSE INTO THE

11:17:18  1      PREAMBLE OF FIVE DIFFERENT CLAIMS ACROSS TWO DIFFERENT PATENTS.

11:17:22  2          MOREOVER, WE'VE EXPLAINED IN OUR BRIEFING WHY WE BELIEVE A

11:17:25  3      CORRECTION OF THIS NATURE WOULD BE UNWARRANTED IN LIGHT OF THE

11:17:27  4      SPECIFICATION.

11:17:28  5          AND SO AS NOT TO BELABOR THE POINT, YOUR HONOR, WE WILL

11:17:30  6      REST ON OUR BRIEFING.

11:17:31  7              THE COURT:  OKAY.  THANK YOU.

11:17:32  8          WELL, THE BRIEFING IS CLEAR ON THIS POINT, I JUST HAVE TO

11:17:35  9      DECIDE HOW BIG A DEAL THIS IS.

11:17:38  10             MR. MARTIN:  YOUR HONOR, MAY I HAVE BRIEF FOLLOWUP?

11:17:42  11             THE COURT:  SURE, OF COURSE.

11:17:46  12             MR. MARTIN:  FIRST, YOUR HONOR, THE FACT THAT THIS

11:17:50  13     ISSUE OCCURS ACROSS FIVE CLAIMS AND TWO PATENTS MAKES IT MORE,

11:17:56  14     NOT LESS LIKELY THAT IT IS A DRAFT, MINOR DRAFTING ERROR THAT

11:18:02  15     CAN BE CORRECTED.

11:18:02  16         SECOND, YOUR HONOR, CORRECTING A LACK OF ANTECEDENT BASIS

11:18:10  17     IS SOMETHING THAT GOOGLE HAS TOLD THIS COURT BEFORE IT

11:18:14  18     SHOULDN'T DO, AND THIS COURT HAS DONE IT IN

11:18:21  19     WILLIAMSON V. GOOGLE.

11:18:21  20             THE COURT:  WAS I AFFIRMED?

11:18:24  21             MR. VAN NEST:  THAT REMAINS TO BE SEEN, YOUR HONOR.

11:18:26  22             THE COURT:  OKAY.  THERE YOU HAVE IT.  YOU SEE.

11:18:30  23             MR. MARTIN:  THANK YOU, YOUR HONOR.

11:18:31  24             THE COURT:  THANK YOU.

11:18:34  25         I CAN'T PUT TOO MUCH STOCK IN WHAT I'VE DONE BEFORE, UNTIL

11:18:40   1       I'M TOLD I DID IT RIGHT.

11:18:41   2           ALL RIGHT.  ARE WE READY TO MOVE TO OUR LAST TERM?

11:18:46   3           MR. MARTIN:  I'M BACK UP.

11:18:54   4           THE COURT:  AND THIS IS "SUBSTANTIALLY DRIFTS ALONG."

11:18:59   5           MR. MARTIN:  "WITH THE WINDS, TAKING INTO ACCOUNT THE

11:19:01   6    WINDS, TO PREVENT THE AIRBORNE PLATFORM FROM BECOMING AN

11:19:09   7    UNCONTROLLED LIGHTER THAN AIR PLATFORM."

11:19:13   8           YOUR HONOR, AS ORIGINALLY BRIEFED IN SPACE DATA'S OPENING

11:19:17   9    BRIEF, THIS TERM OR A VARIANT OF IT, APPEARED IN ASSERTED

11:19:24   10   CLAIMS 4 AND 28 OF THE '503 PATENT.

11:19:31   11          AFTER RECEIVING GOOGLE'S OPPOSITION, WHICH RELATES ONLY, I

11:19:37   12   THINK TO CLAIMS FOUR AND FIVE OF THE '503 PATENTS, SPACE DATA

11:19:43   13   ELECTED TO NO LONGER ASSERT CLAIM FOUR.  SPACE DATA, IN ITS

11:19:47   14   INITIAL ELECTION OF ASSERTED CLAIMS, DID NOT ASSERT CLAIM FIVE.

11:19:51   15          THE COURT:  SO I AGREE WITH YOU THAT THERE'S NO

11:19:53   16   BRIEFING ABOUT CLAIM 28, I KIND OF LOOKED AT THAT AS WELL, I

11:19:58   17   CERTAINLY WANT TO HEAR ABOUT THAT.  YOU ARE ACTUALLY SUGGESTING

11:20:01   18   THAT THERE'S NO DISPUTE HERE.

11:20:03   19          MR. MARTIN:  I WOULDN'T GO THAT FAR, YOUR HONOR.

11:20:05   20          THE COURT:  OKAY.  THAT'S GOOD.

11:20:07   21          MR. MARTIN:  I THINK THERE'S SOME DISPUTE, BUT I

11:20:10   22   THINK THE DISPUTE MAY BE RELATIVELY NARROW.

11:20:13   23          THE COURT:  OKAY.

11:20:14   24          MR. MARTIN:  THE PARTIES, I THINK, AGREE THAT CLAIM

11:20:18   25   28 DEPENDS FROM CLAIM 20 OF THE '503 PATENT.  I THINK THE

11:20:23   1        PARTIES AGREE THAT "SUBSTANTIALLY DRIFTS ALONG WITH THE WIND

11:20:28   2        CURRENTS," SIMPLY ACCOUNTS FOR THE FACT THAT BALLOONS HAVE MASS

11:20:32   3        AND VOLUME.

11:20:33   4            SO AS A BALLOON IS BEING BLOWN ALONG BY A WIND CURRENT, IT

11:20:37   5        EXPERIENCES SOME DRAG.  IF THE WIND ACCELERATES TO A NEW SPEED,

11:20:44   6        IT TAKES TIME TO ACCELERATE THE BALLOON ATTACHED TO THE

11:20:51   7        COMPONENTS THAT ALL TOGETHER MAKE THE PLATFORM.

11:20:55   8            IT TAKES TIME FOR THAT TO COME UP TO THE SPEED OF THE

11:20:57   9        WIND, YOUR HONOR.  SO IT SIMPLY ACCOUNTS FOR NATURAL FORCES.

11:21:02  10            AND AT LEAST DR. HANSMAN HAS TESTIFIED HE UNDERSTANDS WHAT

11:21:10  11        THE LAST BIT OF THIS MEANS, AN UNCONTROLLABLE LIGHT OF AIRBORNE

11:21:15  12        PLATFORM DR. HANSMAN TESTIFIES THAT IT'S NOT CONTROLLED.  THE

11:21:20  13        PLATFORM IS "NOT CONTROLLED."

11:21:24  14                THE COURT:  THE BIRTHDAY BALLOON EXAMPLE.

11:21:26  15                MR. MARTIN:  AND YOUR HONOR, IT'S IMPORTANT TO LOOK

11:21:28  16        AT THE CLAIM THAT CLAIM 28 DEPENDS FROM.

