Case 5:16-cv-03260-BLF   Document 308   Filed 07/30/18   Page 1 of 6



Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
keker.com

Ryan Wong
(415) 391-5400
rwong@keker.com

H<small>OSIE</small> R<small>ICE</small> LLP

Transamerica Pyramid, 34th Floor
600 Montgomery Street
San Francisco, California 94111
T: 415.247.6000
F: 415.247.6001

Spencer Hosie
(415) 247-6000
shosie@hosielaw.com

**VIA ELECTRONIC FILING**

July 6, 2018

The Honorable Nathanael M. Cousins
United States District Court for the Northern District of California, San Jose Division
Courtroom 7, 4th Floor
280 South 1st Street
San Jose, CA 95113

Re:  *Space Data Corp. v. Google, et al.,* **Case No. 16-cv-03260-BLF (NMC)**

Dear Judge Cousins:

Plaintiff Space Data Corporation ("Space Data") and Defendants Alphabet Inc. and Google LLC (collectively, "Google") submit this joint letter brief regarding Space Data's deposition of Google's 30(b)(6) corporate representative, Michael Pearson, whom Google designated on two noticed topics concerning a February 20, 2008 Wall Street Journal article.  Space Data contends that Google made no substantive effort to prepare Mr. Pearson to answer these topics, and thus respectfully requests that the Court compel Google to produce a corporate witness who is able to testify.  Google believes that Mr. Pearson was properly prepared to testify as a corporate witness for the two topics in dispute, which seeks Google's corporate knowledge about events that transpired over a decade ago.  The parties certify that they have met and conferred orally and in writing, but were unable to resolve the dispute.

**SPACE DATA'S STATEMENT**

On June 7, 2018, Space Data took the deposition of Mr. Pearson, whom Google had designated as its 30(b)(6) corporate representative on two specific 30(b)(6) noticed topics.[1]  Mere minutes into the deposition, however, it became apparent that Google had taken no meaningful effort to prepare Mr. Pearson to answer the questions raised.  These topics are of material importance to Space Data's case against Google, and Defendant's lack of effort to prepare its selected corporate witness is yet another attempt to avoid providing testimony on these subjects.

Topic Numbers 1 and 2 seek testimony concerning Google's pre-publication knowledge of the Wall Street Journal's February 20, 2008 article stating Google's interest in "contracting with Space Data or even buying the firm".  Google is well aware of the importance of this information, as Google used this Wall Street Journal article as a justification for terminating business discussions with Space Data,

---

[1] These two topics are Topic Numbers 1 and 2, as specified in Space Data's Amended Notice of Rule 30(b)(6) Deposition.

claiming (falsely) that Space Data leaked this information to the press and thus breached the terms of the parties' Non-Disclosure Agreement. Despite evidence to the contrary, Google's corporate witness was unable to provide any testimony on the company's prescient knowledge of this article.[2] Nor could its witness speak to why, despite its awareness of this—allegedly deal-breaking—article, Google nevertheless flew an entire team to Space Data's Arizona facilities on February 15, 2008.

By Pearson's own admission, his preparation for his 30(6)(b) deposition on these topics consisted of looking at "the transcripts of the folks who had been deposed, and that was the diligence that was done for [Mr. Pearson] to prep for this." Pearson 30(b)(6) Deposition at 10:24–11:1. The lawyers simply gave him the relevant portions of the "know nothing" prior deposition transcripts, along with some of the emails marked as exhibits to those transcripts, and he made a brief call to Joe Faber who also professed ignorance. Mr. Pearson justified his "know-nothing" responses by stating that Chris Sacca (whose January or February 2008 communications with the Wall Street Journal's Amol Sharma are of material importance) was no longer an employee with Google. *Id*. at 12:18–19. As discussed below, the fact that an individual with relevant knowledge is no longer employed with the corporation does not excuse the corporate duty to obtain all reasonably available knowledge on noticed 30(b)(6) subjects.

Under Northern District law, Google has an affirmative obligation to make a good faith effort to educate a 30(b)(6) witness. Simply collecting a package of prior Google know nothing discovery responses and then regurgitating them hardly satisfies this obligation. Space Data therefore respectfully requests that the Court compel Google to provide a 30(6)(b) representative who is able to provide testimony that is both informative and binding on Google.

