# HOSIE | RICE LLP                                              Davis Polk

Transamerica Pyramid, 34th Floor
600 Montgomery Street
San Francisco, California 94111
T: 415.247.6000
F: 415.247.6001

Spencer Hosie
(415) 247-6000
shosie@hosielaw.com

**Christopher B. Hockett**

Davis Polk & Wardwell LLP
1600 El Camino Real
Menlo Park, CA 94025

650 752 2000 tel
650 752 2100 fax
chris.hockett@davispolk.com

REDACTED VERSION
<u>**VIA ELECTRONIC FILING**</u>

August 8, 2018

The Honorable Nathanael M. Cousins
United States District Court for the Northern District of California, San Jose Division
Courtroom 7, 4th Floor
280 South 1st Street
San Jose, CA 95113

Re:   *Space Data Corp. v. Google, et al.,* Case No. 16-cv-03260-BLF(NC)

Dear Judge Cousins:

      Plaintiff Space Data Corporation ("Space Data") and nonparty Sebastian Thrun ("Thrun") submit this joint letter brief regarding Space Data's ability to take the deposition of Thrun. Space Data renews its motion to compel Thrun to appear for deposition related to his unique involvement in Project Loon and its precursors during his tenure at Google. Thrun renews his request for a protective order barring enforcement of the subpoena or, alternatively, to quash the subpoena, because Space Data has again failed to show that Thrun's involvement was unique, or that this deposition is needed. The parties have met and conferred, but have been unable to resolve the dispute.

## SPACE DATA'S STATEMENT

      On June 28, 2018, Space Data moved to compel Sebastian Thrun's deposition. Thrun was a cofounder of Google "X" and was involved in the early development of Google Loon, the infringing technology at issue. Thrun refused to appear for a three-hour deposition, arguing that he was too important, too busy, and recalled nothing.

      In its June 29 order, the Court observed that being busy and important could not alone justify refusing to testify, lest no Silicon Valley executive ever be deposed. The Court ruled that Space Data should complete its remaining depositions and could renew its motion if Space Data could show "that it still has information gaps that it needs Thrun's testimony to fill…." ECF 271 at 2.

      Space Data has completed its depositions, and the record is plain that Thrun's testimony is important and the information unavailable elsewhere.

### <u>THE RECORD</u>

**THRUN'S ROLE**

A critical trial issue is whether Google independently derived its Loon technology. Thrun is an important witness on this point, given his role as cofounder of Google X, Google's "Moonshot Factory" tasked with developing "novel" and world-changing ideas, such as a balloon-borne network of internet connectivity.

In late 2009, Thrun created a list of "hot" projects. On the first page of this list, Thrun listed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ GOOG-SD-00292312.

In 2010, Larry Page sent an email to Thrun discussing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ GOOG-SD-00288341.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and copied the email to his X cofounder, Astro Teller.

In early July, two weeks after he was hired, Richard DeVaul, alleged conceiver of Loon, set up meetings to discuss the balloon-backbone internet idea, with Thrun being one of the handful of invitees. GOOG-SD-00288348.

Thrun was thereafter an operating member of the "Daedalus Engineering Team," with Daedalus being Google's internal code name for what became Loon. GOOG-SD-00146567.



Fig. 1: **Earliest Daedalus organizational chart**. GOOG-SD-00146567 (red emphasis added).

In this role, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ GOOG-SD-00292327.

**LARRY PAGE TESTIMONY**

Page testified that Thrun was working on a balloon internet in 2010, but could not recall much more:

> Q: . . . And at some point did Sebastian Thrun become involved in this idea of a balloon-borne Internet constellation?
> A:    I think, you know, there's some – he was in charge of X, which kind of birthed what became Project Loon, so I assume there's some involvement there.
> Q:    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



Page Depo. at 31:7-25. More:

> Q: And given your direction to Mr. Thrun, do you know, did he go forward at X and start to look at this idea?
> A: I don't know what happened, based on this.
> Q: Do you recall, sir, one way or the other?
> A: **I mean, eventually, I guess, you know, what became Project Loon got started, but I don't know the details of that.**
>
> \*\*\*
>
> Q: And you don't, in fact, know what Mr. – whether Mr. Thrun even started looking at a balloon-borne constellation in 2010, also true?
> A: I mean, I assume he did something, based on the email, but I don't know for sure.

