**KEKER VAN NEST & PETERS**

Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
keker.com

Matthias A. Kamber
(415) 391-5400
mkamber@keker.com

**HOSIE | RICE LLP**

Transamerica Pyramid, 34th Floor
600 Montgomery Street
San Francisco, California 94111
T: 415.247.6000
F: 415.247.6001

Spencer Hosie
(415) 247-6000
shosie@hosielaw.com

November 15, 2018

**VIA ELECTRONIC FILING**
**REDACTED VERSION SOUGHT TO BE SEALED**

The Honorable Nathanael M. Cousins
United States District Court for the Northern District of California, San Jose Division
Courtroom 5, 4th Floor
280 South 1st Street
San Jose, CA 95113

Re:   *Space Data Corp. v. Google, et al.,* Case No. 16-cv-03260-BLF (NMC)

Dear Judge Cousins:

Defendants Alphabet Inc., Google LLC, and Loon LLC (collectively, "Google") and Plaintiff Space Data Corporation ("SDC") submit this joint letter brief regarding whether particular infringement theories in the opening report of SDC's expert, Dr. Pullen, should be stricken. The parties jointly request leave to file excerpts of Space Data's Infringement Contentions and Dr. Pullen's report with this letter. *See* accompanying Joint Motion to File Exhibits.

## GOOGLE'S STATEMENT

*Introduction:* The infringement report of SDC's expert, Dr. Pullen, introduces an entirely new infringement theory for the '706 patent, and four different theories for the '193 patent, where SDC's contentions only disclosed one. These new theories should be stricken as untimely and prejudicial.

*Legal Standard:* For each claim, a patentee must disclose in its contentions each accused "**process, method, act,** or other instrumentality . . . of which the party is aware. **This identification shall be as specific as possible**." PLR 3-1(b) (emphases added). A patentee must also include "[a] chart identifying specifically **where and how** each limitation of each asserted claim is found within each Accused Instrumentality." PLR 3-1(c) (emphasis added). Contentions "require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed," and parties may not use expert reports to introduce new infringement theories or infringing instrumentalities. *ASUS Computer Int'l v. Round Rock Research*, Case No. 12-CV-02099-JST (NC), 2014 WL 1463609 at *1 (citation omitted); *see also* Patent L.R. 3-6. Courts routinely strike expert reports that attempt to do so. *See, e.g., Asus*, 2014 WL 1463609 at *1 (striking newly disclosed infringement theories); *see also Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2016 WL 612907 at *2 (N.D. Cal. Feb. 16, 2016) (same). When the parties are deep into expert discovery, as in this case, prejudice is presumed. *Finjan, Inc. v. Symantec Corp.*, Case No. 14-CV-02998-HSG (JSC), 2018 WL 620169 at *2 (N.D. Cal. Jan. 30, 2018).

*'706 Patent:* Claim 1 of the '706 patent requires "at least two power sources each configured to provide

1310701

power to at least one of the first and second flight-termination devices." SDC's infringement contentions stated: "Each Loon balloon is equipped with ███████████████████████████████████████████████████ ███████████████████████████████████████ SDC PLR 3-1 Contentions, Ex. C at 26 (emphases added). In contrast, Dr. Pullen's opinion is that ███████████████████████████████████████████████████ ██████████████████████████████ Pullen Rpt. ¶ 622. This is altogether different—and improper. *MediaTek Inc. v. Freescale Semiconductor, Inc.*, Case No. 11-CV-5341 YGR, 2014 WL 2854773, at *3 (N.D. Cal. June 20, 2014) (striking expert opinion based on a different "power supply" than that identified in the contentions). That Dr. Pullen otherwise identified batteries and solar panels in his report is irrelevant because that is not what he alleges are the required "power sources." *See id*. And the supercapacitors were not new information. As of Sept. 22, 2017, almost a year before Dr. Pullen's report, Google produced circuit diagrams disclosing the newly accused components (GOOG-SD-00071969-2047). SDC surely identified the ████████████ *before* Kyle Brookes's deposition because its first substantive question at his deposition was "what's a ████████", and the issue was thereafter the subject of extensive questioning.

