1                UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3    Before The Honorable Beth Labson Freeman, Magistrate Judge

4

5  SPACE DATA CORPORATION,            )
                                      )
6            Plaintiff,               )
                                      )
7  vs.                               )   No. C 16-03260-BLF
                                      )
8  ALPHABET, INC., GOOGLE, LLC,      )
   AND LOON, LLC,                     )
9                                     )
             Defendants.              )
10  _____)

11                                    San Jose, California
                                      Wednesday, December 5, 2018
12

13   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
              RECORDING 1:37 - 1:57 = 30 MINUTES
14

15  APPEARANCES:

16  For Plaintiff:
                              Simpson Thacher
17                            2475 Hanover Street
                              Palo Alto, California 94304
18                      BY:   BRANDON C. MARTIN, ESQ.

19                            Hosie Rice, LLP
                              600 Montgomery Street
20                            34th Floor
                              Transamerica Pyramid
21                            San Francisco, California
                               94111
22                      BY:   DARRELL R. ATKINSON, ESQ.

23

24

25            (APPEARANCES CONTINUED ON NEXT PAGE)

2

1  <u>APPEARANCES</u>:  (Cont'd.)

2  For Defendants:              Keker, Van Nest & Peters
                                633 Battery Street
3                               San Francisco, California
                                 94111
4                          BY:  MATTHIAS A. KAMBER, ESQ.
                                LEAH PRANSKY, ESQ.
5
   Transcribed by:             Echo Reporting, Inc.
6                              Contracted Court Reporter/
                               Transcriber
7                              echoreporting@yahoo.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1  <u>Wednesday, December 5, 2018</u>                              <u>1:37 p.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4          THE CLERK:  Calling Civil 16-3260, Space Data

5  Corporation versus Alphabet, Inc., et al.

6          MR. KAMBER:  Good afternoon, your Honor.  Matthias

7  Kamber on behalf of the Defendants.

8          THE COURT:  Welcome.

9          MR. KAMBER:  With me is my colleague, Lea Pransky

10 as well as Chester Day from Google, LLC.

11         THE COURT:  Good afternoon to you all.

12         MR. MARTIN:  Your Honor, good morning.  Brandon

13 Martin on behalf of Plaintiff, Space Data.

14         THE COURT:  Good afternoon.  And you've got a

15 colleague with you as well?

16         MR. MARTIN:  I do, Darrell Atkinson.

17         THE COURT:  Welcome.

18      All right.  The discovery brief submitted is subject in

19 part to a motion to seal.  I don't intend to refer to the

20 potentially sealed portions accidentally, and I invite you

21 to also not reveal something confidential accidentally.  If

22 there is a basis to seal something, let's take it up

23 purposefully, and you can tell me that there's something

24 that you wish to express that needs to be under seal.  Of

25 course, everything is publically done unless there's a basis

4

1  for it not to be publically done.  And I will have a motion

2  -- excuse me -- a ruling on the motion to seal the materials

3  that come in separately.

4      I wanted to start on a procedural issue which is

5  yesterday there was a Defense motion to stay the proceedings

6  involved in the 706 patent.  One but not all of the issues

7  in the discovery motion deals with the 706 patent.  So my

8  question is what impact, if any, does that have on the

9  discovery brief presented to me today.

10          MR. MARTIN:  Your Honor, I don't think it has any

11  impact from Plaintiff's perspective.

12          MR. KAMBER:  I don't believe so either, your

13  Honor, because Plaintiff is opposing that motion.  We don't

14  know what will happen, and we have upcoming depositions that

15  this motion would impact.  So, unfortunately, that motion

16  doesn't moot this one.

17          THE COURT:  Very good.  I -- I don't think it does

18  either, but I wanted to check with you first to see what

19  your views were about how they might relate, and the motion

20  to stay, of course, has not been fully briefed and not ruled

21  upon by your trial judge.  So there's not a stay in place.

22  So we'll proceed onward, noting that that motion's been

23  filed but not ruled upon.

24      Second procedural issue is there's a question as to

25  whether the motion is truly a discovery motion referred to

5

1 me or is more of a trial motion that would go to your trial

2 judge.  I have in the past ruled on motions like this even

3 though there is some overlap between the two topics, and

4 that's with the trial judge's permission, the rationale

5 being that if you disagree with my ruling on the motion, of

6 course, you can take an objection to your trial judge so

7 you're not missing out on an opportunity to discuss the

8 issues with her, but we're starting here, and so that's a

9 reminder that any party may object within 14 days of my

10 ruling on the -- on the motion.

