KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
MATTHEW M. WERDEGAR - # 200470
mwerdegar@keker.com
EUGENE M. PAIGE - # 202849
epaige@keker.com
MATTHIAS A. KAMBER - # 232147
mkamber@keker.com
RYAN K. WONG - # 267189
rwong@keker.com
LEAH PRANSKY - # 302246
lpransky@keker.com
SHAYNE HENRY - # 300188
shenry@keker.com
ANDREW S. BRUNS - # 315040
abruns@keker.com

633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendants
ALPHABET INC., GOOGLE LLC, and LOON LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SPACE DATA CORPORATION,

Plaintiff,

v.

ALPHABET INC., GOOGLE LLC, and LOON LLC,

Defendants.

Case No. 5:16-cv-03260-BLF

**DEFENDANTS ALPHABET INC., GOOGLE LLC AND LOON LLC'S REPLY TO PLAINTIFF SPACE DATA CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION FOR STAY**

Judge: Hon. Beth Labson Freeman

Date Filed: June 13, 2016

Trial Date: August 5, 2019

**REDACTED VERSION OF DOCUMENT**

## I. INTRODUCTION

Space Data's opposition disregards the primary reasons that courts grant stays pending IPR: It is a waste of the Court's and the parties' time and resources to proceed on patent claims reasonably likely to be found invalid. Space Data further ignores that the estoppel effect of a final written decision from the PTAB weighs in favor of a stay. Even if the PTAB does not invalidate the '706 patent, Google will be unable re-raise the same invalidity challenges before this Court, thus streamlining any future trial on the '706 patent (if there is even a need for one).

The '706 patent claim has been pending for seventeen months—indeed, the patent only issued in May 2017, long after Space Data commenced this action. And a great deal of work still lies ahead in the nine months leading up to trial for both the parties and the Court. A stay would eliminate duplicative, and potentially unnecessary, work and allow the parties and Court to focus on Space Data's '193 patent infringement, trade secret misappropriation, and contract claims.

## II. ARGUMENT

### A. Space Data is Not Entitled to a Jury Trial.

It is undisputed that Space Data has not provided any expert opinion regarding alleged damages for the '706 patent. Rather, Space Data's damages expert states unequivocally "that Space Data is ***not seeking damages for the '706 Patent***, but will seek ***injunctive relief*** at trial." Decl. of Leah Pransky i/s/o Mot to Stay ("Pransky Decl."), Ex. C (Dkt. 374-5) at 3 (emphasis added). It further is undisputed that Space Data is entitled to a jury trial only on its damages claims, which should end the inquiry.

Seeking to avoid a stay, Space Data now attempts to walk back its own expert's representations, arguing that it ***might*** be entitled to a jury trial because it ***might*** elect to seek damages in the future. Space Data's Opp. to Mot to Stay ("Opp.") (Dkt. 395-14) at 2. Notably, however, Space Data does not contend that it presently seeks damages; instead it states obliquely that it has yet to make such an "election." *Id.* at 3. Nor does it identify any evidence from which a jury could award damages, given that its damages expert offers no opinion on the '706 patent (and offers no opinion on lost profits as to any claim in the case). *See id.* at 3-4.

But what Space Data may hypothetically do at some undefined point in the future is

1

DEFENDANTS ALPHABET INC., GOOGLE LLC AND LOON LLC'S REPLY TO PLAINTIFF SPACE DATA CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION FOR STAY
Case No. 5:16-cv-03260-BLF

irrelevant to this stay motion. The undisputed record before the Court is: (1) an affirmative representation that Space Data is ***not*** seeking damages for the ’706 patent, but instead only injunctive relief; (2) a concession that it has no expert opinion on damages for this patent; and (3) nothing but equivocation from Space Data about whether it intends to seek damages on the ’706 patent in the future. Pransky Decl., Ex. C at 3; *see also* Opp. at 3-4. The record thus demonstrates that resolution of the ’706 patent—in the event it survives the pending IPR—should require only a bench trial.

In any event, the vast majority of motions to stay pending IPR do not involve a patent infringement claim ineligible for a jury trial. Thus, even if Space Data were entitled to a jury trial on the ’706 patent, the factors in this case would nonetheless weigh in favor of a stay.

