KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
MATTHEW M. WERDEGAR - # 200470
mwerdegar@keker.com
EUGENE M. PAIGE - # 202849
epaige@keker.com
MATTHIAS A. KAMBER - # 232147
mkamber@keker.com
RYAN K. WONG - # 267189
rwong@keker.com
LEAH PRANSKY - # 302246
lpransky@keker.com
SHAYNE HENRY - # 300188
shenry@keker.com
ANDREW S. BRUNS - # 315040
abruns@keker.com

633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendants
ALPHABET INC., GOOGLE LLC, and LOON LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SPACE DATA CORPORATION, | Case No. 5:16-cv-03260-BLF |
| Plaintiff, | **CORRECTED DEFENDANTS ALPHABET INC., GOOGLE LLC AND LOON LLC'S REPLY TO PLAINTIFF SPACE DATA CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION FOR STAY** |
| v. | |
| ALPHABET INC., GOOGLE LLC, and LOON LLC, | |
| Defendants. | Judge:   Hon. Beth Labson Freeman |
| | Date Filed: June 13, 2016 |
| | Trial Date: August 5, 2019 |

**REDACTED VERSION OF DOCUMENT**

## I. INTRODUCTION

Space Data's opposition disregards the primary reason for a stay: It is a waste of the Court's and parties' time and resources to proceed on patent claims reasonably likely to be found invalid. Even if the PTAB does not invalidate the '706 patent, IPR estoppel would prevent Google from re-raising the same invalidity challenges, thus streamlining any future trial (if there is even a need for one). The '706 patent claim has been pending for only 17 months, and a great deal of work still lies ahead in the nine months leading up to trial. A stay would eliminate duplicative, and potentially unnecessary, work and allow the parties and Court to focus on Space Data's '193 patent infringement, trade secret misappropriation, and contract claims.

## II. ARGUMENT

### A. Space Data is Not Entitled to a Jury Trial.

It is undisputed that Space Data has not provided any expert opinion regarding damages for the '706 patent. Rather, its expert states unequivocally that "Space Data is ***not seeking damages for the '706 Patent***, but will seek ***injunctive relief*** at trial." Decl. of Leah Pransky i/s/o Mot to Stay ("Pransky Decl."), Ex. C (Dkt. 374-5) at 3 (emphasis added). It further is undisputed that Space Data is entitled to a jury trial only on its damages claims.

Seeking to avoid a stay, Space Data tries to walk back its expert's representations, arguing that it *might* be entitled to a jury trial because it *might* elect to seek damages in the future. Space Data's Opp. to Mot to Stay ("Opp.") (Dkt. 395-14) at 2. But what it may hypothetically do in the future is irrelevant to this motion. The undisputed record is: (1) an affirmative representation that it is seeking only injunctive relief; (2) a concession that it has no expert opinion on damages for this patent; (3) a failure to identify any evidence from which a jury could award damages; and (4) nothing but equivocation about whether it intends to seek damages in the future. Pransky Decl., Ex. C at 3; *see* Opp. at 3-4. This record demonstrates that resolution of the '706 patent (if it survives IPR) should require only a bench trial. In any event, even if Space Data were entitled to a jury trial on the '706 patent, the factors in this case would nonetheless favor a stay.

### B. A Stay at this Stage is the Most Efficient Way to Proceed.

"[I]t is not uncommon" for Courts to stay a case at this stage—or even later. *Ricoh Co.*

1

CORRECTED DEFENDANTS ALPHABET INC., GOOGLE LLC AND LOON LLC'S REPLY TO
PLAINTIFF SPACE DATA CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION FOR STAY
Case No. 5:16-cv-03260-BLF

*Ltd. v. Aeroflex Inc.*, No. C03-04669 MJJ, 2006 WL 3708069, at *5-6 (N.D. Cal Dec. 14, 2006) (granting stay after discovery closed, summary judgment motions filed, and trial set); *Motson v. Franklin Covey Co.*, No. civ 03-1067 (RBK), 2005 WL 3465664, at *2 (D.N.J. Dec. 16, 2005) (granting a stay after summary judgment decided); *Robert H. Harris Co. Inc. v. Metal Mfg. Co. Inc.*, No. civ. J-C-90-179, 1991 WL 217666, at *4 (E.D. Ark. June 21, 1991) (granting stay one month before trial); *Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, No. 4:03-CV-40493, 2004 WL 1968669, at *5 (S.D. Iowa Aug. 24, 2004) (granting stay two months before trial). Indeed, the "completion of discovery does not necessarily counsel against staying a patent infringement action." *eSoft, Inc. v. Blue Coat Sys., Inc.*, 505 F. Supp. 2d 784, 788 (D. Colo. 2007).

