# EXHIBIT 161

to Space Data's Opposition to Defendants' Motion for Summary Judgment

CERTIFIED COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

Case No. 5:16-cv-03260-BLF (NC)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

___________________________________X

SPACE DATA CORPORATION,

Plaintiff,

vs.

ALPHABET, INC., GOOGLE, LLC, and LOON, LLC,

Defendants.

___________________________________X

VIDEOTAPED DEPOSITION OF ROBERT JOHN HANSMAN, JR., Ph.D., a witness called on behalf of the Plaintiff, taken pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before Valerie R. Johnston, Registered Professional Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the Offices of O'Brien & Levine Court Reporting Solutions, at 68 Commercial Wharf, Boston, Massachusetts, on Thursday, December 13, 2018, commencing at 10:16 a.m

SINCE 1972

BARKLEY Court Reporters
barkley.com

(310) 207-8000 Los Angeles
(310) 207-8000 Century City
(916) 922-5777 Sacramento
(951) 686-0606 Riverside
(212) 808-8500 New York City
(312) 379-5566 Chicago
(415) 433-5777 San Francisco
(408) 885-0550 San Jose
(800) 222-1231 Martinez
(818) 702-0202 Woodland Hills
(347) 821-4611 Brooklyn
00+1+800 222 1231 Paris
(949) 955-0400 Irvine
(760) 322-2240 Palm Springs
(702) 366-0500 Las Vegas
(702) 366-0500 Henderson
(518) 490-1910 Albany
00+1+800 222 1231 Dubai
(858) 455-5444 San Diego
(800) 222-1231 Carlsbad
(800) 222-1231 Monterey
(516) 277-9494 Garden City
(914) 510-9110 White Plains
001+1+800 222 1231 Hong Kong

Space Data that have been produced in the -- in discovery in this action. It is my understanding that I've -- that I haven't seen all of the photographs that were produced in discovery.

Q. How many are missing?

MR. KAMBER: Objection. Argumentative, asked and answered, foundation, assumes facts not in evidence.

A. I don't know that any are missing.

Q. Okay. Who's Mini Ingersol, please?

MR. KAMBER: Objection. Foundation.

[redacted]

Q. How many people from Google toured the Chandler, Arizona facility?

A. I don't know the exact number.

130

ROBERT JOHN HANSMAN, JR., Ph.D. - AEO

BARKLEY Court Reporters

Q. Give me your best sense, please.

MR. KAMBER: Objection. Calls for speculation, lack of foundation.

A. Yeah. Just based on people in the pictures and whatever looked to be somewhere around seven to ten. I don't know.

Q. How many of -- of them were engineers for Google?

MR. KAMBER: Objection. Foundation.

A. I -- I don't know.

Q. How long did the tour last?

MR. KAMBER: Objection. Foundation.

A. I don't know.

Q. What were they showing during the tour, please?

MR. KAMBER: Objection. Foundation.

A. Some of the things they were showing during the tour was the launch of a balloon. They were shown -- there's a -- a picture in the location where the balloons are dipped. They seem -- were shown an assembly area, and they were shown the network operations center, I believe. I don't know what else.

Q. All right, sir. What was said by Space Data about its use of wind data during that tour,

BARKLEY Court Reporters

computer.

Q. Who's Dan McCloskey, please?

MR. KAMBER: Objection. Foundation.

A. The name is familiar, but I can't recall specifically.

Q. Who's Michael Pearson, please?

A. I don't know.

MR. KAMBER: Objection. Foundation.

Q. You talk about the residuals clause in the NDA in your report, do you not, sir?

A. Can you point me to where that is.

Q. No. I'm asking to see what you recall first. Do you -- do you recall talking about the party's NDA at all?

MR. KAMBER: Objection. Vague as to you're referring to a portion of his report, but you're refusing to actually point him to it.

A. (Witness reviews documents) I don't think I talked about it but...

Q. Well, let me ask you this question: Is it your opinion, sir, in this case that Google relied on its unaided memory of what it learned from Space Data in its Loon work?

MR. KAMBER: Objection. Vague.

A. I don't know that there was anything

BARKLEY Court Reporters

particularly relevant from the Space Data. So I don't know whether they relied on their unaided memory or not.

Q. Okay. And you're not intending to offer any opinion on that issue in this case?

A. I was only asked to look at the specific materials. That's all I've looked at.

Q. When did Google hire Richard DeVaul?

MR. KAMBER: Objection. Foundation.

A. I don't know.

Q. What's Google's affirmative defense in its first answer in this case?

MR. KAMBER: Objection. Foundation.

A. What was the question again?

Q. What's Google's first affirmative defense in its first answer in this litigation, Dr. Hansman?

A. I don't know.

Q. It's independent development. What does the phrase, independent development, mean to you?

MR. KAMBER: Objection. Foundation, vague, calls for a legal opinion.

