# EXHIBIT 164

to Space Data's Opposition to Defendants' Motion for Summary Judgment

GOOGLE INC.

MUTUAL CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

This Mutual Non-Disclosure Agreement ("Agreement") is made and entered into between Google Inc. ("Google"), and Space Data, Inc., for itself and its subsidiaries and affiliates ("Company"), individually referred to as a "Party" and collectively referred to as the "Parties." Google and Company intend to engage in discussions and negotiations concerning a proposed acquisition of shares or assets of Company (the "Transaction") and it is anticipated that the Parties will disclose or deliver to the other Party certain trade secrets or confidential or proprietary information and Google and Company are entering into this Agreement in order to assure the confidentiality of such trade secrets and confidential or proprietary information in accordance with the following terms:

1. The Effective Date of this Agreement is December 1, 2007.

2. In connection with the Transaction, a Party (the "Discloser") may disclose certain information it considers confidential or proprietary ("Confidential Information") to the other Party (the "Recipient"), whether in furtherance or continuance of an established business relationship or the Transaction or for the purpose of enabling the Parties to evaluate the feasibility of a business relationship or the Transaction, including, but not limited to, tangible, intangible, visual, electronic, present, or future information about the Discloser's business, business plans, pricing, customers, strategies, trade secrets, operations, records, finances, assets, technology, algorithms, data and information that reveals the processes, designs, methodologies, technology or know how by which the Discloser's existing or future products, services, applications and methods of operation are developed, conducted or operated. Company and Google are entering into this Agreement in order to assure the confidentiality of such confidential or proprietary information in accordance with the terms of this Agreement.

3. Information shall only be considered Confidential Information for the purposes of this Agreement (a) if it is clearly and conspicuously marked as "confidential" or with a similar designation; or (b) if it is identified as confidential and/or proprietary before, during, or promptly after presentation or communication by Discloser. Information communicated orally shall only be considered Confidential Information if such information is designated as being confidential at the time of disclosure (or promptly thereafter) and is reduced in writing and confirmed to the Recipient as being Confidential Information within fifteen (15) days after the initial disclosure.

4. The Recipient shall hold in confidence, and shall not disclose to any person outside its organization (other than its affiliates and its and their respective agents, contractors, representatives or advisors (collectively, "Representatives") who have a need to know such information for the purposes of evaluating the Transaction): (i) any Confidential Information; (ii) the fact that discussions or negotiations between the Parties to this Agreement are taking or have taken place; (iii) any of the terms, conditions or other facts with respect to the subject matter of this Agreement; or (iv) the fact that this Agreement exists or information has been requested or made available to the Recipient or its Representatives (except that either Party may make any disclosure otherwise prohibited under clauses (i), (ii), (iii) or (iv) above if, in the opinion of its legal counsel, such disclosure is required by applicable law or stock exchange regulation). The Recipient and its personnel shall use such Confidential Information only for the purposes set forth above. The Recipient will use the same degree of care, but no less than a

reasonable degree of care, as the Recipient uses with respect to its own confidential information to: (i) protect the confidentiality of Confidential Information; and (ii) ensure that proper and secure storage is provided for all Confidential Information to protect against theft or unauthorized access.

5. This Agreement imposes no obligation upon a Recipient with respect to Confidential Information that: (a) was known to the Recipient before receipt from the Discloser; (b) is or becomes publicly available through no fault of the Recipient; (c) is received by the Recipient from a third party without a duty of confidentiality; (d) is independently developed by the Recipient without a breach of this Agreement; or (e) is disclosed by the Recipient with the Discloser's prior written approval.

6. This Agreement shall remain in effect until it is terminated by either Party with thirty (30) days prior written notice. Notwithstanding the foregoing, this Agreement shall survive with respect to Confidential Information that is disclosed before the effective date of termination.

7. Unless the Parties otherwise agree in writing, a Recipient's duty to protect Confidential Information expires three (3) years from the date of disclosure. A Recipient, upon Discloser's written request, will promptly return or destroy all Confidential Information received from the Discloser, together with all copies. Regardless of whether the Confidential Information is returned or destroyed, the Recipient may retain an archival copy of the Discloser's Confidential Information for use solely in the event a dispute arises hereunder and only in connection with such dispute.

