KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
MATTHEW M. WERDEGAR - # 200470
mwerdegar@keker.com
EUGENE M. PAIGE - # 202849
epaige@keker.com
MATTHIAS A. KAMBER - # 232147
mkamber@keker.com
RYAN K. WONG - # 267189
rwong@keker.com
LEAH PRANSKY - # 302246
lpransky@keker.com
SHAYNE HENRY - # 300188
shenry@keker.com
ANDREW S. BRUNS - # 315040
abruns@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendants
ALPHABET INC., GOOGLE LLC, and LOON LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SPACE DATA CORPORATION, | Case No. 5:16-cv-03260-BLF |
| Plaintiff, | **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| ALPHABET INC., GOOGLE LLC, and LOON LLC, | Date:      April 11, 2019<br>Time:      9:00 a.m.<br>Dept:      Courtroom 3 – 5th Floor<br>Judge:    Hon. Beth Labson Freeman |
| Defendants. | Date Filed: June 13, 2016 |
| | Trial Date: August 5, 2019 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

# TABLE OF CONTENTS

**Page**

I.   GOOGLE DOES NOT INFRINGE THE '193 PATENT'S ASSERTED CLAIMS ..........1

    A.   The Loon system does not satisfy claim elements 1b1 and 14b1. ..........................1

    B.   It is Space Data's—not Google's—theory that requires claim construction. ..........3

    C.   Space Data's construction is unsupported and unsupportable. ...............................5

II.  GOOGLE HAS NOT WILFULLY INFRINGED THE '193 AND '706 PATENTS. ...................................................................................................6

III. GOOGLE HAS NOT MISAPPROPRIATED SPACE DATA'S TRADE SECRETS OR BREACHED THE PARTIES' NDA. .........................................8

    A.   Space Data primarily relies on speculation and argument, rather than evidence, and it mischaracterizes the actual evidence it cites. ...............................8

    B.   Stripped of speculation and attorney argument, Space Data's evidence is not nearly sufficient to allow a reasonable jury to infer misappropriation. ...........10

    C.   Dr. Hansman's opinions directly rebut Space Data's expert and are proper. ........14

    D.   Space Data's cursory additional arguments concerning its breach of NDA claim do not raise a triable issue of fact...............................................................15

IV.  CONCLUSION.................................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bickoff v. Wells Fargo Bank, N.A.*,
   705 F. App'x 616 (9th Cir. 2017) ....................................................................9

*Calendar Research LLC v. StubHub, Inc.*,
   No. 2:17-CV-04062-SVW-SS, 2018 WL 4846797 (C.D. Cal. Aug. 7, 2018) ..................11, 14

*Clear-View Techs., Inc. v. Rasnick*,
   No. 13-cv-02744-BLF, 2015 WL 3509384 (N.D. Cal. Jun. 3, 2015).......................................15

*Computer Scis. Corp. v. Computer Assocs. Int'l, Inc.*,
   No. CV 98-1374-WMB SHX, 1999 WL 675446 (C.D. Cal. Aug. 12, 1999) ..........................8

*Crane v. Royal Ins. Co. of Am.*,
   17 F.3d 1186 (9th Cir. 1994) ....................................................................12

*Grynberg v. BP, P.L.C.*,
   No. 06 Civ. 6494(RJH), 2011 WL 1161540 (S.D.N.Y. Mar. 30, 2011)...................................9

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
   256 F.3d 1323 (Fed. Cir. 2001)........................................................................6

*Invitrogen Corp. v. Clontech Labs., Inc.*,
   429 F.3d 1052 (Fed. Cir. 2005)........................................................................13

*In re Keegan Mgmt. Co., Sec. Litig.*,
   794 F. Supp. 939 (N.D. Cal. 1992) ....................................................................10

*Loral Fairchild Corp. v. Sony Corp.*,
   181 F.3d 1313 (Fed. Cir. 1999)........................................................................6

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
   851 F.3d 1275 (Fed. Cir. 2017)........................................................................6

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
   No. 08-CV-5023 (CBA)(RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010)...................7, 8

*Pearson v. U.S. Bank Nat. Ass'n*,
   No. 13-889, 2014 WL 4163020 (D. Minn. Aug. 21, 2014) ....................................................9

*Pellerin v. Honeywell Int'l, Inc.*,
   877 F. Supp. 2d 983 (S.D. Cal. 2012) ....................................................................12

*Perez v. State Farm Mut. Auto Ins. Co.*,
   No. C 06-01962 JW, 2011 WL 8601203 (N.D. Cal. Dec. 7, 2011)........................................15

*Pfaff v. Wells Elecs., Inc.*,
    525 U.S. 55 (1998)...............................................................................................7

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)............................................................................5

*Pinterest, Inc. v. Pintrips, Inc.*,
    No. 13-cv-04608-HSG, 2015 WL 2268498 (N.D. Cal. May 14, 2015) ...................15

*Radware, Ltd. v. F5 Networks, Inc.*,
    No. 5:13-cv-02024-RMW, 2016 WL 4427490 (N.D. Cal., Aug. 22, 2016)...............7

*Renishaw PLC v. Marposs Societa'*,
    158 F.3d 1243 (Fed. Cir. 1998)............................................................................5

*Slot Speaker Techs., Inc. v. Apple, Inc.*,
    No. 13-cv-01161-HSG, 2017 WL 4354999 (N.D. Cal. Sept. 29, 2017)....................7

