SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
DIANE S. RICE (CA Bar No. 118303)
drice@hosielaw.com
BRANDON C. MARTIN (CA Bar No. 269624)
bmartin@hosielaw.com
DARRELL R. ATKINSON (CA Bar No. 280564)
datkinson@hosielaw.com
HOSIE RICE LLP
600 Montgomery Street, 34th Floor
San Francisco, California 94111
Telephone: (415) 247-6000
Facsimile    (415) 247-6001

*Attorneys for Plaintiff*
*SPACE DATA CORPORATION*

KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - #84065
rvannest@keker.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@keker.com
EUGENE M. PAIGE - #202849
epaige@keker.com
MATTHIAS A. KAMBER - #232147
mkamber@keker.com
RYAN K. WONG - #267189
rwong@keker.com
LEAH PRANSKY - #302246
lpransky@keker.com
SHAYNE HENRY - #300188
shenry@keker.com
ANDREW S. BRUNS - #315040
abruns@keker.com
633 Battery Street
San Francisco, CA  94111-1809
Telephone: 415.391.5400
Facsimile:  415.397.7188
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

*Attorneys for Defendants*
*ALPHABET INC., and GOOGLE LLC, and*
*LOON LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

SPACE DATA CORPORATION,

Plaintiff,

v.

ALPHABET INC., GOOGLE LLC, and
LOON LLC

Defendants.

Case No. 5:16-cv-03260-BLF (NC)

**JOINT PRETRIAL STATEMENT AND
[PROPOSED] ORDER**

Pre-Trial Conf.: July 19, 2019
Time: 1:30 p.m.
Judge: Hon. Beth Labson Freeman
Trial Date:  August 2, 2019
Courtroom: 3, Fifth Floor

REDACTED VERSION SOUGHT TO BE SEALED

Pursuant to Section II of the Court's Standing Order Re Civil Jury Trials, Plaintiff Space Data Corporation ("Space Data") and Defendants Alphabet Inc., Google LLC ("Google"), and Loon LLC ("Loon"), (collectively and/or individually "Defendants") (jointly, "the Parties") submit the following statement in advance of the Final Pretrial Conference scheduled for July 19, 2019.

## I.      THE ACTION.

### A.      The Parties.

Space Data Corporation is the Plaintiff.  Alphabet Inc., Google LLC, and Loon LLC are the Defendants.  The Parties agree that Defendants have been properly served and duly appeared.

### B.      Substance of the Action.

#### a.      Space Data's Position.

On June 13, 2016, Space Data filed the original Complaint against X, Alphabet, and Google.  ECF 1.  Space Data asserted four causes of action: infringement of U.S. Patent No. 6,628,941 ("the '941 patent") and of U.S. Patent No. 7,801,522 ("the '522 patent"), federal and state trade secret misappropriation, and breach of contract ("the NDA").  Space Data alleged that Defendants' "Project Loon"—a research and development project with the mission of providing wireless services using high altitude balloons placed in the stratosphere—unlawfully used Space Data's confidential information and trade secrets and infringed Space Data's patents, and that Defendants had breached the Parties' NDA.  *See generally* ECF 1.

On September 30, 2016, Space Data filed a First Amended Complaint asserting the same four causes of action, although dropping its claim of infringement of the '522 patent.  ECF 28. On February 16, 2017, the Court dismissed the trade secret claims and breach of contract claim with leave to amend.  ECF 59.  On April 20, 2017, Space Data filed a Second Amended Complaint with the same causes of action.  ECF 91.  On July 14, 2017, the Court granted in part Defendants' motion to dismiss the trade secret claims and breach of contract claim with leave to amend, and granted Space Data leave to assert three additional patents.  *See generally* ECF 142. Space Data subsequently filed a Third Amended Complaint asserting seven causes of action. ECF 144.  On December 18, 2017, the Court denied Defendants' motion to dismiss this

complaint.  ECF 176.

On August 23, 2018, by stipulation and leave, Space Data filed a Fourth Amended Complaint, adding Loon LLC—a new entity—as a Defendant.  ECF 344.

On February 1, 2019, the Court granted Space Data leave to file a Fifth Amended Complaint ("5AC"), adding Certificates of Correction relating to two of the asserted patents.  *See generally* ECF 431.  Thereafter, on February 13, 2019, Space Data filed the operative 5AC, asserting the following seven causes of action:

(1) Count I for infringement of the '941 patent;

(2) Count II for trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 & 1837;

(3) Count III for trade secret misappropriation under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426, *et seq.*;

(4) Count IV for breach of written contract;

(5) Count V for infringement of U.S. Patent No. 9,632,503 ("the '503 patent");

(6) Count VI for infringement of U.S. Patent No. 9,643,706 ("the '706 patent"); and,

(7) Count VII for infringement of U.S. Patent No. 9,678,193 ("the '193 patent").

*See generally* 5AC, ECF 434.

On February 27, 2019, Defendants answered Space Data's 5AC and asserted counterclaims for declaratory judgment of invalidity, non-infringement, and unenforceability of the '193 patent.  *See generally* Answer to 5AC, ECF 465.  On March 13, 2019 Space Data answered Defendants' counterclaims.  *See generally* Answer to Counterclaims, ECF 478.

On January 11, 2018, Space Data filed a Motion for Partial Summary Judgment on the grounds that judicial estoppel barred Defendants from challenging validity of the Asserted Claims.  ECF 185.  Space Data argued that the Asserted Claims of the '193 patent are identical to certain claims that were issued in Google's '678 patent.  Space Data contended that Defendants had changed its position that it took during the U.S. Patent and Trademark Office ("PTO") proceedings by arguing that the Asserted Claims are invalid based on the very references that Defendants themselves said repeatedly did not anticipate and make obvious.  The Court denied

2

Space Data's Motion for Partial Summary Judgment.  ECF 255.  The ruling was "without prejudice to Space Data's ability to argue judicial estoppel later in this proceeding."  *Id.*

Even with summary judgment of non-infringement on the asserted '193 patent claims granted, *see* below, Defendants' patent prosecution activities, including is '678 activities, continue to be relevant to this case.  For example, one of Defendants' central attacks on Space Data's trade secrets is that the trade secrets are not trade secrets at all.  Defendants say that Space Data's trade secrets "are generally known to the public …" and "are common to numerous public and preexisting balloon and balloon-based communication systems."  *See* § I.B.b. below.

However, in January 2012, Defendants began a systematic campaign to patent aspects of technology that are similar to Space Data's trade secrets.  For example, one of Defendants' first Loon patent filings claimed as novel and non-obvious controlling an altitude of a balloon based on its desired horizontal movement to manage a fleet of balloons.

On the one hand, Defendants say there is nothing secret, yet on the other hand they patented similar ideas as original and novel inventions of Defendants.  These two positions are flatly inconsistent, and Defendants' '678 patent prosecution history directly impeaches Defendants' attack on Space Data's trade secrets.

On September 6, 2018, the Court issued its Order Construing Claims and found all asserted claims of the '941 and '503 patents, and claim 29 of the '706 patent, invalid for indefiniteness.  *See* ECF 352 at 25-26.  The '193 and '706 patents remained live in this action following claim construction.

