# EXHIBIT 40

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

```
 1           IN THE UNITED STATES DISTRICT COURT

 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                     SAN JOSE DIVISION

 4

 5   SPACE DATA CORPORATION,

 6               Plaintiff,
     vs.                          Case No. 5:16-cv-03260-BLF
 7
     ALPHABET INC., and GOOGLE,
 8   LLC,

 9               Defendants.
     _____/
10

11

12

13

14

15      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

16                 UNDER PROTECTIVE ORDER

17      Videotaped DEPOSITION OF DANIEL INGBERMAN

18                   January 24, 2019

19

20

21

22

23

24   KAYLA KNOWLES, 14071.
     446952
25
```

SINCE 1972

BARKLEY
Court Reporters
barkley.com

(310) 207-8000 Los Angeles     (415) 433-5777 San Francisco   (949) 955-0400 Irvine        (858) 455-5444 San Diego
(310) 207-8000 Century City    (408) 885-0550 San Jose        (760) 322-2240 Palm Springs  (800) 222-1231 Carlsbad
(916) 922-5777 Sacramento      (800) 222-1231 Martinez        (702) 366-0500 Las Vegas     (800) 222-1231 Monterey
(951) 686-0606 Riverside       (818) 702-0202 Woodland Hills  (702) 366-0500 Henderson     (516) 277-9494 Garden City
(212) 808-8500 New York City   (347) 821-4611 Brooklyn        (518) 490-1910 Albany        (914) 510-9110 White Plains
(312) 379-5566 Chicago         00+1+800 222 1231 Paris        00+1+800 222 1231 Dubai      001+1+800 222 1231 Hong Kong

```
10:25  1   order.
10:25  2              (Exhibit No. 414 marked for
10:25  3              identification.)
10:25  4   BY MR. HOSIE:
10:25  5   Q      Handing you what's been marked as 414.  Please
10:25  6   take a minute and look at this.
10:25  7              MR. HOSIE:  For the record, I'll identify this as
10:25  8   a document Google produced.  Google identified the
10:25  9   custodian as Cliff Biffle, B-I-F-F-L-E, the author as
10:25 10   Richard DeVaul, and the -- the creation date is July 28,
10:25 11   2011.
10:25 12              MR. WERDEGAR:  Objection.  Assumes facts.
10:25 13              MR. HOSIE:  Counsel, it's from your production of
10:25 14   metadata; so if you're telling me you mischaracterized
10:26 15   this document, please tell me now.
10:26 16              MR. WERDEGAR:  Counsel, I'm just saying, you
10:26 17   know, you're not testifying here today; so the witness
10:26 18   need not accept what you tell him.
10:26 19   BY MR. HOSIE:
10:26 20   Q      Have you seen this before, sir?
10:26 21   A      You know, as I sit here today, I don't recall
10:26 22   every document that I reviewed.  If it's on my list, then
10:26 23   I saw it before.
10:26 24   Q      Thank you.  That's what I was going to say.
10:26 25              Is it safe for us to assume that all the
```

20

```
10:26  1   documents you reviewed or relied on in this case are
10:26  2   listed in your "materials considered" appendix to your
10:26  3   report?
10:26  4   A       It's my normal practice to do my best to list all
10:26  5   of the materials that I considered in formulating my
10:26  6   opinions in my Attachment C of my report, yes.
10:26  7   Q       And, conversely, it's fair for us to conclude
10:26  8   that, if a document isn't listed there, you didn't review
10:26  9   it.  Fair?
10:26 10   A       That -- that is the intent of Attachment C.
10:27 11   Q       You tried to make it complete; right?
10:27 12   A       I do try to make it comprehensive and complete.
10:27 13   Q       And you were careful about that, I'm sure?
10:27 14   A       I try to be careful.
10:27 15   Q       And you tried to careful in this particular
10:27 16   instance, I'm sure.
10:27 17   A       Of course.  I try to be careful every time I do
10:27 18   work.
10:27 19   Q       [REDACTED]
           [REDACTED]
           [REDACTED]
           [REDACTED]
           [REDACTED]
           [REDACTED]
10:27 25           MR. WERDEGAR:  Objection.  Assumes facts.  Lacks
```

