# EXHIBIT D

REDACTED VERSION OF DOCUMENT

SOUGHT TO BE SEALED

1  HOSIE RICE LLP
2  SPENCER HOSIE (CA Bar No. 101777)
   shosie@hosielaw.com
3  DIANE S. RICE (CA Bar No. 118303)
   drice@hosielaw.com
4  BRANDON C. MARTIN (CA Bar No.
   269624)
5  bmartin@hosielaw.com
   DARRELL R. ATKINSON
6  (CA Bar No. 280564)
   datkinson@hosielaw.com
7  FRANCESCA M. S. GERMINARIO (CA
   Bar No. 326208)
8  fgerminario@hosielaw.com
   600 Montgomery Street, 34th Floor
9  San Francisco, California 94111
   Telephone:  (415) 247-6000
10 Facsimile   (415) 247-6001
11

12 *Attorneys for Plaintiff*
   *SPACE DATA CORPORATION*
13

KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
MATTHEW M. WERDEGAR - # 200470
mwerdegar@keker.com
EUGENE M. PAIGE - # 202849
epaige@keker.com
MATTHIAS A. KAMBER - # 232147
mkamber@keker.com
RYAN K. WONG - # 267189
rwong@keker.com
LEAH PRANSKY - # 302246
lpransky@keker.com
SHAYNE HENRY - # 300188
shenry@keker.com
ANDREW S. BRUNS - # 315040
abruns@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:    415 397 7188

*Attorneys for Defendants*
*ALPHABET INC., GOOGLE LLC and*
*LOON LLC*

14

15    UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF CALIFORNIA
16         SAN JOSE DIVISION

17

18 SPACE DATA CORPORATION,          Case No. 5:16-cv-03260-BLF (NC)

19         Plaintiff,              **JOINT [PROPOSED] JURY
                                   INSTRUCTIONS**
20 v.
                                   Pre-Trial Conf: July 19, 2019
21 ALPHABET INC., GOOGLE LLC, and   Time: 9:00 a.m.
   LOON LLC,                        Courtroom:  3, Fifth Floor
22                                  Judge: Hon. Beth Labson Freeman
         Defendants.
23

24

25

26         REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1    Pursuant to Rule 51 of the Federal Rules of Civil Procedure and the Court's Standing

2    Order re Civil Jury Trials, Plaintiff and Counterclaim Defendant Space Data Corporation

3    ("Space Data") and Defendants and Counterclaimants Alphabet Inc., Google LLC, and Loon

4    LLC (collectively "Google") hereby submit the following Joint [Proposed] Jury Instructions,

5    which include Stipulated and Disputed Instructions, for the above-captioned matter.  The

6    parties have incorporated the *Model Civil Jury Instructions for the District Courts of the*

7    *Ninth Circuit*, 2017 Edition (*Last Updated Apr. 2019*) to the extent feasible and appropriate.

8    The parties have also incorporated the *Judicial Council of California Civil Jury Instructions*

9    *(as approved July and November 2018, and supplemented January 2019 and May 2019)*

10   ("CACI") to the extent feasible and appropriate.

11       These instructions are preliminary in nature.  The parties reserve the right to amend,

12   supplement, or request different jury instructions as appropriate to the circumstances as they

13   arise at trial.

14   Dated:  July 9, 2019                   HOSIE RICE LLP

15

16                                          By: */s/ Spencer Hosie*_____

17                                          SPENCER HOSIE

18                                          Attorneys for Plaintiff and Counterclaim Defendant
                                            *SPACE DATA CORPORATION*

19   Dated:  July 9, 2019                   KEKER, VAN NEST & PETERS LLP

20

21                                          By:  */s/ Robert A. Van Nest*_____

22                                          ROBERT A. VAN NEST

23                                          Attorneys for Defendants and Cross-Complainants
                                            *ALPHABET INC., GOOGLE LLC, AND LOON LLC*

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

**INDEX OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

1. **Duty of Jury (1.3)—Stipulated**

2. **Neutral Statement to the Jury—Disputed**

3. **Burden of Proof—Preponderance of the Evidence (1.6)—Stipulated**

4. **Burden of Proof—Clear and Convincing Evidence (1.7)—Stipulated**

5. **What is Evidence (1.9)—Stipulated**

6. **What is Not Evidence (1.10)—Stipulated**

7. **Confidentiality Designations Added by Attorneys—Disputed**

8. **Evidence for Limited Purpose (1.11)—Stipulated**

9. **Direct and Circumstantial Evidence (1.12)—Stipulated**

10. **Credibility of Witnesses (1.14)—Stipulated**

11. **Party Having Power to Produce Better Evidence (CACI 203) —Stipulated**

12. **Ruling on Objections (1.13)—Stipulated**

13. **Conduct of the Jury (1.15)—Stipulated**

14. **Publicity During Trial (1.16)—Stipulated**

15. **No Transcript Available to Jury (1.17)—Stipulated**

16. **Taking Notes (1.18)—Stipulated**

17. **Bench Conferences and Recesses (1.20)—Stipulated**

18. **Outline of Trial (1.21)—Stipulated**

**INDEX OF PROPOSED JURY INSTRUCTIONS**

1. **Stipulations of Fact (2.2)—Stipulated**

2. **Deposition in Lieu of Live Testimony (2.4)—Stipulated**

3. **Use of Interrogatories (2.11)—Stipulated**

4. **Use of Admissions of a Party (2.12)—Stipulated**

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1

## INDEX OF PROPOSED FINAL JURY INSTRUCTIONS

2
1. **Duty of Jury (1.4)—Stipulated**

3
2. **Burden of Proof—Preponderance of the Evidence (1.6)—Stipulated**

4
3. **Clear and Convincing Evidence (1.7)—Stipulated**

5
4. **Damages—Proof (5.1)—Stipulated**

6
5. **What is Evidence (1.9)—Stipulated**

7
6. **What is Not Evidence (1.10)—Stipulated**

8
7. **Evidence for Limited Purpose (1.11)—Stipulated**

9
8. **Direct and Circumstantial Evidence (1.12)—Stipulated**

10
9. **Credibility of Witnesses (1.14)—Stipulated**

11
10. **Impeachment Evidence—Witness (2.9)—Stipulated**

12
11. **Expert Opinion (2.13)—Stipulated**

13
12. **Conflicting Expert Testimony (CACI 221)—Stipulated**

14
13. **Judicial Notice (23)—Stipulated**

15
14. **Failure to Explain or Deny Evidence (CACI 205)—Stipulated**

16
15. **Party Having Power to Produce Better Evidence (CACI 203)—Stipulated**

17
16. **Charts and Summaries Not Received in Evidence (2.14)—Stipulated**

18
17. **Charts and Summaries in Evidence (2.15)—Stipulated**

19
18. **Corporations—Fair Treatment (4.1)—Stipulated**

20
19. **Liability of Corporation—Scope of Authority Not to Issue (4.2)—Stipulated**

21
20. **Breach of Contract—Introduction—Disputed**

22
21. **Breach of Contract—Breach/Essential Factual Elements—Disputed**

23
22. **Occurrence of a Condition Precedent—Disputed**

24
23. **Substantial Performance—Disputed**

25
24. **Expiration Clause—Disputed**

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**25. Introduction to Breach of Contract Damages (CACI 350)—Stipulated**

**26. Breach of Contract—Unjust Enrichment—Disputed**

**27. Misappropriation of Trade Secrets—Introduction—Disputed**

**28. Misappropriation of Trade Secrets—Essential Factual Elements – California Law—Disputed**

**29. Trade Secret Defined—California Law—Disputed**

**30. "Independent Economic Value" Explained—California Law (CACI 4412)—Stipulated**

**31. Misappropriation By Use—Disputed**

**32. Misappropriation By Disclosure—California Law—Disputed**

**33. Readily Ascertainable by Proper Means——Disputed**

**34. Defend Trade Secret Act—Introduction—Disputed**

**35. Elements of Trade Secret Misappropriation—Federal Law—Disputed**

**36. Trade Secret Defined—Federal Law—Disputed**

**37. Misappropriation—Federal Law—Disputed**

**38. Defend Trade Secret Act—Date of Enactment—Disputed**

**39. Secrecy Requirement—Disputed**

**40. Reasonable Efforts to Protect Secrecy——Disputed**

**41. Independent Development—Disputed**

**42. Differing Products, Non-Commercial Use, and Improvements / General Similarities Insufficient—Disputed**

**43. Combination Trade Secrets——Disputed**

**44. Misappropriation—Statue of Limitations (CACI4421)—Stipulated**

**45. Remedies for Misappropriation of Trade Secret (CACI 4409)—Stipulated**

**46. Misappropriation Unjust Enrichment (CACI 4410)—Stipulated**

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**47. Exemplary / Punitive Damages for Willful and Malicious Misappropriation—Disputed**

**48. Prejudgment Interest—Disputed**

**49. Evidence in Electronic Format (2.16)—Stipulated**

**50. Duty to Deliberate (3.1)—Stipulated**

**51. Consideration of the Evidence—Conduct of the Jury (3.2)—Stipulated**

**52. Communication With Court (3.3)—Stipulated**

**53. Return of Verdict (3.5)—Stipulated**

**STIPULATED PRELIMINARY INSTRUCTION NO. 1 RE**
**DUTY OF JURY**

Members of the Jury: You are now the jury in this case.  It is my duty to instruction you on the law.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions.  It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.


**Authority**: Manual of Model Civil Instructions for the District Courts of the Ninth Circuit § 1.3.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

## DISPUTED PRELIMINARY INSTRUCTION NO. 2 RE
## NEUTRAL STATEMENT TO THE JURY OFFERED BY SPACE DATA

This case involves technology providing wireless communications and connectivity to users on the ground from an array of balloons floating in the stratosphere, about twice as high as commercial jets fly.  The Plaintiff is Space Data Corporation.  The Defendants are Alphabet, Inc., Google LLC, and Loon LLC, which I will collectively refer to as Google. Space Data claims that Google breached a contract between the parties, an agreement called the "Mutual Confidentiality and Non-Disclosure Agreement," or the "NDA."  Specifically, Space Data claims that it disclosed confidential technical and financial information to Google, and that Google subsequently misused this information to develop its own stratospheric balloon technology, now known as Loon.  Space Data has the burden of proving that Google misused Space Data confidential information.  Space Data also alleges that Google willfully misappropriated Space Data's trade secrets and seeks damages, including exemplary damages.  Space Data has the burden of proving these claims, too.  Google denies that it breached the NDA or that it misappropriated any of Space Data's alleged trade secrets. Google also denies that Space Data's alleged trade secrets qualify for trade secret protection under California or Federal law.  Google has also raised various affirmative defenses, which Space Data denies.  Google has the burden of proving its affirmative defenses.

**Argument:** The parties' proposed neutral statements are very close.  The difference is Space Data's use of the phrase "an array of" in the first sentence.  This is a case about "an array of" balloons.  Space Data's complaint uses the word "array" dozens of times.  *See, e.g.*, ECF 434 (Fifth Amended Complaint) ¶ 11 ("Project Loon consists of an array of balloons …"), ¶ 12 ("In interviews after it launched Loon, several Google engineers explained that Google's great Loon epiphany was that one can choreograph a balloon array …"), ¶ 105 ("When the Google due diligence team arrived at the Space Data NOC … This was a real balloon array …"), ¶ 165 ("Space Data was flying a commercial array of balloons when Google's engineers inspected its NOC").  The use of that phrase appropriately orients the jury in a neutral way.

1    **Additional Authority**:  Adapted from the Manual of Model Civil Jury Instructions

2  for the District Courts of the Ninth Circuit § 1.5.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

## DISPUTED PRELIMINARY INSTRUCTION NO. 2 RE
## NEUTRAL STATEMENT TO THE JURY OFFERED BY GOOGLE

This case involves technology providing wireless communications and connectivity to users on the ground from balloons floating in the stratosphere, about twice as high as commercial jets fly.  The Plaintiff is Space Data Corporation.  The Defendants are Alphabet Inc., Google LLC, and Loon LLC, which I will collectively refer to as "Google."  Space Data claims that Google breached a contract between the parties, an agreement called the "Mutual Confidentiality and Non-Disclosure Agreement," or the "NDA."  Specifically, Space Data claims that it disclosed confidential technical and financial information to Google, and that Google subsequently misused this information to develop its own stratospheric balloon technology, now known as Loon.  Space Data has the burden of proving that Google misused Space Data confidential information.  Space Data also alleges that Google willfully misappropriated Space Data's trade secrets and seeks damages, including exemplary damages.  Space Data has the burden of proving these claims, too.  Google denies that it breached the NDA or that it misappropriated any of Space Data's alleged trade secrets.  Google also denies that Space Data's alleged trade secrets qualify for trade secret protection under California or federal law.  Google has also raised various affirmative defenses, which Space Data denies.  Google has the burden of proving its affirmative defenses.

**Authority**: Adapted from the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.5.

**Argument**: Google's and Space Data's proposals are very similar.  The only dispute is over Space Data's inclusion of the term "array of balloons" in the first sentence, which is intended to describe the technology at issue.  This term is far from neutral.  The term "array of balloons" is taken drawn from Space Data's second asserted trade secret (*i.e.*, the ███████████████, and reflects an attempt by Space Data to have the Court's imprimatur on its version of the facts: that Google uses one of Space Data's alleged trade secrets.  On that basis alone the Court should reject Space Data's proposal.  *See, e.g.*, *United States v. Davis*,

597 F.2d 1237, 1240 (9th Cir. 1979) ("A trial judge may refuse an instruction if its language gives undue emphasis to [one party's] version of the facts rather than being a statement of appropriate principles of [the] law for the jury to apply to the facts, or if it would tend to influence the jury towards accepting [one party's] version of the facts.").

In addition to lacking neutrality, the term "array of balloons" is also inaccurate (there is no evidence that Google operates an "array" of balloons or that either Google or Space Data even uses that terminology to describe their respective balloon communications systems) and unnecessary (because the term "array" is ambiguous and will mean nothing to the jury, the technology is more clearly explained without using that term).

Accordingly, the sentence should read that the technology at issue provides wireless communications to users on the ground "from balloons floating in the stratosphere."

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**STIPULATED PRELIMINARY INSTRUCTION NO. 3 RE
BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or affirmative defense by preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.6.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**STIPULATED PRELIMINARY INSTRUCTION NO. 4 RE
BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proof on any claim by clear and convincing evidence,

it means the party must present evidence that leaves you with a firm belief or conviction that

it is highly probable that the factual contentions of the claim are true.  This is a higher

standard of proof than proof by a preponderance of the evidence, but it does not require proof

beyond a reasonable doubt.

**Authority**: Manual of Model Civil Jury Instructions for the District Courts of the

Ninth Circuit § 1.7.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

## STIPULATED PRELIMINARY INSTRUCTION NO. 5 RE
## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.      The sworn testimony of any witness;

2.      The exhibits that are admitted into evidence;

3.      Any facts to which the lawyers have agreed and,

4.      Any facts that I may instruct you to accept as proved.


**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the

Ninth Circuit § 1.9.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

**STIPULATED PRELIMINARY INSTRUCTION NO. 6 RE**
**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)    Questions and objections by lawyers are not evidence. Questions that the lawyers ask, either to a witness or in rhetorical form, are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)    Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)    Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.


**Authority**: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.10.

**DISPUTED PRELIMINARY INSTRUCTION NO. 7 RE**
**CONFIDENTIALITY DESIGNATIONS ADDED BY ATTORNEYS DURING**
**LITIGATION OFFERED BY SPACE DATA**

You will notice that some of the exhibits in this case are marked "Confidential," "Proprietary," or with some other similar marking intended to denote the confidential or proprietary nature of a document. With the exception of the terms "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," these designations are part of the document, and you may consider them as evidence. For example, you may consider them in drawing inferences about the secrecy of the information contained in the documents and a party's efforts to comply with the NDA.

On the other hand, you must always disregard the designation "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." This term was added to documents by lawyers during the course of the litigation, and you may not draw any inferences about the secrecy or content of any of the exhibits from this designation.

Lawyers also added the term "CONFIDENTIAL" to documents during the course of the litigation, and made redactions (blacked-out text) to some documents. Where the lawyers did this to the document during the course of the litigation the designation or redaction must be disregarded and you may not draw any inferences about the secrecy or content of any of the exhibits from these designations or redactions.

However, when the term "Confidential" or a redaction was not added during the course of the litigation, then the term or redaction does constitute evidence, and you may consider the term "Confidential" or the redaction as evidence. For example, you may consider the term "Confidential" or a redaction in drawing inferences about the secrecy of the information contained in the documents and a party's efforts to comply with the NDA. To aid you in distinguishing between the instances where you may, and the instances where you may not, consider the term "Confidential" or a redaction, the "Confidential" designations and redactions you may consider will be highlighted in pink.

1   **Argument**:  Google's proposal that the parties remove the confidentiality stamps

2   appended under the Protective Order is unduly burdensome.  As Space Data is sure the Court

3   has gathered from the sealing requests in this case, a significant volume of documents listed

4   on the parties' exhibit lists would require redactions.  Google fails to explain how it intends

5   to automate this process.  There are far fewer documents with original confidentiality stamps

6   to highlight, which is what Space Data proposes.

7   As to Google's proposed instruction, it does not account for the fact that certain

8   documents bear original Space Data "confidential" markings (or equivalent, e.g.,

9   "proprietary," makings).  Given Google intends to argue that Space Data did not take

10  reasonable efforts to protect the secrecy of its information, *see* ECF 566 (Joint Pretrial

11  Statement) at 6:22-23, and that Space Data did not identify its information as confidential

12  under the NDA, *see id*. at 7:4-5 ("Defendants contend that Space Data failed to designate the

13  asserted Confidential Information as required under § 3 of the NDA"), it is critical that the

14  jury understand which markings it can consider, verses which markings it may ignore.  In

15  short, Google's instruction amounts to an instruction to ignore highly relevant evidence.  *See*

16  Fed. R. Evid. 401-402.  Space Data's instruction strikes the correct balance, explaining to the

17  jury what it may consider, and what it may ignore, while providing a clear way for the jury to

18  distinguish original markings from attorney added markings.  Space Data's instruction is

19  therefore not unduly prejudicial under Fed. R. Evid. 403.

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED PRELIMINARY JURY INSTRUCTION NO. 7 RE CONFIDENTIALITY DESIGNATIONS ADDED BY ATTORNEYS DURING LITIGATION OFFERED BY GOOGLE**

You may notice that some of the exhibits in this case are marked "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" on the bottom of the page. These designations look like this:

CONFIDENTIAL

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

You may also notice that some documents contain redactions, which appear as blacked-out text. You should disregard all of these confidentiality markers and redactions, which were added to the documents by lawyers in the course of this litigation and do not otherwise appear on the documents. You may not draw any inferences about the secrecy or content of any of the exhibits from these confidentiality designations or redactions.

**Authority**: Fed. R. Evid. 402, 403; BladeRoom Group Ltd. V. Facebook, Inc., No. 5:15-CV-01370-EJD, 2018 WL 1569703, at *5 (N.D. Cal. Mar. 30, 2018); In re Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig., No. 2:12-MD-02327, 2014 WL 505234, at *7 (S.D.W. Va. Feb. 5, 2014).

**Argument**: The case law is clear that "protective order confidentiality designations are irrelevant, and risk confusing and misleading the jury on the issue of whether Plaintiffs took reasonable steps to maintain the confidentiality of their trade secrets." *BladeRoom Group Ltd. V. Facebook, Inc.*, No. 5:15-CV-01370-EJD, 2018 WL 1569703, at *5 (N.D. Cal. Mar. 30, 2018); *accord In re Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-MD-02327, 2014 WL 505234, at *7 (S.D.W. Va. Feb. 5, 2014) ("Whether a party designates a document as confidential during the litigation process is absolutely irrelevant."). Accordingly, Google proposes that the parties remove the attorney-appended confidentiality designations from the trial exhibits. This is an automated process that counsel for Google has

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1    undertaken in other trade secret cases with very little difficulty.  However, if the Court is

2    disinclined to sanction that approach, Google alternatively proposes this short, concise, and

3    clear instruction that the jury should disregard attorney-appended confidentiality designations

4    and redactions in assessing the secrecy or efforts to maintain secrecy of trial exhibits.  In

5    response, Space Data proposes an overly long, repetitive, and confusing competing

6    instruction that should be rejected.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**STIPULATED PRELIMINARY INSTRUCTION NO. 8 RE
EVIDENCE FOR LIMITED PURPOSE**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.11.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

## STIPULATED PRELIMINARY INSTRUCTION NO. 9 RE
## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.  Circumstantial evidence is evidence.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

**Authority**: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.12; *PolyOne Corp. v. Lu*, No. 14 CV 10369, 2018 WL 4679577, at *11 (N.D. Ill. Sept. 28, 2018); *Bladeroom Grp. Ltd. v. Emerson Elec. Co.*, 331 F. Supp. 3d 977, 984 (N.D. Cal. 2018); *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 944 (N.D. Cal. 2007).

**STIPULATED PRELIMINARY INSTRUCTION NO. 10 RE CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.14.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

## STIPULATED PRELIMINARY INSTRUCTION NO. 11 RE
## PARTY HAVING POWER TO PRODUCE BETTER EVIDENCE

You may consider the ability to each party to provide evidence.  If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence.

**Authority:** CACI 203.

**STIPULATED PRELIMINARY INSTRUCTION NO. 12 RE
RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence for any purpose.

**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.13.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

## STIPULATED PRELIMINARY INSTRUCTION NO. 13 RE CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries,

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

Hosie Rice LLP
600 Montgomery Street, 34ᵗʰ Floor
San Francisco, CA 94111

searching the Internet or using other reference materials; and do not make

any investigation or in any other way try to learn about the case on your

own.  Do not visit or view any place discussed in this case, and do not use

Internet programs or other devices to search for or view any place

discussed during the trial.  Also, do not do any research about this case,

the law, or the people involved—including the parties, the witnesses or the

lawyers—until you have been excused as jurors.  If you happen to read or

hear anything touching on this case in the media, turn away and report it to

me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that

has been presented here in court.  Witnesses here in court take an oath to tell the truth, and

the accuracy of their testimony is tested through the trial process.  If you do any research or

investigation outside the courtroom, or gain any information through improper

communications, then your verdict may be influenced by inaccurate, incomplete or

misleading information that has not been tested by the trial process.  Each of the parties is

entitled to a fair trial by an impartial jury, and if you decide the case based on information

not presented in court, you will have denied the parties a fair trial.  Remember, you have

taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings,

and a mistrial could result that would require the entire trial process to start over.  If any juror

is exposed to any outside information, please notify the court immediately.

**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the

Ninth Circuit § 1.15.

