KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
MATTHEW M. WERDEGAR - # 200470
mwerdegar@kvn.com
EUGENE M. PAIGE - # 202849
epaige@kvn.com
MATTHIAS A. KAMBER - # 232147
mkamber@kvn.com
RYAN K. WONG - # 267189
rwong@keker.com
LEAH PRANSKY - # 302246
lpransky@kvn.com
SHAYNE HENRY - # 300188
shenry@keker.com
ANDREW S. BRUNS - # 315040
abruns@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:   415 397 7188

Attorneys for Defendants
ALPHABET INC., GOOGLE LLC, and
LOON LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SPACE DATA CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALPHABET INC., GOOGLE LLC, AND LOON LLC,<br><br>　　　　Defendants. | Case No. 5:16-cv-03260-BLF<br><br>**MOTION TO QUASH TRIAL SUBPOENAS**<br><br>Date:　　　July 19, 2019<br>Time:　　　9:00 a.m.<br>Judge:　　　Hon. Beth Labson Freeman<br>Dept:　　　Courtroom 3 – Fifth Floor<br><br>Date Filed: June 13, 2016<br><br>Trial Date: August 5, 2019 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on July 19, 2019, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 3, 5th Floor, of the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, California, 95113, Movants Alphabet Inc., Google LLC, and Loon LLC  (collectively "Google") will, and hereby do, move the Court for an order quashing Plaintiff Space Data Corporation's subpoenas served on Larry Page and Sergey Brin  on March 6, 2019 and July 23, 2018, respectively ("the Subpoenas"). This motion is based on this submission, the accompanying declarations and exhibits, the pleadings and other documents on file in this case, and any argument presented to the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Google's co-founders Larry Page and Sergey Brin agreed to sit for 3.5 hours of deposition each in this case. As their deposition testimony made clear, neither co-founder possesses any unique information related to Plaintiff Space Data Corporation's claims in this case. Space Data apparently reached the same conclusion, as it only utilized about 2.25 hours for Mr. Page's deposition and about 1.25 hours for Mr. Brin's deposition. Nonetheless, Space Data now seeks to compel the appearance at trial of both Mr. Page and Mr. Brin, the Chief Executive Officer and President, respectively, of Alphabet, Inc., Google's parent company. This effort is unwarranted and inappropriate.

Courts routinely bar litigants from forcing the most senior corporate executives to testify unless they can demonstrate that the prospective witnesses possess unique first-hand knowledge that cannot be obtained through less burdensome means. Space Data cannot satisfy that high standard here. Neither Mr. Page nor Mr. Brin has unique knowledge beyond what is available in their depositions or the testimony of other current and former Google employees. As such, Space Data's attempt to force Mr. Brin and Mr. Page to appear at trial is nothing more than a tactic for leverage and harassment. Forcing them at trial to simply repeat their deposition testimony, which will in turn merely duplicate the testimony of others, would impose an undue burden on Google.

Accordingly, the Court should quash the trial subpoenas issued to Mr. Brin and Mr. Page.

## II. COURTS APPLY HEIGHTENED SCRUTINY WHEN CONSIDERING REQUESTS TO EXAMINE TOP-RANKING CORPORATE EXECUTIVES

Litigants seeking to examine a corporation's most senior executives ("apex executives") must show that they have exhausted other, less intrusive methods of procuring the information at issue, and that the subpoenaed parties have "unique first-hand, non-repetitive knowledge of the facts at issue in the case." *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012); *see also Robertson v McNeil-PPC Inc.*, No. LA CV11-09050 JAK (SSx), 2014 WL 12576817, at *18 (C.D. Cal. Jan. 13, 2014) ("When a high-ranking executive 'removed from the daily subjects of the litigation has no *unique* personal knowledge of the facts at issue, a deposition of the official is improper.'") (quoting *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374 MMC (JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) (emphasis added)).

Extra protection is justified by courts' recognition that forcing apex executives to spend time away from their responsibilities to provide testimony imposes a significant burden on their companies. Thus, the power to compel the testimony of apex executives "creates a tremendous potential for abuse or harassment that may require the court's intervention." *K.C.R. v. Cty. of Los Angeles*, No. CV 13-3806 PSG (SSx), 2014 WL 3434257, at *3 (C.D. Cal. Jul. 11, 2014) (citation omitted); *see also Robertson*, 2014 WL 12576817, at *17; *Celerity*, 2007 WL 205067, at *3; *Consol. Rail Corp. v. Primary Indus. Corp.*, Nos. 92 Civ. 4927 & 92 Civ. 6313, 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (high-ranking executives afforded extra protection based on the recognition that "permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation").

