KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
MATTHEW M. WERDEGAR - # 200470
mwerdegar@keker.com
EUGENE M. PAIGE - # 202849
epaige@keker.com
MATTHIAS A. KAMBER - # 232147
mkamber@keker.com
RYAN K. WONG - # 267189
rwong@keker.com
LEAH PRANSKY - # 302246
lpransky@keker.com
SHAYNE HENRY - # 300188
shenry@keker.com
ANDREW S. BRUNS - # 315040
abruns@keker.com

633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendants
ALPHABET INC., GOOGLE LLC, and LOON LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SPACE DATA CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> ALPHABET INC., GOOGLE LLC, and LOON LLC, <br><br> Defendants. | Case No. 5:16-cv-03260-BLF <br><br> **NOTICE OF REFILING OF DOCUMENTS PREVIOUSLY FILED PROVISIONALLY UNDER SEAL (ECF 621, 625, 627) PER THE COURT'S ORDER GRANTING JOINT SEALING MOTION (ECF 641)** <br><br> Dept:      Courtroom 3 – Fifth Floor <br> Judge:    Hon. Beth Labson Freeman <br><br> Date Filed:  June 13, 2016 <br><br> Trial Date:  Not Set |

1    In accordance with this Court's August 1, 2019 Order Granting ECF 639 Joint

2  Administrative Motion to File Under Seal (ECF 641), this Notice hereby attaches the following

3  documents:

4   - **Exhibit A:** Redacted version of the Pretrial Conference Transcript; ECF 621.

5   - **Exhibit B:** Redacted version of Order re Motions in Limine; ECF 625.

6   - **Exhibit C:** Redacted version of Order Granting in Part and Denying in Part Defendants'
       Motion to Quash Trial Subpoenas; ECF 627.

7

8   Dated: August 7, 2019                          Respectfully submitted,

9                                                   KEKER, VAN NEST & PETERS LLP

10                                          By:   _/s/ Shayne Henry_

11                                                 ROBERT A. VAN NEST
                                                   MATTHEW M. WERDEGAR
12                                                 EUGENE M. PAIGE
                                                   MATTHIAS A. KAMBER
13                                                 RYAN K. WONG
                                                   LEAH PRANSKY
14                                                 SHAYNE HENRY
                                                   ANDREW S. BRUNS

15                                                 Attorneys for Defendants
                                                   ALPHABET INC., GOOGLE LLC, and
16                                                 LOON LLC

17   1340119

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REFILING OF DOCUMENTS PREVIOUSLY FILED PROVISIONALLY UNDER SEAL
(ECF 621, 625, 627) PER THE COURT'S ORDER GRANTING JOINT SEALING MOTION (ECF 641)
Case No. 5:16-cv-03260-BLF

# EXHIBIT A

```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3                          SAN JOSE DIVISION

 4

 5    SPACE DATA CORPORATION,          )  C-16-03260 BLF
                                       )
 6                     PLAINTIFF,      )  SAN JOSE, CALIFORNIA
                                       )
 7           VS.                       )  JULY 19, 2019
                                       )
 8    ALPHABET INC., GOOGLE LLC, AND   )  PAGES 1-115
      LOON LLC,                        )
 9                                     )  PAGES 67-98 SEALED
                       DEFENDANTS.     )
10    _____ )

11

12

13                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE BETH LABSON FREEMAN
14                  UNITED STATES DISTRICT JUDGE

15

16    A P P E A R A N C E S:

17    FOR THE PLAINTIFF:    HOSIE RICE LLP
                            BY:  SPENCER HOSIE
18                               DARRELL R. ATKINSON
                                 FRANCESCA MIKI SHIMA GERMINARIO
19                          600 MONTGOMERY STREET, 34TH FLOOR
                            SAN FRANCISCO, CALIFORNIA  94111
20

21              APPEARANCES CONTINUED ON NEXT PAGE

22

23    OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                  CERTIFICATE NUMBER 9595
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER
```

1

2      APPEARANCES (CONTINUED)

3

4      FOR THE DEFENDANTS:     KEKER, VAN NEST & PETERS
                               BY:  ROBERT A. VAN NEST
5                                   MATTHEW M. WERDEGAR
                                    EUGENE M. PAIGE
6                                   MATTHIAS A. KAMBER
                                    RYAN K. WONG
7                                   LEAH PRANSKY
                                    SHAYNE HENRY
8                                   ANDREW S. BRUNS
                               633 BATTERY STREET
9                              SAN FRANCISCO, CALIFORNIA  94111

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1     SAN JOSE, CALIFORNIA                    JULY 19, 2019

 2                   P R O C E E D I N G S

 3          (COURT CONVENED AT 8:59 A.M.)

 4               THE COURT:  GOOD MORNING, EVERYONE.

 5               MR. HOSIE:  GOOD MORNING, YOUR HONOR.

 6               THE COURT:  OKAY.  LET'S CALL OUR CASE AND I'LL GET

 7     YOUR APPEARANCES ON THE RECORD.

 8               THE CLERK:  YES, YOUR HONOR.  CALLING CASE NUMBER

 9     16-3260, SPACE DATA VERSUS ALPHABET, ET AL.

10          COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCE FOR

11     THE COURT.

12               MR. HOSIE:  GOOD MORNING, YOUR HONOR.

13          SPENCER HOSIE OF HOSIE RICE LLP APPEARING ON BEHALF OF THE

14     PLAINTIFF, SPACE DATA CORPORATION.

15               MR. ATKINSON:  GOOD MORNING, YOUR HONOR.

16          DARRELL ATKINSON ON BEHALF OF THE PLAINTIFF.

17               THE COURT:  GOOD MORNING.

18               MS. GERMINARIO:  GOOD MORNING, YOUR HONOR.

19          FRANCESCA MIKI SHIMA GERMINARIO ON BEHALF OF THE

20     PLAINTIFF.

21               THE COURT:  GOOD MORNING.

22               MR. VAN NEST:  GOOD MORNING, YOUR HONOR.

23          BOB VAN NEST OF KEKER, VAN NEST & PETERS FOR DEFENDANTS.

24          AND I'M HERE WITH MATT WERDEGAR.

25               MR. WERDEGAR:  GOOD MORNING, YOUR HONOR.
```

```
 1              MR. VAN NEST:  MATTHIAS KAMBER.

 2              MR. KAMBER:  GOOD MORNING, YOUR HONOR.

 3              MR. VAN NEST:  GENE PAIGE.

 4              MR. PAIGE:  GOOD MORNING, YOUR HONOR.

 5              MR. VAN NEST:  RYAN WONG.

 6              MR. WONG:  GOOD MORNING, YOUR HONOR.

 7              MR. VAN NEST:  LEAH PRANSKY.

 8              MS. PRANSKY:  GOOD MORNING, YOUR HONOR.

 9              MR. VAN NEST:  AND SHAYNE HENRY.

10              THE COURT:  WELCOME TO EVERYONE.  GOOD MORNING.

11         THIS IS THE TIME FOR OUR FINAL PRETRIAL CONFERENCE.  I

12    THINK I CHANGED THE DATE ON YOU A FEW TIMES.  THANK YOU FOR

13    YOUR COURTESY IN NOT COMPLAINING.

14         BUT I THINK THINGS ARE IN GOOD ORDER AND WE SHOULD BE ABLE

15    TO WALK THROUGH ALL OF THE ISSUES THIS MORNING.

16         I ANTICIPATE THAT I'LL BE ABLE TO RULE ORALLY ON THE IN

17    LIMINE MOTIONS AND FOLLOW IT UP WITH A WRITTEN ORDER SO THAT

18    YOU DON'T HAVE TO SIT AND WONDER WHAT YOUR TRIAL IS GOING TO BE

19    LIKE WHILE WAITING FOR MY ORDER.

20         I WANTED TO GO THROUGH A FEW THINGS.  LET ME -- LET ME

21    START WITH THE BASIC LOGISTICS.  I AM COGNIZANT OF HOW SMALL

22    THIS COURTROOM IS.  YOU'VE ALL TRIED CASES IN THIS COURTROOM

23    AND HAD TO DO THE DANCE AROUND EACH OTHER.

24         I'M INCLINED TO USE THE BIG COURTROOM AT THE END OF THE

25    HALLWAY, AND, YOU KNOW, IT JUST -- IT'S JUST SO CROWDED.  SO
```

```
 1     IT'S BIG, AND I -- I DON'T KNOW WHETHER YOU PREFER THAT OR ARE

 2     NEUTRAL.  I DON'T KNOW WHAT YOUR THOUGHT ON IT IS.

 3              MR. VAN NEST:  I DON'T HAVE AN OBJECTION TO IT, YOUR

 4     HONOR, BUT I THINK THIS COURTROOM IS FINE.  I THINK WE CAN FIT

 5     IN HERE AND IT'LL WORK JUST FINE.  THAT'S SUCH A LARGE SPACE.

 6              THE COURT:  IT'S A VERY BIG SPACE.

 7              MR. VAN NEST:  I PREFER TO STAY RIGHT HERE.  WE HAD A

 8     LOT OF INTEREST A COUPLE OF YEARS AGO AND IT WORKED OUT FINE --

 9              THE COURT:  YES.

10              MR. VAN NEST:  -- EVEN WITH A FOLLOWING.

11         I DON'T THINK THIS IS GOING TO BE THAT KIND OF A TRIAL.  I

12     THINK THIS COURTROOM MAY BE JUST FINE.

13              THE COURT:  OKAY.

14         MR. HOSIE?

15              MR. HOSIE:  TO START, I AGREE, ABSOLUTELY.  WE LOVE

16     THE INTIMACY OF THIS COURTROOM.

17              THE COURT:  I DO, TOO.  BUT I LOOK AT HOW YOU'RE ALL

18     SITTING IN EACH OTHER'S LAPS AND IT ALWAYS MAKES ME A LITTLE

19     BIT CONCERNED.

20         GOOD.  ALL RIGHT.  THEN WE'LL JUST STAY HERE.  THANK YOU.

21     I WANTED TO GIVE YOU THAT OPTION.

22         LET ME GO ON AND TALK -- BEFORE I -- I'LL DO THE IN LIMINE

23     MOTIONS LAST, BUT WHAT I'D LIKE TO DO IS GO THROUGH THE TRIAL

24     PROCEDURE.  MANY OF THE THINGS I'LL GO THROUGH ARE MY STANDARDS

25     WHICH YOU'RE BOTH FAMILIAR WITH, BUT IT'S ALWAYS GOOD TO GO
```

```
 1    BACK OVER THEM BECAUSE YOU'VE HAD A NUMBER OF TRIALS SINCE WE

 2    LAST MET AND IT'S HARD TO KEEP EVERYTHING STRAIGHT.

 3            IN FACT, MR. VAN NEST, WERE YOU JUST IN DELAWARE?

 4            MR. VAN NEST:  I WAS, YOUR HONOR.

 5            THE COURT:  ALL RIGHT.  I HAD HEARD ABOUT THAT.

 6            MR. HOSIE:  I SAID WE, YOUR HONOR.

 7       (LAUGHTER.)

 8            THE COURT:  OKAY.  SO IN TERMS OF THE SCHEDULING OF

 9    THE TRIAL, WHAT I WOULD LIKE TO DO IS HAVE THE JURY COME IN ON

10    AUGUST 2ND, THAT'S A FRIDAY, FOR THE QUESTIONNAIRE, AND WE'LL

11    GO OVER THE QUESTIONNAIRE.

12            ON THAT DAY YOU NEED NO WITNESSES, AND YOU DON'T NEED

13    COMPANY REPRESENTATIVES, EITHER.  OF COURSE THEY'RE ALWAYS

14    WELCOME.  BUT PEOPLE HAVE MADE PLANS AND SCHEDULES, SO I'M NOT

15    ANTICIPATING THAT.

16            I WOULD DO HARDSHIP IN THE JURY ROOM IN WRITING, AND THEN

17    YOU AND I WILL REVIEW THE REQUESTS FOR HARDSHIP AND EXCUSE THE

18    JURORS WHO QUALIFY FOR HARDSHIP EXEMPTION.

19            THE REMAINING JURORS WILL COME UP INTO THE COURTROOM AND I

20    WILL ONLY INTRODUCE THE CASE, READ THE NEUTRAL STATEMENT,

21    INTRODUCE LEAD COUNSEL ONLY -- THE REST WILL COME ON THE MONDAY

22    WHEN YOU DO THE ORAL VOIR DIRE -- EXPLAIN THE QUESTIONNAIRE,

23    AND THEN LET THEM REMAIN IN THE COURTROOM TO COMPLETE THE

24    QUESTIONNAIRE.

25            YOU WILL SPEND THE REST OF THE DAY WITH ME GOING OVER JURY
```

1    INSTRUCTIONS, AND WE WILL -- THE GOAL WILL BE TO HAVE A FINAL

2    SET OF JURY INSTRUCTIONS BEFORE WE START TRIAL, AND TO HAVE A

3    PRETTY GOOD SENSE OF WHAT OUR VERDICT FORM IS GOING TO LOOK

4    LIKE, ALTHOUGH I MUST SAY I'VE NEVER HAD A FINAL VERDICT FORM

5    THAT MUCH IN ADVANCE.  THEY SEEM TO BE A LITTLE TRICKIER.  BUT

6    WE'LL SEE WHAT WE'VE GOT WHEN YOU COME BACK ON THE 2ND.

7         AND SO -- AND THEN YOU WILL HAVE YOUR OPPORTUNITY TO

8    REVIEW THE QUESTIONNAIRES OVER THE WEEKEND.  I'LL HAVE --

9    YOU'LL TALK TO -- MS. SALINAS-HARWELL WILL BE BACK.  YOU'LL

10   TALK TO HER ABOUT THE LOGISTICS.

11        I WILL NEED YOU TO BRING, WHOEVER IS IN CHARGE OF IT, BUT

12   ABOUT 40 COPIES OF THE FINAL QUESTIONNAIRE A FEW DAYS BEFORE

13   TRIAL SO THAT SHE'S READY WITH IT.

14        AND THEN ONE OF -- ONE SIDE WILL TAKE ON THE JOB OF

15   COPYING THE QUESTIONNAIRES AND BRINGING THE ORIGINALS BACK TO

16   ME BEFORE THE END OF THE DAY.

17        AND ALTHOUGH I'M COMFORTABLE WITH YOU MAKING AS MANY

18   COPIES OR CIRCULATING THE QUESTIONNAIRES ELECTRONICALLY FOR

19   YOUR OWN WORK, IT ALL HAS TO BE DESTROYED OR GATHERED BACK UP

20   AT THE END AND I WANT THE WRITTEN -- YOUR WRITTEN COPIES OF THE

21   QUESTIONNAIRES, I WANT THEM BACK AT THE END.  WE PLACE THEM

22   UNDER SEAL BECAUSE THERE ARE QUESTIONS THAT ARE PRIVATE FOR THE

23   JURORS.

24        BUT YOU MAY RETAIN THE QUESTIONNAIRES OF THE SEATED JURORS

25   UNTIL THE END OF TRIAL.  I WANT YOU TO ALWAYS HAVE INFORMATION

1   ABOUT WHO YOUR JURY IS.  EXCUSED JURORS YOU HAVE NO USE FOR.

2   JUST GIVE THEM BACK TO ME.  BUT OTHERWISE I DON'T RESTRICT YOUR

3   USE OF IT.

4       ON THE SUNDAY AFTER, WHICH WILL BE AUGUST 4TH, AT NO LATER

5   THAN NOON, I'LL REQUEST AN E-MAIL TO ME LETTING ME KNOW IF

6   THERE ARE ANY JURORS WHO YOU JOINTLY REQUEST BE EXCUSED FOR

7   CAUSE, AND IF YOU WILL -- YOU'LL BE -- I'LL GO BACK OVER THIS

8   ON THE 2ND, BUT IT HAS TO BE A JOINT REQUEST, AND I'LL NEED A

9   THREE OR FOUR WORD EXPLANATION OF WHY.  IT COULD BE FURTHER

10  HARDSHIP, IT COULD BE OWNS STOCK IN THE COMPANY, YOU KNOW,

11  SOMETHING THAT BASIC THAT IS A CLEAR REASON TO EXCLUDE SOMEONE.

12      THOSE INDIVIDUALS WILL BE CALLED BY MY STAFF ON SUNDAY SO

13  THEY DON'T EVEN NEED TO COME IN.  IT'S JUST A COURTESY TO THEM.

14      ON MONDAY I WILL HAVE NO FURTHER QUESTIONS FOR THE JURY.

15  I WILL GIVE EACH SIDE 30 MINUTES TO ORALLY QUESTION THE ENTIRE

16  PANEL, AND THAT TYPICALLY HAS BEEN AMPLE TIME.

17      IN TERMS OF THE STATEMENT, THE NEUTRAL STATEMENT, YOU HAVE

18  GIVEN ME TWO VERSIONS OF THE NEUTRAL STATEMENT, AND I KNOW YOU

19  CAN DO BETTER.  SO I'M NOT GOING TO WRITE IT FOR YOU AND I'M

20  NOT GOING TO BROKER IT.

21      AND I'M GOING TO ASK THAT YOU -- LET ME LOOK AT THE

22  CALENDAR -- THAT YOU MEET AND CONFER AND SUBMIT TO ME BY

23  JULY 26TH AN AGREED UPON NEUTRAL STATEMENT, OR LEAD TRIAL

24  COUNSEL IS TO APPEAR HERE IN MY COURTROOM AT 9:00 A.M. ON

25  JULY 29 AND YOU WILL MEET AND CONFER UNDER MY SUPERVISION FROM

```
1    DAY TO DAY UNTIL IT'S WORKED OUT.

2         SO I HAVE NO DOUBT I WILL RECEIVE A STIPULATED NEUTRAL

3    STATEMENT, AND I DON'T THINK YOU'RE THAT FAR OFF.  BUT THAT

4    WILL TAKE CARE OF THAT.

5         IN TERMS OF THE JURY, THERE WILL BE EIGHT SEATED JURORS.

6    I WILL ASK FOR A PANEL OF 60 JURORS.  AS YOU KNOW, I'M GENEROUS

7    WITH HARDSHIP REQUESTS.

8         BUT FOR ANY JUROR THAT I WOULD EXCUSE, IF YOU'D LIKE THEM

9    TO REMAIN ON THE PANEL FOR FURTHER QUESTIONING, I'M GLAD TO

10   HAVE YOU DO THAT.  I'LL ULTIMATELY MAKE THE FINAL DECISION, BUT

11   WE'LL WORK ON THAT TOGETHER.

12        AND IT'S MY GOAL TO HAVE 25 JURORS REMAIN FOR AFTER THE

13   QUESTIONNAIRE AND AFTER HARDSHIP, AND WE NEED 14 WHO PASS FOR

14   CAUSE IN ORDER TO HAVE ENOUGH.  THERE WILL BE THREE

15   PEREMPTORIES PER SIDE.

16        IT APPEARS THAT THE -- IN LOOKING AT YOUR ESTIMATES FOR

17   TRIAL TIME, THAT 12 HOURS PER SIDE SHOULD BE SUFFICIENT.

18        MR. VAN NEST, I THINK THAT'S WHAT YOU ASKED FOR.

19             MR. VAN NEST:  IT IS, YOUR HONOR.

20             THE COURT:  ALL RIGHT.  MR. HOSIE, I THINK YOU WERE

21   ASKING FOR SOME MORE, BUT IN LOOKING AT WHAT THERE IS, WHAT DO

22   YOU THINK?

23             MR. HOSIE:  I AM NOT SURPRISED BY THE COURT'S

24   INCLINATION HERE AND WE WILL BE EFFICIENT AND SO WE'LL DO IT.

25             THE COURT:  OKAY.  SO 12 HOURS PER SIDE.
```

1      AND AS YOU KNOW, THE 12 HOURS IS DIRECT AND

2  CROSS-EXAMINATION.  I EXCLUDE YOUR OPENING AND CLOSING

3  STATEMENTS.

4      I WILL BE HERE AND AVAILABLE AT 8:30 EVERY MORNING FOR THE

5  TYPICAL 30 MINUTES OF OBJECTIONS.

6      THERE ARE CERTAIN THINGS I DON'T DO OFF THE CLOCK AND,

7  AGAIN, IT'S BECAUSE I REALLY BELIEVE YOU CAN WORK IT OUT.  ONE

8  OF THEM IS ANY OBJECTIONS THAT REMAIN ON DEPOSITION TRANSCRIPTS

9  OR VIDEOS THAT WILL BE PLAYED TO THE JURY.  THERE MAY BE SOME

10  OBJECTIONS EMBEDDED IN THE TRANSCRIPTS.  THAT'S PRETTY RARE

11  THESE DAYS.  I DON'T SEE MUCH OF THAT.  OFTEN IT'S THE

12  DESIGNATIONS.  WORK IT OUT.

13      OR, IF YOU CAN'T, THAT'S FINE AND I'M GLAD TO DO IT.  BUT

14  I DO IT ON THE CLOCK BECAUSE IT'S A -- I CONSIDER THAT AS IF

15  THE WITNESS WAS RIGHT HERE AND YOU WERE -- THE OBJECTIONS WERE

16  POSED ON THE CLOCK.

17      SO JUST SO THAT YOU'RE FOREWARNED, IF ANY OF THOSE EXIST,

18  IT TAKES ME A LONG TIME TO DO THOSE BECAUSE I'M NOT ORIENTED IN

19  THE TESTIMONY AND I'VE NEVER SEEN THE TRANSCRIPTS.  SO YOU

20  COULD END UP EASILY LOSING A COUPLE OF HOURS OF YOUR TRIAL TIME

21  IF YOU CAN'T WORK THIS OUT.  SO I'M SURE YOU'LL BE ABLE TO MAKE

22  THAT HAPPEN.

23          MR. VAN NEST:  YOUR HONOR?

24          THE COURT:  YES.

25          MR. VAN NEST:  JUST A QUESTION ON THAT.  THAT'S A

```
 1          DIFFERENCE FROM WHAT I UNDERSTOOD WE DID IN PRIOR TRIALS.

 2                  THE COURT:  IT IS.

 3                  MR. VAN NEST:  SO WE DON'T NEED TO SUBMIT THE

 4          TRANSCRIPTS AHEAD?  IS THAT WHAT YOU'RE TELLING US?

 5                  THE COURT:  SO I'LL NEED THE TRANSCRIPTS BECAUSE THEY

 6          NEED TO BE PART OF THE RECORD.

 7              AND, OF COURSE, THE COURT REPORTER WILL NOT BE REPORTING

 8          THE VIDEOTAPE THAT YOU'RE PLAYING, SO YOU'LL NEED TO SUBMIT, AS

 9          SEPARATE EXHIBITS, THE PORTIONS OF THE TRANSCRIPTS THAT ARE

10          PLAYED TO THE JURY.

11              WHAT I'M SAYING IS THAT IF YOU -- IF MR. HOSIE IS PLAYING

12          A VIDEO AND YOU OBJECT TO THE DESIGNATIONS BECAUSE HE HAS NOT

13          INCLUDED THE PROPER CONTEXT AND WANT TO EXPAND IT AND YOU CAN'T

14          REACH AN AGREEMENT, I'M GLAD TO MAKE THOSE DECISIONS, BUT IT'LL

15          BE ON THE CLOCK.  THAT'S ALL I'M SAYING.

16                  MR. VAN NEST:  IT'LL BE ON THE CLOCK THAT DAY?  SO

17          WE'LL --

18                  THE COURT:  UM-HUM.

19                  MR. VAN NEST:  WE'LL BE TELLING OUR COURTROOM

20          DIRECTOR, PLAY IT OR DON'T PLAY IT.

21                  THE COURT:  YOU CAN BRING IT TO ME EARLIER THAN THAT.

22                  MR. VAN NEST:  WHAT -- BECAUSE WHAT WE THOUGHT WE

23          WOULD DO IS ASK YOU THIS MORNING HOW MANY DAYS BEFORE THE TRIAL

24          DO YOU WANT IT?  IF WE -- BECAUSE IF WE GET IT -- IF YOU DECIDE

25          IT BEFORE THE PLAY, WE CAN CUT THE VIDEO AND THEN WE JUST PLAY
```

```
 1      IT.

 2              THE COURT:  I KNOW.

 3              MR. VAN NEST:  I THINK THERE'S GOING TO BE MINIMAL

 4      OBJECTIONS.  THERE AREN'T THAT MANY DEPOSITION TRANSCRIPTS IN

 5      PLAY.

 6              THE COURT:  YEAH.

 7              MR. VAN NEST:  BUT IF WE GOT IT TO YOU TWO DAYS

 8      BEFORE THE VIDEO IS PLAYED AND YOU GOT US A RULING THE NEXT

 9      DAY --

10              THE COURT:  WE'RE ALL IN THE COURTROOM.

11              MR. VAN NEST:  WHAT?

12              THE COURT:  NO, NO, NO.  THIS IS WHAT YOU NEED TO

13      UNDERSTAND.  IT'S YOUR TIME.  IT'S MY TIME.  WE'RE ALL HERE.

14              MR. VAN NEST:  OKAY.

15              THE COURT:  IT'S AS THOUGH WE'RE ON THE RECORD.

16              MR. VAN NEST:  BUT WHEN DOES IT HAPPEN?  I MEAN, DOES

17      IT HAPPEN AT 8:30 THAT MORNING?

18              THE COURT:  NO.  I'M NOT THAT FAST.  I WANT YOU TO

19      UNDERSTAND.  IT TAKES ME A MINIMUM OF 20 MINUTES ON A

20      DEPOSITION JUST TO ORIENT MYSELF AS TO THE CONTEXT OF THE

21      DEPOSITION IF YOU'RE ASKING FOR MORE TO BE PUT IN TO EXPLAIN

22      THE TESTIMONY THAT MR. HOSIE HAS DESIGNATED.

23          SO I'M NOT OFFERING IT AT 8:30 IN THE MORNING.

24          IF YOU WANT TO COME IN ON THE AFTERNOON OF AUGUST 1ST, WE

25      CAN DO THAT.
```

```
1               MR. VAN NEST:  OKAY.  AND JUST DO THEM ALL?

2               THE COURT:  WE CAN DO THEM ALL.

3               MR. VAN NEST:  ON AUGUST 1ST?

4               THE COURT:  SURE.  IF IT TAKES THREE HOURS, YOU CAN

5       EACH HAVE NINE HOURS.  I'M GOING TO JUST DIVIDE IT EVENLY.

6               MR. VAN NEST:  BUT IT CUTS INTO OUR 12?  THAT'S WHAT

7       YOU'RE TELLING US?

8               THE COURT:  THAT'S RIGHT.

9               MR. VAN NEST:  OKAY.  I GOT IT.

10              THE COURT:  THAT'S WHY THE COST/BENEFIT ANALYSIS

11      SHOULD COME OUT ONLY ONE WAY, MR. VAN NEST.

12              MR. VAN NEST:  I GET IT.  I'M JUST TRYING TO

13      UNDERSTAND WHAT IT IS YOU WANT.  NOW I KNOW.

14              THE COURT:  THAT'S WHAT I WANT.

15              MR. VAN NEST:  SO WE'LL PICK A TIME ON AUGUST 1ST IF

16      WE NEED IT --

17              THE COURT:  YOU'LL LET ME KNOW.

18              MR. VAN NEST:  -- AND WE'LL DO IT.

19              MR. HOSIE:  FULLY UNDERSTOOD, YOUR HONOR.

20              THE COURT:  OKAY.

21          SO WITH THE 12 HOURS IN MIND, THE JURY -- I THINK THAT THE

22      JURY SHOULD BE PREPARED TO BE HERE THROUGH AUGUST 16TH.  IN

23      DOING MY ESTIMATE WITH -- I ESTIMATE THAT WE MAY GET A FULL 20

24      HOURS OF TESTIMONY THE FIRST WEEK.  I THINK THAT YOU COULD

25      EXPECT THAT YOUR CLOSING ARGUMENT WILL BE AS EARLY AS
```

1    AUGUST 12TH, AND THEN THE JURY WOULD HAVE THE REMAINDER OF THE

2    WEEK TO DELIBERATE.  SO I THINK THAT'S AMPLE TIME.

3         TYPICALLY I'VE BEEN DARK ALL DAY ON THURSDAYS, BUT I NEED

4    TO MAKE A SLIGHT CHANGE IN THE SCHEDULE.  WE'LL BE IN SESSION

5    ON THURSDAY, AUGUST 8, FROM 1:00 TO 5:00 BECAUSE ON FRIDAY WE

6    HAVE TO STOP AT NOON.  SO WE WILL BE WELL INTO THE DEFENSE CASE

7    BY THEN, SO OBVIOUSLY, MR. VAN NEST, YOU'LL HAVE WITNESSES

8    THAT'LL NEED TO BE AVAILABLE THEN.

9         AND ON FRIDAY, THE 9TH, WE HAVE TO END PROMPTLY AT NOON.

10        BUT THAT WAY WE STILL GET THE SAME NUMBER OF HOURS IN FOR

11   THE WEEK.  I JUST NEED TO MAKE THE CHANGE.

12        THE FOLLOWING WEEK, SHOULD THE JURY STILL BE DELIBERATING

13   ON THURSDAY, OF COURSE I LET THEM DELIBERATE EVEN THOUGH I'VE

14   GOT OTHER MATTERS GOING ON.

15        AND AS YOU KNOW, THE SCHEDULE IS GENERALLY MONDAY,

16   WEDNESDAY, AND FRIDAY TYPICALLY ARE 9:00 TO 12:00 AND 1:00 TO

17   5:00.  TUESDAYS I START AT 10:00.  I HAVE MY CRIMINAL CALENDAR.

18   AND THIS TIME ON THURSDAY WE'LL BE HERE ON THAT ONE DAY FROM

19   1:00 TO 5:00, AND ON THE 9TH WE'LL BE HERE FROM 9:00 TO 12:00

20   AS I MENTIONED.

21        THERE'S BEEN NO REQUEST FOR BIFURCATION IN THIS MATTER.

22        IN TERMS OF THE TRIAL PRESENTATION, I DO NOT ALLOW

23   EXHIBITS TO SIMPLY BE OFFERED BY STIPULATION.  THEY MUST COME

24   IN THROUGH THE WITNESS.  I'M NOT SAYING YOU HAVE TO GO THROUGH

25   THE TEDIOUS JOB OF AUTHENTICATING A DOCUMENT THAT'S UNOBJECTED

```
 1    TO.  I JUST DON'T ALLOW STEALTH EVIDENCE TO COME IN TO THE

 2    JURY.  SO THAT IS NECESSARY.

 3          I'M SURE THIS WON'T HAPPEN, BUT SHOULD YOU GET TO THE END

 4    OF THE WITNESSES YOU'VE LINED UP FOR THE DAY BUT WE HAVEN'T

 5    REACHED THE CLOSING TIME, THE REMAINING TIME ON THE CLOCK WILL

 6    BE CHARGED AGAINST YOUR TIME.  SO OBVIOUSLY YOU'LL HAVE ALL

 7    YOUR WITNESSES HERE AND I'M SURE THERE WON'T BE A PROBLEM WITH

 8    THAT.

 9          A COUPLE OF THINGS THAT, IN READING YOUR FINAL PRETRIAL

10    STATEMENT, CAME UP.  THERE APPEAR TO BE SOME REMAINING

11    EQUITABLE ISSUES IN THE CASE.  CLEARLY IF THE PLAINTIFF IS

12    SUCCESSFUL, THERE MAY BE A REQUEST FOR AN INJUNCTION.  I'M NOT

13    REALLY TALKING ABOUT THAT.

14          BUT THERE MAY BE SOME DEFENSES THAT ARE EQUITABLE IN

15    NATURE THAT WILL REQUIRE TRIAL TIME AND I COULDN'T REALLY GLEAN

16    WHAT THAT MIGHT BE.

17          SO, MR. VAN NEST, ARE THERE ANY?

18              MR. VAN NEST:  I DON'T THINK SO, YOUR HONOR.

19              THE COURT:  OKAY.

20              MR. VAN NEST:  I THINK -- NOT THAT WE'RE PURSUING

21     NOW.  I THINK IT'S ALL LEGAL FOR THE JURY.

22              THE COURT:  GOOD.  OKAY.  IT LOOKED THAT WAY TO ME,

23     SO THAT'S HELPFUL.

24          THERE IS A SUGGESTION IN THE FINAL PRETRIAL STATEMENT THAT

25     THERE MAY BE REMAINING CONTRACT INTERPRETATION ISSUES, AND
```

```
 1      THERE'S CERTAINLY AN ISSUE IN THE JURY INSTRUCTIONS THAT I

 2      IDENTIFY IN REGARD TO PERHAPS CONTRACT INTERPRETATION REGARDING

 3      THE TERMINATION CLAUSE OF THE NDA.

 4           SO IT ALWAYS RAISES A DIFFICULT CIRCUMSTANCE FOR ME.  THE

 5      JURY INSTRUCTIONS ARE REALLY NOT THE TIME FOR ME TO ISSUE AN

 6      ORDER ON CONTRACT INTERPRETATION.  I HAVEN'T EVEN DETERMINED

 7      THAT THERE'S AN AMBIGUITY IN THE CONTRACT.

 8           AND THE ARGUMENT THAT YOU PROVIDED ME IN THE JURY

 9      INSTRUCTIONS DOESN'T ACTUALLY SEEM ADEQUATE FOR MAKING THE

10      DETERMINATION, SO I'M NOT SURE HOW YOU PLAN TO ADDRESS THAT.

11              MR. VAN NEST:  WE PLAN TO ADDRESS IT TODAY, AT LEAST

12      DISCUSS IT WITH YOUR HONOR.  MR. PAIGE WAS GOING TO ADDRESS THE

13      ISSUE, IDENTIFY WHAT IT WAS, EXPLAIN THE SITUATION --

14              THE COURT:  OKAY.

15              MR. VAN NEST:  -- AND GET YOUR TAKE ON IT.

16              THE COURT:  OKAY.

17              MR. VAN NEST:  IF YOU THINK YOU NEED FURTHER

18      BRIEFING, THEN WE COULD DO THAT.

19              THE COURT:  OKAY.

20              MR. VAN NEST:  BUT WE WERE HOPING TO HAVE AN INITIAL

21      DISCUSSION TODAY.

22              THE COURT:  THAT'S REASONABLE.

23           WERE THERE ANY OTHER ISSUES ON INTERPRETING THE NDA?

24              MR. VAN NEST:  I DON'T THINK SO.

25              THE COURT:  OKAY.  THAT'S THE ONLY ONE I COULD -- I
```

1    MEAN, YOU HAD A FAIRLY OPEN-ENDED SORT OF PLACE SAVER IN THE

2    PRETRIAL STATEMENT, BUT THE JURY INSTRUCTIONS ONLY SHOWED ME

3    THE ONE.

4         MR. VAN NEST:  RIGHT.  THAT'S THE ONE.

5         THE COURT:  OKAY.  THAT'S FINE.

6         OKAY.  I THINK WE'VE ADDRESSED THE BENCH TRIAL ON THE '706

7    PATENT.  I'VE GIVEN YOU A NEW DATE FOR IT.  IT LOOKS AS THOUGH

8    FOUR HOURS PER SIDE, I DON'T NEED TO LOCK THAT IN NOW, BUT JUST

9    FOR MY OWN PLANNING, IS REASONABLE.

10        MR. HOSIE:  IT IS, YOUR HONOR.

11        MR. VAN NEST:  THAT'S RIGHT, YOUR HONOR.

12        THE COURT:  GOOD.  OKAY.

13        IN TERMS OF YOUR OPENING STATEMENTS AND CLOSING ARGUMENTS,

14   I PERSONALLY THINK THEY'RE VERY IMPORTANT TO THE JURY, SO I

15   NEVER WANT TO CURTAIL THE AMOUNT OF TIME THAT'S REASONABLE, BUT

16   I DO LIKE TO PUT YOU ON THE CLOCK.

17        AND SO IT SEEMED AS THOUGH 30 MINUTES WOULD BE AMPLE FOR

18   AN OPENING STATEMENT.

19        MR. HOSIE:  YOUR HONOR, I BELIEVE THE PARTIES HAVE

20   AGREED ON 45 MINUTES.

21        IS THAT CORRECT?

22        THE COURT:  OKAY.

23        MR. VAN NEST:  WE DID.

24        THE COURT:  THAT'S FINE.  I HAVE NO PROBLEM WITH

25   45 MINUTES.

18

```
1           I WAS GOING TO PROVIDE AN HOUR AND A HALF FOR CLOSING.