11:21:33  17            SO CLAIM 20 IS AN INDEPENDENT CLAIM HERE.  AND IT

11:21:37  18        COMPRISES, AGAIN, A PLURALITY AIRBORNE PLATFORMS, AND EACH

11:21:42  19        AIRBORNE PLATFORM HAS A NUMBER OF ELEMENTS.

11:21:45  20            THERE IS AN UNMANNED BALLOON.  THERE IS, AMONG THE OTHER

11:21:51  21        ELEMENTS, A SENSOR, AND A PROCESSOR.  AND YOUR HONOR, THERE'S

11:22:00  22        ONE OTHER ELEMENT IN THIS CLAIM THAT'S IMPORTANT TO CLAIM 28,

11:22:07  23        THE GEOGRAPHIC COORDINATES TRACKING SYSTEM.

11:22:12  24            SO THE AIRBORNE PLATFORM IS ALL OF THOSE THINGS, RIGHT,

11:22:16  25        AND SOME OTHER THINGS AS WELL.  BUT FOR THE PURPOSES OF

11:22:18  1    EVALUATING CLAIM 28 AND UNDERSTANDING IT, THOSE ARE THE

11:22:21  2    IMPORTANT PARTS.

11:22:27  3        YOUR HONOR, HERE WE HAVE A POINT SOMEWHERE IN SOUTHERN

11:22:32  4    ARIZONA, WITH THE PROVERBIAL LINE IN THE SAND BETWEEN THE

11:22:36  5    UNITED STATES AND MEXICO.

11:22:39  6        AND WE ARE GOING TO PUT UP A PLATFORM, RIGHT.  AND THE

11:22:44  7    PLATFORM HAS A NUMBER OF ELEMENTS, INCLUDING AN UNMANNED

11:22:47  8    BALLOON, A SENSOR, GPS AND A PROCESSOR.

11:22:51  9        NOW, THE BALLOON CAN DRIFT ALONG WITH THE WIND, AND IT

11:22:55  10   COULD BE THAT THE WIND IS BLOWING IT OFF TO MEXICO.  AND IT

11:23:01  11   COULD BE THAT YOU DON'T WANT THE BALLOON -- THE SYSTEM DOESN'T

11:23:06  12   WANT THE BALLOON TO BE IN MEXICO BECAUSE IT'S ILLEGAL TO BE IN

11:23:09  13   MEXICO, BECAUSE MAYBE IT'S ILLEGAL TO TRANSMIT IN MEXICO,

11:23:12  14   RIGHT, SO TRANSMITTERS AS WELL.

11:23:14  15       BUT THERE COULD BE A LOT OF REASONS TO AVOID CROSSING THE

11:23:18  16   BORDER HERE.  AND SO THE BALLOON -- WE SAW THE BALLOON

11:23:22  17   SUBSTANTIALLY DRIFT, RIGHT, IT SUBSTANTIALLY DRIFTED WITH THE

11:23:25  18   WIND CURRENT OVER THE BORDER.

11:23:26  19       SO WHAT DOES "TAKING INTO ACCOUNT" MEAN?  TAKING INTO

11:23:29  20   ACCOUNT MEANS THE WIND -- THE BALLOON KNOWS WHERE IT'S GOING,

11:23:33  21   AND IT KNOWS WHERE IT'S GOING BECAUSE THE PLATFORM, WHICH IT IS

11:23:40  22   A PART OF, HAS COMPONENTS LIKE A GPS DEVICE, AND A SENSOR.  AND

11:23:45  23   THAT COULD BE A WIND SENSOR, YOUR HONOR.

11:23:49  24       SO THE BALLOON KNOWS WHERE IT'S GOING, IT'S DRIFTING BUT

11:23:51  25   IT'S NOT AIMLESS.  AND HERE, IT KNOWS IT'S GONE OVER THE

11:23:55  1   MEXICAN BORDER.  SO IT COULD TAKE A NUMBER OF ACTIONS.  IT

11:23:58  2   COULD CHANGE ALTITUDE SO THAT IT IS BLOWN BACK BY A DIFFERENT

11:24:04  3   WIND CURRENT, BLOWN BACK OVER THE BORDER.

11:24:09  4       SO THAT'S ONE WAY TO TAKE INTO ACCOUNT THE WIND CURRENT,

11:24:11  5   YOUR HONOR, IS TO STEER THE BALLOON.

11:24:14  6       ANOTHER WAY THAT THE '503 ASKS ABOUT, PARTICULARLY, IS

11:24:19  7   WHAT HAPPENS IF THE PLATFORM VELOCITY GETS TOO HIGH?  THESE

11:24:27  8   BALLOONS RECEIVE COMMAND SIGNALS FROM THE GROUND.  NOT ALL THE

11:24:29  9   TIME, A LOT OF IT IS PREPROGRAMMED INTO THE PROCESSOR, BUT

11:24:33  10  THESE BALLOONS CAN RECEIVE COMMAND CONTROL SIGNALS FROM THE

11:24:37  11  GROUND.  AND THAT'S MADE CLEAR, YOUR HONOR, IN COLUMN -- MY

11:25:11  12  APOLOGIES, YOUR HONOR.  IT'S MADE CLEAR IN COLUMN 6, LINES 10

11:25:19  13  THROUGH 15 OF THE '503 PATENT.

11:25:22  14      SO THESE BALLOONS RECEIVE COMMAND AND CONTROL SIGNALS.

11:25:25  15  AND IF THE PLATFORM IS MOVING TOO FAST, THERE CAN BE A DOPPLER

11:25:29  16  SHIFT IN THE CONTROL SIGNAL ITSELF.  THESE CONTROL SIGNALS ARE

11:25:35  17  ELECTROMAGNETIC FREQUENCY SIGNALS.  IF SOMETHING IS MOVING TOO

11:25:39  18  FAST, THERE COULD BE A DOPPLER SHIFT AND THE BALLOON MIGHT NOT

11:25:43  19  GET THE MESSAGE.

11:25:44  20      AND DR. HANSMAN AGREES WITH THAT.  HE SAYS YOU MAY BE

11:25:48  21  AFFECTING IT FASTER THAN THE DOPPLER SHIFT, AND THAT WOULD

11:25:52  22  CREATE PROBLEMS WITH YOUR RECEIVERS.