**The Law:** The very purpose of presenting a 30(b)(6) witness is to obtain clear testimony that identifies the corporation's position on the noticed topics and, more importantly, binds it to these statements. *Sabre v. First Dominion Capital, LLC*, 2001 WL 1590544, at *1 (S.D. N.Y. Dec. 12, 2001). As such, the corporation has the duty to take all reasonable efforts to prepare its selected 30(b)(6) representative to speak to the noticed subjects. This duty includes seeking information from knowledgeable employees and taking other additional steps to prepare its designated representative to become fully informed on the identified 30(b)(6) topics. *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996).

The company has this obligation regardless of whether it is a former employee who has the relevant information. *Louisiana Pac. Corp. v. Money Market 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 490 (N.D. Cal. 2012); *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., Inc.*, 251 F.R.D. 534, 541 (D. Nev. 2008) (stating that a corporation's witness may become educated by reasonably obtaining information from documents, past employees, or other sources). Google cannot circumvent this obligation by supplying uninformed representatives who provide evasive statements and suggest Space Data's counsel ask an alternative, more technically informed, individual.

If the corporation's selected representative cannot give "complete, knowledgeable and binding answers" to these subjects, the corporation—here, Google—has "a **duty** to substitute another person to correct the deficiency." *Guifu Li v. A Perfect Day Franchise, Inc.*, No. 10-CV-01189-LHK, 2011 WL 3895118, at *2 (N.D. Cal. Aug. 29, 2011) (internal citations and quotations omitted) (emphasis ours).

Here, Google has an obligation to educate its witness on how Google learned, prior to the Space Data visit, that the Wall Street Journal was writing a story about Space Data and emphasizing Google's

---

[2] This evidence includes comments made in Minnie Ingersoll's "Spectrum-Access" notes regarding Google's interest in Space Data. These comments were written on February 14, 2008, five days before the Wall Street Journal article was published.

interest. To discharge this duty fairly, Google must, *e.g.*, review its internal emails, talk to the people in the Spectrum Access notes email alias (a friendly conversation is very different from deposition), and otherwise research the question. What it may not do, however, is simply package together prior "know nothing" deposition transcripts, and have the witness repeat the testimony of record.

Google's argument boils down to the assertion that Google has no obligation to prepare its 30(b)(6) designee to testify about anything beyond what Space Data has independently discovered. This subverts the very "purpose served by Fed. R. Civ. P. 30(b)(6)—to require an organization to identify and designate a witness who is knowledgeable on the noticed topic, particularly where the noticing party is unable to itself identify an appropriate witness because that knowledge lies within the organization[.]" *Apple Inc. v. Samsung Electronics Co., Ltd.*, 2012 WL 1511901 at *2 (N.D. Cal. Jan. 27, 2012). Space Data's choice of witnesses and email search terms does not define the scope of Google's knowledge.

**GOOGLE'S STATEMENT**

Space Data's criticisms of Mr. Pearson's corporate deposition testimony on Topics 1 and 2 have nothing to do with Mr. Pearson's preparation to testify, and simply reflect the limits of human memory.

Topics 1 and 2 of Space Data's 30(b)(6) notice are both directed at a Wall Street Journal article about Space Data that was published ***over a decade ago*** on February 20, 2008. Unsurprisingly, Google's collective "memory" regarding minute events leading up to the publication of that specific article has faded substantially over the past ten years.[3] Those limitations on memory are reflected in Mr. Pearson's corporate testimony on these topics, for which he prepared by reviewing the fact deposition transcripts of current and former Google employees most likely to be familiar with the subject matter of those topics, by reviewing Google documents relating to the Wall Street Journal article, and by interviewing another Google employee who was involved in Google's interactions with Space Data in 2008. Mr. Pearson's testimony accurately reflected the fact that every relevant person likely to be familiar with the subject matter of these topics—including Mr. Pearson himself, who took part in the Space Data visit in 2008—***does not remember*** these details about the decade-old Wall Street Journal article.

For example, Topic 1 of Space Data's Rule 30(b)(6) notice sought Google's corporate testimony on "[a]ny communications by Google or its employees with Wall Street Journal reporter Amol Sharma, or other journalists writing for or employed by the Wall Street Journal, in January or February 2008, concerning Space Data, including the details and substance of communications between Google's Chris Sacca and Amol Sharma." This topic reflects Space Data's assumption (for which there is ***no evidence***) that Google—and in particular, its by-then-former employee Chris Sacca—interacted with a reporter for the Wall Street Journal sometime in February 2008, and that Space Data was discussed in those interactions. Google objected to those assumptions in its written objections to Space Data's 30(b)(6) notice, and noted that Mr. Sacca had left Google by December 2007 and was therefore not an employee of Google in the January/February 2008 time period. *See* Sacca Tr. at 11:17–21 (Mr. Sacca confirming under oath that he left his employment at Google in December 2007).