*Id.* at 114:18-25 (emphasis added) & 115:8-13.

**ASTRO TELLER TESTIMONY**

> Q: And was Sebastian Thrun, T-h-r-u-n, the other co-founder?
> A: Yes.
> Q: And was he working at X or what would become X before you became involved?
> A: Yes
>
> \*\*\*
>
> Q: Fair enough. Were you aware, sir, before I asked you the question, that Mr. Thrun was working on a balloon constellation at X in 2010? . . .
> The Witness: No. Frankly, I can't quite believe that.
> By Mr. Hosie: . . . You're surprised to hear that?
> A: Yes.
> Q: All right. Are you aware, sir, that Mr. Larry Page asked Sebastian Thrun to do that work, personally? . . .
> The Witness: No. Since I don't know he was doing it, I don't know that Larry asked him to do it.

Teller Depo. at 14:5-15:9.

Other witnesses for Defendants, including Larry Alder, Michael Pearson, Michael Cassidy, and Cliff Biffle, either became involved with Loon after Thrun's exit, or were unable to speak to Thrun's involvement in X's initial exploration of balloons. Not surprisingly, Thrun will have the best recollection about Thrun's own work. On this record, a 90-minute deposition is proportional.

August 8, 2018
Page 4

### NONPARTY SEBASTIAN THRUN'S STATEMENT

On June 29, this Court denied Space Data's motion to compel Thrun's deposition. ECF No. 271 at 2. The Court found that Thrun was an apex witness and that when the witness is no longer employed by a party, from his perspective, "there is a high burden and no benefit." *Id.* at 1. In denying the motion, the Court found that the Thrun deposition was not "proportional to the needs of the case." *Id.* at 2. However, Space Data was permitted renew its motion if it "can show that it still has information gaps that it needs Thrun's testimony to fill." *Id.* Because Space Data still has not shown any Thrun-related "information gaps" that are relevant to its case, the Court should deny the renewed motion with prejudice.

Space Data claims that the reason it needs Thrun's deposition is to explore "whether Google independently derived its Loon technology." But Space Data has already obtained extensive discovery on this very issue from many other Google sources, including a detailed interrogatory response, the sufficiency of which we understand Space Data has not challenged; depositions of over a dozen Google witnesses; and extensive document discovery.

Space Data has not demonstrated any particular need for Thrun's testimony, nor has it shown that Thrun had anything more than tangential involvement. Nor could it, because Thrun's involvement was, in fact, tangential. *See* ECF No. 269 at 4-5; ECF No. 269-1, Thrun Decl. ¶¶ 6-8. And to the extent that Space Data argues that the deposition is warranted because Thrun is in the best position to recall what he personally was doing in 2009-10, that is plainly not enough. *See Kormylo v. Forever Resorts, LLC*, No. 13-CV-00511-JM WVG, 2015 WL 5311484, *2 (S.D. Cal. Sept. 11, 2015) (noting that "where the high level executive's knowledge of the facts, or lack thereof, is not itself at issue in the case, a deposition . . . may not be warranted").

Discovery is bounded by proportionality. Among other things, courts consider "the importance of the discovery in resolving the issues" as well as "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Courts must limit discovery that is "unreasonably cumulative or duplicative," Fed. R. Civ. P. 26(b)(2)(C)(i), or that "subjects a person to undue burden," Fed. R. Civ. P. 45(d)(3)(A)(iv). Here, as shown below, the information sought by Space Data is cumulative and duplicative of existing discovery. *See Simmons v. Morgan Stanley Smith Barney*, LLC, No. 11-CV-2889-WQH MDD, 2012 WL 6725844, at *2 (S.D. Cal. Dec. 27, 2012) (apex witness's testimony based on his attendance at meetings with other witnesses who had already testified would be cumulative). Space Data cannot justify taking yet another deposition, especially of an apex nonparty witness like Thrun.