*'193 Patent:* All asserted claims of the '193 patent require "determining locations of one or more neighbor balloons relative to the determined location of the target balloon," and claim 1 also requires "determining a desired movement of the target balloon based on the determined locations of the one or more neighbor balloons relative to the location of the target balloon." In its contentions, SDC identified a *single* theory for those limitations: keeping balloons clustered together but a certain distance apart to create "an airborne 'mesh' network." SDC PLR 3-1 Contentions, Ex. A at 5. Specifically, for claim element 1(b), SDC alleged that "Google Loon 'flocks' balloons together to create an airborne 'mesh' network. To maintain its 'flocks' and network, Google determines the location of balloons relative to other balloons in the 'flock' and network; these are the 'target balloons,' *i.e.*, balloons to be moved relative to other balloons." *Id*. And for element 1(d), SDC alleged that "Google determines the desired movement of target balloons; *i.e.*, the balloons to be moved, in its 'flock' and network relative to other balloons in the 'flock' and network." SDC then quoted, without explanation, various documents in support of this single disclosed theory.

In place of the single theory in SDC's contentions, Dr. Pullen posits *four* separate theories, only one of which plausibly corresponds to its PLR 3-1 contentions. *See* Pullen Rpt. ¶¶ 302-11, 340-77. Google does not move to strike Dr. Pullen's theory based on iteratively applying Loon's ███████████████ ████████████████████████████████████████████████████████████ because SDC's contentions at least indirectly accused Loon's "Seeker" algorithms. Moreover, SDC repeatedly identified "station-keeping" in its discovery responses and damages contentions, asked to inspect the ███████████, and took Rule 30(b)(6) deposition testimony on the subject. But Dr. Pullen's *three* other theories, which target functionality in OregonDispatcher, are unrelated to the theory in SDC's contentions and were never disclosed at *any* level of detail.

First, Dr. Pullen accuses functionality that ████████████████████████████████████ (as distinct from navigating a balloon to that region or keeping balloons clustered over a target). SDC attempts to shoehorn this theory into a quote offered in support of its single disclosed theory, "fleet planning algorithms … compute trajectories for [its] balloons." But computing a balloon's trajectory is not akin to ███████ ████████████████████████ And, in any event, SDC did not *accuse* Loon's fleet planning and control algorithms. Rather, it merely *quoted without explanation* Google materials mentioning "fleet planning" and "determin[ing] where its balloons need to go" in support of its single disclosed theory. Quotations in support of the disclosed theory did not provide notice of Dr. Pullen's *separate* balloon-assignment theory, particularly given that SDC's contentions failed to explain *how* an algorithm that ████████████████ ████████████████, per the claim, how to move a target balloon *based on* the determined relative locations of its neighbors.

1310701

Second, Dr. Pullen accuses functionality ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SDC claims that it disclosed this theory by identifying that "planning and control algorithms … coordinate [Loon's] balloon fleet." But, again, this language appears only in a quotation of a Google document cited by SDC in support of its single disclosed theory; it provides no notice that, in addition to the steering algorithms themselves, SDC separately accused OregonDispatcher functionally that *picks* a steering algorithm, much less any identification of *where* or *how* that functionality satisfies the language of claim elements 1(b) and 1(d).

Third, Dr. Pullen accuses a technique for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ SDC identified the following in its contentions as allegedly disclosing this ▮▮▮ theory: "manage the balloons' paths just enough to keep them at a roughly equal distance from each other." Here too the language is from a quotation in support of SDC's single disclosed theory. It provides no suggestion of a stand-alone theory related to ▮▮▮, nor any explanation of *how* such ▮▮▮ involves determining the relative locations of neighboring balloons or how to move a balloon based on that determination.

SDC's reference to "flocking" in its contentions did not put Google on notice of theories related to balloon dispatch in general or OregonDispatcher in particular, both because the term has no precise meaning and because using the term does not reveal *how* "flocking" meets the claim language. Certainly "flocking" is not a magic word that encompasses *everything* Google does to manage balloons. In any event, resolving this dispute does not require defining "flocking." Rather, one must evaluate the functionality SDC accused of infringing. SDC conceded that 'flocking' references accused steering functionality. Ltr from Martin to Kamber (Oct. 2, 2018) (equating flocking with the use of the Seeker algorithms, and stating that "flocking' and 'StationSeeking' are synonymous with ▮▮▮▮▮▮▮▮▮▮"). But simply invoking the term "flocking" did not also disclose three additional, separate infringement theories related to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or, as SDC now argues, all three. Most importantly under Patent L.R. 3-1(c), the recitation of "flocking" did not explain *how* these three functions allegedly practice the claims. And simply arguing that "flocking" includes "getting there" and "staying there" does not plug the hole—indeed, both relate to *steering*. GOOD-SD-00132121 ("getting there" is "*navigat[ing]*…balloons to a target[];" "staying there" is "making altitude adjustments to stay over a certain area"). Because these accused functions don't inherently require practicing the method steps (and, in fact, do not), SDC had to disclose *how* they allegedly infringe.