11     All right.  So you've got challenges to the '706 patent

12 and different theories on the '193 patent, and you've given

13 me a lot of material in support of that.  And, as you note,

14 there's other people who are waiting.  So give me your --

15 kind of your headline arguments and especially if there's

16 anything that is not covered in the briefs that you think I

17 need to understand.

18          MR. KAMBER:  Sure.

19          THE COURT:  I'll give you the opportunity.

20          MR. KAMBER:  Sure, your Honor.  Our letter brief

21 started with the '706 patent, but Space Data addressed it

22 second.  I think the law is relatively clear on that one.

23 The facts are relatively clear.  It's very parallel to the

24 Media Tek v. Freescale case.  So I think I'll just focus my

25 argument on the '193 patent.

6

1      As to that one, it might help to have the contentions
2  in front of you or not, but Exhibit A to the joint motion
3  that the parties filed has the contentions with respect to
4  elements 1(b) and 1(d) of the '193 patent, and the theory as
5  to element 1(d), which I think is the one that covers more
6  of the issues here, so that's probably the place to focus
7  our attention, is that Google Loon flocks balloons together
8  to create an airborne mesh network.  Google calls that
9  cluster flocking.  To maintain its flocks and network,
10 Google determines the desired movement of target balloons,
11 i.e., the balloons to be moved in its flock and network
12 relative to other balloons in the flock and network.  That's
13 the single disclosed theory.  If you look at the contentions
14 themselves, that's one theory followed by a variety of
15 images and quotes from both external and internal Google
16 documentation.
17      Now we're looking at three -- or, excuse me -- three
18 additional but four total theories in Doctor Pullin's
19 (phonetic) report as to element 1(d).  We're looking at two
20 separate theories with respect to element 1(b).  And just
21 quickly for the record, your Honor, it's assignment at
22 paragraphs 348 through 357 of Exhibit B.  The steering
23 algorithms combined with the org and dispatcher at 358 and
24 359, station seeker standing alone at 360 through 368, and
25 then staging at 370 to 376.

7

1     Those four distinct unique theories stand in very stark

2 contrast to the contentions, just looking at them side by

3 side.  You don't see four distinct theories announced or

4 alleged in the infringement contentions.

5     Now, Space Data points to a variety of sort of loose

6 quotes or language that they provided in support of their

7 single theory, but none of that supports adding these three

8 additional new theories to the case.  It doesn't explain how

9 or why, and I think that's the really critical point here.

10 There's no explanation as to how, and that's critical under

11 Patent Local Rule 3-1(c).

12     I think the key point here, your Honor, is that just by

13 pointing to fleet management or saying "You move your

14 balloons" or "You have fleet management," that doesn't put

15 us on notice of what these theories were.  We, frankly, had

16 no idea about these additional theories, and they're

17 certainly not mapped out or explained in the contentions

18 whatsoever.  So --

19         THE COURT:  So what should I do about it?  What's

20 the -- what's the remedy that is appropriate under the

21 circumstances?

22         MR. KAMBER:  I think under the circumstances, your

23 Honor, they can and should proceed under the steering theory

24 that they disclosed that we all kind of knew was the issue

25 based on other discovery and to dismiss these three

8

1  additional theories that showed up in Doctor Pullin's

2  report, simply put.

3          THE COURT:  So strike those portions of the report

4  and --

5          MR. KAMBER:  Correct.

6          THE COURT:  -- let them proceed on the steering

7  theory?

8          MR. KAMBER:  Yes.  Specifically, I think the

9  staging theory for 1(b) and 1(d) and the staging -- and,

10 excuse me, the assignment and steering plus assignment

11 theories in 1(d).

12         THE COURT:  All right.  Thank you.

13         MR. MARTIN:  Your Honor, I think in deciding this

14 motion, it's important to go back to Rule 3(1)(b).  3(1)(b)

15 says that for a method claim, the Plaintiff must identify

16 the process that infringes.  And, your Honor, Space Data did

17 that.  It said that Google balloon flocks balloons together,

18 and that word "flocks" is a verb here.  It means flocking,

19 and flocking has two parts.  I brought a handout.  May I

20 pass it up to you?

21         THE COURT:  You may.

22         MR. MARTIN:  It contains materials --

23         THE COURT:  Just for the record, I see it's also

24 going to defense counsel.