**B. A Stay at this Stage is the Most Efficient Way to Proceed.**

As Google noted in its opening brief, “it is not uncommon” for Courts to stay a case at this stage of the litigation—or even later. *Ricoh Co. Ltd. v. Aeroflex Inc.*, No. C03-04669 MJJ, 2006 WL 3708069, at *5-6 (N.D. Cal Dec. 14, 2006) (granting stay although discovery had closed, summary judgment motions and witnesses had been submitted, and a trial set); *Motson v. Franklin Covey Co.*, No. civ 03-1067 (RBK), 2005 WL 3465664, at *2 (D.N.J. Dec. 16, 2005) (granting a stay after discovery was complete and summary judgment had been decided); *Robert H. Harris Co. Inc. v. Metal Mfg. Co. Inc.*, No. civ. J-C-90-179, 1991 WL 217666, at *4 (E.D. Ark. June 21, 1991) (granting a stay one month before trial); *Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, No. 4:03-CV-40493, 2004 WL 1968669, at *5 (S.D. Iowa Aug. 24, 2004) (granting stay two months before trial). Indeed, the “completion of discovery does not necessarily counsel against staying a patent infringement action.” *eSoft, Inc. v. Blue Coat Sys., Inc.*, 505 F. Supp. 2d 784, 788 (D. Colo. 2007).

Just as the Courts in the above cases have recognized, the parties and the Court here have far more work ahead over the next nine months. And if the Court were to deny a stay and proceed with the trial “it is possible that the time, resources, and significant efforts of all those involved in such a trial…would be wasted.” *Twilio, Inc. v. TeleSign Corp*., No. 16-CV-06925-LHK, 2018 WL 1609630, at *1 (N.D. Cal. Apr. 3, 2018) (“[S]ince it is possible that this Court

and the PTO could reach inconsistent conclusions regarding the same patent, there is a significant concern of wasting resources by unnecessarily proceeding forward.") (internal citations and quotations omitted). A stay would prevent this.

Regardless, Space Data's assertion that this case "has been pending for over three years" is misleading. *See* Opp. at 1. Although the case itself was filed in June 2016 and has been pending for two-and-a-half-years, the '706 patent was added to the case only seventeen months ago as part of Space Data's Third Amended Complaint. *See* Third Amended Complaint ("TAC") (Dkt. 144). In fact, Space Data did not file the application that matured into the '706 patent until months ***after*** it filed this lawsuit. *See* Dkt. 1 (Complaint, filed June 13, 2016); Decl. of Leah Pransky i/s/o Def.'s Reply to Space Data's Opp. ("Pransky Reply Decl."), Ex. E ('706 application filed Nov.14, 2016). And the parties' motions practice in this case has, in large part, been untethered to their litigation of the '706 patent. In fact, the majority of the "50 motions," Opp. at 4, filed in this case were simply administrative (motions to seal, extend time, etc.); only 20 were substantive. And only four of those substantive motions relate to the '706 patent: the Motion to File a Third Amended Complaint that sought to add the '706 patent to the case (Dkt. 79), the *Markman* briefing (Dkts. 250, 263, 267), a motion to strike undisclosed infringement theories from Space Data's expert's report (Dkt. 365), and this motion (Dkt. 374). Of the remaining substantive motions, eight relate only to the trade secret and/or contract claims, two relate exclusively to the '193 patent, and six were discovery disputes not specific to the '706 patent.

Furthermore, Space Data has deprioritized its own efforts regarding the '706 patent. In addition to telling its damages expert that it was not seeking damages related to the '706 patent, Space Data has not pursued discovery into Google's experts' opinions on this patent. Space Data did not ask Dr. Aaron, Google's invalidity expert, a single question at his deposition about his opinion regarding the validity of the '706 patent. Pransky Reply Decl. ¶ 11. And, although Space Data asked Dr. Hansman, Google's non-infringement expert, two general questions about supercapacitors, it didn't ask him any questions at all about his non-infringement theory for the'706 patent. *Id.* ¶ 12. A stay would permit the parties to focus their trial preparation efforts on the remaining issues in the case that, as Space Data's own conduct shows, even it considers more

important and worthy of its time and resources.

**C. A Stay Will Likely Eliminate the '706 Patent from the Case, but if it Does Not, A Stay Will Necessarily Simplify the Issue of its Validity.**

Space Data's claim that a stay will not simplify the issues before the Court is plainly wrong. It ignores entirely that either some (or all) of the asserted '706 patent claims will be cancelled or amended, or Google will be subject to IPR estoppel and will be unable to challenge their validity based on grounds raised in the IPR. *See Hewlett-Packard Co. v. ServiceNow, Inc.*, No. 14-CV-00570-BLF, 2015 WL 5935368, at *2 (N.D. Cal. Oct. 13, 2015). Thus, a stay would likely eliminate Google's invalidity challenge under Sections 102 and 103 to the '706 patent. *See* Def's Mot. to Stay '706 Patent Proceedings Pending *Inter Partes* Review (Dkt. 374) at 6.