Just as these Courts recognized, a stay would prevent all the potentially unnecessary work that lies ahead. But, without a stay, "it is possible that the time, resources, and significant efforts of all those involved in such a trial…would be wasted." *Twilio, Inc. v. TeleSign Corp.*, No. 16-CV-06925-LHK, 2018 WL 1609630, at *1 (N.D. Cal. Apr. 3, 2018) ("[S]ince it is possible that this Court and the PTO could reach inconsistent conclusions regarding the same patent, there is a significant concern of wasting resources by unnecessarily proceeding forward.") (internal citations and quotations omitted).

Space Data's assertion that the case "has been pending for over three years," Opp. at 1, is misleading. Though the case was filed two-and-a-half years ago, in June 2016, the '706 application wasn't filed until months *after* this lawsuit, and the '706 patent was added only 17 months ago. *See* Dkt. 1; Decl. of Leah Pransky i/s/o Def.'s Reply to Space Data's Opp. ("Pransky Reply Decl."), Ex. E ('706 application filed Nov.14, 2016); Dkt. 144. Moreover, the parties' motions practice has been largely untethered to the '706 patent. Of the "50 motions," Opp. at 4, 20 were substantive and, of those, only four relate to the '706 patent: the Motion to File a Third Amended Complaint (Dkt. 79), the *Markman* briefing (Dkts. 250, 263, 267), a motion to strike undisclosed infringement theories (Dkt. 365), and this motion (Dkt. 374).

Furthermore, Space Data itself has deprioritized the '706 patent. It did not ask Google's invalidity expert any questions at his deposition about his '706 patent validity opinion. Pransky Reply Decl. ¶ 11. Nor did it ask Google's infringement expert questions about his '706 patent

non-infringement opinion. *Id.* ¶ 12. A stay would let the parties focus their trial preparation on the issues that, as Space Data's conduct shows, even it considers more worthy of its time.

### C. A Stay Will Likely Eliminate the '706 Patent from the Case, but if it Does Not, A Stay Will Necessarily Simplify the Issue of its Validity.

Space Data's claim that a stay will not simplify the issues before the Court is plainly wrong. It ignores entirely that either some (or all) of the asserted '706 patent claims will be cancelled or amended, or Google will be subject to IPR estoppel. *See Hewlett-Packard Co. v. ServiceNow, Inc.*, No. 14-CV-00570-BLF, 2015 WL 5935368, at *2 (N.D. Cal. Oct. 13, 2015). Space Data asserts—citing nothing—that "many of the ['706 patent] prior art references may be the same" as those used for the '193 patent. *See* Opp. at 6. But Space Data knows that this is not the case. Google has made its final election of prior art; only ***one*** of ***eleven*** references is asserted against both the '706 and '193 patents. Pransky Decl., Ex. D (Dkt. 374-6). Thus, if the '706 patent claim is not stayed, the Court will have to hear a Section 102/103 invalidity case with virtually no overlap with the challenge to the '193 patent's validity. But a stay would likely eliminate entirely Google's invalidity challenge under Sections 102 and 103 to the '706 patent.

The cases on which Space Data relies are inapposite. In each, the defendant asked the Court to stay the entire case though only some patents claims were subject to IPR. *See GoPro, Inc. v. C&A Mktg., Inc.*, No. 16-CV-03590-JST, 2017 WL 2591268, at *3-4 (N.D. Cal. June 15, 2017) (declining to stay entire case when the defendant had filed IPR petition for one of two patents); *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 15-CV-03295-BLF, 2016 WL 7732542, at *4 (N.D. Cal. July 25, 2016) (declining to stay entire case when seven of ten patents were not subject to IPR or re-exam); *Adaptix, Inc. v. HTC Corp.*, No. 5:14-CV-02359-PSG, 2015 WL 12839246, at *3 (N.D. Cal. Aug. 5, 2015) (declining to stay entire case where PTAB instituted on four of 21 asserted claims). Here, Google asks the Court to stay only the '706 proceedings.

In any event, the alleged efficiency of trying the '193 and '706 patent infringement claims together is belied by Space Data's own chart comparing the claims. *See* Decl. of Spencer Hosie i/s/o Pl. Space Data Corp.'s Opp. ("Hosie Decl.") (Dkt. 394-1), Ex. 2. Of the more than 20 independent limitations across the patents, Space Data drew a comparison between fewer than

half—and most are a stretch. *See id.* For example, it suggests that evidence on the '706 patent's "wherein the system comprises a plurality of the airborne platforms" limitation will be "duplicative" of that for the '193 patent's "wherein the target balloon and one or more neighbor balloons are part of a mesh network of balloons" limitation. *See id.* But it will require different evidence to prove that Google operates a network in which "each balloon can receive data from and route data to other balloons, thereby permitting redundancy" (Dkt. 352, Court's construction of "mesh network") than to prove that Google's network has more than one balloon.