A. Yeah. I don't know what the legal definition is.

Q. Have you ever heard of the phrase,

independent development, in your many years in this business?

A. Not --

MR. KAMBER: Objection. Vague.

A. -- exactly that -- that way. You know, I mean, from the construct developed independently.

Q. All right. And are you aware that Google has the burden of proof on showing or proving independent development?

MR. KAMBER: Objection. Foundation, calls for a legal opinion.

A. I don't know the legal basis.

Q. Can you explain can Google didn't have an opening report on Loon independent development?

MR. KAMBER: Objection. Foundation, calls for a legal opinion.

A. No.

MR. KAMBER: Objection. Foundation.

Q. You don't know who Richard DeVaul is, right? We've already established that.

A. Yeah.

MR. KAMBER: Objection. Asked and answered.

Q. And can you describe what DeVaul's role in the Loon development was at any level?

MR. KAMBER: Objection. Foundation, vague.

A. No.

Q. Who's Dan Piponi?

A. I don't know.

MR. KAMBER: Objection. Foundation.

Q. One way or the other?

MR. KAMBER: Same objections.

Q. Who's Astro Teller?

MR. KAMBER: Objection. Foundation.

A. Astro Teller?

Q. Yeah.

A. I don't know Astro Teller.

Q. Who is Cliff Biffle?

MR. KAMBER: Objection. Foundation.

A. I don't know.

Q. Did Biffle play any role in the development of Loon and Google?

MR. KAMBER: Objection. Foundation.

A. I don't know.

Q. Did Astro Teller play any development -- any role in the development of Loon and Google?

MR. KAMBER: Objection. Foundation.

A. Since I don't know who they are, I have no knowledge.

Q. That would follow, who's Sebastian Thrun, T-H-R-U-N?

MR. KAMBER: Objection. Foundation.

A. Sebastian Thrun is a -- is a AI control theory guy who I believe was at Stanford and may have been at Caltech. I can't recall.

Q. Did Astro Teller have any role in developing Loon at Google?

MR. KAMBER: Objection. Foundation.

A. Astro Teller? I don't know.

Q. Did Sebastian Thrun play any role in developing Loon and Google?

MR. KAMBER: Objection. Foundation.

A. I don't know if he had any role in Loon. I he's had other roles at Google.

Q. Yeah. He was the founder of what became

known as Waymo, isn't that correct, sir?

MR. KAMBER: Objection. Foundation --

A. He -- he --

MR. KAMBER: -- assumes facts not in evidence.

A. He was involved with it. Whether he was the founder I don't know.

[redacted]

Q. Is there a relationship between Eric Teller

144

ROBERT JOHN HANSMAN, JR., Ph.D. - AEO

BARKLEY Court Reporters

and Astro Teller, do you know?

MR. KAMBER: Objection. Foundation.

A. I don't know.

Q. Please look at the '678 and confirm that Eric Teller is a named inventor.

A. (Witness reviews document) Yes. Eric Teller is listed as a named inventor.

Q. Yeah. I'll tell you that's the same guy, Astro. Astro is -- is Nicknamed not for Astroturf but because he had a haircut that looked like Astroturf when he was a high school student.

Do you see that Cliff Biffle is another named inventor?

A. Yes.

Q. Josh Weaver?

A. Yes.

[redacted]

[redacted]

Q. So Meyer does a damage report where she assumes, as every damage expert does, liability. Google's lawyers give you their report and say we want you to do a technical rebuttal saying there was no trade secret misappropriation or breach of the contract, is that right?

MR. KAMBER: Objection. Argumentative, vague, compound. It also misstates the Meyer report.

A. So what I -- what I said in my report is that Dr. Meyer's report offers opinions concerning Space Data's alleged damages with respect to Space Data's misappropriation and breach. Contract claims in connection with those opinions that included various statements assumptions and purported understandings about Google's exposure to and use of asserted trade secrets and their supposed benefit to Google in its development of Loon. I've been asked by Google to assess the reasonableness and accuracy of various of Dr. Meyer's statements, assumptions, and understandings pertaining to the asserted

COMMONWEALTH OF MASSACHUSETTS )
SUFFOLK, SS. )

I, Valerie Rae Johnston, Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts, do hereby certify that there came before me on the 13th day of December 2018 at X p.m., the person hereinbefore named, who was by me duly sworn to testify to the truth and nothing but the truth of his knowledge touching and concerning the matters in controversy in the cause; that he was thereupon examined upon his oath, and his examination reduced to typewriting under my direction; and that the deposition is a true record of the testimony given by the witness.

I further certify that I am neither attorney or counsel for, no related to or employed by, any attorney or counsel employed by the parties hereto or financially interested in the action.

In witness whereof, I have hereunto set my hand and affixed my notarial seal this 20th day of December 2018.

________________________________

Notary Public

My commission expires: 8/5/22

BARKLEY Court Reporters