8. No Party acquires any intellectual property rights under this Agreement (including, but not limited to, patent, copyright, and trademark rights) except the limited rights necessary to carry out the purposes set forth in this Agreement. Notwithstanding anything herein to the contrary, Company recognizes that Google may in the future develop products or services related to or similar to the subject matter of Confidential Information disclosed under this Agreement. Accordingly, Google may use Residuals for any purpose, including without limitation, use in the acquisition, development, manufacture, promotion, sale, or maintenance of products and services; provided that this right to Residuals does not represent a license under any intellectual property and/or proprietary rights of the Company. The term "Residuals" means information that is retained in the unaided memories of Google's employees or Representatives who have had access to Confidential Information pursuant to the terms of this Agreement. A person's memory is unaided if such person has not intentionally memorized the Confidential Information for the purpose of retaining and subsequently using or disclosing it.

9. Company acknowledges that the United States securities laws and other laws prohibit any person or entity who has material, non-public information concerning Google from purchasing or selling any of its securities, and from communicating such information to any person or entity under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell such securities.

10. Each Discloser warrants that it has the right to disclose its confidential or proprietary information. The Parties understand that neither Party accepts responsibility for, has made, makes, will make or is authorized to make any express or implied representation or warranty as to the accuracy, reliability or completeness of any of the Confidential Information. Each Party agrees that unless and until a definitive agreement between the Parties with respect to the Transaction has been executed and delivered, neither of the Parties will be under any legal obligation with respect to such a transaction by virtue of this Agreement or any written or oral expression with respect to such a transaction except as specifically set forth in this Agreement. Each Party reserves the right, in its

CONFIDENTIAL	SD_656705

absolute discretion and without giving any reasons, at any time and in any respect to terminate discussions with the other Party with respect to the Transaction.

11. Company agrees that, without the prior written consent of Google, neither the Company nor any of its Representatives will initiate any communications concerning the subject matter of this Agreement through any director, officer or employee of Google or any of its subsidiaries who has not been specifically designated by Google as an authorized contact person with respect to the Transaction. In particular, unless otherwise instructed in writing (which may include an email communication) by a previously authorized contact person within Google, Company will direct all communications and all materials containing Confidential Information only to its main contact person within the Corporate Development department; and Company will not send any Confidential Information that is not specifically requested by Google.

12. Each Party acknowledges that damages for improper disclosure of Confidential Information may be irreparable; therefore, the injured Party is entitled to seek equitable relief, including injunction and preliminary injunction, in addition to all other remedies available to it.

13. This Agreement does not create any agency or partnership relationship. This Agreement will not be assignable or transferable by either Party without the prior written consent of the other Party; provided that either Party may assign this Agreement to any of its wholly owned affiliates or in connection with a change of control transaction.

14. This Agreement may be executed in two or more identical counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to constitute the agreement when a duly authorized representative of each Party has signed the counterpart.

15. Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be deemed modified to the extent necessary to make it enforceable under applicable law. If any such provision is not enforceable as set forth in the preceding sentence, the unenforceability of such provision shall not affect the other provisions of this Agreement, but this Agreement shall be construed as if such unenforceable provision had never been contained herein.

16. This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and supersedes any prior oral or written agreements, and all contemporaneous oral communications. All additions or modifications to this Agreement must be made in writing and must be signed by the Parties. Any failure to enforce a provision of this Agreement shall not constitute a waiver thereof or of any other provision.

17. This Agreement shall be governed by the laws of the State of California, without reference to conflict of laws principles. The exclusive venue for any dispute shall be in the state or federal courts within Santa Clara County, California.

[THE SIGNATURE PAGE IS THE NEXT PAGE]

CONFIDENTIAL                                                                                                          SD_656706

**IN WITNESS WHEREOF**, the parties have duly executed this Agreement as of the dates written in the signature blocks below.

Google Inc.

By: *[signature]*
Name: Matthew Sucherman
Title: Associate General Counsel

Date: December 1, 2007

Space Data, Inc.

By: *[signature]*
Name: Gerald M. Knoblach
Title: Chairman / CEO

Date: December 4, 2007

CONFIDENTIAL                    SD_656707