*Stratienko v. Cordis Corp.*,
    429 F.3d 592 (6th Cir. 2005) .............................................................................11

*Suffolk Techs., LLC v. AOL Inc.*,
    752 F.3d 1358 (Fed. Cir. 2014)......................................................................13, 14

*Tempco Elec. Heater Corp. v. Temperature Eng'g Co.*,
    No. 02 C 3572, 2004 WL 1254134 (N.D. Ill. June 3, 2004) ..................................8

*Think Vill.-Kiwi, LLC v. Adobe Sys., Inc.*,
    No. C 08-04166 SI, 2009 WL 3837270 (N.D. Cal. Nov. 16, 2009)..........................8

*Trident Prods. & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*,
    859 F. Supp. 2d 771 (E.D. Va. 2012) ...............................................................11, 14

*UCAR Tech. (USA) Inc. v. Yan Li*,
    No. 5:17-cv-01704-EJD, 2017 WL 6405620 (N.D. Cal. Dec. 15, 2017) ................12

**Federal Statutes**

35 U.S.C. § 285...................................................................................................7

**Rules**

Fed. R. Evid. 602 ................................................................................................9

Fed. R. Evid. 701 ................................................................................................9

Fed. R. Evid. 702 ................................................................................................9

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:16-cv-03260-BLF

1321214

**Other Authorities**

Scott M. Kline & Matthew C. Floyd, *Managing Confidential Relationships in I.P.*
    *Transactions: Use Restrictions, Residual Knowledge Clauses, and Trade*
    *Secrets*, 25 Rev. Litig. 311 (2006) ............................................................................12

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:16-cv-03260-BLF

1321214

## I.      GOOGLE DOES NOT INFRINGE THE '193 PATENT'S ASSERTED CLAIMS

This is not a claim construction issue.  The question before the Court is non-infringement:
Does Loon satisfy claim elements 1b1/14b1 of the '193 patent?  That is, does Loon perform the
step (or, in the case of 14b1, include computer-readable instructions that cause the function) of
"determining the location of one or more neighbor balloons relative to the determined location of
the target balloon"?  It does not.  Although Loon determines the absolute location of each
balloon, it *does not determine the location of any balloon "relative to" the location of any other
balloon within the system*.  Indeed, none of the algorithms that Space Data accuses use the
location of a balloon relative to its neighbor.  *See* Dkt. 410-13 (Hansman Decl., Ex. A) ¶¶ 81,
113, 172.  Loon's source code confirms this: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *Id.*  Space Data does not dispute this (or even address it) in its opposition.

### A.      The Loon system does not satisfy claim elements 1b1 and 14b1.

Space Data has only one disclosed theory for element 1b1/14b1, and it is implausible:
Loon "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."  Dkt. 439-5 ("Opp.") at 22; *see also* Ex.[1] 200 ¶¶ 303-08.
Space Data argues that plotting *absolute* locations on a map meets the *relative*-location limitation
because "you *can* derive a relative location from two, quote/unquote, absolute positions plotted in
the same coordinate frame."  Opp. at 20 (citing Ex. 184 at 323:20-22).  But Space Data admits
that the system does no such derivation:  "[W]hen I said 'can derive,' I meant … can observe.
*You don't need a separate derivation step*."  *Id.* (citing Ex. 184 at 324:13-15).  But derivation is
required—the claim step explicitly requires "*determining*" the location of one balloon relative to
the location of another.  And Loon's source code confirms that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
Because plotting balloons on a map such that one "can observe" their locations cannot satisfy the
determining steps 1b1/14b1, Space Data cannot establish that Loon infringes the '193 patent.

Tacitly acknowledging this problem, Space Data describes its theory for a *different* claim

---

[1] The parties have used consecutively numbered exhibits in their summary judgment briefing.
*See* Reply Werdegar Decl. ¶ 2.  Emphasis added unless otherwise noted.

element (1c1), the "determining a desired movement" step. *Compare* Opp. § V.E., *with* Ex. 200

¶¶ 303-307.  But that element is not at issue here.  And Space Data cannot rely on Dr. Pullen's

1c1 theory to prove that Loon meets elements 1b1/14b1 because Judge Cousins struck from Dr.

Pullen's 1b1 opinion the "dispatch" theory on which Space Data now relies. *See* Dkt. 391

(striking Pullen Rpt. ¶¶ 308-10 because theory was not disclosed); *see also* Ex. 200 ¶¶ 308-10.

Space Data is thus limited to its single 1b1 "plotting locations on a map" theory.  And while

Space Data is also wrong that Loon practices 1c1, it cannot prove that Loon practices 1b1/14b1

with theories it did not disclose in (or were stricken from) its infringement report for this element.

      In any event, Space Data's 1c1 theory does not plausibly show that Loon meets the

1b1/14b1 limitation because its general assertion that Loon "relies on the location of one balloon

relative to others" is directly contradicted by the cited evidence. *See* Opp. at 22. *First*, Space

Data contends that the "'dispatch' process ███████████████████████████████████████

███████." *Id.* (emphasis original).  But Dr. Pullen admits that the decision of where to send a

balloon is based on its ████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████. *See* Ex. 189 ¶¶ 221, 223-24. *Next*, Space Data

argues that the "stag[ing]" process "████████████████████████████████████████████

█████████████████ Opp. at 22.  Not so.  As Dr. Pullen concedes, ███████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████. Ex. 190 ¶ 373.