On November 7, 2018, the Patent Trial and Appeal Board ("PTAB") of the PTO instituted *inter partes* review ("IPR") on all asserted claims of the '706 patent.  *See* ECF 477 at 2:13-15.  Defendants then moved to stay Space Data's claim for infringement of the '706 patent pending completion of the '706 patent IPR proceedings.  ECF 374.  On March 12, 2019 the Court denied Defendants' motion to stay.  ECF 477.

On January 11, 2019, Defendants filed a Motion for Summary Judgment.  ECF 411.  Four days later, Defendants filed a Corrected Motion for Summary Judgment ("Motion").  Motion, ECF 416-4.  On April 11, 2019, the Court heard oral argument on Defendants' Motion.

On May 9, 2019, the Court issued an "Order Granting in Part and Denying in Part and Deferring in Part Defendants' Motion for Summary Judgment" ("Summary Judgment Order") (ECF 524).  The Court ordered that:

> (1) [Defendants'] motion for summary judgment of non-infringement of the '193 patent is GRANTED.
>
> (2) [Defendants'] motion for summary judgment as to willful infringement of the '193 patent is moot. [Defendants'] motion for summary judgment as to willful infringement of the '706 patent is DEFERRED to consideration of whether attorney fees may be awarded by the Court, should the Court reach that issue.
>
> (3) [Defendants'] motion for summary judgment as to trade secret misappropriation is DENIED.
>
> (4) [Defendants'] motion for summary judgment as to breach of written contract (the NDA) is DENIED.

On May 28, 2019, Space Data filed a Motion for Leave to File its Motion for Reconsideration of the Court's Grant of Summary Judgment as to Non-Infringement of the '193 Patent ("Motion for Leave").  ECF 539.  On May 29, 2019, the Court denied Plaintiff's Motion for Leave.  ECF 542.

As a result of the May 9, 2019 Order, the four remaining causes of action are as follows: (1) Claim for Misappropriation of Trade Secrets under 18 U.S.C. § 1836 & 1837 ("DTSA"); (2) Misappropriation of Trade Secrets under California Civil Code § 3426, *et seq.*; (3) Breach of Written Contract; and, (4) Patent Infringement Under 35 U.S.C. § 1 *et seq.* ('706 patent).  *See* ECF 434.  The elements of the various remaining causes of action are stated below:

**Misappropriation of Trade Secrets (Counts 2 and 3):**

"To state a claim for misappropriation of trade secrets under the [CUTSA], a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Autodesk, Inc. v. ZWCAD Software Co., Ltd.*, No. 14-cv-1409, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015) (citation omitted). The elements of misappropriation under the DTSA are similar to those under the CUTSA. *Compare* 18 U.S.C. § 1839(5) *with* Cal. Civ. Code § 3426.1(b).  Space Data's asserted trade secrets are set forth in the 5AC and Space Data's Fifth Amended Cal. Code Civ. P. § 2019.210 Trade Secret Disclosure (the "2019 Statement"), which are incorporated by reference.  *Cf.* ECF

524 at 14:13-15 & 20:16-22 (holding that Space Data asserts four categories of trade secrets, and declining to rule on Defendants' summary judgment motion on a "trade-secret-by-trade-secret basis").  (While Space Data has the right to assert the entirety of its four categories of trade secrets at trial, Space Data appreciates that time is limited.  Accordingly, Space Data will continue to meet and confer with Defendants as to the possibility of Space Data narrowing its trade secrets.)

**Breach of Written Contract Elements (Count 4):**

To prevail on a cause of action for breach of contract, the plaintiff must prove "(1) the contract, (2) the plaintiff's performance or excuse for nonperformance, (3) defendants' breach, and (4) the resulting damage to plaintiff.  [Citation]."  *Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1004 (2016); *Richman v. Hartely*, 224 Cal. App. 4th 1182, 1186 (2014).

**Patent Infringement Elements (Count 6):**

A party is liable for direct infringement, if, without authority, it makes, uses, offers to sell or sells a patented invention within the U.S. or imports a patented invention into the U.S.  35 U.S.C. § 271(a).  To literally infringe the patent, the infringing instrumentality must literally include each element of the patent claim.  A remedy available to a patent owner is a permanent injunction that prevents the infringer from importing, making, using, selling, offering for sale or importing into the U.S. any instrumentality that infringes the patent.  *See MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### b. <u>Defendants' Position.</u>

Defendants contend that they did not breach the Parties' NDA.  *See* ECF 465 at 53. Specifically, Defendants contend that they did not use or disclose any of Space Data's "Confidential Information," as defined in § 3 of the NDA, in developing Loon or for any unauthorized purpose.  ECF 411 at 2.  Section 3 of the NDA defines "Confidential Information" as the following:

> Information shall only be considered Confidential Information for the purposes of [the NDA] if (a) it is clearly and conspicuously marked as "confidential" or with a similar designation; or (b) if it is identified as confidential and/or proprietary before, during, or promptly after presentation or communication by [Space Data]. Information communicated orally shall only be considered Confidential Information if such information is designated as being confidential at the time of

5

disclosure (or promptly thereafter) and is reduced in writing and confirmed to [Google] as being Confidential Information within fifteen (15) days after the initial disclosure.

ECF 434-1 at § 3.

Defendants contend that they did not misappropriate Space Data's trade secrets. *See* ECF 465 at 52–53. Specifically, Defendants contend that they did not use or disclose any of Space Data's trade secrets in developing Loon or for any unauthorized purpose. ECF 411 at 2.

Defendants contend that they independently developed Loon's business model, technology, and other information and, in doing so, have not used any information that Space Data asserts is a trade secret and/or Confidential Information under the NDA. ECF 465 at 70.

Defendants contend that the alleged trade secrets and Confidential Information are generally known to the public or to other persons who can obtain economic value from their disclosure or use, including persons with special knowledge and skill in the ballooning and high-altitude communication platform fields. ECF 465 at 70. Defendants further contend that Space Data's alleged trade secrets and Confidential Information are common to numerous public and preexisting balloon and balloon-based communications systems. Space Data's alleged trade secrets and Confidential Information also consist of information that has been described, detailed, and pictured in publications and on publicly available Internet sites. ECF 465 at 70.

Defendants contend that Space Data's alleged trade secrets and Confidential Information are readily ascertainable by proper means from publicly available information about the stratosphere and stratospheric wind conditions, high-altitude ballooning, wireless communications systems, and other topics. ECF 465 at 70–71.

Defendants contend that Space Data has not taken reasonable efforts under the circumstances to maintain the secrecy of its alleged trade secrets. ECF 465 at 71.

Defendants contend that Space Data's alleged trade secrets do not derive independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use. ECF 465 at 71.

Defendants contend that Space Data's claims for misappropriation of trade secrets are barred, in whole or in part, by the statute of limitations. ECF 465 at 72. Specifically, Space Data

1  was aware of Defendants' plans and efforts to develop their own allegedly copy-cat balloon-based

2  high-altitude communications system more than three years before Space Data filed its original

3  complaint in this action.  ECF 465 at 72.