21

```
10:27  1   foundation.
10:27  2              THE WITNESS:  So I -- you said this is something
10:27  3   that DeVaul created?
10:27  4   BY MR. HOSIE:
10:27  5   Q      You bet.
10:27  6   A      Okay.  And -- well, I'm willing to accept your
10:28  7   representation, and on that basis, it appears that a
10:28  8   ███████████████████████████████████████████████████████
       ██ ██ ████████████████
10:28 10   Q      Now, where did DeVaul get that information?
10:28 11              MR. WERDEGAR:  Objection.  Lacks foundation.
10:28 12   Assumes facts.
10:28 13              THE WITNESS:  You know, I don't know where this
10:28 14   information came from or how it was developed.
10:28 15   BY MR. HOSIE:
10:28 16   Q      ████████████████████  █████████████████████████
       ██ ██ ██████████████████████████████████████████████████████
       ██ ██ ██████████████████████████████████  ████████████
       ██ ██ ██████████████████
10:28 20              MR. WERDEGAR:  Objection.  Assumes fact.  Lacks
10:28 21   foundation.  Calls for speculation.
10:28 22              THE WITNESS:  You know, I am not familiar with
10:28 23   the -- how this document came to be, and so I don't know
10:28 24   what information he may have used or what calculations or
10:29 25   simulations or analysis was performed to generate this
```

DANIEL INGBERMAN - ATTORNEYS' EYES ONLY

BARKLEY
Court Reporters

```
10:29  1   document.
10:29  2   BY MR. HOSIE:
10:29  3   Q    ████████████████████████████████████████
       ████ ████████████████████████
10:29  5        MR. WERDEGAR:  Objection.  Lacks foundation.
10:29  6        THE WITNESS:  You know, as I just testified, I
10:29  7   don't know what work he put -- that was put into
10:29  8   generating this document, nor do I know the extent to
10:29  9   which this document was ever used by Loon, nor do I know
10:29 10   the extent to which it's provided any value to Loon.  It's
10:29 11   just a document you gave me with some numbers in it, but I
10:29 12   don't know the genesis or source of it or how it came to
10:29 13   be -- came about or whether it was ever used by anyone in
10:29 14   any -- any means.
10:29 15   BY MR. HOSIE:
10:29 16   Q    ████████████████████  ████████████████████████
       ████ ██████████████████████████████████████████████
       ████ ████████████████████████████████████
       ████ ██████████  ██████████████████████████████████
       ████ ████████  ████████████████████████████████
       ████ ██████████████████████████████
       ████        ██████████████████████████████████████
       ████ ██████████████████████████████████████
10:30 24        MR. WERDEGAR:  Objection.  Argumentative.
10:30 25   Assumes facts.  Misstates the record.
```

23

```
10:30  1   BY MR. HOSIE:
10:30  2   Q        Can you explain that to me, sir?
10:30  3            MR. WERDEGAR:  Asked and answered.
10:30  4   BY MR. HOSIE:
10:30  5   Q        Can you explain that to the jury?
10:30  6            THE WITNESS:  I'd be delighted.  Could you just
10:30  7   repeat the question again for me?
10:30  8   BY MR. HOSIE:
10:30  9   Q        [REDACTED]
           [REDACTED]
           [REDACTED]
           [REDACTED]
           [REDACTED]
           [REDACTED]
10:30 15            MR. WERDEGAR:  I am just going to object to all
10:30 16   the -- Counsel testifying.  Assuming facts.  Lacks
10:30 17   foundation.  Asked and answered.
10:30 18   BY MR. HOSIE:
10:30 19   Q        Explain that to the jury, if you would, sir.
10:31 20   A        That was not my assignment, and I did not try
10:31 21   to -- I really -- this is not something that I studied,
10:31 22   and so there are many different ways that people do their
10:31 23   work, and, you know, I'm not an expert in document
10:31 24   retention policies or in other related matters.
10:31 25            So, for example, you know, in my experience, some
```

24

DANIEL INGBERMAN - ATTORNEYS' EYES ONLY

BARKLEY Court Reporters

```
10:31  1   documents may be retained over time, and some may not be.
10:31  2   But, you know, I don't have any direct knowledge of -- as
10:31  3   I said and testified earlier, I don't have any direct
10:31  4   personal knowledge of how this document came about, what
10:31  5   were the inputs to the document, or the extent to which
10:31  6   Loon ever used these -- I don't know if they were
10:31  7   calculations or let's just call them numbers.  So, you
10:32  8   know, I really don't have anything else to add.
10:32  9   Q       So it's a long-winded -- long-winded way of
10:32 10   saying "I don't know"; right?
10:32 11   A       ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10:32 12           MR. WERDEGAR:  Argumentative.  Asked and
10:32 13   answered.
10:32 14   BY MR. HOSIE:
10:32 15   Q       Do you know, sir?  Yes or no?
10:32 16   A       I just answered the question.
10:32 17   Q       Do you know, sir?  Yes or no?
10:32 18           MR. WERDEGAR:  Objection.  Argumentative.  Asked
10:32 19   and answered.
10:32 20           THE WITNESS:  Do I -- do I know what?
10:32 21   BY MR. HOSIE:
10:32 22   Q       Do you know where DeVaul got this information?
10:32 23   Yes or no?
10:32 24           MR. WERDEGAR:  Asked and answered.
10:32 25           THE WITNESS:  I just explained my answer to that.
```