**STIPULATED PRELIMINARY INSTRUCTION NO. 14 RE
PUBLICITY DURING TRIAL**

If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch or listen to any news media account or commentary about the case or anything to do with it.  The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies.  If any juror is exposed to any outside information, please notify me immediately.

**Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.16.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**STIPULATED PRELIMINARY INSTRUCTION NO. 15 RE**
**NO TRANSCRIPT AVAILABLE TO JURY**

I urge you to pay close attention to the testimony as it is given.  During deliberations you will not have a transcript of the trial testimony.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.17.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**STIPULATED PRELIMINARY INSTRUCTION NO. 16 RE
TAKING NOTES**

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  Do not let notetaking distract you.  When you leave, your notes should be left in the courtroom.  No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.


**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.18.

**STIPULATED PRELIMINARY INSTRUCTION NO. 17 RE
BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum.  I may not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.20.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1

## STIPULATED PRELIMINARY INSTRUCTION NO. 18 RE OUTLINE OF TRIAL

2

3        Trials proceed in the following way:  First, each side may make an opening

4 statement.  An opening statement is not evidence.  It is simply an outline to help you

5 understand what that party expects the evidence will show.  A party is not required to

6 make an opening statement.

7        Space Data will then present evidence, and counsel for Google may cross-examine.

8 Then, Google will present evidence, and counsel for Space Data may cross-examine.

9        After the evidence has been presented, I will instruct you on the law that applies to

10 the case and the attorneys will make closing arguments.

11        After that, you will go to the jury room to deliberate on your verdict.

12

13        **Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the

14 Ninth Circuit § 1.21.

<div style="writing-mode: vertical">Hosie Rice LLP<br>600 Montgomery Street, 34th Floor<br>San Francisco, CA 94111</div>

1

**STIPULATED INSTRUCTION NO. 1 RE
STIPULATIONS OF FACT**

2

The parties have agreed to certain facts that will be read to you.  You must therefore

3

treat these facts as having been proved.

4

5

**Note**: This instruction should be given when the stipulations of fact are presented to

6

the jury.

7

**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the

8

Ninth Circuit § 2.2.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

## STIPULATED INSTRUCTION NO. 2 RE
## DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition of [*witness*] was taken on [*date*].  Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]


**Note**: The bracketed sentence is to be used in the event deposition testimony is read to the jury, as opposed to played by video.  This instruction should be given the first time a deposition is played for or read to the jury.

**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.4.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

## STIPULATED INSTRUCTION NO. 3 RE
## USE OF INTERROGATORIES

Evidence may be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers have been given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**Note**: This instruction should be given the first time an interrogatory response is presented to the jury.

**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.11.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1

**STIPULATED INSTRUCTION NO. 4 RE
USE OF ADMISSIONS OF A PARTY**

2      Evidence may also be presented to you in the form of admissions to the truth of

3   certain facts.  These admissions were given in writing before the trial, in response to

4   requests that were submitted under established court procedures.  You must treat these

5   facts as having been proved.

6

7      **Note**: This instruction should be given the first time an admission is presented to the

8   jury.

9      **Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the

10   Ninth Circuit § 2.12.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**STIPULATED FINAL INSTRUCTION NO. 1 RE
DUTY OF JURY**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**Authority**: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.4.

1

### STIPULATED FINAL INSTRUCTION NO. 2 RE
### BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

2

When a party has the burden of proof on any claim or affirmative defense by a

3

preponderance of the evidence, it means you must be persuaded by the evidence that the

4

claim or affirmative defense is more probably true than not true.

5

You should base your decision on all of the evidence, regardless of which party

6

presented it.

7

8

**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the

9

Ninth Circuit § 1.6.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

**STIPULATED FINAL INSTRUCTION NO. 3 RE
CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim are true.  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.


**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.7.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

1

**STIPULATED FINAL INSTRUCTION NO. 4 RE
DAMAGES—PROOF**

2    It is the duty of the Court to instruct you about the measure of damages.  By

3  instructing you on damages, the Court does not mean to suggest for which party your verdict

4  should be rendered.

5    If you find for Space Data, you must determine Space Data's damages.  Space Data

6  has the burden of proving damages by a preponderance of the evidence.  Damages means the

7  amount of money that will reasonably and fairly compensate Space Data for any injury you

8  find was caused by Google's actions giving rise to liability.

9    It is for you to determine what damages, if any, have been proved.

10    Your award must be based upon evidence and not upon speculation, guesswork, or

11  conjecture.

12

13    **Authority**: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, No.
5.1.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**STIPULATED FINAL INSTRUCTION NO. 5 RE**
**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.      The sworn testimony of any witness;

2.      The exhibits which are received into evidence;

3.      Any facts to which the lawyers have agreed; and

4.      Any facts that I may instruct you to accept as proved.


**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the

Ninth Circuit § 1.9.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

## STIPULATED FINAL INSTRUCTION NO. 6 RE
## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.      Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence.  Questions that the lawyers ask, either to a witness or in rhetorical form, are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, sometimes testimony and exhibits are received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4.      Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.


**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.10.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1

## STIPULATED FINAL INSTRUCTION NO. 7 RE
## EVIDENCE FOR LIMITED PURPOSE

2

Some evidence was admitted for a limited purpose only.

3

You must consider it only for that limited purpose and for no other.

4

**Authority**: Manual of Model Civil Jury Instructions for the District Courts of the

5

Ninth Circuit § 1.11.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1

## STIPULATED FINAL INSTRUCTION NO. 8 RE
## DIRECT AND CIRCUMSTANTIAL EVIDENCE

2    Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact,

3  such as testimony by a witness about what that witness personally saw or heard or did.

4  Circumstantial evidence is proof of one or more facts from which you could find another

5  fact.  Circumstantial evidence is evidence.  You should consider both kinds of evidence.  The

6  law makes no distinction between the weight to be given to either direct or circumstantial

7  evidence.  It is for you to decide how much weight to give to any evidence.

8    By way of example, if you wake up in the morning and see that the sidewalk is wet,

9  you may find from that fact that it rained during the night.  However, other evidence, such as

10  a turned on garden hose, may provide a different explanation for the presence of water on the

11  sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial

12  evidence, you must consider all the evidence in the light of reason, experience, and common

13  sense.

14

15    **Authority:** Manual of Model Civil Jury Instructions for the District Courts of the

16  Ninth Circuit § 1.12; *PolyOne Corp. v. Lu*, No. 14 CV 10369, 2018 WL 4679577, at *11

17  (N.D. Ill. Sept. 28, 2018); *Bladeroom Grp. Ltd. v. Emerson Elec. Co.*, 331 F. Supp. 3d 977,

18  984 (N.D. Cal. 2018); *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp.

19  2d 938, 944 (N.D. Cal. 2007).

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

## STIPULATED FINAL INSTRUCTION NO. 9 RE
## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;

2. the witness's memory;

3. the witness's manner while testifying;

4. the witness's interest in the outcome of the case, if any;

5. the witness's bias or prejudice, if any;

6. whether other evidence contradicted the witness's testimony;

7. the reasonableness of the witness's testimony in light of all the evidence; and

8. any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Authority**: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 1.14.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

## STIPULATED FINAL INSTRUCTION NO. 10 RE
## IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness *[e.g., has been convicted of a crime, lied under oath on a prior occasion, etc.]* may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.


**Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.9.

## STIPULATED FINAL INSTRUCTION NO. 11 RE
## EXPERT OPINION

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Such opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**Authority**: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.13.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

## STIPULATED FINAL INSTRUCTION NO. 12 RE
## CONFLICTING EXPERT TESTIMONY

If the expert witnesses disagreed with one another, you should weigh each opinion against the others.  You should examine the reasons given for each opinion and the facts or other matters that each witness relied on.  You may also compare the experts' qualifications.


**Authority:** California Civil Jury Instruction § 221.

1

## STIPULATED FINAL INSTRUCTION NO. 13 RE
## JUDICIAL NOTICE

2      The court has decided to accept as proved the fact that *[state fact]*.  You must accept

3  this fact as true.

4

5      **Note**: To be read to the jury if a judicial notice request is granted.

6      **Authority**:  Manual of Model Civil Jury Instructions for the District Courts of the

7  Ninth Circuit § 23.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**STIPULATED FINAL INSTRUCTION NO. 14 RE**
**FAILURE TO EXPLAIN OR DENY EVIDENCE**

If a party failed to explain or deny evidence against it when it could reasonably be expected to have done so based on what it knew, you may consider its failure to explain or deny in evaluating that evidence.

It is up to you to decide the meaning and importance of the failure to explain or deny evidence against the party.

**Authority**: CACI 205.

## STIPULATED FINAL INSTRUCTION NO. 15 RE
## PARTY HAVING POWER TO PRODUCE BETTER EVIDENCE

You may consider the ability of each party to provide evidence.  If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence.

**Authority:** CACI 203.

**STIPULATED FINAL INSTRUCTION NO. 16 RE**
**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not received in evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.


**Authority:** Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.14.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**STIPULATED FINAL INSTRUCTION NO. 17**
**CHARTS AND SUMMARIES IN EVIDENCE**

Certain charts and summaries were received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.


**Note**: To be read to the jury if any charts or summaries were received into evidence.

**Authority**: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 2.15.

## STIPULATED FINAL INSTRUCTION NO. 18 RE CORPORATIONS—FAIR TREATMENT

All parties are equal before the law, and corporations are entitled to the same fair and conscientious consideration by you as any individual person would be.

**Authority**: Adapted from Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 4.1.

**STIPULATED FINAL INSTRUCTION NO. 19 RE**
**LIABILITY OF CORPORATION—SCOPE OF AUTHORITY NOT THE ISSUE**

Under the law, a corporation is considered to be a person.  It can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

**Authority**: Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 4.2.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 20 RE
BREACH OF CONTRACT—INTRODUCTION OFFERED BY SPACE DATA**

In these instructions I will refer to Defendants Alphabet Inc., Google LLC and Loon LLC collectively as "Google."

Space Data claims that it and Google entered into a contract called a "Mutual Confidentiality and Nondisclosure Agreement" (the "NDA").  The NDA is Trial Exhibit 192.

Space Data claims that Google breached this contract by using and/or disclosing information that Space Data claims was protected under the contract.

Space Data also claims that Google's breach of this contract caused harm to Space Data for which Google should pay.

Google denies that it breached the NDA by using and/or disclosing Space Data information.

**Argument:** Both sides proposals are adapted from **CACI 300**.  The dispute here is twofold:

Google's uses of the phrase "designated or identified as Confidential Information under the NDA" to describe Space Data's breach claims are unfairly prejudicial and confusing.  The jury decides whether SDC substantially performed under the NDA, even if it finds any non-compliance with Section 3 of the NDA.  *See* CACI 312 (model instruction on substantial performance).  This should come as no surprise to Google.  Space Data's Interrogatory No. 26 asked: "To the extent you contend that Space Data failed to substantially perform under the Mutual Confidentiality and Nondisclosure Agreement, describe in detail the bases for your contention."  On July 25, 2018 Google responded: "Space Data also failed to substantially perform its obligations under the Mutual Confidentiality and Nondisclosure Agreement by failing properly to designate information as Space Data Confidential Information that it is now claiming qualifies as confidential information and its trade secrets."  Space Data's proposed language: "that Space Data claims was protected under the contract," is neutral.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1       Paragraph 4 of Google's proposal does more than simply deny Space Data's claim—

2  it goes onto claim that Google is not liable if Space Data "subsequently disclosed" the

3  information to the public.  For the instruction to emphasis a particular defense is prejudicial.

4  Such a description is not supported by CACI 300, which only contemplates a denial of the

5  asserted claims: "[Name of defendant] denies [insert denial of any of the above claims]."

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 20 RE**
**BREACH OF CONTRACT—INTRODUCTION OFFERED BY GOOGLE**

Space Data claims that it and Google entered into a contract called a "Mutual Confidentiality and Nondisclosure Agreement" (the "NDA").

Space Data claims that Google breached this contract by using and/or disclosing information that Space Data designated or identified as Confidential Information under the NDA.

Space Data also claims that Google's breach of this contract caused harm to Space Data for which Google should pay.

Google denies that it breached the NDA by improperly using or disclosing any information that Space Data designated or identified as Confidential Information under the NDA.  Google also contends that any Confidential Information that Space Data subsequently disclosed to the public was no longer protected by the NDA.

**Authority**: CACI ("CACI") § 300.  This instruction is to be modified in accordance with the evidence presented at trial.

**Argument**: Google's proposal conforms to the model instruction, more accurately describes the facts and the claims in the case, and properly instructs the jury on the burden of proof.  Specifically, Space Data's breach of contract claim is based on its allegation that Google misused or disclosed information that was designated by Space Data as "Confidential Information" under the parties' NDA.  *See* Dkt. 434 ¶¶ 316-17 (Fifth Amended Compl.) ("Under the NDA Space Data disclosed '***Confidential Information***' to Defendants, including Space Data technical and financial information, know-how and trade secrets… Defendants breached the NDA by, among other things: (1) using Space Data ***Confidential Information*** to assess whether the Defendants should undertake their Google Loon Project business; (2) using Space Data ***Confidential Information*** in implementations of their Google Loon Project technology; (3) disclosing Space Data ***Confidential Information***; and (4) exercising ownership over Space Data ***Confidential Information***.")  But Space Data's proposed

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

instruction misleadingly suggests that Google's use or disclosure of *any* information—even information not designated as "Confidential"—breached the NDA.

In addition, Space Data's proposal incorrectly states that Google asserts "as an affirmative defense" that Space Data subsequently disclosed information designated as Confidential. This is not an affirmative defense.  Rather, under the parties' NDA, Google had no contractual obligations with respect to Confidential Information that Space Data subsequently disclosed to the public.  *See* Dkt. 434, Ex. A ("This Agreement imposes no obligation upon a Recipient with respect to Confidential Information that:… (b) is or becomes publicly available through no fault of the Recipient[.]").  Thus, if Space Data disclosed Confidential Information to the public, then Google had no obligations with respect to that information, and any use or disclosure would not be a breach of the NDA.  In short, Space Data has the burden to prove that Google breached the NDA; it is not Google's burden to prove that it did not breach.  In any event, the model instruction does not contemplate stating that the defendant has the burden with respect to any affirmative defense (and Space Data's proposed instruction does not include a parallel statement that Space Data has the burden to prove the breach of contract claim).

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 21 RE**
**BREACH OF CONTRACT—BREACH OFFERED BY SPACE DATA**

To recover damages from Google for breach of the NDA, Space Data must prove all of the following:

1. That Space Data did all, or substantially all, of the significant things that the contract required it to do;

2. That Google improperly used and/or disclosed Space Data's confidential information, and/or failed to protect Space Data's confidential information which includes, but is not limited to, Space Data's trade secrets.

3. That Space Data was harmed; and

4. That Google's breach of the NDA was a substantial factor in causing Space Data's harm.

**Argument:** Both sides proposals are adapted from **CACI 303**.  The dispute here is twofold:

First, Google's sub-paragraph 1 contradicts an undisputed factual stipulation contained in the parties' Joint Pretrial Statement (ECF 566).  The Joint Pretrial Statement's Undisputed Fact No. 5 reads as follows: "As memorialized as Exhibit A to the 5AC and Trial Exhibit 192, the Parties entered into a 'Mutual Confidentiality and Nondisclosure Agreement' effective December 1, 2007 (the 'NDA')."  *See id.* at 12; *see also id*. at 40 ("The forgoing admissions having been made by the Parties … this Order shall supplement the pleadings and govern the course of trial …")).  This fact having been stipulated to, it is no longer for the jury, and should not be included in this instruction.

Second, Space Data believes that the breach element should be specifically tailored to the circumstances of this case, i.e., that it should reference Space Data theories of breach (improper use, disclosure, failure to protect) in general terms.  If the Court disagrees, then Space Data contends that both the "failed to do something … required" and "did something … prohibited" CACI 303 language should be used, since some of the distinct duties set forth

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

in Section 4 of the NDA are susceptible to characterization as both requirements and prohibitions.  Take for example, the following Section 4 NDA language: "The Recipient shall hold in confidence … ," and "The Recipient … shall use such Confidential Information only for the purposes …."

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

### DISPUTED FINAL INSTRUCTION NO. 21 RE
### BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS OFFERED
### BY GOOGLE

To recover damages from Google for breach of contract, Space Data must prove all of the following:

(1) That Space Data and Google entered into a contract;

(2) That Space Data did all, or substantially all, of the significant things that the contract required it to do;

(3) That Google did something that the contract prohibited it from doing;

(4) That Space Data was harmed; and

(5) That Google's breach of contract was a substantial factor in causing Space Data's harm.

**Authority**: CACI § 303.

**Argument**: Google's proposal conforms to the model instruction, whereas Space Data's proposed version of the instruction diverges from the model.  Space Data's proposed instruction states that Google "improperly used and/or disclosed, and/or failed to protect Space Data's confidential information, which includes, but is not limited to, Space Data's trade secrets;" however, the model instruction does not contemplate explaining the prohibited conduct.  In addition, Space Data did not properly disclose a "failed to protect" theory of breach of contract.  *See* Dkt. 434 (Fifth Amend. Compl.) ¶ 316 ("Defendants breached the NDA by, among other things: (1) using Space Data Confidential Information to assess whether the Defendants should undertake their Google Loon Project business; (2) using Space Data Confidential Information in implementations of their Google Loon Project technology; (3) disclosing Space Data Confidential Information; and (4) exercising ownership over Space Data Confidential Information. Defendants' use, disclosure and exercise of ownership over Space Data Confidential Information violates at least Sections 4 and 8 of the NDA.").  And Space Data does not explain the distinction between its disclosure

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1    and failure-to-protect theories, both of which are based on the same underlying facts—that

2    Google posted information regarding Space Data on Google's internal wiki site.

3           Moreover, whether Space Data properly designated information "Confidential" under

4    the parties' NDA is a disputed factual issue for the jury to decide.  Likewise, whether Space

5    Data disclosed any trade-secret information to Google is also a disputed issue.  Space Data's

6    proposal improperly assumes that Space Data provided both confidential information and

7    trade secrets to Google.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 22 RE**
**OCCURRENCE OF CONDITION PRECEDENT OFFERED BY SPACE DATA**

The parties agreed in their NDA that Google would not have an obligation not to use or disclose information disclosed to Google by Space Data under the NDA unless Space Data identified or designated the information under the terms of the NDA.  Google contends that this condition did not occur and that it did not have an obligation not to use or disclose information provided under the NDA.  To overcome this contention, Space Data must prove that it identified or designated information under the NDA.

If Space Data does not prove that it identified or designated information under the NDA, then Google had no obligation not to use or disclose that particular information.

If Space Data identified or designated certain information, but not other information, then Google may still be found to have breached the NDA as to the information that Space Data did identify or designate.

**Argument**:  Both parties' proposals are based on **CACI 322**.  Google added a clause to its second sentence that is not found in CACI.  The clause reads "that Space Data did not properly identify or designante."  This clause is prejudicial, as it overly emphasizes the requirements set forth in Section 3 of the NDA.

The "as confidential" reference in Google's third sentence is also prejudicial, as it may cause the jury to view "confidential" as a magic word.  Space Data's proposal, which uses the phrase "under the NDA" is neutral language that accomplishes the same purpose.

Google's repeated use of the word "properly" is prejudicial, as it suggests that precise compliance is a necessity.  But, as explained below, the relevant issue is substantial compliance.  (It follows that Space Data does not make the concession attributed to it by Google in Google's argument below.)

Space Data's addition of its final paragraph is warranted by the facts of this case. There are four categories of trade secrets, plus other confidential information, and there are different procedures set forth in the NDA for different types of information.  *See* NDA, § 3 (ECF 434-1).  It needs to be made clear to the jury that it needs to assess whether each

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1  separate trade secret, for example, was identified/designated, and that a finding that one was

2  not, does not bar liability as to one that was.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 22 RE
OCCURRENCE OF AGREED CONDITION PRECEDENT OFFERED BY GOOGLE**

The parties agreed in their NDA that Google would not have an obligation not to use or disclose information disclosed to Google by Space Data unless Space Data properly identified or designated the information as confidential information under the terms of the NDA.  Google contends that this condition did not occur and that it did not have an obligation not to use or disclose information that Space Data did not properly identify or designate.  To overcome this contention, Space Data must prove that it properly identified or designated information as confidential.  If Space Data does not prove that it properly identified or designated information as confidential, then Google had no obligation not to use or disclose that particular information.

**Authority**: CACI § 322.

**Argument**: Google's proposal conforms to the model instruction.  As Space Data concedes, the NDA only imposed an obligation on Google with respect to information disclosed by Space Data *if* Space Data properly designated that information as confidential: "Information shall only be considered Confidential Information for the purpose of this Agreement (a) if it is clearly and conspicuously marked as "confidential" or with a similar designation; or (b) if it is identified as confidential and/or proprietary before, during, or promptly after presentation or communication by Discloser.  Information communicated orally shall only be considered Confidential Information if such information is designated as being confidential at the time of disclosure (or promptly thereafter) and is reduced to writing and confirmed to the Recipient as being Confidential Information within fifteen (15) days after the initial disclosure.")." Dkt 434-1 (NDA) ¶ 3.  In other words, the NDA set forth specific rules for how (and when) Space Data had to designate information in order for it to

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

be protected by the NDA.  Space Data's **_proper_** designation or identification of information

as confidential was therefore a condition precedent to Google's obligations with respect to

that information.  *See Stephens & Stephens XII, LLC v. Fireman's FundIns. Co.*,231

Cal.App.4th 1131, 1147 (2014) ("[A] 'condition precedent' is 'either an act of a party that

must be performed or an uncertain event that must happen before the contractual right

accrues or the contractual duty arises.'").  The NDA makes express that designation in a way

not prescribed by the NDA would not trigger Google's obligations under the NDA.  Space

Data argues that the jury should not be instructed that "proper" designation or identification

was required because it plans to argue that its failure to do so was excused by its alleged

substantial compliance.

Space Data's argument assumes the premise.  Before the jury is instructed on the

issue of substantial performance, if ever, the jury must first be accurately instructed on what

the condition precedent is.  Only then could Space Data argue that its failure to completely

satisfy the terms of the condition precedent was excused by its substantial performance.

Space Data's formulation of this instruction fails to fully explain to the jury the condition

precedent.

Specifically, Space Data agrees that the jury should be told that Space Data was

required to "identif[y] or designate[] the information under the terms of the NDA," but

argues that the jury should not be told that the information was to be identified or designated

**_as confidential_**.  Space Data's vague description of the condition precedent is thus confusing

and not helpful to the jury.