Although the apex doctrine is most frequently applied in the deposition context, its rationale applies with equal force to trial testimony. *See, e.g.*, *In re Levaquin Prods. Liability Litig.*, MDL No. 08-1943 (JRT), 2010 WL 4867407, at *2 (D. Minn. Nov. 9, 2010) (precluding trial testimony of Johnson & Johnson's CEO because it was unclear why other witnesses "could not provide the information [defendants] seek"); *Amazon.com, Inc. v. Comm'r of Internal Revenue*, No. 31197-12 2014 WL 6980512, at *3 (T.C. 2014) (barring respondent from

compelling the trial testimony of Amazon's Chairman and CEO, Jeff Bezos). Indeed, trial scheduling is often more complicated.

### III. MR. PAGE AND MR. BRIN DO NOT HAVE UNIQUE, FIRST-HAND KNOWLEDGE TO OFFER AT TRIAL AND THE SUBSTANCE OF THEIR TESTIMONY COULD BE OBTAINED THROUGH LESS BURDENSOME MEANS

Space Data took the depositions of both Mr. Page and Mr. Brin, which made clear that Google's co-founders have no unique, first-hand knowledge of facts relevant to this case. In fact, notwithstanding that Space Data negotiated for 3.5 hours of testimony from each of Mr. Page and Mr. Brin, Space Data chose not to exhaust the time allotted in either deposition. Mr. Page's deposition lasted just 2.25 hours, and Mr. Brin's 1.25 hours. Declaration of Andrew Bruns in Support of Motion to Quash Trial Subpoenas ("Bruns Decl.") ¶ 3. Moreover, before the conclusion of Mr. Brin's deposition, defense counsel noted that Mr. Brin might not be available to testify at trial and that Space Data should ask any further questions that it had. Space Data's counsel still declined to continue questioning. Bruns Decl., Ex. 1 at 66:13-67:20. Presumably, Space Data was able to get answers to whatever it legitimately needed from these executives.

More than a year later, Space Data's Witness List identifies a laundry list of issues about which it anticipates asking Google's founders at trial. For Mr. Page, for example, this list reads as follows:

> *Mr. Page is Google's co-founder, Chief Executive Officer of Alphabet Inc., and former Google C.E.O.* Mr. Page may testify about meetings with SDC and Google's February 2008 tour; knowledge of photos taken but not emailed or posted "for obvious reasons" but put on the wiki; discussions, emails, analyses, meetings and communications regarding SDC and SDC balloon technology; meetings, emails and communications with Richard DeVaul, Astro Teller, Sergey Brin, Sebastian Thurn, Phil Gossett and other Google employees re: Loon development; meetings, emails and communications with Anne Bray and others regarding Loon's commercial viability and success; the "X" Hot List; "unconventional use cases"; conclusions on how Google could use SDC technology; the spectrum survey; decision to greenlight DeVaul's idea and funding; communications with Dylan Casey to roll-out an SDC constellation in 2008; Loon strategy, roll-out and practices; Loon projections and financials; Alphabet and Google financials; documents on the exhibit list that are either authored by or were sent to him and any subjects covered in his deposition.

*Id.*, Ex. 2 at 8.

None of these topics are ones for which Mr. Page possesses unique, first-hand knowledge. The same is also true of the topics Space Data has identified for Mr. Brin. The topics associated with Mr. Page and Mr. Brin overlap significantly with the anticipated testimony of other witnesses who could cover the topics just as well. For instance, to the extent that Mr. Page and Mr. Brin are being asked to testify about Google representatives' February 2008 visit to Space Data's offices, those facts can be introduced by any of the four other current and former Google employees who went on the trip that Space Data intends to call at trial (Larry Alder, Daniel Conrad, Minnie Ingersoll, and Daniel McCloskey). *See id.,* Ex. 2. Indeed, Space Data's witness list indicates that it intends to elicit the same information from these four other witnesses about Google's February 2008 visit to Space Data. *Id.* Each of these four other witnesses is equally if not better equipped to testify about that visit than either Mr. Page or Mr. Brin.

The same can be said for the topics that Space Data has identified as unique to Mr. Page and Mr. Brin. For example, only Mr. Page and Mr. Brin have been identified as testifying about "Loon strategy, roll-out and practices." *Id.* But Mr. Page and Mr. Brin do not now, nor have they ever, worked on the development and day-to-day operations of Loon. Their involvement is primarily indirect oversight as supervising apex executives, to whom hundreds of projects report. Several of the witnesses that Space Data plans to call are far more intimately involved with Loon's development and operations during the relevant period, including Astro Teller and Richard DeVaul.