2      THAT'S A LOT FOR A SHORT TRIAL, BUT I -- YOU DON'T HAVE TO USE

3      IT ALL.  IS THAT --

4              MR. HOSIE:  I DON'T THINK THE PLAINTIFF WOULD REQUIRE

5      AN HOUR AND A HALF.  WE'D PUT THE JURY TO SLEEP AFTER MAYBE 50

6      MINUTES.

7              MR. VAN NEST:  YEAH.  I THOUGHT AN HOUR WAS PLENTY

8      FOR THE CLOSING.

9              THE COURT:  GOOD.  SO I GET MY TIME BACK.  SO ONE

10     HOUR IS FINE.  THAT'S GOOD.

11          ALL RIGHT.  JUST SO THAT -- I TALKED ABOUT THE OBJECTIONS

12     TO THE DEPOSITION TESTIMONY.

13          I JUST WANT TO BE CLEAR.  I KNOW YOU HAVE PREPARED THOSE

14     TEDIOUS CHARTS OF THE TRIAL EXHIBITS AND OBJECTIONS.  I'M NOT

15     GOING TO RULE ON THOSE.  YOU UNDERSTAND THAT?  BECAUSE SO FEW

16     OF THOSE EXHIBITS WILL SEE THE LIGHT OF DAY.

17          BUT YOU ARE ALERTED, AMONG YOURSELVES, AS TO WHAT THE

18     OBJECTIONS ARE.  IF ANY EVIDENTIARY OBJECTIONS REMAIN ON

19     EXHIBITS, YOU'LL BRING THOSE AT 8:30 IN THE MORNING OR OBJECT

20     ON THE RECORD, WHATEVER IS NECESSARY.

21          I -- YOU'LL TALK TO MS. SALINAS-HARWELL ABOUT PREMARKING

22     YOUR EXHIBITS.  DO THAT.

23          AND I WILL ASK THAT, AT THE END OF THE EVIDENCE, THAT YOU

24     HAVE PREPARED A LIST OF ADMITTED EXHIBITS TO GO TO THE JURY,

25     JUST BECAUSE I ASSUME A LOT OF THESE ARE JUST GOING TO BE
```

```
 1   ELECTRONIC FORMAT.

 2              MR. HOSIE:  THEY WILL BE, YOUR HONOR.

 3              THE COURT:  GOOD.  AND THAT WAY THEY CAN FIND THEM.

 4         AND YOU ALL KNOW HOW TO PRESENT THEM.

 5         THERE SEEMED TO BE SOME MINOR DISAGREEMENT ON THE PROTOCOL

 6   FOR THE PARTIES' DISCLOSURE OF WITNESSES AND EVIDENCE TO EACH

 7   OTHER.

 8         MY ONLY REQUIREMENT, WHICH I THINK YOU'VE PROPERLY

 9   IDENTIFIED HERE, IS THAT ANY OBJECTION TO BE PRESENTED TO ME

10   MUST BE PRESENTED BY -- IF IT'S GOING TO BE IN WRITING.  IT

11   DOESN'T HAVE TO BE IN WRITING.  YOU CAN JUST SHOW UP AT 8:30

12   AND DO IT ORALLY.

13         BUT IF IT'S GOING TO BE IN WRITING, IT NEEDS TO BE FILED

14   BY 5:00 P.M. THE COURT DAY BEFORE I'M GOING TO TAKE IT UP.  SO

15   FOR MONDAY, OF COURSE, THAT'S FRIDAY BY 5:00 P.M.  EACH SIDE IS

16   LIMITED TO ONE THREE-PAGE BRIEF PER DAY.  YOU CAN HAVE MULTIPLE

17   TOPICS, BUT IT'S NOT THREE PAGES PER TOPIC.

18         BUT THERE WAS SOME DISAGREEMENT ABOUT HOW YOU ARE GOING TO

19   MAKE THOSE -- HAVE THE MEET AND CONFER AND DEAL WITH THAT.

20   IT'S A LITTLE HARD FOR ME TO WEIGH INTO IT BECAUSE I DON'T

21   REALLY KNOW THE MANNER IN WHICH YOU'RE WORKING OVERNIGHT.  SO

22   DO YOU STILL -- DO YOU STILL HAVE THAT DISAGREEMENT?  DO YOU

23   NEED ME TO DO ANYTHING ON THAT?

24              MR. WONG:  I THINK THE PARTIES --

25              MR. ATKINSON:  WE'RE PRETTY CLOSE, YOUR HONOR.
```

```
 1                THE COURT:  OKAY.

 2                MR. ATKINSON:  I THINK WE CAN PROBABLY REACH

 3     AGREEMENT BY THE END OF THE DAY.

 4                THE COURT:  OKAY.  THAT'S GREAT.

 5                MR. HOSIE:  I WOULD BE SHOCKED OTHERWISE.

 6                THE COURT:  WELL, YOU KNOW, I END UP FEELING LIKE

 7     WHATEVER I DECIDE IS SOMEWHAT ARBITRARY BECAUSE I DON'T KNOW

 8     HOW YOU'RE WORKING AND HOW YOUR TEAMS ARE WORKING AND IT

 9     BECOMES HARD FOR ME.

10                MR. WONG:  RIGHT.  I THINK THERE WAS ONE ISSUE WHERE

11     I THINK WE WERE IN AGREEMENT, BUT WE WANTED TO MAKE SURE, THAT

12     THE DISCLOSURE REQUIREMENTS FOR DIRECT EXAMINATION EXHIBITS

13     APPLY TO WHETHER OR NOT THE WITNESS IS BEING CALLED ADVERSELY

14     OR NOT.

15                THE COURT:  OH, OKAY.

16                MR. ATKINSON:  WE AGREE WITH THAT.

17                MR. WONG:  OKAY.  THEN WE HAVE NO DISAGREEMENT ON

18     THAT, EITHER.

19                THE COURT:  THAT'S GREAT.  I REALLY APPRECIATE THAT.

20          THE ONE THING THAT I THINK YOU UNDERSTAND IS THAT ONCE YOU

21     REACH THE PROTOCOLS AND YOU HAVE AGREEMENT ON THEM, I WILL

22     ENFORCE THEM.

23                MR. WONG:  SURE.  THANK YOU.

24                THE COURT:  OKAY.  THAT'S GREAT.

25          ALL RIGHT.  I THINK THAT TAKES CARE OF MY GENERAL ISSUES.
```

```
 1              LET ME TURN TO THE QUESTIONNAIRE.  THANK YOU FOR

 2    SUBMITTING A SINGLE ONE.  THAT WAS A VERY QUICK TURNAROUND.

 3    THAT WAY -- THEY LOOKED LARGELY THE SAME, BUT I DIDN'T WANT TO

 4    HAVE TO DO A READ AGAINST, SO THAT WAS REALLY HELPFUL.

 5              I LIKE QUESTIONNAIRES.  I FIND THEM TO BE VERY HELPFUL.

 6              I'M GOING TO -- IF YOU HAVE SOMEONE HERE WHO CAN ACTUALLY

 7    PULL OUT AND MARK UP THE QUESTIONNAIRE, BECAUSE I'M GOING TO

 8    WALK THROUGH IT.  IS THAT SOMETHING YOU HAVE AVAILABLE?

 9              MR. HOSIE:  WE DO, YOUR HONOR.

10              MR. VAN NEST:  YES, YOUR HONOR.

11              THE COURT:  EXCELLENT.  OKAY.

12         SO I HAD SOME CONCERN ABOUT WHETHER THERE'S ENOUGH SPACE

13    IN THIS FORMAT FOR JURORS TO ACTUALLY LEGIBLY WRITE THEIR

14    ANSWERS.  HAVE YOU USED THIS FORMAT SUCCESSFULLY BEFORE?

15              MR. HOSIE:  WE HAVE, YOUR HONOR.  IN FACT, INCLUDING

16     IN THIS COURTROOM.

17              THE COURT:  DID WE USE -- WAS IT THIS --

18              MR. HOSIE:  YEAH, WE MODELED THIS BASED ON THAT.

19              THE COURT:  OKAY.  THAT'S FINE.

20              MR. VAN NEST:  WE CAN EXPAND IT THOUGH, YOUR HONOR,

21     IF YOU WISH.

22              MR. HOSIE:  YEAH.

23              MR. VAN NEST:  THIS IS ALL ELECTRONIC.

24              MR. HOSIE:  AND WE'RE FINE WITH THAT, TOO.

25              THE COURT:  WELL, THERE ARE A COUPLE OF THEM THAT
```

```
 1        LOOKED A LITTLE TOO CROWDED, SO THAT'S EASY TO SOLVE, AND I'LL

 2        JUST WALK THROUGH THEM.

 3             SO I'M STARTING ON PAGE 1.  QUESTION NUMBER 3, I'M GOING

 4        TO HAVE YOU DELETE THE DATE OF BIRTH.  YOU ASK FOR AGE AND

 5        THAT'S SUFFICIENT.  PLACE OF BIRTH IS FINE.

 6             NUMBER 6, I'M GOING TO HAVE YOU DELETE NUMBER 6 REGARDING

 7        OWN OR RENT A HOME.

 8             ON NUMBER 9, I'M GOING TO HAVE YOU DELETE MARITAL STATUS.

 9             ON NUMBER 12, THAT'S TOO MUCH INFORMATION REQUIRED TO PUT

10        INTO THAT SPOT, AND IT SEEMED TO ME THAT THE MANAGED OR

11        SUPERVISED ANYONE AND WHETHER THE JOB REQUIRED INVOLVEMENT WITH

12        TRADE SECRETS WAS A LOT TO ASK OF THE PRIOR THREE JOBS.

13             BUT IF YOU WANT ALL OF THAT, I DON'T OBJECT TO IT AT ALL.

14        THEY JUST CAN'T WRITE ALL THAT IN THAT LITTLE SPACE.  SO I

15        NEED -- I NEED MORE SPACE HERE FOR NUMBER 12 IF YOU WANT ALL OF

16        THAT INFORMATION.

17             ON NUMBER 17, YOU MAY HAVE NOTICED THAT THE YES/NOS DON'T

18        LINE UP WITH THE QUESTIONS, SO THAT'S GOING TO NEED A LOT MORE

19        ROOM.

20             AND LET ME -- LET ME ASK YOU ABOUT 17K, AND IT SAYS --

21        THIS IS, "HAVE YOU OR SOMEONE CLOSE TO YOU EVER OWNED STOCK IN

22        ALPHABET?"  SO THAT'S FINE.

23             BUT I NEED TO KNOW CURRENT OWNERSHIP OF STOCK BECAUSE I

24        BELIEVE THAT A JUROR WHO OWNS STOCK IN A PARTY IS AUTOMATICALLY

25        EXCUSED FOR CAUSE.
```

1              MR. HOSIE:  YOUR HONOR --

2              MR. VAN NEST:  YOU WANT A SEPARATE QUESTION?

3              THE COURT:  I NEED A SEPARATE QUESTION.  IT'S FINE TO

4    ASK IF THEY EVER DID, BUT I NEED THE CURRENT ISSUE.

5              MR. VAN NEST:  DO YOU CURRENTLY OWN?

6              THE COURT:  AND THEN I HAD A QUESTION.  DOES ONE OWN

7    STOCK IN GOOGLE ANYMORE?  OR IS IT ALL ALPHABET?  OR WOULD

8    ANYONE KNOW?  I --

9              MR. HOSIE:  YOUR HONOR, THAT'S A WISE QUESTION.  I

10   THINK THAT'S EXACTLY RIGHT.  I THINK WE SHOULD ASK ABOUT

11   ALPHABET AND/OR GOOGLE.  PEOPLE THINK ABOUT IT AS GOOGLE STOCK.

12             THE COURT:  I THINK THEY DO.

13             MR. VAN NEST:  YES.

14             MR. WERDEGAR:  WE AGREE WITH THAT, YOUR HONOR.

15             THE COURT:  OKAY.  SO YOU'LL CHANGE -- K WILL BE

16   "HAVE YOU EVER OWNED STOCK IN ALPHABET OR GOOGLE."  AND I THINK

17   IT OUGHT TO BE A SEPARATE QUESTION AS TO "DO YOU CURRENTLY

18   OWN?"

19             MR. VAN NEST:  UM-HUM.

20             THE COURT:  AND I SUPPOSE IT -- HERE WE SHOULD SAY

21   "OR A SPOUSE" BECAUSE OF THE COMMUNITY PROPERTY INTEREST.

22             MR. VAN NEST:  YES.

23             THE COURT:  AND SO IF YOU'D ADD THAT QUESTION ON

24   ALPHABET AND GOOGLE.

25             DO YOU DISAGREE THAT IT'S AN AUTOMATIC FOR CAUSE EXEMPTION

```
 1        IF THEY CURRENTLY OWN STOCK?

 2                 MR. VAN NEST:  NO.

 3                 THE COURT:  OKAY.

 4                 MR. VAN NEST:  I DON'T THINK IT IS.

 5                 THE COURT:  UNDER STATE LAW, IT'S EXPRESS, BUT I

 6        THINK --

 7                 MR. HOSIE:  IT'S THE RIGHT RESULT.

 8                 THE COURT:  -- IT IS THE RIGHT RESULT.

 9                 MR. KAMBER:  SORRY TO THROW A WRENCH IN THIS, YOUR

10        HONOR, BUT THERE IS AN ISSUE ABOUT -- A LOT OF PEOPLE OWN INDEX

11        FUNDS.  A LOT OF INDEX FUNDS HAVE APPLE, G.E. --

12                 THE COURT:  AND WE DON'T CARE ABOUT INDEX FUNDS.

13                 MR. KAMBER:  -- ALPHABET AND THINGS LIKE THAT.

14                 THE COURT:  I'M GLAD FOR YOU TO PUT A PARENTHETICAL,

15        "THIS DOES NOT INCLUDE GOOGLE STOCK THAT MAY BE INCLUDED IN

16        INDEX OR MUTUAL FUNDS."  I THINK THAT'S A GOOD EXPLANATION AND

17        IT SAVES US.

18                 MR. KAMBER:  OTHERWISE EVERYONE WILL BE OUT.

19                 THE COURT:  I IMAGINE THAT'S RIGHT IF YOU HAVE A --

20        YEAH, THAT'S REALLY HELPFUL.

21            ALL RIGHT.  THEN ON NUMBER 20, I'D LIKE YOU TO TAKE OUT

22        THE PARENTHETICAL OF "AND WHETHER YOU HOLD ANY OFFICES OR

23        LEADERSHIP ROLES IN AFFILIATED GROUPS/ORGANIZATIONS."  BUT I

24        DON'T HAVE -- I HAVE NO PROBLEM WITH THE QUESTION GENERALLY.

25                 AND THEN NUMBER 21, "DO YOU KNOW ANYONE ON THE JURY
```

```
 1    PANEL," I'VE ACTUALLY NEVER HAD THAT QUESTION.  I ONCE SEATED A

 2    HUSBAND AND WIFE ON THE SAME JURY.  IT DIDN'T SEEM LIKE IT WAS

 3    ANY PROBLEM.

 4         (LAUGHTER.)

 5              THE COURT:  SO WHAT'S THE -- I MEAN, I DON'T HAVE A

 6    PROBLEM WITH THE QUESTION, AND SOMETIMES IT'S A GOOD THING TO

 7    MAKE SURE THAT THEY WOULDN'T BE SO ALIGNED THAT ONE WOULD DEFER

 8    TO THE OTHER.  SO IF THAT'S WHAT YOU'RE LOOKING AT OPENING THE

 9    DOOR FOR, I'M GLAD TO LEAVE IT.

10              MR. HOSIE:  YOUR HONOR, I BELIEVE THIS WAS OURS AND

11    IT WAS THAT CONCERN PRECISELY.

12              THE COURT:  OKAY.

13              MR. HOSIE:  SOME RELATIONSHIP THAT RENDERS THE TWO

14    ESSENTIALLY ONE UNBEKNOWNST TO COUNSEL AND THE COURT.

15              THE COURT:  OKAY.  I REMEMBER ASKING THE WIFE OF

16    50 YEARS ABOUT HER HUSBAND, IF SHE WOULD FEEL INCLINED TO VOTE

17    THE WAY HE DID ON THE JURY.  SHE LOOKED AT ME AND SHE SAID,

18    "WELL, I HAVEN'T FOR THE LAST 50 YEARS."

19         (LAUGHTER.)

20              MR. HOSIE:  THERE IS THAT.

21              THE COURT:  SO THAT'S WHY THEY BOTH SAT ON THE JURY.

22         ANYWAY, THAT'S FINE.  I DON'T HAVE A PROBLEM WITH THAT.

23         NUMBER 23, I'D LIKE -- ON THE PRIVACY, I'D LIKE TO JUST

24    TAKE THAT OFF BECAUSE I INVITE THEM TO LET ME KNOW THAT

25    SOMETHING MIGHT BE PRIVATE WHEN YOU ASK THE QUESTIONS.  SO THIS
```

```
 1     JUST MAY CAUSE THEM TO HAVE TO WRITE THINGS THAT ARE NOT

 2     RELEVANT TO WHAT WE'RE ASKING QUESTIONS ON.

 3          AND THEN THE LIST -- THIS IS JUST WHAT I NEED.  MR. HOSIE,

 4     YOU TOOK THE LANGUAGE FROM YOURS.  IT SAYS, "OTHER PEOPLE IN

 5     SOME WAY CONNECTED TO THE CASE."  I REALLY AM ONLY INTERESTED

 6     IN POSSIBLE WITNESSES.

 7               MR. HOSIE:  FAIR ENOUGH.

 8               THE COURT:  SO IF YOU COULD JUST CHANGE THAT.  I'M

 9     NOT SUGGESTING YOU TAKE ANY NAMES OFF OF HERE, BUT YOU MIGHT

10     END UP DOING THAT, THAT SOME OF THESE AREN'T DESIGNATED

11     WITNESSES.  BUT I'D LIKE IT JUST TO BE THE WITNESSES.

12               MR. HOSIE:  OKAY.

13               THE COURT:  AND, OF COURSE -- AND THEN YOU'VE GOT THE

14     SIGNED UNDER THE PENALTY OF PERJURY, SIGNATURE AND DATE.  I

15     HOPE THAT'LL -- YES.

16          AND THEN, OF COURSE, YOUR NAMES, THE SIGNATURE LINES WILL

17     ALL COME OFF.  IT'LL JUST END WITH THE JUROR'S SIGNATURE LINE.

18          OKAY.  THAT TAKES CARE OF THAT.

19               MR. ATKINSON:  I'M SORRY, YOUR HONOR.  DO YOU NEED

20     THIS AHEAD OF AUGUST 2ND?

21               THE COURT:  I THINK TIFFANY LIKES IT TWO OR THREE

22     DAYS IN ADVANCE.  PARTLY IT'S JUST TO KNOW THAT SHE'S GOT IT

23     AND SHE'S NOT SCURRYING AROUND ON THE MORNING OF.

24               MR. HOSIE:  AND THAT WOULD BE THE 40 COPIES AS YOU

25     MENTIONED EARLIER?
```

```
1              THE COURT:  THE 40 COPIES, YES.

2              MR. HOSIE:  UNDERSTOOD.

3              THE COURT:  AS I SAID, SOMEONE SHOULD GIVE HER A CALL

4    NEXT WEEK AND JUST TALK ABOUT THE LOGISTICS AND THE EXHIBITS.

5    I DON'T ACTUALLY KNOW WHEN SHE WANTS YOU TO BRING THINGS INTO

6    THE COURTROOM, BUT I THINK IT'S BEST JUST TO TALK TO HER ABOUT

7    THAT.

8              I WANT TO -- I HAVE -- LET'S SEE.  LET ME -- I LOOKED AT

9    THE JURY INSTRUCTIONS AT A HIGH LEVEL SO THAT I COULD IDENTIFY

10   SOME ISSUES THAT YOU MIGHT WANT TO BE THINKING ABOUT BEFORE WE

11   ACTUALLY WRESTLE WITH THE ACTUAL LANGUAGE.

12             SO I WANTED TO GO OVER SEVERAL OF THE JURY INSTRUCTIONS

13   AND -- I MEAN, IF YOU CAN RESPOND NOW, THAT'S FINE, BUT IT'S

14   ACTUALLY NOT NECESSARY.

15             SO -- AND, AGAIN, THANK YOU FOR RENUMBERING THEM FOR ME.

16   YOU KNOW, AGAIN, I WILL BE SHUFFLING THESE AROUND TO PUT THEM

17   IN THE ORDER THAT I WANT AT THE END, AND SOMETIMES A

18   PRELIMINARY INSTRUCTION GETS READ AGAIN, AND SO I JUST DIDN'T

19   WANT TWO NUMBER 1S AND ALL.  SO THANK YOU FOR DOING THAT.

20             IN INSTRUCTION NUMBER 2, WHICH IS THE NEUTRAL STATEMENT,

21   SAME REQUIREMENT THERE AS WITH THE NEUTRAL STATEMENT TO THE

22   JURY.  WORK IT OUT OR YOU'LL BE SPENDING PRECIOUS TRIAL TIME,

23   TRIAL PREP TIME WITH ME.

24             WITH NUMBER 7, THIS IS THE CONFIDENTIALITY DESIGNATIONS

25   ADDED BY THE ATTORNEYS.  I DIDN'T WANT TO SPRING THIS ON YOU
```

```
 1    THE DAY BEFORE YOU'RE PRESENTING YOUR EXHIBITS.  I THINK YOU

 2    NEED TO TAKE OUT -- TAKE OFF THE DOCUMENT ANYTHING ADDED FOR

 3    THE PURPOSE OF LITIGATION.  IT'S JUST TOO LIKELY TO CAUSE

 4    CONFUSION FOR THE JURY ON AN ESSENTIAL ELEMENT OF A TRADE

 5    SECRET CASE.

 6           MR. HOSIE:  SO IF I MAY CLARIFY, YOUR HONOR, IF THE

 7    DOCUMENT ORGANICALLY AND HISTORICALLY WAS STAMPED "PROPRIETARY

 8    AND CONFIDENTIAL" --

 9           THE COURT:  OH, THAT'S IMPORTANT.  IT'S WHAT WAS

10    ADDED FOR THE LITIGATION.

11           MR. HOSIE:  UNDERSTOOD.  THANK YOU, YOUR HONOR.

12           THE COURT:  AND I THINK YOU HAVE AN INSTRUCTION THAT

13    SAYS ATTORNEYS' EYES ONLY.  YOU KNOW WHAT YOU ADDED UNDER THE

14    PROTECTIVE ORDER.  IT WAS DESIGNATIONS CAUSED BY THE PROTECTIVE

15    ORDER IN THE CASE.

16       BUT THE JURY NEEDS -- I MEAN, A BIG PART OF WHAT IS

17    TYPICALLY PRESENTED IN A TRADE SECRET CASE IS, "LOOK, THIS WAS

18    ALWAYS MARKED CONFIDENTIAL."  OR, "LOOK, THIS WASN'T EVEN

19    DESIGNATED CONFIDENTIAL."  SO I DON'T WANT THE CONFUSION OF,

20    "OH, BUT IGNORE THIS."

21           SO, MR. WERDEGAR, IS THAT --

22           MR. WERDEGAR:  SURE.  JUST A LOGISTICAL FOLLOW-UP,

23    YOUR HONOR, TWO ACTUALLY.  ONE IS IN OTHER CASES WE'VE DONE IT

24    WHERE WE'VE REMOVED THE LABEL, BUT LEFT IN EITHER AN ASTERISK

25    OR SOME OTHER LITTLE SYMBOL THAT WOULD HAVE NO MEANING TO THE
```

```
1     JURY, BUT SO WE CAN LATER KEEP TRACK OF WHETHER IT'S AEO OR

2     WHETHER IT WAS CONFIDENTIAL.

3            THE COURT:  OH, THAT'S FINE WITH ME IF YOU WANT SOME

4     DESIGNATION LIKE THAT.

5         MR. HOSIE, YOU CAN WORK THAT OUT.

6         MR. WERDEGAR:  WE CAN CONFER WITH THEM, CERTAINLY.

7         MR. HOSIE:  THAT MAKES SENSE TO US, YOUR HONOR.

8            THE COURT:  THAT MAKES A LOT OF SENSE.  AND THEN IT'S

9     JUST A RANDOM MARK ON THE DOCUMENT.

10           MR. WERDEGAR:  AND THEN THE SECOND FOLLOW-UP IS DO

11    YOU WANT THE BATES NUMBERING REMOVED FROM TRIAL EXHIBITS AS

12    WELL, OR DO YOU MIND KEEPING THE BATES NUMBERS?

13           THE COURT:  I DON'T HAVE ANY TROUBLE WITH THE BATES

14    NUMBERS.  IT'S JUST THAT THIS CONFIDENTIAL IS -- IT'S JUST SO

15    IMPORTANT AND I KNOW IT WAS A DISPUTE IN THE INSTRUCTION.

16    SO -- AND THEN THAT INSTRUCTION WILL PROBABLY COME OUT, BUT

17    WE'LL GET TO THAT LATER.  THAT I'M NOT CONCERNED ABOUT.

18        I DIDN'T WANT YOU HAVING TO DO THE LEGWORK ON THIS JOB AT

19    THE LAST MINUTE.

20        AND THEN INSTRUCTION NUMBER 46, THIS IS THE MEANING OF THE

21    EXPIRATION CLAUSE, THIS IS ONE WE'RE GOING TO TALK ABOUT LATER

22    THIS MORNING, MR. VAN NEST?

23           MR. VAN NEST:  YES.

24           THE COURT:  OKAY.  THEN WE'LL PASS THIS FOR NOW.

25        I -- LET'S SEE.  NUMBER 48 REALLY THREW ME FOR A LOOP, SO
```

1  I'M HOPING THAT IT'S JUST THAT I'M MISINFORMED.

2      THIS IS THE DISPUTED INSTRUCTION REGARDING BREACH OF

3  CONTRACT, UNJUST ENRICHMENT.

4      SO I CLEARLY RECOGNIZE THAT UNJUST ENRICHMENT IS A MEASURE

5  OF DAMAGES FOR TRADE SECRET MISAPPROPRIATION.  WE'RE GOING TO

6  PUT THAT ASIDE.

7      MY UNDERSTANDING OF THE LAW IS, ON UNJUST ENRICHMENT AND

8  BREACH OF CONTRACT, THAT THEY ARE MUTUALLY EXCLUSIVE REMEDIES,

9  AND YOU'RE GIVING ME AN INSTRUCTION THAT LOOKS TO BE A

10  LIABILITY INSTRUCTION FOR UNJUST ENRICHMENT.  BUT THE PLAINTIFF

11  DOESN'T HAVE A CLAIM FOR UNJUST ENRICHMENT, ONLY FOR BREACH OF

12  CONTRACT, BREACH OF CONTRACT, THE NDA.  AND THERE'S NO

13  INSTRUCTION FOR CONTRACT DAMAGES.

14      SO THIS IS -- THIS IS A -- THERE'S A PROBLEM HERE, AND I

15  DON'T THINK THIS INSTRUCTION IS PROPER AT ALL AND I THINK YOU

16  NEED A DAMAGES INSTRUCTION.

17      AND I'M NOT AWARE THAT UNJUST ENRICHMENT IS A MEASURE OF

18  DAMAGES FOR THE BREACH OF CONTRACT.

19      SO I DON'T KNOW WHERE YOU'RE GOING TO GO ON THAT.  YOU CAN

20  TELL ME I'M WRONG AND THAT WOULD BE FINE.

21      BUT I THINK YOU ALL KNOW THE LAW ON UNJUST ENRICHMENT.  IN

22  FACT, YOU PROBABLY BOTH ARGUED TO ME THAT IT'S NOT A CLAIM.

23          MR. ATKINSON:  CERTAINLY, YOUR HONOR.  WE HAVE HAD

24  THIS ISSUE IN ANOTHER CASE AND WE DO HAVE AUTHORITY FOR THE

25  PROPOSITION THAT UNJUST ENRICHMENT IN A CASE WITH A

```
 1    NON-DISCLOSURE AGREEMENT SPECIFICALLY IS A CORRECT MEASURE OF

 2    DAMAGES.

 3              THE COURT:  OKAY.  BUT IT'S A MEASURE OF DAMAGES AND

 4    NOT -- YOU'VE GIVEN ME AN INSTRUCTION FOR THE LIABILITY SIDE.

 5    SO THANK YOU, THAT'S GREAT, AND I WOULD LIKE TO SEE THAT.

 6         BUT IF YOU WOULD CHANGE THIS INTO A DAMAGES INSTRUCTION.

 7              MR. HOSIE:  UNDERSTOOD, YOUR HONOR.

 8              THE COURT:  AND THEN IT -- I MEAN, YOU CAN -- YOU CAN

 9    SUBSTITUTE IT WITH THIS NUMBER AND I CAN JUST MOVE IT.  THAT'S

10    A SIMPLE THING TO DO.

11              MR. HOSIE:  POINT TAKEN, YOUR HONOR.  THANK YOU.

12              THE COURT:  OKAY, GOOD.

13         INSTRUCTION NUMBER 54 ON MISAPPROPRIATION BY DISCLOSURE,

14    AGAIN, I'M NOT TRYING TO RESOLVE THIS TODAY, BUT IT WAS NOT

15    CLEAR TO ME THE NATURE OF THE DISCLOSURE THAT IS THE THEORY.

16         YOU DO ALLEGE INAPPROPRIATE DISCLOSURE IN THE COMPLAINT,

17    AND IT -- IN READING THE INSTRUCTION, IT WASN'T CLEAR TO ME

18    WHETHER THE THEORY WAS THAT THIS WAS INAPPROPRIATE, UNLAWFUL

19    INTERNAL DISCLOSURE, OR THAT THERE WAS EXTERNAL, OUTSIDE OF

20    THESE ENTITIES.  AND IF IT WAS NOT EXTERNAL, I DON'T KNOW

21    WHETHER THERE'S A DISAGREEMENT ON WHETHER THAT IS EVEN A PROPER

22    CLAIM.

23              MR. HOSIE:  IT IS INTERNAL DISCLOSURE --

24              THE COURT:  OKAY.

25              MR. HOSIE:  -- YOUR HONOR.
```

1    AND I'D BE CURIOUS TO SEE IF GOOGLE THINKS THAT'S AN

2    IMPROPER CLAIM.

3        MR. WERDEGAR:  WE DO THINK THAT'S AN IMPROPER CLAIM,

4    YOUR HONOR.  YOU'VE HIT THE NUB OF THE DISPUTE.

5        THE COURT:  OKAY.  SO YOU RAISE IT, I THINK, IN AN IN

6    LIMINE MOTION, OR MAYBE IN THIS ARGUMENT, THAT THIS WAS A

7    THEORY THAT WAS NOT DISCLOSED.

8        MR. WERDEGAR:  WELL, IT'S A THEORY THAT -- IT'S A

9    THEORY THAT'S NOT BEEN -- I DON'T THINK IT'S A THEORY THAT'S

10   MISAPPROPRIATION UNDER CALIFORNIA OR FEDERAL LAW.

11       THE COURT:  SO DO I HAVE ANY -- BUT I DON'T KNOW

12   WHETHER I HAVE ANY BRIEFING ON THIS PARTICULAR ISSUE OF WHAT,

13   WHAT CONSTITUTES UNLAWFUL DISCLOSURE.

14     SO THIS MAY BE SOMETHING YOU NEED TO SUPPLEMENT FOR ME.

15       MR. WERDEGAR:  WE WILL.

16       THE COURT:  AS I SAY, THIS IS NOT THE TIME.  I'M NOT

17   PUTTING YOU ON THE SPOT.  I'M IDENTIFYING THINGS I DON'T THINK

18   YOU CAN RESPOND TO OFF THE CUFF.

19       MR. WERDEGAR:  THIS IS HELPFUL.  WE'D BE HAPPY TO DO

20   THAT TO EXPLAIN OUR POSITION MORE FULLY.

21       THE COURT:  OKAY.  BUT I DID UNDERSTAND, MR. HOSIE,

22   YOUR POSITION IS IT WAS INAPPROPRIATE INTERNAL DISCLOSURE.

23       MR. HOSIE:  INDEED, AND WE HAVE BEEN CLEAR TO THAT

24   EFFECT WITH GOOGLE.

25       THE COURT:  OKAY.  WELL, OF COURSE, YOU KNOW, THIS IS

```
 1        THE TIME I LEARN ABOUT THE CASE.