11:25:54  23      SO IF THE BALLOON IS MOVING TOO QUICKLY, ITS RECEIVER IS

11:25:57  24  ONLY CONFIGURED TO PICK UP TRANSMISSIONS ON A CERTAIN

11:26:01  25  FREQUENCY.  AND IF IT MOVES TOO FAST, THE CONTROL SIGNAL THAT

|          |    |                                                                      |
|----------|----|----------------------------------------------------------------------|
| 11:26:05 | 1  | NORMALLY WORKS JUST FINE WITH THAT ANTENNA, WILL BE SORT OF          |
| 11:26:09 | 2  | STRETCHED OUT BECAUSE THE BALLOON IS MOVING AWAY FROM IT AS THE      |
| 11:26:12 | 3  | CONTROL SIGNAL IS MOVING TOWARDS THE BALLOON.  SO IT COULD BE        |
| 11:26:16 | 4  | UNCONTROLLED IF IT MOVES TOO FAST.                                   |
| 11:26:18 | 5  | AND ONE OF THE WAYS THE BALLOON CAN TAKE INTO ACCOUNT               |
| 11:26:22 | 6  | MOVING TOO QUICKLY, RIGHT, IS IT CAN SAY OKAY, I'M MOVING            |
| 11:26:27 | 7  | FASTER THAN I SHOULD BE, I KNOW THAT AT THIS SPEED, I'M NOT          |
| 11:26:31 | 8  | ABLE TO RECEIVE CONTROL SIGNALS, SO I'M NOW UNCONTROLLED, AND I      |
| 11:26:37 | 9  | TAKE THAT INTO ACCOUNT BY TERMINATING.                               |
| 11:26:42 | 10 | THE COURT:  SO TAKING INTO ACCOUNT REALLY MEANS                     |
| 11:26:45 | 11 | SHIFTING GEARS, REPOSITIONING, ALTERING COURSE.  I DON'T KNOW        |
| 11:26:49 | 12 | WHAT --                                                              |
| 11:26:50 | 13 | MR. MARTIN:  TERMINATING.                                           |
| 11:26:50 | 14 | THE COURT:  TERMINATING, YEAH.                                      |
| 11:26:53 | 15 | MR. MARTIN:  DOING SOMETHING.                                       |
| 11:26:57 | 16 | NOW, YOUR HONOR, ARE THERE ANY QUESTIONS?                           |
| 11:27:00 | 17 | THE COURT:  IT'S A LOT TO READ INTO "TAKING INTO                    |
| 11:27:05 | 18 | ACCOUNT," I DON'T THINK IT'S UNFAIR, BUT BECAUSE YOU GAVE ME NO      |
| 11:27:08 | 19 | CONSTRUCTION, AND SO YOU ARE READING A LOT OF MEANING INTO          |
| 11:27:11 | 20 | "TAKING INTO ACCOUNT," YOU HAVE TO EXPLAIN TO A JURY.               |
| 11:27:17 | 21 | SO, I MEAN, BECAUSE THERE ARE LOTS OF THINGS THAT IT CAN            |
| 11:27:20 | 22 | DO.  I MEAN, "TERMINATING" IS ENTIRELY DIFFERENT THAN USING THE     |
| 11:27:26 | 23 | VENTS TO SLOW IT DOWN OR TO REPOSITION IT.  I THINK YOU CAN         |
| 11:27:31 | 24 | ACTUALLY CHANGE DIRECTION WITH THESE BALLOONS THROUGH THIS          |
| 11:27:33 | 25 | CIRCULAR --                                                          |

| | | |
|---|---|---|
| 11:27:34 | 1 | MR. MARTIN:  THAT'S CORRECT, YOUR HONOR. |
| 11:27:36 | 2 | THE COURT:  BUT THAT'S WHOLLY DIFFERENT THAN |
| 11:27:37 | 3 | TERMINATING. |
| 11:27:38 | 4 | AND SO I'M NOT SEEING HOW ALL OF THOSE THINGS ARE |
| 11:27:44 | 5 | INCLUDED, BUT ALL I DO KNOW IS THAT YOU ARE NOT TELLING THE |
| 11:27:47 | 6 | JURY ANYTHING BY PLAIN AND ORDINARY MEANING. |
| 11:27:54 | 7 | MR. MARTIN:  SO AT HIS DEPOSITION, I ASKED |
| 11:27:58 | 8 | DR. HANSMAN, THIS IS ON PAGE 114 OF HIS DEPOSITION TRANSCRIPT, |
| 11:28:05 | 9 | WHICH WAS, I BELIEVE EXHIBIT 6 TO THE HOSIE DECLARATION IN |
| 11:28:09 | 10 | SUPPORT OF PLAINTIFF'S OPENING BRIEF. |
| 11:28:12 | 11 | I ASKED HIM, "WAS IT YOUR TESTIMONY THAT TAKING INTO |
| 11:28:15 | 12 | ACCOUNT THE WIND CURRENTS COULD MEAN CONSIDERING THE WIND |
| 11:28:18 | 13 | CURRENTS?" |
| 11:28:20 | 14 | AND HE RESPONDED, "YES.  IF YOU CONSIDER THE WIND CURRENTS |
| 11:28:26 | 15 | FOR -- YEAH, YES, TAKING INTO ACCOUNT IS TAKING INTO ACCOUNT OR |
| 11:28:29 | 16 | CONSIDERING THEM FOR SOME PURPOSE." |
| 11:28:31 | 17 | THE COURT:  WELL, THAT'S -- OF COURSE THAT'S THE |
| 11:28:33 | 18 | WHOLE DEBATE HERE AS TO WHETHER IT'S JUST, I NOTE THAT I'M |
| 11:28:37 | 19 | ABOUT TO BECOME A FREE-FLOATING BALLOON, AND THAT'S JUST THE |
| 11:28:43 | 20 | WAY IT IS, I'M AWARE OF MY SURROUNDINGS; VERSUS, I'M TAKING IT |
| 11:28:47 | 21 | INTO ACCOUNT AND CHANGING COURSE. |
| 11:28:48 | 22 | THAT'S REALLY -- I'M VERY CONCERNED ABOUT HOW MUCH YOU |
| 11:28:50 | 23 | READ INTO "TAKING INTO ACCOUNT."  I MEAN, IT JUST FALLS, |
| 11:28:55 | 24 | REALLY, IN THE DIRECTION OF GOOGLE'S CONCERN WITH THIS, IS THAT |
| 11:28:59 | 25 | THERE ARE ACTUALLY TWO METHODS HERE, AND WE DON'T KNOW WHICH |