Notwithstanding the false premise of Topic 1, Mr. Pearson prepared to testify on this topic by reviewing the deposition transcripts of current and former Google employees who were directly involved in Space Data-related activities in February 2008, including the transcripts of Minnie Ingersoll, Larry Alder, Dan McCloskey, and Daniel Conrad. *See* Pearson 30(b)(6) Tr. at 10:2–9; 13:14–14:7. He reviewed the

---

[3] Space Data's own discovery responses echo these limits on memory: "Given the number of years and number of potential customers, the Space Data executives cannot recall specific details and specific conversations of many years ago." *See* Space Data Suppl .Response to Interrog. No. 21 (July 3, 2018).

portions of those transcripts where Space Data attorneys presented these individuals with documents in an attempt to refresh their recollections, and asked them about interactions with the Wall Street Journal back in February 2008.  Mr. Pearson also reviewed documents produced in this case regarding the Wall Street Journal and Space Data, and spoke directly with Joe Faber, another Google employee who was involved in Space Data-related interactions back in February 2008.  Mr. Pearson's investigation revealed no evidence that Google interacted with the Wall Street Journal regarding Space Data in February 2008, and there are no relevant persons still at Google who remember such interactions.  *Id.*  To the contrary, the Wall Street Journal article published on February 20, 2008, expressly stated that "Google declined to comment"—which itself indicates that Google did *not* communicate with Amol Sharma in connection with the article.  That is the extent of Google's corporate memory and knowledge on this topic.

The same is true for Topic 2.  Topic 2 sought Google's corporate testimony on: "Google's pre-publication knowledge of the Wall Street Journal article published on February 20, 2008, concerning Space Data prior to its publication, including how Google knew on February 14, 2008, that the article would refer to Google's interest in Space Data."  The documents produced by Google in this case (and reviewed by Mr. Pearson to prepare for these two topics) confirm that Ms. Ingersoll and Mr. Pearson are the two individuals most likely to possess relevant information about this topic.  For example, GOOG-SD-00296077 is the earliest email chain known to Google (dated February 7, 2008) that references the forthcoming Wall Street Journal article at issue in these topics, and it is between Ms. Ingersoll and Mr. Pearson.  In that email, Mr. Pearson, who was the corporate development lead on this project, informed Ms. Ingersoll that Space Data executives had "told [him] that wsj was writing an article" and "that it is about the business and nothing else."  Similarly, GOOG-SD-00157469, which is a "Spectrum Notes" email sent by Ms. Ingersoll on February 14, 2008, suggests that Ms. Ingersoll and Mr. Pearson were the individuals who knew the "details of [the] WSJ article on SDC."  *See also* GOOG-SD-00146071 (email chain between Space Data and Ms. Ingersoll and Mr. Pearson regarding the Wall Street Journal article).

Ms. Ingersoll (who left Google in 2013), however, testified at her deposition that she could not remember how she became aware of the Wall Street Journal article prior to visiting Space Data's facilities on February 15, 2008.  *See* Ingersoll Tr. at 15:5–16:1.  Despite numerous attempts by Space Data's counsel to refresh her recollection with documents produced in this litigation, including the aforementioned "Spectrum Notes" email, Ms. Ingersoll could not recall these nuances from events that occurred over ten years ago.  *See id.* at 25:22–28:4.  Mr. Pearson similarly testified that, despite reviewing multiple documents relating to this topic and the testimony of Ms. Ingersoll, Mr. Alder, Mr. McCloskey, and Mr. Conrad, he also could not recall how he came to learn of specific details regarding the Wall Street Journal article prior to visiting Space Data on February 15, 2008.  He did recall, however, that Space Data had told him that the Wall Street Journal was writing an article about Space Data and verified that the article was going to be "just about Space Data" (and not Google).  *See* Pearson Tr. at 39:2–22; 171:1–173:16 (discussing GOOG-SD-00296077); 214:20–215:14.  Once again, the best recollection of these individuals given the passage of time, and the produced documents that touch upon the Wall Street Journal article, is the full extent of Google's corporate knowledge on this topic.

**The Law:**  It is proper under Rule 30(b)(6) to "prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits."  *See, e.g.*, *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 486 (N.D. Cal. 2012) (citations omitted).  Following a reasonable investigation, however, "just like in the instance of an individual deponent, ***the corporation may plead lack of memory***" regarding details of past events.  *See United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996) (emphasis added).  Both of these legal maxims apply to Google's corporate testimony here.