Thrun's Deposition Would Be Cumulative and Duplicative: Existing discovery already fills Space Data's supposed "information gaps." On July 6, shortly after this Court denied Space Data's original motion, Google served a four-page Supplemental Response to Plaintiff's Second Set of Interrogatories (No. 10) [the "Interrogatory Response"] concerning the origin of its Project Loon technology. Google's response answered Space Data's request to "[d]escribe in detail the circumstances under which Defendants first started working on the Accused Instrumentalities, including a description of the impetus for Defendants' start of work and when Defendants started to work on the Accused Instrumentalities." Interrogatory Response at 1. This response describes how individuals at Google, including Larry Page and Sergey Brin, were interested in using balloons for communications purposes *years* before Space Data contacted Google. *See id.* at 2. ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████ it was not until August 2011 that the Project Daedalus team first launched a balloon prototype. *Id.* at 5.

Moreover, Space Data has already obtained sworn testimony from over a dozen Google witnesses about the issues discussed in Space Data's "Record." For example, Space Data deposed Google cofounders Larry Page and Sergey Brin, who were among the people who attended Google's Space Data site visit (Thrun was not there). Space Data also deposed Astro Teller, who supervised Google's balloon work. And Space Data deposed three out of the four members of the original Daedalus Engineering Team shown in Figure 1 above: Richard DeVaul, Cliff Biffle, and Josh Weaver. None of the Google witnesses identified Thrun as a person with unique knowledge about Google's balloon explorations. To the extent that they were unable to supply every detail about Thrun's possible involvement, the explanation for that is simple: in his role as head of Google X, Thrun's connection to this particular project was tangential.

Finally, Space Data also obtained extensive document discovery. Space Data only points to a handful of documents that include Thrun and mention balloons. To the extent that the documents mention Space Data, they only touch on issues about which Space Data has already obtained discovery: launching a balloon during the Space Data due diligence and the 2008 *Wall Street Journal* article, which was the subject of Google 30(b)(6) testimony on which this Court recently denied Space Data's motion to compel, *see* ECF No. 292 at 1.

<u>Space Data's "Record" Fails to Establish That Thrun's Testimony Is Needed</u>: Thrun does not deny being the cofounder and former head of Google X. *See* ECF No. 269-1, Thrun Decl. ¶ 2. But Space Data overstates Thrun's connection with Google's Project Loon as an "operating member" of the "Daedalus Engineering Team." In Figure 1, Thrun is not shown as a member of the Daedalus Engineering Team, but rather, as one of two "Daedalus Advisors." GOOG-SD-00146567. Moreover, Thrun's picture is underneath that of his colleague Teller, further indicating his secondary role. *See id.*

Space Data's other documents fail to show that Thrun has any unique knowledge of relevant issues. First,  Third, to the extent that Thrun was present at any meetings about Google's balloon work, his knowledge is not unique, as other deponents were also present at the same meetings, including DeVaul and Teller.

Space Data asserts that Thrun will have the best recollection about his own work. While that may be true, Space Data fails to show that Thrun's recollections would be relevant and not cumulative. As we noted in connection with the prior motion, Thrun was not involved in the Space Data due diligence, and never met or communicated with anyone at Space Data. ECF No. 269-1, Thrun Decl. ¶ 6. Nor does he recall discussing Space Data with anyone at Google or have any documents concerning Space Data. *Id.* ¶¶ 7-8. In light of this, and considering his status as a nonparty apex witness, preparing for and testifying at a deposition would be an undue burden on Thrun. *See Amini Innovation Corp. v. McFerran Home Furnishings*, Inc., 300 F.R.D. 406, 412 (C.D. Cal. 2014).

Space Data has failed to demonstrate that Thrun's deposition would be proportional to the legitimate needs of this case. Thus, a protective order or, alternatively, an order quashing the subpoena should issue.

Respectfully submitted,                              Respectfully submitted,

*/s/ Spencer Hosie*                                  */s/ Christopher B. Hockett*
Spencer Hosie                                        Christopher B. Hockett
*Counsel for Plaintiff Space Data Corp.*             *Counsel for Sebastian Thrun*

I hereby attest pursuant to Civil Local Rule 5-1(i)(3) that concurrence in the electronic filing of this document has been obtain from the other signatories.

Dated: August 8, 2018                                */s/ Spencer Hosie*
                                                     Spencer Hosie