Finally, SDC's new theories are not excusable because Google first provided OregonDispatcher documentation in April 2018 (months before fact discovery closed). Setting aside the incongruity of this argument and SDC's position that the three OregonDispatcher theories were disclosed in its contentions, this is no excuse for adding theories in an expert report without seeking leave to amend its contentions. PLR 3-6; *see also ASUS Computer Int'l*, 2014 WL 1463609 at *4 (striking theories first disclosed in report); *see also Symantec Corp.*, 2018 WL 620169 at *7; *Proofpoint, Inc.*, 2016 WL 612907 at *3-4.

**Proposed Compromise:** SDC can pursue its StationSeeker theory for the '193 patent, but not the three new theories; for the '706 patent it can pursue claims that do not require "at least two power sources."

## SPACE DATA'S STATEMENT

Space Data's Infringement Contentions not once used the phrase "keeping balloons clustered together but a certain distance apart…." Undaunted, Google argues that Space Data's Contentions posit a single infringement theory, "keeping Balloons clustered together but a certain distance apart…." It cites one paragraph of Space Data's 215-page '193 Contentions in support of this thesis.

In so concluding, Google redefines its own word "flocking," ignores the actual evidence Space Data cites, and then takes credit for not producing until near the end of discovery the "OregonDispatcher" ("OD") document. At bottom, Google complains that SDC did not call out the OD algorithm by **name**. But OD's functionality was fully described and fairly accused.

***How Loon Navigates and Steers Balloons***: Google launches all of its Loon balloons from two U.S. locations, Nevada and Puerto Rico. Google then uses ▮ related steering and navigation algorithms to "**send** small teams of balloons to a specific region [and] dance on the winds in small loops" once there. *See* SDC Infringement Contentions, Exhibit A—the '193 Claim Chart ("I.C.") at 8, 29. ▮
▮ Lead Loon software engineer Sal Candido ▮.

***What SDC's Contentions Actually Say***: In making its "single theory" argument, Google cites one piece of evidence on I.C. page five, and then ignores all of the **other** evidence which broadly accuses Loon's fleet management and steering functions, including those Google now says are missing. By point:

▮: *See* I.C. at 13, 27 (showing balloons traversing continents and stating "Project Loon uses software algorithms to **determine where** its balloons need to go") (underlined in I.C.); 7, 29 ("Project Loon's algorithms can now **send** small teams of balloons to form a cluster **over a specific region**"); 12, 33 ("[W]e can now **send** small teams of balloons **to specific areas**"); 8, 29 ("Machine-learning-powered algorithms . . . **send** small teams of balloons to a specific region"); 9, 30 (▮▮); 55 ("our planning algorithms can predict and use [winds] to get our balloons where they need to be"). ▮. *See* I.C. at 9, 30 ("Planning **and** control algorithms . . . coordinate the balloon fleet" and showing ▮); 12, 33 (showing same over a fictional continent); and 8, 30 (fleet planning algorithms "control balloon trajectories **and** cluster them where Internet access is desired"). ▮: First, Dr. Pullen explains that ▮ Pullen Report ("P.Rpt.") ¶373. Other images he points to as illustrating "▮" show balloons "spaced out," ¶¶371-372, precisely what Google says the I.C. accuses. Second, Dr. Pullen points to another illustration of ▮, ¶374, showing Loon's balloons "Getting There" and "Staying There"—exactly Google's definition of "flocking." *See* below. Finally, "▮ P.Rpt.¶370, is the **exact same function** that the I.C. **repeatedly** accuses: Google "send[s] small teams of balloons to [cluster over] specific areas." I.C. at 12, 33; 8, 29 (same); 7, 29 ("small teams . . . specific region"). It is accomplished with the same tools—▮ P.Rpt.¶370 & n 629.