25         MR. MARTIN:  -- from the briefing and from the --

9

1  the contentions.

2      Your Honor, you may remember from prior briefing that

3  Google started with a model involving thousands of balloons

4  circling rings around the world, and as they got better at

5  navigating the winds, Google switched to a model where it

6  sends small teams of balloons to specific places to cluster

7  together.  Google called this flocking.  And, in fact, it

8  produced a video that was designed to "define and explain

9  the benefits of balloon flocking" that would "effectively

10 broadcast the story about balloon flocking and that would

11 personalize the press's understanding of balloon flocking."

12 And that video, your Honor, is cited in SDC's contentions at

13 Exhibit -- or at pages 12 and 33.

14      Now, the definition that was intended to be

15 communicated was a two-part definition.  Flocking means

16 getting there and staying there, and Space Data excerpts of

17 that video shows balloons getting there and staying there.

18 In that specific slide as to party animation, it says:

19              "With our latest navigational

20          update, we can now send small teams of

21          balloons to specific areas."

22      And other parts of the Google materials quoted in the

23 infringement contentions say "We send small teams to cluster

24 in specific areas."  So getting there, plus staying there is

25 flocking.  It's the same as sending and clustering.

1     And, your Honor, it's hard to talk in open court about

2  which algorithms do specifically what, but the assigning is

3  done by a particular algorithm, and it decides where you

4  send each balloon.  The algorithm then has control over two

5  other algorithms and they're CS and SS.  And they then

6  navigate the balloon there and then keep it there.

7     So, your Honor, limiting Space Data's contentions to

8  clustering would wipe out half the contentions.  It really

9  would, half the contentions that are in there, more, your

10 Honor.  Space Data's contentions specifically call out the

11 optimization of where to send which balloons.  It says on

12 page 30 -- and this is -- this is public:

13             "We can also look at fleet planning

14          for multiple balloons simultaneously to

15          control balloon trajectories and

16          clustering where access is desired.  Our

17          planning algorithms can compute

18          trajectories for thousands of balloons."

19    Computing those trajectories, those possible different

20 trajectories, the way they can go and how fast particular

21 balloons can get to particular places is exactly what that

22 first top level fleet planning algorithm does, your Honor.

23          THE COURT:  Same remedy question for you.  If I am

24 persuaded by Defendants that there's -- that these are new

25 theories, what would the remedy be, for the opportunity to

11

1  clarify, striking something?

2          MR. MARTIN:  I think further briefing, your Honor.

3  While this is a disclosure and discovery issue, the five-

4  page letter briefing is fairly constraining for this sort of

5  issue.  So I think further briefing would be necessary.

6          THE COURT:  All right.  I will take the motion and

7  that proposal, and you'll have the proposal under

8  consideration.  Is there something else you want to say?

9          MR. MARTIN:  Can I point out one more thing?

10          THE COURT:  One more thing.

11          MR. MARTIN:  In the -- in the motion you referred

12  to earlier, the motion to stay, Google described the '193

13  patent, described Space Data's infringement accusations from

14  the '193 patent.  On page four of that document it says:

15                "Space Data uses balloon steering

16              and fleet management software

17              algorithms, which are part of the

18              mission control of infringing the '193

19              patent."

20      And if we're computing steering and fleet management

21  algorithms, there's only one fleet management algorithm, and

22  that is the one called out in the contentions.

23          THE COURT:  They know what you're alleging, and

24  there's really no mystery here.

25          MR. MARTIN:  That's correct, your Honor.  In fact,

12

1  in an argument on the motion to dismiss Space Data's third

2  amended complaint, counsel for Plaintiff said, "Look, we

3  haven't moved to strike Space Data's contentions because

4  they went out and gathered a lot of video and a lot of

5  interview quotes and a lot of other things, and there's a

6  lot of material there."

7          THE COURT:  All right.  I'll take this under

8  submission and have a written order for you.  Thank you very

9  much.  Happy Holidays.

10          ALL:  Thank you, your Honor.

11     (Proceedings adjourned at 1:50 p.m.)

13

<u>CERTIFICATE OF TRANSCRIBER</u>

1

2

3      I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by

6  the U.S. District Court, Northern District of California, of

7  the proceedings taken on the date and time previously stated

8  in the above matter.

9      I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14

15

16          Echo Reporting, Inc., Transcriber

17          Tuesday, December 11, 2018

18

19

20

21

22

23

24

25