Instead, Space Data asserts—citing nothing—that "many of the ['706 patent] prior art references may be the same" as those used for the '193 patent. *See* Opp. at 6. But Space Data knows that this is not the case. Google has already made its final election of prior art. Pransky Decl., Ex. D (Dkt. 374-6). There is only ***one*** prior art reference asserted against both the '706 and '193 patents; ***ten*** references are unique to either the '706 or the '193 patent. *Id.* Thus, if the '706 patent claim is not stayed, the Court will have to hear a Section 102/103 invalidity case that will have virtually no overlap with the challenge to the '193 patent's validity. On the other hand, if the case is stayed, the Court will likely never have to hear evidence regarding the '706 patent's validity over prior art at all.

The cases on which Space Data relies—*GoPro, Inc. v. C&A Mktg., Inc.*, No. 16-CV-03590-JST, 2017 WL 2591268 (N.D. Cal. June 15, 2017), *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 15-CV-03295-BLF, 2016 WL 7732542 (N.D. Cal. July 25, 2016), and *Adaptix, Inc. v. HTC Corp.*, No. 5:14-CV-02359-PSG, 2015 WL 12839246 (N.D. Cal. Aug. 5, 2015)—are all inapposite. In each of these cases, the defendant asked the Court to stay the entire case even though only some of the patents were subject to IPR proceedings. *See GoPro*, 2017 WL 2591268, at *3-4 (declining to stay the entire case when the defendant had merely filed a petition for *inter partes* review of one of two patents); *Finjan*, 2016 WL 7732542, at *4 (declining to stay the entire case when seven of ten patents were not subject to IPR or re-exam); *Adaptix*, 2015 WL

12839246, at *3 (declining to stay the entire case where PTAB instituted on only four of 21 asserted claims). That is not the situation here, where Google is asking the Court to stay only the ’706 patent proceedings.

In any event, Space Data’s claims regarding the alleged efficiency of trying the ’193 and ’706 patent infringement claims together is belied by Space Data’s own comparative chart. *See* Decl. of Spencer Hosie i/s/o Pl. Space Data Corp.’s Opp. (“Hosie Decl.”) (Dkt. 394-1), Ex. 2. Of the more than 20 independent claim limitations across both patents, Space Data drew a comparison between fewer than half—and most of those are a stretch. *See id.* For example, Space Data suggests that evidence on the ’706 patent’s “wherein the system comprises a plurality of the airborne platforms” limitation will be “duplicative” of that for the ’193 patent’s “wherein the target balloon and one or more neighbor balloons are part of a mesh network of balloons” limitation. *See id.* But it will require different evidence to prove that Google operates a communications network in which “each balloon can receive data from and route data to other balloons, thereby permitting redundancy” (Dkt. 352, Court’s construction of “mesh network”) than it will to prove that Google’s network has more than one balloon. The infringement arguments—even on the claim limitations that Space Data identified as being similar across both patents—will not be the same.

In reality, the presentation of these two patents in the same trial would not entail the same evidence. Indeed, in his infringement report, Space Data’s expert, Dr. Pullen, cites Google engineer Dr. Candido’s deposition testimony throughout his ’193 analysis, but cites nearly exclusively to the testimony of a different engineer, Mr. Brookes, in his ’706 analysis. Dr. Pullen likewise cites to almost entirely different sets of documents in his analyses of the two patents. Google’s expert, Dr. Hansman, does the same.

In short, the evidence underlying the validity and infringement of the two asserted patents has little if any overlap. Thus, there is little efficiency in trying the ’706 patent claim alongside the ’193 patent, trade secret misappropriation, and breach of contract claims. Because a stay of the ’706 patent would simplify the issues at trial, it is the most efficient way to proceed.