In reality, a trial on these two patents will not entail the same evidence. Indeed, in his report, Space Data's infringement expert cites Google engineer Dr. Candido's testimony throughout his '193 analysis, but cites nearly exclusively to the testimony of a different engineer, Mr. Brookes, in his '706 analysis. Dr. Pullen likewise cites to almost entirely different sets of documents in his analyses of the two patents. Google's expert, Dr. Hansman, does the same. In short, staying the '706 patent would simplify the trial and is the most efficient way to proceed.

### D. Space Data Has Not and Cannot Present Concrete Evidence that it Will Suffer Competitive Harm if a Stay is Granted.

Space Data and Google do not compete in rarefied—or any—air. Space Data has not operated a commercial (*i.e.*, "non-military") network since *2009*—long before Loon was publicly announced in 2013. Pransky Reply Decl., Ex. F at 120:1-8; *id.*, Ex. G at 244:17-245:8 (testifying that the commercial network was shut down in 2008 or 2009 and is not operating today); *see also id.*, Ex. G at 239:8-240:10. Space Data cannot compete with Google for commercial business ███████████████████████████ Its unsuccessful ████████████, and ████████████████████████████████████████ thus have nothing to do with Project Loon. *See, e.g.,* Hosie Decl., Ex. 9 (Dkt. 395-18) at 704:12-13 (testifying that Space Data's ████████████████████████████████).

Although Space Data provides examples of Space Data and Google talking to similar *types* of organizations (*e.g.*, telecommunication providers), it does not provide "concrete evidence" that it lost sales to Google. *See Lighting Sci. Grp. Corp. v. Shenzhen Jiawei Photovoltaic Lighting Co. Ltd.*, No. 16-cv-03886-BLF, 2017 WL 2633131, at *4 (N.D. Cal. June

1 | 19, 2017) (claim of prejudice weak without "concrete evidence that it has specifically lost sales to
2 | [defendant]"). Indeed, Space Data's damages expert does not even offer an opinion concerning
3 | lost profits. *See* Pransky Reply Decl., Ex. H at 38:8-12. This is unsurprising—Space Data's
4 | ███████████████████████████████████████████████████████████. *See id.*, Ex. G
5 | at 133:18-21; *id.* at 169:24-170:5. But, despite Space Data's suggestion, Google has never had
6 | ███████████████████████████████████████████████ *See id.*, Ex. I at 95:23-97:23;
7 | *see also id.*, Ex. J at 47:12-14 (Loon is ████████████████████████████).

The only example Space Data's CEO knew of where Google and Space Data "competed" for an opportunity is the Puerto Rican hurricane relief effort, where Google provided its services *for free*. *Id.*, Ex. K at 683:24-684:3; *id.* at 684:19-23; *id.* at 683:3-10. Even had Space Data lost that "deal" to Google—and there is no evidence that Space Data would have been chosen absent Loon (FEMA was asking for donations while Space Data was asking FEMA to cover its costs and ████████████████████████████████████████████████████████, *id.* at 678:6-109; *id.* at 677:10-19)—it did not cause Space Data to lose "profits" or "market share." *See Lighting Sci.*, 2017 WL 2633131, at *4. This cannot establish prejudice.

Space Data's current assertion that "every month counts," Opp. at 8, is not credible. Despite adding the '706 patent to the case 17 months ago, Space Data has not sought a preliminary injunction with respect to that patent (or any of its other claims)—undercutting any claim that a few months' delay in obtaining equitable relief would cause it irreparable harm.

Finally, Space Data's contention that Google would be advantaged by a stay is incorrect. According to Space Data, if Google moves for summary judgment on invalidity and the Court denies the motion, but then grants the stay, Google will get a "'do-over' in a different venue." Opp. at 9. Not so. The motion for stay hearing (currently set for April 4) is ***before*** the summary judgment hearing (April 11). The Court therefore has the opportunity to grant a stay before deciding summary judgment. Without a stay, Google will have the chance to prove invalidity of the '706 patent in this case; and then will have a second chance before the PTAB.

### III. CONCLUSION

For all the reasons above, the Court should stay the '706 patent proceedings.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | KEKER, VAN NEST & PETERS LLP |
| Dated: December 27, 2018 | By: /s/ *Robert A. Van Nest* <br> ROBERT A. VAN NEST <br> MATTHEW M. WERDEGAR <br> EUGENE M. PAIGE <br> MATTHIAS A. KAMBER <br> RYAN K. WONG <br> LEAH PRANSKY <br> SHAYNE HENRY <br> ANDREW S. BRUNS |
|  | Attorneys for Defendants <br> ALPHABET INC., GOOGLE LLC, and LOON LLC |