*Finally*, Space Data's argument regarding "████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████." Opp. at 22; *see also* Ex. 193 ¶ 366 (████████████████████

████████████████████████████████████████████████████████████████. Indeed,

Dr. Pullen acknowledges that the ████████████████████████████████████████. Ex.

192 ¶ 238 (listing inputs to ██████████████; *id.* at GOOG-SD-00072281-82 (same).

      At bottom, Space Data's argument is that Loon has a fleet of balloons, *ergo*, "all balloons

are mapped relative to one another." Opp. at 22.  But this is not what the claims require.  They

1  require that the system **determine** the relative location of one balloon using another balloon's

2  location as the reference point. Because Space Data has not—and cannot—point to any evidence

3  that the Loon system does this, it cannot establish infringement.

4      **B.**    **It is Space Data's—not Google's—theory that requires claim construction.**

5      Unable to show that Loon meets the 1b1/14b1 claim elements, Space Data attempts to

6  paint Google's non-infringement position as a claim construction argument. But Google is not

7  asking the Court to construe the elements at issue. Google's motion (as well as its expert's

8  opinion) is premised on reading "determining locations of one or more neighbor balloons relative

9  to the determined location of the target balloon" according to its plain meaning. It is Space Data

10  that asks the Court, for the first time, to depart from that plain meaning.

11      During Markman, the parties agreed that the phrase "based on the determined locations of

12  the one or more neighbor balloons relative to the determined location of the target balloon" in 1c1

13  should be given its plain meaning. Space Data could—and should—have instead asked the Court

14  to construe limitations 1b1 and 1c1 and argued that "determin[ing/e] locations … relative to … "

15  should be interpreted as "determin[ing/e] the absolute locations of balloons in the same

16  coordinate frame." It did not. Rather, in their final 1c1 proposals, the parties proposed identical

17  "based on its location relative to the locations of one or more neighbor balloons" language, which

18  the Court ultimately adopted. *See* Dkt. 352 at 13 ("(determining/determine) how to move the

19  (target balloon/balloon) based on its location relative to the locations of one or more neighbor

20  balloons to manage a fleet of balloons"). Thus, contrary to Space Data's assertion, Google's

21  earlier claim construction argument is not at odds with its current position. *See, e.g.*, Dkt. 263 at

22  18 (arguing "'determining a desired movement … based on' the location of neighboring balloons

23  'relative to' the target balloon's location fairly calls for positioning as a function of the distance

24  between the balloons' locations"). Nor has the Court "rejected Google's construction." Opp. at

25  17; Dkt. 352 at 15 (recognizing the parties' proposals were identical except for "(1) 'move' versus

26  'reposition'; and (2) "to manage a fleet of balloons' versus 'to achieve a desired formation of

27  balloons'"). Google is not asking the Court to reconsider this language now.

28      Google's position—that the locations of neighbor balloons must be measured as the

distance and direction from a reference point (the target balloon)—is not a "new" claim construction argument; it is a literal reading of the claims. *See* Opp. at 15. Space Data doesn't dispute that the neighbor balloon's location must be determined from a reference point. Nor does Dr. Pullen. *See* Ex. 3 at 195:16-24 (asked if "one need[s] a reference point in order to define a relative location" he said "[Y]ou want some … single reference point in order to determine relative locations in general."). Nor can Space Data reasonably dispute that the reference point must be the target balloon—the claims explicitly say so. The only real dispute is whether the neighbor balloons' locations must be measured as the distance and direction from the target balloon. According to Space Data, a more "commonsense general meaning" of "location … relative to … location" is "how a place is related to other places." Opp. at 16 (citing Ex. 166). But how do you ***determine*** how a place is "related to other places" except by measuring distance and direction? The next sentence of Space Data's definition confirms this: "For example, the Empire State Building is 365 kilometers (227 miles) north of the White House." Ex. 166.

Space Data's own example highlights the flaw in its argument: "[C]onsider a system that places one balloon a mile south of AT&T Park, and another a mile north of AT&T Park … Hansman says that these balloons are **not** located relative to one another, because both use AT&T Park as a common reference point." Opp. at 16-17 (emphasis original). But the question for 1b1/14b1 is not whether the balloons are "located relative to one another;" it is whether the system, in fact, ***determines*** that the first balloon is ***two miles south*** of the second. Loon does not.

It is Space Data—not Google—whose tortured infringement theory requires re-interpreting the claim language. Dr. Pullen admits as much:

> Q. Would you agree with me that the -- there's a distinction between -- as these terms are used in common parlance – "absolute location" and "relative location"?
>
> A. ***In common parlance***, they are often used to mean different things, but in the context -- as I've explained before, in the context of the '678 and '193 patents, I believe the -- the appropriate understanding of "relative location" is more general.
>
> Q. What do you mean by "more general"?
>
> A. Meaning that, as I said, you can derive a relative location from two, quote/unquote, absolute positions plotted in the same coordinate frame.

Ex. 3 at 323:8-22.  In other words, relative location has a plain and ordinary meaning.  But the interpretation on which Dr. Pullen bases his infringement opinion—and that Space Data now wants the Court to use in evaluating Google's summary judgment motion—departs from that plain meaning.  It is thus Space Data that asks the Court to belatedly construe the term.