4       Defendants contend that Space Data failed to designate the asserted Confidential

5  Information as required under § 3 of the NDA.  ECF 465 at 77–78.

6       Defendants contend that their actions are authorized under § 4 of the NDA, which

7  prohibits disclosing Confidential Information only "to any person outside its organization," and

8  requires that they "use the same degree of care, but no less than a reasonable degree of care, as

9  [they] use[] with respect to [their] own confidential information to: (i) protect the confidentiality

10  of Confidential Information; and (ii) ensure that proper and secure storage is provided for all

11  Confidential Information to protect against theft or unauthorized access."

12       Defendants contend that some or all of the asserted Confidential Information is exempted

13  from protection by § 5 of the NDA, which "imposes no obligation upon a Recipient with respect

14  to Confidential Information that: (a) was known to [Google] before receipt from [Space Data];

15  (b) is or becomes publicly available through no fault of [Google's]; (c) is received by [Google]

16  from a third party without a duty of confidentiality; (d) is independently developed by [Google]

17  without a breach of this Agreement; or (e) is disclosed by [Google] with [Space Data's] prior

18  written approval."

19       Defendants contend that their actions are authorized under § 8 of the NDA, which

20  "recognizes that Google may in the future develop products or services related to or similar to the

21  subject matter of Confidential Information disclosed under this Agreement.  Accordingly, Google

22  may use Residuals for any purpose, including without limitation, use in the acquisition,

23  development, manufacture, promotion, sale, or maintenance of products and services . . . ."

24       Defendants contend that any obligations they may have had under the NDA have expired

25  pursuant to § 7 of the NDA, which states that, "[u]nless the Parties otherwise agree in writing,

26  [Google']s duty to protect Confidential Information expires three (3) years from the date of

27  disclosure."

28       Defendants contend that Space Data unreasonably delayed in bringing this action after

1  learning in 2013 of Project Loon and their alleged use of Space Data's purported trade secrets and

2  confidential information.  ECF 465 at 76–77.  Defendants contend that this delay indicated to

3  Defendants that Space Data acquiesced and consented to Project Loon, and Defendants have been

4  prejudiced as a result of Space Data's later reversal of position.  ECF 465 at 76–77.

5       Defendants contend that their patent prosecution activities, including as to the '678 patent,

6  bear no relevance to this case because such activities are not accused of being an act of trade

7  secret misappropriation or breach of contract.  Google is concurrently filing a related motion *in*

8  *limine* on the issue.

9       Defendants contend that Space Data failed to take reasonable and appropriate steps to

10  mitigate the damages it claims to have incurred.  ECF 456 at 78.

11                      **c.   Defendants' Counterclaims.**

12       Defendants also assert a counterclaim for declaratory judgment of non-infringement of the

13  '706 patent.  ECF 465 at 88–89.  Defendants contend that they do not literally infringe and have

14  not literally infringed any claims of the '706 patent, either directly or indirectly.

15       Defendants also assert a counterclaim for declaratory judgment of invalidity of the '706

16  patent.  ECF 465 at 89–90.  Defendants contend that the claims are invalid under 35 U.S.C.

17  §§ 103 and 112, including because the alleged invention is taught by, suggested by, or obvious in

18  view of, prior art; and/or is not adequately enabled or supported by the written description of the

19  patented invention.  ECF 465 at 89–90.

20               **d.   Space Data's Affirmative Defenses to Defendants' Counterclaims.**

21       Space Data denies Defendants' allegations as set forth in Space Data's Answer and

22  Affirmative Defenses to Defendants Alphabet Inc., Google LLC, and Loon LLC's Counterclaims

23  (hereafter "Answer").  *See generally* ECF 478.  Space Data also denies that Defendants are

24  entitled to any of the requested relief.  *See generally id.*

25       Defendants have agreed to dismiss without prejudice Counterclaims 1, 2, 3, 4, 7, 8, and 9.

26  Defendants maintain Counterclaim 5 as to the asserted '706 patent claims (claims 1, 9, and 13)

27  and the accused instrumentalities, and maintain Counterclaim 6 as to the asserted '706 patent

28  claims (claims 1, 9, and 13) and as to certain theories of invalidity (i.e., Defendants are not

pursuing any claim of unenforceability as to the '706 patent).  (The accused instrumentalities are set forth in the relevant portions of Space Data's August 25, 2017 infringement contentions.)

### C.   Relief Sought

#### a.  Space Data's Position

1.      That the '706 patent is valid and enforceable;

2.      That Defendants have infringed one or more asserted claims (1, 9, and 13) of the '706 patent;

3.      That Defendants' infringement of the '706 patent was willful;

4.      That Space Data is the "prevailing party" in this litigation;

5.      That this be adjudicated an exceptional case and Space Data be awarded its costs and attorneys' fees pursuant to 35 U.S.C. § 285;

6.      That this Court issue an injunction enjoining Defendants, their officers, agents, servants, employees and attorneys, and any other person in active concert or participation with them, from continuing the acts herein complained of with respect to infringement of the '706 patent, and more particularly, that Defendants and such other persons be permanently enjoined and restrained from further infringing the '706 patent;

7.      That Defendants account for and pay to Space Data all damages caused by the misappropriation of Space Data's trade secrets, which pursuant to Cal. Civ. Code § 3426.3, includes actual loss and any unjust enrichment not taken into account in computing actual loss, or a reasonable royalty if neither damages nor unjust enrichment is provable;

8.      That Defendants account for and pay to Space Data all damages caused by the misappropriation of Space Data's trade secrets which, pursuant to 18 U.S.C. § 1836(b)(3)(B), includes actual loss and any unjust enrichment not addressed in computing damages for actual loss, or a reasonable royalty in lieu of damages measured by another method;

9.      That Defendants' misappropriation of Space Data's trade secrets was willful and malicious, and for exemplary damages pursuant to Cal. Civ. Code § 3426.3(c) and/ or 18 U.S.C. § 1836(b)(3)(C), and reasonable attorneys' fees and costs (including expert expenses) pursuant to Cal. Civ. Code § 3426.4 and/or 18 U.S.C. § 1836(b)(3)(D);

9

10.     That this Court issue an injunction enjoining Defendants, its officers, agents, servants, employees and attorneys, and any other person in active concert or participation with them, prohibiting them from: continuing to use Space Data's trade secrets; continuing to use Space Data's Confidential Information; continuing to disclose Space Data's trade secrets; continuing to disclose Space Data's Confidential Information; continuing to breach the proprietary, confidentiality and use limitation provisions of the NDA; continuing to exercise ownership over Space Data's trade secrets; and continuing to exercise ownership over Space Data's Confidential Information;

11.     That this Court require Defendants to file with this Court, within thirty (30) days after entry of final judgment, a written statement under oath setting forth in detail the manner in which Defendants have complied with the injunctions;

12.     Pre-judgment and post-judgment interest on the damages caused to them by reason of Defendants' conduct at the maximum legal rates provided by statute or law;

13.     Costs and disbursements in this civil action, including reasonable attorney fees;

14.     That Defendants be ordered to disgorge, restore and/or make restitution to Space Data for all sums constituting unjust enrichment from their wrongful conduct, as allowed by law according to proof;

15.     For damages in an amount to be further proven at trial for breach of contract damages;

16.     Judgment in Space Data's favor and against Defendants on all remaining causes of action; and,

17.     Such other and further relief as the Court may deem just and proper under the circumstances.

b.  **Defendants' Position**

As set forth in Defendants' Fifth Amended Answer and Rule 26(a)(1) disclosures, Defendants seek the following relief:

1.     Judgment dismissing Space Data's complaint against Defendants with prejudice;

2.      Judgment that the asserted claims of the '706 patent are not infringed and/or are invalid;

3.      Judgment that Space Data's misappropriation claims against Defendants were made in bad faith;

4.      Judgment awarding Defendants their reasonable attorney's fees and costs, including expert witness fees, pursuant to Cal. Civ. Code § 324.4, 18 U.S.C. § 1836(b)(3)(D), and/or otherwise permitted by law or equity;

5.      Judgment that Defendants are the "prevailing party" in this litigation;

6.      Judgment that this case is "exceptional" within the meaning of 35 U.S.C. § 285 and an award granting Defendants their reasonable attorney's fees and costs; and

7.      Any other and further relief that this Court may deem just and proper.

**D.      Federal Jurisdiction and Venue.**

Jurisdiction and venue are not disputed.