25

```
10:32  1   I have no knowledge of whether -- who this -- created this
10:32  2   document other than your representation.  I have no
10:32  3   knowledge of where the document came from, and I have no
10:32  4   knowledge of what work went into the document, how
10:32  5   whatever numbers here were arrived at, whether there was
10:32  6   analysis, guesses, anything else that were generated.  And
10:32  7   I don't know whether -- I have no reason to believe that
10:33  8   this information was ever used by Loon in any way.
10:33  9   BY MR. HOSIE:
10:33 10   Q        Do you know, one way or the other, whether this
10:33 11   information was used by Loon?
10:33 12   A        ███████████████████████████████████████████
           ███████████████████████████████████████████████████████
           ███████████████████████████████████████████████████████
           ███████████████████████████████████████████████████████
           ██████████████████████████████████████████████
           ███████████████████████████████████████████████████████
           ███████████████████████████████████████████████
           ███████████████████████████████████████████████████████
           ████
           █   ███████████████████████████████████████████████
           █████████████████████████████
10:33 23   A        Sorry.  What page are we on again?
10:33 24   Q        It's the third from the last -- third from the
10:34 25   back.
```

26

```
```

10:34  1   A        Sorry.  The print here is quite small.  So what
10:34  2   was the question again?
10:34  3   Q        [redacted] [redacted]
           [redacted] [redacted]
           [redacted] [redacted]
           [redacted] [redacted]
10:34  7            MR. WERDEGAR:  Objection.  Asked and answered.
10:34  8   Assumes facts.
10:34  9            THE WITNESS:  You know, I -- I think it would be
10:34 10   most efficient if I just make reference to my previous
10:34 11   answer because I don't really have anything to add or
10:34 12   subtract to that answer.
10:34 13   BY MR. HOSIE:
10:34 14   Q        Well, thank you, but I get to ask questions, and
10:34 15   I would ask you to answer them.  If you don't do it, we're
10:34 16   going to stop and have some judicial intervention.  Okay?
10:34 17   A        I'm --
10:34 18   Q        So I'm going to ask you again, sir.
10:34 19            Where did DeVaul get this figure?
10:34 20            MR. WERDEGAR:  Counsel, you don't need to badger
10:34 21   the witness.  You get to ask him questions, that's right.
10:34 22   You don't get to badger the witness.  He's asked and
10:34 23   answered the question repeatedly.
10:34 24   BY MR. HOSIE:
10:34 25   Q        [redacted]

27

```
10:34  1      ███████████████████████)
10:35  2              MR. WERDEGAR: Asked and answered. Assumes
10:35  3      facts. Lacks foundation.
10:35  4              THE WITNESS: Well, as I've already testified,
10:35  5      this -- I have no knowledge, other than your
10:35  6      representation, that this is a DeVaul document. I don't
10:35  7      have any knowledge of the inputs to this document, how it
10:35  8      was created, what calculations or data were used to make
10:35  9      this document, nor do I have any indication that Loon has
10:35 10      ever used this information.
10:35 11      ████████████████████████████████████████████████████████)
██) ██)████████████████████████████████████████████████████████)
██) ██)████████████████████████████████████████████████████████)
10:35 14      So my inference from what I do know and this document is
10:35 15      consistent with my belief as stated in -- was it footnote
10:35 16      47 that we were making reference to? What was the
10:35 17      footnote number you asked me about before, sir? 47, I
10:36 18      think.
10:36 19              MR. WERDEGAR: Yeah, it's 47.
10:36 20              THE WITNESS: Yes. So I think you've been asking
10:36 21      questions pertaining to this footnote. I don't really
10:36 22      have anything to add to what I have said.
10:36 23              Again, I believe that -- I don't have any reason
10:36 24      to believe that any information in this document was ever
10:36 25      used by Loon or provided with any particular value. I
```

```
10:36  1   don't know how the document was created.  I don't know
10:36  2   where the numbers came from, whether they were computed,
10:36  3   estimated, derived in some other way, and I think that's
10:36  4   all I -- I don't really have anything else to add to that.
10:36  5              MR. HOSIE:  Move to strike the entire answer as
10:36  6   nonresponsive except "I don't know where the numbers came
10:36  7   from."
10:36  8   BY MR. HOSIE:
10:36  9   Q       You don't know where the number came from; isn't
10:36 10   that right, sir?
10:36 11              MR. WERDEGAR:  Of course I oppose that motion.
10:36 12              Asked and answered.  Argumentative.  Asked and
10:36 13   answered repeatedly.
10:36 14              THE WITNESS:  What's the question then?
10:36 15   BY MR. HOSIE:
10:36 16   Q       You don't know where this number came from; isn't
10:36 17   that right, sir?
10:36 18              MR. WERDEGAR:  Asked and answered.
10:37 19              THE WITNESS:  I have just explained that several
10:37 20   times.  Do you want me to explain it again?
10:37 21   BY MR. HOSIE:
10:37 22   Q       You know, I'd actually like a simple answer to a
10:37 23   simple question.
10:37 24              Do you know where this number came from?  Yes,
10:37 25   no, or I don't know.
```