Finally, Space Data's final sentence is not included in the model instruction and is

unnecessary.  Google's version of this instruction already captures this concept by making

clear in the second sentence that "this condition did not occur and that it did not have an

obligation not to use or disclose **_information_** that Space Data did not properly identify or

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

designate."  In short, Google's instruction properly instructs the jury that Google was only free to use the information that was not properly identified or designated.

**DISPUTED FINAL INSTRUCTION NO. 23 RE
SUBSTANTIAL PERFORMANCE OFFERED BY SPACE DATA**

Google contends that Space Data did not perform all of the things that it was required to do under the contract, and therefore Google did not have to perform its obligations under the NDA. To overcome this contention, Space Data must prove both of the following:

1. That Space Data made a good faith effort to comply with the contract; and

2. That Google received essentially what the contract called for because Space Data's failures, if any, were so trivial or unimportant that they could have been easily fixed or paid for.

**Argument:** Space Data's proposed instruction tracks **CACI 312**.  CACI does not say that this instruction is relevant to contracts for work, much less only relevant to such contracts.  Further CACI list substantial performance in CACI 303, "Breach of Contract"— Essential Factual Elements," as does Google in its proposed instruction on breach of contract elements.  *See* above.  And, Google declined to stipulate to the substantial performance element of Space Data's breach of contract claim being satisfied.

Most perplexing is Google's instance that a condition precedent instruction should be given, but not a substantial performance instruction.  As the "Directions for Use" for CACI 303 makes clear, the substantial performance element comes into play precisely because a defendant contends a condition precedent was not met:

> Optional elements 2 [substantial performance] and 3 both involve conditions precedent.  A "condition precedent" is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises. (*Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.* (2014) 231 Cal.App.4th 1131, 1147 [180 Cal.Rptr.3d 683].) Element 2 involves the first kind of condition precedent; an act that must be performed by one party before the other is required to perform.

It is for the jury to decide whether any found non-compliance with Section 3 of the NDA was substantial, as CACI makes clear.  *See* CACI 300 ("materiality is generally a question of fact").  For example, a jury could very reasonably determine that a found failure to designate an oral communication that relayed information similar to a properly identified

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1   visual communication was trivial.  The same is true of documents containing similar

2   information where one is found to have been properly designated but not the other.

3          As explained above, Google itself contended that Space Data failed to substantially

4   perform by not complying with Section 3 of the NDA in responding to an interrogatory.  *See*

5   Space Data argument regarding Disputed Instruction No. 20.  Having identified this issue as

6   a substantial performance issue, Google cannot now be heard to argue against this

7   instruction.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

## DISPUTED FINAL JURY INSTRUCTION NO. 23 RE
## SUBSTANTIAL PERFORMANCE – OBJECTION BY GOOGLE

Google's position is that no such instruction should not be given.

**Argument**: Google objects to this instruction as unnecessary and improper. First, this instruction is relevant to contracts for work. *See Posner v. Grunwald-Marx, Inc.*, 56 Cal.2d 169, 186-87 (1961) ("At common law, recovery under a contract for work done was dependent upon a complete performance… The prevailing doctrine today, which finds its application chiefly in building contracts, is that substantial performance is sufficient[.]"). Second, the Directions for Use explain that this instruction should not be given where the defendant does not argue incomplete performance: "Do not give this instruction unless the defendant has testified or offered other evidence in support of his or her contention."  CACI 312, Directions for Use.  Google's defense does not rest on such evidence, as noted below.

Space Data argues in favor of giving this instruction because it intends to argue that, even if Space Data did not properly designate or identify materials as "Confidential" pursuant to the terms of the parties' NDA, Google was still obligated to treat those materials as "Confidential Information" because Space Data substantially performed under the contract (by, for example, properly designating *other* information as Confidential).  In fact, Google contends that, unless Space Data properly identified or designated material as Confidential pursuant to the terms of the NDA, Google never had obligations with respect to that material.  Dkt 434-1 (NDA) ¶ 3 ("Information shall only be considered Confidential Information for the purpose of this Agreement (a) if it is clearly and conspicuously marked as "confidential" or with a similar designation; or (b) if it is identified as confidential and/or proprietary before, during, or promptly after presentation or communication by Discloser.  Information communicated orally shall only be considered Confidential Information if such information is designated as being confidential at the time of disclosure (or promptly thereafter) and is reduced to writing and confirmed to the Recipient as being Confidential Information within fifteen (15) days after the initial disclosure.").

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 24 RE**
**EXPIRATION CLAUSE OFFERED BY GOOGLE**

Under the NDA, Google's duty to protect any "Confidential Information" disclosed by Space Data expired three years after the date of disclosure.  The NDA does not impose any restriction on any access, use, or disclosure of any of Space Data's Asserted Confidential Information by Google more than three years after the date of its disclosure to Google.

**Authority**: NDA § 7; *Parsons v. Bristol Development Co.*, 62 Cal.2d 861, 865 (1965); *Brawthen v. H & R Block, Inc.*, 28 Cal. App. 3d 132, n.1 (1972).

**Argument**: The parties agree that the meaning of the expiration clause in the NDA is a disputed legal issue.  *See* Dkt. 566 (Joint Pretrial Statement) § III. ¶ 1 (describing as a "Disputed Legal Issue" "Whether pursuant to § 7 of the NDA, which states that, "[u]nless the Parties otherwise agree in writing, a Recipient's duty to protect Confidential Information expires three (3) years from the date of disclosure," Google's obligations to protect Space Data's Confidential Information expired three years after disclosure[.]").  Because this is a disputed factual issue, the Court must interpret the NDA and instruct the jury on its meaning. *See Parsons v. Bristol Development Co.*, 62 Cal.2d 861, 865 (1965) (Interpretation of a contract is matter of law for the Court); *Brawthen v. H & R Block, Inc.*, 28 Cal. App. 3d 132, n.1 (1972) ("The interpretation of a contract, written or oral, is always a question of law for the court.").

Pursuant to Section 7 of the NDA, the parties expressly agreed that "[u]nless the Parties otherwise agree in writing, a Recipient's duty to protect Confidential Information expires three (3) years from the date of disclosure. A Recipient, upon Discloser's written request, will promptly return or destroy all Confidential Information received from the Discloser, together with all copies.")  Dkt. 434-1 (NDA).  It is undisputed that the parties did not agree in writing, or otherwise, to extend Google's obligations with respect to Space Data's Confidential Information past the initial three-year term.  It is also undisputed that Space Data did not request in writing, or otherwise, that Google destroy or return any

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1   Confidential Information.  Thus, Google's obligations with respect to Space Data's

2   Confidential information expired three years after the date of disclosure.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

## DISPUTED FINAL INSTRUCTION NO. 24 RE
## EXPIRATION CLAUSE OBJECTION BY SPACE DATA

Space Data objections to this instruction.  Google's instruction amounts to (incorrect) contact interpretation.  Absent a ruling from the Court as to the meaning of Section 7 of the NDA, any instruction as to the meaning of a contract provision is inappropriate.  The jury will read the NDA for itself.

To the extent the Court makes any contract interpretation ruling, then the issue of any appropriate instruction should be revisited.

As a reminder for the benefit of the Court, the dispute over the meaning of Section 7 of the NDA is not new.  It was raised in motion to dismiss briefing.  *See, e.g.*, Mot. to Dismiss (ECF 46) at 11:8-13; Opp. to Mot. to Dismiss (ECF 50) at 11-13.  Space Data contends that Section 4 of the NDA describes distinct duties—that, for example, the reference to "The Recipient … shall use … only for the purposes set forth above" is distinct from the reference to "The Recipient will use the same degree of care … to … protect the confidential information."  And, that the first sentence of Section 7, on its face, only applies to the duty to protect.  The first sentence of Section 7 reads: "Unless the Parties otherwise agree in writing, a Recipient's duty to protect Confidential Information expires three (3) years from the date of disclosure."  Google, on the other hand, contends that the first sentence of Section 7 applies to all duties imposed on Google by the NDA, including the duties related to use and disclosure of Space Data's Confidential Information.

Space Data understands that Google does not contend that the Court can or should address the meaning of Section 7 of the NDA as part of preparing the jury instructions, and that Google includes the instruction here under the assumptions that: (1) the Court will interrupt Section 7 at some point; and that (2) the Court will adopt Google's interpretation.

## STIPULATED FINAL INSTRUCTION NO. 25 RE
## INTRODUCTION TO BREACH OF CONTRACT DAMAGES

If you decide that Space Data has proved its claim against Google for breach of contract, you also must decide how much money will reasonably compensate Space Data for the harm caused by the breach.  This compensation is called "damages."  The purpose of such damages is to put Space Data in as good a position as it would have been if Google had performed as promised.

To recover damages for any harm, Space Data must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as result of the breach of the contract.

Space Data also must prove the amount of its damages according to the following instructions.  It does not have to prove the exact amount of damages.  You must not speculate or guess in awarding damages.

Space Data claims damages for unjust enrichment.


**Authority**:  CACI 350.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 26 RE
BREACH OF CONTRACT—UNJUST ENRICHMENT OFFERED BY SPACE DATA**

The doctrine of unjust enrichment is based on the idea that one person should not be able to unjustly enrich himself at the expense of another. The principle of unjust enrichment goes beyond merely restoring what a plaintiff actually lost. Where a benefit has been received by the defendant but the plaintiff has suffered no corresponding loss, the enrichment of the defendant may be unjust, and the defendant may be under a duty to give the plaintiff the amount by which the defendant has been enriched. The emphasis, therefore, is on the wrongdoer's enrichment, not the victim's loss. A person acting in conscious disregard of the rights of another should be required to disgorge all profit in order to benefit the injured party and deter the perpetrator from committing unlawful acts again. Principles of unjust enrichment, therefore, may compel a defendant to surrender all money or the value of all benefits obtained through an unfair business practice regardless of whether those amounts represent money taken directly from the victims of that unfair practice.

In order to prevail on its claim of unjust enrichment, Space Data must prove that:

1. Google received a benefit; and

2. That Google unjustly retained the benefit at Space Data's expense.

**Argument:** CACI does not contain an unjust enrichment instruction for breach of contract. Space Data derives its instruction from case law. *See County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 642 (2007); Restatement (First) of Restitution § 1, cmt. E; *Ghiardo v. Antonioli*, 14 Cal. 4th 39, 51 (Cal. 1996) ("Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another. A person is enriched if he receives a benefit at another's expense. The term 'benefit' 'denotes any form of advantage.' Thus, a benefit is conferred not only when one adds to the property of another, but also when one saves the other from expense or loss. Even when a person has received a benefit from another, he is required to make restitution 'only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it'") (citations omitted); *Cal. Fed. Bank v. Matreyek*, 8 Cal. App.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

4th 125, 132 (1992); *Ajaxo, Inc. v. E\*Trade Grp., Inc.*, 135 Cal. App. 4th 21, 56-57 (2005) ("Ajaxo conferred a benefit on E\*Trade by giving E\*Trade Ajaxo's trade secrets and proprietary information because, ultimately, E\*Trade received technology from Everypath that helped to keep it competitive.  Thus, E\*Trade was benefited by breaching the NDA.  Accordingly, Ajaxo must be 'compensated' for E\*Trade's breach of the NDA, i.e. by E\*Trade disgorging its unjust enrichment"); *AccuImage Diagnostics v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 958 (N.D. Cal. 2003) (citing *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723 (2000) ("To state a claim for unjust enrichment, plaintiff must allege: 1) receipt of a benefit, and 2) unjust retention of the benefit at the expense of another").

Google's instruction is derived from CACI's trade secret misappropriation unjust enrichment instruction.  However, Google's second paragraph is not from CACI, and it is unfairly prejudicial.  It gives the misimpression that the only benefit Google derived from using Space Data's Confidential Information came in the form of Space Data's research and development costs.  That is not the case.  Google was enriched in other ways, e.g., reduced development time.  *See* Meyer Rpt., ¶ 218 ("My calculation of unjust enrichment is conservative … I do not quantify nonmonetary benefits … such as reduction in the development time of Loon").  Accordingly, while Space Data's damages number is based on research and development costs, Space Data will argue that that number is conservative, as it fails to account for other benefits received by Google.

Further, Google's instruction uses the defined term "Confidential Information" without explanation.  If this term is used, it should be lower case.

Finally, Space Data's instruction is more helpful to the jury, as it elaborates on the concept of unjust enrichment.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 26 RE**
**BREACH OF CONTRACT—UNJUST ENRICHMENT OFFERED BY GOOGLE**

Google was unjustly enriched if its actions giving rise to liability caused Google to receive a benefit that it otherwise would not have achieved.

Space Data asserts that Google was unjustly enriched in an amount equal to what Space Data claims it cost Space Data to research and develop the Confidential Information.

To decide the amount of any unjust enrichment, determine the value of Google's benefit that would not have been achieved except for its breach of contract.

Your award must be based upon evidence, and not upon speculation, guesswork or conjecture.

**Authority**: Adapted from CACI § 4410.

**Argument**: Google's proposal comes from the model instruction related to unjust enrichment for trade secret misappropriation.  It also provides the jury with an explanation of Space Data's theory of unjust enrichment and provides the jury with an explanation of how they should calculate unjust enrichment damages.  Notably, Space Data's damages claim for breach of contract is the same as its damages claim for trade secret misappropriation.  *See* Expert Report of Christine Meyer (Space Data's Damages Expert) ("As such, the Defendants' breach of contract enabled the misappropriation of Space Data's trade secrets and confidential information, and have unjustly enriched Defendants. Thus, the damages for Defendants' unjust enrichment from the breach of contract therefore provided them at least the same benefit and at a minimum the same unjust enrichment, as the theft of trade secrets.").

Space Data argues that Google's description of its claim for unjust enrichment as an "amount equal to what Space Data claims it cost Space Data to research and develop the Confidential Information" creates a misimpression.  Not so.  Space Data's own expert expressly limited unjust enrichment to Space Data's research and development costs.  *See* Expert Report of Christine Meyer ¶ 218 ("My calculation of unjust enrichment damages is

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1   conservative for several reasons…Despite such advantages reaped by Google and Loon, I
2   restrict the unjust enrichment damages to the R&D cost Space Data incurred to develop its
3   trade secrets until February 15, 2008, the date of the misappropriation.").  Dr. Meyer presents
4   no method for the jury to calculate any additional benefit received by Google; nor does she
5   provide any support for the bare assertion that Google received any benefit beyond the cost
6   to Space Data of research and development from which the jury could award additional
7   damages.  Thus, Google's description of Space Data's unjust enrichment damages is an
8   accurate description of Space Data's only unjust enrichment theory.

9        Space Data's proposal selectively borrows from various cases and does not properly
10  summarize what Space Data must prove to recover damages for unjust enrichment.  The
11  proposal describes why a plaintiff is entitled to unjust enrichment in a manner that would
12  bias the jury against a defendant, but does not provide the jury with any guidance as to how
13  to calculate unjust enrichment in this case.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

## DISPUTED FINAL INSTRUCTION NO. 27 RE MISAPPROPRIATION OF TRADE SECRETS—INTRODUCTION OFFERED BY SPACE DATA

This is also an action for trade secret misappropriation relating to Space Data's balloon technology.

Space Data is alleging claims for trade secret misappropriation against Google under both California law and Federal law.    The California law is called the California Uniform Trade Secrets Act.  The Federal law is called the Defend Trade Secrets Act.  While both are claims for trade secret misappropriation, they are separate causes of action, and you will be asked to make separate findings for each.

In support of its claims, Space Data asserts that it is the owner of information relating to its balloon-borne technology, including four separate categories of trade secrets, which Google misappropriated.  "Misappropriation" means the improper use or disclosure of the trade secrets.

The Space Data trade secrets at issue in this trial are discussed in Trial Exhibit 3389. The summary and listing of these in a single document has been done for your convenience. The four categories of trade secrets Space Data claims were misappropriated by Google under both California and Federal law are:

1. Wind Data;

2. Thermal Management;

3. Network Operations Control or "NOC"; and

4. Financial Information.

Space Data seeks damages under California and Federal law as a result of Google's trade secret misappropriation.  Space Data claims that Google's misappropriation caused Google to be unjustly enriched.  Space Data has the burden of proving its claims.

Google denies Space Data's claims.  Google denies that any of the alleged trade secrets is a trade secret, and denies that it misappropriated any of the alleged trade secrets.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

Google also asserts that Space Data's trade secret claims are barred by two affirmative defenses: (1) the statute of limitations; and (2) readily ascertainable by proper means.  Google has the burden of proof on its affirmative defenses.

**Note**: Trial exhibit 3389 is Space Data's Fifth Amended 2019 Statement.

**Argument**: Both Space Data and Google's proposed instructions are adaptations of **CACI 4400**.  Space Data's instruction is adapted to account for both CUTSA and DTSA, while Google's just discusses CUTSA (Google includes a separate DTSA introduction later). The jurors will benefit from an upfront explanation that there are two different misappropriation statutes at issue, and thus Space Data's proposal should be adopted.

Space Data's proposal directs the jurors to Space Data's 2019 Statement and then describes the trade secrets by category.  Google directs the jurors to the 2019 Statement and then uses the term "Asserted Trade Secrets".  The 2019 Statement discusses the trade secrets by category, as has the Court and the parties throughout this case.  *See, e.g.*, Summ. J. Order (ECF 524) at 14 ("Space Data alleges misappropriation of four categories of trade secrets: Wind Data, Thermal Management, NOC Altitude Control and Monitoring Systems, and Financial Information and Business Model. *See generally* Fifth Amended § 2019.210 Trade Secret Disclosure").  Space Data intends to continue this practice during trial.  Accordingly, retaining the practice in the instruction is more helpful to the jury.  Further, the repetitive use of the term "Asserted Trade Secrets" (Google uses it in many other instructions) is likely to confuse the jury, and is unfairly prejudicial to Space Data.  Further, the use of a defined term is not in line with CACI, which provides for (1) a "general description," and (2) a "short term," "*e.g.*, information."

Google's proposal is also unfairly prejudicial, as it specifically highlights, and thus unduly emphasizes, two of its defenses to Space Data's *prima facie* case: "publicly disclosed" and "developed its technology independently."  It is also confusing in that it uses the phrase "unreasonable delay" to refer to (presumably) statute of limitations, and fails to identify Google's two affirmative defenses as such.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1    Space Data's reference to its damages theory is supported by CACI 4400: [*Name of*

2  *plaintiff*] also claims that [*name of defendant*]'s misappropriation caused [[him/her/it] harm/

3  [or] [*name of defendant*] to be unjustly enriched]."

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

**DISPUTED FINAL INSTRUCTION NO. 27 RE MISAPPROPRIATION OF
TRADE SECRETS UNDER CALIFORNIA LAW—INTRODUCTION
OFFERED BY GOOGLE**

You will receive a List of Space Data's Asserted Trade Secrets, which I will refer to as the "Asserted Trade Secrets." Space Data claims that it is the owner of these Asserted Trade Secrets. Space Data claims that each of these Asserted Trade Secrets is a trade secret under California law and that Google misappropriated them. "Misappropriation" means the improper use of a trade secret.

Space Data also claims that Google's misappropriation caused Google to be unjustly enriched.

Google denies that any of the Asserted Trade Secrets constitutes a trade secret, including because the information was publicly disclosed by Space Data. Google also denies that any of the Asserted Trade Secrets were misappropriated.

Google also claims that Space Data's Asserted Trade Secrets are readily ascertainable, and that Space Data unreasonably delayed in bringing this action.

**Authority**: Adapted from CALIFORNIA CIVIL JURY INSTRUCTION § 4400. This instruction is to be modified in accordance with the evidence presented at trial.

**Argument**: As an initial matter, Google's proposed instruction should be adopted because it more closely adheres to the CACI instruction. Moreover, Space Data's proposal is problematic for a number of reasons.

First, the opening sentence of Space Data's instruction is inaccurate: Space Data claims trade secrets not just over technology, but also over financial information, data, and "conclusions."

Second, Space Data combines its CUTSA and DTSA claims in its proposed instruction. Because CUTSA and DTSA are different claims with different elements—as Space Data's instruction notes—and are subject to different affirmative defenses, it would be better to introduce the two causes of action separately.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1    Third, CACI § 4400 includes the defendant's denial of liability and assertion of

2    affirmative defenses; Space Data's instruction omits both, presenting *only* Space Data's view

3    of the case.  The instruction is therefore far from neutral.

4    Fourth, Space Data's reference to the four "categories" of trade secrets is

5    unnecessary.  These "categories" are not the Asserted Trade Secrets themselves.

6    Fifth, Space Data's reference to its damages theory in Space Data's proposed

7    instruction is duplicative and unnecessary: both sides already propose a separate damages

8    instruction for the trade secret claims.

9    Sixth, Space Data's proposed instruction refers to misappropriation *by disclosure*,

10   which is not a theory that Space Data has appropriately disclosed or pursued in this litigation.

11   Space Data should not be permitted to newly assert this additional theory of liability in the

12   jury instructions.  *Cf. Holiday Inns, Inc. v. Robertshaw Controls Co.*, 560 F.2d 856, 858 (7th

13   Cir. 1977) (holding that when plaintiff failed to include an alternate theory of liability in its

14   responses to an interrogatory that sought such information, or to supplement its response to

15   correct the omission, the court had discretion to preclude the introduction of evidence on that

16   theory); *Rucker v. United States Lines, Inc.*, No. Civ. A. No. 83-5557, 1986 WL 8269 (E.D.

17   Pa. July 28, 1986) (affirming exclusion of liability theory not disclosed by interrogatory

18   responses).  This is especially true because this theory of liability is without evidentiary

19   support.  *Yan Fang Du v. Allstate Ins. Co.*, 697 F.3d 753, 757 (9th Cir. 2012) ("[T]here must

20   be a sufficient evidentiary foundation to support giving the instruction.").

21   Finally, Space Data's proposed instruction identifies the trade secrets by citing to

22   Space Data's Fifth Amended 2019 Statement.  But that statement is not just a list of Space

23   Data's asserted trade secrets: it contains significant attorney argument and commentary.  In

24   contrast, Google's proposed instruction identifies the alleged trade secrets by reference to an

25   appended List of Space Data's Asserted Trade Secrets, which tracks the Fifth Amended 2019

26   Statement verbatim but (i) strips the attorney argument/commentary, and (ii) numbers the

27   trade secrets for easy reference throughout the trial and on the verdict form.  Google's

28   proposal that the trade secret instructions refer to the alleged trade secrets as the "Asserted

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

Trade Secrets" and utilize the appended List of Space Data's Asserted Trade Secrets will benefit the jury, the Court, and the trial record.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 28 RE MISAPPROPRIATION OF TRADE SECRETS—ESSENTIAL FACTUAL ELEMENTS—CALIFORNIA LAW OFFERED BY SPACE DATA**

Space Data claims that Google misappropriated trade secrets in violation of California law.