In short, Space Data could get the same information it hopes to glean from Mr. Page and Mr. Brin from other witnesses who are at least as knowledgeable as them about the subject matter. *See, e.g., Salter v. Upjohn Co.*, 593 F.2d 649, 652 (5th Cir. 1979) (upholding protective order precluding the deposition of the president of the Upjohn Company, and directing the plaintiff to depose lower-level employees with more direct knowledge of the facts); *In re Levaquin,* 2010 WL 4867407 at *2; *Baine v. General Motors, Corp.*, 141 F.R.D. 332, 334--35 (M.D. Ala. 1991) (precluding testimony of corporate vice president after finding it has "not been demonstrated that [the executive] has any superior or unique personal knowledge [of the relevant issues in the case]"). And to the extent Space Data believes that Mr. Page and Mr. Brin do possess

unique, relevant knowledge, Space Data may play portions of their videotaped deposition testimony at trial.

### IV. FORCING MR. PAGE AND MR. BRIN TO TESTIFY WOULD IMPOSE AN UNDUE BURDEN ON GOOGLE

Courts closely scrutinize requests to examine top-level executives in part to protect against harassment. Because of the substantial burden that apex witness testimony places on companies, such examination "creates a tremendous potential for abuse or harassment." *Celerity*, 2007 WL 205067 at *3 (barring defendants from deposing plaintiff's CEO and Executive Chairman). Forcing Mr. Page and Mr. Brin to testify at trial in this case would impose a significant, undue burden on Google. Given these witnesses' lack of unique knowledge and the availability of video deposition testimony, Space Data's effort to compel trial testimony amounts to little more than harassment.

Requiring the most senior leadership of a large company to testify is unduly burdensome, especially where, as here, other witnesses are available to cover the same topics. *See Amazon.com*, 2014 WL 6980512 at *4; *see also Plew v. Limited Brands, Inc.*, No. 08 Civ. 3741, 2012 WL 379933, at *3 (S.D.N.Y. Feb. 6, 2012) (granting defense motion to prevent plaintiff from calling Victoria's Secret CEO as a trial witness where the plaintiff had deposed two senior executives with knowledge of the product).

The weight of the responsibilities borne by Mr. Page and Mr. Brin as apex executives is a factor courts routinely consider in deciding whether the necessity of their testimony outweighs the burden of testifying. *See, e.g., WebSide Story, Inc. v. NetRatings, Inc.*, No. 06cv408 WQH(AJB), 2007 WL 1120567, at *5 n.10 (S.D. Cal. April 6, 2007) ("[A] court must remain mindful that permitting unfettered discovery of corporate executives would threaten disruption of their business.") (quoting *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 102 (S.D.N.Y.1997))) (citations omitted). This burden is amplified where, as here, apex executives have already borne the burden of deposition. *Cf. Tri-Star Pictures, Inc.*, 171 F.R.D. at 102–03 (noting "the burdens which appearing for a deposition can impose upon a [previously-deposed] senior corporate executive" and "strictly confin[ing]" the scope of further deposition).

The evidentiary record shows that the burden of requiring Mr. Page and Mr. Brin to appear at trial is not warranted here. Given the availability of their videotaped deposition testimony, the availability of other witnesses to testify to the 2008 visit, and the lack of involvement of Mr. Page or Mr. Brin in the day-to-day operations of Loon, Plaintiff's attempt to require Mr. Page and Mr. Brin to testify at trial can only be explained as an effort to harass and burden Google. Such a burden is particularly unwarranted in this case, given that Space Data's own expert calculated its damages at ▮▮▮▮. Bruns Decl., Ex. 3 ¶ 217.[1]

## V. CONCLUSION

Because Plaintiff's attempt to compel trial testimony of Mr. Page and Mr. Brin would not elicit unique evidence that cannot be obtained from other sources, including their videotaped depositions and other Google employees, Google respectfully asks the Court to quash the trial subpoenas to Mr. Page and Mr. Brin.

Dated: July 11, 2019

KEKER, VAN NEST & PETERS LLP

By: /s/ *Matthew M. Werdegar*
ROBERT A. VAN NEST
MATTHEW M. WERDEGAR
EUGENE M. PAIGE
MATTHIAS A. KAMBER
RYAN K. WONG
LEAH PRANSKY
SHAYNE HENRY
ANDREW S. BRUNS

---

[1] Dr. Meyer's report calculated Space Data's trade secret damages as ▮▮▮▮, but Space Data has since abandoned one of its trade secret claims, which Dr. Meyer valued at ▮▮▮▮. *See* ECF 439-5 at 14 n. 1 (Space Data Opp. to Google MSJ)