 2             MR. HOSIE:  OF COURSE, YOUR HONOR.

 3             THE COURT:  SO I'M WAY BEHIND YOU ON UNDERSTANDING

 4        THIS.

 5             MR. HOSIE:  AND IF I MAY, YOUR HONOR, I THINK THIS --

 6        MR. WERDEGAR MAY HAVE BEEN SUGGESTING ADDITIONAL BRIEFING.  I

 7        THINK THE PARTIES SHOULD JUST WORK AND CONFER ON THIS BEFORE WE

 8        DO THAT.

 9             THE COURT:  WELL, CERTAINLY START THERE.  I'M NOT

10        LOOKING FOR -- YOU KNOW, I'M LOOKING FOR AUTHORITY IN THE

11        NATURE OF THE WAY YOU POSE YOUR ARGUMENTS IN YOUR DISPUTED JURY

12        INSTRUCTIONS.  I'M NOT LOOKING FOR FULL-BLOWN BRIEFS.

13          BUT I NEED YOU TO BRING AUTHORITY TO ME, AND IF YOU CAN

14        GIVE ME SOMETHING A DAY OR TWO IN ADVANCE SO I CAN READ THE

15        CASES, THAT'S GREAT.  BUT WE'RE TAKING ABOUT A PAGE JUST LIKE

16        THESE ARE.

17             MR. HOSIE:  THANK YOU.

18             THE COURT:  THEN THERE IS THE GENERAL DISAGREEMENT

19        AND LITTLE DISCONNECT IN THE INSTRUCTIONS.  CLEARLY A NUMBER OF

20        THE INSTRUCTIONS APPLY TO BOTH THE STATE AND THE FEDERAL CLAIM

21        AND IT'S NEVER -- I TEND TO LIKE EACH CLAIM TO HAVE ITS OWN

22        FULL SET OF INSTRUCTIONS, BUT THERE ARE SO MANY THAT OVERLAP

23        THAT IT GETS REALLY TEDIOUS FOR THE JURY TO HEAR THEM.

24          SO HAVING FIRST THOUGHT THAT'S WHAT I WANTED YOU TO DO, BY

25        THE TIME I READ THEM ALL, I REALIZED HOW MANY THERE WERE.  WHAT
```

1    I THINK WILL SOLVE THIS BETTER, TO MAKE IT CLEAR FOR THE JURY,

2    I'M PERFECTLY COMFORTABLE WITH AN INSTRUCTION THAT REFERS TO

3    BOTH LAWS, BUT I'D LIKE EACH ONE OF THOSE TO SAY, "IN REGARD TO

4    BOTH THE CALIFORNIA UNIFORM TRADE SECRETS ACT AND THE DEFEND

5    TRADE SECRET ACTS, THE FOLLOWING INSTRUCTION APPLIES," SO THAT

6    AS THEY RANDOMLY PULL THEM, THERE'S NO QUESTION THAT EACH ONE

7    APPLIES.  AND I'D LIKE THAT TO BE THE FIRST LINE.

8         MR. HOSIE:  OKAY.  TO CLARIFY, YOUR HONOR, SO IF

9     THERE'S COMMONALITY, WE FLAG IT AT THE OUTSET.

10        THE COURT:  THAT'S RIGHT.

11        MR. HOSIE:  UNDERSTOOD.

12        THE COURT:  THAT'S A SIMPLE EDIT.  I'LL LET YOU GO

13     THROUGH THEM.

14        MR. HOSIE:  YEAH.

15        THE COURT:  AND WE'LL PICK UP ON ALL OF THOSE LATER.

16     ON INSTRUCTION NUMBER 69 ON EXEMPLARY DAMAGES, THERE ARE

17     LOTS OF PROBLEMS HERE, LOTS OF DISAGREEMENTS.  I'M NOT GETTING

18     INTO ALL OF THOSE NOW, AND ONE OF THEM RELATES TO A MOTION IN

19     LIMINE.

20     BUT AN ISSUE YOU DIDN'T ADDRESS HERE -- AND I'M SORRY I

21     DIDN'T GET TO THE VERDICT FORMS YET -- UNDER STATE LAW, THE

22     STANDARD IS CLEAR AND CONVINCING EVIDENCE, AND UNDER FEDERAL

23     LAW, IT IS PREPONDERANCE, AND YOU DON'T ADDRESS THAT.  I DON'T

24     KNOW WHETHER YOUR VERDICT FORM DID.

25     AGAIN, IF YOU THINK I'M INCORRECT, I -- BUT STATE LAW IS

```
 1    CLEAR AND CONVINCING.  THERE'S NO DOUBT ABOUT IT.
 2            MR. HOSIE:  YES.
 3            THE COURT:  FEDERAL LAW, I'VE NEVER SEEN A FEDERAL
 4    PUNITIVE DAMAGES CLAIM THAT REQUIRED ANYTHING MORE THAN
 5    PREPONDERANCE.  IF I'M MISTAKEN ON THAT, PLEASE LET ME KNOW.
 6    BUT WE NEED TO BREAK THAT OUT.
 7            LET'S SEE.  WE TALKED ABOUT CONTRACT DAMAGES.
 8            OKAY.  THERE ARE -- THERE ARE A LOT OF DIFFICULT ISSUES
 9    HERE, BUT YOU'VE ADEQUATELY BRIEFED THEM AND THAT'S WHY I'M NOT
10    DISCUSSING THEM NOW.
11            I HAVE ONE QUESTION FOR YOU.  IT'LL JUST HELP ME IN
12    REVIEWING THIS.  THERE'S AN INSTRUCTION FOR PRE-JUDGMENT
13    INTEREST AND IT -- THIS IS UNDER STATE LAW, THE REQUIREMENT
14    THAT IT'S NOT GUARANTEED UNLESS IT'S FOR BREACH OF CONTRACT?
15            IT GOT SO CONFUSED FOR ME BECAUSE THERE IS A CONTRACT
16    CLAIM, AND IF THERE'S A CONTRACT CLAIM, GENERALLY IT'S NOT A
17    JURY ISSUE.  SO I -- JUST THINK ABOUT IT BECAUSE WE'RE GOING TO
18    HAVE TO WORK THROUGH THIS ISSUE.  AND IF IT'S A -- IF
19    PRE-JUDGMENT INTEREST IS A MEASURE OF DAMAGES, THEN IT WOULD GO
20    TO THE JURY.
21            IF IT'S SOMETHING LIKE POST-JUDGMENT INTEREST PRE-JUDGMENT
22    THAT THE COURT WOULD DECIDE AFTERWARDS -- I JUST THOUGHT THIS
23    WAS A LITTLE BIT OF A STICKY WICKET AND I'LL JUST NEED A LITTLE
24    BIT OF YOUR GUIDANCE ON THIS WHEN WE TALK ON THE 2ND.
25            AND THE SAME THING WITH -- YOU KNOW, THEN IT RAISED THE
```

```
1    QUESTION OF, ARE ATTORNEYS' FEES A JURY ISSUE?  I DON'T THINK

2    THEY ARE.  I HOPE THEY'RE NOT.  AND I WOULDN'T WANT YOU TO HAVE

3    TO PRESENT.

4         SO EVERYONE AGREES.  SO NO MATTER WHAT --

5              MR. HOSIE:  YOUR HONOR, IF I MAY, PERHAPS THE

6    SIMPLEST WAY IS SIMPLY TO HAVE A VERDICT FORM, "DO YOU AWARD

7    PRE-JUDGMENT INTEREST," AND THEN THE AMOUNT PERHAPS WILL BE

8    STIPULATED TO.

9              MR. WERDEGAR:  YOUR HONOR, WE CAN GET DEEPER INTO THE

10   LAW, BUT I THINK OUR CONCERN HERE IS THAT GIVEN THE ONLY

11   MEASURE OF DAMAGES THAT THEY'RE SEEKING IN THIS CASE IS UNJUST

12   ENRICHMENT, I THINK THE AUTHORITY THAT WE'VE PROVIDED IN HERE

13   IS THAT PRE-JUDGMENT INTEREST ISN'T AVAILABLE ON UNJUST

14   ENRICHMENT AS AN AWARD, AND THAT'S CERTAINLY OUR POSITION.

15        I THINK THAT'S GOING TO BE THE QUESTION WE'RE GOING TO ASK

16   THE COURT TO RESOLVE.

17             THE COURT:  OKAY.  AND THEN IS IT DIFFERENT UNDER

18   STATE AND FEDERAL LAW?

19             MR. WERDEGAR:  I'M GOING TO DEFER TO --

20             THE COURT:  BECAUSE THERE IS NO FEDERAL LAW ON THIS

21   BECAUSE THE LAW IS SO NEW.  WE'RE REALLY ALL KIND OF SWIMMING A

22   LITTLE.

23        BUT CALIFORNIA HAS A PRE-JUDGMENT INTEREST STATUTE THAT

24   REALLY IS -- I WOULDN'T SAY IT'S CLEAR, BUT IT GIVES PRETTY

25   GOOD GUIDANCE.
```

1          MR. WERDEGAR:  OKAY.  WE'LL MAKE SURE THAT WE HAVE

2     OUR BEST ANSWERS TO THOSE QUESTIONS BETWEEN NOW AND THE 2ND.

3          THE COURT:  GOOD.  THERE'S NO POINT IN PUTTING YOU ON

4     THE SPOT AND THEN HAVING TO RESOLVE THIS MID-TRIAL, BECAUSE THE

5     TRIAL IS GOING TO GALLOP BY.

6          MR. HOSIE:  IT WILL INDEED.

7      YOUR HONOR, ONE POINT.  THERE IS ONE CASE THAT STANDS FOR

8     THE PROPOSITION THAT COUNSEL STATED, BUT THERE ARE MANY CASES

9     THAT STAND TO THE CONTRARY, INCLUDING BLADEROOM THAT WAS

10    DECIDED JUST DOWN THE HALL.  BUT THAT'S PERHAPS FOR A DIFFERENT

11    DAY.

12         THE COURT:  YOU KNOW, SO -- I HAVE REFERRED TO THE

13    BLADEROOM DOCKET AS WELL, AND THE THING THAT WAS HARD FOR ME TO

14    GLEAN WAS WHETHER CERTAIN THINGS THAT WERE DONE WERE OVER

15    OBJECTION OF A PARTY OR NOT.  FOR EXAMPLE, THE EXEMPLARY

16    DAMAGES GOING TO THE COURT, I DON'T KNOW THAT THEY -- I DON'T

17    KNOW THAT THE ISSUE WAS RAISED.  I COULDN'T TELL THAT.

18         MR. HOSIE:  WE -- YOUR HONOR, WE LOOKED AND WE

19    COULDN'T DISCERN THE ANSWER, EITHER.

20         THE COURT:  SO --

21         MR. HOSIE:  I WOULD HAVE LIKED TO HAVE KNOWN.

22         THE COURT:  I KNOW.  AND THEN AT LEAST WE'D HAVE A

23     POINT OF REFERENCE.

24      OKAY.  THOSE ARE MY QUESTIONS.  I, OF COURSE, PRINTED OUT

25    THE ELEVENTH CIRCUIT JURY INSTRUCTIONS.  THEY'RE -- YOU KNOW,

```
1        IT'S ONE CIRCUIT'S BEST EFFORT, AND SO THAT'S HELPFUL.

2            I DON'T KNOW IF THERE ARE ANY OTHER MODEL INSTRUCTIONS.  I

3     DON'T KNOW WHETHER THERE ARE ANY OTHER CASES TRIED TO VERDICT

4     ON THE DEFEND TRADE SECRETS ACT.  I'M SURE YOU ALL HAVE LOOKED.

5     AND IF YOU -- IF YOU HAD FOUND THEM, I'M SURE YOU WOULD HAVE

6     TOLD ME ABOUT IT BECAUSE IT'S EASY TO GET INTO THOSE DOCKETS

7     ONCE YOU SEE THERE'S BEEN A JURY VERDICT.

8            MR. HOSIE:  I THINK WE MAY WELL BE THE FIRST, YOUR

9     HONOR.

10           THE COURT:  CAN THE -- I MEAN, IS IT POSSIBLE THIS IS

11    THE -- I MEAN, HOW CAN THAT BE?

12       (LAUGHTER.)

13           MR. WERDEGAR:  YOUR HONOR, ACTUALLY, I BELIEVE -- AND

14    THIS IS JUST FROM MEMORY -- THERE HAS BEEN ONE CASE TRIED TO

15    VERDICT I BELIEVE IN FLORIDA, A FEDERAL COURT IN FLORIDA, AND I

16    DON'T -- I HAVE TO ADMIT, I HAVEN'T PULLED, IF THEY'RE

17    AVAILABLE, THE JURY INSTRUCTIONS FROM THAT CASE.

18           THE COURT:  COULD YOU SEE IF YOU CAN FIND THE JURY

19    INSTRUCTIONS FOR THAT?

20           MR. WERDEGAR:  I WILL.  HOPEFULLY I'M RIGHT IN

21    REMEMBERING THIS, BUT I BELIEVE I SAW A NEWS ARTICLE THAT THE

22    FIRST CASE HAD GONE TO VERDICT AND IT WAS IN FLORIDA.

23           MR. HOSIE:  DO YOU REMEMBER THE NAME OF THE CASE?

24           MR. WERDEGAR:  I'LL HAVE TO GOOGLE IT.

25           MR. HOSIE:  I THINK YOU CAN BING IT.
```

1        (LAUGHTER.)

2            THE COURT:  ALL RIGHT.  THAT'S GREAT.

3        OKAY.  THAT TAKES CARE OF ALL OF MY ISSUES WITH THE JURY

4    INSTRUCTIONS TODAY.  AS I SAY, THIS WAS REALLY JUST MEANT TO BE

5    AT A HIGH LEVEL.

6        SO I'M READY TO TURN TO THE IN LIMINE MOTIONS.

7        BUT BEFORE I DO THAT, I'VE GONE THROUGH A LOT OF THINGS.

8    DID I -- ARE THERE QUESTIONS OF --

9            MR. WERDEGAR:  YOUR HONOR, I HAD ONE ISSUE THAT I WAS

10   HOPING TO RAISE TODAY WITH RESPECT TO THE -- AS A SORT OF

11   PREVIEW TO THE JURY INSTRUCTIONS, AND I THINK A NUMBER OF

12   DISPUTES WE CONTINUE TO HAVE ARE INTERWOVEN AT THIS POINT, SO

13   I'D LIKE TO RAISE IT AND YOU CAN DECIDE WHETHER YOU WANT TO

14   DEAL WITH IT TODAY OR NOT.

15           THE COURT:  OKAY.

16           MR. WERDEGAR:  THE PARTIES AGREE THAT THE JURY SHOULD

17   RECEIVE A LIST OF THE ASSERTED TRADE SECRETS WITH THE JURY

18   INSTRUCTIONS, JUST AS YOU WOULD GET THE PATENT BACK IN THE JURY

19   ROOM.

20           THE COURT:  SURE.

21           MR. WERDEGAR:  BUT WE DON'T HAVE AGREEMENT YET ON

22   WHAT THAT LIST WILL LOOK LIKE OR HOW THINGS ARE GOING TO BE

23   NUMBERED.

24       AND PLAINTIFFS HAVE SUGGESTED THAT THE JURY JUST GET THEIR

25   PLEADING, THEIR TRADE SECRET DISCLOSURE WHICH INCLUDES LOTS OF

```
 1        LAWYERLY ARGUMENT AND EXPLANATION FOR WHY THIS SHOULD BE TRADE

 2        SECRETS, AND IT ALSO HAS A CONFUSING NUMBERING SYSTEM.

 3            AND WHAT WE'VE TRIED TO DO, AND WE'VE SUBMITTED IT WITH

 4        THE PROPOSED JURY INSTRUCTIONS, IS TO STRIP OUT THE LAWYERLY

 5        ARGUMENT, MAKE I GUESS A NEUTRAL DOCUMENT THAT ALSO THEN

 6        NUMBERS THE TRADE SECRET 1 TO, I DON'T KNOW, I THINK IT WAS 22

 7        WHEN WE SUBMITTED THAT, THERE'S NOW THREE FEWER, SO IT WOULD BE

 8        1 TO 19.

 9            BUT IT'S IMPORTANT FOR US TO KNOW BECAUSE WE WANT TO HAVE

10        A NOMENCLATURE TO REFER TO THINGS AS, AND THE VERDICT FORM, IF

11        IT HAS IT BY TRADE SECRET, WOULD USE THE SAME NUMBERING, AND

12        MANY OF THE JURY INSTRUCTIONS WOULD AS WELL.

13            SO THAT WAS AN ISSUE THAT WE WERE HOPING TO GET SOME

14        CLARITY ON IS HOW THE COURT WOULD LIKE THE JURY TO BE PROVIDED

15        WITH THE SPECIFIC LANGUAGE OF THE SPECIFIC ASSERTED CLAIMS.

16            THE COURT:  SO I'M ACTUALLY LOOKING FOR THAT

17        ATTACHMENT, WHICH I DON'T -- HERE THEY ARE.  SORRY.  IT'S

18        FARTHER BACK IN MY BINDER.  I DO HAVE THAT BRIEFING HERE.

19            SO I HAVE AN EXHIBIT F.  I ACTUALLY CAN'T TELL WHOSE

20        DOCUMENT THAT IS.

21            MR. ATKINSON:  I BELIEVE THAT'S GOOGLE'S DOCUMENT,

22        YOUR HONOR.

23            THE COURT:  OKAY.

24            MR. HOSIE, I DON'T KNOW WHAT IT IS THAT YOU WOULD HAVE THE

25        JURY SEE.
```

```
1            MR. HOSIE:  WELL, YOUR HONOR, WE WOULD HAVE THEM SEE

2    JUST THE LISTING OF THE TRADE SECRETS FROM THE FIFTH AMENDED

3    2019.  THAT'S WHAT WE ARE -- WE LIVE AND DIE BY AT THIS POINT.

4            THE PROBLEM IS WHEN THEY START TO REWRITE IT, ONE MAN'S

5    NEUTRALITY IS ANOTHER MAN'S WARFARE.

6            AND OUR CONCERN, FRANKLY, IS THAT GOOGLE WILL SAY THAT

7    WE'VE AGREED TO DROP CERTAIN CLAIMS AND THEN THERE ARE

8    APPORTIONMENT ISSUES AND IT BECOMES A QUAGMIRE VERY QUICKLY.

9            IF THEY CAN REPRESENT IN COURT THAT THAT'S NOT GOING TO

10   HAPPEN, THEN WE'LL BE, I'M SURE --

11           THE COURT:  WELL, FIRST OF ALL, I THINK THE

12   ARTICULATION OF THE TRADE SECRET HAS TO COME FROM PLAINTIFF.

13   YOU LIVE OR DIE BY YOUR OWN ARTICULATION.

14           MR. WERDEGAR:  SO THIS LISTING, YOUR HONOR, JUST TO

15   BE -- SO THERE'S NO CONFUSION, THIS LISTING IS VERBATIM THE

16   LANGUAGE IN THE 2019 210 DISCLOSURE.  WE'VE JUST REMOVED THE

17   SURROUNDING LAWYER ARGUMENT THAT THIS WAS A RESULT OF A LOT OF

18   EFFORT ON OUR PART AND IT SHOULD BE TREATED AS A TRADE SECRET.

19           THE COURT:  THAT COMES OUT, SURE.

20           MR. WERDEGAR:  THIS IS THE BOLDED LANGUAGE THAT'S

21   SUPPOSED TO DESCRIBE THEIR ACTUAL TRADE SECRET FROM THE

22   OPERATIVE FIFTH AMENDED 2019 210 STATEMENT THAT WAS THE RESULT

23   OF A LOT OF LITIGATION AND COURT ORDERS BY JUDGE COUSINS AND

24   THE LIKE.

25           SO WE HAVEN'T CHANGED THE WORDING AT ALL OF THE TRADE
```

```
1    SECRET.  WE'VE JUST PUT IT IN A FORMAT THAT WE THINK IS MORE

2    USER FRIENDLY AND NUMBERED THEM SEQUENTIALLY.

3              MR. HOSIE:  I'M -- I AGREE THAT ALL OF THE NON-LISTED

4    TRADE SECRET LANGUAGE SHOULD COME OUT.

5         BUT I, FRANKLY, WILL NEED TO GO AND CHECK WHAT THEY'D SAY

6    IS REPHRASING IS A MORE FRIENDLY FORMAT.

7              THE COURT:  OKAY.  SO A LITTLE BIT OF GUIDANCE I CAN

8    GIVE YOU.  CERTAINLY WE STRIP OUT ALL OF THE EXPLANATION, AND I

9    DON'T NEED TO -- YOU COULD CALL IT ARGUMENT, BUT EVEN

10   EXPLANATION, I NEED THE BARE BONES TRADE SECRET.

11        I DON'T HAVE ANY PROBLEM WITH ORGANIZING THEM INTO THE

12   CATEGORIES --

13             MR. HOSIE:  UM-HUM.

14             THE COURT:  -- JUST FOR ORGANIZATIONAL PURPOSES SO

15   THAT -- WITH A TOPIC.  BUT IT'S -- BUT IT'S THE TRADE SECRETS

16   THAT THE JURY WILL BE ASKED TO RENDER VERDICTS ON, NOT THE

17   CATEGORY OR THE BOX THAT THEY'RE IN.

18             MR. HOSIE:  WE AGREE WITH THAT, YOUR HONOR.

19             THE COURT:  AND I DON'T HAVE A PROBLEM WITH THAT.

20             MR. WERDEGAR:  AND THEN SEQUENTIAL NUMBERING, I DON'T

21   KNOW IF MR. HOSIE ADDRESSED IT OR NOT, BUT THAT SEEMS AN EASY

22   WAY TO KEEP TRACK OF THINGS.

23        WE DON'T MIND THE CATEGORIES EITHER:  ONE AND TWO ARE

24   WIND; THREE, FOUR, FIVE ARE THERMAL OR WHATEVER.  BUT HAVING

25   THEM BE -- EACH HAVE THEIR OWN NUMBER.
```

```
 1                 THE COURT:  EACH SHOULD HAVE THEIR OWN NUMBER.

 2                 MR. HOSIE:  AND WE AGREE WITH THAT.

 3                 THE COURT:  OKAY.  THEN I THINK YOU CAN PROBABLY WORK

 4       THIS OUT.  THEY CLEARLY NEED TO SEE THIS, AND IT NEEDS TO BE --

 5       AND THEN IF THERE'S ANYTHING REMAINING IN DISPUTE, YOU CAN LET

 6       ME KNOW ON AUGUST 2ND, I IMAGINE.

 7                 MR. WERDEGAR:  THANK YOU, YOUR HONOR.

 8                 MR. HOSIE:  THANK YOU, YOUR HONOR.

 9                 THE COURT:  ALL RIGHT.  THAT'S GOOD.

10            OKAY.  AND I'M SORRY I DIDN'T LOOK AT THE VERDICT FORM.  I

11       HOPE -- YOU KNOW, IT CAN'T BE THAT HARD OF A VERDICT FORM,

12       FRANKLY.  IT JUST CAN'T BE.  THERE ARE PRETTY SIMPLE CLAIMS,

13       THREE CLAIMS, AND THE LIST OF TRADE SECRETS AND --

14                 MR. HOSIE:  WE'RE WORKING HARD TO KEEP THE VERDICT

15       FORM AS SIMPLE AND EASY AS POSSIBLE.

16                 THE COURT:  WELL, PLAINTIFFS ALWAYS HAVE A WAY OF

17       MAKING IT SIMPLE.

18                 MR. HOSIE:  THERE'S THAT TOO, YOUR HONOR.

19                 THE COURT:  YOUR WHOLE VERDICT FORM WILL BE --

20                 MR. HOSIE:  ONE QUESTION.

21            (LAUGHTER.)

22                 THE COURT:  ALL RIGHT.  THAT SEEMS FINE.

23            ALL RIGHT.  AND I TYPICALLY -- I MEAN, SIMPLE IS -- IT

24       NEEDS TO BE UNDERSTANDABLE, BUT I LIKE A COMPLETE VERDICT FORM.

25       I WANT TO KNOW WHAT THE JURY IS DOING AND MAKE SURE THAT WE'VE
```

```
1        GOT THAT.

2             OKAY.  LET'S GO TO THE IN LIMINE MOTIONS AND THE MOTION TO

3    QUASH.  THOSE ARE ALL SET FOR TODAY.

4             AND I GUESS WHEN WE'RE DONE WITH THAT, WE'LL DEAL WITH

5    THIS INTERPRETATION OF THE NON-DISCLOSURE AGREEMENT.

6             MR. HOSIE:  YOUR HONOR, IF I MAY ON THE LATTER POINT,

7    GOOGLE DID NOT GIVE US NOTICE THAT IT INTENDED TO PRESENT

8    ARGUMENT ON THE CONTRACT ISSUE TODAY, SO WE FEEL A LITTLE BIT

9    SURPRISED PERHAPS WOULD BE THE WORD.

10            THE COURT:  OKAY.

11            MR. HOSIE:  AND I THINK PERHAPS THE BEST ISSUE WOULD

12   BE FOR THE PARTIES TO EXCHANGE SHORT BRIEFING FOR THE COURT.

13            THE COURT:  UM-HUM.

14            MR. HOSIE:  BECAUSE THIS IS, I'M SURE, HITTING THE

15   COURT COLD, TOO, BECAUSE IT HASN'T BEEN BRIEFED.

16            THE COURT:  SO YOU ALERTED ME TO IT IN THE FINAL

17   PRETRIAL STATEMENT, SO I'M NOT SURPRISED.

18            AND THEN I SAW IT IN THE JURY INSTRUCTIONS.

19            SO THIS WAS THE ONLY INTERPRETATION ISSUE I COULD

20   IDENTIFY, AND IT TURNS OUT THAT'S ALL THERE IS.

21            AND SO I PULLED A COPY OF THE NDA AND I LOOKED AT THE -- I

22   MEAN, THERE WAS A RULING SIMILAR TO THIS IN BLADEROOM, BUT IT

23   WAS A DIFFERENT NDA.  THE LANGUAGE WAS VERY DIFFERENT IN

24   BLADEROOM.

25            AND THAT CAUSES ME TO -- YOU KNOW, THAT MAY MAKE A BIG
```

```
1    DIFFERENCE IN THE DIFFERENCE IN THE LANGUAGE.

2         BUT I DON'T WANT YOU TO BE CAUGHT OFF GUARD.  YOU

3    CERTAINLY -- IT CERTAINLY WASN'T TEED UP FOR TODAY.

4         MR. HOSIE:  IT WASN'T.  WE HAD NO NOTICE, YOUR HONOR.

5         THE COURT:  OKAY.  THAT'S FINE.  IT'S CERTAINLY

6    SOMETHING THAT HAS TO BE RESOLVED.

7         MR. HOSIE:  AND IT'S AN IMPORTANT AND PERHAPS NUANCED

8    ENOUGH ISSUE THAT THE COURT WILL BE WELL SERVED BY BRIEFING.

9         MR. WERDEGAR:  YOUR HONOR, WE HAVE NO OBJECTION TO

10   THAT.

11        THE COURT:  OKAY.

12        MR. WERDEGAR:  WE JUST WANTED TO MAKE SURE THAT THE

13   COURT WAS AWARE THAT THE ISSUE EXISTS, AND YOU CERTAINLY ARE,

14   AND IT NEEDS TO BE RESOLVED.

15        THE COURT:  SO IT'S NOT CLEAR TO ME THAT IT BECOMES A

16   JURY INSTRUCTION.  IT'S A STATUTE OF LIMITATIONS PROBLEM THAT,

17   THAT GOOGLE HAS IDENTIFIED, THAT YOU CLAIM THAT THE NDA

18   TERMINATED YOUR OBLIGATION TO PROTECT THE INFORMATION AFTER

19   THREE YEARS.

20        MR. WERDEGAR:  YEAH.  I'M NOT SURE I WOULD FRAME IT

21   AS A STATUTE OF LIMITATIONS, BUT IT'S THE IDEA THAT -- TO THE

22   EXTENT THEY'RE ACCUSING US OF MISCONDUCT THAT TOOK PLACE MORE

23   THAN THREE YEARS AFTER --

24        THE COURT:  OH, I SEE.

25        MR. WERDEGAR:  -- THE LAST DISCLOSURE THAT'S BEEN
```

1    ALLEGED, DISCLOSURE FROM SPACE DATA TO GOOGLE, WHICH WAS IN

2    FEBRUARY OF 2008.

3         SO TO THE EXTENT THEY'RE TALKING ABOUT STUFF THAT HAPPENED

4    MORE THAN THREE YEARS AFTER THAT, THAT'S STUFF THAT WAS NO

5    LONGER SUBJECT TO THE PROVISIONS OF THE NDA, SO WE THINK IT'S A

6    LIABILITY DEFENSE IN THAT RESPECT, YOUR HONOR.

7         THE COURT:  WELL, CERTAINLY UNDER THE FEDERAL LAW,

8    THAT GETS INTO THE -- GETS US THE OPERATIVE DATE OF 2016.

9         MR. WERDEGAR:  THAT IS ALSO TRUE, YOUR HONOR.

10        MR. HOSIE:  THAT IS ALSO TRUE.

11        THE COURT:  WELL, I'M NOT GOING TO PUT MR. HOSIE ON

12   THE SPOT.

13        MR. WERDEGAR, HAVE YOU ALREADY PREPARED A BRIEF ON THIS OR

14   WERE YOU GOING TO DO THIS ORALLY?

15        MR. WERDEGAR:  IT WAS GOING TO BE MR. PAIGE, AND --

16        MR. PAIGE:  IT WAS IN THE JOINT PRETRIAL STATEMENT,

17   AND ALSO, FRANKLY, IN THE MOTION TO DISMISS YEARS AGO.  SO --

18        THE COURT:  YEAH, WELL, I WISH I HAD THAT GOOD A

19   MEMORY.  SO YOU'RE GOING TO PREPARE A LITTLE BRIEF FOR ME AND

20   PULL ALL THAT TOGETHER?

21        MR. PAIGE:  SURE.

22        MR. HOSIE:  THANK YOU, YOUR HONOR.

23        THE COURT:  SO WHAT YOU HAD IN THE JOINT PRETRIAL

24   STATEMENT I DIDN'T TAKE AS BRIEFING ON THE ISSUE.  IT

25   IDENTIFIED THE ISSUE.  BUT I WOULD NEED A LITTLE MORE ON THAT.

```
1         SO -- I KNOW THERE'S NOT A LOT OF TIME.  THIS CONFERENCE

2    IS A LITTLE BIT LATER THAN I NORMALLY LIKE TO DO.  IT'S A

3    LITTLE CLOSER TO TRIAL.  SO WHEN CAN YOU -- I THINK THREE PAGES

4    OUGHT TO BE ADEQUATE ON THIS.  WHEN CAN YOU HAVE A THREE-PAGE

5    SUBMISSION?

6              MR. PAIGE:  TUESDAY, YOUR HONOR?

7              THE COURT:  HOW ABOUT MONDAY?  BECAUSE I'M GOING TO

8    HAVE MR. HOSIE TURN IT AROUND BY WEDNESDAY.

9              MR. HOSIE:  WE CAN DO THAT, YOUR HONOR.

10             THE COURT:  IS THAT ALL RIGHT?

11             MR. PAIGE:  FAIR POINT.

12             THE COURT:  BECAUSE WHEN I SAY MONDAY, YOU'RE GOING

13   TO GIVE IT TO ME AT 11:59, SO I DON'T GET IT UNTIL TUESDAY,

14   RIGHT?

15             MR. PAIGE:  WE'LL TRY TO DO IT EARLY.

16             MR. HOSIE:  BY THAT HE MEANS 10:00 P.M., NOT 11:00

17   P.M.

18        (LAUGHTER.)

19             THE COURT:  AND I GREATLY APPRECIATE AND UNDERSTAND

20   HOW HARD YOU'RE ALL WORKING.  BUT I KNOW THAT REALISTICALLY

21   YOU'LL TAKE AS MUCH TIME AS I GIVE YOU, WHICH IS FAIR.

22        ALL RIGHT.  SO MONDAY FOR DEFENSE BRIEF ON THE NDA ISSUE,

23   AND WEDNESDAY FOR SPACE DATA'S.  SO THOSE DATES WILL BE THE

24   22ND FOR GOOGLE AND THE 24TH FOR SPACE DATA.

25             MR. HOSIE:  THANK YOU, YOUR HONOR.
```

```
1              MR. PAIGE:  THREE PAGES, YOUR HONOR?