| | | |
|---|---|---|
| 11:29:03 | 1 | ONE IT IS.  WHETHER IT'S -- WHETHER IT'S JUST CONTINUING TO |
| 11:29:08 | 2 | DRIFT ALONG, AND SAYING, AND YOU KNOW, THE GROUND CREW SAYS |
| 11:29:12 | 3 | DISTANCE BETWEEN BALLOON, WE TOOK IT INTO ACCOUNT, WE KNOW |
| 11:29:15 | 4 | WHAT'S HAPPENING; OR IT'S A MATTER OF THE PROCESSOR READING THE |
| 11:29:18 | 5 | DATA, TAKING INTO ACCOUNT AND REPOSITIONING TO STAY ON COURSE. |
| 11:29:23 | 6 | I DON'T KNOW WHERE THAT IS.  AND, I MEAN, I WILL HEAR MORE |
| 11:29:27 | 7 | OF THAT WHEN I HEAR FROM GOOGLE, BUT I THINK THAT'S VALID. |
| 11:29:31 | 8 | MR. MARTIN:  YOUR HONOR, I THINK SHIFTING GEARS IS |
| 11:29:33 | 9 | THE RIGHT WAY TO THINK ABOUT IT, IT'S DOING SOMETHING. |
| 11:29:35 | 10 | THE COURT:  BUT WHY DOES "TAKING INTO ACCOUNT" MEAN |
| 11:29:37 | 11 | THAT?  I MEAN, I DON'T KNOW HOW I GLEAN THAT FROM THE PATENT, |
| 11:29:42 | 12 | BECAUSE TAKING INTO ACCOUNT COULD JUST MEAN TAKING NOTE. |
| 11:29:48 | 13 | MR. MARTIN:  BUT, YOUR HONOR -- |
| 11:29:49 | 14 | THE COURT:  IT COULD SIMPLY BE A COMMUNICATION TO THE |
| 11:29:50 | 15 | GROUND THAT YOU'VE LOST ANOTHER ONE. |
| 11:29:54 | 16 | MR. MARTIN:  YOUR HONOR, THIS PARTICULAR CLAIM, CLAIM |
| 11:29:57 | 17 | 28, THERE ARE TWO CLAIMS UP FOR CONSTRUCTION IN WHICH SIMILAR |
| 11:30:01 | 18 | LANGUAGE APPEARED. |
| 11:30:02 | 19 | BUT THIS PARTICULAR CLAIM, CLAIM 28 HAS A LITTLE BIT OF |
| 11:30:05 | 20 | EXTRA LANGUAGE AT THE END.  IT SAYS "TAKING INTO ACCOUNT THE |
| 11:30:08 | 21 | WIND CURRENTS TO PREVENT THE AIRBORNE PLATFORM FROM BEING -- " |
| 11:30:13 | 22 | THE COURT:  OH, TO PREVENT, OKAY.  ALL RIGHT.  WELL, |
| 11:30:18 | 23 | THAT'S -- YES. |
| 11:30:20 | 24 | MR. HOSIE:  IT'S THE ACTION. |
| 11:30:25 | 25 | THE COURT:  TO PREVENT, YEAH.  THAT -- YES, I SEE |

```
11:30:33  1      THAT.

11:30:35  2              MR. MARTIN:  YOUR HONOR, UNLESS YOU HAVE ANY OTHER

11:30:37  3      QUESTIONS, I CAN TURN IT OVER TO OPPOSING COUNSEL.

11:30:39  4              THE COURT:  NO.  I GUESS THAT SHIFTS THE ARGUMENT

11:30:42  5      THEN.

11:30:42  6          THANK YOU.

11:30:42  7              MR. MARTIN:  YOU'RE WELCOME.

11:30:46  8              MR. BRUNS:  HELLO AGAIN, YOUR HONOR.

11:30:57  9          ANDREW BRUNS FOR THE PLAINTIFFS ONCE AGAIN.

11:31:00  10         SO I WILL GET RIGHT TO THE POINT, I THINK YOU HIT THE NAIL

11:31:04  11     ON THE HEAD THAT OUR CONCERN WITH THIS TERM IS FOCUSED ON

11:31:08  12     TAKING INTO ACCOUNT THE WIND CURRENTS, AND THE FACT THAT THAT

11:31:12  13     IS INDEFINITE.  THERE IS NO DISPUTE THAT THIS IS NOT A TERM OF

11:31:20  14     ART.  IT IS NOT DEFINED IN THE PATENT.  AND THE TERM, ITSELF,

11:31:24  15     IS NOT REALLY CLEAR AS A WHOLE.  IN SHORT, IT PROVIDES NO

11:31:28  16     GUIDANCE TO A PERSON OF SKILL WHAT THE BOUNDS OF THIS PATENT

11:31:30  17     ACTUALLY ARE.  AND DESPITE ALL OF THAT, SPACE DATA'S ONLY OFFER

11:31:35  18     IS THAT IT IS PLAIN MEANING.

11:31:36  19         IF WE GO TO THE NEXT SLIDE.

11:31:38  20         I THINK THE FACT THAT THIS IS INDEFINITE IS CLEAR FROM

11:31:42  21     THEIR EXPERT'S DEPOSITION TESTIMONY.  AND AS YOU ALLUDED TO

11:31:47  22     EARLIER, YOUR HONOR, DR. PULLEN REFERENCED TWO DIFFERENT VERY

11:31:51  23     DIFFERENT DEFINITIONS FOR THIS TERM.

11:31:55  24         THE FIRST WOULD DEFINE TAKING INTO ACCOUNT THE WIND

11:31:59  25     CURRENTS.  IT'S SIMPLY A REINFORCEMENT OF THE EARLIER LANGUAGE
```

11:32:03  1    OF THE CLAIM.  SO ANY BALLOON THAT IS SUBSTANTIALLY DRIFTING,

11:32:07  2    SUCH AS A MYLAR BIRTHDAY BALLOON, WOULD BE TAKING INTO ACCOUNT

11:32:12  3    THE WIND CURRENTS.

11:32:17  4         UNDER THIS DEFINITION, THIS IS NOTHING FOR THE BALLOON TO

11:32:20  5    DO, THERE IS NO ACTION TAKEN.

11:32:22  6         THE COURT:  WELL, I FELL INTO THE SAME TRAP OF NOT

11:32:25  7    READING THE ENTIRE CLAIM.  THERE IS, YOU TAKE INTO ACCOUNT TO

11:32:30  8    PREVENT THE AIRBORNE PLATFORM FROM BECOMING UNCONTROLLED.

11:32:35  9         SO IT IS TAKING INFORMATION IN ORDER TO DO SOMETHING, AS

11:32:39  10   OPPOSED TO JUST KNOW ABOUT IT.  SO I WAS MISTAKEN BY NOT

11:32:43  11   READING THE WHOLE THING AND JUST GETTING STUCK IN THE PHRASE.

11:32:47  12        MR. BRUNS:  WELL, I THINK THERE ARE A COUPLE PROBLEMS

11:32:49  13   THERE.  I'M NOT SURE WHAT A JURY WOULD DO -- OR, PARDON ME, I'M

11:32:52  14   NOT SURE A PERSON -- WHETHER WE KNOW WHAT A PERSON OF SKILL IN

11:32:56  15   THE ART WOULD DO WITH THAT EXTRA PHRASE, I'M NOT SURE EXACTLY

11:32:59  16   WHAT --

11:33:01  17        THE COURT:  WELL, TO PREVENT IT FROM BECOMING

11:33:03  18   UNCONTROLLED MEANS TO MAINTAIN CONTROL.

11:33:06  19        MR. BRUNS:  SO ONE --

11:33:07  20        THE COURT:  THAT'S NOT HARD.

11:33:09  21        MR. BRUNS:  ONE EXAMPLE, THOUGH, WAS TERMINATING.

11:33:11  22   AND IT SEEMS DIFFICULT TO --

11:33:13  23        THE COURT:  YEAH.  THAT, I WASN'T REALLY BUYING THE

11:33:15  24   "TERMINATING."  I DON'T KNOW WHERE THAT COMES FROM.