As explained in detail above, Mr. Pearson was more than adequately prepared to testify on the topics for which he had been designated based on his review of relevant fact witness deposition testimony, his review of relevant documents, and his interview of Mr. Faber, who was personally involved in many of the events underlying the topics identified above. *See Louisiana Pac. Corp.*, 285 F.R.D. at 486. That investigation revealed that there were minute details from events over a decade ago that were no longer within Google's present corporate "memory." Given the nature of these topics, there is nothing improper or surprising about Mr. Pearson's corporate testimony, which reflected the natural limits of human memory regarding these events after a reasonable investigation. *See Taylor*, 166 F.R.D. at 361.[4]

The fact that Mr. Pearson did not speak directly with former employee Mr. Sacca or question every possible individual who may have received Ms. Ingersoll's February 14, 2008 "Spectrum Notes" email neither renders his preparation inadequate, nor justifies a further deposition on this topic. Mr. Sacca has not been a Google employee since 2007, and Google has no control over or access to him. His knowledge as a third party is not part of Google's corporate knowledge. For that reason, Space Data subpoenaed and deposed Mr. Sacca on June 15, 2018, and specifically asked him about the subject matter of Topic Nos. 1 and 2. *See* Sacca Tr. at 116:9–120:18. Mr. Sacca confirmed that he had no recollection of any communications with Amol Sharma at the Wall Street Journal relating to the February 20, 2008 article on Space Data, which is consistent with Google's corporate testimony. *Id.*[5]

As for Space Data's suggestion that every person who may have received Ms. Ingersoll's February 14, 2008 "Spectrum Notes" email must be interrogated, it would not be proportional to the needs of the case to require Google to go down that rabbit hole. Every known document regarding the Wall Street Journal article shows that Ms. Ingersoll and Mr. Pearson were the two persons who possessed pre-publication knowledge of the Wall Street Journal article. Both of their memories were tested under oath by Space Data, and despite substantial efforts to refresh their recollections, they simply do not remember any interactions with Mr. Sharma, and do not remember how they learned that the Wall Street Journal article would mention Google. Similarly, other individuals directly involved with Google's interactions with Space Data in 2008—including Mr. McCloskey, Mr. Alder, Mr. Conrad, and Mr. Faber—had no recollection of these details. It would be a waste of Google's time and resources to require it to identify and interview persons who are far less likely to recall any of these details from a decade ago.

For these reasons, Mr. Pearson's preparation to testify on Topic Nos. 1 and 2 was proper under Rule 30(b)(6), and any further deposition on this topic would not yield anything more than what Mr. Pearson and other witnesses have already testified to on the record. The Court should deny Space Data's request for a further deposition on these topics.

---

[4] Space Data's attack on Google's preparation of its corporate designees is highly disingenuous given its complete failure to prepare its own witnesses. For example, while Space Data criticizes Mr. Pearson for not speaking with unnamed recipients of "Spectrum Notes" emails, its designee Jerry Quenneville did not review any documents or speak with anyone at Space Data to prepare for his corporate testimony on Space Data's customers. Quenneville 30(b)(6) Tr. at 246:2–21. And Space Data corporate designee William McCullough—despite being designated on a topic regarding trade secrets supposedly disclosed to Google during a 2008 trip to Space Data—had no knowledge of what was shared during the 2008 trip, and did no investigation whatsoever to find out. McCullough 30(b)(6) Tr. at 102:6–105:13.

[5] Google co-founder Larry Page testified similarly—he was not aware of any interactions with the Wall Street Journal, and had no information about Google's pre-publication knowledge of the Wall Street Journal article. *See* Page Rough Tr. at 85:11–88:15. But Mr. Page confirmed that he was upset when the article came out, that Google does not like press leaks about potential business transactions, and that any leak would have been to Space Data's benefit, not Google's benefit. *Id.* at 18:25–19:4; 95:1–12.

Respectfully submitted,                              Respectfully submitted,

*/s/ Spencer Hosie*                                  */s/Ryan K. Wong*
Spencer Hosie                                        Ryan K. Wong
*Counsel for Plaintiff Space Data Corp.*             *Counsel for Defendants Alphabet Inc. and Google LLC.*


I hereby attest pursuant to Civil Local Rule 5-1(i)(3) that concurrence in the electronic filing of this document has been obtained from the other signatories.

     Dated: June [ ], 2018                    */s/ Spencer Hosie*
                                                      Spencer Hosie