This evidence makes clear that SDC did not intend to limit the term "flocking," used in the textual introduction to the evidence, to just local clustering alone. To the contrary, the evidence **shows** balloons travelling to remote destinations and then "dancing" once there. This is exactly how Google itself defines flocking. *See* GOOG-SD-00132121-201 (one "part of balloon flocking equals getting there," and the other "part of balloon flocking equals staying together" in clusters once there). And, Google Loon C.E.O. Alestair Westgarth testified that "cluster flocking" or "flocking" ▮ ▮, exactly the converse of what Google says now. *See, e.g.*, Westgarth Dep., 182:25-183:5. ("Q: I've seen the phrase 'cluster flocking' in Google documents. What does that mean to you? ▮ ▮").

1310701

And Google's own brief is inconsistent on flocking: Google first says the term has no precise meaning, but then says it means clustering, but not ▓▓▓ or sending.

**_What Actually Happened in Discovery_**: Google did not provide any ▓ documents with its PLR technical production on July 20, 2017. SDC's First Set of Requests for Production (served on May 8, 2017), asked that Google produce all Loon algorithms. (RFP No. 20). Google produced documents on ▓▓▓▓▓▓▓▓▓▓▓▓ on July 20, 2017, but nothing on ▓▓. Google first produced the ▓ document on April 9, 2018, two and a half months before discovery closed. No Google witness ever mentioned ▓ at deposition, prior to Sal Candido's deposition in June 2018. And Google did not even mention ▓ in answering an SDC interrogatory asking for a full description of **all** Loon fleet control algorithms, even though Google concedes that ▓ is a Loon fleet planning algorithm.

**_Google Had Full Notice_**: SDC's Contentions broadly accuse Google's fleet "[p]lanning and control algorithms," see I.C. at 9, 30, including those used to send balloons to remote locations and cluster them once there. See I.C. at 7, 8, 12, 13, 27, 28, 29, 30 & 33.

**_Space Data Was Not Required to Amend its Contentions_**: Google's amendment argument assumes its premise. One amends to add new theories, not additional details. SDC had no obligation to move to amend its Contentions to call out the **name** of Google's fleet planning algorithm, OD. See _Finjan, Inc. v. Blue Coat Sys., Inc._, 2015 WL 3640694, at *3 (N.D. Cal.) (PLRs require "only reasonable notice . . . given the information of which plaintiff is aware"). The I.C.'s identified OD by its function in Google's "own lingo." See _Apple v. Samsung_, 2014 WL 173409, at *3 (N.D. Cal.). SDC complied with Rule 3-1. The Contentions identified _where_: Loon's fleet planning and control algorithms. It identified _how_: determining where the balloons need to go, computing trajectories to get them there, and sending them there to cluster in small teams. I.C. at 27, 29, 30, 32, 33. Dr. Pullen's report does not add **new** theories (much less three new theories); it adds proof supporting the accusations set out in the I.C.

Consider what would have happened had Google's lawyers asked lead Loon engineer Candido "what fleet planning and control algorithms does Loon use?" Candido would have identified ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. See GOOG-SD-00135538 (Candido treatise on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓"). Did Google's lawyers not do this?

**_The '706 Patent_**: The Contentions explain ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ batteries and solar. See SDC Infringement Contentions, Exhibit C—the '706 Claim Chart at 26. Dr. Pullen is in accord: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ P.Rpt ¶632. It is a fact that when ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. This fact provides their utility. Unlike in _MediaTek_, Dr. Pullen **does** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" 2014 WL 2854773 at *4. He explicitly connects the supercapacitors to Loon's batteries and solar. See, e.g., P.Rpt. ¶¶624, 627. No public documents mention ▓▓▓▓▓▓▓▓. Contrary to Google, Space Data learned of them at the deposition of Kyle Brookes on July 18, 2018, post-close of discovery. Asked in an interrogatory to explain its contention that its balloons lack "two power sources," Google pointed only to Mr. Brookes' testimony—the exact same testimony Dr. Pullen cites.

**_Compromise_**: As Google is trying to constrain SDC's trial case improperly, SDC does not see a fair compromise here.

1310701

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| | |
| */s/ Spencer Hosie* | *Matthias A. Kamber* |
| | |
| *Counsel for Plaintiff Space Data Corp.* | *Counsel for Defendants Alphabet Inc., Google LLC, and Loon LLC.* |

1310701