**D. Space Data Has Not and Cannot Present Concrete Evidence that it Will Suffer Competitive Harm if a Stay is Granted.**

Space Data and Google do not compete in rarefied—or any—air. Space Data has not [REDACTED]—long before Loon was publicly announced in 2013. Pransky Reply Decl., Ex. F at 120:1-8; *see also* Pransky Reply Decl., Ex. G at 239:8-240:10 [REDACTED] TAC ¶ 11 (stating Loon was publicly launched mid-2013). [REDACTED]. Pransky Reply Decl., Ex. F at 120:1-8; *id.*, Ex. G at 244:17-245:8 [REDACTED] Space Data thus cannot compete with Google for commercial business [REDACTED] Space Data's unsuccessful [REDACTED], thus have nothing to do with Google's Project Loon. *See, e.g.*, Hosie Decl., Ex. 9 (Dkt. 395-18) at 704:12-13 (testifying that Space Data's [REDACTED].

In its opposition, Space Data attempts to provide examples of Space Data and Google talking to similar ***types*** of organizations (for instance, telecommunication providers), but Space Data has not produced any "concrete evidence" that it lost sales to Google. *See Lighting Sci. Grp. Corp. v. Shenzhen Jiawei Photovoltaic Lighting Co. Ltd.*, No. 16-cv-03886-BLF, 2017 WL 2633131, at *4 (N.D. Cal. June 19, 2017) (finding claim of prejudice weak when plaintiff had not "presented any concrete evidence that it has specifically lost sales to [defendant]"). Indeed, Space Data's damages expert Dr. Meyer [REDACTED]. *See* Pransky Reply Decl., Ex. H at 38:8-12. This is unsurprising. Throughout its existence, Space Data's [REDACTED]. *See id.*, Ex. G at 133:18-21 (testifying [REDACTED]); *id.* at 169:24-170:5 (testifying that he could not think of [REDACTED]). And, despite Space Data's suggestion to the

contrary, Google has had [REDACTED] [REDACTED]. *See id.*, Ex. I at 95:23-97:23; *see also id.*, Ex. J at 47:12-14 (testifying that Loon is [REDACTED] [REDACTED]).

In fact, the only example Space Data's CEO knew of where Google and Space Data "competed" for an opportunity was the Puerto Rican hurricane relief effort. *Id.*, Ex. K at 683:24-684:3; *id.* at 684:19-23. But Google provided its services to Puerto Rico ***for free***. *Id.* at 683:3-10. Even had Space Data lost that "deal" to Google—and there is no evidence that Space Data would have been chosen in Google's absence (FEMA was asking for donations [REDACTED] [REDACTED] [REDACTED]—Google's hurricane effort in Puerto Rico did not cause Space Data to lose "profits" or "market share." *See id.* at 678:6-10 9 [REDACTED] [REDACTED] [REDACTED]); *see also Lighting Sci.*, 2017 WL 2633131, at *4. The Puerto Rican hurricane relief effort thus cannot suffice to establish that Space Data would be prejudiced by a short stay.

Space Data's current assertion that "every month counts," Opp. at 8, is also not credible. Despite adding the '706 patent to the case seventeen months ago, Space Data has not sought a preliminary injunction with respect to that patent (or any of its other claims)—undercutting any claim that a few months' delay in obtaining equitable relief would cause it irreparable harm.

Finally, Space Data contends that Google would gain a tactical advantage if the Court granted the stay. According to Space Data, if Google moves for summary judgment on invalidity and the Court denies the motion, but then grants the stay, Google will get a "'do-over' in a different venue." Opp. at 9. But the opposite is true. Without a stay, Google will have the chance to prove invalidity of the '706 patent in this case; and then will have a second chance before the PTAB. Not so if a stay were granted. The motion for stay hearing (currently set for April 4) is ***before*** the summary judgment hearing (April 11). The Court therefore has the opportunity to grant a stay before deciding summary judgment. If it does, this would moot any

summary judgment motion or validity challenge at trial, thus preventing an alleged "do-over."

In short, because Space Data cannot show that it would be prejudiced if a stay were granted, this factor weighs in favor of a stay.

## III. CONCLUSION

For all the reasons discussed above, the Court should grant Google's motion to stay the proceedings on the '706 patent.

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

Dated: December 26, 2018

By: /s/ *Robert A. Van Nest*
ROBERT A. VAN NEST
MATTHEW M. WERDEGAR
EUGENE M. PAIGE
MATTHIAS A. KAMBER
RYAN K. WONG
LEAH PRANSKY
SHAYNE HENRY
ANDREW S. BRUNS

Attorneys for Defendants
ALPHABET INC., GOOGLE LLC, and
LOON LLC