### C.   Space Data's construction is unsupported and unsupportable.

Even if the Court were to construe claim elements 1b1/14b1 at this stage, none of the evidence Space Data cites supports its proposed construction—*i.e.*, determining the absolute locations of balloons using the same coordinate frame.  To the contrary, terms are to be "given their ordinary and accustomed meaning" unless the patentee sets forth a "special and particular definition."  *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).  Here, Space Data offers no evidence that the patentee intended to depart from the ordinary and well-understood meaning of relative location.  Indeed, in its opposition, Space Data never once quotes the claim language at issue or explains how the language of the claim supports its interpretation.

Instead, Space Data first relies on a passage from the '678 patent, but that section does not set forth a special definition of "relative to" or "relative location."  Instead, it merely discusses the *instruments* that can be used to determine "the neighbor balloon's location" (*i.e.*, "GPS, inertial navigational data, star-tracking-radar, etc.") and what object can make that determination (balloon itself, neighbor balloon, or ground station).  In fact, the '678 patent contradicts Space Data's position by making explicit that the desired movement of a balloon is based on the balloon's *distance* and *direction* from its neighbors:

> [E]ach balloon A may receive *distance* information d1 to dk with respect to each of its k closest neighbors. Each balloon A may treat the distance to each of the k balloons as a virtual spring with vector representing a force *direction* from the first nearest neighbor balloon i toward balloon A and with force magnitude proportional to di. The balloon A may sum each of the k vectors and the summed vector is the vector of desired movement for balloon A.

Ex. 201 at 10:28-35.

Space Data likewise finds no support in the '193 patent specification.  Rather, it concedes that the specification expressly describes determining "distance between platforms."  Opp. at 19

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:16-cv-03260-BLF
1321214

(citing '193 patent at 30:25-27).  Space Data asserts that the specification also describes another way to determine the location of one balloon relative to the location of another: "plotting the relative locations of the balloons (and their coverage) on a map, as shown in Figure 19 of the '193 Patent."  Opp. at 19.  But Figure 19 does *not* purport to be an embodiment of how the system determines the location of balloons relative to one another; instead, it is a "depiction of an example of airborne platform migration," *i.e.*, an illustration of balloon migration when the system is in use.  Ex. 1 at 6:54-60.  In any event, merely "show[ing] … the present locations of dozens of platforms, all relative to one another" (Opp. at 20) is insufficient to meet 1b1/14b1 because the claims aren't infringed by "*show[ing]*" the balloons' locations on a map; they require "*determining*" the balloons' locations *relative to* the location of a reference balloon.

Finally, Space Data is wrong that the target balloon's location need not be determined before the neighbor balloon's location.  Although method steps "are not ordinarily construed to require [an order,]" that is not so when the steps "implicitly require that they be performed in the order written."  *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342 (Fed. Cir. 2001); *Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313 (Fed. Cir. 1999); Opp. at 21.  Here, because the neighbor balloon's location is determined "relative to *the determined* location of the target balloon," the target balloon's location must already be determined before determining the neighbor balloon's location relative to it—just as is set forth in the order of the method steps.

## II.   GOOGLE HAS NOT WILFULLY INFRINGED THE '193 AND '706 PATENTS.

Space Data has not identified any evidence of pre- or post-suit willful infringement and has mooted its claim for willfulness as to the '706 patent by disclaiming damages.

**Pre-Suit Notice.**  As Space Data acknowledges, "[t]he relevant date for determining which conduct is pre-suit is the date of the patentee's affirmative allegation of infringement."  *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2017).  Here, the earliest date of Space Data's affirmative allegations of infringement of the '193 and '706 patents is the filing of its motion for leave to file its Third Amended Complaint ("TAC"), which included affirmative allegations of infringement of both patents.  *See* Dkt. 79 at 1, 2 n.3; Dkt. 79-1; *see also* Dkt. 131, 131-1.  Google had no knowledge of the issued patents before Space Data

affirmatively sought to assert them against Google.  But, even using the filing date of the TAC, Space Data has not identified any evidence of willful infringement in the few weeks between the issuance of the '706 and '193 patents (May 9, 2017, and June 13, 2017, respectively) and the date of that filing.  Space Data's primary pre-suit willfulness allegation is that "Loon emerged from what Google learned from SDC."  Opp. at 24.  This bootstrapped assumption is contradicted by the record (*see* Section III, *infra*) and therefore cannot support willfulness.  Furthermore, Space Data does not attempt to tie what Google allegedly "learned from Space Data" with Space Data to Google's development of the functionality accused of infringing the '193 and '706 patents.

**Post-Suit Conduct.**[2]  Space Data likewise failed to identify evidence of post-suit willfulness.  Google's ongoing development activities do not qualify because they are "equally consistent with a defendant who subjectively believes the plaintiff's patent infringement action has no merit."  *Slot Speaker Techs., Inc. v. Apple, Inc.*, No. 13-cv-01161-HSG, 2017 WL 4354999, at *2 (N.D. Cal. Sept. 29, 2017).  Space Data's claim that Google "ramped up" Loon after the TAC is unsupported by the record; Space Data cites only a February 13, 2018 *forecast*. *See* Ex. 197.  Space Data's claim that Google's '678 patent prosecution indicates post-suit willful infringement is similarly unavailing.  As a matter of law, patent prosecution does not demonstrate that Google practiced the invention.  *See Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 60 (1998).