Space Data brings its action for patent infringement under the patent laws of the United States, 35 U.S.C. § 271 *et seq.*  This Court has federal question subject matter jurisdiction over Space Data's patent infringement claims by virtue of 28 U.S.C. § 1331 and 1338(a).

This Court also has federal question subject matter jurisdiction under the DTSA, 18 U.S.C. § 1836.  This Court has original jurisdiction over this controversy for misappropriation of trade secrets claims pursuant to 18 U.S.C. § 1836(c) and 35 U.S.C. § 1331.  This Court has supplemental jurisdiction over the controversy for all other claims asserted herein pursuant to 28 U.S.C. § 1367.

Venue is proper in this District under 28 U.S.C. § 1391(c)-(d) and 1400(b) because (i) Defendants maintain their principal places of business in this District, and (ii) this is a District in which Defendants are subject to the Court's personal jurisdiction with respect to this action, and/or the District in this State where Defendants have the most significant contacts.  Further, as to the state-based claims, the Parties' NDA states that "[t]he exclusive venue for any dispute shall be in the state or federal courts within Santa Clara County, California."  *See* NDA § 17.

**II.      FACTUAL BASIS OF THIS ACTION.**

**A.**     **Undisputed Facts.**

1.     Space Data is an Arizona corporation with its principal place of business at 2535 W. Fairview Street, Suite 101, Chandler, Arizona 85224-4707.

2.     Google LLC is a Delaware corporation, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043-1351.

3.     Alphabet Inc. is a Delaware corporation, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043-1351.

4.     Loon LLC is a Delaware limited liability company with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043-1351.

5.     As memorialized at Exhibit A to the 5AC and Trial Exhibit 192, the Parties entered into a "Mutual Confidentiality and Nondisclosure Agreement" effective December 1, 2007 (the "NDA").

6.     Defendants drafted the NDA.

7.     Space Data is the owner of the '706 patent (and the asserted claims).

8.     The '706 patent is entitled "Systems and Applications of Lighter-Than-Air (LTA) Platforms" and issued on May 9, 2017.

9.     Final integration of the components making up the Loon vehicle takes place at Loon's launch sites in Winnemucca, NV and Puerto Rico.  Project Loon balloons are manufactured in the United States.

10.     After launch, no hardware or software components are added to Project Loon balloons or payloads.

**B.**     **Disputed Facts.**

The Parties list, below, "disputed facts" proposed by either side.  The Parties do not necessarily agree (and each side reserves its right to dispute) that all such "disputes" are relevant to this case, have been preserved, and/or that such disputes should be submitted to the jury.  The Parties also incorporate by reference the disputed issues listed in Section III below to the extent that they involve disputed factual issues and/or mixed questions of law or fact.

12

### a.  Space Data's Position.

1.      Space Data and Defendants met over a period of approximately six months in 2007-2008 to discuss Defendants' potential investment or acquisition of Space Data.

2.      The parties participated in multiple technical conference calls during which Defendants performed technical due diligence on Space Data's balloons and technology.

3.      Larry Page ("Page") and Sergey Brin ("Brin") attended multiple meetings with Space Data.

4.      After the September 2007 parties' meeting in Mountain View, Defendants expressed interest in acquiring Space Data's 900 MHz spectrum.

5.      In November 2007, the parties held a second meeting in Mountain View to discuss at a high level how Space Data could apply its technology to provide broadband from its platform.

6.      Defendants planned to bid on FCC spectrum and initially thought that Space Data could build-out the spectrum quickly.

7.      By November 2007, both Page and Brin concluded that Defendants should buy Space Data, spectrum results regardless.

8.      Page and Brin were behind a "███████████."

9.      After the parties signed Defendants' NDA, Mike Pearson ("Pearson") asked Space Data for confidential data so that Defendants could conclude their diligence.

10.     On December 4, 2007, Defendants requested that Space Data share certain detailed financial information and technical uses for balloon technology.

11.     Under the NDA, Space Data disclosed trade secrets and confidential information to Defendants.

12.     Under the NDA, no party acquired any intellectual property rights under the Agreement.

13.     The NDA sets forth multiple duties, including Defendants' duty to "use" the Space Data "Confidential Information only for the purposes set forth" in the NDA—the evaluation of the Space Data deal.

14.     The NDA required that Defendants "protect" Space Data's Confidential Information with "the same degree of care, but no less than a reasonable degree of care, as [Defendants] uses with respect to its own Confidential Information."

15.     Under the NDA, the term "Residuals" means information retained in the unaided memories of Defendants' employees or representatives who have had access to Confidential Information pursuant to the Agreement and who made no effort to remember.

16.     Under the NDA, a person's memory is unaided if such person has not intentionally memorized the Confidential Information for the purpose of retaining and subsequently using or disclosing it.

17.     By December 18, 2007, both Page and Brin had met the Space Data management and asked that Defendants acquire Space Data.

18.     In January 2008, Defendants internally discussed contemplating an acquisition of Space Data's intellectual property.

19.     Before the February 15, 2008 tour, Phil Gossett ("Gossett"), added information to the Space Data wiki, both on his vision of how Defendants might use the Space Data information, and trying to capture



21.     These ▮▮▮▮▮▮ points later surfaced in Loon's presentation to secure approval and funding for Loon.

22.     On February 15, 2008, in conjunction with the parties' discussions, 12 executives and engineers of Defendants, including the two cofounders, toured Space Data's facilities in Chandler, Arizona.

23.     Space Data shared trade secrets and confidential information with Defendants

14

during Defendants' February 2008 tour of Space Data's Chandler, Arizona facility.

24.     During the tour, Jerry Knoblach ("Knoblach"), Space Data's C.E.O., showed Defendants' executives the wind data information during the tour on the screens in the NOC.

25.     Defendants' executives brought at least five cameras to the tour.

26.     Defendants' employees took notes and photographs during the tour.

27.     Dan McCloskey took notes but later destroyed them.

28.     Defendants photographed Space Data's displayed data in the NOC related to flight time, temperature of payload components, altitude and power consumption.

29.     Defendants' executives took photographs of the payloads including Space Data's ████████ technique.

30.     During the tour, Space Data flew ████████████

31.     Jerry Knoblach discussed wind data and altitude formation on display during the tour.

32.     After the meeting, Space Data sent an email confirming as confidential the wind data it shared with Defendants on the tour.

33.     On February 19, 2008, Eric Frische sent an email to Pearson designating 16 categories of ideas and information that were to be considered "Confidential Information under paragraph 3 of [the] Mutual Confidentiality and Non-Disclosure Agreement dated December 4, 2007."

34.     During the tour, Defendants' employees examined disassembled payloads.

35.     Space Data provided Defendants with Space Data's confidential financial information, including budgets, projections, cost models, and contracts.