29

```
10:37   1   A        Well, as I just testified, I do not know where
10:37   2   any of this information came from.
10:37   3   Q        Thank you.
10:37   4            MR. WERDEGAR:  Allow the witness to finish
10:37   5   answering his questions, Counsel, please.  You don't get
10:37   6   to cut off the witness.
10:37   7   BY MR. HOSIE:
10:37   8   Q        ██████████████████████████████████████████████
            ██ ██ ████████████████████████████████████████████████
            ██ ██ ██████████████████████████████████████████████████
            ██ ██ ██████████████████
            ██ ██        ██████████:  Objection.  Lacks foundation.
10:37  13   Calls for speculation.  Assumes facts.  Misstates the
10:37  14   record.
10:37  15            THE WITNESS:  I don't have any recollection of
10:37  16   that one way or the other.
10:37  17   BY MR. HOSIE:
10:37  18   Q        ████████████████████████████████████████████
            ██ ██ ██████████████████████████████████████████████████
            ██ ██ ████████████████████████████████
10:37  21            MR. WERDEGAR:  Objection.  Lacks foundation.
10:37  22   Assumes facts.  Misstates the record.
10:37  23            THE WITNESS:  Well, as I said, the information
10:38  24   that I reviewed in preparing my report is contained in
10:38  25   Attachment C, and so if the -- if that is in Attachment C,
```

30

```
10:38  1    it's something I reviewed in connection to my report; and
10:38  2    if it's not, then it's not.
10:38  3    BY MR. ▮▮▮▮:
       4    Q    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
       5    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
       6    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10:38  7            MR. WERDEGAR:  Objection.  Lacks foundation.
10:38  8    Assumes facts.
10:38  9            THE WITNESS:  You know, again, if I -- if I've
10:38 10    seen it and considered it in formulating my opinion in
10:38 11    this matter, then it's listed in Attachment C.
10:38 12    BY MR. HOSIE:
10:38 13    Q    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
      14    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10:38 15            MR. WERDEGAR:  Objection.  Lacks foundation.
10:38 16    Assumes facts.  Mischaracterizes the record.
10:38 17            THE WITNESS:  Well, as I just explained, I don't
10:39 18    have any recollection, at this time, of the events that
10:39 19    you're talking about.  If they're -- the documents that
10:39 20    you described were things that I considered in my report,
10:39 21    then they're here in Attachment C.
10:39 22    BY MR. HOSIE:
10:39 23    Q    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
      24    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
      25    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
```

DANIEL INGBERMAN - ATTORNEYS' EYES ONLY

BARKLEY
Court Reporters

```
10:39  1         MR. WERDEGAR:  Objection.  Assumes facts.
10:39  2   Misstates the record.
10:39  3         THE WITNESS:  Well, as I just --
10:39  4         MR. WERDEGAR:  Lacks foundation.
10:39  5         THE WITNESS:  Well, as I just testified, I don't
10:39  6   know the provenance -- provenance of this document or
10:39  7   where the numbers were derived.
10:39  8   BY MR. ████:
       9   ███████████████████████████████████████████████████
      10   ██████████████████████████████████
      11   ████████████   ████████   █████████████
10:39 12         THE WITNESS:  Can you repeat the question,
10:40 13   please?
10:40 14   BY MR. HOSIE:
10:40 15   Q      Are you aware that Mike Pearson uploaded notes to
10:40 16   the Space Data Wiki on January 19, 2008, sir?
10:40 17         MR. WERDEGAR:  Assumes facts.  Lacks foundation.
10:40 18         THE WITNESS:  Well, I'm not sure that that was a
10:40 19   particular fact that I focused on for the purposes of
10:40 20   formulating my opinion.
10:40 21   BY MR. HOSIE:
10:40 22   Q      █████████████████████████████████████████████
      23   ████████████████████████████████████████
      24   ████████████████████████████████████████
      25   ████████████   ████████   █████████████   █████
```