To succeed on this claim, Space Data must prove all of the following:

1.      That Space Data owns one or more of the trade secrets identified by Space Data in Trial Exhibit 3389.

2.      That one or more of the listed items were trade secrets at the time of the misappropriation;

3.      That Google improperly used or disclosed one or more of the trade secrets.

4.      That Google was unjustly enriched.

5.      That Google's use or disclosure was a substantial factor in causing Google to be unjustly enriched.

**Argument**: Both Space Data and Google's proposed instructions are adaptations of **CACI 4401**, and the competing proposals are not far apart.  However, the instructions vary in three important ways:

First, Google continues to use the term "Asserted Trade Secrets."  As explained previously, the repeated use of this term is likely to confuse the jury, is unfairly prejudicial, and is not in line with CACI's misappropriation instructions.  *See* above Space Data argument as to Disputed Instruction No. 27.  Google's complaint that Space Data's proposal is prejudicial because it refers to the trade secrets as "trade secrets" instead of "alleged trade secrets" is perplexing.  Space Data's proposal does not condition the jury to presuppose the existence of valid trade secrets, since it reads: "Space Data **claims** that Google misappropriated … To succeed on this **claim**, Space Data must prove … That Space Data **owns** one or more trade secrets … That one or more of the listed items **were** trade secrets …" (Emphasis added.)  It is Google's use of the capitalized term **Asserted** Trade Secrets that is meant to prejudicially precondition the jury in favor of Google's case.

Second, Google omits reference to Space Data's disclosure theory of liability.  Space Data contends that under the NDA Google had a duty not to widely disseminate Space Data's confidential information and that Google's violations of this duty constitute misappropriations.  The instructions should account for both Space Data's use and disclosure theories, and CACI 4401 specifically provides for the identification of each misappropriation theory: "That [*name of defendant*] improperly [acquired/used/ [or] disclosed] the trade secret[s]."  Additionally, Google's complaint that Space Data did not disclose this theory is unfounded.  Google's Interrogatory No. 15 asked: "State all facts and identify all documents that support your contention that you have been injured by any use or disclosure of any item of Confidential Information by Google in violation of the NDA, and identify all persons with knowledge of such facts."  On July 13, 2018, Space Data responded in-part: "Google also breached the NDA by sharing proprietary, Space Data information with the entire Google Access group in contravention of the purpose of the NDA, which was to evaluate an acquisition or business partnership with Space Data."  *See also* Space Data's Summ. J. Opp. (ECF 448) at 15 ("Google redacted its own confidential information in its SDC Wiki site … It redacted none of SDC's parallel confidential information.  There was no parity …").  Google did not move to preclude this theory as part of its motions *in limine*, and Google did not seek summary adjudication as to it.

Third, Google's sub-paragraph 2, unlike its sub-paragraphs 1 and 3, omits the phrase "one or more."  To the extent Google contends that Space Data must prove that each of its trade secrets were secret to prevail as to anyone of them, Google's contention is squarely contradictory to law.  Even if this is not Google's intent, the omission of the phrase is unduly prejudicial and confusing, as it misstatement the law, and could lead the jury to conclude that it cannot find misappropriation as to any trade secret unless it finds that all trade secrets are secret.

**Additional authority**: Cal. Civ. Code §§ 3426.1 & 3426.3; NDA § 4.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 28 RE
MISAPPROPRIATION OF TRADE SECRETS UNDER CALIFORNIA LAW—
ESSENTIAL FACTUAL ELEMENTS OFFERED BY GOOGLE**

Space Data claims that Google misappropriated the Asserted Trade Secrets.  To succeed on this claim, Space Data must prove all of the following:

(1)  That Space Data owned one or more of the Asserted Trade Secrets;

(2)  That these Asserted Trade Secrets were trade secrets at the time of the misappropriation;

(3)  That Google improperly used one or more of the Asserted Trade Secrets;

(4)  That Google was unjustly enriched; and

(5)  That Google's use was a substantial factor in causing Google to be unjustly enriched.


**Authority**: CACI § 4401.


**Argument**: Google's proposed instruction is more neutral and appropriate for at least two reasons.  First, as stated with respect to the preceding disputed instruction, the jury, the Court, and the trial record would benefit from a consistent nomenclature for the alleged trade secrets, *i.e.*, the Asserted Trade Secrets.  But even if the Court declines to adopt that naming convention, it would be prejudicial to adopt Space Data's reference to the trade secrets merely as "trade secrets," rather than "alleged trade secrets."  Referring to the alleged trade secrets without noting that they are alleged or asserted presupposes the existence and ownership of the disputed "trade secrets," which is actually something that Space Data has the burden of proving in the first instance.  Second, and also as stated with respect to the preceding disputed instruction, Space Data's proposed instruction impermissibly refers to misappropriation *by disclosure*.  Improper disclosure is not a theory that Space Data has appropriately disclosed or pursued in this litigation.  Accordingly, Space Data should not be permitted to assert this additional theory of liability in the jury instructions.  *Cf. Holiday Inns, Inc. v. Robertshaw Controls Co.*, 560 F.2d 856, 858 (7th Cir. 1977) (holding that when

plaintiff failed to include an alternate theory of liability in its responses to an interrogatory that sought such information, or to supplement its response to correct the omission, the court had discretion to preclude the introduction of evidence on that theory); *Rucker v. United States Lines, Inc.*, No. Civ. A. No. 83-5557, 1986 WL 8269 (E.D. Pa. July 28, 1986) (affirming exclusion of liability theory not disclosed by interrogatory responses).

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 29 RE
TRADE SECRET DEFINED—CALIFORNIA LAW OFFERED BY SPACE DATA**

Under California law, to prove that particular information was a trade secret, Space Data must prove all of the following:

1. That the information was secret;

2. That the information had actual or potential independent economic value because it was secret; and

3. That Space Data made reasonable efforts to keep the information secret.

**Argument**: Both Space Data and Google's proposed instructions are adaptations of **CACI 4402**, and the competing proposals are not far apart.  However, the instructions vary in one important way.  Google's use of the term "Asserted Trade Secret."  As explained previously, the repeated use of this term is likely to confuse the jury, is unfairly prejudicial, and is not in line with CACI's misappropriation instructions.  *See* above Space Data argument as to Disputed Instruction No. 27.  Google's purported justification for the capitalized term, and departure from the CACI example of "information," is not well taken. Google fails to explain why repeated use of the term will any better prevent the purported harm (confusing information that Space Data contends is Confidential Information, but not a claimed trade secret, with a claimed trade secret) than the bold, all capital headings of these instructions, e.g., "**TRADE SECRET DEFINED**."  If Google's contention is that—except for the first time, when the concept of the claimed trade secrets is introduced by specific reference to the 2019 Statement by trial exhibit number—the jury will reference the 2019 Statement (or Google definitional document) evey time it sees "Asserted Trade Secret," then the unrealistic nature of Google's aspiration is easily offset by the prejudice to Space Data of using the capitalized term.

**Additional authority**: Cal. Civ. Code §§ 3426.1(d).

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 29 RE**
**"TRADE SECRET" DEFINED UNDER CALIFORNIA LAW OFFERED BY**
**GOOGLE**

To prove that an Asserted Trade Secret was a trade secret, Space Data must prove all of the following:

(1)  That the Asserted Trade Secret was secret;

(2)  That the Asserted Trade Secret had actual or potential independent economic value because it was secret; and

(3)  That Space Data made reasonable efforts to keep the Asserted Trade Secret secret.

**Authority**: California Civil Jury Instructions § 4402.

**Argument**: Google's proposed instruction is more neutral and accurate for at least two reasons.  First, as stated with respect to the two preceding disputed instructions, the jury, the Court, and the trial record would benefit from a consistent nomenclature for the alleged trade secrets, *i.e.*, the Asserted Trade Secrets, which references a neutral, enumerated list of Space Data's alleged trade secrets.  Space Data's reference to "information" is confusing, especially because Space Data now claims that two discreet categories of information are at issue in this case: (1) the trade secret information apropos the trade secret misappropriation claims, and (2) non-trade secret "confidential information" apropos only the breach of contract claim.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**STIPULATED FINAL INSTRUCTION NO. 30 RE
"INDEPENDENT ECONOMIC VALUE" EXPLAINED—CALIFORNIA LAW**

Under California law, each claimed trade secret has independent economic value if it gives the owner an actual or potential business advantage over others who do not know the information and who could obtain economic value from its disclosure, acquisition, or use.

In determining whether information had actual or potential independent economic value because it was secret, you may consider the following:

a) The extent to which Space Data obtained or could obtain economic value from the information in keeping it secret;

b) The extent to which others could obtain economic value from the information if it were not secret;

c) The amount of time, money, or labor that Space Data expended in developing the information; and

d) The amount of time, money, or labor that would be saved by a competitor who used the information.

The presence or absence of any one or more of these factors is not necessarily determinative.

**Authority**: CACI 4412; Cal. Civ. Code §§ 3426.1(d).

**DISPUTED FINAL INSTRUCTION NO. 31 RE MISAPPROPRIATION BY USE—CALIFORNIA LAW OFFERED BY SPACE DATA**

Under California law, Google misappropriated Space Data's trade secrets by use if Google used them without Space Data's consent and did any of the following:

1.  At the time of use, knew or had reason to know that its knowledge of Space Data's trade secrets came from or through another defendant or Google affiliated company, and that another defendant had previously acquired the trade secrets by improper means; or

2.  At the time of use, knew or had reason to know that its knowledge of Space Data's trade secrets was acquired under circumstances creating a legal obligation to limit use of the information. or

3.  At the time of use, knew or had reason to know that its knowledge of Space Data's trade secrets came from or through another defendant or Google affiliated company, and that another defendant had a duty to Space Data to limit use of the information.

"Improper means" includes breach or inducement of a breach of a duty to maintain secrecy.

**Argument**: Both Space Data and Google's proposals are adapted from **CACI 4407**. The three points of dispute are:

(1) Google's omission of any language corresponding to sub-paragraphs 1 and 3 of Space Data's proposal. These paragraphs were discussed during a telephonic meet and confer session. Space Data's concern is that Defendants will argue that Alphabet and Loon are not bound by the NDA and therefore not liable for trade secret misappropriation. Defendants indicated that they may be willing to stipulate that Alphabet and Loon are bound by the NDA, but ultimately declined. Given Defendants' refusal, and so the possibility that Defendants may try to argue that Alphabet and Loon are not bound by the NDA, sub-paragraphs 1 and 3 are necessary, as they make clear that even if Alphabet and Loon were

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1   found not to be bound by the NDA, they may still be liable, if they knew or had reason to

2   know that Google Inc. acquired the trade secrets subject to the NDA ("a duty to… limit use"

3   and a "duty to maintain secrecy").  In this context, the "third party" contemplated by CACI is

4   another Defendant or another Google affiliate/subsidiary.  As explained above, *see* Space

5   Data argument regarding Disputed Instruction No. 28, Space Data disclosed its duty not to

6   disseminate (maintain secrecy) theory.  (Space Data also maintains that Defendants cannot

7   now argue that Alphabet and Loon are not bound by the NDA.  Any such defense is new.

8   More importantly, it was not preserved in the Joint Pretrial Statement, *see* ECF 566 at 30 (not

9   listing this as a disputed fact offered by Defendants), and, critically, the defense is barred by

10  the Joint Pretrial Statement's Undisputed Fact No. 5: "As memorialized as Exhibit A to the

11  5AC and Trial Exhibit 192, the Parties entered into a 'Mutual Confidentiality and

12  Nondisclosure Agreement' effective December 1, 2007 (the 'NDA')."  *See id.* at 12; *see also*

13  *id.* at 40 ("The forgoing admissions having been made by the Parties … this Order shall

14  supplement the pleadings and govern the course of trial …")).

15        (2) Google's use of the defined term "Asserted Trade Secrets."  *See* above Space Data

16  argument as to Disputed Instruction No. 27.

17        (3) Google's application of the instruction to both CUTSA and DTSA.  The Judicial

18  Council of California's model is a model for Californian, not Federal law.  For, DTSA, Space

19  Data patterns its instructions off of a model specifically designed to account for this Federal

20  law, the Judicial Council of the United States Eleventh Judicial Circuit's Pattern Jury

21  Instructions.  A CUTSA specific model should not be applied to the specific requirements of

22  DTSA where a DTSA model is available.  Further, Google's proposal is confusing.  Under

23  Google's proposal there is still a series of DTSA instructions, but no actual misappropriation

24  instruction is among them.  To the extent the Court believes the same language should be

25  used to instruct the jury as to misappropriation by use for both CUTSA and DTSA, then

26  Space Data contends this instruction should be given twice, once among the instructions

27  unique to CUTSA, and again among the instructions unique to DTSA.

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1    **Additional authority**: Cal. Civ. Code §§ 3426.1(a) & 3426.1(b); NDA § 4 ("The

2  Recipient and its personnel shall use such Confidential Information only for the purposes set

3  forth above"); *id.* ("The Recipient shall hold in confidence, and shall not disclose to any

4  person outside its organization (other than its affiliates and its and their respective agents,

5  contractors, representatives or advisors … who have a need to know such information for the

6  purposes of evaluating the Transaction)").

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 31 RE
MISAPPROPRIATION BY USE UNDER CALIFORNIA AND FEDERAL LAW
OFFERED BY GOOGLE**

Google misappropriated Space Data's Asserted Trade Secrets by use if it:

(1) Used them without Space Data's consent; and

(2) At the time of use, knew or had reason to know that its knowledge of Space
Data's asserted trade secrets was acquired under circumstances creating a legal
obligation to limit use of the information.

**Authority**: Adapted from CACI § 4407; 18 U.S.C § 1839(5).

**Argument**: Google's proposal follows the CACI instruction, which accurately
reflects both CUTSA and DTSA on misappropriation by use.  Because there are no
substantive differences between misappropriation by use under CUSA and DTSA, and in an
effort to limit superfluous instructions, Google proposes a single instruction to cover
misappropriation by use under both statutes.

Space Data's proposed instruction not only results in superfluous separate instructions
for misappropriation by use, but it also unnecessarily deviates from the CACI instruction by
listing two acts of misappropriation by use (numbers 1 and 3 in Space Data's proposal) that
are not at issue in this case and for which Space Data has not proposed a theory or evidence
of misappropriation.  Google does not understand what Space Data is trying to accomplish by
including these additional forms of improper use in this instruction, and doubts that a jury
will fare much better.  These irrelevant additions are additionally unclear and confusing
because Space Data refuses to identify the "third party" referenced therein, despite CACI's
clear instruction that the "name of the third party" should be filled in.  CACI § 4407.  And
the language "other defendant" does not appear in CACI at all.  *See id.*  Because Space Data
failed to appropriately disclose these additional theories of misuse, which will serve only to
confuse the jury, Space Data's proposal should be rejected.  *Cf. Holiday Inns, Inc. v.
Robertshaw Controls Co.*, 560 F.2d 856, 858 (7th Cir. 1977) (holding that when plaintiff

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

failed to include an alternate theory of liability in its responses to an interrogatory that sought

such information, or to supplement its response to correct the omission, the court had

discretion to preclude the introduction of evidence on that theory); *Rucker v. United States*

*Lines, Inc.*, No. Civ. A. No. 83-5557, 1986 WL 8269 (E.D. Pa. July 28, 1986) (affirming

exclusion of liability theory not disclosed by interrogatory responses).

**DISPUTED FINAL INSTRUCTION NO. 32 RE MISAPPROPRIATION BY DISCLOSURE—CALIFORNIA LAW OFFERED BY SPACE DATA**

Under California law, Google misappropriated Space Data's trade secrets by disclosure if Google disclosed any trade secret without Space Data's consent and did any of the following:

1.  At the time of disclosure, knew or had reason to know that its knowledge of Space Data's trade secrets came from or through another defendant or Google affiliated company, and that another defendant had previously acquired the trade secrets by improper means; or

2.  At the time of disclosure, knew or had reason to know that its knowledge of Space Data's trade secrets was acquired under a duty to keep Space Data's trade secrets confidential; or

3.  At the time of disclosure, knew or had reason to know that its knowledge of Space Data's trade secrets came from or through another defendant or Google affiliated company and that another defendant had a duty to Space Data to keep the information secret.

"Improper means" includes breach or inducement of a breach of a duty to maintain secrecy or other means.

**Argument**: Space Data's instruction is adapted from **CACI 4406**.  Google contends that no misappropriation by disclosure instruction should be given.  But Space Data intends to argue at trial a disclosure theory of liability, and Google did not move for summary adjudication on this theory, nor to preclude it.  Space Data contends that under the NDA Google had a duty not to widely disseminate Space Data's confidential information and that Google's violations of this duty constitute misappropriations.  *See* Cal. Civ. Code § 3426.1(a) ("'Improper means' includes … breach or inducement of a breach of a duty to maintain secrecy … or other means"); Cal. Civ. Code § 3426.1(b) ("'Misappropriation' means … Disclosure … of a trade secret of another without express or implied consent by a person

who … At the time of disclosure … knew or had reason to know that his or her knowledge of the trade secret was … Acquired under circumstances giving rise to a duty to maintain its secrecy …"); NDA § 4 ("The Recipient shall hold in confidence, and shall not disclose to any person outside its organization (other than its affiliates and its and their respective agents, contractors, representatives or advisors … who have a need to know such information for the purposes of evaluating the Transaction)"); *id.* ("The Recipient will use the same degree of care, but no less than a reasonable degree of care … to: (i) protect the confidentiality of the Confidential Information; and (ii) ensure that proper and secure storage is provided for all Confidential Information to protect against theft or unauthorized access"). As explained above, *see* Space Data argument regarding Disputed Instruction No. 28, Space Data disclosed its duty not to disseminate theory.   Further, as explained above, the references to "another defendant" and "Google affiliated company" account for the potential that Google will argue Alphabet and Loon are not bound by the NDA, despite never raising this issue with the Court before.  In this context, the "third party" contemplated by CACI is another Defendant or another Google affiliate/subsidiary.  The instructions should account for both Space Data's use and disclosure theories.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 32 RE
MISAPPROPRIATION BY DISCLOSURE—CALIFORNIA LAW
OBJECTION BY GOOGLE**

Google's position is that no such instruction should be given.

**Argument**: Space Data has not disclosed or pursued a theory of misappropriation by disclosure, and therefore this instruction should not be given. *Cf. Holiday Inns, Inc. v. Robertshaw Controls Co.*, 560 F.2d 856, 858 (7th Cir. 1977) (holding that when plaintiff failed to include an alternate theory of liability in its responses to an interrogatory that sought such information, or to supplement its response to correct the omission, the court had discretion to preclude the introduction of evidence on that theory); *Rucker v. United States Lines, Inc.*, No. Civ. A. No. 83-5557, 1986 WL 8269 (E.D. Pa. July 28, 1986) (affirming exclusion of liability theory not disclosed by interrogatory responses).

Even if Space Data has a sufficiently disclosed a theory of misappropriation by disclosure, it certainly doesn't have a theory or evidence to support elements (1) and (3) listed in Space Data's proposal. There is therefore no basis for including these additional forms of improper disclosure in this instruction, which may only confuse the jury. These irrelevant additions are additionally unclear and confusing because Space Data refuses to identify the "third party" referenced therein, despite CACI's clear instruction that the "name of the third party" should be filled in. CACI § 4407. And the language "other defendant" does not appear in CACI at all. *See id.*

1

**DISPUTED FINAL INSTRUCTION NO. 33 RE
AFFIRMATIVE DEFENSE UNDER CALIFORNIA AND FEDERAL LAW—
INFORMATION WAS READILY ASCERTAINABLE BY PROPER MEANS
OFFERED BY SPACE DATA**

2

3      Google did not misappropriate a particular Space Data trade secret if Google proves

4   that that specific trade secret was readily ascertainable by proper means at the time of the

5   alleged misappropriation.

6      There is no fixed standard for determining what is "readily ascertainable by proper

7   means." In general, information is readily ascertainable if it can be obtained, discovered,

8   developed, or compiled without significant difficulty, effort, or expense. For example,

9   information is readily ascertainable if it is available in trade journals, reference books, or

10  published materials. On the other hand, the more difficult information is to obtain, and the

11  more time and resources that must be expended in gathering it, the less likely it is that the

12  information is readily ascertainable by proper means.

13

14      **Argument**: Space Data's proposal is derived from CACI 4420. The parties, with the

15  exception of the inclusion of the phrase "And Federal" in the title, agree on the language of

16  the proposal. Google agrees that this instruction should be given as to CUTSA, but disagrees

17  that it should apply to DTSA. Space Data contends this instruction should apply to both

18  CUTSA and DTSA. As Google concedes, Google bears the burden on this defense under

19  CUTSA. In this instance, Google argues that authority interpreting CUTSA is not

20  informative, because 18 U.S.C. § 1839(3) references "readily ascertainable," while Cal. Civ.

21  Code § 3426.1(d) does not. But, despite the reference to "readily ascertainable" in Section

22  1839(3), Section 11.3 ("Affirmative Defense – Lawful Means of Acquisition") of the

23  Eleventh Circuit Pattern Jury Instructions characterizes "Independent Derivation" as an

24  affirmative defense. It is clear from a comparison of the Eleventh Circuit Model's example

25  of what an "independent derivation" is, with the example (from CACI) provided in the above

26  agreed language as to what "readily ascertainable" means, that the judicial counsel for this

27  appellate court views the "independent derivation" affirmative defense to include this readily

28  ascertainable issue: "Independent Derivation. [Name of defendant] has the right to

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1   independently obtain, discover, develop, or compile [name of plaintiff]'s trade secret(s).  **For**

2   **example, information can be lawfully acquired if** [name of defendant] **derived** [name of

3   trade secret] **from publicly available sources**."  (Emphasis added.)

4       If the Court agrees with Space Data, this instruction should come directly before or

5   after the stipulated instruction on the statute of limitations.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

### DISPUTED FINAL INSTRUCTION NO. 33 RE
### AFFIRMATIVE DEFENSE UNDER CALIFORNIA LAW—INFORMATION WAS READILY ASCERTAINABLE BY PROPER MEANS OFFERED BY GOOGLE

Google did not misappropriate a particular Space Data trade secret if Google proves that that specific trade secret was readily ascertainable by proper means at the time of the alleged misappropriation.

There is no fixed standard for determining what is "readily ascertainable by proper means." In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials. On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.