2              THE COURT:  THREE PAGES.

3              MR. PAIGE:  THANK YOU.

4              THE COURT:  AND I REALLY MEAN THREE PAGES.  I DON'T

5       MEAN -- YOUR SIGNATURE CAN BE ON THE FOURTH PAGE.  IF YOU HAVE

6       ANY TEXT, EVEN IF IT'S A CONCLUSION, THAT'S A WASTE OF PAPER.

7       I'M GOING TO THROW YOUR WHOLE BRIEF AWAY.  REALLY, IT'S THREE

8       PAGES.  SIGNATURE, COVER PAGE, THEY'RE EXCLUDED.  BUT I THINK

9       THAT'LL WORK.

10             OKAY.  SO LET'S -- LET'S SEE.  I THINK WE'LL GO ABOUT A

11      HALF HOUR AND THEN TAKE A BREAK AND THEN -- SO LET'S MOVE ON TO

12      THE DEFENSE IN LIMINE MOTIONS.

13             IN LIMINE MOTION NUMBER 1 IS REGARDING IRRELEVANT PATENT

14      EVIDENCE AND ARGUMENT.

15             IS THERE ANY -- OKAY.

16             MR. WONG:  GOOD MORNING, YOUR HONOR.

17             THE COURT:  AND IS THERE ANYTHING YOU'D LIKE TO ADD

18      TO YOUR BRIEFING ON THIS?

19             MR. WONG:  THE ONLY THING THAT I WOULD ADD, BECAUSE

20      WE DIDN'T GET A CHANCE FOR REPLY BRIEFS FOR THIS, YOUR HONOR --

21             THE COURT:  RIGHT.

22             MR. WONG:  WELL, I'LL MAKE THREE VERY QUICK POINTS.

23             THE FIRST, YOUR HONOR, IS THAT SPACE DATA DIDN'T RESPOND

24      TO THE POINT THAT THEY BASICALLY REWROTE THEIR EXHIBIT LIST

25      RELEVANCE EXPLANATIONS AFTER THE SUMMARY JUDGMENT RULING CAME
```

1    OUT --

2            THE COURT:  SURE.

3            MR. WONG:  -- AND THE MOTION FOR RECONSIDERATION.

4      IF THESE PATENT DOCUMENTS WERE ACTUALLY RELEVANT TO THE

5    TRADE SECRET CLAIMS, THEY WOULD HAVE LISTED THEM WHEN THEY

6    FIRST DISCLOSED THEM.

7      BUT THE ONLY THING THEY LISTED WHEN THEY FIRST DISCLOSED

8    THEM WAS PATENT INVALIDITY AND WILLFUL INFRINGEMENT --

9            THE COURT:  SURE.

10           MR. WONG:  -- OF THE PATENT.

11      AND THEN THIS ARGUMENT THAT THEY CAME UP WITH IN THEIR

12    OPPOSITION -- WELL, FIRST OF ALL, THEY DON'T POINT TO ANY OF

13    THE GOOGLE PATENT PROSECUTION ACTIVITIES AS BEING ACTUAL

14    EVIDENCE OF MISAPPROPRIATION.

15      THEIR ARGUMENT IS ACTUALLY VERY NARROW.  WHAT THEY'RE

16    SAYING IS THAT THEIR WIND DATA TRADE SECRETS -- SPECIFICALLY

17    THEY'RE SAYING THAT GOOGLE'S '678 PATENT AND THE PATENT

18    PROSECUTION ACTIVITIES THAT SURROUND THAT IS SOMEHOW PROBATIVE

19    OF WHETHER OR NOT THEIR WIND DATA TRADE SECRETS WERE, IN FACT,

20    LEGITIMATE TRADE SECRETS.

21           THE COURT:  UM-HUM.

22           MR. WONG:  BUT THAT DOESN'T MAKE SENSE FOR SEVERAL

23    REASONS, BUT THE FIRST AND MOST IMPORTANT REASON IS IF YOU PUT

24    THE 2019 210 STATEMENT AND THEIR TWO WIND DATA TRADE SECRETS ON

25    ONE SIDE AND THE '678 PATENT AND THE CLAIMS AND SPECIFICATIONS

```
 1    ON THE OTHER SIDE, THERE IS NOTHING IN THE '678 PATENT THAT
 2    ADDRESSES THE TRADE SECRETS, THE TWO WIND DATA TRADE SECRETS.
 3         AND BECAUSE WE'RE IN OPEN COURT I'LL BE VERY HIGH LEVEL,
 4    BUT THE TWO WIND DATA TRADE SECRETS, THE FIRST ONE IS LITERALLY
 5    THE DATA THAT WAS ON DISPLAY BACK IN 2008 WHEN GOOGLE VISITED
 6    SPACE DATA.  THERE'S NO EVIDENCE, OR EVEN ANY ARGUMENT, THAT
 7    THAT DATA IS ANYWHERE IN THE CLAIMS OF THE '678 PATENT OR ANY
 8    OF THE PROSECUTION HISTORY.
 9         SO THERE'S NOTHING PROBATIVE ABOUT WHETHER OR NOT THAT WAS
10    SECRET OR NOT VIS-À-VIS THE PATENT ACTIVITIES.
11              THE COURT:  UM-HUM.
12              MR. WONG:  AND THE ONLY OTHER WIND DATA TRADE SECRET,
13    YOUR HONOR, IS THIS VERY DETAILED -- AND I'LL SPEAK ABOUT IT IN
14    GENERAL TERMS -- VERY DETAILED STRUCTURE OF WIND AT A VERY
15    SPECIFIC ALTITUDE BAND AND THE CONCLUSIONS THAT CAN BE DRAWN
16    FROM THAT WITH RESPECT TO HOW BALLOONS ARE LAUNCHED AND A VERY
17    SPECIFIC SPACING FOR THEM.
18              THE COURT:  UM-HUM.
19              MR. WONG:  NONE OF THOSE DETAILS ARE IN THE '678
20    PATENT OR ANY OF THE PATENT PROSECUTION DOCUMENTS.  SO THE FACT
21    THAT THESE PATENTS ARE THERE DOESN'T HAVE ANY RELEVANCE WITH
22    RESPECT TO EITHER OF THE WIND DATA TRADE SECRETS, AND THAT'S
23    REALLY THEIR ONLY ARGUMENT.
24              THE COURT:  AND THE GROUNDS FOR THE INTERFERENCE
25    PROCEEDING HAD NOTHING TO DO WITH THESE, THESE IDENTIFIED TRADE
```

```
1    SECRETS?

2              MR. WONG:  THEY HAVE NOTHING TO DO AT ALL WITH THEM.

3         SO THE ONLY RESULT OF INJECTING THIS BACK INTO THE

4    TRIAL -- AND OBVIOUSLY THE '678 PATENT IS THE ONE THAT BECAME

5    THE '193 PATENT.

6              THE COURT:  UM-HUM.

7              MR. WONG:  IT'S JUST GOING TO BE PURE PREJUDICE, YOUR

8    HONOR, AND IT'S GOING TO BE A SIDESHOW BECAUSE NOT ONLY IS

9    SPACE DATA TRYING TO ASK ABOUT THE U.S. PATENT PROSECUTION

10   ACTIVITIES, THEY ACTUALLY WANT TO ASK ABOUT FOREIGN PROSECUTION

11   ACTIVITIES, TOO.

12        SO THAT'S GOING TO REQUIRE BOTH GOOGLE AND THE COURT TO

13   EXPLAIN TO THE JURY THE DIFFERENCES BETWEEN PATENT NOVELTY LAW

14   BOTH IN THE U.S., AS WELL AS IN OTHER COUNTRIES, VERSUS WHAT IS

15   REQUIRED TO ACTUALLY HAVE A TRADE SECRET.

16        AND THEN GOOGLE IS GOING TO HAVE TO GET INTO THE

17   DIFFERENCES IN SUBJECT MATTER BETWEEN THE PATENTS AND THE TWO

18   WIND DATA TRADE SECRETS.

19        AND THEN IF THE INTERFERENCE PROCEEDING SOMEHOW MANAGES TO

20   COME IN, WHICH I THINK IS ACTUALLY THEIR END GOAL -- WELL, I

21   HAVEN'T HEARD THAT YET.  BUT IF THAT COMES UP, OBVIOUSLY THAT

22   IS HUGELY PREJUDICIAL TO THE CASE.

23              THE COURT:  UM-HUM.

24              MR. WONG:  SO FOR THOSE REASONS, WE ASK THAT THE

25    COURT GRANT THE MOTION IN LIMINE IN FULL.
```

```
1              THE COURT:  SO, MR. HOSIE, I UNDERSTOOD YOUR ARGUMENT

2      TO BE THAT YOUR -- THIS WOULD BE RELEVANT IN YOUR VIEW ONLY AS

3      REBUTTAL AND IMPEACHMENT OF DEFENDANTS' CLAIM THAT THESE ARE

4      NOT TRADE SECRETS.  IS THAT CORRECT?

5              MR. HOSIE:  YES, THAT IS CORRECT, YOUR HONOR.

6              THE COURT:  ALL RIGHT.  SO OF COURSE IT'S ALWAYS

7      DIFFICULT TO KNOW WHAT OPENS THE DOOR.

8              MR. HOSIE:  FAIR ENOUGH.

9              THE COURT:  AND IT'S DIFFICULT AT THIS STAGE FOR ME

10     TO MAKE A DEFINITIVE RULING.

11         BUT I AM VERY CONCERNED ABOUT JUST THESE ISSUES RAISED,

12     THAT THE JURY MAY MISTAKENLY BELIEVE THAT YOU CAN ONLY PATENT

13     SOMETHING THAT WAS A TRADE SECRET BEFORE IT WAS PATENTED, AND

14     THAT'S, OF COURSE, NOT TRUE.

15         THAT WOULDN'T -- AND THEN TO GET INTO AN ENTIRE SIDESHOW,

16     UNDUE CONSUMPTION OF TIME UNDER 403, TO -- FOR THE JURY TO

17     DETERMINE, WHEN REALLY ALL THEY NEED TO DETERMINE IS, WAS IT AN

18     ASSERTED TRADE SECRET THAT IS PART OF THE '678 IS -- WELL, IT'S

19     MIND-BENDINGLY COMPLICATED BECAUSE THEN THAT LEADS RIGHT INTO

20     WHAT EVEN MIGHT BE CLAIMS CONSTRUCTION AND AN UNDERSTANDING OF

21     THE '678.

22         I'M PUTTING ASIDE FOR A MOMENT THE INTERFERENCE PROCEEDING

23     BECAUSE IT'S HIGHLY PREJUDICIAL.  BUT I'M -- I'M REALLY MORE

24     CONCERNED WITH THIS UNDUE CONSUMPTION OF TIME AND THE VERY

25     MODEST PROBATIVE VALUE OF THE PATENT CONTENT OF THE '678.
```

```
 1          MR. HOSIE:  YOUR HONOR, MAY I SUGGEST THIS?  WE
 2    NARROWED IT IN OUR BRIEF --
 3          THE COURT:  YOU DID.
 4          MR. HOSIE:  -- TO TWO WITNESSES, TWO DOCUMENTS.
 5       SO PERHAPS THE FAIREST RULING WOULD BE TO SEE IF GOOGLE
 6    DOES OPEN THE DOOR AND ALLOW THE PLAINTIFF TO RENEW THIS ISSUE
 7    THEN ON A CONCRETE RECORD.
 8       BECAUSE FUNDAMENTALLY, IF GOOGLE COMES IN AND TELLS THE
 9    JURY THAT EVERYTHING WE KNEW AND DID AT SPACE DATA WAS LONG IN
10    THE PUBLIC RECORD, GOOGLE'S CLAIMING AN ASPECT OF THAT AS AN
11    ORIGINAL, NOVEL INNOVATION FOR GOOGLE IS STARKLY CONTRADICTORY.
12       BUT, YOU KNOW, LET THEM -- LET THEM OPEN THE DOOR AND
13    PERHAPS WE CAN THEN ADDRESS IT.
14          THE COURT:  OKAY.  I AM GOING TO GRANT THIS MOTION
15    WITH THE EXCEPTION THAT IF, AT TRIAL, GOOGLE OPENS THE DOOR TO
16    THE INTRODUCTION OF THIS EVIDENCE AS REBUTTAL OR IMPEACHMENT,
17    THAT I WILL HEAR ARGUMENT ON IT.
18          MR. HOSIE:  THANK YOU, YOUR HONOR.
19          MR. WONG:  THANK YOU, YOUR HONOR.
20          THE COURT:  OKAY.
21          MR. HOSIE:  YOUR HONOR, MAY I APPROACH THE WATER
22    COOLER?
23          THE COURT:  YEAH, PLEASE.
24          MR. HOSIE:  I THOUGHT I BETTER ASK BEFORE I WANDERED
25    UP THERE.
```

```
 1                THE COURT:  WE DIDN'T GET THOSE FILLED THIS MORNING.

 2        SORRY.

 3                ALL RIGHT.  IN LIMINE MOTION NUMBER 2 IS ALLEGATIONS

 4        REGARDING MISSING EVIDENCE.

 5                LET ME JUST SAY THAT I -- THIS -- THAT IT'S CLEAR TO ME

 6        THAT SPACE DATA HAS NO INTENT OF SEEKING A RULING THAT THERE'S

 7        BEEN SPOLIATION AND IS NOT SEEKING AN ADVERSE INFERENCE

 8        INSTRUCTION BY THE COURT.

 9                AND SO CLEARING ALL OF THAT OUT, LET ME JUST -- LET ME

10        HEAR FIRST FROM GOOGLE.

11                MR. HENRY:  SHAYNE HENRY ON BEHALF OF DEFENDANTS.

12        THANK YOU, YOUR HONOR.

13                WE AGREE THAT SPACE DATA HAS MADE CLEAR THAT THEY'RE NOT

14        SEEKING AN ADVERSE INFERENCE INSTRUCTION.

15                OUR CONCERN IS THAT, ESPECIALLY BY WAY OF THEIR OPPOSITION

16        BRIEF, IT APPEARS THAT THEY ESSENTIALLY WANT TO INSINUATE AN

17        ADVERSE INFERENCE OF SPOLIATION, AND THAT THE WAY THAT THEY

18        INTEND TO DO THAT IS THROUGH REALLY A TROJAN HORSE ARGUMENT OF

19        THE RESIDUALS CLAUSE UNDER THE NDA.

20                I JUST WANT TO SORT OF BRIEFLY ADDRESS EACH OF THE

21        CATEGORIES OF MISSING MATERIALS THAT ARE AT ISSUE IN OUR MOTION

22        IF YOUR HONOR WOULD ALLOW.

23                SO THE FIRST IS ADDITIONAL PHOTOS FROM THE 2008 SITE VISIT

24        THAT SOME GOOGLE EMPLOYEES TOOK DOWN TO SPACE DATA'S FACILITIES

25        IN ARIZONA.
```

```
1          THE COURT:  UM-HUM.

2          MR. HENRY:  SPACE DATA, IN THIS LITIGATION, ASKED US

3     TO PRODUCE ANY PHOTOS FROM THAT VISIT, AND WE CONDUCTED A

4     REASONABLY DILIGENT SEARCH AND PRODUCED EVERY PHOTO THAT WE

5     COULD FIND, AND WE PRODUCED 110 PHOTOS.  KEEPING IN --

6          THE COURT:  BUT THE EVIDENCE CLEARLY SHOWS THAT THERE

7     ARE PHOTOS MISSING FROM THE SEQUENCE.

8          MR. HENRY:  WELL, IT'S UNCLEAR WHAT THE, THE METADATA

9     ACTUALLY MEANS.  AND THERE ARE NO WITNESSES THAT HAVE BEEN

10    IDENTIFIED ON EITHER SIDE THAT COULD ACTUALLY SPEAK TO THE

11    SIGNIFICANCE OF THE METADATA OF THE PHOTOGRAPHY.

12         FOR EXAMPLE, IT APPEARS THAT THE NUMBERS ARE SEQUENTIAL

13    AND THAT THERE ARE MISSING NUMBERS FROM THAT SEQUENCE.  BUT

14    WHAT DOES THAT MEAN?  IF AN INDIVIDUAL WERE TO DELETE THAT

15    PHOTO IMMEDIATELY AFTER TAKING IT OR WITHIN HOURS OF TAKING IT,

16    WOULD THAT NUMBER THEN BE MISSING?  OR DOES THAT SUGGEST THAT

17    THERE WAS A COMPLETE PACKAGE OF PHOTOS, BUT ONLY SOME OF THOSE

18    WERE PROVIDED?

19         IT'S SIMPLY SPECULATION AND CONJECTURE AS TO WHAT IT MEANS

20    THAT THERE ARE NUMBERS MISSING FROM THE SEQUENCE.

21         AND OUR CONTENTION --

22         THE COURT:  BUT YOU HAVE THE FULL OPPORTUNITY TO

23    BRING THE PHOTOGRAPHER INTO COURT TO SAY, "IT'S MY NORMAL

24    PRACTICE TO LOOK THROUGH -- I LOOK THROUGH MY CAMERA LENS, I

25    DELETE, I EDIT AS I STAND THERE."
```

```
1            I MEAN, MOST PHOTOGRAPHERS EDIT BEFORE THEY EVEN DOWNLOAD

2       THEIR PICTURES.  THEY KNOW RIGHT AWAY THEY'VE GOT GARBAGE.

3            SO YOU CLEARLY COULD HAVE DONE THAT.  THESE PEOPLE, YOU

4       KNOW WHO THE PHOTOGRAPHERS WERE.

5                MR. HENRY:  WELL, PART OF THE CONCERN IS THAT THIS IS

6       MORE THAN TEN YEARS AGO THAT THEY TOOK THESE PHOTOS, SO THEIR

7       RECOLLECTION OF WHAT PHOTOS THEY TOOK, HOW MANY PHOTOS THEY

8       TOOK, WHAT WAS IN THE PHOTOS, IT'S DIFFICULT FOR ANY OF OUR

9       WITNESSES TO TESTIFY AS TO THAT INFORMATION.

10           THEY COULD TESTIFY ABOUT THEIR STANDARD PRACTICE, I

11      SUPPOSE.

12               THE COURT:  YEAH.

13               MR. HENRY:  AND WHETHER THEY ACTUALLY APPLIED THAT

14      PRACTICE DURING THAT SITE VISIT, I DON'T KNOW THAT ANY

15      WITNESSES WILL BE ABLE TO TESTIFY.

16           BUT MORE IMPORTANTLY, I THINK ALSO, NO ONE KNOWS WHAT WAS

17      IN THESE PHOTOS, AND SO SPACE DATA IS ESSENTIALLY GOING TO

18      SUGGEST TO THE JURY THAT THEY SPECULATE ABOUT WHAT WAS ON THESE

19      PHOTOS, THAT IT CONTAINED CONFIDENTIAL INFORMATION, IT

20      CONTAINED TRADE SECRET INFORMATION.

21           IT'S SIMPLY ALL CONJECTURE AND ALL SPECULATION BECAUSE

22      THERE'S NO EVIDENCE IN THE RECORD DESPITE SPACE DATA'S BEST

23      ATTEMPT TO DEVELOP THAT EVIDENCE AS TO WHAT WAS CONTAINED IN

24      THE PHOTOS.

25               THE COURT:  YEAH.
```

```
1          MR. HENRY:  BUT IT'S IMPORTANT TO REMEMBER THAT WE
2     DID, IN FACT, PROVIDE ALL OF THE PHOTOS THAT WE COULD FIND, AND
3     THAT THIS WAS AN ISSUE THAT SPACE DATA DID NOT RAISE UNTIL THE
4     SUMMARY JUDGMENT BRIEFING, AND AT THAT TIME, IT APPEARED TO
5     SUGGEST THAT THERE ARE NOT -- NOT SUGGEST, BUT IT EXPLICITLY
6     SAYS THAT THESE MISSING PHOTOS, THE MISSING NOTES ARE EVIDENCE
7     OF MISUSE, PROVIDE AN INFERENCE OF MISUSE, AND OUR CONCERN IS
8     THAT THEY WILL ESSENTIALLY TRY TO ARGUE THAT INFERENCE TO THE
9     JURY AS WELL, AND THAT'S ESSENTIALLY WHAT WE ASK THE COURT TO
10    EXCLUDE.
11         I THINK I CAN MOVE -- SOME OF THE SAME ARGUMENTS APPLY TO
12    THE NOTES ESSENTIALLY.
13              THE COURT:  SURE.
14              MR. HENRY:  SPACE DATA ALSO TRIED TO DEVELOP EVIDENCE
15    AS TO THE NOTES THAT WERE TAKEN.  ONLY ONE WITNESS RECALLED
16    TAKING ANY NOTES DURING THE SITE VISIT, THAT WAS DAN MCCLOSKEY.
17    HE SAID HE TOOK AT MOST ONE PAGE OF NOTES, HE DOESN'T REMEMBER
18    WHAT WAS ON THE NOTES, AND HE SHREDDED THOSE NOTES AT LEAST BY
19    2012, ALONG WITH HIS OLD NOTEBOOKS, WHICH WAS HIS STANDARD
20    PRACTICE.  WHEN HE WAS TRANSITIONING BETWEEN PROJECTS, HE WOULD
21    DISPOSE OF ALL DOCUMENTS, AS MANY PEOPLE DO.
22              THE COURT:  SURE.
23              MR. HENRY:  AGAIN, THERE'S NO EVIDENCE THAT THERE
24    WERE ANY NOTES THAT CONTAINED ANY CONFIDENTIAL INFORMATION, ANY
25    TRADE SECRET -- OR ANY OF SPACE DATA'S ALLEGED TRADE SECRETS.
```

```
1        THAT WOULD ALL JUST BE CONJECTURE AND SPECULATION.

2             SPACE DATA MUST TRY ITS CASE --

3             THE COURT:  IT'S HARD TO DRAW THE LINE BETWEEN

4        CONJECTURE AND SPECULATION AND INFERENCE.  SO INFERENCE IS

5        ALLOWED.  SPECULATION ISN'T.  THAT'S A HARD LINE TO DRAW.

6             MR. HENRY:  CERTAINLY, AND I THINK THAT WHERE THE

7        LINE WOULD BE DRAWN IS THAT AN INFERENCE HAS TO BE BASED UPON

8        THE EVIDENCE, AND SPACE DATA MUST TRY ITS CASE BASED ON THE

9        EVIDENCE THAT IT HAS --

10            THE COURT:  WELL, THE --

11            MR. HENRY:  -- AND THE EVIDENCE THAT IT CAN ELICIT AT

12       TRIAL.

13            THE COURT:  BUT WITH MISSING NUMBERS IN A SEQUENCE,

14       AND IT'S PRETTY -- JURORS ARE GOING TO BE FAMILIAR WITH CAMERAS

15       KEEPING COUNT OF THE NUMBER OF SNAPS AND FAMILIAR WITH HOW EASY

16       IT IS TO DELETE.  I MEAN, HOW MANY US USE OUR PHONES AND TAKE

17       PICTURES AND WE LOOK SO UGLY IN OUR SELFIE THAT WE DELETE IT

18       BEFORE WE EVEN GO ON AND WALK DOWN THE STREET BECAUSE WE

19       WOULDN'T WANT -- SO PEOPLE KNOW THAT.

20            MR. HENRY:  WELL, BUT THEN I THINK THE QUESTION

21       BECOMES, HOW DOES SPACE DATA INTEND TO GET THIS METADATA INTO

22       EVIDENCE AND IN FRONT OF THE JURY?  CERTAINLY NONE OF THE

23       WITNESSES HAVE SEEN THE METADATA ASSOCIATED WITH THE PHOTOS.

24            THE METADATA IS SIMPLY A PRODUCT OF DOCUMENT PRODUCTION,

25       AND THE ONLY PERSON WHO HAS OPINED ON THE SIGNIFICANCE OR
```

```
1    MEANING OF THAT METADATA IS AN ATTORNEY FROM SPACE DATA'S

2    LITIGATION GROUP, AND SO IT'S NOT CLEAR HOW THEY WOULD BE ABLE

3    TO GET THE METADATA.

4          THE COURT:  THAT'S A DIFFERENT ISSUE, AND THAT'S

5    NOT -- I AGREE THAT'S AN IMPORTANT ISSUE, BUT IT'S A LITTLE BIT

6    DIFFERENT.

7          NOW, IT SEEMS TO ME, ON THE PRE-2010 LOGS, THAT YOU EASILY

8    CAN REBUT THAT BY SAYING, "WE DIDN'T KEEP LOGS.  WE DIDN'T

9    DESTROY THEM.  WE JUST DIDN'T KEEP THEM."

10         MR. HENRY:  I THINK THAT'S RIGHT, AND TO THE EXTENT

11   THAT WE CAN PROFFER A WITNESS THAT CAN TESTIFY TO THAT IN

12   COURT, WE CAN DO THAT.

13         OUR CONCERN, AGAIN, IS AN INFERENCE, HOWEVER, THAT THERE

14   WOULD BE EVIDENCE IN THE PRE-2010 LOGS --

15         THE COURT:  BUT THERE AREN'T ANY.  THERE NEVER WERE

16   IS THE POINT.  IF THERE NEVER WERE LOGS, THEN THERE CAN'T BE

17   EVIDENCE IN THEM.

18         IT'S REASONABLE TO ASK A WITNESS, "I'M LOOKING AT THE 2012

19   LOGS, AND WHAT ABOUT THE ONES FROM 2008, 2009?"

20         TO WHICH A WITNESS CAN SAY, "IT WASN'T OUR PRACTICE TO

21   HAVE LOGS AT THE TIME.  THEY NEVER EXISTED."  THEY WEREN'T --

22   THEY DIDN'T -- THEY WEREN'T -- SO THERE'S NOTHING TO DESTROY.

23         MR. HENRY:  I THINK THAT'S RIGHT, AND THAT WOULD BE

24   THE APPROACH THAT I THINK WE WOULD TAKE AT TRIAL.

25         OUR CONCERN, AGAIN, I THINK APPLIES PROBABLY MOSTLY TO THE
```

1    OPENING, WHICH WOULD JUST BE THAT WE ASK THE COURT TO PRECLUDE

2    OR SORT OF TO ACT AS A GATEKEEPER OF ATTORNEY ARGUMENT THAT

3    EXPLICITLY ASKS THE COURT TO DRAW ADVERSE INFERENCES ABOUT THIS

4    MISSING EVIDENCE.

5              THE COURT:  RIGHT.

6              MR. HENRY:  AND THEN IF WE ENTER THE CASE-IN-CHIEF

7    AND THE ATTORNEY'S ESSENTIALLY SUGGESTING THESE ADVERSE

8    INFERENCES OF SPOLIATION, THEN PERHAPS WE COULD RAISE IT WITH

9    THE COURT AND A CURATIVE INSTRUCTION WOULD BE APPROPRIATE.

10         BUT I THINK AT THE VERY LEAST, WE WOULD ASK THAT

11   SPACE DATA'S COUNSEL BE ADMONISHED BY ORDER OF THE COURT NOT TO

12   SUGGEST THAT THE FACT THAT THIS EVIDENCE WAS NOT PRODUCED MEANS

13   THAT THE EVIDENCE EXISTED AND THAT GOOGLE DESTROYED IT AND IS

14   WITHHOLDING EVIDENCE FROM THE JURY, WHICH WOULD BE HIGHLY

15   PREJUDICIAL.

16             THE COURT:  ALL RIGHT.  LET ME HEAR THE OPPOSITION.

17             MS. GERMINARIO:  YOUR HONOR, FRANCESCA GERMINARIO FOR

18   THE PLAINTIFF.

19         I THINK A LOT OF YOUR HONOR'S INSTINCTS ARE PROBABLY

20   CORRECT.  WHAT WE'RE ASKING FOR AT THIS TIME IS NOT AN ADVERSE

21   INFERENCE, AS YOU MENTIONED, AND ANY SUGGESTION THAT WE'RE

22   TRYING TO BRING FORTH EVIDENCE OF SPOLIATION OR AN ADVERSE

23   INFERENCE, JUST TO PUT THAT OUT FRONT, THAT'S NOT WHAT WE'RE

24   LOOKING FOR HERE.

25         REALLY THE RELEVANCE OF THIS EVIDENCE IS TO THE RESIDUALS

1   CLAUSE OF THE NDA.  IT IS A REASONABLE INFERENCE FOR THE JURY

2   TO DRAW WHETHER OR NOT, YOU KNOW, THERE WAS AN INTENTION TO

3   KEEP IN ONE'S UNAIDED OR AIDED MEMORY THE INFORMATION THAT THEY

4   SAW ON THE TOUR.

5       AND SO WHETHER OR NOT THERE WAS MISSING PHOTOGRAPHS,

6   WHETHER OR NOT THOSE PHOTOGRAPHS EXISTED AT ALL IS REALLY WHAT

7   THE RELEVANCE OF THIS INFORMATION IS, AND THAT'S SOMETHING FOR

8   THE JURY TO CONSIDER.

9       THE COURT:  SO I -- YOU KNOW, IT CERTAINLY IS

10  NECESSARY THAT I LIMIT YOUR ARGUMENTS TO THE EVIDENCE THAT YOU

11  SUBMIT TO THE JURY, AND IT APPEARS THAT YOU HAVE NO EVIDENCE

12  THAT THE, THAT THE MISSING PHOTOS OR LOGS WERE -- ARE MISSING

13  BECAUSE OF DESTRUCTION, WHETHER INTENTIONAL OR OTHERWISE.  YOU

14  HAVE NO EVIDENCE.  YOU JUST KNOW THAT YOU DIDN'T GET THEM.

15      MS. GERMINARIO:  THAT'S CORRECT.

16      AND I THINK THE ABILITY TO CALL SEVERAL WITNESSES OF

17  GOOGLE AS ADVERSE WITNESSES, WE WOULD BE ABLE TO ASK THEM

18  ABOUT -- EVEN THE PEOPLE WHO ACTUALLY TOOK THOSE PHOTOS, WE

19  WILL BE ABLE TO ASK THEM ABOUT WHAT THEY DID.

20      THE COURT:  SURE.

21      MS. GERMINARIO:  AND AS YOU SAY, WHAT THEIR PRACTICE

22  WAS.

23      AS TO THE METADATA POINT ACTUALLY THAT COUNSEL POINTED

24  OUT, THE METADATA IS INCLUDED IN SOME E-MAILS SENDING THE

25  PICTURES BACK AND FORTH AMONG -- INTERNALLY IN GOOGLE.

```
 1                    THE COURT:  UM-HUM.  OKAY.

 2                    MS. GERMINARIO:  SO THERE IS EVIDENCE TO SHOW THE

 3         JURY.  THERE'S EVIDENCE.

 4                    THE COURT:  SO -- AND YOU'RE NOT GOING TO USE YOUR --

 5         I DON'T KNOW WHETHER IT'S AN ATTORNEY OR PARALEGAL WHO ACTUALLY

 6         DID THIS EVALUATION, AND YOU'RE NOT SUBMITTING THAT PERSON AS A

 7         WITNESS AT TRIAL?

 8                    MS. GERMINARIO:  THAT'S CORRECT.  THAT WAS ACTUALLY

 9         ME.

10                    THE COURT:  OH, IT WAS YOU.  I'M SORRY.

11              (LAUGHTER.)

12                    THE COURT:  IT WAS AN ATTORNEY.  OKAY.

13                    MS. GERMINARIO:  THAT'S CORRECT, YES.

14                    THE COURT:  AND YOU'RE NOT GOING TO BE TESTIFYING?

15                    MS. GERMINARIO:  NO.  THAT'S CORRECT.

16                    THE COURT:  OKAY, GOOD.  SO WHAT I'M INCLINED TO DO

17         HERE IS TO DENY THIS MOTION WITH SOME LIMITATIONS, AND THAT IS

18         THAT ABSENT WITNESS TESTIMONY OF DESTRUCTION OF DOCUMENTS,

19         WHETHER INTENTIONAL OR OTHERWISE, AND ESPECIALLY DESTRUCTION OF

20         DOCUMENTS IN LIGHT OF THIS LAWSUIT AND CONTROVERSY, YOU CANNOT

21         ASK THE JURY TO DRAW AN INFERENCE THAT THIS WAS A NEFARIOUS

22         DECISION TO AVOID DISCOVERY IN THE CASE.

23                    THE -- I THINK IN YOUR OPENING STATEMENT, YOU -- I'M GOING

24         TO REQUIRE THAT YOU TREAD VERY LIGHTLY ON THIS BECAUSE I'M

25         GOING TO -- I WON'T KNOW HOW FAR TO LET YOU ARGUE IT IN OPENING
```

```
 1    UNTIL I HEAR THE EVIDENCE, AND I DON'T KNOW THAT YOU'LL BE ABLE

 2    TO ESTABLISH IT.

 3         SO, YOU KNOW, TO STATE FACTUALLY "WITNESSES WILL TESTIFY

 4    THAT MORE PICTURES WERE TAKEN THAN WHAT WE'VE BEEN ABLE TO SEE"

 5    IS FINE.  TO -- AND YOU CAN'T ARGUE THE EVIDENCE IN OPENING

 6    ANYWAY.

 7         BUT I'M GOING TO KEEP IT TO JUST THE FACTS AND I'M -- YOU

 8    KNOW, WE CERTAINLY DON'T WANT OBJECTIONS DURING OPENING.  NO

 9    ONE WANTS TO POSE THEM.  NO ONE WANTS TO HAVE THEM ASSERTED

10    AGAINST THEM.

11         BUT I'M GOING TO REALLY KEEP A TIGHT REIN ON IT.  BUT

12    GENERALLY I NEED TO WAIT AND SEE WHAT THE EVIDENCE IS, AND WE

13    DON'T SEEM TO -- YOU KNOW, WE DON'T KNOW WHAT THESE WITNESSES

14    WILL SAY.

15         AND, YOU KNOW, THIS WHOLE UNAIDED MEMORY ISSUE IS

16    DIFFICULT, BUT IF A PHOTO WAS NEVER REVIEWED BECAUSE IT WAS

17    DELETED THAT DAY OR WITHIN A COUPLE OF DAYS OR WE JUST DON'T

18    KNOW WHEN IT WAS DELETED, WE HAVE A WHOLE DIFFERENT -- WE'RE

19    JUST NOT SURE.

20         SO IT IS A DENIAL.

21              MR. HENRY:  YOUR HONOR, IF I COULD JUST MAKE THE

22    COURT AWARE OF ONE CONCERN?

23              THE COURT:  YES.

24              MR. HENRY:  AND THAT IS THAT WE'RE ALSO CONCERNED

25    THAT THEY WILL ASK THE COURT TO SPECULATE OR ASSUME THAT THESE
```

```
 1      PHOTOS, BECAUSE THEY ARE MISSING, MUST HAVE CONTAINED

 2      CONFIDENTIAL INFORMATION OR TRADE SECRETS, AND I THINK THAT'S

 3      PART AND PARCEL WITH WHAT THE COURT IS SAYING, AND WE

 4      UNDERSTAND YOU INSTRUCTING OR ADMONISHING SPACE DATA TO TREAD

 5      LIGHTLY IN OPENING WOULD ALSO INCLUDE SPACE DATA NOT SUGGESTING

 6      TO THE JURY THAT --

 7              THE COURT:  YES.

 8              MR. HENRY:  -- THIS MISSING EVIDENCE CONTAINED

 9      INCRIMINATING INFORMATION.

10              THE COURT:  I AGREE WITH THAT COMPLETELY, THAT IN

11      OPENING STATEMENT, YOU CAN'T ARGUE OR SUGGEST WHAT THE CONTENTS

12      OF THINGS YOU'VE NEVER SEEN WOULD BE.  I DON'T KNOW THAT YOU

13      CAN EVER ARGUE THAT.  MAYBE AS AN INFERENCE IN CLOSING BASED ON

14      THE EVIDENCE.

15          THAT'S A GOOD POINT AND I DO APPRECIATE THAT, MR. HENRY.

16              MR. HENRY:  THANK YOU, YOUR HONOR.

17              MS. GERMINARIO:  YOUR HONOR, IF I MAY CLARIFY JUST

18      ONE THING?  DOES THAT -- I SUPPOSE -- DOES THAT INSTRUCTION

19      APPLY TO THE TRIAL AT THE TIME THAT WE CALL WITNESSES TO, FOR

20      EXAMPLE, TESTIFY AS TO WHEN CERTAIN PEOPLE WERE TAKING

21      PICTURES, WHAT ACTIVITIES WERE HAPPENING AT CERTAIN TIMES

22      AND --

23              THE COURT:  YOU CAN DEVELOP THAT FACTUALLY,

24      ABSOLUTELY.

25              MS. GERMINARIO:  THANK YOU.
```

```
 1              THE COURT:  IF YOU HAVE A WITNESS WHO WAS TAKING

 2     PICTURES, YOU CAN EXPLORE WHAT THE SUBJECT OF THE PHOTOS WAS

 3     AND, YES, THAT'S CERTAINLY ALL REASONABLE.

 4              MR. HOSIE:  THANK YOU, YOUR HONOR.

 5              MS. GERMINARIO:  THANK YOU, YOUR HONOR.

 6              MR. HENRY:  THANK YOU, YOUR HONOR.

 7              THE COURT:  OKAY.  ALL RIGHT.

 8         LET'S DO -- I THINK THIS ONE MIGHT TAKE A LITTLE -- WOULD

 9     YOU LIKE TO TAKE A BREAK NOW OR IN ABOUT 20 MINUTES?

10              THE REPORTER:  EITHER WAY.

11              MR. BRUNS:  EITHER WAY IS FINE FOR US, YOUR HONOR.

12              THE COURT:  WHY DON'T WE TAKE THE BREAK NOW AND THAT

13     WHY I WON'T BE LOOKING AT THE CLOCK.  LET'S TAKE A TEN MINUTE

14     BREAK.

15         (RECESS FROM 10:20 A.M. UNTIL 10:29 A.M.)