11:33:17  25        MR. BRUNS:  YEAH.

11:33:18  1          THE COURT:  BUT PREVENTING -- I SUPPOSE IF YOU

11:33:22  2     TERMINATE IT, IT'S NOT GOING TO BE UNCONTROLLED.

11:33:26  3          MR. BRUNS:  WELL, IT'S ALSO NOT SUBSTANTIALLY

11:33:29  4     DRIFTING ANYMORE.  I JUST DON'T THINK THAT'S A GOOD FIT.

11:33:35  5        I THINK IF WE COULD PROBABLY SKIP AHEAD TO --

11:33:39  6          THE COURT:  LET'S JUST BACK UP TO GET AN

11:33:41  7     UNDERSTANDING.

11:33:42  8        SO "SUBSTANTIALLY DRIFTING ALONG" REALLY MEANS THAT THE

11:33:44  9     PRIMARY SOURCE OF MOVEMENT DIRECTION IS THE NATURAL WIND.

11:33:51 10          MR. KAMBER:  I BELIEVE THAT'S RIGHT, YOUR HONOR.

11:33:53 11          THE COURT:  SO "SUBSTANTIALLY DRIFTING ALONG WITH THE

11:33:55 12     WIND CURRENTS," AND AS I LEARNED LAST WEEK, THE BALLOON HAS THE

11:34:04 13     ABILITY, THROUGH SOME OTHER MECHANICAL ASPECTS TO IT, TO

11:34:12 14     INCREASE THE ALTITUDE, DECREASE IT, OR I GUESS THAT'S REALLY

11:34:16 15     THE PRIMARY THING TO CONTINUE TO TAKE ADVANTAGE OF THE WIND

11:34:18 16     CURRENTS.

11:34:22 17        AND SO IT'S ANYTHING TO SUBSTANTIALLY DRIFT ALONG WITH

11:34:25 18     ALTERATIONS TO ITSELF, ESSENTIALLY, TO AFFECT THE WIND CURRENT.

11:34:37 19          MR. BRUNS:  WELL, I THINK EVEN UNDER THIS VERSION OF

11:34:39 20     THE DEFINITION, THERE'S AN INTERNAL INCONSISTENCY WITHIN THE

11:34:42 21     TERM.  WE HAVE A BALLOON THAT IS SUBSTANTIALLY DRIFTING, WHICH

11:34:45 22     IS --

11:34:45 23          THE COURT:  BUT THEY ALL SUBSTANTIALLY DRIFT BECAUSE

11:34:48 24     THEY ARE NOT PROPELLED BY A POWER SOURCE.  I MEAN, ISN'T THAT

11:34:52 25     RIGHT?

11:34:53  1          MR. BRUNS:  THAT'S CORRECT, YES.

11:34:54  2          THE COURT:  SO THAT'S ALL THEY DO IS DRIFT WITH

11:34:56  3     THE -- AND I THINK THAT THE VENTING AND THE -- THERE'S AN

11:34:59  4     ABILITY TO INCREASE THE AMOUNT OF AIR AND DECREASE THE AMOUNT

11:35:02  5     OF AIR IN THE BALLOON, IS TO AFFECT ITS ALTITUDE WHERE THE WIND

11:35:09  6     DIRECTION AND SPEED WILL BE DIFFERENT AT DIFFERENT ALTITUDE,

11:35:12  7     CORRECT?

11:35:14  8          MR. BRUNS:  CORRECT.

11:35:15  9          THE COURT:  SO THEY ARE ALSO DRIFTING, BUT THEY ARE

11:35:17 10     DRIFTING AT DIFFERENT LEVELS.  DID I UNDERSTAND THAT CORRECTLY?

11:35:20 11          MR. BRUNS:  I THINK THAT'S RIGHT.

11:35:21 12       I STILL FEEL THAT THE NOTION THAT IT'S TAKING INTO

11:35:25 13     ACCOUNT, AND UNDER THIS DEFINITION, WHILE DOING NOTHING BUT

11:35:28 14     DRIFTING, SEEMS INCONSISTENT TO ME.

11:35:31 15       AND I'M ALSO TROUBLED BY HOW AN UNMANNED BALLOON IS TAKING

11:35:36 16     INTO ACCOUNT, THE WINDS IN THIS WAY.

11:35:39 17          THE COURT:  WELL, IT HAS A PROCESSOR THAT IS READING

11:35:42 18     THE INFORMATION.  IT'S PROGRAMMED TO DO SOMETHING WHEN IT HITS

11:35:45 19     A CERTAIN GPS LOCATION.  I GATHER THAT'S WHAT I'M BEING TOLD

11:35:50 20     HERE.

11:35:51 21       YOU KNOW, I MEAN, IN A SENSE, AT THAT HIGH LEVEL, IT'S NOT

11:35:57 22     COMPLICATED THAT WHEN THE GPS COORDINATES READ A CERTAIN

11:36:01 23     LOCATION THAT IS INCORRECT, THE PROCESSOR IS GOING TO INCREASE

11:36:07 24     THE ALTITUDE, DECREASE THE ALTITUDE, BASED ON THE WINDS, AND

11:36:11 25     IT'S GOING TO READ THE WINDS, AND IT'S GOING TO DECIDE WHERE IN

11:36:15  1      THE STRATOSPHERE THIS BALLOON NEEDS TO BE TO REMAIN ON COURSE.

11:36:21  2              MR. BRUNS:  I GUESS I WOULD JUST ADD, YOUR HONOR,

11:36:23  3      THAT I THINK PLAIN MEANING IS STILL NOT THE RIGHT ANSWER HERE.

11:36:26  4              THE COURT:  SO PLAIN MEANING, YOU KNOW, I THINK THAT

11:36:29  5      EVEN IN THE MERE FIVE YEARS I'VE BEEN DOING THIS, THAT I THINK

11:36:32  6      THE FEDERAL CIRCUIT HAS MOVED AWAY FROM PLAIN MEANING.

11:36:35  7          I THINK THESE TRIALS -- YOU'VE HAD MANY TRIALS, THIS IS NO

11:36:38  8      END OF GRIEF, AND SO I'M TRYING TO AVOID SOME OF THAT BECAUSE I

11:36:45  9      DON'T THINK -- I MEAN, IT'S EASY TO SAY PLAIN MEANING, AND WE

11:36:51  10     THINK WE'VE SOLVED SOMETHING, AND THEN WE REALIZE WE'VE JUST

11:36:54  11     POSTPONED THE DEBATE.

11:36:57  12             MR. BRUNS:  FOR SURE.  WE'VE SPENT A HALF AN HOUR

11:36:59  13     TALKING ABOUT IT AFTER ALL THIS BRIEFING.

11:37:01  14             THE COURT:  BUT MR. HOSIE REASONABLY SUBMITTED PLAIN

11:37:04  15     AND ORDINARY, IT'S CERTAINLY LEGITIMATE TO DO THAT, AND I'M

11:37:07  16     ASKING HIM TO COME UP WITH SOMETHING THAT HE WILL NEED SOME

11:37:10  17     TIME TO WORK ON AND THEN YOU NEED TO REACT TO IT.