**The '706 Patent**.  Because Space Data abandoned its claim to damages for Google's alleged infringement of the '706 patent, Space Data "will not recover damages if it prevails, and there thus can be no damages to enhance under section 284 based on a finding of willfulness." *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA)(RLM), 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010).  "Therefore, [Space Data's] 'claim' of willfulness is of no discernible legal import."  *Id.*  That Space Data seeks attorney fees under the exceptional case statute (35 U.S.C. § 285) is irrelevant—that is not a jury issue but a discretionary issue for the

---

[2] *Halo* did not disturb the rule that a patentee who fails to seek a preliminary injunction cannot obtain enhanced damages based solely on post-filing conduct.  *See, e.g.*, *Radware, Ltd. v. F5 Networks, Inc.*, No. 5:13-cv-02024-RMW, 2016 WL 4427490, at *6 (N.D. Cal., Aug. 22, 2016).

1    Court to resolve post-trial.  Space Data may not "use its quest for attorneys fees as a hook on

2    which to hang an unarticulated and legally defective claim for willful infringement."  *Id.* at \*5.

3    **III.    GOOGLE HAS NOT MISAPPROPRIATED SPACE DATA'S TRADE SECRETS
           OR BREACHED THE PARTIES' NDA.**

4

5            Space Data admits it has no direct evidence of misappropriation or breach of NDA.

6    Instead, it primarily offers speculation and attorney argument.  And the little circumstantial

7    evidence Space Data cites is neither "of a quantity and quality sufficient to allow a reasonable

8    jury to draw legal inferences which would permit it to find for" Space Data.  *Tempco Elec. Heater*

9    *Corp. v. Temperature Eng'g Co.*, No. 02 C 3572, 2004 WL 1254134, at \*9 (N.D. Ill. June 3,

10   2004) (emphasis omitted).  Most glaringly, despite basing its claims on the allegation that "Loon

11   'mirrors' Space Data's … trade secrets[,]" Dkt. No. 434 ¶ 188, Space Data offers no evidence of

12   similarity between its asserted trade secrets and Loon, despite having a technical expert and

13   ample opportunity to develop such evidence.  It also fails to offer evidence of any ***possible*** use of

14   its asserted technical trade secrets that would not fall within the NDA's "residuals" clause.  In

15   short, Space Data's proffered "web of circumstantial facts" is "as flimsy and easily broken as a

16   spider web, and contains just as many gaping holes."  *Tempco,* 2004 WL 1254134, at \*10.

17           **A.    Space Data primarily relies on speculation and argument, rather than
                   evidence, and it mischaracterizes the actual evidence it cites.**

18

19           Space Data argues that it should be permitted to proceed to trial based on what it calls

20   circumstantial evidence.  But misappropriation may only be proven by circumstantial evidence if

21   it is "of a quantity and quality sufficient to allow a reasonable jury" to infer misappropriation.

22   *Tempco,* 2004 WL 1254134, at \*9 (granting summary judgment for defendant) (emphasis

23   omitted); *see, e.g., Computer Scis. Corp. v. Computer Assocs. Int'l, Inc.*, No. CV 98-1374-WMB

24   SHX, 1999 WL 675446, at \*12 (C.D. Cal. Aug. 12, 1999) (granting summary judgment where

25   plaintiff's "rhetorical flourishes notwithstanding, its evidence is not nearly sufficient to allow a

26   reasonable jury to infer" misappropriation).  And the inferences drawn from circumstantial

27   evidence must be "reasonably deducible from the evidence, and not such as are derived from

28   speculation, conjecture, imagination, or guesswork."  *Think Vill.-Kiwi, LLC v. Adobe Sys., Inc.*,

---

8

1321214

1   No. C 08-04166 SI, 2009 WL 3837270, at *3 (N.D. Cal. Nov. 16, 2009).

2      Space Data's proffered circumstantial evidence fails to clear these hurdles.  Much of what

3   Space Data offers is speculation and attorney argument, not evidence.  Most notably, to sidestep

4   the lack of any Google photographs of Space Data's asserted trade secrets, Space Data asserts that

5   there are missing photographs whose absence raises "credible inferences of misuse."  *See* Opp. at

6   12.  Yet, even if there were photographs taken during Google's visit to Space Data that no longer

7   exist,[3] it is ***pure speculation*** that they captured information concerning the asserted trade

8   secrets—much less that anyone saw them or used them to develop Loon.  There is no evidence

9   that Google "went to photograph" data on screens, as Space Data asserts.  *Id.*  And Space Data is

10  not entitled to an adverse inference concerning the contents of any no-longer-existing

11  photographs or records absent proof of spoliation, of which there is none:

12    [I]t is not the unexplained absence of a document that may generate an adverse
  inference, but rather its intentional or grossly negligent destruction.  Since there is
13    no allegation (much less any proof) of bad faith or gross negligence here, plaintiff
  cannot claim the benefit of an adverse inference arising from the missing
14    document.

15  *Grynberg v. BP, P.L.C.*, No. 06 Civ. 6494(RJH), 2011 WL 1161540, at *8 (S.D.N.Y. Mar. 30,

16  2011); *accord Bickoff v. Wells Fargo Bank, N.A.,* 705 F. App'x 616, 617 (9th Cir. 2017).