36.     Shortly after gaining access to Space Data's trade secrets, Defendants ceased negotiating an acquisition of Space Data.

37.     After the tour, Minnie Ingersoll ("Ingersoll") asked her team if Defendants should buy Space Data.

38.     On February 21, 2008, Defendants decided to give Space Data the "silent treatment," citing anger over a Wall Street Journal article published days earlier.

15

39.     Defendants knew about the Wall Street Journal article before the tour.

40.     On February 24, 2008, Defendants informed Space Data that it was not interested in additional conversations.

41.     On February 24, 2008, negotiations permanently ceased.

42.     In preparing for the Space Data tour, Access team members including Alec Proudfoot ("Proudfoot") and Ryan Falor ("Falor") reviewed Space Data confidential information.

43.     Proudfoot and Falor worked on the Loon project.

44.     Defendants' employees involved in evaluating Space Data in 2007-2008 later shared information with the Loon team.

45.     In December 2007, Defendants constructed an internal Wiki page to host Space Data information in Defendants' possession, including internal notes of Defendants regarding Space Data's technology.

46.     The Wiki contained Space Data's Confidential Information including Space Data's financial statements.

47.     Defendants redacted its own Confidential Information in its Space Data Wiki site.

48.     Defendants did not redact Space Data Confidential Information on the Wiki site.

49.     The Wiki contained information regarding Space Data's customers and revenue, valuation and technology.

50.     Defendants quote Space Data's confidential presentations on their Wiki.

51.     The Wiki page was accessible to full-time employees of Defendants from 2007 forward, and possibly as late as 2018.

52.     Over 20 employees of Defendants were provided with the Wiki's URL in 2007-2008, including at least one employee (Proudfoot) who later worked on Loon.

53.     Defendants' records show that numerous employees of Defendants visited the Wiki from 2010 to 2015.

54.     Defendants cannot identify which employees visited their Wiki prior to 2010.

55.     Employee of Defendants Dan McCloskey ("McCloskey") had access to the Wiki URL and later consulted on Loon.

56.  McCloskey, Larry Alder ("Alder"), Dan Conrad ("Conrad") and Ingersoll did not know whether Defendants had an NDA with Space Data.

57.  Defendants uploaded or linked what it learned from Space Data to their Wiki site.

58.  In May 2008, ████████████████████████████████████████████████████████████████████████████████████████████

59.  Casey asked Ingersoll for a meeting and notes or documents about Space Data.

60.  Ingersoll forwarded the Wiki to Casey in the summer of 2008, months after Defendants declined to acquire Space Data.

61.  Sebastian Thrun ("Thrun") cofounded the Defendants' "Moonshot" factor, now "X." ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

64.  In November 2010, Page asked Thrun to explore balloon networks and mentioned aspects of Space Data's approach.

65.  Thrun contacted former Space Data team members of Defendants and talked to Brin about Space Data.

66.  Astro Teller ("Teller") became the co-head of X in 2009.

67.  In 2011, Teller recruited Apple engineer Richard DeVaul ("DeVaul").

68.  DeVaul first worked on an inexpensive mobile phone at X.

69.  DeVaul met with Thrun and Teller who told him that hardware was not the problem, connectivity was.

70.  DeVaul denies that Teller or Thrun asked him to research a balloon constellation.

71.  DeVaul and Defendants claim that he came up with the idea himself.

72.  On July 11, 2011, 15 business days after joining X, DeVaul set a meeting to

17

discuss "WiMAX for the World," using "station-keeping balloons as low-earth-orbit comms satellites."

73.     Alder and other employees of Defendants shared Space Data information with the Loon development team in 2011.

74.     The next day, DeVaul diagrammed a balloon.

75.     The DeVaul diagram appeared months later in DeVaul's presentation used with Page to secure Loon approval.

76.     On July 13, 2011, Teller participated in a meeting set up by DeVaul to "brainstorm around Wi-Fi/WiMAX delivery to remote, hostile, or otherwise unconnected regions using station-keeping balloons as low-earth-orbit comms satellites."

77.     On July 13, 2011, Thrun participated in a meeting set up by DeVaul to "brainstorm around Wi-Fi/WiMAX delivery to remote, hostile, or otherwise unconnected regions using station-keeping balloons as low-earth-orbit comms satellites."

78.     DeVaul created a spreadsheet entitled "Geographic investigation – how may balloons would it take?" and proposed ███████████ to cover the San Francisco Bay Area.

79.     DeVaul proposed a cost ███████████ in the ballpark of the ████████ ███ figure found in the Space Data Wiki.

80.     DeVaul conceded that thermal management created serious challenges for stratospheric ballooning.

81.     Loon enhanced heat dissipation with conductive paths that carry heat from circuit boards to ████████.

82.     In August 2011, Josh Weaver ("Weaver"), Mr. DeVaul's colleague, wrote to Defendants' engineers, asking them to share "lessons learned" from the 2008 "venture" with Space Data.

83.     Weaver communicated about Space Data with Gossett and other employees of Defendants involved with Space Data in 2008.

84.     Weaver admitted that he "d[i]d not know" to what extent Space Data technical information bled into Project Daedalus (prior name for Loon).

18

85.     The Wiki contained Space Data's confidential financial information, including financial statements and the ████████████ figure.

86.     Defendants' X's balloon project eventually became known as "Project Loon" or "Loon."

87.     Loon flies balloons together using ambient winds to provide coverage.

88.     For Daedalus flights, Defendants analyzed (and still analyzes) ████████████ ████████████

89.     For Daedalus flights, Defendants ████████████ and still currently tracks and analyzes this data for Loon.

90.     Loon launched its first test balloon in late August 2011.

91.     Defendants decided not to go forward with the Space Data acquisition for reasons having nothing to do with the spectrum bid results.

92.     Employees of Defendants took dozens of photographs during the tour, many now missing.

93.     Defendants purport to have preserved only a subset of the photographs Defendants took during the February 15, 2008 tour of Space Data's facility and operations ("the Tour").

94.     Defendants had access to Space Data's wind data, thermal management, and NOC trade secrets by virtue of the Tour and preceding discussions.

95.     Defendants photographed wind data at operational altitudes displayed during the Tour.

96.     Gossett and Page's purported "ideas" were based at least in part on Space Data's ability "[t]o fly ████████████ ."

97.     Defendants used Space Data's ████████████ conclusion (ECF 408-5) in developing Loon.

98.     Defendants incorporated Space Data's ████████████ technique into its technology, which it now uses on six payload components.

99.     DeVaul accessed and used Space Data's confidential information in and around June or July 2011, via the wiki page, Thrun, other employees of Defendants or some combination

19

thereof.

100.   DeVaul had access to, and used, Space Data's wind data, thermal, NOC and ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ conclusions contained in the wiki combined with its surrounding wind data and altitude disclosures.

101.   Defendants improperly used Space Data's wind data, thermal, NOC and financial trade secret information.

102.   Customers, journalists and inventors did not have access to Space Data proprietary technology unless under an NDA.

103.   Throughout its history, Space Data carefully protected its proprietary technology.

104.   There is evidence that Defendants used Space Data's trade secrets in Loon development.

105.   Defendants did not independently develop the alleged trade secrets.

106.   Space Data's Confidential Information migrated to engineers working on Daedalus (later Loon) development.

107.   Loon first publicly announced Project Loon at a launch event in New Zealand on the morning of June 15, 2013 (New Zealand time; the corresponding time and date in California was the afternoon of June 14, 2013).

▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

109.   The '706 patent expires on April 18, 2022.

110.   The patent discloses systems and methods directed to flight termination and recovering lighter-than-air platforms.

111.   The Defendants' accused Loon systems infringe the asserted claims of the '706 patent (claims 1, 9, and 13).

112.   Defendants' engaged in a deliberate scheme to copy Space Data's inventions and technology.

113.   Defendants' misappropriation of Space Data's trade secrets was willful and malicious.

114.    Defendants were on notice that Space Data intended to assert the '706 patent against it since at least April 21, 2017, when Space Data sent Defendants the issue notification for the '706 patent.

115.    Given Space Data provided Defendants with the issue notification for the '706 patent prior to the patent's issuance, Defendants have known, or should have known, of the '706 patent's issuance since its May 9, 2017 issuance date.

116.    Following the issuance of the '706 patent, Defendants continued to, and still continue to, make, use, import, offer to sell and/or sell instrumentalities that infringe the '706 patent, despite knowledge (or a willful blindness) that these actions, and others, constitute infringement of a valid patent.  Since notice, and since issuance, of the '706 patent, Defendants have ramped up, and continue to ramp up, their infringing activities.

117.    Defendants' infringement of the '706 patent was willful.

b.  **Google's Position.**

i.  **Trade Secrets Claims – DTSA and CUTSA**

In meet and confer discussions related to this joint pretrial statement, Space Data informed Google that, at this point, it continues to assert every one of the alleged trade secrets identified in Space Data's operative 2019.210 list except those identified in the Hover Algorithm category. Accordingly, for purposes of the list of disputed facts discussed below, the remaining asserted trade secrets are the following (collectively, "Trade Secrets"):





22











27



As to the Trade Secret claims, Google identifies the following disputed facts for trial:

1.   Whether and to what extent Defendants used or disclosed any of the Trade Secrets.

2.  Whether Space Data took reasonable steps to maintain the secrecy of the Trade Secrets.

3.  Whether and to what extent any of the Trade Secrets are publicly known.

4.  Whether and to what extent the Trade Secrets confer an actual or potential business advantage over others who do not know the Trade Secrets and who could obtain economic value from their disclosure or use.

5.  Whether and to what extent the Trade Secrets are, or would be, valuable to Space Data's competitors.

6.  Whether and to what extent the Trade Secrets were readily ascertainable by proper means.

7.  What amount of effort or money Space Data expended in developing each Trade Secret.

8.  Whether Space Data's alleged Trade Secrets derive independent economic value, actual or potential, from not being generally known to the public or to other persons who could obtain economic value from their disclosure or use.

9.  Whether Space Data discovered, or with reasonable diligence could have discovered, that Defendants were engaged in actions that Space Data contends constituted the misappropriation of Space Data's supposed Trade Secrets before June 13, 2013.

10. Whether Defendants knew the asserted Trade Secrets before supposedly receiving them from Space Data.

11. Whether Defendants independently developed the asserted Confidential Information.

12. Whether the asserted Confidential Information is generally known to the public.

13. For the DTSA claim, whether Defendants misappropriated Space Data's alleged Trade Secrets on or after May 11, 2016.

14. Whether Space Data unreasonably delayed in bringing this action after learning of Project Loon and its alleged use of Space Data's purported Trade Secrets.

15. Whether Space Data delayed for three years or more after the alleged Trade Secret misappropriation was discovered or by the exercise of reasonable diligence should

29

have been discovered.

16. If Defendants misappropriated Space Data's alleged Trade Secrets, the amount adequate to compensate Space Data for Defendants' misappropriation.

17. What, if any, steps Space Data took, or reasonably and appropriately could have taken, to mitigate the damages it claims to have incurred based on its alleged trade secret misappropriation.

### ii.  Breach of Contract Claim

18. Whether Defendants breached the NDA by using or disclosing Space Data's Confidential Information.

19. Whether Space Data failed to designate any asserted confidential information as "Confidential Information" under § 3 of the NDA.

20. Whether Defendants' actions are covered by § 4 of the NDA.

21. Whether Defendants' actions are covered by § 5 of the NDA.

22. Whether Defendants' actions are authorized under § 8 of the NDA.

23. Whether Defendants' obligations under the NDA have expired pursuant to § 7 of the NDA.

24. Whether Defendants used the same degree of care with the alleged Confidential Information as they use with their own confidential information.

25. If Defendants breached the NDA by using or disclosing Space Data's Confidential Information, the amount adequate to compensate Space Data for Defendants' use or disclosure.

26. Whether Space Data unreasonably delayed in bringing this action after learning of Project Loon and its alleged use of Space Data's purported Trade Secrets and Confidential Information.

### iii.  Infringement and Invalidity of the '706 Patent

27. Whether Defendants did and/or continue to infringe the asserted claims of the '706 patent.

28. What the scope and content of the relevant prior art is.

29. What differences, if any, exist between the invention claimed in the asserted claims of '706 patent and the prior art.

30. What the level of ordinary skill in the art related to the '706 patent is.

31. Whether the asserted claims of the '706 patent are enabled.

32. Whether the asserted claims of the '706 patent are supported by the patent specification.

33. Whether Defendants have known, or should have known, of the '706 patent's issuance since its May 9, 2017 issuance date.

## III.   **DISPUTED LEGAL ISSUES.**

The Parties list below "disputed legal issues" proposed by either side.  The Parties have included both questions of law and questions of equity.  The Parties do not necessarily agree (and each side reserves its right to dispute) that all such "disputes" are relevant to this case and/or have been preserved.

1.     The meaning of Sections 3, 4, 7, and 8 of the NDA:

i)     Whether pursuant to § 7 of the NDA, which states that, "[u]nless the Parties otherwise agree in writing, a Recipient's duty to protect Confidential Information expires three (3) years from the date of disclosure," Google's obligations to protect Space Data's Confidential Information expired three years after disclosure (*i.e.*, no later than February 2011).  Google contends that its obligation did expire in February 2011;

ii)     Whether under the NDA, and particularly in § 4 and § 7, there are separate duties (a) to protect, and (b) not to use Space Data Confidential Information.  Google contends that the duties are one and the same and that there are no separate duties that extend beyond the three-year expiration of the duty to protect set forth in § 7 of the NDA; and

iii)     Whether Space Data's failure to request in writing prior to February 2011 that Google return or destroy the alleged confidential information means that Google had no obligation after that time not to disclose Space Data's purported confidential information.  Google contends that its obligations under the NDA expired in February 2011.

31

2.      Whether the '706 patent is invalid under 35 U.S.C. § 103 and/or enabled under 35 U.S.C. § 112.

3.      Whether Space Data is entitled to a permanent injunction for breach of contract (NDA).

4.      Whether Space Data's trade secret and breach of contract claims are barred by Defendants' equitable affirmative defenses.

5.      Whether Space Data is entitled to a permanent injunction for infringement of the '706 patent pursuant to 35 U.S.C. § 283.

6.      Whether Space Data is entitled to a permanent injunction for Defendants' misappropriation of Space Data's trade secrets pursuant to Cal. Civ. Code § 3426.2 and/or 18 U.S.C. § 1836(b)(3)(A), and if the Court determines that it would be unreasonable and/or inequitable to prohibit future use, what reasonable royalty future use should be conditioned on.