32

```
10:40   1    foundation.
10:40   2              THE WITNESS:  Can you repeat the question for me
10:40   3    again?
10:40   4    BY MR. HOSIE:
10:40   5    Q       Let me put it differently.
10:40   6    ████████████████████████████████████████████████████████
        7    ████████████████████████████████████████████████
        8    ████  ████████  ████████  ████████████  ██████
10:40   9    foundation.
10:40  10    ████████  ████████████████████████████████
       11    ████████████████████████████████████████████████████████
       12    ██████████████████  ████████████████████
       13    ████████████████████████████████████████████████████████
       14    ████████████████████████████████████████████████████████
       15    ████████████████████████████████████████████████████████
       16    ████████████
10:41  17    BY MR. HOSIE:
10:41  18    Q       What's the cost of a Space Data payload, sir?
10:41  19    That easily is ascertainable, in your view?
10:41  20             MR. WERDEGAR:  Objection.  Compound.  Vague.
10:41  21    BY MR. HOSIE:
10:41  22    Q       I'll rephrase.
10:41  23             In 2008, what's the cost of a Space Data payload,
10:41  24    please?
10:41  25    A       I don't recall, as I sit here today.
```

33

```
10:41  1   Q        Give me your best sense.
10:41  2            MR. WERDEGAR:  Objection.  Asked and answered.
10:41  3            THE WITNESS:  It's not a number that I've
10:41  4   committed to memory.  We could review the Stifel
10:41  5   presentation if we wanted to learn that sort of
10:42  6   information.
10:42  7   BY MR. HOSIE:
10:42  8   Q        Is it 100 bucks? 1,000 bucks? 1 million bucks?
10:42  9   Give me your best sense, sir.
10:42 10            MR. WERDEGAR:  Objection.  Asked and answered.
10:42 11            THE WITNESS:  I don't recall, as sit here today.
10:42 12   BY MR. HOSIE:
10:42 13   Q        All right, sir.  Who is Mike Pearson?
10:42 14   A        I don't recall who Mike Pearson is, as I sit here
10:42 15   today.
10:42 16   Q        Do you know the name Ella Beres, B-E-R-E-S?  I
10:42 17   mentioned her once before.
10:42 18            MR. WERDEGAR:  Objection.  Asked and answered.
10:42 19            THE WITNESS:  Well, there's a lot of names in
10:42 20   this case, and a lot of names have been mentioned in the
10:42 21   depositions.  As you could see, I reviewed quite a few
10:42 22   depositions.
10:42 23            But as I sit here today, I don't recall that
10:42 24   name.
10:42 25            MR. HOSIE:  Let me have this marked as our next
```

34

```
 1              DEPOSITION OFFICER'S CERTIFICATE
 2   STATE OF CALIFORNIA   )
                           ) ss.
 3   COUNTY OF SACRAMENTO  )
 4
 5
 6        I, Kayla Knowles, hereby certify:
 7        I am a duly qualified Certified Shorthand Reporter in
 8   the State of California, holder of Certificate Number
 9   14071 issued by the Court Reporters Board of California
10   and which is in full force and effect.  (Fed. R. Civ. P.
11   28(a)).
12        I am authorized to administer oaths or affirmations
13   pursuant to California Code of Civil Procedure, Section
14   2093(b) and, prior to being examined, the witness was
15   first duly sworn by me.  (Fed. R. Civ. P. 28(a),
16   30(f)(1)).
17        I am not a relative or employee or attorney or
18   counsel of any of the parties nor am I a relative or
19   employee of such attorney or counsel nor am I financially
20   interested in this action.  (Fed. R. Civ. P. 28).
21        I am the deposition officer that stenographically
22   recorded the testimony in the foregoing deposition and the
23   foregoing transcript is a true record of the testimony
24   given by the witness.  (Fed. R. Civ. P. 30(f)(1)).
25        Before completion of the deposition, review of the
```

```
 1  transcript [  ] was [XX] was not requested.  If requested,
 2  any changes made by the deponent (and provided to the
 3  reporter) during the period allowed are appended hereto.
 4  (Fed. R. Civ. P. 30(e)).
 5  Dated: FEBRUARY 13, 2019
 6
 7
 8
 9                                     _____
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

167