**Authority**: CACI § 4420.

**Argument**: The language of the Parties' proposed instruction is identical. The only dispute is whether "readily ascertainable through proper means" is an *affirmative defense* for both CUTSA and DTSA and is therefore Google's burden to prove for both causes of action (Space Data's position), or if it is an affirmative defense for CUTSA but part of Space Data's prima facie case for DTSA (Google's position). On this point, the statutory language of the DTSA leaves no room for debate. DTSA provides that information is only a "trade secret . . . if — (A) the owner thereof has taken reasonable measures to keep such information secret; *and* (B) the information derives independent economic value, actual or potential, from not being generally known to, *and not being readily ascertainable through proper means* by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3) (emphasis added); *see also* David Bohrer, *Threatened Misappropriation of Trade Secrets: Making a Federal (DTSA) Case Out of It*, 33 Santa Clara

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1    High Tech. L.J. 506 (2017) (explaining that the exclusion of the "readily ascertainable"

2    language from CUTSA's definition of a trade secret is the basis for CUTSA's

3    requirement  that the defendant prove ready ascertainability as an affirmative defense:

4    "Forty-eight state jurisdictions have modeled their trade secret laws on the UTSA, which

5    states in pertinent part that "'[t]rade secret' means information, including a formula, pattern,

6    compilation, program, device, method, technique, or process, that: (i) derives independent

7    economic value, actual or potential, from not being generally known to, and not being readily

8    ascertainable by proper means by, other persons who can obtain economic value from its

9    disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances

10   to maintain its secrecy." Id. § 1(4). California's version of the UTSA, which was enacted in

11   1985, dropped the requirement that a trade secret be not "readily ascertainable"— with the

12   result that the defendant is required to specially plead this circumstance as an affirmative

13   defense—but otherwise followed the UTSA definition.").  Indeed, courts in this district have

14   required the plaintiff to plead sufficient facts to show that the alleged trade secrets meet

15   DTSA's definition, including facts sufficient to show that the asserted trade secrets are not

16   readily ascertainable.  *See, e.g.*, *S & P Fin. Advisors v. Kreeyaa LLC*, No. 16-CV-03103-SK,

17   2016 WL 11020851, at *2 (N.D. Cal. Nov. 15, 2016) (denying plaintiff's motion to amend

18   because "[w]ith respect to the alleged trade secrets at issue, Plaintiffs simply list categories of

19   information that they contend are trade secrets in their Proposed SAC. They fail to allege

20   what measures they have taken to keep the information secret or how the information derives

21   independent economic value from not being generally known and not

22   being readily ascertainable through proper means.").  Because Space Data must prove that

23   the Asserted Trade Secrets qualify as trade secrets under DTSA to prevail on its DTSA

24   claim, Space Data must prove that the Asserted Trade Secrets are not "readily ascertainable

25   through proper means."  *Id.*

26

27

28

### DISPUTED INSTRUCTION NO. 34 RE
### DEFEND TRADE SECRETS ACT—INTRODUCTION OFFERED BY GOOGLE

As I stated earlier, you will receive a list of Space Data's Asserted Trade Secrets. Space Data claims that each item on that list is a trade secret under the federal "Defend Trade Secrets Act" and that Google misappropriated each of those items under federal law.  Google denies that any of the Asserted Trade Secrets qualifies as a trade secret under federal law and denies that any of the Asserted Trade Secrets were misappropriated.

Unless I have instructed you otherwise, you are to apply the same definitions and considerations when deciding Space Data's federal Defend Trade Secrets Act claim as when you decide Space Data's claim for trade secret misappropriation under California law.

**Authority**: 18 U.S.C. § 1836; *United States v. Chung*, 659 F.3d 815, 825–26 (9th Cir. 2011) (in applying 18 U.S.C. § 1831 et seq., "we consider instructive interpretations of state laws that adopted the UTSA definition without substantial modification"); *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018) ("The elements of a trade secret misappropriation claim under the DTSA are substantially similar to those under older state statutes.").  This instruction is to be modified in accordance with the evidence presented at trial.

**Argument**: For the reasons identified above with respect to separating the CUTSA and DTSA claim introductions apply here with equal measure.  These are different causes of action based on different statutes with different considerations and affirmative defenses.  Separate introductory instructions will properly orient the jury to these two claims.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED INSTRUCTION NO. 34 RE**
**DEFEND TRADE SECRETS ACT—INTRODUCTION OBJECTION BY**
**SPACE DATA**

Space Data objects to the giving of a separate introductory instruction for DTSA. Space Data instead proposes, as reflect in its proposed Instruction No. 27, that a single introductory instruction be given for both CUTSA and DTSA prior to any specific CUTSA or DTSA instructions being given.  *See* above Space Data argument as to Instruction No. 27.

Space Data also objects to Google's use of the defined term "Asserted Trade Secrets." *See* above Space Data argument as to Disputed Instruction No. 27.

Space Data further objects to the giving of an instruction that the jury is "to apply the same definitions and considerations when deciding" claims under DTSA as it does CUTSA. As Google itself notes in its proposed DTSA instructions the two acts are not the same.  *See* Google Instruction Nos. 35 ("The requirements for misappropriation of trade secrets under federal law are different than … under state law") & 36 ("The definition of a 'trade secret' is different under federal law than it is under California law").  If a party contends that a particular definition or consideration is the same under both acts, then a specific instruction explaining that it applies to both acts should be given.  This is the approach already adopted by the parties with respect to elaborations on secrecy, reasonable efforts to maintain secrecy, and independent development, for example.  *See* below.  The jury should not be left to guess as to when it should consult a CUTSA instruction in evaluating DTSA, as Google proposes.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 35 RE
ELEMENTS OF TRADE SECRET MISAPPROPRIATION—FEDERAL LAW
OFFERED BY SPACE DATA**

Space Data claims that Google misappropriated trade secrets belonging to Space Data under Federal law.

To prove its claim under Federal law, Space Data must prove the following:

1. Space Data owns one or more valid trade secrets;

2. One or more of Space Data's trade secrets relate to products or services used in, or intended for use in, interstate or foreign commerce; and

3. Google misappropriated one or more Space Data trade secrets.

"Used in, or intended for use in, interstate or foreign commerce" means that the product or service involves travel, trade, transportation, or communication between a place in one state and a place in another state, or that the product or service involves travel, trade, transportation, or communication between a place in the United States and a place outside of the United States.

**Argument**: Space Data's proposal is adapted from a DTSA specific model, Section 11.1 of the Eleventh Circuit Pattern Jury Instructions, Civil Cases (2019) ("11th Cir. Model").  *See* http://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCivilPatternJuryInstructionsCurrentComplete.pdf?revDate=20190124 (last visited Jul. 8, 2019).  Google's proposal purports to be directly derived from the statute.  However, while it does not say so, Google's "used in, or intended for use in, interstate or foreign commerce" definition, which mirrors Space Data's, is derived from the 11th Cir. Model.  Further, Google's proposal is a far cry from a copy of the statutory language, as the concepts addressed here span two different sections of the Act, which span approximately four pages of a physical statute book.

Space Data's approach, which adapts a preexisting model for DTSA developed by the Judicial Council for a federal appellate court, is more reasonable.  Google's argument that the 11th Cir. Model should be disregarded because it contains a disclaimer within the following

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

authorization is not well taken in light of similar language in the Ninth Circuit's model

instructions: "Resolved, that the Committee on Pattern Jury Instructions of the Judicial

Council of the Eleventh Circuit is hereby authorized to distribute to the District Judges of the

Circuit for their aid and assistance, and to otherwise publish, the Committee's Pattern Jury

Instructions … provided, however, that this resolution shall not be construed as an

adjudicative approval of the content of such instructions which must await case-by-case

review by the Court."  *Compare* ECF 588-21 at 4 (11th Cir. Council Resolution) *with*

"Caveat" to the Ninth Circuit's Manuel of Model Civil Jury Instructions ("The Ninth Circuit

Court of Appeals does not adopt these instructions as definitive.  Indeed, occasionally the

correctness or incorrectness of a given instruction may be the subject of a Ninth Circuit

opinion").


      **Additional Authority**: 18 U.S.C. §§ 1836 & 1839.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 35 RE
ELEMENTS OF A DEFEND TRADE SECRETS ACT CLAIM OFFERED BY
GOOGLE**

The requirements for misappropriation of trade secrets under federal law are different than misappropriation of trade secrets under state law.

To succeed on its claim under the federal Defend Trade Secrets Act, Space Data must prove:

(1) That Space Data owned a trade secret;

(2) That Google misappropriated the trade secret; and

(3) That the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.

"Used in, or intended for use in, interstate or foreign commerce" means that the product or service involves travel, trade, transportation, or communication between a place in one state and a place in another state, or that the product or service involves travel, trade, transportation, or communication between a place in the United States and a place outside of the United States.

**Authority**: 18 U.S.C. § 1836(b)(1).

**Argument**: Google's proposed instruction is modeled directly from the DTSA's statutory language.  In contrast, Space Data's proposed instruction is an incorrect alteration of an instruction from the Eleventh Circuit Pattern Jury Instructions.  As an initial matter, The Eleventh Circuit expressly disclaims that the Eleventh Circuit Judicial Counsel's authorization of the pattern instructions "shall not be construed as an adjudicative approval of the content of such instructions which must await case-by-case review by the Court."  *See* "Pattern Jury Instructions," United States Court of Appeals for the Eleventh Circuit, *available at* http://www.ca11.uscourts.gov/pattern-jury-instructions.  Indeed, even the Eleventh Circuit has emphasized that "[t]he Pattern Instructions act only as a *guide* for judges when fashioning a jury charge."  *United States v. Gutierrez*, 745 F.3d 463, 471 (11th Cir.

Hosie Rice LLP
600 Montgomery Street, 34ᵗʰ Floor
San Francisco, CA 94111

2014).  "They do not constitute precedent and 'cannot foreclose the construction of the necessary elements . . . in the statute.'"  *Id.* (citing *United States v. Ettinger*, 344 F.3d 1149, 1158 (11th Cir. 2003)).  Accordingly, Google's recitation of the statutory language should be adopted over Space Data's alteration of another Circuit Court's untested pattern instruction. Moreover, even while Space Data purports to model its instruction after the Eleventh Circuit Pattern Jury Instructions, Space Data actually materially changed the pattern instruction's language regarding the "use in interstate commerce" requirement.  Space Data's proposed instruction says it is *Google's product* that must be "used in, or intended for use in, interstate or foreign commerce."  However, the Eleventh Circuit Pattern Jury Instruction states that it is *Space Data's trade secret* that must be "used in, or intended for use in, interstate or foreign commerce."  That formulation is more faithful to the language of the DTSA, 18 U.S.C. § 1836(b)(1).

**DISPUTED FINAL INSTRUCTION NO. 36 RE**
**TRADE SECRETS DEFINED—FEDERAL LAW OFFERED BY SPACE DATA**

A trade secret may take many forms, including all forms and types of financial, business, scientific, technical, economic, or engineering information.  A trade secret may include patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes.  A trade secret may be tangible or intangible.  A trade secret does not have to be stored, compiled, or memorialized. But if it is, it does not have to be stored, compiled, or memorialized in any particular manner, such as physically, electronically, graphically, photographically, or in writing.

 For each of its claimed trade secrets to qualify as its trade secrets, Space Data must prove the following:

1. Each trade secret is not generally known to other persons who can obtain economic value from the disclosure or use of the information;

2. Other persons cannot readily discover each trade secret through proper means;

3. Each trade secret derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from the disclosure or use of the information; and

4. Space Data has taken reasonable steps to keep each trade secret secret.


**Argument**: Space Data's proposal is adapted from 11th Cir. Model, § 11.1, which is designed for DTSA.  Space Data's approach, which adapts a preexisting model for DTSA developed by the Judicial Council for a federal appellate court, is more reasonable.  This is especially true where Google's proposal ignores a significant portion of the definitional statute.  Google's proposal does not account for Section 1839(3)'s preamble, which reads:

the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods,

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1  techniques, processes, procedures, programs, or codes, whether tangible or
2  intangible, and whether or how stored, compiled, or memorialized physically,
   electronically, graphically, photographically, or in writing if

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 36 RE**
**DEFEND TRADE SECRETS ACT—"TRADE SECRET" DEFINED OFFERED BY**
**GOOGLE**

The definition of a "trade secret" is different under federal law than it is under California law.  To prove that an item of information is a trade secret under federal law, Space Data must prove all of the following:

(1) That Space Data has taken reasonable measures to keep the item of information secret; and

(2) That the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

**Authority**: 18 U.S.C. § 1839(3).

**Argument**: Google's proposed instruction is modeled directly from the DTSA's statutory language and identifies what Space Data must prove to prevail on its claim that the alleged trade secrets are in fact trade secrets.  In contrast, Space Data's proposed instruction does not identify Space Data's burden or the issues the jury must consider in determining whether the alleged trade secrets qualify for trade secret protection under the DTSA. Additionally, Space Data's proposed instruction is a selective adaption of an instruction from the Eleventh Circuit Pattern Jury Instructions.  As noted above, the Eleventh Circuit expressly disclaims that the Eleventh Circuit Judicial Counsel's authorization of the pattern instructions "shall not be construed as an adjudicative approval of the content of such instructions which must await case-by-case review by the Court."  *See* "Pattern Jury Instructions," United States Court of Appeals for the Eleventh Circuit, *available at* http://www.ca11.uscourts.gov/pattern-jury-instructions; *see also United States v. Gutierrez*, 745 F.3d 463, 471 (11th Cir. 2014) ("The Pattern Instructions act only as a *guide* for judges when fashioning a jury charge.  They do not constitute precedent and 'cannot foreclose the

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1   construction of the necessary elements . . . in the statute.'") (citing *United States v. Ettinger*,

2   344 F.3d 1149, 1158 (11th Cir. 2003)).. Google's proposed instruction, which is a recitation

3   of the statutory language, is significantly more helpful than Space Data's proposed

4   instruction, and should therefore be adopted over Space Data's proposal.

5   Furthermore, the first paragraph of Space Data's proposed instruction is unnecessary because

6   the categories of information that can qualify as trade secrets are the same under CUTSA and

7   DTSA.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 37 RE
MISAPPROPRIATION—FEDERAL LAW OFFERED BY SPACE DATA**

Space Data claims that Google disclosed or used Space Data's trade secrets without the right to do so.  This is called "misappropriation."

For Space Data to prove that Google misappropriated its trade secrets under Federal law, Space Data must prove the following:

1. Google disclosed or used one or more of Space Data's trade secrets without Space Data's express or implied consent; and

2. Google knew or should have known that one or more of Space Data's trade secrets were:

i. Derived from or through another defendant or Google affiliated company who used improper means to acquire the trade secret;

ii. Was acquired under circumstances giving rise to a duty to maintain the secrecy of one or more of Space Data's trade secrets or limit the use of one or more of Space Data's trade secrets, or

iii. Was derived from or through another defendant or Google affiliated company who was under a duty to maintain the secrecy of or limit the use of one or more of Space Data's trade secrets.

"Improper means" may include breach or inducement of a breach of duty to maintain secrecy.

Each act of disclosing or using one or more of Space Data's trade secrets may constitute a separate act of misappropriation.

"Express consent" is consent that is clearly and unmistakably stated.

"Implied consent" is consent that is inferred from one's conduct rather than from one's direct expression.

**Argument:** Google's competing instruction is its Instruction No. 31.  As discussed above, Google contends that a single misappropriation instruction should be given for CUTSA and DTSA, while Space Data believes separate instructions are appropriate.  *See*

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

Space Data argument for Instruction No. 31.  Space Data's DTSA misappropriation

instruction is adapted from the 11th Cir. Model, § 11.1, which is designed specifically for

DTSA, while Google's combined CUTSA-DTSA instruction is based on CACI, which is

designed for CUTSA.  A CUTSA specific model should not be applied to the specific

requirements of DTSA where a DTSA model is available.

The addition of disclosure, improper means, and another defendant / Google affiliate

language, is appropriate, because as explained above, Space Data is pursuing a disclosure

based theory of misappropriation, and Defendants may argue that Alphabet and Loon are not

bound by the NDA.  *See* Space Data argument for Instruction Nos. 31 & 32.


**Additional Authority**: 18 U.S.C. §§ 1839(5) & 18 U.S.C. § 1839(6).

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 37 RE
MISAPPROPRIATION—FEDERAL LAW OBJECTION BY GOOGLE**

Google's position is that no such instruction should be given if Google's "Disputed Final Jury Instruction Re Misappropriation by Use Under California and Federal Law" is given to the jury.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

### DISPUTED FINAL INSTRUCTION NO. 38 RE
### DEFEND TRADE SECRETS ACT—DATE OF ENACTMENT OFFERED BY
### SPACE DATA

A defendant cannot be liable under the federal Defend Trade Secrets Act unless: (1) trade secret misappropriation occurred on or after the date of its enactment; or (2) the defendant continued to use the plaintiff's trade secret on or after the date of enactment. Therefore, for Google to be liable for trade secret misappropriation under Federal law, Google must have misappropriated, or continued to use, Space Data's trade secrets on or after May 11, 2016.

If you find Google misappropriated or continued to use one or more of Space Data's trade secrets on or after May 11, 2016, and not others, then Google is liable for trade secret misappropriation under Federal law for the one or more trade secrets it misappropriated or continued to use on or after May 11, 2016.

A defendant is liable under the California law (the California Uniform Trade Secrets Act) even if misappropriation occurred prior to May 11, 2016 and the defendant did not continue to use the trade secret after May 11, 2016.  In other words, for the purposes of determining liability under California law, the May 11, 2016 date is irrelevant, and you are not to consider it.

**Argument:** Space Data's proposal clarifies for the jury that the May 11, 2016 date interjected by this instruction is wholly irrelevant to their consideration of Space Data's CUTSA claims, and thus eliminates any potential confusion.  Without this instruction, the risk to Space Data of jury confusion that results in application by the jury of the May 11, 2016 date to Space Data's CUTSA claim is considerable.  The absence of this language from the instruction would be manifestly prejudicial.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

### DISPUTED FINAL INSTRUCTION NO.38 RE
### DEFEND TRADE SECRETS ACT—DATE OF ENACTMENT OFFERED BY GOOGLE

A defendant cannot be liable under the federal Defend Trade Secrets Act unless: (1) trade secret misappropriation occurred on or after the date of its enactment; or (2) the defendant continued to use the plaintiff's trade secret on or after the date of enactment. Therefore, for Google to be liable for trade secret misappropriation under Federal law, Google must have misappropriated, or continued to use, Space Data's trade secrets on or after May 11, 2016.

If you find Google misappropriated or continued to use one or more of Space Data's trade secrets on or after May 11, 2016, and not others, then Google is liable for trade secret misappropriation under Federal law for the one or more trade secrets it misappropriated or continued to use on or after May 11, 2016.

**Authority**: *Wang v. Golf Tailor*, No. 17-CV-00898-LB, 2017 WL 2861111, at *4 (N.D. Cal. July 5, 2017) ("The DTSA applies only to misappropriations that occurred on or after the date of DTSA's enactment—May 11, 2016." (internal quotation marks, citations, and alterations omitted)); *Physicians Surrogacy, Inc. v. German*, 2017 WL 3622329, at *8 (S.D. Cal. Aug. 23, 2017) ("The DTSA only provides a cause of action for acts that occurred on or after the date of its enactment.").

**Argument**: The Parties' proposals differ only as to the final paragraph of Space Data's proposed instruction, which is unnecessary and duplicative of the CUTSA instructions. *See, e.g.*, *U.S. v. Sarno*, 73 F.3d 1470, 1485–86 (9th Cir. 1995) (affirming district court's rejection of proposed instructions as unnecessary because "they were adequately subsumed by the instructions given to the jury" and would have "unduly advanced the Defendants' interpretation of the evidence").

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

## DISPUTED FINAL INSTRUCTION NO. 39 RE
## SECRECY REQUIREMENT—CALIFORNIA AND FEDERAL LAW OFFERED BY
## SPACE DATA

Under California and Federal law, the secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information.  It may be disclosed to employees involved in Space Data's use of the trade secret as long as they are instructed to keep the information secret.  It may also be disclosed to nonemployees if they are obligated to keep the information secret.  However, it must not have been generally known to the public or to people who could obtain value from knowing it.

If you believe that Space Data has shown that Space Data's efforts to protect the secrecy of its trade secrets were reasonable under the circumstances, then you cannot find that Space Data's trade secrets were not secret absent affirmative evidence from Google to the contrary.

**Argument**: The first paragraph of Space Data's instruction, like Google's instruction, is based on **CACI 4403**.  Space Data's instruction merely clarifies that the jury is to use this instruction with respect to both CUTSA and DTSA, a point the parties do not dispute.

The second paragraph of Space Data's instruction is supported by case law.  Burden shifting as to the burden of production is a well-recognized principle under trade secret law:

> [Defendant] implies an extra burden requiring a trade secret plaintiff to disprove public disclosure as part of a prima facie case. But [defendant] cites no authority for this contention, and relevant California law is against it. The secrecy element of a misappropriation claim required [plaintiff] to make a prima facie showing on which the jury could find it made efforts that were "reasonable under the circumstances." [Plaintiff] did so here, triggering [defendant's] burden to produce evidence that [plaintiff] efforts were not reasonable or that its trade secrets were not, in fact, secret.

*See BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 331 F. Supp. 3d 977, 983 (N.D. Cal. 2018) (citations omitted).  Space Data's instruction accounts for the fact that the burden of persuasion remains with Space Data, by instructing that: "If **you believe** that Space Data has

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1  shown that Space Data's efforts to protect the secrecy of its trade secrets were reasonable …"

2  (Emphasis added).  The jury should be instructed accordingly.

3      The parties also dispute the placement of this instruction, and the following 4

4  instructions: Reasonable Efforts, Independent Development, Differing Products, and

5  Combination Trade Secrets.  Given the parties agree that these 5 instructions apply to both

6  CUTSA and DTSA, Space Data believes these instructions should come after the CUTSA

7  and DTSA specific instructions.  In this way, it will be clear to the jury that these 5

8  instructions should apply to both the Californian and Federal misappropriation claims.

9  Google contends these 5 instructions should appear prior to the DTSA specific instructions

10  (and not repeat in the DTSA specific instructions).  This formulation is prejudicial, as it risks

11  confusing the jury, which may forget or not understand that it is also to bear these 5

12  instructions in mind when considering Space Data's DTSA claim.

13      **Additional authority**: Cal. Civ. Code §§ 3426.1(d).

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 39 RE
SECRECY REQUIREMENT OFFERED BY GOOGLE**

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information. It may be disclosed to employees involved in Space Data's use of the trade secret as long as they are instructed to keep the information secret. It may also be disclosed to nonemployees if they are obligated to keep the information secret. However, it must not have been generally known to the public or to people who could obtain value from knowing it.