16              THE COURT:  OKAY.  LET'S MOVE ON TO OUR NEXT MOTION

17     IN LIMINE.

18         THIS IS IN LIMINE MOTION NUMBER 3 REGARDING LOON AND

19     SPACE DATA VALUATIONS AND GOOGLE'S TOTAL SIZE, WEALTH, AND

20     OVERALL REVENUES.

21              MR. BRUNS:  GOOD MORNING, YOUR HONOR.

22         ANDREW BRUNS ON BEHALF OF DEFENDANTS.

23         ONE HOUSEKEEPING MATTER A COLLEAGUE DREW TO MY ATTENTION

24     BEFORE I TURN TO MOTION IN LIMINE NUMBER 3.

25              THE COURT:  YES.
```

```
1              MR. BRUNS:  OUR PROPOSED ORDER REGARDING MOTION

2    NUMBER 1 NEGLECTED TO LIST EXHIBITS 1 AND 2.  IT'S THE --

3    THEY'RE MENTIONED IN THE BRIEF AND DISCUSSED THERE.

4         WE'D BE HAPPY TO SUBMIT ANOTHER PROPOSED ORDER IF THAT

5    WOULD BE HELPFUL.

6              THE COURT:  LET ME JUST -- I'VE GOT THE PROPOSED

7    ORDER HERE, I BELIEVE.

8              MR. BRUNS:  OKAY, GREAT.  SO IT'S JUST MISSING TRIAL

9    EXHIBITS 1 AND 2 ON THE FRONT OF THAT LIST.

10             THE COURT:  AND THAT'S NOT -- WE'LL MAKE A NOTE OF

11   THAT.  THAT'S ON NUMBER 1, WE'LL ADD EXHIBITS 1 AND 2.

12             MR. BRUNS:  YES, YOUR HONOR.

13             THE COURT:  OKAY.  THANK YOU.  APPRECIATE THAT.

14        (PROCEEDINGS UNDER SEAL FROM PAGES 67-98.)

15   ///

16   ///

17

18

19

20

21

22

23

24

25
```

1      ///

2      ///

3         **(SEALED PROCEEDINGS FROM PAGES 67 TO 98.)**

4          MR. BRUNS:  SO TURNING BACK TO MOTION IN LIMINE

5      NUMBER 3, GOOGLE ASKS THE COURT TO EXCLUDE THREE DIFFERENT

6      TYPES OF FINANCIAL EVIDENCE WHICH YOU'VE ALREADY LISTED, YOUR

7      HONOR:  LOON'S FINANCIAL PROJECTIONS AND GOOGLE'S INVESTMENT IN

8      THE PROJECT; SPACE DATA'S OVERALL ENTERPRISE VALUE; AND

9      GOOGLE'S WORLDWIDE REVENUE AND MARKET CAP.

10         THE COURT:  UM-HUM.

11         MR. BRUNS:  AND KIND OF AS AN INITIAL MATTER, I THINK

12      IT'S IMPORTANT TO NOTE THAT SPACE DATA'S THEORY OF DAMAGES HERE

13      IS REALLY QUITE SIMPLE AND NARROW.  THEY BELIEVE THAT THEIR

14      TRADE SECRET AND BREACH OF CONTRACT CLAIMS HAVE COEXTENSIVE

15      DAMAGES.  THEIR EXPERT HAS DEFINED THEM AS THE UNJUST

16      ENRICHMENT THAT GOOGLE SUPPOSEDLY ENJOYED.

17         THE COURT:  UM-HUM.

18         MR. BRUNS:  NAMELY, THE R&D COSTS THAT SPACE DATA

19      INCURRED TO DEVELOP THESE ALLEGED TRADE SECRETS, AND THAT

20      AMOUNT, ACCORDING TO SPACE DATA, IS ███████ .

21         THE COURT:  I THOUGHT IT WAS ██ .  DID I MISS --

22         MR. BRUNS:  SO THEY'VE DROPPED ONE OF THE TRADE

23      SECRETS.

24         MR. ATKINSON:  YES, YOUR HONOR.

25         THE COURT:  OH, OKAY.  I JUST READ DR. MEYER AND I

```
 1        SAW THAT NUMBER.

 2               MR. BRUNS:  SUBSEQUENTLY, I BELIEVE IN THE SUMMARY

 3        JUDGMENT BRIEFING, THAT'S BEEN DROPPED.

 4               THE COURT:  OKAY.

 5               MR. BRUNS:  SO THE UNDISPUTED FIGURE IS ███ , ROUGHLY,

 6        MILLION DOLLARS.

 7           SO DESPITE THIS NARROWED THEORY, SPACE DATA NOW SEEKS TO

 8        INTRODUCE AT TRIAL SEVERAL TYPES OF EVIDENCE WHICH I'VE ALLUDED

 9        TO ALREADY AND WE'LL DISCUSS IN A LITTLE MORE DETAIL SHORTLY.

10               THE COURT:  UM-HUM.

11               MR. BRUNS:  ALL OF THESE FIGURES ARE ORDERS OF

12        MAGNITUDE LARGER THAN THAT NUMBER I JUST MENTIONED, ██████

13        █████████████ , IN FACT, AND THEY'RE IRRELEVANT TO THE

14        MERITS OF SPACE DATA'S CLAIMS AND TO DR. MEYER'S EVALUATION OF

15        POTENTIAL DAMAGES HERE.

16           THE ONLY IMPORT OF THESE FIGURES REALLY IS PREJUDICE TO

17        GOOGLE BY SHIFTING THE JURY'S DAMAGES HORIZON.

18           SO I'D JUST LIKE TO QUICKLY GO THROUGH THOUGH THREE SETS

19        OF EVIDENCE.

20               THE COURT:  OKAY.

21               MR. BRUNS:  FIRST, LOON'S PROJECTED REVENUES AND

22        PROFITS.

23           SO CONFUSINGLY IN THEIR OPPOSITION, SPACE DATA SUGGESTS

24        THAT THIS INFORMATION IS RELEVANT TO PROVE THAT SPACE DATA'S

25        TRADE SECRETS HAVE VALUE.
```

1    THAT ARGUMENT IS PROBLEMATIC ON A NUMBER OF LEVELS, NOT

2    THE LEAST OF WHICH IS THE FACT THAT IT PRESUMES, ITS PREMISE --

3    IT ASSUMES THAT GOOGLE MISAPPROPRIATED THE TRADE SECRETS AND

4    THAT LOON'S VALUE IS DERIVED FROM THEM.

5         BUT NOT EVEN SPACE DATA WOULD ARGUE THAT THE ENTIRETY OF

6    LOON'S VALUE IS DERIVED --

7         THE COURT:  THAT'S THE CLEANEST ISSUE THERE.

8         MR. BRUNS:  YEAH, RIGHT.  SO ANY UNAPPORTIONED VALUE

9    LIKE THAT REALLY CAN'T BE PUT BEFORE THE JURY.  IT WOULD BE FAR

10   TOO PREJUDICIAL, AND AS WELL AS IRRELEVANT.

11        AND JUST TO KIND OF PUT A FINE POINT ON IT, THIS ISN'T

12   JUST TOTAL REVENUE, IT'S PROJECTED TOTAL REVENUE.  SO IT'S A

13   SPECULATIVE FIGURE, NOT TO MENTION THE FACT THAT IT'S NOT

14   APPORTIONED.

15        THE COURT:  WELL, IT'S NOT SPECULATIVE.  IT -- I

16   MEAN, IT'S -- I THINK YOUR OTHER POINT IS STRONGER.  IT'S NOT A

17   SPECULATIVE NUMBER.  IT IS A PROJECTION AND A PROJECTION --

18        MR. BRUNS:  THAT'S WHAT I MEANT, YOUR HONOR.

19        THE COURT:  -- IS A STEP CLOSER TO REALITY THAN A

20   SPECULATION.

21        MR. BRUNS:  FAIR ENOUGH.

22        I GUESS I WOULD NOTE THAT PREVIOUS -- WELL, I'LL GET TO

23   THAT IN A MOMENT.

24        THE COURT:  OKAY.

25        MR. BRUNS:  SO IF THIS EVIDENCE WERE TO GET IN, IT

1          WOULD CREATE A SERIES OF SIDESHOWS AT TRIAL.

2                FOR ONE THING, SPACE DATA HAS NO EXPERT WHO CAN TIE THESE

3          VALUES TO SPACE DATA'S TRADE SECRETS.  GOOGLE WOULD HAVE TO

4          INTRODUCE A SERIES OF WITNESSES WHO HAVE NO REASON TO OTHERWISE

5          APPEAR AT TRIAL TO EXPLAIN HOW THESE CALCULATIONS ARE MADE, THE

6          NATURE OF THE PROJECTIONS, AND WHAT I WAS STARTING TO ALLUDE TO

7          EARLIER, THE HISTORY OF THESE PROJECTIONS BEING OVERLY

8          OPTIMISTIC IN REALITY.

9                AND THIS EVIDENCE WOULD HAVE TO COME IN, LIKE I SAID,

10         THROUGH WITNESSES WHO REALLY HAVE NO REASON TO BE HERE

11         OTHERWISE.

12               SO THERE'S A SIGNIFICANT RISK OF PREJUDICE, THERE'S A RISK

13         OF KIND OF SIDESHOWS AT TRIAL, AND ALL OF THOSE RISKS ARE

14         REALLY UNWARRANTED FOR THE LIMITED VALUE THAT SUCH EVIDENCE

15         WOULD OFFER.

16               SO UNLESS YOUR HONOR HAS ANY QUESTIONS, I'LL MOVE TO THE

17         NEXT CATEGORY --

18               THE COURT:  OKAY.  GO AHEAD.

19               MR. BRUNS:  -- WHICH IS SPACE DATA'S ENTERPRISE

20         VALUE.

21               SO INCLUDED IN SPACE DATA'S TRIAL EXHIBIT LIST ARE SEVERAL

22         E-MAILS THAT REFER TO A PURPORTED ESTIMATE OF SPACE DATA'S

23         VALUE AROUND THE TIME OF THE COMPANY'S INTERACTIONS IN 2007 AND

24         2008.

25               AND IN ITS OPPOSITION, SPACE DATA HAS SUGGESTED THAT IT

```
1      MAY ALSO INTRODUCE EVIDENCE OF ITS PRESENT DAY VALUE.

2           BUT IN ANY EVENT, EITHER TEMPORAL SCOPE, THE EVIDENCE OF

3      SPACE DATA'S ENTIRE VALUE IS NOT RELEVANT HERE.

4           SO THEY ARGUE -- GO AHEAD.

5           THE COURT:  WELL, I GUESS THE POINT THAT SPACE DATA

6      MAKES, THOUGH, IS THAT GOOGLE MAY TRY TO OFFER EVIDENCE THAT

7      SPACE DATA IS A DEFUNCT COMPANY AND IS TRYING TO GLEAN SOME

8      PROFITS HERE, AND SO THEN IT WOULD BE APPROPRIATE REBUTTAL THAT

9      THEY ACTUALLY HAVE VALUE.

10           MR. BRUNS:  A COUPLE POINTS ON THAT SQUARE, YOUR

11      HONOR.

12           SO FIRST, THAT RESPONSE REALLY GOES TO PRESENT DAY VALUE

13      AND NOT ANYTHING ABOUT THE 2008 PERIOD.

14           THE COURT:  IT DEPENDS ON WHAT THE EVIDENCE IS.  SEE,

15      THIS IS ONE OF THOSE THINGS WHERE YOU BASICALLY HOLD THE KEYS

16      TO THIS ONE BECAUSE I -- I WOULD PROBABLY LIMIT IT TO REBUTTAL

17      EVIDENCE.

18           BUT I THOUGHT SPACE DATA'S ARGUMENT ON THAT WAS

19      APPROPRIATE.

20           MR. BRUNS:  OKAY.  WELL, I GUESS REGARDING THAT NOTE,

21      TURNING I GUESS TO THE PRESENT DAY --

22           THE COURT:  UM-HUM.

23           MR. BRUNS:  OH, GO AHEAD.  I THOUGHT YOU SAID

24      SOMETHING.

25           THE COURT:  GO AHEAD, PLEASE.
```

1          MR. BRUNS:  REGARDING THE PRESENT DAY VALUE, WE'RE

2     UNAWARE OF ANY EVIDENCE THAT THEY COULD OFFER THAT ACTUALLY

3     SHOWS WHAT SPACE DATA'S VALUE IS TODAY IS ONE THING.

4          AND REGARDING BOTH THE 2008 NUMBER AND THE PRESENT DAY

5     NUMBER, THERE'S NOTHING THAT APPORTIONS SPACE DATA'S VALUE OR

6     THE VALUE OF THEIR TRADE SECRETS THAT ARE AT ISSUE HERE.

7          THE COURT:  WELL, THE ARGUMENT SPACE DATA MAKES IN

8     ITS PAPERS IS THAT THEY BELIEVE YOU WILL BE ARGUING THAT

9     SPACE DATA IS A FAILED COMPANY.

10          MR. BRUNS:  RIGHT.

11          THE COURT:  SO APPORTIONMENT WOULDN'T BE NECESSARY TO

12     REBUT THE OVERALL THEORY OF IT BEING A FAILED COMPANY IF THEY

13     WANT TO OFFER EVIDENCE, "WELL, WE'RE ACTUALLY NOT FAILED, WE

14     HAVE QUITE A SIGNIFICANT VALUATION."

15          MR. BRUNS:  SURE.  WELL, YOUR HONOR, WE HAVE NO

16     INTENTION TO MAKE THIS CASE ABOUT THE LACK OF SUCCESS OF

17     SPACE DATA.

18          THE COURT:  WELL, AS I SAY, I MAY LIMIT IT TO

19     REBUTTAL EVIDENCE, AND SO YOU HOLD THE -- YOU'RE THE MASTER OF

20     THAT ARGUMENT.

21          MR. BRUNS:  YEAH.  ONE THING TO KEEP IN MIND, YOU

22     KNOW, APPORTIONMENT OR NOT, I THINK IT WOULD BE IMPORTANT, IF

23     ANY EVIDENCE LIKE THIS GOT IN, IT WOULD NEED TO BE LIMITED TO

24     MAKE CLEAR THAT THE VAST MAJORITY -- EVEN IN SPACE DATA'S

25     BRIEFING, THEY ACKNOWLEDGE THE VAST MAJORITY OF THE VALUE IS

```
1     DERIVED FROM SPECTRUM AND NOT TRADE SECRETS.

2          THE WORRY IS THAT ANY FIGURE THAT GETS TOSSED OUT BECOMES

3     SOME SORT OF ALTERNATE VALUATION OF THEIR TRADE SECRETS.

4               THE COURT:  SURE.

5               MR. BRUNS:  SO AT THE VERY LEAST WE WOULD HOPE THAT

6     THAT WOULD BE PART OF AN ORDER.

7               THE COURT:  OKAY.  SO THEN THERE'S THE BIG ISSUE OF

8     GOOGLE'S VALUATIONS.

9               MR. BRUNS:  YEAH.  WELL, I HOPE I CAN MAKE THIS A

10    LITTLE SIMPLER FOR TODAY.

11              THE COURT:  OKAY.

12              MR. BRUNS:  YOUR HONOR, YOU ALLUDED TO THE JURY

13    INSTRUCTION TIE-IN HERE.

14         WE DISAGREE WITH SPACE DATA'S READING OF THE CASES THEY'VE

15    CITED.  I'M HAPPY TO GO INTO THAT.

16         BUT I THINK THIS QUESTION IS BETTER SAVED FOR I THINK IT'S

17    AUGUST 2ND WHEN JURY INSTRUCTIONS ARE DISCUSSED.

18              THE COURT:  SO THE ONE WAY I WANTED TO ADDRESS IT --

19              MR. BRUNS:  SURE.

20              THE COURT:  -- AND WE CERTAINLY CAN WAIT, I JUST WANT

21    YOU TO KNOW, BASED ON MY PRELIMINARY RESEARCH, I'M LEANING

22    TOWARD SPACE DATA'S VIEW THAT THIS WILL BE A JURY ISSUE, BUT

23    I'M NOT MAKING THAT ULTIMATE DECISION.  IT'S JUST I WANT YOU TO

24    KNOW THAT'S WHERE I'M SITTING RIGHT NOW.

25              HOWEVER, THERE'S ANOTHER WAY AROUND THIS.
```

```
 1            MR. BRUNS:  YEAH.

 2            THE COURT:  UNDER BOTH STATE AND FEDERAL LAW,

 3    EXEMPLARY DAMAGES ARE CAPPED AT TWO TIMES THE AMOUNT OF

 4    DAMAGES, AND I WOULD IMAGINE THAT GOOGLE WOULD BE GLAD TO

 5    STIPULATE THAT IF DOUBLE DAMAGES ON ████████ WERE ASSESSED,

 6    THAT IT COULD AFFORD TO PAY THEM AND IT WOULDN'T HAVE TO CLOSE

 7    DOWN BECAUSE OF THAT.

 8            AND THEN WE DON'T NEED ANY OF THIS EVIDENCE OF GOOGLE'S

 9    VALUE.

10            SO, MR. WERDEGAR, YOU'RE SHAKING YOUR HEAD.

11            MR. WERDEGAR:  I WAS GOING TO SAY, YES, YOUR HONOR,

12    WE WOULD SO STIPULATE.

13            MR. BRUNS:  YOUR HONOR, IT'S AS IF YOU READ MY NEXT

14    PARAGRAPH.

15        (LAUGHTER.)

16            THE COURT:  ALL RIGHT.

17            AND, OF COURSE, THAT THEN BRINGS ME TO THE QUESTION,

18    BECAUSE IT WASN'T DEFINITIVE IN THE PAPERS -- AND IT DIDN'T

19    NEED TO BE -- DO I FULLY UNDERSTAND SPACE DATA'S THEORY OF

20    DAMAGES FOR ALL OF THE CLAIMS BEING LIMITED TO THE UNJUST

21    ENRICHMENT AS IDENTIFIED BY DR. MEYER?

22            MR. ATKINSON:  YOUR HONOR, IN TERMS OF THE TOTAL

23    AMOUNT OF THE FIGURE, YES, THAT IS CORRECT.

24            WE DO PLAN TO MAKE ARGUMENTS TO THE EXTENT THAT SHE WAS

25    CONSERVATIVE AND THERE ARE OTHER THINGS THAT, YOU KNOW, WE
```

```
1      COULD HAVE ASKED FOR THEM FOR EVIDENCE TO SHOW THE JURY THAT

2      THE UNJUST ENRICHMENT NUMBER IS LOW.

3           BUT THE ACTUAL NUMBER IS LIMITED TO THAT, YOUR HONOR.

4              THE COURT:  OKAY.  THAT COULD -- AND YOU CAN ONLY

5      MAKE THAT ARGUMENT IF YOU HAVE EVIDENCE TO SUPPORT ADDITIONAL

6      DAMAGES.  CERTAINLY YOU DON'T NEED AN EXPERT TO DO CHAPTER AND

7      VERSE ON ALL THE DAMAGES.

8           BUT WE'LL WAIT AND SEE IF THERE'S ANY EVIDENCE OF ANY MORE

9      R&D, BECAUSE YOUR THEORY IS IT'S R&D COSTS ON UNJUST

10     ENRICHMENT.

11             MR. ATKINSON:  YOUR HONOR, DR. MEYER'S REPORT DOES

12     REFERENCE OTHER FORMS OF UNJUST ENRICHMENT BESIDES JUST

13     RESEARCH AND DEVELOPMENT, FOR EXAMPLE, THE BENEFIT OF GOOGLE'S

14     EARLY ENTRY INTO THE MARKET, ALTHOUGH SHE'S NOT PUT A NUMBER ON

15     THAT FIGURE.

16             MR. BRUNS:  WELL, YOUR HONOR, WE HAVE -- OH, GO

17     AHEAD.

18             THE COURT:  WELL --

19             MR. BRUNS:  GO AHEAD.

20             THE COURT:  I GUESS YOU BETTER LAY OUT YOUR THEORY SO

21     THAT GOOGLE CAN HAVE A FAIR OPPORTUNITY TO ASK ME TO EXCLUDE

22     IT.

23             MR. BRUNS:  YEAH.  I WOULD JUST -- ON THAT NOTE, YOUR

24     HONOR, I THINK SPACE DATA HAS HELD FAST TO THIS NUMBER AND NOT

25     OFFERED ANY OTHER THEORY IN DR. MEYER'S REPORT OR THEREAFTER.
```

```
 1          AND I THINK MR. WERDEGAR, MY COLLEAGUE, WILL PROBABLY

 2     REFERENCE SOMETHING ALONG THESE LINES AS WELL IN RELATION TO A

 3     LATER MOTION IN LIMINE REGARDING ANY SORT OF THEORIES THAT HAVE

 4     BEEN KEPT OUT SO FAR.

 5          THE COURT:  SO CLEARLY WE HAVE A THEORY OF UNJUST

 6     ENRICHMENT AND DR. MEYER HAS PUT A NUMBER ON IT.

 7          I DON'T THINK THAT -- I DON'T THINK AN EXPERT IS NECESSARY

 8     FOR THAT NUMBER.  I MEAN, FRANKLY, YOU COULD HAVE HAD ANY

 9     COMPANY PERSON COME IN AND DETAIL WHAT YOU SPENT ON R&D DURING

10     THIS PERIOD OF TIME ON THESE TRADE SECRETS.  THAT'S FINE.

11          BUT SHE'S QUANTIFYING THE NUMBER AND I DON'T THINK YOU'LL

12     BE CONTRADICTING HER ON THOSE ELEMENTS.

13          SO TO THE EXTENT THERE ARE OTHER ELEMENTS OF THE UNJUST

14     ENRICHMENT, I PRESUME THERE WAS AN INTERROGATORY REQUEST AND

15     I -- AND AN ANSWER, WHICH I HAVEN'T SEEN, BUT LET'S HEAR THE

16     THEORY BECAUSE I NEED -- I'M NOT GOING TO DO THIS IN THE MIDDLE

17     OF TRIAL WHILE THE JURY IS SITTING HERE.

18          MR. ATKINSON:  YES, YOUR HONOR.

19          THE THEORY, AGAIN, IT DOESN'T ACTUALLY -- WE'RE NOT ASKING

20     FOR ADDITIONAL DAMAGES.  IT'S THAT THE UNJUST ENRICHMENT NUMBER

21     THAT DR. MEYER PUT FORWARD IS CONSERVATIVE BECAUSE THERE ARE

22     OTHER UNJUST BENEFITS GOOGLE DERIVES FROM USING THE TRADE

23     SECRET.

24          FOR EXAMPLE, YOUR HONOR, BY USING SPACE DATA'S TRADE

25     SECRET RATHER THAN DOING THE RESEARCH ITSELF, NOT ONLY DID
```

```
 1        GOOGLE NOT INCUR THE COSTS OF DOING THAT, BUT THEY GOT A HEAD
 2        START ADVANTAGE TO LOON.
 3             SO PRESUMABLY IF THEY HAD TO DO THE RESEARCH THEMSELVES,
 4        THEY WOULD BE FURTHER BACK THAN THEY ARE NOW IN TERMS OF THE
 5        COMMERCIAL DEPLOYMENT PLAN.  SO THAT WOULD BE THE --
 6             THE COURT:  WHY WOULDN'T THAT TAKE EXPERT TESTIMONY
 7        TO THE JURY TO EXPLAIN THE -- TO QUANTIFY IN SOME WAY THE
 8        VALUE?
 9             I MEAN, A HEAD START, IT DEPENDS ON WHAT THE COMPETITION
10        IS.  IT DEPENDS ON WHAT YOU'RE LOSING.  IF THERE'S NOBODY ELSE
11        IN THE MARKET, DELAYING BY SIX MONTHS OR A YEAR, AND HOW LONG
12        WOULD THE DELAY HAVE BEEN?  I DON'T KNOW THAT -- I DON'T KNOW
13        THAT THIS IS THE KIND OF THEORY THAT CAN BE PLAYED OUT THROUGH
14        PERCIPIENT WITNESSES.
15             MR. ATKINSON:  YOUR HONOR, I THINK WE BELIEVE THAT,
16        GIVEN SOME OF THE OTHER DOCUMENTS AT ISSUE, SUCH AS LOON'S
17        PROJECTIONS, GOOGLE'S INVESTMENT, THAT WE CAN SHOW THAT, AS
18        WELL AS GOOGLE'S OWN STATEMENTS ABOUT THE VALUE OF SPACE DATA
19        WHEN IT WAS DOING DUE DILIGENCE INTO SPACE DATA, THAT THERE WAS
20        AN UNDERSTANDING THAT IF THEY ACQUIRED THE SPACE DATA
21        TECHNOLOGY, THEY WOULD BE ABLE TO THEN QUICKLY PURSUE THIS
22        ENDEAVOR.
23             THE COURT:  SO ACQUIRING SPACE DATA IS A BIGGER
24        ACQUISITION THAN MERELY USURPING THESE TRADE SECRETS THAT ARE
25        AT ISSUE IN THE CASE.
```

```
1              MR. ATKINSON:  YES, YOUR HONOR.

2              THE COURT:  SO YOU CAN'T SAY -- YOU WOULD NEVER ARGUE

3     THAT THE TRADE SECRETS WERE WORTH WHATEVER GOOGLE WAS OFFERING,

4     WAS CONTEMPLATING WOULD BE A VALUATION OF THE COMPANY AT THE

5     TIME.

6              THIS IS -- I'M NOT SURE THAT YOU CAN GO DOWN THIS ROAD,

7     AND SO -- AND I'M -- IT MAKES ME VERY NERVOUS TO LET YOU GET IN

8     THE MIDDLE OF TRIAL BECAUSE THIS CASE WILL GO TO THE FEDERAL

9     CIRCUIT ON APPEAL, AND YOU KNOW THE FEDERAL CIRCUIT'S RULINGS

10    ON THESE KINDS OF DAMAGES ISSUES, AND I WOULD -- IF I GET

11    REVERSED ON IT, I GET REVERSED AND THAT'S JUST THE WAY IT IS.

12             BUT IF I CAN SEE THIS TRAIN COMING DOWN THE TRACK, I AM

13    JUST NOT GOING TO LET YOU THROW ALL THAT OUT TO THE JURY AND

14    HAVE IT JUST COME RIGHT BACK TO ME BECAUSE IT WAS

15    INAPPROPRIATE.

16             THIS SOUNDS LIKE EXPERT TESTIMONY TO ME, AND YOU'RE GOING

17    TO HAVE TO PERSUADE ME OTHERWISE BEFORE YOU INTRODUCE IT.

18             MR. ATKINSON:  YES, YOUR HONOR.

19             MAY I SUGGEST THAT WE MAYBE SUPPLEMENT OUR AUTHORITY IN

20    OUR UNJUST ENRICHMENT JURY INSTRUCTION SO YOUR HONOR HAS SOME

21    ADVANCED NOTICE AS TO WHAT OUR ARGUMENTS WOULD BE?

22             THE COURT:  WELL, YOU NEED TO FIRST TALK TO GOOGLE

23    ABOUT WHAT YOUR THEORY IS.  THEY NEED TO LOOK AT THEIR

24    INTERROGATORY RESPONSES.  THEY NEED TO DECIDE WHETHER THERE'S

25    AN ARGUMENT TO BE MADE THAT YOU NEVER DISCLOSED THIS.
```

```
 1           MR. BRUNS:  YES.

 2           THE COURT:  AND THEN THE ISSUE GETS TO BE WHETHER, IF

 3    IT WAS DISCLOSED, DO YOU HAVE THE PROPER WITNESSES?  I COULD --

 4    I CAN ONLY SUGGEST THAT I AM -- FROM WHAT I'M HEARING FROM YOU,

 5    THAT THE JURY COULD NOT BE ASKED TO DETERMINE HOW MUCH OF A

 6    HEAD START YOU GOT AND THE VALUE OF THE HEAD START WITHOUT

 7    EXPERT TESTIMONY.

 8           THAT IS AT A DIFFERENT LEVEL THAN ALL THESE OTHER

 9    ARGUMENTS THAT GOOGLE WOULD BE -- WOULD BE FREE TO MAKE AS

10    WELL.

11           BUT I DON'T THINK THIS THEORY HAS BEEN DISCLOSED.

12           MR. BRUNS:  IT HASN'T, YOUR HONOR, AND YOU --

13           THE COURT:  AND SO -- BUT, AGAIN, I DIDN'T READ YOUR

14    REQUESTS.  MAYBE YOU DIDN'T ASK.  MAYBE THEY -- MAYBE THEY TOLD

15    YOU.  I DON'T KNOW THAT.  AND I -- YOU'LL DO THE GROUNDWORK ON

16    THAT.

17           BUT, YOU KNOW, BECAUSE IT -- IT REALLY SUGGESTS THAT IF

18    THIS CASE, DRIPPING WET, IS WORTH ███████████, THAT MAYBE

19    YOU SHOULDN'T EVEN BE ASKING A JURY TO SPEND TWO WEEKS DECIDING

20    IT.  BUT THAT'S -- THAT'S UP TO YOU.

21           I LOVE TRIALS.  I'M GLAD TO HAVE A TRIAL AND LET THE JURY

22    DECIDE IT.

23           BUT IF WE'VE QUANTIFIED IT TO THOSE NUMBERS, THEN -- YOU

24    KNOW, WE ALWAYS HAVE TO THINK ABOUT WHERE WE'RE GOING.

25           ALL RIGHT.  MR. BRUNS, I'M SORRY, THAT WAS A BIG DETOUR.
```

```
 1              MR. BRUNS:  THAT'S FINE.  YOU ESSENTIALLY -- WE WERE
 2    DONE AND I --
 3              THE COURT:  OKAY.
 4              MR. BRUNS:  BUT I SHARE YOUR CONCERNS ABOUT
 5    SPACE DATA'S KIND OF OPEN-ENDED SUGGESTION ABOUT THE DAMAGES
 6    THEORY.
 7              THE COURT:  OKAY.  ALL RIGHT.  LET ME HEAR A
 8    RESPONSE.
 9              MR. ATKINSON:  YOUR HONOR, I'LL START WITH THE LAST
10    THING --
11              THE COURT:  OKAY.
12              MR. ATKINSON:  -- THE GOOGLE FINANCIAL, OVERALL
13    GOOGLE REVENUE FINANCIAL INFORMATION.
14         ON THAT, I BELIEVE WE ARE FINE WITH THE STIPULATION.
15              MR. HOSIE:  YES.
16              MR. ATKINSON:  WE ARE ALSO PREPARED TO GET INTO THE
17    JURY ISSUE TODAY IF YOUR HONOR WANTED TO HEAR ARGUMENT ON THAT,
18    OR NOT.  YES.
19         YOUR HONOR, IT'S VERY -- ALTHOUGH THERE'S NOT BEEN A NINTH
20    CIRCUIT DECISION, IT'S VERY CLEAR, MULTIPLE CIRCUIT COURTS HAVE
21    HELD THAT THERE IS A SEVENTH AMENDMENT RIGHT, WHEN YOU HAVE A
22    FEDERAL -- WHEN YOU'RE IN FEDERAL COURT WHEN IT COMES TO
23    PUNITIVE DAMAGES.
24         THE JONES COURT HELD, WHICH IS A TENTH CIRCUIT OPINION,
25    THAT WAS NOT TRADE SECRET SPECIFIC.
```

1    HOWEVER, THE FOURTH CIRCUIT HELD WITH REGARD TO MUTSA,

2    MARYLAND'S VERSION OF CUTSA --

3         THE COURT:  M-U-T-S-A.

4         MR. ATKINSON:  -- THAT THERE WAS A JURY RIGHT.

5    THE -- SO I THINK THAT ADDRESSES THE QUESTION PRETTY

6    SQUARELY FOR WHAT SHOULD HAPPEN WITH CUTSA, WHICH IS A STATE

7    STATUTE IN FEDERAL COURT.

8         THE COURT:  SO WHAT HAVE -- SO WE DISCUSSED THE FACT

9    THAT THERE MAY BE NO JURY VERDICTS UNDER THE FEDERAL LAW

10    BECAUSE IT'S NEW.

11    BUT THERE HAVE BEEN MULTIPLE STATE COURT CLAIMS TRIED IN

12    FEDERAL COURT ON TRADE SECRET MISAPPROPRIATION.  YOU SHOWED ME

13    BLADEROOM.  THAT WENT TO THE JUDGE TO MAKE THE ULTIMATE

14    MONETARY DETERMINATION, BUT IT'S NOT CLEAR THAT THE ISSUE WAS

15    RAISED.

16    THE -- THE JURY INSTRUCTIONS YOU RELY ON, OF COURSE, ARE

17    THE STATE JURY INSTRUCTIONS AND, OF COURSE, STATE LAW AND STATE

18    PROCEDURE DOES NOT HAVE A JURY TRIAL ON THE AMOUNT.

19    BUT HAS THERE BEEN RESEARCH ON FEDERAL COURT TRIALS ON

20    STATE LAW OTHER THAN THE MARYLAND CASE THAT YOU PRESENTED?

21         MR. ATKINSON:  YOUR HONOR, THE FOURTH CIRCUIT CASE IS

22    THE ONLY CASE ON THE ISSUE THAT WE HAVE FOUND WHERE WE CAN TELL

23    THE POSTURE OF THE CASE.

24         THE COURT:  OKAY.

25         MR. ATKINSON:  THE FIVE OR SO NORTHERN DISTRICT CASES

1     THAT GOOGLE CITES, THEY ALL APPEAR TO BE POST-VERDICT.  IT'S

2     NOT CLEAR IF THE ISSUE WAS EVER RAISED IN THAT CIRCUMSTANCE.

3         WE HAVE FOUND A WESTERN DISTRICT OF WASHINGTON CASE -- NOT

4     TRADE SECRET SPECIFIC, BUT AT LEAST FROM THIS DISTRICT --

5     DEALING WITH THE STATE STATUTE THAT WENT THE SAME WAY AS THE

6     TENTH AND FOURTH CIRCUIT.  AGAIN, THAT WASN'T TRADE SECRET

7     SPECIFIC.

8         IN THE CONTEXT OF DTSA, WHICH IS SOMEWHAT INFORMATIVE, THE

9     ELEVENTH CIRCUIT HAS INCLUDED AN EXEMPLARY DAMAGES INSTRUCTION

10    FOR THE JURY.

11            THE COURT:  YES.

12            MR. ATKINSON:  IN AN ANALOGOUS SITUATION UNDER THE

13    COPYRIGHT ACT AND CIVIL RIGHTS ACT WHEN IT COMES TO THE

14    LANGUAGE IN DTSA, THE SUPREME COURT HAS HELD IN DICTA THAT

15    THERE SHOULD BE A JURY RIGHT, AND THE TENTH CIRCUIT HAS SAID

16    THAT THAT IS THE SAME -- THIS IS THE SAME CASE AS THE TENTH

17    CIRCUIT USED TO REACH ITS OPINION.

18        SO IT SEEMS PRETTY CLEAR, DESPITE THE SURPRISING LACK OF

19    ON-POINT AUTHORITY, THAT THERE IS A FUNDAMENTAL JURY RIGHT.

20        I THINK THE ONLY SORT OF QUESTION GOOGLE HAS REALLY TRIED

21    TO RAISE IS WITH REGARD TO ITS SUPREME COURT CASE CITE, BUT IN

22    THAT CONTEXT IT WAS A DIFFERENT ASPECT OF THE SEVENTH

23    AMENDMENT.  THAT SUPREME COURT CASE WAS DEALING WITH THE

24    RE-EXAMINATION CLAUSE, IT'S NOT DEALING WITH THE JURY RIGHT,

25    AND THE TENTH CIRCUIT MAKES THAT PRETTY CLEAR IN THE JONES

```
 1     CASE, YOUR HONOR.