11:37:14  18         SO, YOU KNOW, YOU MAY BE RIGHT, THIS IS INDEFINITE, AND I

11:37:17  19     DON'T WANT TO GET TOO FAR OFF, IT'S JUST THAT IF I DISAGREE

11:37:21  20     WITH YOUR ARGUMENT, I WANT TO KNOW WHERE I AM.

11:37:26  21         AND, YOU KNOW, I'M A LITTLE BIT STUCK ON THE "TO PREVENT"

11:37:29  22     LANGUAGE, WHICH I THINK TO READ THAT OUT OF THE CONSTRUCTION,

11:37:35  23     WE KNOW EXACTLY WHY WE ARE TAKING INTO ACCOUNT THE WIND

11:37:40  24     CURRENT, WHERE THERE'S AN EXACT REASON, AND THAT MAY BE ENOUGH

11:37:42  25     TO MAKE THIS WORK.

11:37:43  1      MR. BRUNS:  YOUR HONOR, I GUESS I WOULD JUST STAND BY

11:37:48  2   SOME OF THE EARLIER COMMENTS I MADE.

11:37:49  3      THE COURT:  OKAY.  AND I'M GOING TO LOOK BACK AT YOUR

11:37:52  4   ARGUMENT AND SEE HOW YOU ADDRESS THE "TO PREVENT" PART IN YOUR

11:37:55  5   ARGUMENT.  I DON'T RECALL THAT YOU DID.

11:37:57  6      MR. BRUNS:  I DON'T BELIEVE IT'S IN THE BRIEF.

11:37:58  7      THE COURT:  "TAKING INTO ACCOUNT," YOU EXTRACTED THAT

11:38:03  8   AS A PHRASE.

11:38:04  9      MR. BRUNS:  WE DID, YOUR HONOR.

11:38:05  10      THE COURT:  I DID TOO, I FOLLOWED RIGHT ALONG WITH

11:38:07  11   YOU.

11:38:07  12      MR. BRUNS:  WE WERE LARGELY FOCUSED ON FOUR AND FIVE.

11:38:10  13      THE COURT:  IS THAT A PROBLEM FOR YOU?

11:38:12  14      MR. BRUNS:  I DON'T THINK SO, I THINK I'M JUST

11:38:14  15   EXPLAINING WHERE OUR FOCUS WAS AT THE TIME OF OUR BRIEFING.  WE

11:38:17  16   HAD -- FOUR, FIVE AND 28 WERE ALL ON THE TABLE, AND IN THE

11:38:21  17   REPLY BRIEF THEY NO LONGER ASSERT FOUR OR FIVE.

11:38:29  18      THE COURT:  SO I'M JUST -- ONCE I ACTUALLY -- I'M

11:38:31  19   JUST LOOKING AT FOUR AND FIVE NOW BECAUSE I DIDN'T REVIEW THEM

11:38:37  20   BEFORE --

11:38:39  21      MR. BRUNS:  SURE.

11:38:39  22      THE COURT:  NO, FIVE SAYS TO "PREVENT THE AIRBORNE

11:38:41  23   PLATFORM."  SO FIVE DOES INCLUDE THAT LANGUAGE, FOUR DOES NOT.

11:38:49  24      MR. BRUNS:  RIGHT.

11:38:50  25      THE COURT:  AND MR. HOSIE, YOU SAID YOU DROPPED FOUR

11:38:53  1    BECAUSE OF THE OPPOSITION BUT FIVE WAS DROPPED FOR SEPARATE

11:39:01  2    REASONS?

11:39:02  3              MR. MARTIN:  YOUR HONOR, WHEN SPACE DATA MADE ITS

11:39:05  4    ELECTION OF CERTAIN CLAIMS IT SIMPLY DIDN'T ELECT TO ASSERT

11:39:09  5    CLAIM FIVE.

11:39:09  6              THE COURT:  YOU'VE NEVER ASSERTED IT.

11:39:10  7              MR. MARTIN:  CORRECT, YOUR HONOR.  MAYBE IN THE

11:39:12  8    INFRINGEMENT CONTENTIONS, BUT IT'S NOT IN THE INITIAL ELECTION

11:39:16  9    OF THE ASSERTED CLAIMS.

11:39:17  10             THE COURT:  OKAY.  ALL RIGHT.

11:39:18  11         AND SO I GUESS THAT'S REALLY -- THAT'S PRETTY INTERESTING.

11:39:20  12   AND SO FOUR WAS, I MEAN, YOU WOULD AGREE WITH THE -- YOU DON'T

11:39:27  13   HAVE TO AGREE WITH IT, BUT BASED UPON THE STRENGTH OF THE

11:39:29  14   ARGUMENT, YOU CHOSE NOT TO GO FORWARD ON THE CLAIM.

11:39:31  15             MR. MARTIN:  NOT THE ARGUMENT THEY ARE MAKING HERE,

11:39:33  16   YOUR HONOR.

11:39:34  17             THE COURT:  THERE WERE OTHER REASONS.  GOT IT.

11:39:36  18             MR. MARTIN:  THE ARGUMENT ABOUT IPXL WAS SOMETHING

11:39:40  19   THAT WE HAD TO CONSIDER.

11:39:41  20             THE COURT:  OKAY.

11:39:42  21             MR. MARTIN:  CLAIM 20, YOU WILL NOTE IS A METHOD

11:39:45  22   CLAIM, YOUR HONOR, AS IS CLAIM 28.

11:39:47  23             THE COURT:  OKAY.  WELL, I DON'T HAVE ANY ANALYSIS

11:39:49  24   FROM GOOGLE ON THIS "TO PREVENT" LANGUAGE.  I THINK YOU JUST

11:39:54  25   DIDN'T FOCUS ON THAT IN YOUR BRIEFING.

11:39:58  1      I ACTUALLY REALLY WAS -- I WOULD AGREE WITH YOU IF THIS

11:40:04  2   WAS CLAIM FOUR THAT I WAS LOOKING AT, AND IT'S NOT.  I GUESS I

11:40:07  3   THINK THAT FILLS IN THE GAP HERE, BUT I DON'T HAVE ANY REVIEW

11:40:11  4   FROM YOU ON IT THAT WAY.  SO THAT'S --

11:40:15  5           MR. BRUNS:  ALL RIGHT, YOUR HONOR.  WE WOULD BE HAPPY

11:40:17  6   TO PROVIDE ADDITIONAL BRIEFING, BUT I UNDERSTAND YOUR POINT.

11:40:20  7           THE COURT:  MR. VAN NEST, DID YOU WANT TO MAKE A

11:40:22  8   COMMENT?