17     Space Data also consistently mischaracterizes the circumstantial evidence it cites.  For

18  example, Space Data claims that "Google has no documentary evidence showing independent

19  development," Opp. at 11, but itself cites just such evidence, including white board drawings,

20  spreadsheets of research notes and technical calculations, and detailed records of Loon test

21  flights.  *See* Ex. 91, 92, 154; *see also* Ex. 202 (complete version of Ex. 92).  Likewise, Space Data

22  falsely claims that Google X head Astro Teller explained to Richard DeVaul that ██████████

23

24  ――――――――――――

25  [3] The declaration of Space Data's counsel's paralegal purporting to interpret the contents and

26  metadata of photos Google produced and to opine that others *may* exist is not competent expert

27  testimony and should not be considered.  *See* Dkt. 448-6; Fed. R. Evid. 602, 701, 702; *Pearson v.*

28  *U.S. Bank Nat. Ass'n*, No. 13-889 (MJD/JSM), 2014 WL 4163020, at *17 (D. Minn. Aug. 21,

2014) (attorney's opinion re metadata "is not competent expert testimony and is inadmissible").

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:16-cv-03260-BLF

1321214

1

2                                                    Opp. at 7.  The record does not back this up.

3   DeVaul actually testified that Teller told him "

4

5

6   Ex. 106 at 140:4-9; *see also id.* 141:19-142:20.  One cannot fairly extrapolate from this testimony

7   that ▮▮▮▮▮▮▮▮▮▮▮ with balloon constellations because of Space Data.

8          The instances of Space Data mischaracterizing the record and substituting speculation and

9   attorney argument for fact are too numerous to catalogue.  They infect every one of Space Data's

10  arguments and—taken together and compared with the actual record evidence—confirm that it

11  lacks the quantity or quality of circumstantial evidence needed to survive summary judgment.

12          **B.      Stripped of speculation and attorney argument, Space Data's evidence is not
                       nearly sufficient to allow a reasonable jury to infer misappropriation.**
13

14          At summary judgment, "the court must peer beyond the hyperbolic arguments of the

15  attorney opposing summary judgment and closely examine the evidence itself."  *In re Keegan*

16  *Mgmt. Co., Sec. Litig.*, 794 F. Supp. 939, 947 (N.D. Cal. 1992).  A close examination of the

17  evidence cited by Space Data confirms that its claims are groundless.

18          **Wind data.**  None of the evidence that Space Data cites in support of its wind data

19  misappropriation claim pertains to its asserted wind data trade secrets or to Loon's alleged use of

20  any such wind data.  Instead, Space Data offers a mashup of non-wind-related circumstantial

21  evidence.  Whether viewed separately or in combination, Space Data's evidence does not raise a

22  plausible inference that Google misused Space Data's asserted wind data secrets.  Opp. at 10-12.

23          *First*, there is no evidence that any of Space Data's wind data was retained by Google, if

24  at all, other than in the unaided memory of Google's representatives, such that its use—if there

25  were any evidence of use, which there isn't—would be prohibited by the parties' NDA.  *See*

26  Dkt. 344-1 ¶ 8.  Space Data does not claim that its wind-data trade secrets are captured in any of

27  the photographs in the record, and Dr. Hansman has confirmed that they are not.  Dkt. 410-13 ¶¶

28  322-40.  Instead, Space Data merely speculates that it might have been captured in other,

10

1321214

"missing" photos.  Opp. at 12.  As discussed, however, even if there were evidence of "missing" photos—and there is not—Space Data would not be entitled to an adverse inference as to their contents.  Space Data also argues in passing that the Google Space Data wiki site was available to Google employees working on Loon.  *Id.*  But Space Data ignores the fact that the wiki does not contain or reference any asserted wind-data trade secrets or any other asserted technical trade secrets.  Dkt. 410-13 ¶¶ 343-58.  Theoretical wiki access therefore cannot raise a plausible inference of misappropriation of Space Data's technical trade secrets, including for wind data.

*Second*, while Space Data argues that "[a]s initially conceived … the Loon balloons were small, inexpensive, and looked exactly like the SDC balloons" and "[a]t a macro level, Loon did and does exactly the same thing that SDC does[,]" its claims of similarity are unsupported by expert testimony and do not raise an issue of fact.  *See Calendar Research LLC v. StubHub, Inc*., No. 2:17-CV-04062-SVW-SS, 2018 WL 4846797, at *5 (C.D. Cal. Aug. 7, 2018) ("Plaintiff's arguments about why a reasonable jury could find similarities between [its technology and defendant's] are not supported by expert testimony and amount to speculation at this stage."); *Trident Prods. & Servs., LLC v. Canadian Soiless Wholesale, Ltd*., 859 F. Supp. 2d 771, 776 (E.D. Va. 2012) (expert testimony required to establish similarity between plaintiff's trade secret and defendant's technology because issue is "not within the common knowledge of a juror").

Moreover, "macro level" similarities in Space Data's system and Loon's are not probative of misappropriation of wind-data trade secrets or any others.  To support an inference of misappropriation, Space Data "must demonstrate similarity between [its] ***secret idea*** (not [its] product in general) and [defendant's] device."  *Stratienko v. Cordis Corp.*, 429 F.3d 592, 602 (6th Cir. 2005) (emphasis original).  Space Data does not, and cannot, claim as a trade secret the idea of "fly[ing] balloons together using ambient winds to [] provide coverage." Opp. at 11; *see* Ex. 15; *see also* Ex. 9 at 156:20-25; Ex. 33 at SD_195630.  Nor could a jury plausibly infer any wrongdoing from Google's decision to develop its own balloon communication system when Space Data explicitly "recognize[d] that Google may in the future develop products ... similar to the subject matter of Confidential Information disclosed" under the NDA.  Dkt. 344-1 ¶ 8.