7.      Whether Space Data is entitled to a judgment and order that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Plaintiff its costs and reasonable attorneys' fees.

8.      The Parties incorporate by reference the disputed legal issues raised in their respective motions *in limine*.

9.      The Parties also incorporate by reference the disputed facts listed in Section II above to the extent that they involve disputed legal or equitable issues and/or mixed questions of law or fact.

10.     The Parties continue to meet and confer on whether there are any other potential contract interpretation issues for the Court and on how contract interpretation issues should be brought to the Court for consideration.  The Parties may request leave to address this subject at the pre-trial conference.

## IV.   **ESTIMATE OF TRIAL TIME.**

Per the discussion in Section V.C, the parties agree that the issues of infringement and invalidity of the '706 patent should be tried to the Court.  The Parties disagree about the amount of time needed for the jury phase, the bench phase, and the total trial.

32

### A. **Space Data's Position:**

Space Data believes that each side should have approximately 20 hours of combined jury and bench trial time, excluding jury selection, jury instruction, and opening and closing statements, lasting from August 2, 2019 to August 16, 2019.  *See* Jul. 25, 2017, 9:45 a.m. Dkt. Entry.

While several patents are no longer part of the case, Space Data still has four claims pending: misappropriation under CUTSA; misappropriation under DTSA; breach of contract; and infringement of the '706 patent.  In addition, Defendants maintain their counterclaim for invalidity of the asserted '706 patent claims, and maintain several affirmative defenses.  With respect to these various claims and defenses, Space Data anticipates calling 16 witnesses live, while Defendants have identified 11 witnesses as witnesses they "expect to call," and another 19 witnesses (in addition to unspecified 30(b)(6) testimony) as "may call."  Even with the number of claims now reduced, the Parties will be hard pressed to put on their cases during the time currently set aside for trial.

As to the jury portion of the trial, Space anticipates, inclusive of jury selection, jury instruction, and opening and closing statements, that 6.5 of the 8 days (assuming Thursdays are dark) currently set aside are needed.  Space Data anticipates that the bench portion of the trial, *see* §V.C below, requires the remaining 1.5 days.

Space Data seeks no more than 45 minutes per side for opening statements and no more than one hour per side for closing statements.

### B. **Defendants' Position:**

With respect to the DTSA, CUTSA, and breach-of-contract claims, Defendants propose that each side should have 12 hours of jury trial time, excluding opening and closing statements, and that trial should last 5 days.  Such limits are both realistic and practical because evidence related to the DTSA, CUTSA, and breach-of-contract claims almost entirely overlaps.  This time limit should also help to focus the case in a way that Space Data has, to date, been unwilling to do.  Rather, as discussed above, Space Data continues to assert 22 remaining Trade Secrets.

With respect to the bench trial on the '706 patent, Defendants do not see a substantive

difference between the different proposals.  Defendants also anticipate approximately 1.5 days for the bench trial, which Defendants estimate equates to approximately 4 hours per side.  Defendants believe that a separate short opening and closing for the bench trial might also be helpful to the Court, but defer to the Court's preferences on the issue.

Defendants propose that each side have half an hour for opening statements and one hour for closing statements.  In addition, to the extent there are disputes between the parties about the proper interpretation of the NDA, those issues will also have to be tried to the Court.

## V.   TRIAL ALTERNATIVES AND OPTIONS.

### A.   Settlement Discussions.

The Parties have engaged in settlement discussions, including a formal mediation on June 4, 2019, which have been unsuccessful.  Further negotiations are not likely to be productive at this time.

### B.   Amendments or Dismissals.

The Parties intend to file a stipulation dismissing various counterclaims of Defendants. *See* §§ I.B.d above & VII.2. below.  The separately filed stipulated dismissal as to counterclaims and agreements in this Joint Pretrial Statement will moot affirmative defenses asserted in Space Data's answer.  *See* § I.B.d above. Neither party has any further proposed amendments to the pleadings or dismissal of Parties, claims, or defenses.

### C.   Bifurcation or Separate Trial of Issues.

The parties agree that '706 infringement and validity are to be decided by the Court. Certain equitable issues—requests for injunctive relief, the amount of any attorneys' fee awards, and Defendants' equitable affirmative defenses—relating to the trade secret misappropriation and breach of contract claims also should be decided by the Court.  The Parties agree that the bench trial on these issues should immediately follow the jury trial.

The Parties may request leave to address the timing of the submission of any proposed findings of fact and conclusions of law at the pre-trial conference.

## VI.   ADDITIONAL ISSUES.

### A.  Witnesses

The Parties agree that fact witnesses who are called live will be allowed to complete all testimony in one sitting, including a scope of cross-examination (or redirect, as the case may be) that exceeds the scope of the initial examination.

The Parties also agree that the Parties will not play deposition testimony taken of a witness in their personal capacity, except for purposes of impeachment, if that witness is called live at trial.

**B.  Trial Disclosure Procedures**

The Parties disagree about the proper procedure to govern the disclosure of witnesses, exhibits, deposition testimony, and demonstratives at trial, and the process for identifying any objections remaining between the Parties with regard to these disclosures:

**a.  Space Data's Proposed Procedures**

1. Space Data proposes the following procedure for governing the disclosure of witnesses, exhibits, deposition testimony, and demonstratives to use at trial and the process for identifying any objections remaining between the Parties with regard to these disclosures.  In Space Data's view, the procedure proposed by Defendants is too complex (and it is too rigid with respect to its fixed meet and confer time).  Space Data's proposed procedure is similar to that set forth by the Court at the pre-trial conference in *FiTeq, Inc. v. Venture Corp.*:

   a. At **7:00 PM** two days before each day of trial (except for Monday trial day), each party will exchange by email the following for that trial day:

      i.   A list of witnesses the party intends to call for direct examination;

      ii.  A list of trial exhibits for each witness it intends to present through direct examination;

      iii. Copies of any demonstratives to be used with the witness;

      iv.  A list of the deposition testimony it intends to introduce (either by video or through a reading of the transcript) other than for cross-examination (such testimony having been pre-identified and attached to an appendix to this Joint Pre-trial Statement) or impeachment purposes;

          v.       For Monday trial days, the Parties will exchange the above disclosures on Thursday at **6:00 PM**.

    b.  By **5:00 PM** the day before each day of trial (except for Monday trial days), each Party will submit to the Court any objections to the witnesses, exhibits, demonstratives and/or deposition testimony identified the day before by the other Party, which will be resolved the next morning in pre-trial arguments. The Parties further agree:

          i.       That objections will be made in briefs that are not to exceed 3 pages;

          ii.      That for Monday trial days, the Parties will file their objections by **5:00 PM** on the preceding Friday; and

          iii.     The Parties will make a good faith effort to engage in meet and confer discussions both before and after filing objection briefs

2. Copies of physical exhibits will be available for inspection by 10 a.m. the day before a party intends to use the physical exhibit at trial.  The Parties reserve the right to lodge objections related to the quality and accuracy of the exhibits upon inspection of the physical exhibits.

3. The Parties agree that prior to presentation of trade secrets or confidential information, the Parties shall meet and confer in good faith regarding whether sealing of the courtroom is required.