**Authority**: CACI § 4403.

**Argument**: The Court should adopt Google's proposed instruction, which is identical to the CACI instruction. In so doing, the Court should reject Space Data's attempt to deviate from the CACI instruction and (apparently) shift the burden of proof to Google on the secrecy element of Space Data's trade secret claim. Secrecy is a required element of a trade secret claim on which Space Data bears the burden of proof. Cal. Civ. Code § 3426.1(d); *DVD Copy Control Assn., Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004) ("[I]n order to qualify as a trade secret, the information must be secret, and must not be of public knowledge or of a general knowledge in the trade or business.") (citations omitted); *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304 (2002) ("Public disclosure, that is the absence of secrecy, is fatal to the existence of a trade secret."); *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998) ("A plaintiff seeking relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist.") (internal quotation marks omitted).

Contrary to Space Data's proposed instruction, the *burden of proof* on the secrecy element (as with all the claim elements) remains with Space Data throughout the trial, regardless of the evidence produced. The case Space Data cites for its deviation from CACI is clear on this point: "The burden of proof (which is synonymous with the burden of persuasion) on the elements of trade secret misappropriation does not shift during trial; it

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1  remains with Plaintiffs at all times." *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, No. 5:15-

2  CV-01370-EJD, 2018 WL 1794500, at *2 (N.D. Cal. Apr. 16, 2018) (citing *Sargent Fletcher,*

3  *Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1667 (2003)).  Space Data confuses the burden of

4  *production* with the burden of *proof*, the latter of which indisputably "remains with [Space

5  Data] at all times."  *Id.*  As *BladeRoom* explains:

> If Plaintiffs produce sufficient evidence to make out a prima facie misappropriation
> claim, the *burden of producing evidence*—not the *burden of proof*—shifts to [the
> defendant] to refute Plaintiffs' prima facie case.  Despite the shift, [the defendant] can
> choose not to offer any counter-evidence because Plaintiffs are still obligated to
> persuade the jury.

*Id.* (internal citations omitted).  Space Data's proposed instruction is wrong on the law.

Accordingly, Google's proposal should be adopted.

The Court should also adopt Google's placement of this instruction in the set of jury

instructions and Google's submission of this instruction only once in the set of jury

instructions.  Google is not aware of any authority that would suggest that the secrecy

requirement is different for CUTSA and DTSA.  Accordingly, the jury should only be

instructed on the secrecy requirement once, and it should be instructed on that requirement

immediately after (or as soon thereafter as is practicable) it is first introduced to the element

to which that requirement corresponds, *i.e.,* the instruction defining "trade secret."  To that

end, Google's proposed instruction "Defend Trade Secrets Acts—Introduction" explains to

the jury: "Unless I have instructed you otherwise, you are to apply the same definitions and

considerations when deciding Space Data's federal Defend Trade Secrets Act claim as when

you decide Space Data's claim for trade secret misappropriation under California law."

Google's approach minimizes the number of instructions that must be given to the jury while

also mitigating confusion about the fact that the DTSA deviates from CUTSA in only a few

key respects, which Google's proposed instructions highlight and explain.

**DISPUTED FINAL INSTRUCTION NO. 40 RE
REASONABLE EFFORTS TO PROTECT SECRECY—CALIFORNIA AND
FEDERAL LAW OFFERED BY SPACE DATA**

Under California and Federal law, to establish that Space Data's information are trade secrets, Space Data must prove that it made reasonable efforts under the circumstances to keep the information secret. "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Space Data, exercising due care to protect important information of the same kind. This requirement applies separately to each item that Space Data claims to be a trade secret.

In determining whether or not Space Data made reasonable efforts to keep the information secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

a. Whether hardware, documents or computer files containing the information were marked with confidentiality warnings;

b. Whether Space Data instructed its employees to treat the information as confidential;

c. Whether Space Data restricted access to the information to persons who had a business reason to know the information;

d. Whether Space Data kept the information in a restricted or secured area;

e. Whether Space Data required employees or others with access to the information to sign confidentiality or nondisclosure agreements;

f. Whether Space Data took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;

g. The extent to which any general measures taken by Space Data would prevent the unauthorized disclosure of the information;

h. Whether there were other reasonable measures available to Space Data that it did not take;

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

i.   Whether Space Data took measures similar to those taken by other persons in its industry; and

j.   Whether Space Data's measures were proportional given Space Data's resources. The presence or absence of any one or more of these factors is not necessarily determinative.

**Argument**: Both Space Data and Google's proposals are adapted from **CACI 4404**, and the proposals are identical in most respects.  The three points of dispute are:

(1) Google's use of the defined term "Asserted Trade Secret."  *See* above Space Data argument as to Disputed Instruction No. 27.

(2) Space Data's clarification that the jury is to use this instruction with respect to both CUTSA and DTSA, a point the parties do not dispute.

(3) Space Data's inclusion of sub-paragraphs i and j.  Space Data's inclusion of these sub-paragraphs is supported by CACI and case law.  CACI expressly provides for the listing of other factors: "[i. Specify other factor(s).];" "Use factor i to present additional factors." Accordingly, Google's argument that sub-paragraphs i and j are "wholly duplicative" of the CACI 4404's first paragraph is not well taken.  Further, the added factors are appropriate here.  Google intends to argue that Space Data's failure to recover 100% of its payloads was unreasonable.  Space Data intends to argue that the failure of a larger company in the same industry—Google—to recover a 100% of its payloads shows that Space Data made reasonable efforts to protect the secrecy of its information.  *See Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 725-726 (7th Cir. 2003) ("[W]e believe that, as part of the reasonableness inquiry, the jury could have considered the size and sophistication of the parties, as well as the relevant industry.  Both [plaintiff and defendant] were small toy companies, and [plaintiff] was the smaller and less experienced of the two … we conclude that there was sufficient evidence for the jury to determine that [plaintiff] took reasonable efforts to protect the secrecy of its concept") (finding that the evidence that defendant also routinely used only oral confidentiality agreements supported the jury's finding); *id*. at 725

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

("[W]e previously have recognized that only in an extreme case can what is a 'reasonable' precaution be determined as a matter of law, because the answer depends on a balance of costs and benefits that will vary from case to case"); *id*. at 724 ("Illinois courts have recognized on several occasions that the expectations for ensuring secrecy are different for small companies than for large companies"); *see also Goken Am., LLC v. Bandepalya*, No. 2:14-CV-1445, 2014 WL 6673830, at *6 (S.D. Ohio Nov. 24, 2014) ("[T]he fact that [plaintiff] shared presentations and purchase agreements with clients and potential clients does not mean that the files lose their status as trade secrets.  As Smith testified, it is common practice in the industry to have these communications with clients without a confidentiality agreement").

**Additional authority**: Cal. Civ. Code §§ 3426.1(d).

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 40 RE**
**REASONABLE EFFORTS TO PROTECT SECRECY OFFERED BY GOOGLE**

To establish that an Asserted Trade Secret is a trade secret, Space Data must prove that it made reasonable efforts under the circumstances to keep it secret. "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Space Data, exercising due care to protect important information of the same kind. This requirement applies separately to each item that Space Data claims to be a trade secret.

In determining whether or not Space Data made reasonable efforts to keep the Asserted Trade Secret secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

a. Whether hardware, documents or computer files containing the information were marked with confidentiality warnings;

b. Whether Space Data instructed its employees to treat the information as confidential;

c. Whether Space Data restricted access to the information to persons who had a business reason to know the information;

d. Whether Space Data kept the information in a restricted or secured area;

e. Whether Space Data required employees or others with access to the information to sign confidentiality or nondisclosure agreements;

f. Whether Space Data took any action to protect the specific information or whether it relied on general measures taken to protect its business information or assets;

g. The extent to which any general measures taken by Space Data would prevent the unauthorized disclosure of the information; and

h. Whether there were other reasonable measures available to Space Data that it did not take.

The presence or absence of any one or more of these factors is not necessarily determinative.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**Authority**: CACI § 4404.

**Argument**: Google's proposal follows the CACI instruction and Google sees no reason to deviate from that pattern instruction. There are two key differences between the parties' proposed instructions.

First, Google refers to the trade secrets at issue as the "Asserted Trade Secrets," while Space Data uses the more open-ended term "information." Given Space Data's insistence that there are two separate categories of "information" at issue in this lawsuit: (1) "confidential information" that does not qualify as a trade secret but that Google misused as part of breach of contract claim, and (2) "confidential information" that constitutes a trade secret that Google misappropriated, vaguely referring to the trade secrets as "information" in this instruction is likely to confuse the jury about the items of information that are at issue. Google's instruction is therefore clearer, more specific, and less likely to confuse the jury.

Second, Space Data's proposal adds two additional "factors," numbered "(i)" and "(j)" in Space Data's proposal. These deviations from the CACI instruction place unnecessary and undue emphasis on the added factors because they are wholly duplicative of the first paragraph of both parties' proposed instruction: "'Reasonable efforts' are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Space Data, exercising due care to protect important information of the same kind." CACI § 4404. Space Data's proposal should be rejected, as it places undue emphasis on Space Data's version of the facts by listing repetitious factors for consideration. *See, e.g.*, *United States v. Davis*, 597 F.2d 1237, 1240 (9th Cir. 1979) ("A trial judge may refuse an instruction if its language gives undue emphasis to [one party's] version of the facts rather than being a statement of appropriate principles of [the] law for the jury to apply to the facts, or if it would tend to influence the jury towards accepting [one party's] version of the facts."); *see also DeCaro v. Hasbro, Inc.*, 580 F.3d 55, 63 (1st Cir. 2009) ("a party can successfully appeal a legally correct jury instruction that places undue emphasis on

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

an aspect of the law that favors the other party."); *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 519 (8th Cir. 1984) ("Finally, we think this instruction was repetitious and that it placed undue emphasis on a matter favorable to A & P's case. In the past, we have noted that these characteristics may be sufficient to warrant reversal."); *U.S. v. Sarno*, 73 F.3d 1470, 1485–86 (9th Cir. 1995) (affirming district court's rejection of proposed instructions as unnecessary because "they were adequately subsumed by the instructions given to the jury" and would have "unduly advanced the Defendants' interpretation of the evidence"); *Howard v. Cincinnati Sheet Metal & Roofing Co.*, 234 F.2d 233, 236–37 (7th Cir. 1956) (remanding for new trial where jury instructions "unduly emphasized defendant's version of the case" and were repetitive of information already addressed by other instructions); *Dupre v. Fru–Con Eng'g Inc.*, 112 F.3d 329, 335 (8th Cir. 1997) ("Repetitious instructions that place undue emphasis on a certain aspect of a party's case so as to prejudice the jury require reversal.").

   The Court should also adopt Google's placement of this instruction in the set of jury instructions and Google's submission of this instruction only once in the set of jury instructions.  Google is not aware of any authority that would suggest that the definition of Reasonable Efforts to Protect Secrecy is different for CUTSA and DTSA.  Accordingly, the jury should only be instructed on Reasonable Efforts to Protect Secrecy only once, and it should be instructed on that concept immediately after (or as soon thereafter as is practicable) it is first introduced to the element to which that concept corresponds, *i.e.,* the instruction defining "trade secret."  To that end, Google's proposed instruction "Defend Trade Secrets Acts—Introduction" explains to the jury: "Unless I have instructed you otherwise, you are to apply the same definitions and considerations when deciding Space Data's federal Defend Trade Secrets Act claim as when you decide Space Data's claim for trade secret misappropriation under California law."  Google's approach minimizes the number of instructions that must be given to the jury while also mitigating confusion about the fact that the DTSA deviates from CUTSA in only a few key respects, which Google's proposed instructions highlight and explain.

**DISPUTED FINAL INSTRUCTION NO. 41 RE
INDEPENDENT DEVELOPMENT—CALIFORNIA AND FEDERAL LAW
OFFERED BY SPACE DATA**

Under California and Federal law, Google has the right to use technology and information that it independently developed on its own without the benefit of Space Data's asserted trade secrets.  Therefore, even if Space Data has a protectable trade secret in certain technology or other information, Google is free to use technology or information independently developed by Google.  Google cannot, however, use Space Data's asserted trade secrets in developing its technology or other information, nor can Google use Space Data trade secrets together with any technology or other information independently developed by Google

If you believe that Space Data has shown that Google had access to Space Data's trade secrets and that aspects of Google's Project Loon are similar to Space Data trade secrets, then you cannot find that Google independently developed its technology or other information absent affirmative evidence from Google to the contrary.

**Argument:** The parties' primary dispute pertains to Space Data's second paragraph. This paragraph is supported by case law.  Burden shifting as to the burden of production is a well-recognized principle under trade secret law.  *See Bal Seal Engineering v. Nelson Products*, 2018 WL 4697255, at * 7 (C.D. Cal. Aug. 3, 2018) ("In a trade secret case, 'disclosure of the secret to the defendant, followed by manufacture of a closely similar device by the defendant, shifts to the defendant the burden of going forward with evidence to prove, if it can, that it arrived at the process by independent invention.'"); *SleekEz, LLC v. Horton*, 2018 WL 1094297, at *7 (D. Mont. Jan. 8, 2018) ("[W]hen a defendant has access to a plaintiff's trade secrets in the course of a confidential relationship, the defendant's subsequent manufacturer of a closely similar device shifts the burden to the defendant to show it independently developed its product"); *Garter-Bare Co. v. Munsingwear Inc.*, 723 F. 2d 707, (9th Cir. 1984) ("[W]e find substantial evidence that Larsen did possess valuable secrets which he disclosed confidentially to Munsingwear pursuant to their agreement … we find substantial evidence that Munsingwear merchandised a garment that was very closely

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1    similar to the Larsen process.  This being so, the burden shifted to Munsingwear to show that

2    at the time, it could have arrived at the process by independent invention, inspection, or

3    reverse engineering"); *Polyone Corp. v. Lu*, No. 14 CV 10369, 2018 WL 4679577, at *12

4    (N.D. Ill. 2018), citing *Droeger v. Welsh Sporting Goods Corp*., 541 F.2d 790, 793 (9th Cir.

5    1976).  Space Data's instruction accounts for the fact that the burden of persuasion remains

6    with Space Data, by instructing that: "If **you believe** that Space Data has shown that Google

7    had access … and that aspects of Google's Project Loon are similar …"

8         Also, Google, again, inappropriately uses the defined term "Asserted Trade Secret."

9    *See* above Space Data argument as to Disputed Instruction No. 27.

10        Finally, the language in the last two sentences of Space Data's first paragraph is

11   clearer than Google's, reducing the chance for jury confusion.  For example, Space Data

12   clarifies what the "in doing so" in Google's instruction is: Google cannot use Space Data's

13   trade secrets to develop its technology and Google cannot use Space Data's trade secrets in

14   conjunction with its own technology.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 41 RE
INDEPENDENT DEVELOPMENT OFFERED BY GOOGLE**

Google has the right to use technology and information that it independently developed on its own without the benefit of Space Data's Asserted Trade Secrets.  Therefore, even if Space Data has a protectable trade secret in certain technology or other information, Google is free to independently develop and use the same or similar technology or information on its own.  Google cannot, however, use Space Data's Asserted Trade Secrets in doing so.

Space Data bears the burden of proving that Google did not independently develop any information that Space Data asserts is its trade secret.


**Authority**: Cal. Civ. § 3426.1(a) ("Reverse engineering or independent derivation alone shall not be considered improper means" of acquiring a trade secret); *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1670 (2003) ("Evidence of independent derivation or reverse engineering directly refutes the element of use through improper means."); *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, No. 5:15-CV-01370-EJD, 2018 WL 1794500, at *2 (N.D. Cal. Apr. 16, 2018) ("The burden of proof (which is synonymous with the burden of persuasion) on the elements of trade secret misappropriation does not shift during trial; it remains with Plaintiffs at all times.") (citing *Sargent Fletcher*, 110 Cal. App. 4th at 1667); *Rita Med. Sys., Inc. v. Resect Med., Inc.*, No. C 05-03291 WHA, 2007 WL 161049, at *8 (N.D. Cal. Jan. 17, 2007) ("Plaintiff has the burden of establishing that defendants did not independently derive trade-secret information.") (citing *Sargent Fletcher*, 110 Cal. App. 4th at 1669)).


**Argument**: Google's proposal more accurately reflects the law.  The law is clear that Space Data "has the burden of establishing that [Google] did not independently derive trade-secret information."  *Rita Med. Sys., Inc. v. Resect Med., Inc.*, No. C 05-03291 WHA, 2007 WL 161049, at *8 (N.D. Cal. Jan. 17, 2007) (citing *Sargent Fletcher, Inc. v. Able Corp.*, 110

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1  Cal. App. 4th 1658, 1669 (2003)).  The law is also clear that "[t]he burden of proof (which is

2  synonymous with the burden of persuasion) on the elements of trade secret misappropriation

3  does not shift during trial; it remains with Plaintiffs at all times."  *BladeRoom Grp. Ltd. v.*

4  *Emerson Elec. Co.*, No. 5:15-CV-01370-EJD, 2018 WL 1794500, at *2 (N.D. Cal. Apr. 16,

5  2018) (citing *Sargent Fletcher,* 110 Cal. App. 4th at 1667).  Independent development is not

6  an affirmative defense.  *Sargent Fletcher*, 110 Cal. App. 4th at 1669 ("The statutory design

7  indicates that the Legislature did not intend independent derivation or reverse engineering to

8  be new matter or an affirmative defense. The references to independent derivation and

9  reverse engineering are embedded within the definition of improper means.") (citing Cal.

10  Civ. Code § 3426.1(a)).

11      California courts have explicitly rejected Space Data's claim that a trade secret

12  defendant ever acquires the *burden of proof* on independent development.  The seminal case

13  on this point, widely cited by state and federal courts alike, is *Sargent Fletcher, Inc. v. Able*

14  *Corp.*, 110 Cal. App. 4th 1658 (2003).  In that case, the appellate court expended nearly eight

15  pages of analysis roundly rejecting Space Data's claim that a prima facie showing of

16  disclosure and close similarity of manufactured devices shifts the burden of proof to the

17  defendant on independent development.  *Id.* at 1666-74.  The court explained that it is the

18  *burden of production*, not the *burden of proof*, that shifts to the defendant on independent

19  development, and even then, only after the plaintiff proves disclosure of the trade secrets and

20  close similarity in the parties' manufactured devices.  *Id.*  The court also directly addressed

21  the authority relied upon by Space Data, the pre-CUTSA *Droeger v. Welsh Sporting Goods*

22  *Corp.* (541 F.2d 790 (9th Cir. 1976)) and its progeny (to which Space Data cites), explaining

23  that those cases more accurately "place[] the burden of proof on the plaintiff and describe[]

24  the shift of the burden of producing evidence to the defendant."  *Id.* at 1169.

25      *Sargent Fletcher* is not an aberration; state and federal courts have consistently

26  rejected Space Data's errant statement of law regarding burden shifting on use and

27  independent development.  *See, e.g.*, *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, No. 5:15-

28  CV-01370-EJD, 2018 WL 1794500, at *2 (N.D. Cal. Apr. 16, 2018) ("If Plaintiffs produce

sufficient evidence to make out a prima facie misappropriation claim, the *burden of producing evidence*—not the *burden of proof*—shifts to Emerson to refute Plaintiffs' prima facie case. . . Independent  derivation under CUTSA, therefore, is not an affirmative defense and a defendant does not have a 'burden of proof' to make that showing."); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 831528, at *19 (N.D. Cal. Jan. 10, 2013) ("Although A10 had the burden  to produce evidence of its independent derivation, the burden of persuasion that A10 in fact misappropriated the trade secrets and did not, for example, develop the ideas on its own was Brocade's burden throughout.  And so, to the extent that Brocade argues A10 had the burden to prove independent derivation, Brocade errs."); *Rita Med. Sys., Inc. v. Resect Med., Inc.*, No. C 05-03291 WHA, 2007 WL 161049, at *8 (N.D. Cal. Jan. 17, 2007) ("Plaintiff has the burden of establishing that defendants did not independently derive trade-secret information."); *In re Sotera Wireless, Inc.*, 591 B.R. 453, 461 (S.D. Cal. 2018).

Space Data's proposal additionally misstates the triggering event for the shift in the burden of production.  Only if Space Data proves by a preponderance of the evidence that it "***disclos[ed]** the trade secret to*" Google and that Google thereafter "***manufactur[ed] a closely similar device***" does the burden of production on independent development shift to Google. *Bal Seal Eng'g v. Nelson Prods.*, 2018 WL 4697255, at * 7 (C.D. Cal. Aug. 3, 2018) (emphasis added).  Space Data sets the bar far too low and its instruction should be rejected.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 42 RE**
**DIFFERING PRODUCTS, NON-COMMERCIAL USE, AND IMPROVEMENTS—**
**CALIFORNIA AND FEDERAL LAW OFFERED BY SPACE DATA**

Under both California and Federal law:

Use is not limited to direct copying, but includes studying, examining, consulting, employing, and any other means of exploiting Space Data's trade secrets, such as accelerating Google's Project Loon development timeline.

Misappropriation by use of trade secrets occurs even if Google's product or service differs in some respects from the trade secret. The use need not extend to every aspect or feature of a trade secret, and a trade secret need not be used in its original form. Google can be held liable for misappropriation for incorporating less than all of the elements of Space Data's trade secrets into Google's designs, for example.

Misappropriation by use can occur if Google used Space Data's trade secrets during the development and research phase of Project Loon. Misappropriation by use can occur if Google use was experimental. Commercial exploitation is not required to find trade secret misappropriation. There is no requirement that the trade secrets be in Google's final product or service.

If Google independently created improvements or otherwise modified a product or service feature, or created a new product or service feature, Google is still liable for trade secret misappropriation if the improved/modified/new feature is substantially derived from Space Data's trade secrets.

**Argument:** Both Space Data's and Google's instructions are meant to further clarify the concept of use. Space Data's instruction is fully supported by the case law:

1. **On use not being limited to direct copying**, see Restatement (Third) of Unfair Competition § 40 (Comments) (1995) ("There are no technical limitations on the nature of the conduct that constitutes 'use' of a trade secret for purposes of the rules stated in Subsection (b). As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

a 'use' under this Section.  Thus, marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret … all constitute 'use'"); Penultimate Jury Instructions on Trade Secret Misappropriation, No. XVI, *Waymo LLC v. Uber Tech. Inc*., No. 3:17-cv-00939-WHA (ECF 2449) (N.D. Cal. Jan. 3, 2018) ("Use is not limited to direct copying but includes studying and consulting.  For example, if someone took a copy of a secret design with him to his next employer and studied the copy while working on the next employer's own design, such studying would constitute use even though the two designs differed"); Waymo LLC's Objections and Proposed Modifications to the Penultimate Jury Instructions on Trade Secret Misappropriation at 5-6, *Waymo LLC v. Uber Tech. Inc*., No. 3:17-cv-00939-WHA (ECF 2550) (N.D. Cal. Jan. 29, 2018) ("Specifically, the jury should be instructed that "actual use" includes not just studying or copying, but other means of exploiting Waymo's trade secrets, such as accelerating Defendants' product development timeline …").