 2               THE COURT:  OKAY.  ALL RIGHT.

 3               MR. ATKINSON:  SORRY, THE WESTERN DISTRICT OF

 4     WASHINGTON CASE CITED IN OUR JURY INSTRUCTION ARGUMENT.

 5               THE COURT:  OH, GOOD.  OKAY.  THANK YOU FOR THAT.

 6          SO ON THE -- LET'S GO BACK THEN ON THE OTHER ASPECTS.

 7          SO THAT'S THE JURY ISSUE AND THE GOOGLE FINANCIALS, AND

 8     THEN WE'VE GOT THE LOON PROJECTED REVENUE.

 9               MR. ATKINSON:  YES, YOUR HONOR.

10               THE COURT:  I THINK THAT'S REALLY PROBLEMATIC.  I

11     DON'T KNOW WHAT THE JURY IS GOING TO BE LEARNING ABOUT THE LOON

12     VALUE.

13               MR. ATKINSON:  SO, YOUR HONOR, THERE -- I GUESS MAYBE

14     TO USE SOME OF THE EXAMPLES TO SHOW YOU THE RELEVANCY OF THESE

15     DOCUMENTS THAT GOOGLE ITSELF HAS USED.

16          SO FIRST, TO PUT IT IN CONTEXT, THE ISSUE OF THESE

17     DOCUMENTS ISN'T GOING TO ENCOMPASS JURY DAMAGES.  IT GOES TO

18     BOTH EXEMPLARY DAMAGES ON THE WILLFUL MALICIOUS SIDE, NOT JUST

19     THE AMOUNT OF PUNITIVE DAMAGES, BUT ALSO THE WILLFUL AND

20     MALICIOUS ELEMENT OF PUNITIVE DAMAGES.

21               THE COURT:  HOW IS THAT?

22               MR. ATKINSON:  SO, YOUR HONOR, UNDER -- IF YOU LOOK

23     AT THE CACI INSTRUCTION, FOR EXAMPLE, FOR PUNITIVE DAMAGES,

24     IT'S VERY CLEAR THAT YOU HAVE TO SHOW SORT OF A DIRECTOR OR

25     OFFICER, SOME SORT OF MANAGING AGENT'S INVOLVEMENT, AND THESE
```

1          ███████████████ --

2              I'M SORRY.  SOME OF THE STUFF WE HAVE BEEN DISCUSSING IN

3      THIS MOTION HAS BEEN DESIGNATED CONFIDENTIAL BY THE --

4                  THE COURT:  I DON'T NEED TO KNOW THE CONTENT OF IT.

5                  MR. ATKINSON:  OKAY.

6                  THE COURT:  BUT I'M TALKING ABOUT LOON'S PROJECTED

7      VALUATION AND GOOGLE'S INVESTMENT IN LOON.

8              AND I DON'T SEE THAT -- I DON'T SEE ANY RELEVANCE.  I

9      DON'T KNOW WHAT IT'S PROBATIVE OF.

10                 MR. ATKINSON:  YOUR HONOR, IT'S PROBATIVE OF BOTH --

11     THE FACT THAT GOOGLE DECIDED TO PUT IN A CERTAIN AMOUNT OF

12     MONEY INTO LOON IS PROBATIVE OF THE VALUE OF THE TECHNOLOGY,

13     WHICH IS PROBATIVE OF THE VALUE OF SPACE DATA'S --

14                 THE COURT:  NO, IT'S PROBATIVE OF THE VALUE OF LOON.

15     YOU KNOW, YOU -- YOU'VE BEEN CLEAR, SINCE THE INCEPTION OF THIS

16     CASE, THAT SPACE DATA DID NOT INVENT THE BALLOON TECHNOLOGY,

17     AND, OF COURSE, IT'LL BE PREPOSTEROUS TO SAY OTHERWISE.

18         SO THE FACT THAT LOON IS THERE AND A COMPETITOR AND THE

19     FACT THAT GOOGLE HAS PUT MONEY INTO IT SAYS NOTHING ABOUT

20     WHETHER IT'S INVESTED IN LOON OR LOON HAS VALUE BECAUSE OF YOUR

21     ASSERTION THAT THEY MISAPPROPRIATED TRADE SECRETS.

22         SO I -- YOU KNOW, WHEN THE JURY SITS HERE AND MOST OF THEM

23     WILL HONESTLY, CANDIDLY SAY THEY'VE NEVER HEARD OF SPACE DATA,

24     AND THEY WILL ALL SAY, YEAH, OF COURSE THEY'VE HEARD OF GOOGLE,

25     THERE WILL BE NO DOUBT WHO THE DAVID AND WHO THE GOLIATH IS IN

1    THIS CASE.  THAT'S NOT GOING TO BE LOST.  YOU DON'T NEED

2    NUMBERS TO MAKE THAT POINT.

3          AND SO -- BUT I JUST DON'T EVEN KNOW -- I MEAN,

4    PROJECTIONS, THEN I'M GOING TO HAVE TO HAVE THE JURY LISTEN TO

5    TESTIMONY ABOUT WHAT PROJECTIONS REALLY MEAN AND WHAT AN

6    INVESTMENT MEANS AND WHAT THE -- AND WHAT ALL OF LOON IS AND

7    HOW MUCH OF IT IS UNRELATED TO THESE, THESE TRADE SECRETS.

8          AND IT JUST -- THAT'S WHY I THINK THE PROBATIVE VALUE OF

9    THE LOON PROJECTED VALUE AND GOOGLE'S INVESTMENT IS ALMOST

10   MINIMAL, AND PARADING BIG NUMBERS IN FRONT OF A JURY IS

11   TYPICALLY CONSIDERED THE KIND OF THING THAT INFLAMES PASSIONS.

12         SO IT JUST SEEMS, UNDER 403, THAT THIS IS JUST NOT GOING

13   ANYWHERE.

14              MR. ATKINSON:  YOUR HONOR, I JUST -- I HEAR YOUR

15    HONOR.

16         AND THEN THERE'S A PROCEDURAL LINE DRAWN HERE.  MANY OF

17   THESE DOCUMENTS ARE TIED UP, IT'S NOT JUST THE NUMBERS.  IT'S

18   NOT AS SIMPLE AS EXCLUDING THE -- FOR EXAMPLE, ██████████

19   ████████, WHAT I WAS GETTING INTO WAS IT HELPS SHOW THAT THE

20   INVOLVEMENT OF THE FOUNDERS, WHICH AS YOUR HONOR KNOWS, HAS

21   BEEN A LARGE AND CONTINUOUS PORTION OF OUR CASE.

22              THE COURT:  YES.

23              MR. ATKINSON:  SO THERE'S A SUGGESTION THAT AS LONG

24   AS WE REDACT THOSE NUMBERS OR WE STAY AND WE DON'T REFERENCE

25   THEM, HOW WE WOULD PROCEDURALLY DO THAT IS THE QUESTION?

```
1          THE COURT:  SO I'M, OF COURSE, UNAWARE OF HOW THE

2     EVIDENCE COMES IN OR THE FACT THAT IT IS COLLATERAL TO

3     SOMETHING ELSE YOU'RE DOING.  I HAVE TO LEAVE THAT IN YOUR

4     HANDS.

5          AND I REALLY -- YOU KNOW, WITH THE EXHIBITS THAT YOU'RE

6     PLANNING TO USE, I THINK GOOGLE HAS TO TAKE THIS ORDER AND

7     DETERMINE WHETHER CERTAIN THINGS NEED TO BE REDACTED OR WHETHER

8     THEY'RE SO INSIGNIFICANT IN THE DOCUMENT THAT IT'S NOT

9     IMPORTANT.

10          BUT I'M NOT GOING TO LET YOU DIRECTLY ELICIT EVIDENCE OF

11     LOON'S VALUATION AND GOOGLE'S CONTRIBUTION INVESTMENT IN IT, OR

12     TO ARGUE THAT.

13          TO THE EXTENT IT'S IN DOCUMENTS EMBEDDED THAT YOU'RE

14     OFFERING FOR A DIFFERENT PURPOSE, YOU KNOW, YOU'RE JUST GOING

15     TO HAVE TO ALL LOOK AT THE DOCUMENTS.  OKAY?

16          IN TERMS OF THE SPACE DATA ENTERPRISE VALUE, I'M GOING TO

17     GRANT THAT IN TERMS OF YOUR DIRECT CASE-IN-CHIEF.

18          IF GOOGLE OPENS THE DOOR BY ARGUING OR ELICITING TESTIMONY

19     THAT SPACE DATA IS A FAILED COMPANY AND IS USING THIS

20     LITIGATION TO FUND ITS ONGOING ENTERPRISE, THEN I WOULD LET

21     YOU, IN REBUTTAL ONLY, OFFER TESTIMONY ABOUT VALUATION.

22          SHOULD THERE THEN BE AN ISSUE ABOUT VALUATION AS TO WHAT

23     DATE, WE'LL JUST HAVE TO WORK THAT OUT AT THE TIME.

24          MR. BRUNS:  YOUR HONOR, COULD I ASK A CLARIFYING

25     QUESTION ABOUT THAT?
```

```
1              THE COURT:  YEAH.

2              MR. BRUNS:  ALONG THE SAME LINES AS THE REDACTION

3     POINT EARLIER, THE VALUATIONS ARE KIND OF TIED UP IN A FEW

4     INSTANCES IN E-MAILS THAT HAVE POTENTIALLY OTHERWISE ADMISSIBLE

5     EVIDENCE.

6          IT WOULD BE OUR POSITION THAT, CONSISTENT WITH WHAT YOU'VE

7     JUST SAID, YOUR HONOR, THOSE FIGURES SHOULD BE REMOVED FROM

8     SUCH DOCUMENTS.

9              THE COURT:  IS SOUNDS LIKE THEY MAY NEED TO BE, BUT

10    YOU'RE GOING TO HAVE TO ACTUALLY LOOK AT THE ACTUAL DOCUMENTS.

11    SO THAT'S NOT SOMETHING THAT I CAN DO.

12             MR. BRUNS:  FAIR ENOUGH.

13             THE COURT:  ON THE -- ON THIS BIG ISSUE OF WHETHER

14    THERE'S A RIGHT TO JURY, AS I SAID, MY PRELIMINARY VIEW IS THAT

15    THERE IS A RIGHT TO JURY.

16         ON THIS IN LIMINE MOTION -- BUT I'M GLAD TO FURTHER

17    DISCUSS THIS WITH YOU ON AUGUST 2ND.

18         BUT ON THE GOOGLE FINANCIALS, WHICH WERE RELEVANT ONLY TO

19    EXEMPLARY DAMAGES, AND YOU PROPERLY POINT OUT THAT UNDER STATE

20    LAW, IT IS THE PLAINTIFF'S BURDEN TO ESTABLISH THE ABILITY TO

21    PAY THE EXEMPLARY DAMAGES, GOOGLE CAN STIPULATE, AND YOU'LL DO

22    THAT IN WRITING, THAT -- AND WE CAN, YOU KNOW, WE -- WE DON'T

23    EVEN NECESSARILY NEED TO READ THAT TO THE JURY, BUT WE CAN.

24         BUT, YOU KNOW, I DON'T THINK ANYONE WOULD BE SURPRISED

25    THAT GOOGLE IS GOOD FOR ████████, WHICH IS WHAT IT SOUNDS
```

```
 1    LIKE IT WOULD BE ALL WET.  MAYBE IT WOULD BE A LITTLE MORE

 2    BECAUSE YOU HAVE SOME OTHER THEORIES THAT MAY OR MAY NOT BE

 3    ABLE TO GO FORWARD.

 4         AND I THINK THAT THEN -- I THINK THAT COVERS ALL OF THE

 5    ISSUES.  DID I COVER EVERYTHING, MR. BRUNS?

 6              MR. BRUNS:  YOU DID, YOUR HONOR.

 7              MR. ATKINSON:  YOUR HONOR, I WANT TO FLAG ONE MORE

 8    ISSUE.

 9              THE COURT:  YES.

10              MR. ATKINSON:  I THINK YOUR HONOR PROBABLY CAN DECIDE

11    THIS, OR WE CAN WAIT UNTIL THE JURY INSTRUCTIONS, THERE'S AN

12    ARGUMENT ABOUT, FOR REASONABLE EFFORTS, WHETHER OR NOT -- WE

13    HAVE AN INSTRUCTION THAT BASICALLY SAYS, YOU KNOW, GOOGLE IS A

14    BIGGER COMPANY THAN SPACE DATA, GOOGLE DID THIS, THEREFORE,

15    IT'S REASONABLE FOR SPACE DATA TO TAKE THAT SAME EFFORT.  IS

16    THAT A HIGH ENOUGH LEVEL THAT IT WOULD NOT RUN AFOUL OF --

17              THE COURT:  I'M NOT SURE I'M UNDERSTANDING YOU.  I'M

18    SORRY.

19              MR. ATKINSON:  LET ME BACK UP SLIGHTLY.  SO ONE OF

20    THE FACTORS FOR A TRADE SECRET IS WHETHER OR NOT THE PLAINTIFF

21    TOOK REASONABLE EFFORTS TO PROTECT ITS TRADE SECRET.

22              THE COURT:  YES.

23              MR. ATKINSON:  AND ONE OF THE ARGUMENTS THAT WE

24    INTEND TO PURSUE IS THAT BECAUSE SPACE DATA TOOK THE SAME

25    PRECAUTION AS GOOGLE --
```

```
1              THE COURT:  THAT HAS NOTHING TO DO WITH IT.

2              MR. ATKINSON:  GOOGLE HAS MORE RESOURCES; THEREFORE,

3    SPACE DATA WAS REASONABLE.

4              THE COURT:  SO -- BUT IT -- BUT MAYBE GOOGLE'S

5    EFFORTS DON'T PASS MUSTER, EITHER.  YOU KNOW, IT'S NOT A

6    COMPARATIVE THING.  YOU'RE COMPARING AGAINST THE LAW AND THE

7    JURY'S DETERMINATION ABOUT WHETHER IT WAS REASONABLE UNDER THE

8    LEGAL STANDARD, NOT WHETHER YOU DID AS GOOD A JOB AS GOOGLE.

9    GOOGLE COULD HAVE FAILED MISERABLY TO PROTECT ITS OWN.

10             SO I'M SORRY, THAT'S JUST NOT -- THAT'S NOT AN ARGUMENT

11   YOU CAN MAKE AS ESTABLISHING YOUR OWN REASONABLE CONDUCT.

12             MR. ATKINSON:  YES, YOUR HONOR.  BUT THERE ARE CASE

13   LAWS THAT SAY YOU CAN LOOK TO THE INDUSTRY PRACTICE AND YOU CAN

14   LOOK TO WHAT THE DEFENDANT WAS DOING IN THE INDUSTRY.

15             THE COURT:  WHAT GOOGLE DID IS NOT -- YOU NEED AN

16   EXPERT TO TALK ABOUT THE INDUSTRY PRACTICE.  YOU CAN'T JUST

17   POINT TO GOOGLE.  I DON'T SEE THAT AS A -- I MEAN, WHAT GOOGLE

18   DOES MAY NOT BE THE INDUSTRY PRACTICE.  THEY COULD BE THE MOST

19   CARELESS COMPANY ON EARTH.  MAYBE BY THEIR OWN SIZE AND

20   ARROGANCE, YOU WOULD SAY THAT THEY DIDN'T PROTECT ANYTHING.

21             MR. ATKINSON:  YOUR HONOR, MAY I JUST ASK, MAY WE

22   DEFER THIS ISSUE UNTIL YOUR HONOR LOOKS AT THE JURY

23   INSTRUCTIONS AND HAS A CHANCE TO LOOK AT THE AUTHORITY?

24             THE COURT:  I'VE LOOKED AT THE JURY INSTRUCTIONS.  I

25   DON'T SEE THIS ISSUE.  I MEAN, IF YOU HAVE A PARTICULAR CASE ON
```

```
1    POINT THAT WE DID AS GOOD AS OUR OPPONENT, I DON'T SEE HOW THAT

2    QUALIFIES UNDER THE LAW.

3              MR. ATKINSON:  YOUR HONOR --

4              THE COURT:  I DON'T THINK YOU CAN EVEN -- I DON'T

5    THINK -- I DON'T KNOW WHO -- WHAT WITNESS WOULD SAY, "THIS IS

6    THE STANDARD IN THE INDUSTRY"?

7         NOW, A WITNESS WHO'S AN EXPERT ON INDUSTRY PRACTICE MIGHT

8    BE ABLE TO TAKE EVIDENCE OF SAYING, "AND GOOGLE, THIS WEALTHY

9    BIG COMPANY THAT IS TRYING TO DO EVERYTHING RIGHT -- EXCEPT

10   HERE, OF COURSE, BECAUSE OTHERWISE WE WOULDN'T BE HERE -- DOES

11   IT THIS WAY, SO IT'S UNDERSTOOD THAT THAT'S INDUSTRY PRACTICE."

12        BUT THAT COMES UNDER THE UMBRELLA OF AN EXPERT STILL, AS

13   OPPOSED TO YOU ELICITING WHAT THEY DO TO PROTECT THEIR THINGS

14   OR THE AMOUNT OF MONEY THEY --

15             MR. ATKINSON:  YOUR HONOR, MAYBE IF I USED THE

16   CONTEXT THAT I BELIEVE THE CASES TALK ABOUT AS AN EXAMPLE?  I

17   PROBABLY AM NOT BEING AS CLEAR AS I SHOULD BE.

18        IN BOTH EXAMPLES IS, FOR EXAMPLE, WHETHER AN ORAL

19   CONFIDENTIALITY AGREEMENT WAS A REASONABLE MEASURE, AND THERE

20   THE CASES HAVE SAID, "WELL, YOU KNOW, IF THE DEFENDANT IS ALSO

21   USING THAT, THAT IS EVIDENCE THAT THE JURY CAN CONSIDER AS TO

22   REASONABLE PRACTICE."

23        AND WE THINK THAT OUR SITUATION IS ANALOGOUS TO THAT, AND

24   THE AUTHORITY THAT WE CITE FOR THAT IS A SEVENTH CIRCUIT CASE.

25             THE COURT:  BUT THAT'S DIFFERENT EVIDENCE THAN ALL
```

1     THESE FINANCES.  THIS MOTION IS --

2             MR. ATKINSON:  YES.  SORRY, YOUR HONOR.  I WAS TRYING

3     TO -- I WAS TRYING TO FLAG THE ISSUE NOW BECAUSE I WAS WORRIED

4     THAT WHAT YOUR HONOR'S ORDER WOULD BE WOULD BE SO BROAD THAT IT

5     WOULD SWEEP THIS IN.

6             THE COURT:  I'M ONLY DEALING WITH WHAT MR. BRUNS HAS

7     PUT BEFORE ME, AND I WANT TO BE REALLY CLEAR, IS THAT I --

8     THAT'S ALL MY JOB IS, IS TO RULE ON THE MOTIONS BEFORE ME, AND

9     I DON'T TELL YOU THE TRIAL I'D LIKE TO SEE.  THAT'S REALLY NOT

10    IMPORTANT.

11         AND I DON'T LET THE JURY TELL YOU THE TRIAL THEY'D LIKE TO

12    SEE.  I DON'T LET THEM ASK QUESTIONS, EITHER.

13         SO YOU'RE IN CHARGE OF THIS TRIAL AND I WILL RULE ON THE

14    THINGS YOU GIVE ME.

15            MR. ATKINSON:  THANK YOU, YOUR HONOR.

16            THE COURT:  OKAY.  AND SO, YOU KNOW, YOU'RE FLAGGING

17    AN ISSUE, AND IF YOU HAVE CASE AUTHORITY THAT ALLOWS YOU TO DO

18    THIS COMPARATIVE JUST FACTUALLY, THEN THAT'S FINE.

19         BUT I'M NOT RULING ON THAT NOW.

20            MR. ATKINSON:  THANK YOU VERY MUCH, YOUR HONOR.

21            THE COURT:  THIS IS JUST ABOUT THE FINANCIALS.

22            MR. BRUNS:  OKAY.  THANK YOU, YOUR HONOR.

23            THE COURT:  I THINK THEN THAT TAKES CARE OF NUMBER 3.

24    DID I COVER EVERYTHING FOR YOU, MR. BRUNS?

25            MR. BRUNS:  YES, YOUR HONOR.

```
 1              THE COURT:  OKAY, GOOD.  THANK YOU.

 2         ALL RIGHT.  WE GOT A LITTLE BOGGED DOWN THERE, SO I'M

 3    GOING TO TRY TO PICK UP THE PACE.

 4         ALL RIGHT.  THIS IS DEFENDANTS' IN LIMINE MOTION NUMBER 4,

 5    TO EXCLUDE EVIDENCE REGARDING GOOGLE'S SURVEY PROJECT.

 6         I'LL JUST COMMENT, MS. PRANSKY, IF THERE ARE PORTIONS OF

 7    THIS DISCUSSION THAT ARE CONFIDENTIAL, I WILL, I THINK MAYBE

 8    JUST ON THIS MOTION, ORDER THIS PORTION OF THE TRANSCRIPT TO BE

 9    SEALED UNTIL THE PARTIES HAVE A CHANCE TO REVIEW IT AND OFFER

10    REDACTIONS.  IS THAT REASONABLE?

11              MS. PRANSKY:  I APPRECIATE THAT, YOUR HONOR.

12              THE COURT:  OKAY.  THE REST OF THE TRANSCRIPT, NO ONE

13     HAS ASKED FOR ANYTHING TO BE SEALED, SO --

14              MR. ATKINSON:  SORRY, YOUR HONOR, EXCUSE ME.  THE

15     NUMBER OF UNJUST ENRICHMENT, WOULD THE COURT BE WILLING TO SEAL

16     THAT PORTION OF THE TRANSCRIPT AS WELL?  IT GOES TO OUR

17     RESEARCH AND DEVELOPMENT COSTS AND WE BELIEVE THAT IS

18     CONFIDENTIAL.

19              THE COURT:  YES.  ON MOTION IN LIMINE NUMBER 3, I'LL

20     SEAL THE DISCUSSION ON NUMBER 3 AS WELL SO THAT THE PARTIES MAY

21     OFFER REDACTIONS.

22         IT -- THIS -- YOU WILL BE ASKING FOR TRANSCRIPTS.  THE

23    COURT REPORTER NEEDS STRAIGHTFORWARD INSTRUCTIONS, AND SO I

24    THINK IF WE DO IT WITH THE IN LIMINE MOTION IN ITS ENTIRETY,

25    YOU'LL HAVE REASONABLE TIME TO LOOK OVER THE TRANSCRIPT.
```

1     OKAY.  SO THIS IS NOW -- AND IS THERE -- MS. PRANSKY, IS

2     THERE ANYONE IN THE COURTROOM THAT WOULD NOT BE ENTITLED TO

3     THIS DISCUSSION?

4          MS. PRANSKY:  I DON'T BELIEVE SO, YOUR HONOR.

5          THE COURT:  ALL RIGHT.

6          MS. PRANSKY:  NO.

7          THE COURT:  AND FOR SPACE DATA, IS THERE ANYONE THAT

8     YOU THINK?

9          MS. GERMINARIO:  NO, I DON'T BELIEVE SO.

10          THE COURT:  ALL RIGHT.  THEN THE SEALING OF THE

11    TRANSCRIPT ALONE IS ADEQUATE TO PROTECT THE PARTIES'

12    CONFIDENTIALITY INTERESTS.

13     OKAY.  GO AHEAD, MS. PRANSKY.

14          MS. PRANSKY:  GOOD MORNING, YOUR HONOR.

15     LEAH PRANSKY ON BEHALF OF DEFENDANTS.

16     THE ISSUE RAISED BY GOOGLE'S MOTION IS VERY NARROW.  WE'RE

17    ASKING THE COURT TO EXCLUDE A HANDFUL OF DOCUMENTS AND RELATED

18    TESTIMONY ABOUT A SHORT-LIVED INTEREST BY GOOGLE IN █████████

19    ████████████████████████████████████████████████████████████

20    ████████████████████████████████████████████████████████████

21    ███████████████████████████████████████████████████████████████

22    ██████████████████████████████████████████████.

23     IN SPACE DATA'S OPPOSITION TO THIS MOTION, SPACE DATA DOES

24    NOT ARGUE THAT THIS PROJECT WAS RELATED TO ITS TRADE SECRETS.

25    IT DOESN'T ARGUE THAT THIS PROJECT WAS RELATED TO GOOGLE'S

1    INTERESTS THREE YEARS PRIOR IN POTENTIALLY ACQUIRING OR

2    PARTNERING WITH SPACE DATA.  THEY DON'T ARGUE THAT IT HAS

3    ANYTHING TO DO WITH GOOGLE'S ALLEGED USE OF THE TRADE SECRETS,

4    AND THEY DON'T ARGUE THAT IT HAS ANYTHING TO DO WITH GOOGLE'S

5    DEVELOPMENT OF WHAT BECAME PROJECT LOON.

6         WHAT SPACE DATA SAYS IS THAT BECAUSE GOOGLE, AT THE TIME

7    OF THE ███████████████████████████████████, THAT

8    SUGGESTS SOMETHING NEFARIOUS, AND BECAUSE GOOGLE ACTED

9    NEFARIOUSLY ON THAT OCCASION, IT MUST HAVE ACTED NEFARIOUSLY ON

10   OTHER OCCASIONS, AND THAT'S WHAT THEY'RE TRYING TO USE THIS

11   EVIDENCE TO PROVE.

12        AND THERE ARE THREE PROBLEMS WITH THIS, SETTING ASIDE

13   OBVIOUSLY THE IRRELEVANCE OF THIS SPECTRUM SURVEY PROJECT TO

14   ANY ISSUE IN THE CASE.

15        THE FIRST IS, OF COURSE, THE PREJUDICE TO GOOGLE.  AND AS

16   WE MENTIONED IN OUR PAPERS, THE REASON THAT GOOGLE WANTED TO

17   ████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████

20   ██████████████████████████████████████████.

21        THAT'S OBVIOUSLY HIGHLY PREJUDICIAL.  TO TALK ABOUT ████

22   ███████████████████████████████████████████, THAT'S

23   REALLY PRESENT IN EVERYONE'S MIND AT THIS MOMENT IN TIME.

24        AND THIS IS A COMPLETE SIDESHOW THAT WOULD ONLY INDUCE

25   PREJUDICE AGAINST GOOGLE AND WOULD WASTE THE JURY'S TIME AND

```
 1    CONFUSE THE ISSUES.  GOOGLE WOULD HAVE TO TALK ABOUT, WHAT WAS

 2    ████████████████████████?  WHAT WERE THEY TRYING TO

 3    ACCOMPLISH?  █████████████████████████████████████

 4    █████████████████████████████████████████████

 5    ██████████████████████████████████████████████████

 6    ████████████████████████?

 7         ALL OF THAT WOULD BE A WASTE OF TIME FOR SOMETHING THAT

 8    SPACE DATA CONCEDES IS NOT RELEVANT TO ANY OF THE ISSUES IN

 9    THIS CASE.

10         AND, OF COURSE, WHAT SPACE DATA SAYS IS THERE'S

11    CONFLICTING EVIDENCE ABOUT WHAT GOOGLE'S MOTIVES WERE, BUT

12    THERE'S NO CONFLICTING EVIDENCE.

13         THE COURT:  BUT THIS TRIAL ISN'T ABOUT WHAT YOUR

14    MOTIVES WERE.  I MEAN, I -- MAYBE MS. GERMINARIO WILL BE ABLE

15    TO PERSUADE ME OTHERWISE.  IT SOUNDS INTERESTING, BUT IT'S NOT

16    THIS CASE.

17         MS. PRANSKY:  AND OF COURSE YOUR HONOR IS RIGHT, AND

18    THAT'S THE OTHER PROBLEM WITH THIS IS THIS IS NOT ABOUT WHAT

19    GOOGLE'S MOTIVES WERE IN THIS ███████████████████, AND YOU

20    CAN'T INFER ANYTHING ABOUT WHAT GOOGLE'S MOTIVES WERE IN THAT

21    █████████████████████ AND THIS UNRELATED ISSUE WITH THE TRADE

22    SECRETS, WHICH THEY AGREE IS UNRELATED.

23         THIS IS JUST IMPROPER CHARACTER EVIDENCE.

24         AND I THINK ONE OF THE OTHER EXAMPLES THAT THEY USE IN

25    THEIR BRIEF REALLY HIGHLIGHTS THE PROBLEM.  THEY TALK ABOUT THE
```

```
 1     FACT THAT GOOGLE FILED ITS LOON PATENT APPLICATIONS WITH A

 2     REQUEST NOT TO PUBLISH.  THEY SAY, "OKAY, THIS IS ANOTHER

 3     INSTANCE OF GOOGLE TRYING TO CLOAK WHAT IT WAS DOING."

 4          AND OF COURSE YOU CAN'T INFER BAD MOTIVE FROM A PERFECTLY

 5     LAWFUL REQUEST TO FILE A PATENT APPLICATION WITH A REQUEST NOT

 6     TO FILE PUBLICLY, AND YOU CAN'T INFER ANY BAD MOTIVE BY ███

 7     ████████████████████████████████████████████████████████.

 8          SO THESE ARE ALL EFFORTS TO KIND OF SHOW GOOGLE'S ALLEGED

 9     BAD CHARACTER OR BAD MOTIVE, AND THAT'S OBVIOUSLY IMPROPER IN

10     THIS INSTANCE.

11          AND, OF COURSE ESPECIALLY BECAUSE OF WHAT THE CONCERN WAS

12     ON GOOGLE'S BEHALF IN THIS ████████████████, WHICH IS

13     ██████████████████████████, WHICH IS SOMETHING THAT

14     INCITES A LOT OF EMOTION AND PEOPLE HAVE A LOT OF PASSION ABOUT

15     AND HAS BECOME QUITE A TOPIC RIGHT NOW, IT'S PARTICULARLY

16     PREJUDICIAL.

17          AND FOR THAT REASON, GOOGLE IS ASKING YOU TO EXCLUDE THESE

18     HANDFUL OF DOCUMENTS AND RELATED TESTIMONY.

19               THE COURT:  LET ME HEAR FROM SPACE DATA.

20               MS. GERMINARIO:  SURE, YOUR HONOR.

21          FRANCESCA GERMINARIO AGAIN ON BEHALF OF THE PLAINTIFF.

22          I THINK ONE OF THE ISSUES REALLY HERE IS THAT WE'RE

23     TALKING ABOUT A PIECE OF EVIDENCE AND WHAT IT MEANS, AND

24     ULTIMATELY THIS IS IN THE PURVIEW OF THE JURY.  IT'S A QUESTION

25     OF CREDIBILITY.  IT'S A QUESTION OF -- AS THEY OUTLINED, IT IS
```

```
 1        A QUESTION OF MOTIVE.

 2             BUT AT NO TIME DID SPACE DATA EVER AGREE THAT THIS IS

 3        NOT --

 4                  THE COURT:  BUT I'M STILL AT THE RELEVANCE STAGE.

 5                  MS. GERMINARIO:  YES.

 6                  THE COURT:  I HAVE TO FIND THE EVIDENCE IS RELEVANT,

 7        AND IF RELEVANT, THAT IT'S PROBATIVE AND THAT THE PROBATIVE

 8        VALUE IS NOT OUTWEIGHED, IS -- OUTWEIGHS THE PREJUDICIAL

 9        EFFECT.  SO I HAVEN'T GOTTEN PAST THE 401 RELEVANCE STAGE.

10                  MS. GERMINARIO:  UNDERSTOOD, YOUR HONOR.

11             THE RELEVANCE OF THIS IS THAT SPACE DATA SUBMITS THAT IT

12        SHOWS AN AWARENESS AND A KNOWING, WILLFUL MISAPPROPRIATION OF

13        THE TRADE SECRETS THAT, ███████████████████████████

14        ███████████, AND AS WE SAID BEFORE, SORT OF THROUGH

15        SUBTERFUGE, THAT THEY KNEW THEY HAD DONE SOMETHING WRONG.

16             AND, YOUR HONOR, THAT DOES HAVE RELEVANCE TO THIS CASE.

17                  THE COURT:  I DON'T -- I HAVEN'T HEARD ANY

18        IDENTIFICATION OF EVIDENCE THAT WOULD RELATE TO GOOGLE KNOWING

19        IT DID SOMETHING WRONG.  YOU KNOW, I JUST -- THIS IS JUST NOT

20        RELEVANT.  I JUST -- I JUST CAN'T -- IT'S AN INTERESTING --

21        IT'S INTERESTING. ██████████████████████████████████

22        ████████████████████████████████████████████████?