11:40:22  9           MR. VAN NEST:  I WAS GOING TO SAY, AREN'T WE GOING TO

11:40:25 10   HAVE TO SET UP SOME SYSTEM HERE?  WE'VE GOT TWO OR THREE

11:40:29 11   CLAIMS, TERMS, WHERE WE ARE GOING TO BE NEGOTIATING, AND EITHER

11:40:32 12   WE WILL REACH AGREEMENT, HOPEFULLY, AND THEN SUBMIT, BUT IF

11:40:35 13   NOT, THEN WE WILL NEED TO, I THINK IT WOULD MAKE SENSE TO

11:40:38 14   SUBMIT SOMETHING SHORT FROM EACH SIDE WITH THE COMPETING --

11:40:43 15   WHEREVER WE GOT TO, AND THEN --

11:40:46 16           THE COURT:  YEAH.

11:40:47 17           MR. VAN NEST:  AND I WOULD LIKE TO HAVE A CHANCE,

11:40:50 18   GIVEN THAT THESE CLAIMS HAVE BEEN DROPPED, I WOULD LIKE TO HAVE

11:40:53 19   A CHANCE TO BRIEF THIS CLAIM 28 POINT THAT HAS COME UP, BECAUSE

11:40:56 20   I THINK OUR FOCUS WAS REALLY DIFFERENT WHEN WE DID THE

11:40:59 21   BRIEFING.

11:41:00 22           THE COURT:  I THINK IT WAS.

11:41:01 23      AND I WOULD LIKE THE BENEFIT OF YOUR ANALYSIS.  I CAN

11:41:03 24   REJECT IT, BUT I DON'T HAVE ANYTHING NOW, AND IT'S JUST TOO

11:41:08 25   COMPLICATED FOR YOU TO TRY TO FILL IT IN WHILE YOU ARE SITTING

11:41:11  1        HERE, SO I'M NOT ASKING YOU TO DO THAT.

11:41:13  2            THAT'S FINE.  I THINK THAT'S FAIR.  AND I THINK THAT SPACE

11:41:18  3    DATA HAS MADE A GOOD, STRONG POINT THAT REALLY SHIFTED MY FOCUS

11:41:23  4    HERE.

11:41:24  5            SO WHY DON'T -- I THINK THAT TAKES US TO THE END.  WAS

11:41:28  6    THERE ANY REBUTTAL ON THIS, OR WERE WE JUST GOING TO LEAVE IT

11:41:31  7    WHERE WE ARE?

11:41:32  8            MR. HOSIE:  NO.

11:41:32  9            MR. MARTIN:  NO, YOUR HONOR.

11:41:33  10           THE COURT:  OKAY.

11:41:33  11       SO WE NEED TO KIND OF RECAP MY NOTES, I DON'T KNOW HOW

11:41:37  12    GOOD MY NOTES ARE HERE, ON WHAT YOU ARE GOING TO DO.

11:41:41  13       SO I'M GOING TO GET FURTHER BRIEFING FROM DEFENDANT ON

11:41:51  14    TERM 8, REVIEWING CLAIM 28.  AND THEN MR. HOSIE, ON THAT SAME

11:42:10  15    TERM, YOU WERE GOING TO GIVE ME SOME CONSTRUCTION THAT WOULD BE

11:42:16  16    YOUR IDEA OF PLAIN AND ORDINARY.

11:42:18  17           MR. HOSIE:  INDEED, YOUR HONOR.

11:42:25  18           THE COURT:  OKAY.  THERE WERE TWO OTHERS THING I

11:42:31  19    ASKED FOR.

11:42:35  20           MR. VAN NEST:  "DETERMINING A DESIRED MOVEMENT," AND

11:42:39  21    "MESH NETWORK."

11:42:42  22       I THINK I UNDERSTOOD YOUR HONOR TO BE ASKING THE PARTIES

11:42:44  23    TO TRY TO MEET AND CONFER AND COME UP WITH AN AGREED UPON

11:42:48  24    CONSTRUCTION.

11:42:49  25           THE COURT:  SO "MESH NETWORK" YOU FELT YOU WERE CLOSE

11:42:54  1    AND WOULD MEET AND CONFER TO SEE IF YOU CAN AGREE.

11:42:57  2            MR. VAN NEST:  RIGHT.  I THINK WE ALSO FELT THAT WAY

11:43:03  3    ON "DETERMINING A DESIRED MOVEMENT."

11:43:05  4            MR. HOSIE:  YEAH, I ECHO THAT, I THINK THAT'S

11:43:08  5    CORRECT.

11:43:08  6            THE COURT:  OKAY.

11:43:09  7            MR. HOSIE:  SO I THINK THAT IS PUT SQUARELY IN OUR

11:43:13  8    COURT.

11:43:14  9            MR. VAN NEST:  AND HONESTLY, YOUR HONOR, ON

11:43:16  10   "SUBSTANTIALLY DRIFTS," I THINK WE MAY FILE A BRIEF, BUT WE

11:43:22  11   SHOULD ALSO TRY TO REACH AGREEMENT THERE.  THEY ARE GOING TO

11:43:25  12   PROPOSE A CONSTRUCTION, IN LIGHT OF YOUR COMMENTS.  WE MIGHT AS

11:43:30  13   WELL TRY TO AGREE WITH THAT TOO.

11:43:35  14      IF WE ARE MEETING AND CONFERRING ON THE OTHER TWO, WHY NOT

11:43:39  15   MEET AND CONFER ON THAT ONE AS WELL.

11:43:41  16           MR. HOSIE:  I AGREE, YOUR HONOR.

11:43:42  17           THE COURT:  I THINK THAT SOUNDS GOOD.

11:43:44  18      SO REGRETTABLY, MY TIME IS -- I NEED YOU TO GET THIS TO ME

11:43:48  19   PRETTY SOON.  SO WHAT CAN I --

11:43:55  20           MR. VAN NEST:  WELL, IF YOU SET A DEADLINE FOR

11:43:58  21   SUBMITTING EITHER THE STIPULATION --

11:44:00  22           THE COURT:  RIGHT.

11:44:00  23           MR. VAN NEST:  -- OR COMPETING CONSTRUCTIONS WITH

11:44:04  24   SOMETHING SHORT, WE WILL MEET THAT DEADLINE.

11:44:07  25           MR. HOSIE:  HOW ABOUT A WEEK FROM TODAY, YOUR HONOR?

11:44:09  1          THE COURT:  A WEEK?  THAT'S TERRIFIC.  THAT WORKS

11:44:12  2    JUST FINE.

11:44:13  3          MR. HOSIE:  I UNDERSTAND THE COMPLEXITY, IT'S

11:44:15  4    IMPORTANT TO DO IT QUICKLY.

11:44:16  5          THE COURT:  I DON'T KNOW HOW MUCH WORK THIS IS, BUT I

11:44:19  6    DO APPRECIATE YOU DOING IT IN ONE WEEK.

11:44:21  7          MR. HOSIE:  THERE ARE A LOT OF LAWYERS HERE.