Next, Space Data suggests that a jury could infer that Google misused Space Data's wind

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:16-cv-03260-BLF

1    data trade secrets from the fact that certain individuals involved in evaluating Space Data in 2008

2    later had some involvement with Loon:  "Are we to believe that these employees … somehow

3    carefully parsed what they told their counterparts, e.g., editing out the confidential points?"  Opp.

4    at 11.  This is essentially an "inevitable disclosure" argument, which is not recognized in

5    California.  *See Pellerin v. Honeywell Int'l, Inc.,* 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012); *see*

6    *also UCAR Tech. (USA) Inc. v. Yan Li,* No. 5:17-cv-01704-EJD, 2017 WL 6405620, at *3 (N.D.

7    Cal. Dec. 15, 2017) (rejecting inevitable disclosure theory under DTSA).  Even if that were not

8    the case, the parties' NDA expressly permitted Google to use any Space Data confidential

9    information "retained in the unaided memories" of its representatives "for any purpose" including

10   "development … of products and services" such as Loon.[4]  Dkt. 344-1 ¶ 8.

11        Space Data also claims that Google has no documentary evidence of independent

12   development, asking rhetorically, "[h]ow did [DeVaul] know as of July 28, 2011 … that it was

13   'technically feasible' to fly balloons in tight formation?"  Opp. at 11; *see also id.* at 5.  But there

14   *are* early Loon development records.  *See, e.g.,* Exs. 91, 92, 154.  And that DeVaul reached a

15   "tight formation" conclusion is a fabrication.  The cited documents do not mention "fly[ing]

16   balloons in tight formation" or anything similar.  *See* Exs. 92, 94; *Crane v. Royal Ins. Co. of Am.,*

17   17 F.3d 1186, 1188 (9th Cir. 1994) (attorney's "strained interpretation of the facts … has no value

18   as evidence").  Also, contrary to Space Data's innuendo, Opp. at 5, there is no mystery as to how

19   DeVaul calculated his ███████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████    *See* Ex.

21

_____

22   [4] Space Data cursorily argues that the residuals provision of the NDA is "incoherent."  Opp. at

23   15.  But there is no inconsistency between permitting use of information retained memory and not

24   granting a license to intellectual property.  And residuals provisions are a common feature of

25   confidentiality agreements.  *See, e.g.,* Scott M. Kline & Matthew C. Floyd, *Managing*

26   *Confidential Relationships in I.P. Transactions: Use Restrictions, Residual Knowledge Clauses,*

27   *and Trade Secrets,* 25 Rev. Litig. 311 (2006).  In any event, Space Data's founder and Rule

28   30(b)(6) designee testified that he understood the residuals provision.  Ex. 204 at 186:7-187:8.

12

1321214

1    202, 203.  There is no claim, much less evidence, that this formula came from Space Data.

2          **Financial information.**  Space Data claims that Google derived its early balloon cost

3    estimate from Space Data's confidential financial disclosures.  Opp. at 12-13.  But the $1,000 per

4    balloon cost estimate Space Data relies on does *not* actually match Space Data's cost information,

5    which lists the cost of a ███████████████████████████████████████████████████

6    ████████████████████████████████████████  *See* Ex. 50.  Space Data does not

7    explain why, if Google were using Space Data's numbers, they would be so different.  If

8    similarity can raise an inference of misappropriation, the dissimilarity here refutes such an

9    inference.  Also, Ela Beres, Space Data's posited link between its financial data and Loon's cost

10   estimate, did not become involved with Loon until months after the $1,000 cost estimate was first

11   used.  *See* Exs. 92, 108.  In short, Space Data's claims are substantively and temporally off base.

12         **Thermal management.**  Space Data's opposition only addresses two of its six alleged

13   thermal management trade secrets.  *See* Opp. at 13; Ex. 146 at 5-6.  As to those two, Space Data

14   cites no documents provided to Google describing its trade secrets, and its contemporaneous list

15   of confidential information disclosed during Google's visit does not mention thermal

16   management.  Ex. 134.  Nevertheless, Space Data claims that Google took photographs that

17   reveal Space Data's thermal management techniques, and Google now uses the same techniques.

18   Opp. at 13.  Both assertions lack evidentiary support.  Dr. Hansman reviewed the specific photos

19   that Space Data relies on and concluded that the photographs do *not* reveal any non-public

20   information about Space Data's thermal management techniques.  *See* Ex. 145; Dkt. 410-13 ¶¶

21   324, 336-39.  "Without expert testimony," Space Data's assertion to the contrary "is mere

22   attorney argument[,]" that is "insufficient to undermine the credible testimony from Google's

23   expert[.]"  *Suffolk Techs., LLC v. AOL Inc.*, 752 F.3d 1358, 1367 (Fed. Cir. 2014).