### b.  Defendants' Proposed Procedures

Defendants propose the following procedure to govern the disclosure of witnesses, exhibits, deposition testimony, and demonstratives to use at trial and the process to identify any objections remaining between the Parties with regard to these disclosures (which procedures involve a meet-and-confer requirement and were considered practical in the recent *Cisco v. Arista* trial):

1. At **7:00 PM** two days before each day of trial (*e.g.*, Sunday night for a Tuesday trial day), each party will exchange by email the following for that trial day:

    a.  A list of witnesses the party intends to call for direct examination;

      b.  A list of trial exhibits for each witness it intends to present through direct examination;

      c.  Copies of any demonstratives to be used with the witness;

      d.  A list of the deposition testimony it intends to introduce (either by video or through a reading of the transcript);

      e.  For Monday trial days, the Parties will exchange the above disclosures on Friday.

2.  At **9:00 PM** that same day (*e.g.*, Sunday night for a Tuesday trial day), each party will meet and confer to discuss the witnesses, trial exhibits, and demonstratives.

3.  By **5:00 PM** the day before a witness testifies (*e.g.*, Monday night for a Tuesday trial day), the Parties will submit to the Court any objections to exhibits, which will be resolved the next morning in pre-trial arguments.  The Parties further agree:

      a.  Not to file exhibit objection briefs on Sundays;

      b.  When a stipulated deadline otherwise requires a Sunday filing day, the parties will submit objection briefs on Saturday; and

      c.  That any objections to exhibits will be subject to a three-page limit.

Defendants propose the following procedure for deposition designations, counter-designations, and objections to depositions:

1.  At **7:00 PM** four days before each trial day (*e.g.*, Friday before a Tuesday trial day), the party seeking to present a witness by deposition on that trial day shall provide final deposition designations for that witness;

2.  At **7:00 PM** three days before each trial day (*e.g.*, Saturday before a Tuesday trial day), each party will exchange counter-designations for the witness being presented by deposition;

3.  The Parties will meet and confer as needed; and

4.  By **5:00 PM** two days before each trial day (*e.g.* Sunday before a Tuesday trial day), the Parties will file deposition designations, counter-designations, and any remaining objections.

Defendants propose that copies of physical exhibits be available for inspection 48 hours before a party intends to use the physical exhibit at trial.  Defendants reserve the right to lodge objections related to the quality and accuracy of the exhibits upon inspection of the physical exhibits.

In addition, Defendants propose the following procedure for the exchange of demonstratives to be used during opening statements and closing arguments:

1.  The Parties will exchange demonstratives to be used during opening statements and closing arguments by **5:00 PM** the day before the trial day they will be used, and will participate in a meet-and-confer at **8:00 PM** that day regarding any objections to those demonstratives.

2.  The Parties agree that prior to presentation of trade secrets or confidential information, the Parties shall meet and confer in good faith regarding whether sealing of the courtroom is required.

**C.  <u>Lodging of Certain Appendix Materials with the Court Electronically</u>**

Parts III.A.1 and III.B.1 of the Court's Standing Order re Civil Jury Trials provides for the filing of certain materials as appendices to this Joint Pretrial Statement.  Because of the volume of material of a confidential nature, the Parties will deliver a USB flash drive containing the following materials, with the Court's chambers copy of this Joint Pretrial Statement:

• Expert witness CVs and expert reports

• 2019 Statement

• Space Data's Written Discovery Response Excerpts and Defendants' Objections Thereto (Appendix D)

• Defendants' Written Discovery Response Excerpts and Space Data's Objections Thereto (Appendix E)

If the Court would prefer that these materials be filed, or lodged with the Court in a different manner, the Parties are happy to do so.

**D.  <u>Appendices</u>**

The Parties attach their following appendices:

38

| Appendix A | Space Data's Witness List |
|---|---|
| Appendix B | Defendants' Witness List |
| Appendix C-1 | Space Data's Exhibit List and Objections Thereto |
| Appendix C-2 | Defendants' Exhibit List and Objections Thereto |
| Appendix C-3 | Duplicates Exhibit List |
| Index D | Index of Space Data's List of Written Discovery Response Excerpts |
| Index E | Index of Defendants' List of Written Discovery Response Excerpts |
| Appendix F | Defendants' List of Deposition Designations and Space Data's Objections and Counter-designations Thereto |

Appendix C-3 is an initial duplicates exhibit list.  The Parties continue to work on identifying duplicative exhibits, and will supplement this list in the future.

## VII.   STIPULATIONS.

1.    The Parties agree to work together to narrow all objections, including the objections to exhibits, written discovery designations, and deposition testimony found in this Pretrial Statement.

2.    The Parties agree that Space Data has dropped claims 24 and 28 of the '706 patent.

3.    The Parties will separately file a stipulation dismissing without prejudice Defendants' Counterclaims 1, 2, 3, 4, 7, 8, and 9 as moot.

4.    The Parties agree that Defendants' Counterclaim 5 is moot as to all '706 patent claims except the asserted claims (claims 1, 9, and 13) as to the accused instrumentalities.  The Parties further agree that Defendants' Counterclaim 6 is moot as to all '706 patent claims except the asserted claims (claims 1, 9, and 13).

5.    The Parties also agree that Defendants withdraw their claim of unenforceability as to the '706 patent.

6.    The Parties also agree that Defendants withdraw their claims of invalidity based on 35 U.S.C. § 101 as to the '706 patent.

7.    The Parties also agree that Defendants withdraw their claims of invalidity based on improper inventorship as to the '706 patent.

8.    The Parties agree that fact witnesses will be excluded from the Court when not testifying, with the possible exception of a designated company representative.  The parties will further meet and confer once designated representatives have been identified.

39

9.      Except as to documents for which the Parties have already raised an authenticity objection, the Parties stipulate to the authenticity of each document that on its face appears to be from the regular files maintained by a party (Plaintiff or Defendants), including documents generated by its employees during the course of their employment for a party, and produced in this case by a party.  Also, except as to documents for which the Parties have already raised an authenticity objection, the Parties stipulate to the authenticity of each document that on its face appears to be generated by the U.S. Patent and Trademark Office and was produced by a party or was otherwise previously disclosed by a party in this action.

## VIII.   BINDING EFFECT OF THE JOINT PRETRIAL STATEMENT AND ORDER.

The foregoing admissions having been made by the Parties, and the Parties having specified the foregoing issues of fact and law remaining to be litigated, this Order shall supplement the pleadings and govern the course of trial of this action, unless modified to prevent manifest injustice.

Dated: June 14, 2019               Respectfully submitted,


                                   */s/ Spencer Hosie*_____
                                   Spencer Hosie

                                   Attorneys for Plaintiff and Counterclaim Defendant
                                   *SPACE DATA CORPORATION*


Dated: June 14, 2019               Respectfully submitted,


                                   */s/ Robert A. Van Nest*_____ _____
                                   Robert A. Van Nest

                                   Attorneys for Defendants and Cross-Complainants
                                   *ALPHABET INC., GOOGLE LLC, AND LOON, LLC*




Dated: _____     _____
                                   Honorable Beth Labson Freeman
                                   UNITED STATES DISTRICT JUDGE

40

1
2

## **ATTESTATION CLAUSE**

3

In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all attorney signatories

4

hereto concur in this filing.

5

Dated: June 14, 2019                                  */s/ Spencer Hosie*_____

6                                                                                 Spencer Hosie

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

41