2. **On use not having to extend to every feature**, see *Skinmedica, Inc. v. Histogen Inc*., 869 F. Supp. 2d 1176, 1197 (N.D. Cal. 2012) ("Accordingly, this scattershot attempt to disclaim use of various elements of the claimed trade secrets does not foreclose the possibility that Histogen's process was not substantially derived from the claimed trade secrets, even if it differed in specifics from the process described therein"); *BladeRoom Grp. Ltd. v. Emerson Elec. Co*., 331 F. Supp. 3d 977, 986 (N.D. Cal. 2018) ("The court has previously explained that a plaintiff need not undertake a patent infringement analysis to prove an improper use claim, because ' 'use' is not such an inflexible term when it comes to trade secret misappropriation.'  Indeed, 'the actor need not use the trade secret in its original form,' and 'unauthorized use need not extend to every aspect or feature of the trade secret; use of any substantial portion of the secret is sufficient to subject the actor to liability'") (citations omitted); Final Jury Instruction No. 35 from *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, No. 5:15-

1  cv-01370-EJD (N.D. Cal. May 9, 2018) ("The use need not extend to every aspect or

2  feature of the trade secret, and the trade secret need not be used in its original form").

3  3.  **On commercial use not being required**, see *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th

4  1368, 1383 (2000) ("Employing the confidential information in manufacturing,

5  production, research or development, marketing goods that embody the trade secret,

6  or soliciting customers through the use of trade secret information, all constitute

7  use"); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1072

8  (N.D. Cal. 2005) ("Based on the California and federal cases presented by the parties,

9  the Court concludes that internal experimentation with trade secret information not

10  resulting in a market product can constitute use"); *InfoSpan, Inc. v. Emirates NBD*

11  *Bank PJSC*, 2015 WL 13357646, at * 5 (C.D. Cal. May 6, 2015).

12  4.  **On derivation**, see *Verigy US, Inc. v. Mayder*, 2008 WL 564634, at * 7 (N.D. Cal.

13  Feb. 29, 2008) ("To the extent it is merely an obvious evolution of a product based on

14  Verigy's trade secrets, STS's Flash Enhancer may nevertheless be the product of

15  trade secret misappropriation") & *10; *Skinmedica*, 869 F. Supp. 2d at 1197

16  ("However, this argument misunderstands the law on this point.  In the context of

17  trade secret misappropriation, information may be improperly 'used' in that it is

18  unlawfully acquired and then built upon or modified before being disclosed or benefit

19  derived"); *Speech Tech. Assocs. V. Adaptive Commc'n Sys., Inc.*, 1994 WL 449032, at

20  *10 (N.D. Cal. Aug. 16, 1994); *InfoSpan*, 2015 WL 13357646, at *5; *BladeRoom*,

21  331 F. Supp. 3d at 987

22  The jury should be instructed as to the proper scope of the term "use" under trade

23  secret law.

24  Not only is Google's proposal insufficient, but it is prejudicially confusing.  While

25  pointing to the fact that both Space Data and Google use balloons is insufficient to prove use,

26  the jury is properly supposed to take into account similarity in determining use.  This is

27  because, as has been long and well recognized, trade secret use can often only be proved by

28  circumstantial evidence.  *See, e.g., Bladeroom Grp. Ltd. v. Emerson Elec. Co.*, 331 F. Supp.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

3d 977, 984 (N.D. Cal. 2018) ("It is well recognized with respect to trade secrets that:
misappropriation and misuse can rarely be proved by convincing direct evidence.  In most
cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence");
*UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 944 (N.D. Cal.
2007).  In fact, as explained above, there is a well-recognized burden shift on a showing of
access and *similarity*.  *See* above Space Data argument as to Disputed Instruction No. 41.

Google's *O2 Micro*. quote is incomplete.  In that case "[T]he **parties agree[d]** that
use does not mean mere possession of a trade secret or mere internal discussion within the
company of a trade secret."  *O2 Micro*, 399 F. Supp. 2d at 1072 (emphasis added).  In any
event, Space Data's proposal does not say that mere possession, or internal discussion—
standing—on its own, constitutes use.  However, per the clear language of the relevant
statutes, internal discussions that violate a contractual duty constitute actionable use.

Google's arguments against Space Data's proposal with respect to "harm" and
"competitive advantage" ignore the fact that the jury will read these instructions in
conjunction with instructions on unjust enrichment and independent economic value.

Google does not even attempt to explain why the concept of "employing" the trade
secrets in, for example, Google's balloon systems, is not a use.

Finally, Google, again, inappropriately uses the defined term "Asserted Trade
Secrets."  *See* above Space Data argument as to Disputed Instruction No. 27.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 42 RE MISAPPROPRIATION—GENERAL SIMILARITIES INSUFFICIENT OFFERED BY GOOGLE**

To establish misappropriation by use, it is not sufficient for Space Data to establish that Google possessed Space Data's Asserted Trade Secrets or even internal discussion of an Asserted Trade Secret. General similarity between Google's and Space Data's products or technology is also not sufficient to prove misappropriation by use. Rather, Space Data must prove that Google actually used the specific Asserted Trade Secrets in connection with manufacturing, producing, or researching and developing its balloon communication project.

**Authority**: *S. Cal. Inst. of Law v. TCS Educ. Sys.*, No. CV 10-8026 PSG (AJWx), 2011 WL 1296602, at *7 (C.D. Cal. Apr. 5, 2011) (to maintain a claim for misappropriation, a plaintiff may not allege "[m]ere possession of trade secrets") (quoting *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1279 (2009)); *02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1072 (N.D. Cal. 2005), *amended sub nom. O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070 (N.D. Cal. 2006), *aff'd*, 221 F. App'x 996 (Fed. Cir. 2007), *and aff'd*, 221 F. App'x 996 (Fed. Cir. 2007) ("[U]se does not mean mere possession of a trade secret or mere internal discussion within the company of a trade secret."); *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (2000) ("Employing the confidential information in manufacturing, production, research or development, marketing goods that embody the trade secret, or soliciting customers through the use of trade secret information, all constitute use."); *Space Data Corp. v. Alphabet Inc.*, No. 16-cv-03260 (N.D. Cal. May 9, 2019) (Space Data must establish "that Google used Space Data's actual trade secrets and not merely general product features or characteristics") (relying on *Stratienko v. Cordis Corp.*, 429 F.3d 592, 602 (6th Cir. 2005)); *see also Contour Design, Inc. v. Chance Mold Steel Co.*, 693 F.3d 102, 109-110 (1st Cir. 2012); *Luiginos, Inc. v. Peterson*, 317 F.3d 909, 912-13 (8th Cir. 2003) (access to plaintiff's confidential information and "superficial similarity between . . . [plaintiff's and defendant's] products is insufficient to support an

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1  inference" of misappropriation); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989

2  (S.D. Cal. July 6, 2012) (a party cannot prove trade secret misappropriation by demonstrating

3  that an individual's access to trade secrets will "inevitably lead" to the disclosure of those

4  secrets).

5

6  **Argument**: Space Data's proposed instruction grossly misrepresents the law on

7  misappropriation by use by dramatically lowering the bar for liability.  For example, Space

8  Data's claim that misappropriation by use includes "studying [or] examining" Space Data's

9  trade secrets misleads the jury into thinking that the mere observation of Space Data's

10  alleged trade secrets gives rise to liability.  Improper use creating liability requires some

11  exploitation of the trade secrets, *i.e.*, some actual *use* of the trade secrets.  The Restatement of

12  Unfair Competition emphasizes that "use" requires actual exploitation of the trade secret

13  information resulting in damages, and "if the contribution made by the trade secret is so

14  slight that the actor's product or process can be said to derive from other sources of

15  information or from independent creation, the trade secret has not been 'used' for purposes of

16  imposing liability."  Restatement (Third) of Unfair Competition, § 40 cmt. c (Am. Law Inst.

17  1995).  Recognizing that "use" giving rise to liability must result in some actual harm or

18  competitive advantage, the Ninth Circuit has explained: "The defendant must have actually

19  put the trade secret to some commercial use," and "a plaintiff must necessarily demonstrate

20  that the defendant received some sort of unfair trade advantage."  *JustMed, Inc. v. Byce*, 600

21  F.3d 1118, 1130 (9th Cir. 2010) (quoting *Univ. Computing Co. v. Lykes–Youngstown Corp.*,

22  504 F.2d 518, 539 (5th Cir. 1974) and *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1325

23  (5th Cir. 1994)).  Indeed, the Directions for Use for CACI 4400 explain with respect to the

24  trade secret instructions that "the jury should be instructed only on matters relevant to

25  damage claims."  CACI 4400 Directions for Use; CACI 4405 Directions for Use.  Space

26  Data has never disclosed any theory that Google's "studying, examining, [or] consulting" of

27  the alleged trade secrets, as opposed to actual exploitation by way of Google's

28  implementation of Space Data's alleged trade secrets into its Loon technology, resulted in

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1    some harm or unjust enrichment.  The instructions on misappropriation by use should be

2    limited to Space Data's appropriately disclosed theories of liability.

3         Space Data's proposed instruction is also problematic for a number of other reasons.

4    Space Data's request that the Court instruct the jury that improper use can include employing

5    Space Data's trade secrets to "accelerat[e] Google's Project Loon development timeline" is

6    less a statement of law and more an undue emphasizes Space Data's preferred theories.  *Gill*

7    *v. Manuel*, 488 F.2d 799, 802 (9th Cir. 1973) ("Repetitious instructions which place undue

8    emphasis on matters favorable to either side constitute reversible error.") (quotations

9    omitted).  And Space Data's proposed instruction that "Google can be held liable for

10   misappropriation for incorporating less than all of the elements of Space Data's trade secrets

11   into Google's designs" is not actually supported by Space Data's cited authority.  To the

12   contrary, the case Space Data apparently cites for this contention, *InfoSpan, Inc. v. Emirates*

13   *NBD Bank PJSC*, 2015 WL 13357646 (C.D. Cal. May 6, 2015), actually held that "taking a

14   ***bundle of trade secrets*** and not using the ***entire bundle***" could still count as "use"—not that

15   use of only ***part*** of a ***single*** alleged trade secret triggers liability.  *Id.* at *5 (emphasis added).

16   Moreover, missing from Space Data's heavy-handed discussion of the proper scope of

17   improper use is the statement of law provided in Google's proposed instruction: general

18   similarities in the two companies' technologies are not enough to constitute

19   misappropriation; Google must have actually used the specific asserted trade secrets.  *See*

20   *Space Data Corp. v. Alphabet Inc.*, No. 16-cv-03260 (N.D. Cal. May 9, 2019) (Space Data

21   must establish "that Google used Space Data's actual trade secrets and not merely general

22   product features or characteristics") (*relying on Stratienko v. Cordis Corp.*, 429 F.3d 592,

23   602 (6th Cir. 2005).  The jury should be instructed on a fundamental principle of trade secret

24   law: access to plaintiff's confidential information and "superficial similarity between . . .

25   [plaintiff's and defendant's] products is insufficient to support an inference" of

26   misappropriation.  *Luigino's, Inc. v. Peterson*, 317 F.3d 909, 912-13 (8th Cir. 2003).

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 43 RE
COMBINATIONS AS TRADE SECRETS—CALIFORNIA AND FEDERAL LAW
OFFERED BY SPACE DATA**

Under both California and Federal law, combinations of public information from a variety of different sources when combined in a novel way can be a trade secret. It does not matter if a portion of the trade secret is generally known or is readily ascertainable. It does not matter that every individual portion of the trade secret is generally known or readily ascertainable, so long as the combination is not generally known and is not readily ascertainable.

For example, even if all aspects of a trade secret are disclosed in journals, reference books, or published materials, the information can still be a trade secret if the journals, reference books, or published materials are unlikely to come to the attention of a person who can obtain economic value from its use, or if the combination of the information is novel.

**Authority**: Space Data's proposed instruction is easy to understand and supported by case law. *See 02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1074-75 (N.D. Cal. 2005) ("The jury, however, could have reasonably concluded that the combination of the different characteristics was the trade secret. The jury was instructed that: Combinations of public information from a variety of different sources when combined in a novel way can be a trade secret. It does not matter if a portion of the trade secret is generally known, or even that every individual portion of the trade secret is generally known, as long as the combination of all such information is not generally known"); *Leatt Corp. v. Innovative Safety Tech., LLC*, 2010 WL 1526382, at *6 (S.D. Cal. Apr. 15, 2010) ("[T]he focus is on the information or product as a whole, not its individual components … even assuming all of the individual features of Prototype 2 were present in … any other device available in the marketplace, that does not mean the combination of those features was known to or reasonably ascertainable by others in the industry"); *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1194 (S.D. Cal. 2012); *United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016) ("But he overlooks the principle that a trade secret may consist of

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

a compilation of data, public sources or a combination of proprietary and public sources");

*Verigy US, Inc. v. Mayder*, 2008 WL 564634, at *6 (N.D. Cal. Feb. 29, 2008).

Further, Space Data's example is supported by the comments to the Third Restatement of Unfair Competition: "Similarly, the theoretical possibility of reconstructing the secret from published materials containing scattered references to portions of the information or of extracting it from public materials unlikely to come to the attention of the appropriator will not preclude relief …."  Restatement (Third) of Unfair Competition § 39 (1995).

Google's proposal, on the other hand, is impenetrable to a juror.  Phrases such as "unified process, design, and operation," "interoperate," and "functionally interrelated" are simply not helpful to the trier of fact.

Google's proposal is also prejudicial because it implies that portions, or all components, of at least some of Space Data's trade secrets are publicly disclosed: "[c]ertain of Space Data's Asserted Trade Secrets are combinations … A trade secret can exist in a combination … each of which … is in the public domain."  It is for the jury to decide whether any component, or all components, of any of Space Data's trade secrets have been publicly disclosed.

Google's proposal is also prejudicial and confusing in its use of the phrase "unique and novel," which suggest that these two concepts are separate, and that the jury must find both.  There is no "unique and novel" requirement for combination trade secrets.

Google's proposal also includes a requirement that Space Data must have actually used its trade secret in its business.  But, neither CUTSA nor DTSA contain such a requirement.  *See* Cal. Civ. Code § 3426.1(d) (trade secret definition) & 18 U.S.C. § 1839(3) (trade secret definition); *see also Learning Curve Toys, Inc. v. PlayWood Toys, Inc*., 342 F.3d 714, 727 (7th Cir. 2003) ("It is irrelevant under Illinois law that PlayWood did not actually use the concept in its business.  'The proper criterion is not 'actual use' but whether the trade secret is 'of value' to the company"); Unif. Trade Secrets Act § 1, Definitions (Comments) ("The definition of 'trade secret' contains a reasonable departure from the Restatement of

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

Torts (First) definition which required that a trade secret be 'continuously used in one's business.'  The broader definition in the proposed Act extends protection to a plaintiff who has not yet had an opportunity or acquired the means to put a trade secret to use'").

Google's argument against Space Data's proposal with respect to "competitive advantage" ignores the fact that the jury will read this instruction in conjunction with an instruction on independent economic value.

Finally, Google, again, inappropriately uses the defined term "Asserted Trade Secrets."  *See* above Space Data argument as to Disputed Instruction No. 27.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 43 RE
COMBINATION TRADE SECRETS OFFERED BY GOOGLE**

Certain of Space Data's Asserted Trade Secrets are combinations of separate pieces of information.  A trade secret can exist in a combination of components, each of which, by itself, is in the public domain, but the unified process, design, and operation of which, in unique and novel combination, affords Space Data a competitive advantage.  An asserted combination trade secret must be composed of elements that interoperate to form a unit and that are functionally interrelated such that they form a single process that should properly be analyzed as a single trade secret.  Additionally, Space Data must have actually used the asserted combination trade secret as part of its business and the combination of information cannot be readily ascertainable or generally known.

**Authority**: *United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016); *Vermont Microsystems v. Autodesk, Inc.*, 88 F.3d 142, 147 (2d Cir. 1996); *O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, Inc., 420 F. Supp. 2d 1070, 1089-90 (N.D. Cal. 2006); *Hertz v. Luzenac Group*, 576 F.3d 1103, 1109-10, 1114-15 (10th Cir. 2009); *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003); *Lawfinders Assocs., Inc. v. Legal Research Ctr., Inc.*, 65 F. Supp. 2d 414, 418, 423, (N.D. Tex. 1999), *aff'd*, 193 F.3d 517 (5th Cir. 1999); James Pooley, *et al.*, *Trade Secrets Practice in California* ¶ 1.9A (CEB 2007); Graves and Macgillivray, *Combination Trade Secrets and the Logic of Intellectual Property*, 20 Santa Clara Computer & High Tech. L.J. 261, 277 (2004).

**Argument**: Google's proposal more accurately reflects the law on combination trade secrets.  In fact, the second sentence of Google's proposal is a near-verbatim articulation of the law on combination trade secrets from *United States v. Nosal*.  844 F.3d 1024, 1042 ("A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process design and operation of which in unique combination affords a competitive advantage and is a protectable trade secret.")

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1   (citing *Computer Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1074 (7th Cir. 1992); *see*

2   *also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1089-90 (N.D.

3   Cal. 2006) (combination must combine information "in a novel way").

4         Space Data's proposal is misleading and inaccurate.  Most importantly, it ignores the

5   requirements that the combination trade secret "afford[] a competitive advantage" and be

6   comprised of elements that form a "unified process" that interoperate to form a unit.  *Nosal*,

7   844 F.3d at 1042.  *See also Vermont Microsystems, Inc. v. Autodesk, Inc.*, 88 F.3d 142, 147

8   (2d Cir. 1996) ("unified process"); *Harbor Software, Inc. v. Applied Sys., Inc.*, 936 F. Supp.

9   167, 172 (S.D. N.Y. 1996) ("unified process design" and "unique combination" of elements);

10  *Computer Care v. Service Sys. Ent., Inc.*, 982 F.2d 1063 (7th Cir. 1992) ("unified process

11  design and operation"); *Julie Research Labs. v. Select Photographic Eng'g, Inc.*, 810 F.

12  Supp. 513, 519 (S.D. N.Y. 1992) (elements must be "combined into a unified process or

13  operation which in unique combination affords a competitive advantage" or be "linked

14  together or arranged in a unique way to produce a singular product"); *Integrated Cash Mgmt.*

15  *Serv. v. Digital Trans., Inc.*, 920 F.2d 171 (2d Cir. 1990) (discussing "manner in which

16  ICM's generic utility programs *interact*"); *Q-Co Indus. Inc. v. Hoffman*, 625 F. Supp. 608,

17  617 (S.D. N.Y. 1985) ( "unified process"); *Cybertek Computer Prods., Inc., v. Whitfield*, 203

18  U.S.P.Q. 1020, 1024 (Cal. Super. Ct. 1977) ( "the specifications of these basic mechanical

19  elements *and their relationship to each other* embodied in plaintiff's machine were not

20  publicly known"); *Winston Research Co. v. Minn. Mining & Mfg. Co.*, 350 F.2d 134, 139

21  (9th Cir. 1965) ("the specifications of these basic mechanical elements and *their relationship*

22  *to each other*" in the machine made their combination a secret); *Ferroline Corp. v. General*

23  *Aniline & Film Corp.*, 207 F.2d 912, 921 (7th Cir. 1953) ("*interrelated parts* represented a

24  valuable contribution arising from plaintiff's independent efforts.").  Space Data's proposal

25  would allow a plaintiff to avoid the dispositive effect of publicly disclosing disparate trade

26  secrets by combining the publicly disclosed information into a made-for-litigation

27  "combination trade secret," even if the plaintiff never used the information in unique

28  combination and never received any competitive advantage from use of the information in

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

1    that unique combination.

2         Additionally, Space Data incorrectly states that a combination trade secret qualifies

3    for protection "so long as the combination is not generally known ***and*** is not readily

4    ascertainable." (emphasis added).  A trade secret, combination or otherwise, cannot be a

5    trade secret if either of those things is true.  18 U.S.C § 1839(3); Cal. Civ. Code §

6    3426.1(d)(1).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1

**STIPULATED FINAL INSTRUCTION NO. 44 RE
AFFIRMATIVE DEFENSE TO MISAPPROPRIATION—
STATUTE OF LIMITATIONS—CALIFORNIA AND FEDERAL LAW**

2

3    Google claims that Space Data's claims for misappropriation of trade secrets were not

4    filed within the time set by law.  To succeed on this defense, Google must prove that the first

5    claimed misappropriation of Space Data's trade secrets occurred before June 13, 2013, which

6    was three years before Space Data filed its complaint in this case.

7    However, even if the claimed misappropriation occurred before June 13, 2013, Space

8    Data's lawsuit was still filed on time if Space Data proves that before June 13, 2013, it did

9    not discover, nor with reasonable diligence should have discovered, that Google had

10   misappropriated the claimed trade secrets.

11

12   **Authority**: adapted from CACI 4421; Eleventh Circuit Pattern Jury Instructions,

13   Civil Cases (2019), § 11.2; Cal. Civ. Code § 3426.6; 18 U.S.C. § 1836(d); *Alexander v.*

14   *Exxon Mobil*, 219 Cal. App. 4th 1236, 1251 (2013).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**STIPULATED FINAL INSTRUCTION NO. 45 RE
REMEDIES FOR MISAPPROPRIATION OF TRADE SECRET—CALIFORNIA
AND FEDERAL LAW**

If Space Data proves that Google misappropriated any of Space Data's trade secrets under either California or Federal law, then Space Data is entitled to recover damages if the misappropriation caused Google to be unjustly enriched.

**Authority**: CACI 4409.

1

2

### STIPULATED FINAL INSTRUCTION NO. 46 RE MISAPPROPRIATION UNJUST ENRICHMENT—CALIFORNIA AND FEDERAL LAW

3

4

Google was unjustly enriched if its misappropriation of Space Data's claimed trade secrets caused Google to receive a benefit that it otherwise would not have achieved.

5

6

Space Data asserts that Google was unjustly enriched in an amount equal to what Space Data claims it cost Space Data to research and develop the claimed trade secrets.

7

8

To decide the amount of any unjust enrichment, you must determine the value of Google's benefit that would not have been achieved except for its misappropriation.

9

10

Your award must be based upon evidence, and not upon speculation, guesswork or conjecture.