23             BUT I JUST -- I MEAN, THE -- TO RELATE IT TO THE TRADE

24        SECRETS IS, IT'S SO REMOTE THAT I CAN'T EVEN FIND IT RELEVANT.

25                  AND TO THE EXTENT IT MIGHT HAVE SOME MODEST RELEVANCE, IT
```

1    IS SO INSUFFICIENTLY PROBATIVE OF ANY ISSUE IN THE CASE THAT

2    THE PREJUDICE TO GOOGLE FAR OUTWEIGHS ANY PROBATIVE VALUE.

3         SO I AM GOING TO -- I AM GOING TO GRANT THIS MOTION AND

4    NOT ALLOW THAT EVIDENCE.

5              MS. PRANSKY:  THANK YOU, YOUR HONOR.

6              MS. GERMINARIO:  THANK YOU.

7         **(END OF SEALED PROCEEDINGS.)**

8    ///

9    ///

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1      ///

2      ///

3          (IN OPEN COURT.)

4              THE COURT:  ALL RIGHT.  LET'S SEE HOW FAR WE GET ON

5      THIS ONE.  THIS IS IN LIMINE MOTION NUMBER 5.

6              MR. WERDEGAR:  GOOD MORNING, YOUR HONOR.

7              THE COURT:  GOOD MORNING.  AND THIS IS TO EXCLUDE NEW

8      EVIDENCE AND THEORIES.

9              MR. WERDEGAR:  THAT'S RIGHT, YOUR HONOR.

10         WE'RE TWO WEEKS FROM TRIAL.  WE'VE HAD YEARS OF DISCOVERY,

11     MOTION PRACTICE, EXPERT DISCOVERY AND THE LIKE, AND YET,

12     STANDING HERE TODAY, WE DON'T KNOW WHAT SPACE DATA IS GOING TO

13     CLAIM AT TRIAL GOOGLE ALLEGEDLY MISAPPROPRIATED OR HOW GOOGLE

14     ALLEGEDLY DID IT, AND WE MAY NOT, BASED ON TODAY'S EARLIER

15     DISCUSSION, WE MAY NOT EVEN KNOW WHAT GOOGLE -- WHAT SPACE DATA

16     IS GOING TO CLAIM WAS THE HARM THAT RESULTED FROM THAT CONDUCT,

17     THE DAMAGES IT'S SEEKING.

18         SPACE DATA'S MISAPPROPRIATION THEORY HAS BEEN A MOVING

19     TARGET THROUGHOUT THESE PROCEEDINGS, AND WHERE WE ARE NOW TODAY

20     IS AKIN TO GOING TO TRIAL ON A PATENT CASE WITHOUT INFRINGEMENT

21     CONTENTIONS, WITHOUT AN EXPERT REPORT ON LIABILITY, AND WITH,

22     WHICH IS ALL WE HAVE HERE, A BROAD BRUSH CONTENTION

23     INTERROGATORY RESPONSE THAT ACTUALLY DOESN'T MENTION ANY OF THE

24     SPECIFIC TRADE SECRETS IN TERMS OF HOW THEY WERE USED AND THE

25     RESULTING HARM.
```

1    AND SO ONE EXAMPLE, JUST LAST NIGHT WE HEARD FOR THE FIRST

2    TIME THAT SPACE DATA WANTS TO REWRITE ONE OF ITS TRADE SECRETS,

3    A COMBINATION TRADE SECRET THAT'S HAD SPECIFIC ELEMENTS LAID

4    OUT FOR 14 MONTHS SINCE THE FINAL RULING FROM JUDGE COUSINS ON

5    THE ISSUE.  THEY NOW WANT TO REMOVE SOME OF THOSE ELEMENTS TO

6    MAKE A DIFFERENT COMBINATION TRADE SECRET.

7    ANOTHER EXAMPLE AT SUMMARY JUDGMENT, YOUR HONOR, WAS THAT

8    WAS THE FIRST TIME THAT SPACE DATA HAD SURFACED ONE OF THEIR

9    PRIMARY THEORIES OF MISUSE, WHICH IS THAT RICHARD DEVAUL HAD

10   INCORPORATED WIND DATA AND FINANCIAL TRADE SECRET INFORMATION

11   INTO HIS INITIAL MODEL FOR THE LOON PROJECT.  THAT HAD NOT BEEN

12   IN THEIR CONTENTION INTERROGATORY RESPONSE, AND OBVIOUSLY WE

13   DIDN'T HAVE AN EXPERT REPORT ON LIABILITY THAT SURFACED THAT

14   THEORY.  IT SHOWED UP FOR THE FIRST TIME IN SUMMARY JUDGMENT

15   OPPOSITION.

16   THERE ARE NUMEROUS TRADE SECRETS, MORE THAN HALF BY OUR

17   COUNT, FOR WHICH SPACE DATA HAS NEVER IDENTIFIED ANY FACTUAL

18   THEORY FOR CLAIMING MISUSE.

19   AND I THINK A GOOD EXAMPLE OF THIS IS YOU LOOK AT THE

20   DISPUTED FACTS, SPACE DATA'S LIST OF DISPUTED FACTS IN THE

21   JOINT PRETRIAL STATEMENT IT SUBMITTED.  IF YOU GO THROUGH

22   THOSE, THERE'S FACTS THAT PERTAIN TO MAYBE SIX OF THE ASSERTED

23   TRADE SECRETS.  AS TO THE REMAINDER, THERE'S NOTHING.

24   AND SO, AGAIN, WE DON'T KNOW WHICH OF THOSE THEY ACTUALLY

25   ARE GOING TO PURSUE AT TRIAL AND WHAT THEY'RE ACTUALLY GOING TO

1    SAY ABOUT THEM AT THIS POINT.

2         AND THIS IS DESPITE US TRYING EVERYTHING WE COULD.  WE DID

3    SERVE CONTENTION INTERROGATORIES ASKING FOR THE DETAILS OF

4    THEIR THEORY.  THEY PROVIDED RESPONSES, BUT THEY WERE VERY HIGH

5    LEVEL FOR THE MOST PART, AND WE'VE DISCUSSED THAT RESPONSE IN

6    DETAIL IN OUR SUMMARY JUDGMENT OPPOSITION, OR SUMMARY JUDGMENT

7    MOTION, AND THEN THEIR OPPOSITION ADDED NEW THEORIES.

8         THE DISPUTED FACTS ACTUALLY PERTAIN TO THE SAME TRADE

9    SECRETS THAT WERE DISCUSSED IN THEIR SUMMARY JUDGMENT

10   OPPOSITION.  BUT, AGAIN, THAT'S SIX OUT OF MAYBE 19 THAT ARE

11   STILL ON THEIR LIST.

12        AND SO WHAT WE'RE ASKING, YOUR HONOR, IS THAT WE NOT BE

13   GOING INTO TRIAL TO BE AMBUSHED BY NEW THEORIES, NEW FACTS AND

14   THE LIKE.  THAT'S WHAT THE FEDERAL RULES ARE DESIGNED TO

15   PREVENT.

16        AND WE SHOULDN'T BE HAVING TO DEAL ON THE FLY WITH NEW

17   EVIDENCE AND NEW THEORIES OF MISUSE THAT WE HAVEN'T SEEN.

18        SO WE WOULD ASK THAT THE COURT GRANT OUR MOTION AND LIMIT

19   SPACE DATA TO THE THEORIES -- AND, YOU KNOW, WE'RE WILLING TO

20   LET THEM GO BEYOND THE LAST CONTENTION INTERROGATORY TO INCLUDE

21   THE NEW STUFF IN THEIR SUMMARY JUDGMENT OPPOSITION AND THE

22   DISPUTED FACTS IN THE PRETRIAL STATEMENT.  WE DO HAVE SOME

23   NOTICE OF ALL OF THAT.

24        BUT THAT SHOULD BE THE BOUNDARIES IN OUR OPINION.

25             THE COURT:  SO IT'S INTERESTING BECAUSE THE

1    OPPOSITION SAYS THIS WHOLE MOTION IS ABOUT ONE DOCUMENT, THE

2    DEVAUL SPREADSHEET.

3              MR. WERDEGAR:  SO THEIR ARGUMENT IS --

4              THE COURT:  AND YOU'RE WILLING TO ALLOW THAT TO COME

5    IN?

6              MR. WERDEGAR:  AT THIS POINT WE ARE, YOUR HONOR.

7              THE COURT:  OKAY.

8              MR. WERDEGAR:  BECAUSE -- BUT THAT WAS AN EXAMPLE OF

9    WHAT WE'VE BEEN DEALING WITH IN TERMS OF A MOVING TARGET.  THAT

10   SURFACED FOR THE FIRST TIME IN THE SUMMARY JUDGMENT OPPOSITION.

11   WE WERE ABLE TO DEAL WITH IT A BIT ON REPLY.

12        BUT WHAT WE DON'T WANT IS NEW INSTANCES OF THAT POPPING UP

13   IN TRIAL WHICH WE HAVEN'T HEARD ABOUT BEFORE DESPITE ASKING

14   EVERY WHICH WAY WE COULD.

15        AND THAT WAS ONE EXAMPLE.

16        ANOTHER EXAMPLE IS THIS NEW TRADE SECRET ITERATION THAT

17   THEY'VE POSITED THAT THEY WANTED TO PURSUE LAST NIGHT.

18        WE NOW HAVE SUGGESTIONS THAT THE DAMAGES THEORY MAY BE

19   SOMETHING DIFFERENT THAN WHAT'S LAID OUT IN THE EXPERT REPORT,

20   AND THAT'S OUR CONCERN, YOUR HONOR.

21              THE COURT:  ALL RIGHT.  SO THIS PUTS ME IN A

22   DIFFICULT SPOT, MR. WERDEGAR, BECAUSE, AT A HIGH LEVEL, YOU'RE

23   EXACTLY RIGHT.  BUT I DON'T KNOW WHAT TO EXCLUDE.

24        SO WHEN SPACE DATA CAME BACK AND SAID, "THIS MOTION IS

25   ABOUT THE DEVAUL SPREADSHEET," THAT WAS ACTUALLY PRETTY EASY.

```
 1    I WOULD HAVE RULED THE WAY YOU'RE NOW WILLING TO ALLOW.  I

 2    WOULD HAVE DENIED THE MOTION ON THE DEVAUL SPREADSHEET.  YOU'RE

 3    AGREEING THAT YOU DON'T OBJECT TO THAT, SO THAT'S SIMPLE.

 4         BUT I DON'T -- YOU KNOW, I DON'T KNOW WHAT ELSE YOU MIGHT

 5    CONSIDER IMPROPERLY DISCLOSED.

 6              MR. WERDEGAR:  I HAVE A PROPOSAL, YOUR HONOR.

 7              THE COURT:  OKAY.

 8              MR. WERDEGAR:  SO THIS COMES UP A LOT WHEN PEOPLE ARE

 9    CONCERNED THAT PARTIES WILL STRAY BEYOND THE BOUNDS OF AN

10    EXPERT REPORT.

11              THE COURT:  SURE.

12              MR. WERDEGAR:  NOW, WE DON'T HAVE AN EXPERT REPORT ON

13    LIABILITY IN THIS CASE, SO IT'S A SLIGHTLY DIFFERENT

14    CIRCUMSTANCE, BUT I THINK THE SAME PRINCIPLES COULD APPLY.

15         WE DO HAVE THREE PLACES WHERE SPACE DATA HAS ARTICULATED

16    ITS THEORIES OF MISAPPROPRIATION AND BREACH:  THEIR CONTENTION

17    INTERROGATORY RESPONSE, WHICH THEY LAST UPDATED AT THE VERY

18    CONCLUSION OF FACT DISCOVERY, ALTHOUGH STILL AT THAT TIME

19    SAYING, "BY THE WAY, YOU'RE GOING TO SEE EXPERT REPORTS," WE

20    HAVE THAT; WE HAVE THEIR SUMMARY JUDGMENT OPPOSITION WHICH LAYS

21    OUT THEORIES AND EVIDENCE; AND NOW WE HAVE THE JOINT PRETRIAL

22    STATEMENT WHERE THEY'VE LISTED WHAT THEY CLAIM TO BE THE

23    DISPUTED FACTS THAT THEY INTEND TO TRY AND PROVE.

24         I THINK THAT'S THE UNIVERSE THAT WE, GOOGLE, CAN HAVE IN

25    MIND, YOU CAN HAVE COPIES OF WITH YOU, AND IF WE BELIEVE A
```

```
 1    WITNESS IS STRAYING BEYOND, OR THEY'RE STRAYING BEYOND THE

 2    BOUNDS OF WHAT THEY'VE DISCLOSED BEFORE, WE CAN RAISE AN

 3    OBJECTION AND IT SHOULD BE INCUMBENT UPON THEM TO POINT OUT

 4    WHERE THIS WAS DISCLOSED IN DISCOVERY OR IN THE PRETRIAL

 5    PROCEEDINGS.

 6         AND I THINK THAT'S THE PRACTICAL WAY TO MANAGE IT.  BUT WE

 7    DO NEED TO HAVE A PROCESS WHEREBY WE CAN KEEP THIS CASE WITHIN

 8    THE BOUNDS THAT WE UNDERSTAND IT TO BE AND NOT BE SURPRISED AND

 9    HAVE YOU NOT BE SURPRISED.

10         THE COURT:  OKAY.  THANK YOU.

11         SO HAVING BEEN SUCCESSFUL ON THAT, YOUR OPPOSITION ON THE

12    DEVAUL SPREADSHEET, WE CAN MOVE BEYOND THAT.

13         MR. ATKINSON:  YES, YOUR HONOR.

14         THE COURT:  DO YOU HAVE ANY DISAGREEMENT WITH

15    MR. WERDEGAR'S SUGGESTION THAT THIS WOULD BE THE BOUNDS OF THE

16    THEORIES THAT YOU CAN PRESENT AT TRIAL?

17         MR. ATKINSON:  YES, YOUR HONOR.  WE DISAGREE IN THAT

18    WE BELIEVE WE DISCLOSED THESE THEORIES AND THIS EVIDENCE

19    ELSEWHERE.  THERE ARE OTHER INTERROGATORIES WHICH WE THINK

20    DISCLOSE RELEVANT INFORMATION, EVIDENCE, AND THEORIES ABOUT OUR

21    CASE.

22         WE THINK THE COMPLAINT HAS PUT THEM ON NOTICE ABOUT SOME

23    OF THE THINGS THAT THEY'VE COMPLAINED ABOUT AS WELL.

24         AND WE THINK THAT THIS IS AN ISSUE WHERE GOOGLE IS MAKING

25    ITS FAILURE TO BRING MOTIONS TO COMPEL AND MOTIONS TO EXCLUDE,
```

```
 1    OR SUMMARY JUDGMENTS IN THE CASE OF THE TRADE SECRETS, YOUR
 2    HONOR.
 3         SO, FOR EXAMPLE, FROM WHAT COUNSEL IS SAYING, IT SOUNDS TO
 4    ME THAT THEIR COMPLAINT IS THE SAME COMPLAINT THEY MADE AT THE
 5    SUMMARY JUDGMENT HEARING WHERE THEY DISPUTE WHETHER OR NOT THE
 6    EVIDENCE THAT WE HAVE IDENTIFIED OR PUT IN IS ENOUGH EVIDENCE
 7    THAT'S ASSERTING TRADE SECRETS, AND THERE -- SORRY, YOUR HONOR.
 8         THE COURT:  SO THEN WHAT I'D BE LOOKING AT IS FOR AN
 9    AGREED UPON UNIVERSE OF DISCLOSURES THAT WE CAN TEST THE
10    EVIDENCE AGAINST AT TRIAL.
11         AND, YOU KNOW, YOU'RE ALL FAMILIAR -- I THINK MOST JUDGES
12    HANDLE IT THE WAY I DO -- WHEN THERE'S AN OBJECTION THAT AN
13    EXPERT IS GOING BEYOND THE SCOPE, YOU HAVE TO BE, ON THE SPOT,
14    READY TO SAY "THIS IS WHERE IT IS."  AND THAT WOULD BE THE
15    BURDEN ON YOU TO ANNOTATE YOUR QUESTIONS TO WHERE YOU'VE MADE
16    THE DISCLOSURE.
17         SO, MR. WERDEGAR, THIS IS A MEET AND CONFER ISSUE TO
18    DEVELOP THE UNIVERSE.
19         MR. WERDEGAR:  I AGREE, YOUR HONOR.
20         THE COURT:  OKAY.
21         MR. WERDEGAR:  WE'RE HAPPY TO ENGAGE IN THAT.
22         I THINK THE ONLY -- AND IT WAS MY PROPOSAL -- BUT I THINK
23    THE ONLY PROBLEM IS GOING TO BE, YOU KNOW, THERE'S -- THEIR
24    INTERROGATORY RESPONSES AND THE LIKE HAVE SOME GENERAL
25    STATEMENTS, "GOOGLE MISUSED THE INFORMATION," "GOOGLE USED WIND
```

```
 1      DATA."  SO THEY'LL BE ABLE TO POINT AT A VERY HIGH LEVEL TO

 2      THAT HEADLINE.

 3              THE COURT:  SO IF THAT'S WHAT THEY POINT TO, THEN I

 4      CAN RULE ON IT.

 5              MR. WERDEGAR:  OKAY.  THAT'S FINE.

 6              THE COURT:  YOU KNOW, YOU LIVE AND DIE ON YOUR OWN

 7      DISCLOSURES.

 8          SO I WILL -- I WILL ACCEPT THE -- GOOGLE'S AGREEMENT THAT

 9      THE DEVAUL SPREADSHEET MAY BE USED AT TRIAL, AND I WILL DEFER

10      THE REMAINDER OF THIS MOTION.  THE PARTIES ARE TO MEET AND

11      CONFER TO DEVELOP THE, I GUESS I'LL LET YOU CALL IT THE

12      UNIVERSE OF DISCLOSURES THAT WILL SUPPORT SPACE DATA'S THEORIES

13      OF LIABILITY AND DAMAGES.

14          AND AT TRIAL, TO -- WHEN THERE IS AN OBJECTION ON THIS

15      GROUND OF LACK OF DISCLOSURE, THE EXAMINING ATTORNEY WILL BE

16      REQUIRED TO INSTANTLY DIRECT THE COURT TO THE PLACE IN THE

17      DISCOVERY WHERE THE DISCLOSURE WAS MADE.

18          AND AT TRIAL, YOU WILL -- AND I ONLY NEED IT FOR TRIAL.

19      YOU WILL GIVE ME A BINDER THAT HAS ALL OF THOSE DOCUMENTS IN

20      IT, AND THEN I CAN QUICKLY FIND IT AND, WHILE THE JURY IS

21      WAITING, WE CAN DETERMINE WHETHER YOU'VE GOT IT.

22          AND IT WILL -- IT WILL BE A VERY GOOD DISCIPLINE WHEN

23      YOU'RE PREPARING YOUR DIRECT EXAMINATION.  IT'S A HARD ONE.

24          THIS IS -- I MEAN, YOU'VE DONE IT ALWAYS WITH YOUR EXPERT

25      WITNESSES THAT YOU ANNOTATE.  THIS IS A BIG JOB, BUT IT'S FAIR.
```

1    OKAY?

2                MR. WERDEGAR:  THANK YOU, YOUR HONOR.

3                MR. ATKINSON:  THANK YOU, YOUR HONOR.

4                THE COURT:  GOOD.  ALL RIGHT.

5          THAT CONCLUDES THE IN LIMINE MOTIONS.

6          WE HAVE THE MOTION TO QUASH THE TRIAL NOTICES -- MAYBE

7     THEY WERE SUBPOENAS, I DON'T KNOW WHICH -- TO LARRY PAGE AND

8     SERGEY BRIN.

9          I DON'T KNOW WHO'S ARGUING THAT.

10               MR. VAN NEST:  MR. KAMBER WILL BE ARGUING THAT.

11               THE COURT:  OKAY.  MR. KAMBER, GOOD MORNING.

12               MR. KAMBER:  GOOD MORNING, YOUR HONOR.

13         MATTHIAS KAMBER ON BEHALF OF DEFENDANTS.

14         YOUR HONOR, THERE ARE THREE KEY REASONS WHY THE TRIAL

15    SUBPOENAS, THE NOTICES AS TO MR. PAGE AND MR. BRIN, SHOULD BE

16    QUASHED:  THEY HAD LIMITED INVOLVEMENT REALLY WITH SPACE DATA

17    AND PROJECT LOON BOTH; THEY HAVE NOTHING UNIQUE TO CONTRIBUTE

18    AS COMPARED TO THE OTHER WITNESSES THAT ARE ON THE PARTIES'

19    WITNESS LISTS; AND THE BURDEN OF HAVING THEM COME TO TRIAL IS,

20    HERE, REALLY QUITE UNDUE WHEN YOU WEIGH THE DIFFERENT FACTORS.

21               SO LET ME TALK ABOUT THOSE THREE JUST BRIEFLY.

22               THE COURT:  UM-HUM.

23               MR. KAMBER:  IN TERMS OF THE LIMITED INVOLVEMENT THAT

24     MR. PAGE AND MR. BRIN HAD WITH SPACE DATA, THEY CLEARLY WEREN'T

25     THE DAY-TO-DAY PEOPLE COMMUNICATING WITH SPACE DATA.  THEY DID

```
1     ATTEND THE VISIT.  THEY ATTENDED A MEETING OR TWO.

2         BUT THEY WEREN'T THE ONLY PEOPLE IN THE ROOM FOR THAT.

3     THE ACCESS TEAM, WHO'S RUN BY A WOMAN BY THE NAME OF

4     MINNIE INGERSOLL, AND LARRY ALDER, THEY WERE IN CHARGE OF THAT

5     GROUP AND MINNIE INGERSOLL WAS THE INTERFACE WITH SPACE DATA.

6     THEY WENT ON THE VISITS AS WELL.  THEY WERE PART OF ALL OF THE

7     MEETINGS.

8         MIKE PEARSON -- AND BY THE WAY, THEY'LL BOTH BE TESTIFYING

9     AT TRIAL.

10        MIKE PEARSON WAS THE CORPORATE DEVELOPMENT PERSON BROUGHT

11    IN TO EVALUATE THE ACQUISITION OR PARTNERSHIP.  HE'LL ALSO BE

12    TESTIFYING.

13        AND DAN CONRAD EVALUATED SOME OF THE SPECTRUM HOLDINGS.

14        ALL FOUR OF THEM ARE ON THE LIST TO TESTIFY.  THEY WERE AT

15    THE SAME MEETINGS, THE SAME VISITS.

16        AS TO LOON, MR. PAGE AND MR. BRIN ARE THE CEO AND

17    PRESIDENT OF ALPHABET.  LOON IS PART OF ALPHABET.  IT WAS

18    DEVELOPED WITHIN GOOGLE AND X.

19        BUT THESE ARE NOT PROJECTS THAT THEY MANAGED.  THEY WERE

20    REPORTED TO, SOMETIMES ON A QUARTERLY BASIS, ALONG WITH

21    EVERYTHING ELSE IN THE COMPANY.  BUT THEY DON'T HAVE ANY

22    PARTICULAR KNOWLEDGE ABOUT LOON.

23        ASTRO TELLER, WHO RAN X, AND RICH DEVAUL, WHO SORT OF

24    FOUNDED PROJECT LOON, THEY'LL BE THE PEOPLE WHO TALK ABOUT

25    THOSE THINGS.
```

1        SO THAT BRINGS ME TO MY SECOND POINT.  THEY DON'T HAVE

2    UNIQUE KNOWLEDGE.  THERE'S A LOT OF DISCUSSION ABOUT THE FACT

3    THAT THEY HAVE FIRST-HAND KNOWLEDGE.

4        BUT THE POINT WITH THESE APEX DOCTRINE CONSIDERATIONS IS

5    WHETHER OR NOT THEY HAVE UNIQUE FIRST-HAND KNOWLEDGE, AND HERE

6    IT'S SIMPLY NOT THE CASE.  THE OTHER WITNESSES WHO WILL BE

7    TESTIFYING HAVE MUCH MORE RELEVANT TESTIMONY.

8        AND ONE THING THAT CAME UP I THINK IN PARTICULAR THAT I

9    WANTED TO ADDRESS FROM THEIR OPPOSITION BRIEF WAS THE NUMBER OF

10   DOCUMENTS FOR WHICH MR. PAGE AND MR. BRIN ARE LISTED, 147 ON

11   SPACE DATA'S LIST.

12       BUT THERE ARE ONLY, AT MOST, A DOZEN -- I THINK I COUNTED

13   IT UP -- A DOZEN WHERE PAGE AND BRIN ARE THE ONLY SPONSORS OF

14   THE DOCUMENTS:  ONE DOCUMENT FOR MR. BRIN; I THINK FOUR WHERE

15   BOTH OF THEM ARE ON IT; AND ABOUT A HALF DOZEN FOR MR. PAGE.

16       ONLY ABOUT THREE OF THOSE ARE ONES THAT THEY POINT TO IN

17   THEIR MOTIONS, AND I'M NOT SURE HOW RELEVANT THE OTHERS ARE

18   HAVING LOOKED AT THEM.

19       THERE ARE 98 DOCUMENTS THAT THEY POINT TO ON OUR EXHIBIT

20   LIST.  THREE OF THOSE HAVE EITHER PAGE OR BRIN -- OUT OF ABOUT

21   A THOUSAND, BY THE WAY -- AND TWO OF THEM WERE USED AT

22   MR. PAGE'S DEPOSITION.

23       WHICH SORT OF TIES INTO MY THIRD POINT ABOUT UNDUE BURDEN.

24   THAT'S A QUESTION FOR THE COURT.  YOU GET TO WEIGH ALL OF THESE

25   CONSIDERATIONS AND ALL OF THESE DIFFERENT FACTORS.  DO THEY

1    HAVE UNIQUE FIRST-HAND KNOWLEDGE VERSUS KNOWLEDGE THAT'S, AT

2    BEST, CUMULATIVE AND CERTAINLY NOT SUPERIOR TO THE OTHER PEOPLE

3    INVOLVED HERE?

4         THE RELATIVE BURDENS ON MR. PAGE AND MR. BRIN, WHO ARE

5    RESPECTIVELY HIGH UP, APEX EXECUTIVES CLEARLY, I DON'T THINK

6    THAT'S SOMETHING WHERE WE NEED A DECLARATION.  I THINK IT GOES

7    WITHOUT SAYING THAT THEY PROBABLY HAVE A DEMANDING JOB.

8         THE EXISTENCE OF A LESS BURDENSOME ALTERNATIVE.  THEIR

9    DEPOSITIONS WERE TAKEN HERE.  THEY WERE RELATIVELY SHORT

10   BECAUSE THEY DON'T HAVE A LOT OF UNIQUE FIRST-HAND KNOWLEDGE.

11        AND WE HAVE NO OBJECTION TO THEM USING THAT DEPOSITION

12   TESTIMONY AT TRIAL, OF COURSE.

13        AND, FINALLY, THERE'S A RECOGNITION THAT THIS SUBPOENA

14   POWER CAN SOMETIMES BE ABUSED FOR HARASSMENT PURPOSES AND TO

15   EXTRACT VALUE THAT MIGHT NOT OTHERWISE BE TIED UP IN THE CASE,

16   AND THAT IS SOMETHING THAT WE FEAR MIGHT BE HAPPENING IN THIS

17   PARTICULAR SITUATION.

18        THE COURT:  MR. HOSIE?

19        MR. HOSIE:  YOUR HONOR, MR. BRIN AND MR. PAGE WERE

20   CENTRALLY INVOLVED, PARTICULARLY MR. PAGE.  HE HAS ABSOLUTELY

21   UNIQUE KNOWLEDGE, AND LET ME GIVE THE COURT ONE EXAMPLE.

22        EVERY WITNESS SAID, "LARRY PAGE SPIKED THE SPACE DATA

23   ACQUISITION BECAUSE HE WAS ANNOYED BY THE WALL STREET JOURNAL

24   ARTICLE."

25        THAT IS NOT WHAT THE RECORD SUGGESTS AND NOT WHAT MR. PAGE

1 TESTIFIED.

2   THE JURY IS ENTITLED TO SEE HIM, TO WEIGH HIS CREDIBILITY.

3 THAT'S WHAT JURIES DO.

4   IN TERMS OF BURDEN, THEY WORK 12 MINUTES AWAY, AND WE

5 OFFERED TO LIMIT HIS CROSS TO THREE-QUARTERS OF AN HOUR.  WE

6 ALSO PICKED A DAY THAT WAS CONVENIENT FOR THE WITNESSES AT

7 COUNSEL'S REQUEST.

8   FINALLY, YOUR HONOR, IT'S TWO WEEKS UNTIL TRIAL.  THEY'VE

9 KNOWN ABOUT THIS FOR A YEAR.  WE STARTED EXCHANGING WITNESS

10 LISTS IN APRIL.  AS WE SAY, NOT SO RHETORICALLY, WHY NOW?

11   IT'S DEEPLY PREJUDICIAL TO US BECAUSE WE'VE PLANNED OUR

12 CASE.

13   I HAVE NOTHING FURTHER, YOUR HONOR.

14   THE COURT:  SO, MR. HOSIE, I THINK YOUR ARGUMENT IS

15 WELL DEVELOPED AS TO MR. PAGE.

16   I AM NOT SO SURE IT'S WELL DEVELOPED AS TO MR. BRIN.

17   AND IF MR. PAGE WERE HERE, I'M NOT SURE WHAT MR. BRIN

18 COULD ADD.  SO COULD YOU COMMENT ON THAT?

19   MR. HOSIE:  I THINK A FAIR -- I THINK -- YOU'RE

20 RIGHT.

21   THE COURT:  OKAY.

22   MR. HOSIE:  WE CARE MORE ABOUT PAGE.  YOU'RE RIGHT,

23 YOUR HONOR.  THAT WOULD BE A FAIR COMPROMISE FROM OUR

24 PERSPECTIVE.

25   THE COURT:  MR. KAMBER, I -- YOU'VE CERTAINLY

```
1     OUTLINED THE CRITERIA THAT I NEED TO CONSIDER AND, YOU KNOW, I
2     DO -- FIRST OF ALL, I START FROM THE PRESUMPTION THAT THE
3     WITNESSES WILL TESTIFY.
4          MR. KAMBER:  UNDERSTOOD.
5          THE COURT:  I AM LOOKING FOR AN EXTRAORDINARY
6     CIRCUMSTANCE, WHICH I'M ACTUALLY NOT FINDING IN THIS CASE.
7          I'M SURE IT'S DISRUPTIVE FOR MR. PAGE TO HAVE TO SPEND THE
8     TIME PREPARING AND THE TIME IN THE COURTROOM.
9          BUT HE WAS PERSONALLY INVOLVED FROM THE INCEPTION, AND
10    MR. HOSIE HAS IDENTIFIED A CIRCUMSTANCE WHERE THERE IS A
11    DISPUTE IN THE EVIDENCE AMONG THE GOOGLE WITNESSES AS TO THE
12    REASON THE SPACE DATA PURCHASE FAILED THAT MR. HOSIE'S ENTITLED
13    TO PRESENT.
14         SO I ACTUALLY THINK MR. PAGE HAS UNIQUE INFORMATION.  I
15    THINK THAT -- I MEAN, FRANKLY, THE FACT THAT HE GAVE A
16    DEPOSITION ACTUALLY, IN MY VIEW, LEANS TOWARD BRINGING HIM TO
17    TRIAL AS WELL.
18         I THINK THAT THE -- YOU KNOW, THE FACT THAT YOU'VE KNOWN
19    ABOUT THE TRIAL NOTICES AND SUBPOENAS FOR SO LONG ALSO
20    MITIGATES IN FAVOR OF THE TESTIMONY BECAUSE OF THE PREJUDICE TO
21    THE PLAINTIFF'S CASE.
22         BUT REALLY THE -- I AM GOING TO REQUIRE MR. PAGE TO
23    TESTIFY.  I DO THINK HE WAS INTIMATELY INVOLVED.  I THOUGHT
24    THAT THE -- IN THE CASES CITED, GENERALLY THE CEO HAS HAD NO
25    CONTACT WHATSOEVER WITH THE SUBJECT MATTER OF THE CASE, WHETHER
```

```
 1        IT BE A PRODUCT LIABILITY CASE OR SOME OTHER CIRCUMSTANCE, AND

 2   HERE MR. PAGE WAS REALLY ON THE GROUND.

 3        SO I AM GOING TO REQUIRE HIM.

 4        AS TO MR. BRIN, I ACTUALLY JUST COULDN'T FIND ANYTHING

 5   THAT HE WAS UNIQUELY INVOLVED IN.  HE DIDN'T SEEM TO BE THE

 6   TOUCH POINT ON THIS PROJECT.

 7        AND I NEED TO LOOK AT THEM SEPARATELY, OBVIOUSLY.  EACH OF

 8   THEM IS ENTITLED TO THAT CONSIDERATION.

 9        SO IT'S A -- IT'S A SPLIT DECISION, BUT I THINK IT'S -- I

10   THINK IT IS THE RIGHT ONE IN THIS CASE.

11             MR. KAMBER:  THANK YOU, YOUR HONOR.

12             MR. HOSIE:  THANK YOU, YOUR HONOR.

13             THE COURT:  OKAY.  I HAVE ONE -- MR. HOSIE, I DID

14   HAVE ONE QUESTION THAT I -- I GUESS I MAY HAVE FOUND IT IN THE

15   JURY INSTRUCTIONS, AND IT WASN'T CLEAR TO ME -- AND MAYBE THIS

16   IS A QUESTION DIRECTED TO GOOGLE, I'M NOT ACTUALLY SURE.  IS

17   THERE A DISPUTE AS TO WHETHER LOON, ALPHABET, AND GOOGLE ARE

18   ALL BOUND BY THE NDA?  IS THAT AN ACTIVE ISSUE IN THE CASE?

19             MR. WERDEGAR:  YOUR HONOR, WE'RE IN THE PROCESS OF

20   TRYING TO WORK OUT -- THERE ARE THREE DEFENDANTS NOMINALLY.

21             THE COURT:  THAT'S RIGHT.

22             MR. WERDEGAR:  AND THERE'S ISSUES THAT FLOW FROM

23   THAT.  I THINK WE'RE WORKING TO TRY AND COME TO AN AGREEMENT

24   THAT WILL MAKE IT A NON-ISSUE FROM THE PERSPECTIVE OF THE JURY

25   AND THE COURT HOPEFULLY.
```

1          THE COURT:  OKAY.

2          MR. HOSIE:  AND WE'RE THIS CLOSE.

3          THE COURT:  OKAY, THAT'S GREAT.  AND I JUST SAW THAT

4    CONTROVERSY BECAUSE I DIDN'T WANT THIS THING SPLITTING INTO

5    DIFFERENT ISSUES THAN I THOUGHT HAD BEEN AVAILABLE.

6          ALL RIGHT.  WE HAVE THE SCHEDULE FOR THE BRIEFING ON THE

7    NDA INTERPRETATION ON THE TERMINATION CLAUSE.  I DON'T THINK I

8    ASKED FOR ANYTHING ELSE, OTHER THAN SOME FURTHER DISCUSSION ON

9    JURY INSTRUCTIONS THAT I HIGHLIGHTED.

10          IS THERE ANYTHING ELSE FROM YOUR PERSPECTIVE YOU'D LIKE ME

11   TO NAIL DOWN FOR YOU BEFORE WE CONCLUDE?

12          MR. VAN NEST:  NO, YOUR HONOR.

13          MR. HOSIE:  NOT FOR THE PLAINTIFF, YOUR HONOR.

14          THE COURT:  ALL RIGHT, THAT'S GREAT.

15          MR. VAN NEST:  NOR FOR GOOGLE.

16          THE COURT:  ALL RIGHT.

17          WELL, AS ALWAYS, I GREATLY APPRECIATE THE QUALITY OF THE

18   WORK THAT YOU PRESENT AND THE DEGREE OF PROFESSIONALISM.  I

19   WANT TO REALLY THANK AND COMMEND ALL OF THE ATTORNEYS WHO

20   ARGUED THE MOTIONS TODAY, REALLY A STELLAR JOB ON EACH ONE OF

21   THEM, AND I GREATLY APPRECIATE THAT.

22          SO I'LL SEE YOU AGAIN ON -- I DON'T THINK I NEED TO SEE

23   YOU BEFORE THE 2ND.  I DON'T THINK -- THE THURSDAY AFTERNOON,

24   WE HAD TALKED ABOUT THAT IF SOMETHING COMES UP, BUT I'M NOT

25   SCHEDULING IT.  YOU HAVE TO LET ME KNOW IF THERE'S SOMETHING.

1          MR. VAN NEST:  WE'LL DO THAT, YOUR HONOR.

2          THE COURT:  ALL RIGHT.

3          MR. HOSIE:  THANK YOU, YOUR HONOR.

4          THE COURT:  ALL RIGHT.  THANK YOU ALL.

5          MR. VAN NEST:  THANK YOU, YOUR HONOR.

6      (THE PROCEEDINGS WERE CONCLUDED AT 11:29 A.M.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18         DATED:  JULY 22, 2019

19

20

21

22

23

24

25

# EXHIBIT B

1

2

3 # UNITED STATES DISTRICT COURT

4 ## NORTHERN DISTRICT OF CALIFORNIA

5 ### SAN JOSE DIVISION

6

7 SPACE DATA CORPORATION,
   Case No.  16-cv-03260-BLF

8            Plaintiff,

9      v.
   **ORDER RE MOTIONS IN LIMINE**

10 ALPHABET INC., et al.,
   [Re: ECF 556, 557, 558, 559, 560]

11         Defendants.

12

13     In preparation for trial which is set to begin on August 5, 2019, Defendants Alphabet Inc.,

14 Google LLC, and Loon LLC (collectively, "Google" or "Defendants") submitted five motions in

15 limine.  The Court held a final pretrial conference on July 19, 2019.  With respect to Google's

16 motions in limine ("MILs"), the Court rules as follows, for the reasons set forth below and as

17 stated on the record at the pretrial conference ("the Hearing"):

18 ## **DEFENDANTS' MOTIONS IN LIMINE**

19 **1. Defendants' Motion in Limine No. 1 Regarding Irrelevant Patent Evidence and Argument (ECF 556)**

20     The remaining claims in this action are Plaintiff Space Data Corporation's ("Space Data")

21 trade-secret misappropriation claims (under California law and federal law, respectively), breach

22 of contract claim, and patent-infringement claim under U.S. Patent No. 9,643,706 ("the '706

23 patent").  The parties previously agreed to a bench trial on the '706 patent, which the Court has set

24 in May 2020.  *See* ECF 592.  All of Space Data's other patent-infringement claims were resolved

25 at claim construction or at summary judgment, including the claim for infringement of U.S. Patent

26 No. 9,678,193 ("the '193 patent"), which Space Data obtained through an interference proceeding

27 with Google's U.S. patent No. 8,820,678 ("the '678 patent").