11:44:24  8          MR. VAN NEST:  YOU KNOW WHAT, YOUR HONOR, COULD WE

11:44:26  9    STRETCH IT OUT JUST INTO EARLY THAT FOLLOWING WEEK?

11:44:30  10       A WEEK FROM TODAY IS AUGUST 3RD, IF WE DID IT LIKE THE

11:44:35  11   7TH, WHICH IS THE FOLLOWING TUESDAY, I THINK --

11:44:38  12         THE COURT:  I'M OKAY WITH THAT.  I'M GETTING VERY

11:44:41  13   BUSY THAT WEEK, AS YOU KNOW.

11:44:43  14       OKAY.  I THINK AUGUST 7TH IS REASONABLE.  THAT'S THE

11:44:47  15   TUESDAY, I BELIEVE, OF THE FOLLOWING WEEK.

11:44:49  16         MR. VAN NEST:  IT IS.

11:44:50  17         THE COURT:  I'M PERFECTLY COMFORTABLE WITH THAT, I

11:44:52  18   THINK THAT'S REASONABLE.

11:44:53  19       AND -- YEAH.  THE MORE TIME I CAN GIVE YOU TO AGREE, THE

11:44:57  20   BETTER.  I ACTUALLY -- I HOPE THIS HAS BEEN HELPFUL TO YOU.

11:45:02  21         MR. VAN NEST:  OH, YES.

11:45:02  22         THE COURT:  IT HAS CERTAINLY BEEN HELPFUL TO ME.

11:45:06  23       OKAY.  THAT WORKS.  AND IF YOU ARE GOING TO BRIEF THIS

11:45:13  24   CLAIM 28, I JUST, I'M GOING TO LIMIT YOU TO THREE PAGES.

11:45:20  25         MR. VAN NEST:  THAT'S FINE.

| | | |
|---|---|---|
| 11:45:21 | 1 | THE COURT:  AND I THINK THAT'S AMPLE. |
| 11:45:23 | 2 | MR. VAN NEST:  IT'S MORE THAN ENOUGH. |
| 11:45:24 | 3 | THE COURT:  AND IT MAY BE MORE THAN YOU NEED, YES. |
| 11:45:26 | 4 | MR. VAN NEST:  THAT'S FINE.  WE WILL GET THAT IN ON |
| 11:45:28 | 5 | THE 7TH AS WELL. |
| 11:45:29 | 6 | MR. HOSIE:  YOUR HONOR, WOULD THAT BE RECIPROCAL |
| 11:45:32 | 7 | RIGHT TO BRIEF? |
| 11:45:33 | 8 | THE COURT:  I ACTUALLY THINK YOU BRIEFED IT.  I |
| 11:45:35 | 9 | WASN'T -- |
| 11:45:36 | 10 | MR. HOSIE:  OKAY. |
| 11:45:39 | 11 | THE COURT:  I THINK YOU IDENTIFIED CLAIM 28. |
| 11:45:42 | 12 | MR. HOSIE:  I DON'T KNOW WHAT THEY ARE GOING TO SAY, |
| 11:45:44 | 13 | THOUGH. |
| 11:45:44 | 14 | SO NORMALLY IF THEY HAD PUT IT IN THEIR BRIEF, WE WOULD |
| 11:45:48 | 15 | HAVE AN OPPORTUNITY TO REPLY. |
| 11:45:50 | 16 | THE COURT:  SO I HAVE TO HAVE EVERYTHING SUBMITTED BY |
| 11:45:52 | 17 | THE 7TH. |
| 11:45:52 | 18 | MR. HOSIE:  UNDERSTOOD.  WE COULD DO EVERYTHING THE |
| 11:45:52 | 19 | SAME DAY. |
| 11:45:54 | 20 | THE COURT:  SO YOU WANT TO DO IT SIMULTANEOUS OR -- |
| 11:45:59 | 21 | MR. VAN NEST:  THAT'S FINE.  I MEAN, IT WAS IN THE |
| 11:45:59 | 22 | REPLY BRIEF: |
| 11:45:59 | 23 | THE COURT:  I THOUGHT IT WAS IN THE REPLY BRIEF. |
| 11:46:02 | 24 | MR. VAN NEST:  THAT'S WHY WE DIDN'T PUT IT IN OUR |
| 11:46:03 | 25 | BRIEF. |

```
11:46:04   1            MR. HOSIE:  IF WE COULD HAVE ONE DAY TO RESPOND.  IF

11:46:07   2       THEY DO IT ON THE 7TH, WE WILL DO IT THE NEXT DAY.

11:46:10   3            THE COURT:  I WILL GIVE YOU TWO PAGES TO RESPOND.

11:46:12   4            MR. HOSIE:  YES, THE NEXT DAY.

11:46:13   5            THE COURT:  AND DUE AUGUST 8TH.

11:46:15   6            MR. HOSIE:  THANK YOU, YOUR HONOR.

11:46:19   7            THE COURT:  OKAY.  ALWAYS HORSE TRADING.

11:46:22   8         ALL RIGHT.  I THINK THAT TAKES CARE OF EVERYTHING.  THIS

11:46:28   9       IS -- YOU KNOW, I ACTUALLY, LAST WEEK, FEARED THAT THE TUTORIAL

11:46:33  10       HAD BEEN AT TOO HIGH A LEVEL, NO PUN INTENDED, BUT IN FACT IT

11:46:38  11       WAS ALL I NEEDED ONCE I ACTUALLY DUG DEEP INTO THIS, SO I

11:46:41  12       REALLY APPRECIATE THAT.

11:46:42  13         I'VE HAD TUTORIALS THAT WERE TOO HARD AND I DIDN'T RETAIN

11:46:45  14       ANYTHING, BUT I BECOME SUSPICIOUS OF ONES THAT I UNDERSTAND,

11:46:48  15       THINKING THEY MIGHT BE TOO SIMPLE.  BUT REALLY, I THINK THAT

11:46:52  16       GAVE ME THE TOOLS THAT I NEEDED TO REALLY DIG INTO THE DISPUTES

11:46:56  17       THAT WE HAVE HERE.

11:46:57  18         SO I REALLY WANT TO THANK YOU FOR THAT.  I THINK IT WAS

11:47:00  19       WELL DONE, AND THE TECHNOLOGY IS ENDLESSLY INTERESTING AND FUN

11:47:05  20       TO CONTEMPLATE.

11:47:07  21         OKAY.

11:47:07  22            MR. VAN NEST:  THANK YOU, YOUR HONOR.

11:47:08  23            THE COURT:  I DON'T HAVE ANYTHING ELSE.

11:47:09  24       THANK YOU ALL.

11:47:10  25            MR. VAN NEST:  THANK YOU.
```

11:47:14   1          (THE PROCEEDINGS WERE CONCLUDED AT 11:47 A.M.)

     2

     3

     4

     5

     6

     7

     8

     9

     10

     11

     12

     13

     14

     15

     16

     17

     18

     19

     20

     21

     22

     23

     24

     25

1

2

3

4                    **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 7/27/18