24         Likewise, Space Data's claim that Google now uses Space Data's techniques is

25   unsupported by any expert opinion (even though Space Data's expert inspected Loon's payload),

26   and rests only on its attorneys' say so.  "Unsubstantiated attorney argument regarding the

27   meaning of technical evidence is no substitute for competent, substantiated expert testimony …

28   and cannot, support [plaintiff's] burden on summary judgment."  *Invitrogen Corp. v. Clontech*

1321214

1   *Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005); *see also Calendar*, 2018 WL 4846797, at *5;

2   *Trident*, 859 F. Supp. 2d at 776.  Also, Space Data offers no explanation why Google would wait

3   until 2015 to use Space Data's techniques.  Ex. 148.  And the document Space Data cites reflects

4   Google's independent development of its thermal management techniques.  *See* Exs. 148, 205.

5        **NOC.**  Space Data's opposition only addresses three of its twelve claimed NOC trade

6   secrets.  *See* Opp. at 13; Ex. 153 at 9-10.  As to those three, Space Data's claims of misuse hinge

7   on the assertion that "Google photographed the data that SDC captures, monitors, and

8   analyzes[.]"  Opp. at 13.  Once again, this assertion is contradicted by the record.  Dr. Hansman

9   reviewed the photos that Space Data cites and concluded that none "depict any of the flight

10   control and monitoring system screenshots claimed by Space Data to constitute or disclose its

11   trade secrets."  Dkt. 410-13 ¶ 328; *see* Ex. 153.  Given this evidence, Space Data's attorney

12   arguments are insufficient to withstand summary judgment.  *Suffolk Techs*, 752 F.3d at 1367.

13        **Hover.**  Space Data has withdrawn its "hover algorithm" trade secrets.  Opp. at 14 n.1.

14        **C.**    **Dr. Hansman's opinions directly rebut Space Data's expert and are proper.**

15        Space Data does not substantively challenge any of Dr. Hansman's opinions.  Instead, it

16   claims that his opinions are improper rebuttal because Space Data was unable or unwilling to

17   offer any technical expert opinions in support of its misappropriation claims.  Space Data's

18   objection, however, mischaracterizes the substance of its damages expert's report.  Dr. Meyer's

19   report goes far beyond ***assuming*** misappropriation; she recounts in detail Space Data's version of

20   the events.  For example, Dr. Meyer states that "[d]uring the visit, Google engineers were allowed

21   to take numerous photographs of ████████████████████████████

22   ████" and "the 'inner-workings of the payload' as well as the NOCC screens showing

23   ████████████████████████████ Ex. 206 ¶¶ 61, 64; *see also id.*

24   ¶¶ 49-53, 56-60, 62, 66-67, 216-219.  And Dr. Meyer testified that she included these factual

25   understandings because they are relevant to her opinions.  *See* Ex. 207 at 66:11-24.

26        In his report, Dr. Hansman addresses the specific factual assertions, understandings, and

27   assumptions set forth in Dr. Meyer's report.  Dkt. 410-13 ¶¶ 322-382.  This is appropriate

28   rebuttal: "[C]hallenging the assumptions of an expert witness' report is a permissible topic of

1  rebuttal testimony." *Pinterest, Inc. v. Pintrips, Inc.*, No. 13-cv-04608-HSG, 2015 WL 2268498,

2  at *1 (N.D. Cal. May 14, 2015); *see also Perez v. State Farm Mut. Auto Ins. Co*., No. C 06-01962

3  JW, 2011 WL 8601203, at *8 (N.D. Cal. Dec. 7, 2011) ("[r]ebuttal testimony is proper as long as

4  it addresses the same subject matter that the initial experts address."). Space Data relies on this

5  Court's decision in *Clear-View Techs., Inc. v. Rasnick*, No. 13-cv-02744-BLF, 2015 WL 3509384

6  (N.D. Cal. Jun. 3, 2015), but the circumstances of that case bear little resemblance to this one.

7  The rebuttal report in *Clear-View* was directed to "Defendants' affirmative defenses and

8  counterclaims, on which Defendants bear the burden of proof." *Id.* at *3. Not so here. Space

9  Data bears the burden of proving that Google misused its trade secrets. Also, in *Clear-View*, the

10  rebuttal expert never reviewed the report he was supposedly being offered to rebut and his report

11  was not on "the same subject matter[.]" *Id.* at *2, *4. Here, Dr. Hansman addresses specific

12  assertions and assumptions in Dr. Meyer's report.

13        **D.    Space Data's cursory additional arguments concerning its breach of NDA
14               claim do not raise a triable issue of fact.**

15        Google is entitled to summary judgment on Space Data's breach of contract claim for all

16  the same reasons as the misappropriation claim. Space Data points to only two specific acts it

17  claims constitute breach of the NDA. It says that Minnie Ingersoll forwarded a ▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Opp. at

19  15. But Space Data acknowledges that Ingersoll did so to ▮▮▮▮▮▮▮▮▮▮▮

20  ▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*; *see* Dkt. 344-1 at Preamble, ¶ 2. And Space

21  Data offers no evidence that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

22  Second, Space Data claims Google employees involved in evaluating Space Data in 2008 later

23  shared information with the Loon team. But it does not identify any confidential information

24  allegedly shared, much less show that any such information would not qualify as a residual under

25  the NDA, and Dr. Hansman confirmed that none of the emails Space Data cites disclose any

26  asserted technical trade secrets. Dkt. 416-4 at 23; Dkt. 410-13 ¶¶ 359-62.

27  **IV.    CONCLUSION**

28        The Court should grant Google's motion for summary judgment in its entirety.

1

Respectfully submitted,

2

KEKER, VAN NEST & PETERS LLP

3

4   Dated:  March 1, 2018                    By:    /s/ Robert A. Van Nest

ROBERT A. VAN NEST

5                                                   MATTHEW M. WERDEGAR
EUGENE M. PAIGE

6                                                   MATTHIAS A. KAMBER
RYAN K. WONG

7                                                   LEAH PRANSKY
SHAYNE HENRY

8                                                   ANDREW S. BRUNS

9                                                   Attorneys for Defendants
ALPHABET INC., GOOGLE LLC, and

10                                                  LOON LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:16-cv-03260-BLF

1321214