11

**Authority**: CACI 4410.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**DISPUTED FINAL INSTRUCTION NO. 47 RE
EXEMPLARY DAMAGES FOR WILLFUL AND MALICIOUS
MISAPPROPRIATION—CALIFORNIA AND FEDERAL LAW OFFERED BY
SPACE DATA**

If you decide that Google's conduct caused Space Data harm under either California or Federal law, you must decide whether that conduct justifies an award of exemplary damages. The purposes of exemplary damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

In order to recover exemplary damages, Space Data must prove that Google acted willfully and maliciously. To do this, Space Data must prove one of the following:

1.  That the willful and malicious conduct was committed by one or more officers, directors, or managing agents of Google, who acted on behalf of Google;

2.  That the willful and malicious conduct was authorized by one or more officers, directors, or managing agents of Google; or

3.  That one or more officers, directors, or managing agents of Google knew of the conduct constituting willful and malicious conduct and adopted or approved that conduct after it occurred.

"Willfully" means that Google acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that Google acted with an intent to cause injury, or that Google's conduct was despicable and was done with a willful and knowing disregard for the rights of others.

"Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. Google acted with "knowing disregard" if it was aware of the probable consequences of its conduct and deliberately failed to avoid those consequences.

An employee is a "managing agent" if he or she exercise substantial independent authority and judgment in his or her corporate decision making such that his or her decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of exemplary damages, and you are not required to award any exemplary damages. If you decide to award exemplary damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was Google's conduct? In deciding how reprehensible Google's conduct was, you may consider, among other factors:

1. Whether the conduct caused physical harm;

2. Whether Google disregarded the health or safety of others;

3. Whether Space Data was financially weak or vulnerable and Google knew Space Data was financially weak or vulnerable and took advantage of it;

4. Whether Google's conduct involved a pattern or practice; and

5. Whether Google acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of exemplary damages and Space Data's harm or between the amount of exemplary damages and potential harm to Space Data that Google knew was likely to occur because of its conduct?

(c) In view of Google's financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the exemplary award above an amount that is otherwise appropriate merely because Google has substantial financial resources. You may determine an amount of exemplary damages up to two times the amount awarded as actual damages for misappropriation of trade secrets. Any award you impose may not exceed Google's ability to pay.

Exemplary damages may not be used to punish Google for the impact of its alleged misconduct on persons other than Space Data.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**Argument:**  There is ample evidence of willful and malicious conduct, which Space Data will put on at trial.  Space Data's instruction is predominately modelled after CACI 3945, which is from CACI's general damages section.  Google bases its model on CACI 4411, which is from CACI's trade secret section.  The dispute here centers around the issues of whether, in this federal action, the question as to the amount of punitive damages to be awarded is for the jury or the Court.  Space Data says it is for the jury; Google says it is for the Court.  This issue is also raised by Google's Motion *in Limine* No. 3, which Space Data opposes. *See* ECF 585.

While "[t]he Ninth Circuit has not yet addressed the question" of whether a federal jury determines the quantum of exemplary/punitive damages, other courts have.  *See* Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2303 (State Law Not Controlling).  In *Jones v. United Parcel Service, Inc*., a case Google relied on extensively in the *Waymo v. Uber* dispute, the court found that the jury decided the amount of exemplary damages as federal law governed, and that the Seventh Amendment right to jury trial, as indicated by Supreme Court decisions, "includes the right to a jury determination regarding the amount of punitive damages."  *See Jones v. United Parcel Service, Inc*., 674 F. 3d 1187, 1206 (10th Cir. 2012) (addressing the federal punitive damages jury right in the context of a state retaliatory discharge claim); *see also MKB Constructors v. Am. Zurich Ins. Co*., No. C13-0611JLR, 2015 WL 1188533, at * 29 (Mar. 16, 2015) (denying new trial request as to a jury enhanced damages award under a Washington state statute that said the "superior court may" enhance, because "in federal court, the issue of enhanced damages must be resolved by the jury to pass muster under the Seventh Amendment"); *id*. at *30 ("'The Ninth Circuit has yet to rule on this issue. Nevertheless, the Third Circuit, relying again on [*In Curtis v. Loether*, 415 U.S. 189, (1974)] has ruled that the punitive damages remedy in a statutory bad faith action based on a Pennsylvania statute that is similar to IFCA 'triggers the Seventh Amendment jury trial right'").

The Fourth Circuit addressed this precise question, in the context of Maryland's trade secret statute, and reached exactly the same conclusion.  *See Trandes Corp. v. Guy F.*

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

1    *Atkinson Co.*, 996 F.2d 655, 666 (4th Cir. 1993) ("Although [defendant] correctly interprets

2    [MUTSA], it overlooks the fact that, in federal court, any award of punitive damages

3    presents a factual question that must be resolved by the jury.  Consequently, the district court

4    properly submitted the issue of punitive damages to the jury").

5        Google understood this point once.  In the *Waymo v. Uber*, and as a trade secret

6    plaintiff in federal court, Google insisted that the jury decide the amount of exemplary

7    damages.  *See* ECF 588-20 (Waymo's Submission in Response to Defs. Br. on the

8    Penultimate Jury Instructions) at 3:28 ("The Seventh Amendment requires that the jury

9    decide the amount of exemplary damages"), 4:1-14 (discussing *Jones*) & 4:24-25 ("The

10   California rule assigning exemplary damages to the jury is procedural, not substantive").

11       The district court cases Google now cites do not address the issue of whether federal

12   or state procedural law governs the right to jury trial in federal court.  These cases involve

13   post-verdict requests for CUTSA enhancement, which begs the issue.  *See Mattel, Inc. v.*

14   *MGA Entm't, Inc.*, 801 F. Supp. 2d 952, 952 (C.D. Cal. 2011); *O2 Micro Int'l Ltd. v.*

15   *Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1068 (N.D. Cal. 2005); *EnerTrode, Inc.*

16   *v. General Capacitor Co., Ltd.*, No. 16-cv-02458-HSG, 2019 WL 1715170, at *1 (N.D. Cal.

17   Apr. 17, 2019); *Bladeroom Grp. Ltd. v. Emerson Elec. Co.*, No. 5:15-CV-01370-EJD, 2019

18   WL 1117538, at *1 (N.D. Cal. Mar. 11, 2019) ("This order is the last in a series of rulings

19   addressing post-verdict motions …").

20       As to the Ninth Circuit and U.S. Supreme Court cases cited by Google, those cases

21   deal with a separate aspect of the Seventh Amendment, the Reexamination Clause, and not

22   the jury right.  As the Tenth Circuit in *Jones* explained:

23       UPS argues that because the *Cooper* Court held that the amount of a punitive
24       damage award is not a factual determination, this issue is beyond the scope of
         the Seventh Amendment and may be decided by a court.  Not only do we
25       disagree with this argument, but also we conclude that *Cooper* actually
         supports Jones's position regarding the unconstitutionality of § 60–3702(a)
26       when applied in federal court.  UPS's reliance on *Cooper* is misplaced
         because the Court's decision was based on the "re-examination clause" of the
27       Seventh Amendment, not the "trial by jury clause." 532 U.S. at 437 n. 11, 121
         S.Ct. 1678.  In *Cooper,* the Court noted that while it had previously held that "
28       'it is the peculiar function *of the jury* to' set the amount of punitive damages,"

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

*id.* (quoting *Barry v. Edmunds,* 116 U.S. 550, 565, 6 S.Ct. 501, 29 L.Ed. 729 (1886) (emphasis added)), this did not mean that "the amount of punitive damages imposed by the jury is itself a 'fact' within the meaning of the Seventh Amendment's Reexamination Clause." *Id.*

*Jones*, 674 F. 3d at 1205 (emphasis in original).

Google is wrong on CUTSA.  Google is also wrong on DTSA.  While DTSA uses the word "court," it does not do so in the same way as CUTSA (or Section 284 of the Patent Act).  DTSA uses the word "court" to describe the basic determination of all relief, including underlying damages.  *See* 18 U.S.C. § 1836(b)(3) ("REMEDIES … a court may … award … damages for actual loss caused by the misappropriation … damages for any unjust enrichment … award exemplary damages …").  In this regard, DTSA's language and structure departs significantly from CUTSA's.  It is beyond dispute that the jury determines the basic entitlement to compensatory damages, and hence the word "court" cannot mean what Google says it means.  In analogous situations, the U.S. Supreme Court has upheld a federal plaintiff's right to a jury trial on **all** aspects of punitive damages.  *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998) (holding that despite the use of the word "court" in Section 504(c) of the Copyright Act, plaintiff had a Seventh Amendment right to a jury trial "on all issues pertinent to an award of statutory damages") (Section 504(c) includes an enhancement provision); *Curtis v. Loether*, 415 U.S. 189, 195 (1974) ("We think it is clear that a damages action under [Section 812 of the Civil Rights Act] is an action to enforce 'legal rights' within the meaning of our Seventh Amendment decisions … More important, the relief sought here—actual and punitive damages—is the traditional form of relief offered in the courts of law").  Additionally, the Eleventh Circuit's DTSA pattern jury instructions gives the amount question to the jury.  *See* ECF 588-21.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1

2

**DISPUTED FINAL INSTRUCTION NO. 47 RE
PUNITIVE DAMAGES FOR WILLFUL AND MALICIOUS
MISAPPROPRIATION OFFERED BY GOOGLE**

3

4

5

6

If you decide that Google's misappropriation caused Space Data harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed Space Data and to discourage similar conduct in the future.

7

8

9

10

In order to recover punitive damages, Space Data must prove by clear and convincing evidence that Google acted willfully and maliciously. You must determine whether Google acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages. I will calculate the amount later.

11

12

13

"Willfully" means that Google acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

14

15

16

"Maliciously" means that Google acted with an intent to cause injury, or that Google's conduct was despicable and was done with a willful and knowing disregard for the rights of others.

17

18

19

20

"Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. Google acted with knowing disregard if it was aware of the probable consequences of its conduct and deliberately failed to avoid those consequences.

21

22

**Authority**: CACI § 4411.

23

24

25

26

27

28

**Argument**: As an initial matter, an instruction on willful and malicious misappropriation should only be given "if there is evidence at trial that Google acted willfully and maliciously, so as to support an award of punitive damages." CACI 4411, Directions for Use (citing Cal. Civ. Code § 3426.3(c)); *see also People v. Mentch,* 45 Cal. 4th 274, 290, 195 P.3d 1061, 1071 (2008) (trial courts are "responsible for acting as gatekeepers

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

and determining whether the evidence presented" supports the proposed instruction); *United States v. Bailey*, 444 U.S. 394, 395, 100 S. Ct. 624, 627, 62 L. Ed. 2d 575 (1980) (finding that party was "not entitled to any instruction on duress or necessity" where "evidence and testimony were lacking").  Because there is no evidence that Google acted willfully and maliciously, this is instruction is unnecessary and prejudicial.

Even if the Court were to instruct the jury on willful and malicious misappropriation, the instruction should conform with the Judicial Council of California model instruction on punitive damages for willful and malicious misappropriation.  Here, Space Data's proposed instruction asks the jury to determine the amount of punitive damages; however, under CUTSA, the Court—not the jury—must decide the amount of punitive damages.  *See* Cal. Civ. Code § 3426.3(c) ("If willful and malicious misappropriation exists, the ***court*** may award exemplary damages in an amount not exceeding twice any award made under subdivision (a) or (b).");  CACI 4411 ("You must determine whether [Google] acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages.  I will calculate the amount later.").  Similarly, under the DTSA, "a court may…award…exemplary damages in an amount not more than 2 times the amount of damages[.]"  18 U.S.C. § 1836(3)(C).  Notably, the comments to the Uniform Trade Secrets Act—on which both the California Uniform Trade Secrets Act and Defend Trade Secrets Act are based—states that the "provision follows federal patent law in leaving discretionary trebling to the judge even though there may be a jury[.]"  *See* Uniform Trade Secrets Act § 3, 2005 com.  Thus, "[a]lthough a jury must determine whether there was willful and malicious misappropriation, the Court has the discretion to award exemplary damages."  *EnerTrode, Inc. v. Gen. Capacitor Co*., No. 16-CV-02458-HSG, 2019 WL 1715170, at *8 (N.D. Cal. Apr. 17, 2019); *Mattel, Inc. v. MGA Entm't, Inc*., 801 F. Supp. 2d 950, 952 (C.D. Cal. 2011) ("Though the existence of willful and malicious misappropriation is ordinarily considered a fact that a jury must find by clear and convincing evidence, the court calculates the amount of exemplary damages.").

1    Judges in this District—not juries—have consistently been the ones to determine the

2    amount of exemplary damages to be awarded.  *See BladeRoom Grp. Ltd. v. Emerson Elec.*

3    *Co.*, No. 5:15-CV-01370-EJD, 2019 WL 1117538, at *1 (N.D. Cal. Mar. 11, 2019)

4    (determining if, and how much, exemplary damages should be awarded after the jury found,

5    by clear and convincing evidence, that defendant's misappropriation was willful and

6    malicious); *EnerTrode, Inc. v. Gen. Capacitor Co.*, No. 16-CV-02458-HSG, 2019 WL

7    1715170, at *8 (N.D. Cal. Apr. 17, 2019) (denying plaintiff's request for exemplary damages

8    despite that the jury found defendant's conduct to be willful and malicious); *02 Micro Int'l*

9    *Ltd. v. Monolithic Power Sys.*, Inc., 399 F. Supp. 2d 1064, 1078 (N.D. Cal. 2005), amended

10   sub nom. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 420 F. Supp. 2d 1070 (N.D. Cal.

11   2006), *aff'd*, 221 F. App'x 996 (Fed. Cir. 2007), and *aff'd*, 221 F. App'x 996 (Fed. Cir. 2007)

12   (explaining that the "Court has the discretion to award exemplary damages" and determining

13   the amount of exemplary damages).  Google knows of no Northern District of California case

14   where the determination of the amount of exemplary damages was made by the jury.

15      The Seventh Amendment does not bar the Court from determining the amount of

16   punitive damages.  *See In re Exxon Valdez*, 270 F.3d 1215, 1240 (9th Cir. 2001) ("[U]nlike

17   the measure of actual damages suffered, which presents a question of historical or

18   predictive fact, the level of punitive damages is not really a 'fact' 'tried' by the jury. Thus,

19   reduction of a punitive damages award does not implicate the Seventh Amendment.) (*citing

20   Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 437 (2001)); *Cooper Indus*,

21   532 U.S. 424 at 437 (explaining that award of punitive damages "does not implicate the

22   Seventh Amendment").

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

## DISPUTED FINAL INSTRUCTION NO. 48 RE
## PREJUDGMENT INTEREST OFFERED BY SPACE DATA

If you decide that Space Data is entitled to recover unjust enrichment damages then you must decide whether Space Data should also receive prejudgment interest on its unjust enrichment recovery. Prejudgment interest is the amount of interest the law provides to a plaintiff to compensate for the loss of the ability to use the funds. If prejudgment interest is awarded, it is computed from the date on which each loss was incurred until the date on which you sign your verdict.

Whether Space Data should receive an award of prejudgment interest on all, some, or none of any unjust enrichment that you may award is within your discretion. If you award these damages to Space Data, you will be asked to address prejudgment interest in the special verdict form.

**Argument**: Space Data's instruction is based on **CACI 3935**.  California Civil Code Sections 3287 and 3288 expressly provide for awards of pre-judgement interest.  *See* Cal. Civ. Code § 3787(b) ("Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed") & Cal. Civ. Code § 3788(b) ("In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury").  Further, DTSA's silence on the matter does not mean that pre-judgement interest is not available for misappropriation under that statue.  *Cf. Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 717-18 (9th Cir. 2004) (holding that prejudgment interest was available for infringement under a section of the Copyright Act that did not specifically mention pre-judgment interest).

As to Google's argument that prejudgment interest is not available where a plaintiff seeks unjust enrichment damages, Google's argument is not supported by a plain reading of the California statues, especially given Space Data's allegations that Google's

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1    conduct was willful and malicious.  *See* Cal. Civ. Code § 3788(b) ("[I]n every case of

2    oppression, fraud, or malice, interest may be given, in the discretion of the jury").

3         Faced with this conundrum, Google cites the *Syntron Bioreserach, Inc. v. Fan*—an

4    unpublished state court decision—for the position that prejudgment interest is never

5    available for unjust enrichment damages as a matter of law.  But this case does not aid

6    Google.  The *Syntron* court found the award of prejudgment interest inappropriate

7    "because that damages award was neither readily computable nor subject to precise

8    calculation, but rather determined by 'the subjective discretion of the trier of fact.'"  *See*

9    *Syntron*, 2002 WL 660446, at *15.  Unlike the subjective *Syntron* jury award, SDC's

10   research and development cost damages are capable of "reasonably definite

11   ascertainment."  Space Data witnesses will testify at trial that the unjust enrichment

12   damages it is seeking are "readily computable," and in fact will show the jury how the

13   claimed unjust enrichment damages are "subject to precise calculation."  For these same

14   reasons, the unjust enrichment damages here are nothing like the category of damages—

15   "intangible, noneconomic aspects of mental and emotional injury"—CACI says are

16   outside CACI 3935's purview.

17        Google's position that prejudgment interest damages are not available where unjust

18   enrichment damages have been awarded is also not supported by the Ninth Circuit's logic

19   in *Polar Bear*.  There the Ninth Circuit found that "prejudgment interest is a different

20   remedy for a different harm" distinct from the Copyright Act's remedies of recovery for

21   actual loss, unjust enrichment in the form of defendant's profits, and attorneys' fees.  *See*

22   *Polar Bear*., 384 F.3d at 718.  Nor is it supported by this District's decision in *S.E.C. v.*

23   *Pattison*, No. C-08-4238 EMC, 2011 WL 723600 (N.D. Cal. 2011).  There, the court

24   awarded prejudgment interest on top of an unjust enrichment award.  *See id*., at *4 ("In

25   this case, the Court finds an award of prejudgment interest to be appropriate, as it is not

26   duplicative and the equities weigh in favor of including interest in the disgorgement. After

27   all, any interest accumulated by Defendant's undeserved profits inured to him alone, as a

28   consequence of his unlawful conduct"); *compare also Bladeroom Grp. Ltd. v. Emerson*

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

*Elec. Co.*, No. 5:15-CV-01370-EJD, 2019 WL 1117538, at *3 (N.D. Cal. Mar. 11, 2019) (granting plaintiff's prejudgment interest request where "the parties have stipulated the court would decide the issue of prejudgment interest" under Cal. Civ. Code § 3788) *with BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 331 F. Supp. 3d 977, 979 (N.D. Cal. 2018) (making clear the award at issue included $20 million in unjust enrichment damages).

In short, Google took something from Space Data it did not pay for. It should have paid Space Data then. Had Google done what was right and proper, Space Data would have had the money then. Pre-judgement interest is required to make Space Data whole.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

## DISPUTED FINAL INSTRUCTION NO. 48 RE
## PREJUDGMENT INTEREST OBJECTION BY GOOGLE

Google's position is that no such instruction should be given.

**<u>Argument</u>**: Google objects to the inclusion of an instruction on prejudgment interest. Prejudgment interest is not available for unjust enrichment damages as a matter of law.  *See, e.g.*, *Syntron Bioresearch, Inc. v. Fan*, No. D033894, 2002 WL 660446, at *15 (Cal. Ct. App. Apr. 23, 2002), *as modified on denial of reh'g* (May 13, 2002).  In *Syntron*, the appellate court reversed the trial court's award of prejudgment interest on an unjust enrichment award that, like here, was based upon research and development costs because "that award does not represent the loss of calculable funds that belonged to [plaintiff], or should have been paid to [plaintiff], from which [plaintiff] could have accrued further wealth." *Id.*  Instead, the court reasoned, unjust enrichment based upon the cost of research and development constitutes "already expended funds dedicated to research and development, the use of which [a defendant] did not deprive [the plaintiff].  In other words, awarding prejudgment interest to [a plaintiff] for [the defendant's avoided] research and development costs . . . is not necessary to fully compensate it for the accrual of any additional wealth that could have been produced by those already expended funds." *Id.* (citations omitted).

That prejudgment interest is inapplicable to an award of unjust enrichment is plain from the CACI instruction's Directions for Use:

> It is settled that prejudgment interest cannot be awarded on damages for the intangible, noneconomic aspects of mental and emotional injury because they are inherently nonpecuniary, unliquidated, and not readily subject to precise calculation. (*Greater Westchester Homeowners Assn v. L.A.* (1979) 26 Cal.3d 86, 102−103 [160 Cal.Rptr.733, 603 P.2d 1329].). This instruction assumes that implicit in the reasoning for denying prejudgment interest for noneconomic damages is authorization to award it on all past economic damages, as these amounts are pecuniary and subject to more precise calculation. This instruction should not be given unless damages of this nature are claimed.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

CACI No. 3935, *Directions for Use*.  Because an award of unjust enrichment does not compensate Space Data for any "past economic damage," a prejudgment interest instruction "should not be given."  *Id.*

### STIPULATED FINAL INSTRUCTION NO. 49 RE EVIDENCE IN ELECTRONIC FORMAT

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the clerk. If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the clerk, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the clerk present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

remove the computer or any electronic data from the jury room, and do not copy any such data.

**Note**: While the parties agree on the wording of this instruction, the parties are still considering whether the described procedure should be used, and intend to request leave of Court to discuss the matter with the Court at the pre-trial conference.

**Authority:** Manual of Model Civil Instructions for the District Courts of the Ninth Circuit § 2.16.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**STIPULATED FINAL INSTRUCTION NO. 50 RE
DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror.  That person will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not be unwilling to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.


**Authority:** Manual of Model Civil Instructions for the District Courts of the Ninth Circuit § 3.1.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**STIPULATED FINAL INSTRUCTION NO. 51 RE
CONSIDERATION OF THE EVIDENCE—CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

1   misleading information that has not been tested by the trial process.  Each of the parties is

2   entitled to a fair trial by an impartial jury, and if you decide the case based on information

3   not presented in court, you will have denied the parties a fair trial.  Remember, you have

4   taken an oath to follow the rules, and it is very important that you follow these rules.

5           A juror who violates these restrictions jeopardizes the fairness of these proceedings,

6   and a mistrial could result that would require the entire trial process to start over.  If any juror

7   is exposed to any outside information, please notify the court immediately.

8

9           **Authority:** Manual of Model Civil Instructions for the District Courts of the Ninth
    Circuit § 3.2.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**STIPULATED FINAL INSTRUCTION NO. 52 RE
COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone— including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

**Authority:** Manual of Model Civil Instructions for the District Courts of the Ninth Circuit § 3.3.

**STIPULATED FINAL INSTRUCTION NO. 53 RE
RETURN OF VERDICT**

A verdict form has been prepared for you.  *[Explain verdict form as needed.]*

After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the court that you are ready to return to the courtroom.

**Authority:** Manual of Model Civil Instructions for the District Courts of the Ninth Circuit § 3.5.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: July 9, 2019                    By:    */s/ Spencer Hosie*
                                               Spencer Hosie