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Google moves under Federal Rules of Evidence ("FRE") 402 and 403 to exclude evidence

2 of "Google's patent prosecution activities [relating to the '193 patent], including the interference

3 proceeding [on the '193 patent]."  *See* MIL1 at 5, ECF 556.  Google argues that its "patent

4 prosecution activities relating to the '193 patent have no relevance to any issue of liability or

5 damages left in this case and will only distract the jury from considering evidence relevant to

6 Space Data's [] remaining [] trade secrets and related misappropriation allegations."  *Id.* at 1.

7 Google further argues that its patent prosecution activities are irrelevant to Space Data's breach of

8 contract claim and allegations of willful and malicious trade-secret misappropriation.  *See id.*

9 at 3–4.  Google contends there is "no evidence [] that the '193 patent encompasses Space Data's

10 trade secret information" and that even if evidence of Google's patent prosecution activities was

11 relevant, "evidence and argument regarding [Space Data's '193 patent] and the '678 patent and

12 other Google and Loon patents would [] confuse the jury, waste time, and unfairly prejudice

13 Google."  *See id.* at 4–5.

14  Space Data responds that in obtaining the '678 patent, "Google told the PTO . . . [that

15 certain altitude-control techniques] w[ere] sufficient to 'overcome' the prior art."  *See* Opp1 at 2,

16 ECF 581-4.  Space Data argues that because one or more of its purported trade secrets is "a

17 related, more granular optimization" of the '678 patent, evidence of Google's patent prosecution

18 activities is relevant to rebut "Google's [] insist[ence] that Space Data's trade secrets were

19 ephemeral and commonly known."  *See id.* at 3.  However, Space Data states that "with the

20 exception of impeachment and rebuttal," Space Data will only introduce evidence of Google's

21 patent prosecution activities via limited questioning of two of the named inventors of the '678

22 patent.  *See id.* at 3.

23  The Court has considered this evidence under FRE 402 and 403.  As discussed at the

24 Hearing, as direct evidence, Google's patent prosecution activities appear to be of extremely

25 limited probative value.  For example, Space Data has not shown that the grounds for the

26 interference proceeding with Google's '678 patent were in any way related to Space Data's

27 purported trade secrets.  On the other hand, this evidence may mislead the jury, waste time, or

28 result in unfair prejudice to Google.  Based on this evidence, the jury may mistakenly believe that

United States District Court
Northern District of California

a patentee can only patent an invention that was previously a trade secret, which would unduly necessitate testimony or jury instructions to assist the jury in understanding patents and the patent system. Moreover, testimony concerning the manner in which Space Data obtained the '193 patent—through an interference proceeding with Google's '678 patent—would be highly prejudicial to Google.

Thus, having balanced the interests set forth in FRE 403, the Court will not allow direct evidence of Google's patent prosecution activities, including the interference proceeding, and will not permit Space Data to use Trial Exhibits 1–2, 15–20, 24, 383, 398, 401, 402, 404–406, 421, 425–427, 445–447, 449, 455, 475, 476, 3170, and 3415. However, as discussed at the Hearing, this ruling does not necessarily preclude Space Data's use of this evidence for impeachment or rebuttal—for example, as evidence to show that Google considered the subject matter of the '678 patent to be novel and original, if Google contests otherwise at trial. Accordingly, Google's MIL No. 1 is **GRANTED**, with the exception that Space Data may request at trial to use this evidence for impeachment or rebuttal, if Google so opens the door.

### 2. Defendants' Motion in Limine No. 2 Regarding Allegations of "Missing" Evidence (ECF 557)

Google moves to exclude "Space Data from presenting any evidence or argument at trial regarding allegedly unproduced or 'missing' materials, including: (1) additional photographs from Google's February 15, 2008 site visit to Space Data's Chandler, Arizona facilities; (2) notes taken by Google employees during the same visit; and (3) a ███████████ to Google's internal 'wiki' page regarding Space Data." *See* MIL2 at 1, ECF 555-4. Google argues that this evidence is "irrelevant and substantially more prejudicial than probative, and its presentation will serve only to confuse the jury, prejudice Google, and waste [] time at trial." *Id.* With respect to the "missing" photographs and notes, Google contends that any "adverse inference based upon the destruction or withholding of 'missing evidence' . . . . [would be] legally improper." *See id.* at 3. With respect to the absence of a ███████████ to Google's Space Data wiki page, Google contends that "Space Data should not be permitted to argue that ███████████ constitutes a 'credible inference of misuse.'" *See id.* at 5 (internal citation omitted).

3

1       Space Data counters that "the missing photos and missing notes are highly relevant, not

2   because they have been destroyed or lost, but because they once existed." *See* Opp2 at 3,

3   ECF 581-6. Space Data contends that "this evidence goes to a highly material fact, whether

4   Google intentionally memorized Space Data's confidential information," and that foundation for

5   this evidence exists because Space Data "can ask [] witnesses [on the February 15, 2008 tour]

6   about missing photographs and notes." *See id.* at 3–4. In addition, Space Data states that it "does

7   not seek an adverse inference [or spoliation] instruction." *Id.* at 1–2. With respect to ███████

8   ████████████████, Space Data argues that it is entitled to put on "the fact that ████████

9   ████████████" *See id.* at 4.

10      With respect to the "missing photographs," Google acknowledged at the Hearing that some

11  photographs are missing from the standard sequence generated by the camera(s) used during the

12  February 15, 2008 tour of Space Data's facilities. Moreover, it is undisputed that Google

13  employees carried notebooks during the tour. The Court agrees with Space Data that this evidence

14  is at least relevant to the question of whether Google memorialized details of Space Data's

15  confidential information in tangible form. While Google argues that evidence of the "missing"

16  photographs or notes "amounts to conspiratorial conjecture," *see* MIL2 at 1, Google can rebut

17  Plaintiff's evidence with testimony as to what photographs were deleted from the sequence, what

18  notes were taken (or not taken) during the tour, and/or what the standard practice was with respect

19  to deleting photographs or taking notes. Thus, the Court finds that use of this evidence in the

20  manner proposed by Space Data would not run afoul of FRE 403. The Court reaches the same

21  conclusion with respect to ████████████████████—Google, like Space Data, may

22  put on testimony that ████████████████, evidence that the jury is capable of assessing

23  and giving the weight it deserves.

24      However, the Court notes there is no evidence that any photographs or notes from the tour

25  are missing due to destruction, purposeful or otherwise. Thus, consistent with Space Data's

26  position, no adverse inference or spoliation instruction will be given to the jury. Further, absent

27  witness testimony of destruction (intentional or otherwise) of photographs or notes from the tour,

28  Space Data may not ask the jury to infer that any "missing" photographs or notes are evidence of

destruction.  In addition, the parties shall not discuss the so-called "missing" photographs or notes in opening statements.  With these limitations, Google's MIL No. 2 is **DENIED**.

### 3. Defendants' Motion in Limine No. 3 Regarding Loon and Space Data Valuations and Google's Total Size, Wealth, and Overall Revenues (ECF 558)

Google moves to exclude (1) evidence related to Loon's value, profit projections, and the amount Google invested in Loon; (2) evidence of Space Data's enterprise value; and (3) evidence of Google's total revenues, wealth, and any references to the parties' relative sizes and wealth. *See* MIL3 at 1–4, ECF 558.  Google argues that "[n]one of this information is relevant" and that "[t]he only effect of presenting such evidence at trial would be to 'skew the damages horizon for the jury.'"  *See id.* at 1 (citing and quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011)).  Google also argues that "to the extent that evidence related to Loon's and Google's financial condition could be relevant to a potential exemplary damages calculation . . . it has no place before the jury and should be excluded from the jury trial."  *See* MIL3 at 5.

Space Data counters that Loon's financial projections and Google's investment in Loon speak to the "economic value" of Space Data's trade secrets, that Space Data's enterprise value rebuts Google intention to "tell the jury that Space Data is a failed company pursuing this case as a lottery ticket," and that "the fact and quantum of exemplary damages [for trade secret misappropriation] both go to the jury."  *See* Opp3 at 3–4, ECF 585.

The Court addresses in turn the three categories of evidence raised by Google and lastly the question of whether the jury may award exemplary damages for trade secret misappropriation.

#### A. Evidence related to Loon's value, profit projections, and Google's investment in Loon

Google argues that evidence related to Loon's value, profit projections, and Google's investment in Loon "has no probative value as to Space Data's surviving claims" and that "[e]ven if this evidence were relevant . . . its probative value is substantially outweighed by the potential for unfair prejudice to Google."  *See* MIL3 at 2.  Space Data responds that this evidence is relevant to the "economic value" of Space Data's purported trade secrets.  *See* Opp3 at 4.  For the reasons discussed below and at the Hearing, the Court agrees with Google.

First, the Court agrees with Google that this evidence has extremely little or no probative

United States District Court
Northern District of California

1   value regarding any issue of liability or compensatory damages left in this action.  Space Data's

2   damages expert, Dr. Meyer, calculates damages equal to Google's unjust enrichment, which

3   Dr. Meyer defined as the amount Space Data spent developing its purported trade secrets between

4   1997 and 2008.  *See* Meyer Report ¶ 216, Ex. 9 to Henry Decl., ECF 555-18.  Thus, contrary to

5   Space Data's suggestion, Loon's valuation and projected revenue/profitability have no bearing as

6   to the value of Space Data's purported trade secrets.  Simply put, this evidence is not probative of

7   anything but the value of Loon.  At the Hearing, Space Data suggested that its unjust enrichment

8   theory of damages may cover other alleged "benefits" to Google, such as compensatory damages

9   for "early entry" to the balloon market.  As discussed at the Hearing, the Court is extremely

10  skeptical that any such testimony would be admissible except through an expert, and Space Data

11  has no such expert testimony.  Put differently, Space Data may not ask the jury to calculate

12  damages due to Google's alleged "head start" in the industry based only on lay testimony.

13      Second, the Court agrees with Google that any minimal probative value of Loon's value

14  and Google's investment in Loon is substantially outweighed by the risk of unfair prejudice to

15  Google.  With respect to establishing the value of Space Data's asserted trade secrets, the

16  unapportioned value of Loon is misleading at best and highly prejudicial at worst.  *See, e.g.*,

17  *Uniloc*, 632 F.3d at 1320.  At the Hearing, Space Data argued that this evidence also speaks to

18  possible exemplary damages.  However, with respect to punitive damages, "[w]hat is required is

19  evidence of the defendant's ability to pay the damage award," **not** evidence "of the defendant's

20  annual income" or "evidence of the profits wrongfully gained."  *See Robert L. Cloud &*

21  *Associates, Inc. v. Mikesell*, 69 Cal. App. 4th 1141, 1151–52 (1999).  Here, as discussed in section

22  3.C *infra*, the parties have agreed to stipulate to Google's ability to pay any exemplary damages

23  award.  Accordingly, the Court finds exclusion warranted under FRE 403.

24      In sum, Google's motion in limine to exclude Loon's value, profit projections, and

25  Google's investment in Loon is **GRANTED**.

26      **B.      Evidence of Space Data's enterprise value**

27      Google argues that evidence of Space Data's enterprise value is irrelevant and that "the

28  estimates of Space Data's enterprise value would serve only to skew the jury to an unreasonably

6

United States District Court
Northern District of California

large damages number and unfairly prejudice Google." *See* MIL3 at 4. Space Data responds that this evidence should be permitted if "Google [tells] the jury that Space Data is a failed company pursuing this case as a lottery ticket to revive a business otherwise lost." *See* Opp3 at 3. For the same reasons discussed with respect to Loon's value and profits, Google's motion in limine to exclude evidence of Space Data's enterprise value is **GRANTED** as to Space Data's case in chief. However, Space Data shall be permitted to offer this evidence as rebuttal if Google opens the door by offering evidence that Space Data is a defunct or failed company or pursuing this case to fund its business activities.

### C. Evidence of Google's total size and wealth, and the parties' relative sizes and wealth

Space Data argues that Google's wealth is relevant to its request for exemplary damages. As discussed at the Hearing, Space Data's requested compensatory damages are coextensive for trade secret misappropriation and breach of contract and are on the order of ▮▮▮ in total and exemplary damages are statutorily limited to two times actual damages. At the Hearing, the parties agreed to stipulate that Google could pay double damages if so awarded. Accordingly, Google's motion in limine to exclude evidence of Google's total size and wealth, and the parties' relative sizes and wealth, is **GRANTED**, on the basis that Space Data may use the parties' stipulation as evidence of Google's ability to pay any exemplary damages award and because any other use of such evidence in this action is not permitted under FRE 403.

### D. Whether the jury may determine exemplary damages for trade secret misappropriation

Google argues that under both federal trade secret law and California trade secret law, it is the court—and not the jury—that would award any exemplary damages. *See* MIL3 at 5. Space Data counters that although "the Ninth Circuit has not addressed the question of whether a federal jury determines the entitlement and quantum of exemplary damages [for trade secret misappropriation], other courts have." *See* Opp3 at 1. In support, Space Data points to Fourth Circuit and Tenth Circuit case law, as well as the Eleventh Circuit's pattern jury instructions for federal trade secret misappropriation that send the determination of exemplary damages to the jury. *See id.* at 1–3 (citing cases); *see also* Eleventh Circuit Jury Instructions, Ex. 30 to Hosie

7

United States District Court
Northern District of California

Decl., ECF 588-21. As discussed at the Hearing, the Court's preliminary view is that the jury may award exemplary damages in this action. However, the Court's final decision is **DEFERRED** to the jury instruction conference.

### E. Conclusion

In sum, Google's MIL No. 3 is **GRANTED IN PART and DEFERRED IN PART**. Except as otherwise specified, Space Data may not introduce evidence or argument during the jury trial, and may not elicit testimony from witnesses, regarding Google's valuations of Loon, Loon's profitability projections, Space Data's enterprise valuation, Google's overall revenues, or Google's market capitalization, including but not limited to Trial Exhibits 213, 333, 334, and 640. The question of whether the jury may determine exemplary damages for trade secret misappropriation is deferred to the jury instruction conference.

### 4. Defendants' Motion in Limine No. 4 to Exclude Evidence Regarding Google's ██████ ██████ (ECF 559)

Google moves to exclude "evidence that ████████████████████ ████████████████████████████████████████████████████ ██████████████████████████." *See* MIL4 at 1, ECF 555-6. Google argues that "Google's ██████████████ . . . has no relevance to the present action, as there is no evidence that ██████████████ relates in any way to Loon's development." *Id.* Google further argues that "introduction of this evidence will only confuse and prejudice the jury by bringing in evidence of a separate potential partnership with Space Data unrelated to Loon." *Id.* Space Data responds that in 2011 Google "used an intermediary to hide Google's interest [in ██████████████] from Space Data" and that this evidence speaks to Google's "subterfuge" in dealing with Space Data. *See* Opp4 at 1, ECF 581-10. Space Data contends that "Google's subterfuge [] presents a classic jury question" regarding Google's "consciousness of wrongdoing." *See id.* at 2.

As discussed at the Hearing, the Court finds evidence of Google's ██████████████ ██████████████ wholly irrelevant to the instant action. Space Data has presented no evidence concerning ██████████████ that relates to damages or Google's liability in this trade secret and

breach of contract case. Moreover, to the extent any limited probative value does exist, that probative value is substantially outweighed by the risk of confusing the issues and undue consumption of time that would be devoted to Google explaining its ███████████ ███████████████. Accordingly, Google's MIL No. 4 is **GRANTED**. Space Data may not introduce evidence or argument during the jury trial, and may not elicit testimony from witnesses, regarding Google's ████████, including but not limited to Trial Exhibits 57, 58, 62 119, 120, 963, 3149, and 3150.

**5. Defendants' Motion in Limine No. 5 to Exclude New Evidence and Theories (ECF 560)**

Google moves to exclude "any evidence or argument related to Space Data's trade secret misappropriation and breach of contract claims not disclosed in Space Data's responses to Google's interrogatories or its Section 2019.210 trade secret disclosures." MIL5 at 1, ECF 560. Google argues that "[s]uch evidence is precluded by Federal Rules of Civil Procedure 26 and 37(c)." *Id.* In opposition, Space Data argues that "Google's motion cloaks its real complaint, which is Space Data's use of **one** discrete piece of evidence, a Google spreadsheet prepared by erstwhile Loon inventor Richard DeVaul on July 28, 2011." *See* Opp5 at 1 (emphasis in original), ECF 586.

At the Hearing, Google stated its willingness to permit Space Data to introduce the July 28, 2011 DeVaul spreadsheet, notwithstanding the instant motion. Accordingly, Google's MIL No. 5 is hereby **DENIED** as to the July 28, 2011 DeVaul spreadsheet. As discussed at the Hearing, the remainder of Google's MIL No. 5 is **DEFERRED**. The parties are directed to meet and confer and agree upon a "universe" of disclosures that Space Data may rely on for its theories of liability and damages. If at trial Google objects to evidence on a basis raised in the instant motion, the examining attorney is to direct the Court to the appropriate disclosure that was made in the agreed-upon universe of disclosures/theories, at which time the Court will rule on the objection.

//

//

//

United States District Court
Northern District of California

# ORDER

For the foregoing reasons and as discussed on the record at the July 19, 2019 pretrial conference, the motions in limine are decided as follows:

Defendants' Motion in Limine No. 1: GRANTED, subject to the exception outlined above in the Court's discussion of Defendants' MIL No. 1.

Defendants' Motion in Limine No. 2: DENIED, subject to the limitations outlined above in the Court's discussion of Defendants' MIL No. 2.

Defendants' Motion in Limine No. 3: GRANTED IN PART and DEFERRED IN PART, subject to the exceptions outlined above in the Court's discussion of Defendants' MIL No. 3.

Defendants' Motion in Limine No. 4: GRANTED.

Defendants' Motion in Limine No. 5: DENIED IN PART and DEFERRED IN PART.

**IT IS SO ORDERED.**

Dated: July 23, 2019

_____
BETH LABSON FREEMAN
United States District Judge

# EXHIBIT C

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

SPACE DATA CORPORATION,

           Plaintiff,

    v.

ALPHABET INC., et al.,

           Defendants.

Case No. 16-cv-03260-BLF

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO QUASH TRIAL SUBPOENAS**

[Re: ECF 601]

Before the Court is Defendants' Motion to Quash Trial Subpoenas ("Motion"). Motion, ECF 601. Specifically, Defendants ("Google") move to quash the trial subpoenas served by Plaintiff Space Data Corporation ("Space Data") on Larry Page and Sergey Brin. *See* Motion at 1–2. Space Data opposes. Opp'n, ECF 613. The Court heard oral argument on Google's motion to quash at the final pretrial conference on July 19, 2019. For the reasons set forth below and as stated on the record at the pretrial conference ("the Hearing"), Google's Motion is GRANTED IN PART and DENIED IN PART.

## I.   LEGAL STANDARD

Trial subpoenas include requests for attendance at a hearing or trial and are contemplated by Federal Rule of Civil Procedure 45. *See* Fed. R. Civ. P. 45; *Liu v. Win Woo Trading, LLC*, 2016 WL 661029, at *1 (N.D. Cal. Feb. 18, 2016). The party moving to quash a subpoena bears the burden of persuasion. *Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). "To meet that burden, the moving party cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena." *Sec. & Exch. Comm'n v. Mozilo*, 2010 WL 11468959, at *3 (C.D. Cal. Oct. 7, 2010) (internal quotation and citations omitted).

United States District Court
Northern District of California

Whether to quash or modify a subpoena lies within the district court's discretion. *Exxon Shipping Co. v. United States Dept. of Interior*, 34 F.3d 774, 779 (9th Cir. 1994). "In exercising this discretion, the court must balance the burden upon the subpoenaed party against the value of the information to the serving party." *Amazon.com, Inc. v. Comm'r of Internal Revenue*, No. 31197-12, 2014 WL 6980512, at *3 (T.C. 2014). Factors to be considered "include the relevance of the information sought, the serving party's need for that information, the breadth of the request, the time period covered by the subpoena, the particularity of the request, and the burden imposed." *Id.* Meanwhile, "[s]ubpoenas seeking the testimony of CEOs and other high-level corporate officers may warrant special scrutiny." *Id.* "In such cases, courts have required the requesting party to show that the executive possesses unique knowledge of relevant facts and that the information sought cannot be obtained by less burdensome means." *Id.* (collecting cases).

## II. DISCUSSION

Google moves to quash the trial subpoenas served by Space Data on Larry Page and Sergey Brin, respectively. *See* Motion at 1. Google asserts that "Space Data took the depositions of both Mr. Page and Mr. Brin, which made clear that Google's co-founders have no unique, first-hand knowledge of facts relevant to this case." *Id.* at 3. Google argues that therefore, "Space Data could get the same information it hopes to glean from Mr. Page and Mr. Brin from other witnesses who are at least as knowledgeable as them about the subject matter." *Id.* at 4. Google further argues that "[f]orcing Mr. Page and Mr. Brin to testify at trial in this case would impose a significant, undue burden on Google." *Id.* at 5.

Space Data counters that "[b]oth Page and Brin have unique knowledge central to the case" based on their presence at "meetings with Space Data in Mountain View," their participation "in multiple internal small meetings about acquiring Space Data," their attendance on the tour of Space Data's facility in Chandler, Arizona, and Mr. Page's alleged involvement in ███████ ████████████████████████ *See* Opp'n at 1, ECF 612-24. Space Data further contends that Google has failed to "demonstrat[e] unreasonable burden" and that "a deposition is no substitute for live trial testimony." *See id.*

The Court address Google's motion with respect to Mr. Page and Mr. Brin in turn.

United States District Court
Northern District of California

United States District Court
Northern District of California

**A.    Google's motion to quash trial subpoena served on Larry Page**

Because Larry Page is Google's co-founder and CEO of Alphabet Inc. and thus an "apex executive," the parties' briefing is directed to whether Mr. Page possesses unique knowledge of relevant facts and whether that information could be obtained by less burdensome means, and whether Mr. Page's testimony would impose an undue burden on Google.  The Court notes that additional factors are relevant to the analysis.  *See Amazon.com*, 2014 WL 6980512, at *3; *see also* Section I *supra*.  Therefore, the Court first addresses the two primary factors raised by the parties, followed by additional factors.

**1.    Mr. Page's unique knowledge of relevant facts and whether that testimony could be obtained by less burdensome means**

Google argues that Mr. Page possesses no unique, first-hand knowledge for any of the topics identified by Space Data in its witness list concerning Mr. Page.  *See* Motion at 8; *see also* Space Data Witness List at 8, Ex. 2 to Bruns Decl., ECF 601-3.  For example, Google contends that "to the extent that Mr. Page [is] being asked to testify about Google representatives' February 2008 visit to Space Data's offices, those facts can be introduced by any of the four other current and former Google employees who went on the trip that Space Data intends to call at trial (Larry Alder, Daniel Conrad, Minnie Ingersoll, and Daniel McCloskey)."  *See* Motion at 4.  In the same vein, Google contends that Mr. Page's "involvement [in Loon strategy, roll-out, and practices] is primarily indirect oversight as [a] supervising apex executive[], to whom hundreds of projects report" and that several other witnesses were "far more intimately involved with Loon's development and operations during the relevant period."  *See id.*

Space Data responds that Mr. Page was "intimately involved in events central to the trial of this case."  *See* Opp'n at 6.  Space Data points out that in addition to attending multiple meetings with Space Data and attending the February 2008 tour of Space Data's facilities, there is conflicting evidence as to whether Mr. Page ██████████████████████," and if so, for what reasons.  *See* Motion at 6–7; *see also* Page Depo. at 22:6–23:20, Ex. 18 to Werdegar Decl., ECF 408-8; 7/1/2008 Ingersoll email, Ex. 16 to Hosie Decl., ECF 612-14.

As discussed at the Hearing, the Court agrees with Space Data that Mr. Page possesses

United States District Court
Northern District of California

1  unique knowledge of facts relevant to the instant action.  It is undisputed that Mr. Page was

2  ███████████████████████████████████████████████ and that Mr. Page

3  attended multiple meetings between the parties as well as the February 2008 tour of Space Data's

4  facilities.  In addition, whether (and if so, for what reasons) Mr. Page ███████████████

5  ███████████████████████████████ is in dispute.  For example, Mr. Page

6  offered deposition testimony that he ████████████████████████████████

7  ██████████████████████████████████████████████ Page Depo.

8  at 23:1–3.  On the other hand, a Google employee wrote in July 2008, ████████████

9  ██████████████████████████████████████████ *See*

10 7/1/2008 Ingersoll email.  Accordingly, the Court finds that Mr. Page possesses the requisite

11 unique knowledge of relevant facts.

12      Google next argues that Mr. Page's testimony could be obtained by less burdensome

13 means—"play[ing] portions of [Mr. Page's] videotaped deposition testimony at trial."  *See* Motion

14 at 4–5.  Space Data counters that there is a "strong presumption in favor of live trial testimony"

15 and that Space Data's deposition of Mr. Page weighs *against* granting the motion to quash.  *See*

16 Opp'n at 4, 5 (citing *Sec. & Exch. Comm'n v. Mozilo*, 2010 WL 11468959, at *4 (C.D. Cal. Oct. 7,

17 2010)).  The Court agrees with the *Mozilo* court's reasoning that "'[i]n the conduct of the trial

18 itself, any jury would prefer to see and hear important witnesses in person.  In this way, the jury

19 can better assess demeanor and credibility.'"  2010 WL 11468959, at *4 (citing and quoting *In re*

20 *Funeral Consumers Antitrust Litigation*, 2005 WL 2334362, *6 (N.D. Cal. Sep. 23, 2005)).

21 Accordingly, the Court finds that Mr. Page's testimony could not be obtained by Google's

22 proposed less burdensome means—videotaped deposition testimony—because the jury may be

23 unable to adequately assesses demeanor and credibility, resulting in prejudice to Space Data.

24     **2.  Burden on Google to establish undue burden on Mr. Page**

25      Google argues that "[f]orcing Mr. Page [] to testify at trial in this case would impose a

26 significant, undue burden on Google."  *See* Motion at 5.  Space Data responds that Google bears

27 the burden of persuasion, and that "Google has not even tried to make that showing, which would

28 normally require affidavits from Messrs. Page and Brin demonstrating unreasonable burden."  *See*

Opp'n at 1. Indeed, Google—the moving party—bears the burden of showing its motion to quash is warranted. *See Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). Here, Google did not submit affidavits in support, but rather argued at the Hearing that "it goes without saying that [Mr. Page] probably ha[s] a demanding job," *see* Hearing Tr. at 110:4–7, ECF 621. While the Court agrees with Google that Mr. Page has important demands on his time, Google "cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with [Space Data's] subpoena." *See Mozilo*, 2010 WL 11468959, at *3 (internal quotation marks and citation omitted). Google has failed to make such a showing here. Accordingly, the Court is not persuaded that Mr. Page testimony's would impose an undue burden on Google.

### 3. Additional Factors

Additional factors to be considered include the relevance of the information sought, Space Data's need for that information, the breadth and particularity of the request, and the time period covered. *See Amazon.com*, 2014 WL 6980512, at *3. As discussed in Section II.A.1 *supra*, Space Data has demonstrated the relevance of Mr. Page's testimony and Space Data's need for that information. In addition, Space Data's Witness List disclosure with respect to Mr. Page and Space Data's deposition of Mr. Page sufficiently cabin the breadth of the request and provide particularity and notice of the time period covered. Accordingly, the additional factors do not weigh in Google's favor.

### 4. Conclusion re Larry Page

In sum, Space Data has demonstrated that Mr. Page possesses unique knowledge of relevant facts and that the information sought cannot be obtained by less burdensome means. Moreover, the additional factors do not favor quashing the subpoena served on Mr. Page. Accordingly, Google's motion to quash the trial subpoena served on Larry Page is DENIED.

### B. Google's motion to quash trial subpoena served on Sergey Brin

Mr. Brin is also an "apex executive" and as with Mr. Page, Space Data is required to show that Mr. Brin "possesses unique knowledge of relevant facts and that the information sought

United States District Court
Northern District of California

1    cannot be obtained by less burdensome means." *See Amazon.com*, 2014 WL 6980512, at *3.

2    With respect to Mr. Brin, Google makes essentially the same arguments as with respect to

3    Mr. Page. *See* Motion at 3–6. Likewise, Space Data makes many of the same opposition

4    arguments with respect to Mr. Brin as with respect to Mr. Page. *See, e.g.*, Opp'n at 1 ("Both Page

5    and Brin have unique knowledge central to the case. Both went to intimate meetings with Space

6    Data in Mountain View. Both participated in multiple internal small meetings about acquiring

7    Space Data. Both went to Space Data's facility in Chandler, and spent the better part of the day

8    there.").

9    However, Space Data acknowledges that it was Page more so than Brin who was

10   "particularly . . . involved in events central to the trial of this case." *See* Opp'n at 6. Indeed, the

11   Court has reviewed Space Data's arguments with respect to Mr. Brin and finds that Space Data

12   has failed to demonstrate that Mr. Brin possess unique knowledge of relevant facts. Rather, it

13   appears that Mr. Brin's testimony is not in dispute or would overlap with evidence that could be

14   obtained from other Google employees including Mr. Page. Moreover, at the Hearing, Space Data

15   acknowledged that Mr. Brin's testimony would add little and that "it would be a fair compromise

16   from [Space Data's] perspective" to exclude Mr. Brin but require Mr. Page to testify. *See* Hearing

17   Tr. at 111:14–24. For these reasons, the Court finds that Space Data has not demonstrated that

18   Mr. Brin possesses unique knowledge of relevant facts and that the information sought cannot be

19   obtained by less burdensome means. Accordingly, Google's motion to quash the trial subpoena

20   served by Space Data on Sergey Brin is GRANTED.

21   **III.    ORDER**

22   For the foregoing reasons, Google's Motion to Quash Trial Subpoenas (ECF 601) is

23   GRANTED IN PART and DENIED IN PART. The Court quashes the trial subpoena served by

24   Space Data on Sergey Brin, and the Court declines to quash the trial subpoena served by Space

25   Data on Larry Page.

26   **IT IS SO ORDERED.**

27   Dated: July 23, 2019

     _____
     BETH LABSON FREEMAN
     United States District Judge

28

United States District Court
Northern District of California